# EXHIBIT 1

# EMPLOYMENT AGREEMENT

This EMPLOYMENT AGREEMENT (this "***Agreement***") is signed and binding as of November 15, 2024, for a term that begins December 1, 2024 (the "***Start Date***"), and is by and between Joe Gibbs Racing, LLC, a Delaware limited liability company or its assigns (the "***Company***"), and Chris Gabehart ("***Employee***").

1. **Employment**. Company employs Employee, and Employee accepts employment, upon the terms and conditions hereinafter set forth. Employee shall serve in such capacities as determined by Company from time to time in its discretion, and Employee shall perform for Company such duties, fulfill such responsibilities and render such services as may be required from time to time by Company in connection with the conduct of Company's business. Employee shall not provide professional services to any third party during the Term defined below other than pursuant to this Agreement. Employee acknowledges receipt of Company's written policies and procedures, which are incorporated herein, and Employee shall comply with such policies and procedures now in force and from time to time adopted by Company.

2. **Term**. Subject to the termination provisions set forth in **Section 4** below, the term of employment hereunder begins on the Start Date and continues through November 30, 2027 (as it may be extended by the Extension defined below, collectively, the "***Term***"). Employee hereby irrevocably grants Company the right to extend the Term through November 30, 2028, by giving Employee written notice of the extension on or before August 31, 2027 (the "***Extension***"). Prior to September 1, 2027 (or, if the Extension is exercised, September 1, 2028), Employee shall not discuss or negotiate to provide the services of the general type of services that Employee provided Company in the prior one-year period with any other person or entity. Employee represents and warrants to Company that Employee's existing obligations (contractual or otherwise) do not prohibit Employee from entering into this Agreement on the date hereof or performing pursuant hereto on and after the Start Date. Employee shall indemnify and defend Company Parties (defined below) and hold Company Parties harmless from any claims, liabilities, losses or expenses which any Company Party may incur because of Employee's breach of the representation and warranty in the preceding sentence.

3. **Compensation**.

    (a) Base Salary. For all the services Employee provides Company, Company shall pay Employee a base salary ("***Base Salary***") calculated at the annual rate per Term year listed below in this **Section 3**. If the period of employment during any such year is for less than a full year, Employee will receive a *pro rata* portion of such Base Salary. Employee is eligible for any applicable Company-wide incentive plans that are based on Company performance; as such plans may be adjusted by Company from time to time. All compensation will be paid less all withholding and other deductions required by law.

| Term Period | Base Salary |
|---|---|
| Start Date through November 30, 2025 | |
| December 1, 2025 through November 30, 2026 | |
| December 1, 2026 through November 30, 2027 | |
| December 1, 2027 through November 30, 2028, if Extension exercised | |



    (b) Performance Bonuses. While Employee is serving as the director of Cup Series competition, Employee is eligible to earn the performance-based bonuses listed below based upon the performance of Company's Cup Series teams. Earned Performance Bonuses will be paid within forty-five (45) days after Company's receipt of the prize money

for the applicable performance. Upon a tie for any performance achievement listed below, equitable adjustments shall be made based on the percentage of reduction in the prize money due to such tie.

| Year End Performance | Bonus |
|---|---|

1st Place Finish in Final Owner Points
Each Team that Enters Championship Round of Four
Each Team that Enters Championship Round of Eight
Each Team that Enters Championship Round of Twelve



| Race Performance | Bonus |
|---|---|

First - Eighth 1st Place Finish in any Race or All-Star Race Final Segment
Each 1st Place Finish in any Race or All-Star Race Final Segment after First Eight



## 4. **Termination**.

(a) <u>Automatic Termination</u>. This Agreement, and Employee's employment by Company, will automatically terminate upon the earlier to occur of the Term expiration, Employee's death, or Company's termination of Employee's employment agreement in effect prior to the Start Date, if applicable.

(b) <u>Optional Termination by Company</u>. Company may terminate this Agreement, and Employee's employment by Company, immediately if Employee (as determined in good faith by Company): (i) breaches this Agreement; (ii) for any reason fails or refuses to perform Employee's duties and responsibilities as assigned by Company; (iii) disregards Company policies and procedures or NASCAR rules or regulations; (iv) commits a crime or any act involving moral turpitude, fraud, willful misconduct, gross negligence, or dishonesty; (v) fails to deal with Company sponsors, vendors or fellow employees in a civil manner; (vi) is unable for more than fifteen days to provide services to Company at Company's place of business due to a force majeure event applicable to NASCAR, Company or Employee (including without limitation acts of God, strikes, war, disease or any other event beyond the reasonable control of such parties); or (vii) fails to maintain all required NASCAR licenses in good standing or is ejected, suspended or penalized by NASCAR due to Employee's actions, omissions or conduct.

(c) <u>Termination with Cause</u>. Termination of this Agreement pursuant to **Sections 4(a)** or **4(b)** is referred to herein as "***termination with cause***". Upon termination with cause, Company will promptly pay Employee the Base Salary and any other compensation earned through the date of termination. Company will not be obligated to make any other payments to Employee upon termination with cause.

(d) <u>Termination without Cause</u>. Any other termination by Company of this Agreement is referred to as "***termination without cause***". Upon termination without cause by Company, in exchange for a complete mutual release, Company will pay Employee the Base Salary for the shorter of the balance of the then current Term (excluding any unexercised Extensions) or the Noncompete Period defined below, and Employee shall seek employment for reasonable compensation. Any compensation that Company would be required to pay Employee because of termination without cause is reduced by all compensation earned by Employee in connection with any such new employment. Upon

request by Company, Employee shall provide appropriate evidence of any efforts to seek such new employment and any compensation in connection therewith.

(e) <u>Return of Company Property</u>. Promptly upon termination or expiration of this Agreement, Employee shall return all Company property to Company, including but not limited to vehicles, keys, passes, access cards, Confidential Information, equipment and supplies, records and notes.

5. **Confidentiality**. Company's Confidential Information (defined below) is a valuable, special and unique asset of Company's and its affiliates' business, access to and knowledge of which are essential to the performance of Employee's duties hereunder. "***Confidential Information***" includes but is not limited to non-public information about Company sponsors and partners, race strategy, engineering information, race car set-ups, pit crew training methods and practices, pit crew analytics, technology and strategy, wind tunnel data and testing of any kind, trade secrets and any Company information that is proprietary or not publicly known. During the Term and for so long as such Confidential Information is not generally known (other than due to Employee's breach), Employee shall not disclose Confidential Information to any third party or use any Confidential Information for any purpose other than as necessary to perform pursuant to this Agreement unless and until such Confidential Information becomes generally known, except as a result of unauthorized disclosure. Employee will not be held criminally or civilly liable under any Federal or state trade secret law for the disclosure of a trade secret that is made in confidence to a Federal, state, or local government official, either directly or indirectly, or to an attorney and solely for the purpose of reporting or investigating a suspected violation of law, or is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

6. **Restrictive Covenants**. To protect the Company's legitimate business interests including, among others, access to the Confidential Information, Employee acknowledges that certain restrictive covenants are necessary and appropriate. Except for termination without cause by Company or Term expiration, during the Term and for the longer of the balance of the Term including all Extensions, or nine (9) months after the date of termination (but not to exceed eighteen (18) months) (the "***Noncompete Period***"), Employee shall not provide services of the general type of services that Employee provided to Company in the year prior to such termination to any other NASCAR Xfinity Series or NASCAR Cup Series racing team (or their respective successor series) or any vehicle manufacturing company or other person or entity that provides goods or services to such a team.

Notwithstanding any contrary provision herein, the Noncompete Period will be reduced to one (1) week and Company shall pay Employee $100,000 (in exchange for a complete mutual release and net of all required withholding and deductions) if, at any time after September 1, 2025, and before June 1, 2026: (i) Employee in good faith notifies Company in writing of specific job duties or responsibilities assigned to Employee that are inconsistent with Employee's reasonable expectations or the job description provided by Company prior to the Start Date; (ii) Employee provides Company at least sixty (60) days to resolve such inconsistencies to Employee's reasonable satisfaction and Company fails to do so; and (iii) Employee provides Company sixty (60) days prior written notice of termination without cause due to such unresolved inconsistencies.

During the Term and for a period of eighteen (18) months after the date of termination or expiration of this Agreement, Employee shall not recruit or induce other Company employees to terminate their employment with Company. If a court of competent jurisdiction finds that any one or more of the provisions of this **Section 6** is an unreasonable restriction, then such

covenants will not be rendered void but will apply to the extent, length of time and geographic area as the court may determine constitutes a reasonable restriction under the circumstances. A court may revise the restrictions to cover the maximum period, scope and area permitted by law.

7. **Developments**.  Employee hereby assigns to Company Employee's right, title and interest in and to all inventions, ideas, disclosures, improvements and copyrightable material made or conceived by Employee, solely or jointly, during the Term or during Employee's employment by Company, which relate to Company's businesses (collectively, "***Developments***").  To the extent not assigned pursuant to the preceding sentence, Employee acknowledges and agrees that all Developments are "works made for hire" pursuant to copyright laws of the United States and any other applicable jurisdiction.  Employee shall promptly disclose to Company all information, details and data pertaining to any Developments and shall execute and deliver to Company such documentation as Company may request related to any Developments.

8. **Survival of Obligations; Enforcement**.  The provisions, and Employee's obligations and duties, contained in **Sections 4(e)** and **5** through **13** of this Agreement survive the termination or expiration of this Agreement and the termination of Employee's employment. If there is a breach or threatened breach of the provisions of **Sections 5, 6** or **7** of this Agreement, then Company may obtain an injunction restraining Employee from such breach without the necessity of posting any bond or proving special damages or irreparable injury, without prejudice to any other rights or remedies available at law or in equity.  Nothing herein prohibits Company from pursuing any other remedies for such breach or threatened breach. No failure or delay by any party hereto to enforce any right specified herein will operate as a waiver of such right, nor will any single partial exercise of a right preclude any further or later enforcement of the right.  Upon any litigation between the parties hereto to enforce this Agreement, the non-prevailing party shall pay to the party that obtains a determination of wrongful conduct by the other party regardless of whether actual damages are awarded all costs and expenses of such party including reasonable attorneys' fees and court costs.

9. **Nonexclusive License**.  Employee grants Company and its sponsors the nonexclusive, nontransferable, right, at no additional expense and on a royalty-free basis and without further approval, to use Employee's name, signature, initials, likeness, photograph, caricature and biography for endorsements, commercial advertising and promotions in all forms and mediums and to develop, advertise, market, distribute and sell a line of racing-related goods (both tangible and intangible) and services bearing the likeness of the team or multiple team members (including Employee).  While performing pursuant to this Agreement, Employee shall wear apparel designated by Company and supplied to Employee by Company or its sponsors and may not display trademarks or other indicia on such apparel without Company's express prior written consent, which Company may grant or deny in its sole discretion.  Upon Company's request, Employee shall make personal appearances for Company and its sponsors from time to time.

10. **Release**.  EMPLOYEE'S EMPLOYMENT BY COMPANY WILL (I) REQUIRE EXTENSIVE TRAVEL, OFTEN VIA COMPANY-OWNED OR ARRANGED COMMERCIAL AND/OR PRIVATE TRAVEL AND (II) ENTAIL CERTAIN KNOWN, UNKNOWN AND UNANTICIPATED RISKS INHERENT IN COMPANY'S AND EMPLOYEE'S ACTIVITIES.  EMPLOYEE UNDERSTANDS THAT <u>AIRCRAFT TRAVEL AND PARTICIPATION IN ANY CAPACITY IN RACING ACTIVITIES INVOLVES RISK OF INJURY, DEATH, PHYSICAL AND MENTAL ILLNESS, DISEASE AND PROPERTY DAMAGE</u>.  KNOWING AND APPRECIATING SUCH RISKS, EMPLOYEE, <u>FOR EMPLOYEE, EMPLOYEE'S HEIRS, NEXT OF KIN, REPRESENTATIVES AND ASSIGNS, HEREBY VOLUNTARILY CONSENTS TO AND ASSUMES ALL SUCH RISKS AND HEREBY RELEASES, FOREVER DISCHARGES AND SHALL HOLD HARMLESS,</u>

INDEMNIFY, AND DEFEND COMPANY, ITS AFFILIATES, AND THEIR RESPECTIVE OWNERS, OFFICERS, DIRECTORS, CONTRACTORS, EMPLOYEES, AGENTS, AND SPONSORS (COLLECTIVELY, THE "*COMPANY PARTIES*"), FROM ALL LIABILITIES, CLAIMS, DEMANDS, ACTIONS AND RIGHTS OF ACTION (COLLECTIVELY, "*CLAIMS*") WHICH MAY ARISE DIRECTLY OR INDIRECTLY FROM EMPLOYEE'S SERVICES TO OR FOR COMPANY OR EMPLOYEE'S ATTENDANCE OR PARTICIPATION IN RACING ACTIVITIES INCLUDING, WITHOUT LIMITATION, ALL CLAIMS RELATING TO ACTS, OMISSIONS OR NEGLIGENCE (INCLUDING, WITHOUT LIMITATION, GROSS NEGLIGENCE AND NEGLIGENT CONDITIONS) OF ANY PERSON INCLUDING, WITHOUT LIMITATION, ANY COMPANY PARTY AND ANY CLAIMS FOR DAMAGE TO EMPLOYEE OR EMPLOYEE'S PROPERTY OR DAMAGE TO OTHERS OR OTHERS' PROPERTY. <u>EMPLOYEE RECOGNIZES THAT IF EMPLOYEE IS DAMAGED IN ANY WAY, OR KILLED, WHILE DIRECTLY OR INDIRECTLY ENGAGED IN COMPANY ACTIVITIES, NEITHER EMPLOYEE NOR EMPLOYEE'S HEIRS, NEXT OF KIN, REPRESENTATIVES, OR ASSIGNS WILL HAVE A RIGHT TO MAKE ANY CLAIMS AGAINST COMPANY OR ANY COMPANY PARTY.</u> NOTHING HEREIN RELEASES OR WAIVES EMPLOYEE'S RIGHTS TO WORKERS COMPENSATION BENEFITS UNDER THE NORTH CAROLINA WORKERS COMPENSATION ACT.

11. <u>**Entire Agreement; Amendments & Severability**</u>.  As of the Start Date, this Agreement contains the entire agreement of the parties hereto, supersedes all prior oral or written agreements between the parties hereto regarding the subject matter hereof, and may only be changed by written agreement signed by each party hereto.  Each provision of this Agreement is severable from every other provision for the purpose of determining the legal enforceability of any provision hereof and the unenforceability of one or more provisions of this Agreement in one jurisdiction will not have the effect of rendering such provision or provisions unenforceable in any other jurisdiction.

12. <u>**Governing Law & Exclusive Jurisdiction**</u>.  THIS AGREEMENT IS GOVERNED BY AND WILL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE INTERNAL LAWS AND JUDICIAL DECISIONS OF THE STATE OF NORTH CAROLINA WITHOUT REGARD TO CONFLICT OF LAW PROVISIONS THEREOF.  ANY LITIGATION, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT MUST BE HELD EXCLUSIVELY IN ANY STATE OR FEDERAL COURT IN THE STATE OF NORTH CAROLINA, MECKLENBURG COUNTY.  EACH PARTY HERETO HEREBY WAIVES ANY OBJECTION WHICH IT MIGHT HAVE NOW OR HEREAFTER TO THE VENUE OF ANY SUCH LITIGATION, ACTION OR PROCEEDING, SUBMITS TO THE SOLE AND EXCLUSIVE JURISDICTION OF ANY SUCH COURT AND WAIVES ANY CLAIM OR DEFENSE OF INCONVENIENT FORUM.  EACH PARTY CONSENTS TO SERVICE OR PROCESS BY REGISTERED MAIL, RETURN RECEIPT REQUESTED, AT SUCH PARTY'S ADDRESS AS PROVIDED HEREIN.

13. <u>**Waiver of Jury Trial**</u>.  ANY DISPUTES ARISING OUT OF THE BUSINESS TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT WOULD BE BETTER ADJUDICATED IN A BENCH TRIAL THAN IN A JURY TRIAL.  TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH PARTY HERETO HEREBY VOLUNTARILY, IRREVOCABLY AND UNCONDITIONALLY <u>WAIVES THE RIGHT TO TRIAL BY JURY</u> IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT.

**IN WITNESS WHEREOF**, the parties executed and delivered this Agreement as of the first date written in the **Preamble**.

_____ (SEAL)

**CHRISTOPHER GABEHART**, as Employee
DOB: ▮▮▮▮▮▮ 1981
Address: 119 Harrell Rd.
Mooresville, NC 28117

**JOE GIBBS RACING, LLC**, a Delaware limited liability company, as Company

By: _____
Tim Carmichael, Chief Financial Officer

# FIRST AMENDMENT TO EMPLOYMENT AGREEMENT

This FIRST AMENDMENT TO EMPLOYMENT AGREEMENT (this "*Amendment")* is effective as of June 26, 2025 (the "*Amendment Date*"), by and between Joe Gibbs Racing, LLC, a Delaware limited liability company (the "*Company*"), and Chris Gabehart ("*Employee*").

## W I T N E S S E T H:

**WHEREAS,** the Company and Employee are parties to an Employment Agreement dated December 1, 2024 (the "*Employment Agreement*"; undefined capitalized terms used herein are used as defined therein); and

**WHEREAS,** the Company and Employee desire to amend the Employment Agreement as detailed in this Amendment.

**NOW, THEREFORE,** for consideration given and received, the receipt and sufficiency of which the parties hereto acknowledge, the parties hereto agree as follows:

**SECTION 1.** Amendments. As of the Amendment Date, the Employment Agreement is amended to add a new Section 3(c) to read as follows:

"(c) № 54 Crew Chief Duties. In addition to Employee's duties as Company's Competition Director, Company may from time to time request that Employee serve as the crew chief for Company's № 54 Cup Series racing team. During the 2025 Term year only, if Employee accepts such request and performs crew chief duties for Company's № 54 Cup Series racing team, then Company will pay Employee ▮▮▮ per week in which Employee performs such crew chief duties ("*Crew Chief Pay*"). Notwithstanding the foregoing, Company will not be obligated to pay Employee Crew Chief Pay for weeks in which Employee serves as crew chief for any Company Cup Series racing team including the № 54 due to the existing crew chief's suspension or the existing crew chief otherwise requires a substitute other than for performance reasons, as such temporary additional crew chief duties are within the scope of Employee's role as Competition Director. For the avoidance of doubt, the scope of Employee's role as Competition Director does not include serving as a full-time crew chief."

**SECTION 2.** Effect on Employment Agreement; Counterparts. Other than as provided in this Amendment, all terms and provisions of the Employment Agreement are ratified and confirmed. Conflicts between the Employment Agreement and this Amendment will be resolved in favor of this Amendment. This Amendment may be executed digitally and in counterparts, and delivered by e-mail, each of which will be deemed to be an original, but all of which together will constitute one and the same instrument.

**IN WITNESS WHEREOF,** the parties hereto executed and delivered this Amendment as of the Amendment Date.

_____ (SEAL)
**CHRIS GABEHART**, as Employee

**JOE GIBBS RACING, LLC**, a Delaware limited liability company, as the Company

By: _____
Tim Carmichael, Chief Financial Officer