# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. 3:26-CV-00133-SCR-DCK

| | |
|---|---|
| JOE GIBBS RACING, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>CHRISTOPHER GABEHART and SPIRE MOTORSPORTS, LLC,<br><br>    Defendants. | **[PROPOSED PRELIMINARY INJUNCTIVE RELIEF]** |

**THIS MATTER** is before the Court on the Motion for Preliminary Injunction filed by Plaintiff Joe Gibbs Racing, LLC's ("JGR") (the "Motion"). Upon consideration of the Motion, Defendants' Christopher Gabehart and Spire Motorsports, LLC's ("Spire") (collectively, the "Defendants") arguments in opposition to the same, and the evidence on the record, the Court **GRANTS** the Motion.

It is further **ORDERED** that Defendants and all persons acting in concert with them who have actual notice of this Order shall **be PRELIMINARILY ENJOINED** as follows:

    i)     Defendants shall immediately cease and desist from retaining, transferring, using or copying any of JGR's Confidential Information and Trade Secrets;

    ii)     Defendants shall cease and desist from using or disclosing JGR's Confidential Information and Trade Secrets;

    iii)     Defendants shall return any of JGR's Confidential Information and Trade Secrets in their possession to JGR;

iv) Gabehart shall be restrained from violating Section 6 of his Employment Agreement, which prohibits providing services of the general type of services that Defendant Gabehart provided to JGR in the year prior to his termination, including the following:

   a. Gabehart is prohibited from performing, engaging in, or providing any services of the general type that Gabehart provided to Joe Gibbs Racing during the twelve (12) month period prior to his termination on February 9, 2026, including but not limited to all activities, responsibilities, duties, and functions performed in his role as Competition Director, his role as crew chief for the No. 54 car, or any other competition-related role in NASCAR racing, regardless of whether such services are provided under a different title, in a different organizational structure, or through informal rather than formal channels.

   b. Gabehart is prohibited from, either in person or remotely, in NASCAR racing, (i) serving as a crew chief or assistant crew chief in any capacity; (ii) calling races or providing race strategy, including but not limited to decisions regarding pit stops, tire selection, fuel strategy, track position, or race adjustments; (iii) participating in any race day decisions, strategy sessions, or real-time competitive decisions during practice, qualifying, or race events; and (iv) providing advice, consultation, or input regarding race strategy, race calling, or in-race decision-making to any crew chief, driver, or competition personnel.

   c. Gabehart is prohibited from, either in person or remotely, in NASCAR racing, (i) attending, participating in, organizing, facilitating, or contributing to any crew chief meetings, competition meetings, driver meetings, race debrief

2

sessions, or race preparation meetings; (ii) participating in any meetings involving race performance review, race results analysis, technical discussions regarding car setup, handling, or performance, or strategic planning for upcoming races; (iii) attending or participating in any meetings or communications with original equipment manufacturers (OEMs) regarding engine performance, testing, simulations, aerodynamics, technical development, competition matters, or racing strategy; (iv) attending, participating in, or contributing to car performance meetings, engineering meetings, aerodynamics meetings, tire meetings, pit crew meetings, race engineering meetings, or any other meetings related to on-track competition or vehicle performance; (v) conducting, facilitating, or participating in any meetings that involve driver feedback, driver rankings, driver performance analysis, or driver development related to competition; and (iv) serving as a participant or liaison in any meetings with NASCAR officials regarding competition rules, rule interpretations, technical matters, or compliance issues.

d. Gabehart is prohibited from, either in person or remotely, in NASCAR racing, (i) reviewing, analyzing, accessing, or providing input on vehicle setup files, setup sheets, setup data, or setup decisions for any race car; (ii) participating in wind tunnel testing, wind tunnel test analysis, aerodynamic development, or review of aerodynamic data or results; (iii) engaging in any activities related to vehicle handling, vehicle performance optimization, suspension setup, chassis setup, or mechanical adjustments; (iv) reviewing, analyzing, or providing input on tire testing, tire data, tire strategy, or tire performance; (v) participating in

3

technical inspection processes, technical compliance reviews, or interactions with NASCAR technical inspectors; (vi) engaging in correlation activities between driver feedback and vehicle setup or performance data; and (vii) accessing, reviewing, analyzing, or providing input on any engineering reports, simulation data, driver-in-the-loop simulator testing or results, computational fluid dynamics (CFD) analysis, or any other technical or engineering data related to race car performance.

e. Gabehart is prohibited from, either in person or remotely, in NASCAR racing, (i) accessing, reviewing, analyzing, or providing input on competition analytics, race analytics, performance metrics, pit stop metrics, driver performance metrics, or any data analytics related to competition; (ii) accessing, reviewing, analyzing, or providing input on telemetry data, data acquisition information, vehicle sensors data, or any performance data from race cars; (iii) accessing, reviewing, analyzing, or providing input on any proprietary databases, secure websites, or information systems containing competition data, technical data, performance data, or racing information, including but not limited to any OEM platforms; and (iv) accessing, reviewing, analyzing, or providing input on the development, implementation, or utilization of analytical tools, models, or systems for race strategy, performance optimization, or competitive analysis.

f. Gabehart is prohibited from, either in person or remotely, in NASCAR racing, (i) directing, managing, supervising, or providing guidance to crew chiefs, car chiefs, engineers, mechanics, pit crew members, or any other competition personnel; (ii) participating in hiring decisions, personnel evaluations,

performance reviews, or personnel development for any competition-related positions; (iii) providing input on organizational structure, team composition, resource allocation, or staffing for competition operations; (iv) participating in contract negotiations, employment discussions, or retention decisions for competition personnel; and (v) communicating with or providing any work direction to individuals currently employed by Spire regarding competition matters, technical matters, or race operations.

g. Gabehart is prohibited from, either in person or remotely, in NASCAR racing, (i) serving as a liaison, coordinator, or point of contact between any race-related departments, including but not limited to engineering, aerodynamics, analytics, tire development, pit crew operations, fabrication or vehicle dynamics departments; (ii) acting as a central hub or coordinator for competition information, technical information, or race operations information; (iii) disseminating information, reports, directions, or guidance across multiple competition-related departments or personnel; and (iv) coordinating cross-functional initiatives, projects, or activities related to competition performance or race operations.

h. Gabehart is prohibited from, either in person or remotely, in NASCAR racing, (i) participating in strategic planning, long-term competitive planning, or organizational direction-setting for any NASCAR competition operations; (ii) attending or participating in meetings with executive leadership, ownership, or senior management regarding competition matters, team performance, competitive positioning, or racing operations; (iii) providing input on capital

5

expenditures, budget allocation, or resource planning for competition-related projects or initiatives; (iv) participating in alliance discussions, partnership negotiations, or collaborative arrangements with other race teams or OEMs regarding competition matters; and (v) providing recommendations or input on technical development priorities, competition priorities, or performance improvement initiatives.

i. Gabehart is prohibited from, either in person or remotely, in NASCAR racing, (i) serving as a point person, representative, or liaison with NASCAR regarding competition rules, rule changes, rule interpretations, technical bulletins, or compliance matters; (ii) communicating with NASCAR officials regarding technical aspects of racing, competition issues, or team operations; and (iii) participating in any NASCAR committees, working groups, or collaborative bodies involving competition or technical matters.

j. Gabehart is prohibited either in person or remotely, from (i) attending race weekends, practice sessions, qualifying sessions, or race events in any professional capacity related to competition; (ii) being present in team haulers, pit areas, garage areas, or competition spaces during race weekends; (iii) observing, monitoring, or reviewing practice data, qualifying data, or race data during race weekend events; (iv) communicating with drivers, crew chiefs, spotters, or team personnel during practice, qualifying, or races regarding competition matters; (v) providing support, advice, feedback, or direction to any team personnel during race weekend activities; (vi) conducting post-race reviews, post-race debriefs, or post-race analysis activities.

k. Gabehart is prohibited from either in person or remotely, in NASCAR racing, (i) accessing, utilizing, reviewing, or providing input on car simulators, driver-in-the-loop simulators, or simulator data related to NASCAR competition; (ii) engaging in, contributing to, or connecting with Spire or any other Chevrolet alliance team's work in connection with racing simulators, including but not limited to simulator development, simulator testing, simulator data analysis, or simulator-based vehicle setup development; and (iii) if attending race weekends in a non-competition capacity, having any communication or interactions with any person responsible for executing Spire's competition activities, including but not limited to crew chiefs, car chiefs, engineers, spotters, pit crew members, competition directors, or any other personnel involved in race strategy, vehicle setup, or race execution.

l. For the sake of clarity, the Court is not requiring Gabehart to resign from his position at Spire or prohibiting him from working for Spire. Services not performed at JGR in the year prior to his termination and not included in Sections (iv)(a)-(k) are permissible.

m. Gabehart is required to maintain detailed contemporaneous records of all work activities and job duties performed for Spire. These records shall be made available to JGR's counsel on a bi-weekly basis or, in the alternative, upon request with forty-eight (48) hours' reasonable notice. This reporting requirement is necessary to ensure ongoing compliance with the Court's Order and to provide JGR with the ability to monitor whether Gabehart is adhering to the restrictions imposed by the restrictive covenant as enforced by this Court.

v) Sections (iv)(a)-(m) apply regardless of whether Gabehart's activities or services are provided: (i) directly or indirectly; (ii) formally or informally; (iii) on a full-time, part-time, consulting, advisory, or occasional basis; (iv) in person, remotely, or through electronic or telephonic means; (v) through official meetings and communications or through unofficial or casual interactions; (vi) under any job title or organizational designation; (vii) as part of assigned job responsibilities or as voluntary assistance or collaboration.

vi) Gabehart is ordered to submit to a forensic examination of any device or account that are or are potentially used to store JRG Confidential Information or Trade Secrets, including but not limited to any computers, phones, servers, external hard drives, flash drives, cloud storage, emails, text messages, or instant messages of any kind, his computer, his Gmail account, his OneNote account, and his wife's Google and Gmail accounts. Forensic examination is also ordered with respect to previously provided imaged devices and accounts, including Gabehart's cellphone and Google Drive account.

**IT IS SO ORDERED**, this ____ day of _____, 2026.

                                                _____
                                                Honorable Susan C. Rodriguez
                                                U.S. District Court Judge