# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
Case No. 3:26-CV-00133-SCR-DCK

| | |
|---|---|
| **JOE GIBBS RACING, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**CHRISTOPHER GABEHART and SPIRE MOTORSPORTS, LLC,**<br><br>Defendants. | **DEFENDANT CHRISTOPHER GABEHART'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY** |

Defendant Christopher Gabehart ("Mr. Gabehart"), by and through undersigned counsel, respectfully submits this Opposition to Plaintiff Joe Gibbs Racing, LLC's ("JGR" or "Plaintiff") Motion for Expedited Discovery (the "Motion"), ECF 22, and states as follows:

## I.  INTRODUCTION

JGR's Motion for Expedited Discovery (the "Motion") should be denied. The Motion is unnecessary, premature, and seeks to circumvent the orderly discovery process that the Federal Rules of Civil Procedure are designed to ensure. JGR has already received the very information it claims to need: a comprehensive forensic examination of Mr. Gabehart's personal devices, conducted by JGR's own chosen forensic examiner, pursuant to a protocol drafted by JGR's own counsel. That examination established that Mr. Gabehart did not transmit, distribute, or share any JGR Confidential Information (as defined in the Employment Agreement, ECF 8-2). At this time, there is no justification for departing from the traditional discovery timeline. JGR's Supplemental Memorandum in Support of its Motion for Expedited Discovery ("Suppl. Mem."), filed March 6, 2026, ECF 34, only underscores the speculative nature of its claims—JGR now asks the Court to infer wrongdoing from alleged file deletions that occurred long before this litigation, involve files

JGR cannot identify, and apparently were known to JGR's own forensic examiner some three months ago.[1]

Expedited discovery is an extraordinary remedy, reserved for circumstances where a party demonstrates genuine urgency and good cause. JGR can demonstrate neither. The traditional discovery process exists to ensure fairness, efficiency, and due process for all parties. JGR should not be permitted to bypass these fundamental procedural protections simply because it is dissatisfied with the results of its own forensic examination. This case should proceed according to the standard discovery timeline established by the Federal Rules of Civil Procedure and this Court's scheduling order.

If, however, the Court is inclined to grant any expedited discovery, Defendants respectfully request that such discovery be reciprocal. Specifically, Defendants are entitled to discovery concerning Mr. Gabehart's compliance with Section 6, Paragraph 2 of the Employment Agreement, JGR's internal communications regarding Mr. Gabehart's exercise of his contractual rights and his employment status, JGR's withholding of wages, and JGR's decision to terminate Mr. Gabehart for cause only after the forensic examination confirmed no JGR Confidential Information was disclosed.

## II.     ARGUMENT

### A.     The Motion for Expedited Discovery Should Be Denied Because JGR Cannot Establish Good Cause and the Case Should Proceed on a Traditional Discovery Timeline

Federal Rule of Civil Procedure 26(d) provides that "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when

---

[1] JGR begins its Supplemental Memorandum in Support of Motion for Expedited Discovery by saying it learned of alleged file deletions after filing its Motion for Expedited Discovery. That is a curious statement. According to Mr. Walton's Second Supplemental Declaration, ECF 35-12 ¶¶ 25-26, the information about the alleged file deletions came from Mr. Walton's forensic review of Mr. Gabehart's JGR laptop in early December 2025.

authorized . . . by court order." Fed. R. Civ. P. 26(d). Courts in the Fourth Circuit apply a "reasonableness" or "good cause" standard when evaluating requests for expedited discovery. *See Dimension Data N. Am., Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528, 531 (E.D.N.C. 2005); *NAPCO, Inc. v. Landmark Tech. A, LLC*, 555 F. Supp. 3d 189, 225 (M.D.N.C. 2021); *Allen v. City of Graham*, No. 1:20-CV-997, 2021 WL 2037983, at *6 (M.D.N.C. May 21, 2021) (collecting cases).

Under this standard, courts consider the totality of the circumstances, including: (1) whether a motion for preliminary injunction is pending; (2) the breadth of the discovery request; (3) the purpose for requesting expedited discovery; (4) the burden on the opposing party to comply with the request; and (5) how far in advance of the typical discovery process the request is made. *See Allen*, 2021 WL 2037983, at *6. Courts also consider whether irreparable harm would result without access to expedited discovery. *See Teamworks Innovations, Inc. v. Starbucks Corp.*, No. 1:19-CV-1240, 2020 WL 406360, at *3 (M.D.N.C. Jan. 24, 2020).

Even where good cause exists, the discovery request must be "narrowly tailored to obtain information relevant to a preliminary injunction determination." *2311 Racing LLC v. Nat'l Ass'n for Stock Car Auto Racing, LLC*, 2024 WL 4919420, at *3 (W.D.N.C. Oct. 31, 2024) (quoting *Dimension Data N. Am., Inc.*, 226 F.R.D. at 532).

JGR's Motion fails to satisfy any of the factors courts consider in evaluating requests for expedited discovery. Each factor weighs against granting the Motion and in favor of allowing this case to proceed according to the traditional discovery schedule.

> 1. **The Expedited Discovery Is Being Sought Following the Preliminary Injunction Hearing**

JGR argues that expedited discovery is "particularly appropriate when a plaintiff seeks injunctive relief." Mot. at 7. But that principle applies to discovery sought *in preparation for* a preliminary injunction hearing—not discovery sought *after* such proceedings have already taken

place. *See Dimension Data*, 226 F.R.D. at 532 ("In the Fourth Circuit, where the circumstances permit, courts have allowed parties to engage in expedited discovery in preparation for a hearing on preliminary injunction.").

JGR's Motion misapprehends the purpose of expedited discovery in the preliminary injunction context. "A motion for expedited discovery must be 'reasonably timed' so that the moving party can incorporate the discovery responses into its briefing for the Court's consideration." *2311 Racing LLC*, 2024 WL 4919420, at *2. The cases JGR cites—*Teamworks Innovations*, *Bojangles' International*, and *Lab'y Corp. of America Holdings*—all involve discovery sought *before* a preliminary injunction hearing to allow the court to develop a factual record. None of those cases supports the proposition that a party is entitled to additional expedited discovery *after* the preliminary injunction hearing has already occurred.

Here, the Court has already held a hearing on JGR's Motion for Temporary Restraining Order on February 27, 2026. JGR did not move for expedited discovery when it filed its Complaint on February 19, 2026. ECF 1. Nor did it move for expedited discovery when it filed its Amended Complaint on February 24, 2026. ECF 8. It again did not move for expedited discovery in conjunction with its Motion for Temporary Restraining Order and Preliminary Injunction. ECF 9. Indeed, JGR waited until after the hearing on JGR's Motion for Temporary Restraining Order to decide it needed expedited discovery.

JGR has had the opportunity to present its case and submit evidence. Having done so, JGR now seeks additional discovery because it is dissatisfied with its own evidentiary presentation. That is not a proper basis for expedited discovery. The preliminary injunction phase exists to allow a court to make an initial evaluation based on available evidence—not to provide a platform for unlimited pre-trial discovery. JGR cannot use expedited discovery to relitigate what it failed to

prove at the TRO hearing. The appropriate remedy for JGR is the traditional discovery process, which will afford both parties a fair and orderly opportunity to develop the factual record.

### 2. There Is No Urgency Justifying Departure from the Traditional Discovery Timeline

Expedited discovery is warranted only when circumstances require immediate action that cannot await the normal discovery process. JGR has not demonstrated any such urgency here. The traditional discovery timeline prescribed by the Federal Rules exists to ensure that both parties have adequate time to gather, review, and produce documents in a manner that is fair and comprehensive. Forcing Defendants to respond within five business days—as JGR requests—would undermine these procedural protections and impose significant burdens without any corresponding benefit. *See 2311 Racing LLC*, 2024 WL 4919420, at *3 (finding that a five-day response timeframe would put a significant burden on Defendants).

There is no emergency here. JGR initiated this litigation after receiving the results of a forensic examination that confirmed Mr. Gabehart did not disclose any JGR Confidential Information. JGR chose its own timeline for filing suit. JGR chose to proceed to a TRO hearing without seeking expedited discovery first. Having made these choices, JGR cannot now claim that circumstances require the Court to compress the discovery schedule. Indeed, Mr. Walton's Second Supplemental Declaration indicates he knew (or at least had information about) these alleged file deletions in early December. ECF 35-12 ¶ 26. Any claimed urgency is purely a matter of contrivance.

The case should proceed on its normal course, with discovery conducted pursuant to this Court's standard scheduling procedures. Here, JGR's discovery requests are broad, invasive, and burdensome. Defendants would be required to search through communications and documents spanning months, involving multiple custodians, on an incredibly short deadline. This burden is

particularly unjustified given that JGR has already received verification—through a comprehensive forensic examination—that no misappropriation occurred.

### 3. JGR Cannot Demonstrate Irreparable Harm and Traditional Discovery Will Fully Protect Its Interests

Courts also consider whether the party seeking expedited discovery would suffer irreparable harm without it. *See Teamworks Innovations*, 2020 WL 406360, at *3. JGR cannot make this showing.

JGR has already presented its case for preliminary injunctive relief. The evidence that JGR compiled before filing this lawsuit—including the forensic examination of Mr. Gabehart's devices—is already in the record. JGR has not identified any specific, irreparable harm that will occur if it is required to follow the traditional discovery process. *See United Healthcare Servs., Inc. v. Richards*, 2009 WL 4825184, at *2 (W.D.N.C. Dec. 2, 2009) (explaining that generalized allegations that irreparable harm may occur are insufficient to meet the standard for expedited discovery). The traditional discovery timeline will afford JGR ample opportunity to pursue whatever additional information it believes it needs—there is no justification for circumventing that process here.

JGR's assertion that it must present a "more complete record" is misguided. Mot. at 9. This Court recently rejected an identical argument in the *2311* litigation. *See 2311 Racing LLC,* 2024 WL 4919420, at *3 (explaining that Plaintiffs' argument that it needs expedited discovery to "create a more fulsome record" is a concession "that they do not actually require expedited discovery, at least for the purpose of their motion for a preliminary injunction.") Like the Plaintiffs in the *2311* litigation, JGR does not address in its Motion the potential irreparable harm caused by a theoretical loss of evidence if the Court does not permit expedited discovery. *See id*.

Here, there is no risk that evidence will be lost if this case proceeds along the traditional discovery path. Prior to this lawsuit, the forensic examiner preserved Mr. Gabehart's cell phone and his Google Drive account. Further, any files that were flagged in the forensic examination have been permanently deleted by JGR's own forensic examiner. Unlike many cases where expedited discovery may be justified to prevent spoliation, forensic preservation has already occurred here. The evidence is secure. There is no urgency that would justify departing from the traditional discovery schedule.

JGR's Supplemental Memorandum does not change this analysis. JGR now asserts that certain files were deleted from Mr. Gabehart's Google Drive on November 23 and 25, 2025. Suppl. Mem. at 1-2. But these alleged deletions occurred before this litigation commenced, before Mr. Gabehart had any notice of potential claims, and before any preservation duty could have attached.

Moreover, JGR's own Supplemental Memorandum reveals the speculative nature of its theory. JGR identifies six allegedly deleted files, including "387A0190.tmp"—a temporary file—and "Structure_251125_141909.docx," a file with an obscure name that JGR admits it cannot identify. Suppl. Mem. at 2. JGR concedes that it does not know what these files contained, stating: "JGR and the Court may never know if those files contained JGR's Confidential Information and Trade Secrets." Suppl. Mem. at 5. This is not evidence of misappropriation—it is rank speculation about what allegedly deleted files might have contained.

JGR's reliance on *Chryso* is misplaced. In *Chryso*, the court permitted expedited discovery where there was evidence of active, ongoing destruction of evidence and a real threat of future loss. 2015 WL 12600175, at *5 (E.D.N.C. June 30, 2015). Here, by contrast, forensic preservation has already occurred. JGR's own examiner preserved Mr. Gabehart's devices and accounts months ago. There is no ongoing destruction and no threat of future loss. The file deletions JGR now

complains of occurred in November 2025—four months ago—and were known to JGR's examiner at the time of his examination. JGR's strained attempt to manufacture urgency from stale, pre-litigation file deletions should be rejected.

> B.  **JGR's Claims Are Based on Speculation, Not Evidence That Would Justify Expedited Procedures**

JGR's entire lawsuit—and this Motion for Expedited Discovery—is built on speculation, not evidence. JGR has not presented any evidence that Mr. Gabehart transmitted, distributed, or shared JGR's Confidential Information. JGR has not presented any evidence that Spire received any such information. JGR has not presented any evidence that its Confidential Information has been used by either Defendant.

Instead, JGR relies on conjecture. For example, JGR notes in its Motion that Mr. Gabehart searched for the word "indemnify" on his computer on December 4, 2025, and speculates that "[t]he timing of this search strongly suggests that Spire intended to and is indemnifying Gabehart for his costs and liability in this action." Mot. at 4. This is rank speculation. The fact that Mr. Gabehart searched for a legal term proves nothing about Spire's intentions or about any agreement between Mr. Gabehart and Spire. A more plausible explanation would be that Mr. Gabehart was researching terms he encountered in his own JGR Employment Agreement, in the proposed separation agreement that JGR had sent him, or simply educating himself about legal concepts relevant to his situation and/or the 2311/NASCAR lawsuit that was pending at the time and captivating the racing world.

In support of its Motion, JGR also points to the Declaration of Todd Berrier, which states that Mr. Gabehart told Mr. Berrier that he had a meeting with Spire co-owner Dan Towriss on or about October 21, 2025. Mot. at 4. That statement is false. Gabehart Second Decl. ¶¶ 33-34. Mr. Gabehart did not meet Mr. Towriss until February 28, 2026. *Id*. ¶ 34. Moreover, even if true, a

meeting between two members of the racing community would not establish good cause for expedited discovery.

JGR also argues that Mr. Gabehart interacted with a OneDrive account while accessing JGR information in October 2025, while he was still a full-time JGR employee in the middle of racing season. Mot. at 4. JGR treats this ordinary workplace activity as inherently suspicious. But in October 2025, Mr. Gabehart was actively managing race operations for JGR's Cup teams during the height of the NASCAR season. Does JGR seriously not expect that an employee in that role would access company information and use cloud storage platforms like OneDrive as part of his daily work responsibilities? JGR provides no evidence that Mr. Gabehart shared any information with third parties or did anything other than perform his job. JGR asks this Court to infer wrongdoing from the mere fact that an employee used standard workplace technology while employed. This is not evidence—it is speculation dressed as suspicion.

JGR's Supplemental Memorandum doubles down on this speculative approach. JGR now argues that the alleged deletion of files from Mr. Gabehart's personal Google Drive in November 2025 is evidence that he "took" JGR's "Confidential Information and Trade Secrets." Suppl. Mem. at 1-2, 5. But JGR cannot identify what these files contained. File names, standing alone, do not establish that any Confidential Information was taken, shared, or misused. Deleting files from a personal cloud account before litigation—when no preservation duty exists—is ordinary digital housekeeping, not evidence of wrongdoing. That is not a basis for expedited discovery.

Further, JGR's reliance on the so-called "inconsistencies" in Defendants' positions at the February 27, 2026 hearing is unavailing. The fact that counsel could not immediately provide—at a quickly-scheduled TRO hearing—the exact date of Mr. Gabehart's first day of work for Spire is hardly evidence of wrongdoing. As the Declaration of Heather Masterson made clear, Mr.

9

Gabehart's first day of work for Spire was February 16, 2026, and he signed an employment agreement on February 17, 2026. ECF 20 ¶¶ 5-8 ("Masterson Decl."). These facts have been established on the record. JGR's assertion of "gaps" in Defendants' story is a litigation tactic, not a legitimate basis for expedited discovery. JGR's Supplemental Memorandum further notes that Mr. Gabehart's "compensation began on February 9, 2026" while his "first day of work" was February 16, 2026. Suppl. Mem. at 4. This is unremarkable. JGR offers no evidence that this timing reflects anything improper.

The forensic evidence in this case is dispositive. JGR's own forensic examiner examined Mr. Gabehart's devices and found no evidence of misappropriation. He further preserved the contents of those devices and accounts. JGR's continued pursuit of expedited discovery based on speculation is not justified by any legitimate evidentiary need. If JGR wishes to pursue additional discovery, it may do so through the ordinary discovery process-which will provide both parties with adequate time to respond and will ensure that the discovery is conducted in an orderly and fair manner.

### C. If the Court Grants Any Expedited Discovery, It Must Be Reciprocal

Should the Court be inclined to grant JGR's Motion in any respect, Defendants respectfully request that any expedited discovery be reciprocal. Fairness requires that Defendants have the same opportunity to gather relevant evidence that JGR seeks for itself. *See CIENA Corp. v. Jarrard*, 203 F.3d 312, 324 (4th Cir. 2000) (remanding with instructions to provide defendant with opportunity to conduct expedited discovery).

Specifically, Defendants request the opportunity to conduct discovery on the following topics if expedited discovery is granted:

**First**, Defendants are entitled to discovery concerning Mr. Gabehart's compliance with Section 6, Paragraph 2 of the Employment Agreement. JGR has taken the position that

Mr. Gabehart did not validly exercise his rights under Section 6, and that his termination was "for cause." Defendants are entitled to explore JGR's communications and documents relating to Mr. Gabehart's written notice under Section 6, JGR's evaluation of that notice, negotiation of a separation agreement with Mr. Gabehart, JGR's decision to place Mr. Gabehart on "garden leave," JGR's withholding of wages, and records concerning Mr. Gabehart's employment status. These documents are exclusively in JGR's possession and are directly relevant to whether any noncompete obligation applies.

**Second**, Defendants are entitled to discovery concerning JGR's internal communications about Mr. Gabehart's exercise of his contractual rights. The text messages between Mr. Gabehart and Tim Carmichael demonstrate that JGR leadership understood Mr. Gabehart was exercising his rights under Section 6 and did not blame him for doing so. Defendants are entitled to discover what other JGR personnel communicated about this subject, and whether JGR's after-the-fact "termination for cause" was a pretext designed to avoid the consequences of Section 6.

**Third**, Defendants are entitled to discovery concerning JGR's decision to terminate Mr. Gabehart for cause after the forensic examination confirmed no misappropriation occurred. The alleged termination notice was not issued until February 9, 2026—three months after Mr. Gabehart exercised his rights under Section 6, nearly three months after JGR began withholding his wages, and after the forensic examination confirmed no misappropriation. Defendants are entitled to explore the circumstances of this belated termination decision, including what JGR knew and when.

The principle is straightforward: if JGR is entitled to expedited discovery from Defendants, then Defendants are entitled to the same from JGR. Any other result would give JGR an unfair

advantage and deprive Defendants of the opportunity to develop their defenses. *See Dimension Data*, 226 F.R.D. at 532 (recognizing court's broad discretion to structure discovery fairly).

### III. CONCLUSION

For the foregoing reasons, Defendant Christopher Gabehart respectfully requests that this Court deny Plaintiff Joe Gibbs Racing, LLC's Motion for Expedited Discovery in its entirety and allow this case to proceed according to the traditional discovery timeline. JGR's Supplemental Memorandum provides no new evidence of actual misappropriation-only further speculation based on pre-litigation file deletions that JGR's own forensic examiner was aware of and that do not establish any ongoing risk of harm.

If, however, the Court is inclined to grant any discovery, Defendants respectfully request that such discovery be reciprocal, including discovery concerning Mr. Gabehart's compliance with Section 6, Paragraph 2 of the Employment Agreement and JGR's communications relating to that compliance.

Respectfully submitted,

This the 11th day of March, 2026.

By: */s/ Cary B. Davis*
Cary B. Davis
N.C. Bar No. 36172
cdavis@rbh.com

Spencer T. Wiles
N.C. Bar No. 53664
swiles@rbh.com

William M. Miller
N.C. Bar No. 36946
wmiller@rbh.com

Anna Claire Tucker
N.C. Bar No. 59457
atucker@rbh.com

Robinson, Bradshaw & Hinson, P.A.
600 S. Tryon Street, Suite 2300
Charlotte, North Carolina 28202
(704) 377-2536

*Attorneys for Defendant Christopher Gabehart*

# ARTIFICIAL INTELLIGENCE CERTIFICATION

Pursuant to the Court's June 18, 2024 Order, 3:24-mc-104, I hereby certify that:

- No artificial intelligence was employed in doing the legal research for the preparation of this document, with the exception of such artificial intelligence embedded in standard on-line legal research sources such as Westlaw, Lexis, FastCase, and Bloomberg; and

- Every statement and every citation to an authority contained in this document has been checked by an attorney at this firm and/or paralegal working at their direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 11th day of March, 2026.

/s/ *Cary B. Davis*
Cary B. Davis