# Exhibit D

| | |
|---|---|
| JOE GIBBS RACING, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>CHRISTOPHER GABEHART and SPIRE MOTORSPORTS, LLC,<br><br>    Defendants. | **DECLARATION OF STEPHEN D'HONDT** |

## DECLARATION OF STEPHEN D'HONDT

I, Stephen D'Hondt, declare under penalty of perjury, as follows:

1. I am a resident of Mooresville, North Carolina, and I am over eighteen years of age. The statements below are made on the basis of my personal knowledge and belief.

2. I swear to this Declaration with the understanding that it be used to oppose Plaintiff Joe Gibbs Racing, LLC's ("JGR") Motion for a Preliminary Injunction.

3. I am the Chief Operating Officer ("COO") at Spire Holdings, LLC ("Spire Holdings"), a company that owns Spire Sports and Entertainment, Greenville Swamp Rabbits, Rapid City Rush, Trois-Rivieres Lions, Track Enterprises, and Spire Motorsports ("Spire"). As COO, I am familiar with Spire's business operations, including marketing and brand partnerships.

4. My job duties include, among other things, cultivating relationships with potential sponsors and pursuing potential sponsors on behalf of Spire. I do this by building and maintaining long-term business relationships with potential sponsors, discussing sponsorship opportunities with potential sponsors, and routinely contacting potential sponsors.

5. My job duties extend to the full portfolio of Spire Holdings properties. For example, Spire Holdings owns several hockey teams that pursue sponsorships and even products, including products offered by Zep, Inc. ("Zep"). Spire Holdings also has an arm focused on providing consulting services for race events, which I help to oversee.

6. I have been made aware of a declaration submitted in this case by Greg Heyer on March 6, 2026 (the "Heyer Declaration," Dkt. 35-7). The Heyer Declaration states that I texted Mr. Heyer on February 27, 2026, inviting him to an event hosted by Spire on March 7, 2026.

## MY COMMUNICATIONS WITH MR. HEYER

7. I have known Mr. Heyer since approximately 2024. I have had many conversations with him about Spire's interest in having Zep as a sponsor, and in fact Mr. Heyer visited Spire's physical facility in 2024 to explore the option of sponsoring Spire.

8. I have stayed in touch with Mr. Heyer even though Zep does not, at this time, appear interested in sponsoring Spire.

9. Mr. Heyer informed me on January 19, 2026 via text message that JGR had recently announced a sponsorship deal with Zep. In that same text message, Mr. Heyer told me he "[l]ook[ed] forward to catching up." I responded "Sounds good – congrats on the news!"

10. On February 27, 2026, I invited Mr. Heyer to an event hosted by Spire in Phoenix, Arizona on March 7, 2026. Mr. Heyer responded: "Hey! Appreciate you thinking of me. I will not be at the race but would love to catch up with you. You around tomorrow afternoon? Talk soon." Mr. Heyer did not appear at all surprised by my invitation.

11. The purpose of inviting Mr. Heyer to this event was to maintain and build upon my existing relationship with him. This sort of networking with potential sponsors is a constant

and ongoing part of our business. Often, these get-togethers are not intended to result in immediate new business (and rarely do).

12. I knew that JGR had publicly announced that Zep would be sponsoring JGR during the 2026 NASCAR season,[1] but I also know that sponsors sometimes choose to sponsor multiple teams in a single season (or multiple events across various teams that are within Spire Holdings' portfolio, such as Spire Holdings' hockey teams). It is also not uncommon for sponsors to change their sponsorships after a season ends. For example, Zep itself has changed its sponsorship several times in the last few years in the NASCAR Cup Series.

13. Networking is a major component of Spire Holdings' business. The business depends on forming deep relationships between vendors, racetrack vendor providers, sponsors, NASCAR business people, and other industry stakeholders. Events like the March 7, 2026 concert are an opportunity for Spire Holdings to deepen these relationships and showcase Spire Holdings' broad-based initiatives and industry connections. For the March 7, 2026 event in particular, I invited individuals who I knew would be in the area for the Phoenix race.

14. In my experience, sponsorship deals are not always exclusive. There are many different reasons that may motivate a sponsorship deal, including brand publicity, business development, and corporate relationships, which under the right circumstances could be amplified by sponsoring multiple distinct organizations or teams.

### MY LACK OF COMMUNICATION WITH MR. GABEHART

15. I have not had any communication with Christopher Gabehart regarding JGR sponsors or sponsorships more generally.

---

[1] *See Joe Gibbs Racing to Partner with Zep in 2026*, Zep.com (Jan. 19, 2026), https://zep.com/blogs/news/joe-gibbs-racing-to-partner-with-zep-in-2026

3

16. To the best of my knowledge, Spire Holdings did not ask for, does not want, and otherwise does not need sponsorship information from JGR. Further, I have not been made aware of any non-public information regarding JGR's deals with sponsors, or any non-public JGR information for that matter. The sole exception is that, between 2019 and 2024, I personally assisted a sponsor (who was a client for Spire Sports and Entertainment) with negotiating a sponsorship agreement with JGR and subsequently managing the relationship between JGR and the sponsor. In that role, I was privy to JGR's communications with its sponsor, who was Spire Sports and Entertainment's client.

17. I have never received any JGR confidential information or trade secret information of any kind from Mr. Gabehart.

18. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 10, 2026

_____
Stephen D'Hondt

5