# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | | |
|---|---|---|
| JOE GIBBS RACING, LLC, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No: 3:26-cv-00133 |
| | ) | |
| CHRISTOPHER GABEHART and SPIRE | ) | |
| MOTORSPORTS, LLC, | ) | Honorable Susan Rodriguez |
| *Defendants.* | ) | |
| | ) | |
| | ) | |

## DEFENDANT SPIRE MOTORSPORTS, LLC'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF JOE GIBBS RACING, LLC'S <u>MOTION FOR A PRELIMINARY INJUNCTION</u>

Pursuant to this Court's March 18, 2026, order, Dkt.48, Defendant Spire Motorsports, LLC ("Spire") files this Supplemental Brief in Opposition to Plaintiff Joe Gibbs Racings, LLC's ("JGR") Motion for a Preliminary Injunction.

## INTRODUCTION

By ordering JGR to produce a narrow set of documents on an expedited basis, the Court pressure tested the wide-ranging allegations and accusations JGR has lodged in this short-lived but heavily-litigated case. JGR's sworn declarations, insinuations, and allegations buckled under the pressure. In fact, JGR's basis for preliminary injunctive relief against Spire is weaker now than it ever has been. The Court should deny JGR's motion for a preliminary injunction as to Spire and allow the parties to proceed expeditiously to the merits.

## FACTUAL BACKGROUND

JGR filed the operative Amended Complaint on February 24, 2026, alleging that Defendants Chris Gabehart and Spire misappropriated JGR's trade secrets, that Gabehart breached his Employment Agreement with JGR by accepting employment with Spire, and that Spire tortiously interfered with Gabehart's Employment Agreement. *See generally* Dkt.8 ("Am. Compl."). JGR moved for a preliminary injunction and temporary restraining order ("TRO") that same day. *See* Dkt.9.

This Court held hearings on JGR's motion on January 27, 2026 and on March 2, 2026, after which the Court entered a narrow TRO that did not include Spire within its scope. Dkt. 26. JGR moved for expedited discovery, Dkt.22, and the Court scheduled a hearing on that Motion, as well as JGR's preliminary injunction Motion for March 16, 2026. The March 16 hearing focused on JGR's expedited discovery request, and the Court ordered certain limited discovery of Gabehart and JGR, but not of Spire, and continued the hearing on JGR's preliminary injunction motion. JGR and Gabehart produced documents pursuant to this Court's expedited discovery order on

1

March 24.  The Court also allowed the parties to supplement their preliminary injunction papers by March 25, in preparation for the March 26 preliminary injunction hearing. Text-Only Order (Mar. 16, 2026).

**ARGUMENT**

JGR is not entitled to a preliminary injunction against Spire because it has not—and cannot, even after discovery—establish a likelihood of success on the merits of any of its claims against Spire.  Nor does JGR face irreparable harm, given the utter lack of evidence supporting its misappropriation and tortious interference claims.  Spire, in contrast, would suffer tremendous harm from the wrongful issuance of a preliminary injunction that enjoins Gabehart—the Chief Motorsports Officer of Spire's entire multi-series enterprise—from working for Spire in the middle of the NASCAR season. As explained below, nothing about the evidence produced in response to this Court's expedited discovery ruling changes this conclusion.

**I.      There Is No Evidence To Support JGR's Trade Secrets Claims As To Spire**

As Spire explained in its opposition brief, JGR's misappropriation of trade secrets claim against Spire is likely to fail because Plaintiff has produced no evidence that Spire was involved in Gabehart's misappropriation of JGR's information in any way.  Dkt.45 ("Br.") at 9.  For instance, there is no evidence Spire recruited or encouraged Gabehart to access JGR's documents, nor that those documents were ever provided to Spire or ended up on Spire's systems.  To the contrary, the only evidence is that Spire—once it learned of JGR's misappropriation claims—has gone to great lengths to avoid accessing or learning about the information at issue, including by instructing Gabehart not to disclose the information, entering into an agreement with Gabehart prohibiting such disclosure, and offering to enter into an agreement with JGR concerning the same. Br.7.  Spire further took steps to prevent any possible transmission of JGR information by confiscating and quarantining Gabehart's Spire laptop (which he had for a brief period only after

2

JGR's forensic examiner deleted the information he acquired), cutting off Gabehart's Spire email, and revoking his access to all Spire systems on March 18.

Recognizing the complete lack of evidence implicating Spire in Gabehart's interaction with JGR information, JGR grasps at straws in its supplemental preliminary injunction brief to argue that Spire's communication with certain of JGR's sponsors is evidence of a "threat" of misappropriation by Spire. Dkt.35 at 16. But as Spire explained, the identity of JGR's sponsors is public knowledge, cultivating relationships with potential sponsors is a long-term endeavor unrelated to Gabehart, and JGR's sponsor declarations are full of unfounded insinuations. Br.11; *compare* Dkt.35-7 ("Heyer Dec.") (stating that D'Hondt invited Heyer to a Spire event in February 2026, and that he would "be surprised to receive an invitation from NASCAR teams Zep is not sponsoring"), with Dkt.45-5 ("D'Hondt Dec.) (explaining that D'Hondt has known Heyer since 2024 and has had conversations about potentially sponsoring Spire on multiple occasions prior to the events in this lawsuit); *compare* Dkt.35-8 ("Lealos Dec.") (stating that Sieradzan contacted Lealos in February 2026 to "discuss the racing industry"); *with* Dkt.45-6 ("Sieradzan Dec.") (explaining that Spire's contact with Lealos in February 2026 was "for the purpose of networking and building a relationship with a well-known industry leader").

Despite the production of hundreds of documents in expedited discovery, there remains *no evidence* to support misappropriation claims against Spire. Not a *single document* in either JGR's or Gabehart's production so much as suggests that Spire ever received or otherwise had access to any of JGR's confidential information. In the absence of *any* evidence of misappropriation by Spire, JGR has failed to satisfy its burden of demonstrating a reasonable likelihood of success on its trade secrets claims, so its motion for a preliminary injunction on this claim as to Spire should be denied. In fact, JGR recognizes that the expedited discovery they convinced this Court to grant

has not borne fruit for their claims, as JGR has communicated to Spire an intent to request ever-expanding expedited discovery directly from Spire—a blatant fishing expedition that should not be entertained by this Court, should JGR ultimately move for such relief.

## II. There Is No Evidence To Support JGR's Tortious Interference Claim

Likewise, and as Spire explained in its opposition brief, JGR is unlikely to succeed on the merits of its tortious interference claim for four, independently sufficient reasons: (1) there is no evidence that Spire acted "without justification" when it hired Gabehart; (2) the restrictive covenant at issue is facially inapplicable because Gabehart was terminated without cause or, alternatively, JGR breached the agreement by failing to pay him; (3) the restrictive covenant is unenforceable as a matter of law because it is far broader than necessary to protect JGR's legitimate interests; and (4) Gabehart is in compliance with the restrictive covenant because his role as Chief Motorsports Officer at Spire does not involve the same type of services as his role as Competition Director at JGR. Br.13-23.

None of the documents produced in the course of expedited discovery compel a different conclusion. To the contrary, several documents in JGR's production fundamentally undermine the factual premises on which its tortious interference claim is based, and at times directly contradict the sworn declarations submitted by JGR.

*First*, JGR's tortious interference claim rests on the erroneous premise that the 18-Month Non-Compete applies in the first place because Gabehart was terminated for cause. Dkt. 10 at 18.

4

████████████████████████████████████████ This statement is an admission that JGR terminated Gabehart's employment in November not for cause, ██████ ████████████████████ ████████████████████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████

██████████████████ This ████████████████ flatly contradicts JGR's insinuations at various points in this case that Gabehart simply stopped working for JGR of his own accord. *E.g.*, Dkt.7–8. To the contrary, it shows that, even though Gabehart remained willing and able to perform for JGR, Dkt.12 ("Gabehart Dec.") ¶ 18, JGR had already deemed his employment terminated—well before the February 9 letter purporting to terminate his employment "for cause," Dkt.12-8.

*Second*, JGR bases its tortious interference claim on the speculation that Spire is indemnifying Gabehart, which it argues is proof Spire knew about and ignored the 18-Month Non-Compete. Dkt.35 at 9; Dkt.22 at 4. But JGR's speculation is demonstrably false. Despite court-order discovery on this topic, Gabehart's document production contains no evidence of such indemnification. Nor could it, as Spire is not indemnifying—and has never indemnified—Gabehart in these proceedings, as explained in the contemporaneously filed Second Declaration of Bill Anthony. Second Anthony Dec. ¶¶ 6–7. (attached hereto as "Exhibit E").

*Third*, JGR's tortious interference claim requires proof that Spire acted "without justification"—a condition JGR argues exists because, in its view, Spire knew that Gabehart was subject to the 18-Month Non-Compete when it engaged him in employment discussions and ultimately hired him as Chief Motorsports Officer. Dkt.10 at 18. As Spire explained in its opening

5

brief, JGR's legal premise is fundamentally flawed because hiring an employee bound by a non-compete does not alone give rise to liability for tortious interference. Br.14. But in any case, JGR's document production confirms that in November 2025, JGR *itself* believed the non-compete was inapplicable. ██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████ As an initial matter, ████████████████████████████████████████ directly contradicts the sworn statements he filed with this Court on February 27, 2026, in which he stated that he "did not understand Gabehart's November 7, 2025" email memorializing the conversation between Gabehart and Coach Gibbs on November 6 "to constitute written notice under his Employment Agreement." Dkt.18 at 1.

Moreover, this document shows that, at the time these events were transpiring, JGR understood that Gabehart's termination would trigger the 18-Month Non-Compete ██████ ████████████████████████████████████████ But the record on this point is undisputed—JGR stopped paying Gabehart in mid-November. Dkt. 46-2 ("Rogers Dec.") ¶ 3. ██████████████████████████████████

██████████████████████████████████████████

█████████████████ ████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

[REDACTED]

[REDACTED]

[REDACTED]

*Fourth*, JGR has defended the enforceability of the 18-Month Non-Compete's extremely broad scope as being necessary to protect its confidential information, Dkt.35 at 11–15, but documents from JGR's production confirm that JGR never viewed the Non-Compete as necessary for that purpose prior to this litigation. For instance, [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] That JGR was [REDACTED]

[REDACTED] (or under other specific circumstances in his employment agreement, *see* Dkt.45 at 21), confirms that JGR did not actually view any non-compete as necessary to protect its information—let alone one of such sweeping scope as the 18-Month Non-Compete at issue here.  If JGR truly believed that the Non-Compete was necessary to safeguard protectable interests, it never would have [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] and JGR therefore has no basis to now argue that Gabehart was in fact bound by that restriction at the time Spire sought to hire him.

## CONCLUSION

For the reasons stated herein and in Spire's initial brief in opposition to JGR's motion for a preliminary injunction, the Court should deny JGR's motion for a preliminary injunction.

7

Dated: March 25, 2026

Respectfully submitted,

By: */s/ Joshua D. Davey*

Joshua D. Davey
N.C. Bar No. 35246
Lawrence J. Cameron
N.C. Bar No. 41922
Troy C. Homesley, III
N.C. Bar No. 62148
**TROUTMAN PEPPER LOCKE LLP**
301 S. College St., 34th Floor
Charlotte, NC 28202
Telephone: (704) 916-1503
joshua.davey@troutman.com
lawrence.cameron@troutman.com
troy.homesley@troutman.com

John S. "Evan" Gibbs III – Pro Hac Vice
**TROUTMAN PEPPER LOCKE LLP**
600 Peachtree St, NE #3000
Atlanta, GA 30308
Telephone: (404) 885-3093
evan.gibbs@troutman.com

8

**CERTIFICATION CONCERNING USE OF ARTIFICIAL INTELLIGENCE**

Pursuant to the United States District Court for the Western District of North Carolina's June 18, 2024 Standing Order, I hereby certify that no artificial intelligence was employed in doing the research for the preparation of this document, with the exception of artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg. I further certify that every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Dated: March 25, 2026

*/s/ Joshua D. Davey*

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing **SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF JOE GIBBS RACING, LLC'S MOTION FOR A PRELIMINARY INJUNCTION** with the Clerk of Court using the CM/ECF system, which will automatically notice and serve this document on all counsel of record.

Dated: March 25, 2026

*/s/ Joshua D. Davey*