# EXHIBIT 1



# *JGR v. Gabehart*
# Allegations v. Reality

# JGR Claims Spire Has Acquired and Used JGR Trade Secrets

| JGR Claims | The Facts Show |
|---|---|
| "The evidence establishes that Gabehart **and Spire** have unlawfully acquired and used JGR's Confidential Information and Trade Secrets—as defined in the Memorandum." Dkt. 9, ¶ 3 (emphasis added).<br><br>"The expedited discovery confirms what the existing record already strongly suggested: Gabehart accessed JGR's most competitively sensitive information, systematically operationalized it for Spire's benefit, and **did so with Spire's knowledge and encouragement**." JGR's Supplement Brief, Dkt. 59, p. 7 | JGR has failed to cite to a single piece of evidence of Spire unlawfully soliciting, acquiring, or using JGR's Confidential Information and Trade Secrets.<br><br>Instead, JGR cites to Gabehart's alleged conduct, incorrect assumptions about indemnification, and most recently his compensation in support of this bare allegation. |

# JGR Claims that Gabehart's Role at JGR and His Role At Spire Entirely Overlap

| JGR Claims | The Facts Show |
|---|---|
| "There is no reasonable justification for Spire to hire Gabehart to a role that almost entirely overlaps with his role at JGR knowing it would cause Gabehart to violate his noncompete obligation to JGR."<br><br>Dkt. 10 ("JGR's Memo. in Support of TRO and PI"), p. 18.<br><br>"Spire structured [Gabehart's] role as Chief Motorsports Officer to encompass precisely the same services he performed for JGR as Competition Director."<br><br>Dkt. 35 ("JGR's Supp. Memo. in Support of TRO and PI"), p. 11. | No evidence that Gabehart's role at Spire "almost entirely overlaps with his role at JGR" or includes "the same services he performed at JGR."<br><br>Dkt. 45-2 ("Dickerson Decl.") ¶ 57-59; Dkt. 37 ("Second Gabehart Decl."), ¶ 6, 21.<br><br>Gabehart's role at Spire is that of the "Athletic Director." At JGR, he was the "Head Coach." The two roles have fundamentally different levels of authority.<br><br>No credible evidence that Spire hired Gabehart knowing that would cause Gabehart to violate his noncompete obligation to JGR. |

# JGR Claims that the December 3, 2025, Call Between Mr. Schaffer and Mr. Anthony Was Notice That Gabehart Was Subject to a Non-Compete

| JGR Claims | The Facts Show |
|---|---|
| "On December 3, 2025, Schaffer called Spire's President, Bill Anthony, and informed him that Gabehart's Employment Agreement with JGR contained a noncompete provision. Schaffer further warned that if Spire hired Gabehart into a role that violated that agreement, JGR would consider Spire to be tortiously interfering with JGR's contractual rights." <br><br> JGR's Supp. Memo. in Support of TRO and PI, p. 9. <br><br><br> "During that call, I informed Anthony that Gabehart's Employment Agreement with JGR contained a noncompete provision. I also informed Anthony that, should Spire hire Gabehart to a role that violated his Employment Agreement, JGR would consider Spire to be tortiously interfering with JGR's contractual rights." <br><br> Dkt. 35-5 ("Schaffer Dec.") ¶ 5. | Schaffer never made any of these statements to Bill Anthony. <br><br> Dkt. 45-3 ("Anthony Decl."), ¶ 7-11. |

# JGR Claims Spire is Indemnifying Gabehart

| JGR Claims | The Facts Show |
|---|---|
| "Gabehart conducted a Google search for the term "indemnify" at 12:15 a.m. on December 4, 2025—only hours after Schaffer's call. It begs the question, why would Gabehart suddenly research indemnification in the middle of the night? The logical inference is because Spire had just warned him about potential legal exposure and agreed to pay his expenses."<br><br>JGR's Supp. Memo. in Support of TRO and PI, p. 7.<br><br><br>"Here, the evidence favors finding that Spire had knowledge of Gabehart's non-compete agreement and agreed to pay his legal fees, as Gabehart suddenly researched "indemnify" hours after JGR warned Spire of his contractual obligations"<br><br>JGR's Supp. Memo. in Support of TRO and PI, p. 8. | Spire is not indemnifying Gabehart.<br><br>Dkt. 56-5 ("Second Anthony Decl."), ¶ 6-7. |

# JGR Claims Spire Contacting JGR's Sponsors is Proof of a Threat of Misappropriation

| JGR Claims | The Facts Show |
|---|---|
| "Spire is contacting JGR partners and sponsors that Spire had never contacted prior to Gabehart's employment at Spire…. Spire targeted JGR's sponsors only after Gabehart took information pertaining to JGR's sponsorship revenue and business arrangements and transitioned to Spire, further establishing at least a "threat" of trade secret misappropriation." JGR's Supp. Memo. in Support of TRO and PI, p. 16 (cleaned up); Dkt. 35-7, Declaration of Greg Heyer; Dkt. 35-8, Declaration of Bill Lealos | Neither Stephen D'Hondt nor Cameron Sieradzan have had any material contact with Mr. Gabehart or received any JGR information. It is a normal part of their roles to reach out to perspective sponsors, especially those that are already interested in sponsoring NASCAR teams. Dkt. 45-5 ("D'Hondt Decl."); Dkt. 45-6 ("Sieradzan Decl."). D'Hondt has clarified that he had regular contact with Zep, Inc.'s Mr. Heyer long before Spire hired Mr. Gabehart. D'Hondt Decl., ¶ 7-8. JGR admits that this is the basis to demonstrate their likelihood of success on the merits of misappropriation of trade secrets as to Spire and is the only "evidence" they cite. |

# Tim Carmichael's Inconsistent Statements

| JGR Claims | The Facts Show |
|---|---|
| "I am not aware that Gabehart delivered any such written notice to JGR on or about November 6, 2025, or any other time." Dkt. 18 ("Second Carmichael Declaration"), ¶ 4.<br><br>"I did not understand Gabehart's email date November 7, 2025, at 10:46 a.m. to constitute written notice under his Employment Agreement effective December 1, 2025." Second Carmichael Declaration, ¶ 6. | In a text message between Tim Carmichael and Wally Brown on November 18, 2025, Carmichael stated that Gabehart "**[REDACTED AT JGR'S REQUEST].**" JGR_0000306.<br><br>He then stated, "Does he want to go somewhere else or does he want to get paid by JGR." JGR_000306. |

# JGR Claims the $100,000 Payment to Gabehart Was a "Coincidence" And Not Indicative of Notice

| JGR Claims | The Facts Show |
|---|---|
| The Court stated to JGR counsel, "Right. But I'm looking at your exhibits. This is an email from Tim Carmichael on November 10th. It references the buyout of a hundred K, so it does look like [the Section 6 carve-out] was contemplated." Judge Rodriguez, TRO Hearing 14:24-15:2.<br><br>In response, JGR's counsel stated that "It's coincidental that [Gabehart and Carmichael] happened to be negotiating about money that ends up being somewhat similar to that figure." Hutchins, TRO Hearing 16:12-15.<br><br>JGR's counsel would go on to say emphatically the "[Section 6 carve-out] hadn't been invoked." Hutchins, TRO Hearing 20:14. | In a text message between Tim Carmichael and Wally Brown on November 18, 2025, Carmichael stated that Gabehart "**[REDACTED AT JGR'S REQUEST].**" JGR_0000306.<br><br>He then stated, "Does he want to go somewhere else or does he want to get paid by JGR." JGR_000306.<br><br>This demonstrates a clear understanding from Carmichael that JGR was proceeding under the Section 6 carve-out, the only part of the Employment Agreement containing such a provision. |

# JGR Alleges Without Evidence Spire is Using JGR Information in Races

| JGR Claims | The Facts Show |
|---|---|
| "The information it seeks via early discovery is likely to reveal the manner in which Gabehart and Spire discussed the Confidential Information and Trade Secrets Gabehart admittedly took from JGR, and how it was used." <br> JGR's Supp. Memo. in Support of TRO and PI, p. 2. | No evidence that Gabehart and Spire discussed the Confidential Information and Trade Secrets Gabehart took from JGR. <br><br> Even after expedited discovery, there is no evidence supporting discussion about or use of JGR Confidential Information and Trade Secrets. |
| "Every race that Gabehart and Spire compete using JGR's proprietary strategies and technical information inflicts irreparable harm on JGR…." <br> JGR's Supp. Memo. in Support of TRO and PI, p. 2. | No evidence that Spire is competing using JGR's proprietary strategies and technical information. |

# Despite JGR's Assertion to the Contrary, Spire was Open Book

| JGR Claims | The Facts Show |
|---|---|
| "We have had no access to Spire nor offer to review Spire's computers." <br> Hutchins, TRO Hearing 46:23-24. | Not true. Spire did offer to let JGR review its systems, and it ignored the offer and instead filed this lawsuit. <br> Dickerson Decl., ¶ 55-56. |

# JGR's Disparagement of Third-Parties

| JGR Claims | The Facts Show |
|---|---|
| JGR requested "Third-Party Subpoenas to the entities and individuals listed below for production of communications referencing or referring to Spire's possession of JGR's materials and data: Hass Factory Team – Joe Custer; Trackhouse Racing – Justin Marks (Owner),Todd Meredith; Rick Ware Racing – Rick Ware, Tommy Baldwin" <br><br>Dkt. 49-1("Demonstrative Exhibit"), p. 3. | Even though the Court gave JGR the opportunity, JGR has not presented a single basis for requesting third-party subpoenas as to these individuals and teams. |

# What is JGR's Motivation?

| JGR Claims | The Facts Show |
|---|---|
| "Even though Gabehart and Spire Motorsports have said they haven't used any of JGR's trade secrets, Melsheimer said, 'We don't have any basis for believing that.'"<br><br>Deb Williams, *Judge Grants JGR Discovery, But Warns Against 'Fishing Expedition,'* Autoweek (Mar. 16, 2026) (Tom Melsheimer's statement to the media on the courthouse steps following the March 16, 2026, expedited discovery hearing). | All of the evidence points to Spire ***not*** using JGR's trade secrets, not the other way around. |

# JGR Has Not Shown a Likelihood of Success on the Merits

- **Misappropriation of Trade Secrets**
  - All allegations and evidence relate to Gabehart—not Spire
  - No evidence—including after expedited discovery—that Spire had anything to do with any alleged misappropriation
  - Spire has taken measures to affirmatively prevent any disclosure to Spire
  - Spire's contact with JGR's sponsors in February 2026 is insufficient to demonstrate "threat" of misappropriation given nature of sponsorship engagement and pre-existing relationships

# JGR Has Not Shown a Likelihood of Success on the Merits

- **Tortious Interference**
  - **No evidence that Spire acted with "malice"**
    - Spire had no knowledge of 18-Month Non-Compete
    - Evidence shows the Spire was motivated by legitimate competition
    - JGR's indemnification arguments are meritless, as Spire is not indemnifying Gabehart
  - **The 18-Month Non-Compete does not apply**
    - If Gabehart terminated without cause in November → Non-Compete is inapplicable
    - If Gabehart terminated for cause in February → JGR breached
    - Expedited discovery shows that JGR itself did not believe the 18-Month Non-Compete would apply if it ceased paying Gabehart
  - **The 18-Month Non-Compete is unenforceable**
    - JGR's proposed PI shows that the 18-Month Non-Compete is fatally overbroad and raises absurd questions
    - Scope of restriction is broader than necessary to protect JGR's interests
  - **Gabehart is in compliance with the 18-Month Non-Compete**
    - Roles are distinct: think football coach versus athletic director

# JGR Has Not Shown Irreparable Harm

- **JGR's Harm is Speculative**
  - No evidence that Gabehart ever shared any JGR information with Spire
  - Spire has taken affirmative steps to prevent acquiring JGR information
- **JGR's Harm is Not Irreparable**
  - Money damages are adequate to compensate tortious interference, if JGR prevails at trial
- **JGR's Harm is Not Imminent**
  - JGR aware that Gabehart was going to Spire three months prior to filing suit
  - JGR aware of alleged misappropriation two months prior to filing suit



Thank You