# EXHIBIT 1

# Joe Gibbs Racing, LLC v. Christopher Gabehart and Spire Motorsports, LLC

Joe Gibbs Racing, LLC's Motion for Preliminary Injunction

1


















Case 3:26-cv-00133-SCR-DCK    Document 64-1    Filed 03/26/26    Page 3 of 93

# JGR Leads; Spire Trails (2019-2026)

| TEAM | STARTS | POLES | WINS | T5S | T10S | LAPS LED |
|---|---|---|---|---|---|---|
| JGR (Joe Gibbs Racing) | 1024 | 66 | 70 | 333 | 525 | 20307 |
| Hendrick Motorsports | 1024 | 68 | 68 | 279 | 478 | 17713 |
| Team Penske | 775 | 40 | 43 | 200 | 339 | 11760 |
| Stewart-Haas Racing | 864 | 29 | 19 | 108 | 256 | 5165 |
| Trackhouse Racing | 381 | 6 | 14 | 60 | 117 | 2716 |
| 23XI Racing | 382 | 12 | 12 | 63 | 121 | 2644 |
| Richard Childress Racing | 532 | 12 | 10 | 48 | 133 | 1609 |
| RFK Racing | 555 | 5 | 6 | 61 | 166 | 2262 |
| Chip Ganassi Racing | 216 | 2 | 4 | 32 | 81 | 1195 |
| Front Row Motorsports | 594 | 7 | 2 | 15 | 71 | 698 |
| Wood Brothers Racing | 256 | 1 | 2 | 11 | 39 | 463 |
| Kaulig Racing | 316 | 2 | 2 | 17 | 51 | 359 |
| JTG Daugherty Racing | 324 | 3 | 2 | 12 | 39 | 285 |
| SPIRE MOTORSPORTS | 516 | 3 | 1 | 18 | 45 | 455 |
| Legacy Motor Club | 419 | 0 | 1 | 11 | 54 | 202 |



Case 3:26-cv-00133-SCR-DCK    Document 64-1    Filed 03/26/26    Page 4 of 93

3

# Spire Has Been Unsuccessful



**Team outlook:** Anyone within the Spire Motorsports camp would probably tell you 2025 was a disappointment. The team showed speed throughout the season and competed for wins, but couldn't close the deal with any of their three cars. None of their drivers reached the playoffs, but that *could* and *should* change in 2026, as Spire understands what they are capable of, attempting to shatter the glass ceiling and make a big statement in the year ahead.



https://www.nascar.com/news-media/2026/01/09/2026-season-preview-spire-motorsports



https://www.nascar.com/news-media/2026/03/09/analysis-these-penske-games-needed-blaney-to-hold-up-his-end-of-bargain/

# Gabehart Stole JGR's Crown Jewels



"**I have reviewed the description of the materials Gabehart apparently retained on his personal cell phone and personal Google Drive account as described in the Walter Brown declaration.** This information represents the crown jewels of our racing operation."

Hamlin Decl. at ¶12

Denny Hamlin

6

# This Court Found That JGR Is Entitled to Injunctive Relief

 A likelihood of success on the merits;

 Plaintiff is likely to suffer irreparable harm in the absence of preliminary relief;

 The balance of equities tips in plaintiff's favor; and

 An injunction is in the public interest.

The purpose of a preliminary injunction is merely **to preserve the relative positions of the parties until a trial on the merits can be held.** …A party thus is **not required** to prove his case in full at a preliminary-injunction hearing

*Univ. of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834, 68 L. Ed. 2d 175 (1981)

# A Preliminary Injunction is Required to Preserve the Equities of the Parties During this Litigation

"[T]he purpose of such interim equitable relief is not to conclusively determine the rights of the parties, but to balance the equities as the litigation moves forward."

**Green v. ABC Companies**, 702 F.Supp. 3d 418, 423 (W.D.N.C., 2023)(citations omitted)

# For purposes of today, JGR has shown:



☐ A likelihood of success on the merits on its claims against Gabehart and Spire;

☐ JGR will suffer irreparable harm in the absence of preliminary relief;

☐ The balance of equities tips in JGR's favor; and

☐ An injunction is in the public interest.

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

# JGR Has Shown:



☐ A likelihood of success on the merits on its claims against Gabehart and Spire;

☐ JGR will suffer irreparable harm in the absence of preliminary relief;

☐ The balance of equities tips in JGR's favor; and

☐ An injunction is in the public interest.

Case 3:26-cv-00133-SCR-DCK    Document 64-1    Filed 03/26/26    Page 12 of 93

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

# The Law Protects "Trade Secrets" In All Forms

**DTSA: (3) the term 'trade secret" means <u>all forms </u>and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, <u>whether tangible or intangible</u>, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if--**

**(A) the owner thereof has taken reasonable measures to keep such information secret; and**

**(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information**

**18 U.S.C. § 1839(3)**

Case 3:26-cv-00133-SCR-DCK    Document 64-1    Filed 03/26/26    Page 13 of 93

12



Case 3:26-cv-00133-SCR-DCK    Document 64-1    Filed 03/26/26    Page 14 of 93

# Threatened Misappropriation Justifies an Injunction Against Both Gabehart and Spire

"(3) Remedies.--In a civil action brought under this subsection with respect to the misappropriation of a trade secret, a court may—

    (A) grant an injunction—

        (i) to prevent any actual *or threatened* misappropriation . . ."

**Defend Trade Secrets Act** (18 U.S.C. § 1836(b)(3)(A))(emphasis added)

"[A]ctual *or threatened* misappropriation of a trade secret may be preliminarily enjoined during the pendency of the action . . . ."

**North Carolina Trade Secrets Protection Act** (N.C. Gen. Stat. § 66-154(a)) (emphasis added)

# Gabehart's Misappropriation Justifies An Injunction Against Him

**DTSA: "(1)** ==acquisition of trade secrets by improper means==, **(2) unauthorized disclosure of trade secrets acquired through improper means or by a person who had a duty to maintain secrecy thereof, or (3)** ==unauthorized use of trade secrets acquired through improper means or by a person who had a duty to maintain secrecy thereof.==**"**

**18 U.S.C. § 1839(5)**

Case 3:26-cv-00133-SCR-DCK     Document 64-1     Filed 03/26/26     Page 16 of 93

# Circumstantial Evidence Is Sufficient to Establish a Trade Secret Misappropriation Claim under North Carolina Law

**"It is well-settled under North Carolina law, 'Direct evidence [ ... ] is not necessary to establish a claim for misappropriation of trade secrets; rather, such a claim may be proven through circumstantial evidence.'"**

*Bridgetree, Inc. v. Red F Marketing LLC*, 2013 WL 443698, at *8 (W.D.N.C.,2013) (quoting *Med. Staffing Network, Inc. v. Ridgway*, 194 N.C.App. 649, 670 S.E.2d 321, 329 (N.C. App. 2009))

1.  "Spire" folder contains JGR trade secrets and confidential information—not Gabehart's personal notes

2.  Multiple attempts to access secrets after returning JGR laptop (Nov. 12, 23, 25)

3.  Photographed laptop screen to avoid electronic detection (16 photos on Nov. 7)

4.  Deleted text message with only Dickerson on November 15.

5.  Operationalized JGR confidential information for use with Spire

Case 3:26-cv-00133-SCR-DCK     Document 64-1     Filed 03/26/26     Page 18 of 93

Walton Decl. Ex. 4; Walton Decl. at ¶ 23

# The "Spire" Folder Contains JGR's Trade Secrets

| File Name | Type |
|---|---|
| 25Gat End Race eLap Cold.pdf | PDF |
| 25Hom End Race eLap Cold.pdf | PDF |
| 25Ind End Race eLap Cold.pdf | PDF |
| 25Iowa End Race eLap Cold.pdf | PDF |
| 25Kan2 End Race eLap Cold.pdf | PDF |
| 25Las2 Post Race Analytics.pdf.pdf | PDF |
| 25Las2 Race eLap Cold.pdf | PDF |
| 25Mar2 End Race eLap Cold.pdf | PDF |
| 25Mex End Race eLap Cold.pdf | PDF |
| 25Mic End Race eLap Cold.pdf | PDF |
| 25NWB End Race eLap Cold.pdf | PDF |
| 25Nash End Race eLap Cold.pdf | PDF |
| 25Pho2 Race eLap Hot.pdf | PDF |
| 25Poc End Race eLap Cold.pdf | PDF |
| 25Ric End Race eLap Cold.pdf | PDF |
| 25Son End Race eLap Cold.pdf | PDF |
| 25Tex End Race eLap Cold.pdf | PDF |
| 25WG End Race eLap Cold.pdf | PDF |
| 25pho2 Dyno Results.pdf | PDF |
| 25pho2 Post-Race Diffuser Skirts.pdf | PDF |
| 25pho2 Post-Race Survey.pdf | PDF |
| 25pho2 Qual eLap.pdf | PDF |
| 25pho2 Shift Points.pdf | PDF |
| 25pho2 Tire Sets.pdf | PDF |

| File Name | What It Reveals |
|---|---|
| 25pho2 Dyno Results.pdf | Engine/drivetrain testing data |
| 25pho2 Tire Sets.pdf | Tire strategy information |
| 25pho2 Shift Points.pdf | Transmission/performance tuning |
| 25pho2 Post-Race Survey.pdf | Post-race engineering analysis |
| $25pho2 Post-Race Diffuser Skirts.pdf | Aerodynamic component data |
| 25Las2 Post Race Analytics.pdf | Race-specific analytics |

# The Photographed Files Are Also JGR Trade Secrets

November 7, 2025

| File Name | Content Type |
|---|---|
| 2026 CGt Payroll.xlsx | Financial/compensation data |
| CC Post-Race Audit.xlsx | Engineering audit data |
| CG Master.xlsx | Master file (likely comprehensive data) |
| Player Reports.one | Personnel information |
| Rosters.one | Team roster information |
| 24INDY Notes.one | Race-specific notes |



# Gabehart Deleted Only Text Messages With Dickerson



"Mr. Gabehart further responds that **his text messages with Mr. Dickerson prior to November 15, 2025 were deleted** and are not available at this time. **The deletion occurred on November 15, 2025, before litigation was threatened or reasonably anticipated**, and therefore Mr. Gabehart was under no legal duty at that time to preserve information related to this lawsuit. **Mr. Gabehart did exchange texts with Mr. Dickerson before November 15, 2025, and to the best of his memory at least one of those texts would be responsive to this Request.** In particular, Mr. Gabehart recalls receiving **a text from Mr. Dickerson on or around November 13, 2025 in which Mr. Dickerson communicated the framework of an unsolicited offer to become the Chief Motorsports Officer** at Spire. Mr. Gabehart does not deny that texts with Mr. Dickerson prior to November 15, 2025 regarding potential employment at Spire would be discoverable, if available, and every effort is being made to recover them."

# Gabehart Deleted Text Messages While Accessing Trade Secrets

*Nov. 7, 2025*
Gabehart photographs JGR laptop screen (at least 20 pictures of confidential information) between 2:43–3:00 p.m.

*Nov. 12, 2025*
Gabehart accesses the "Spire" folder on his personal Google Drive containing subfolder "Past Setups"

*Nov. 14, 2025*
Gabehart accesses the "Spire" folder on his personal Google Drive

*Nov. 15, 2025*
Gabehart accesses the "Spire" folder on his personal Google Drive

*Nov. 15, 2025*
**Gabehart DELETES text messages with Dickerson prior to Nov. 15**

🚫 *You deleted this message*

🚫 *You deleted this message*

🚫 *You deleted this message*

🚫 *You deleted this message*

| October | November | December |
|---|---|---|

**2025**

Case 3:26-cv-00133-SCR-DCK     Document 64-1     Filed 03/26/26     Page 22 of 93

# Gabehart Had a Duty to Preserve the Texts

**"The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation."**

*Silvestri v. GMC,* 271 F.3d 583, 591 (4th Cir. 2001).

# Spire Co-Owner CEO Dickerson Deleted His Texts with Gabehart

**From:** Homesley, Troy C. <Troy.Homesley@troutman.com>
**Sent:** Wednesday, March 25, 2026 9:37 AM
**To:** Hutchins, Sarah Fulton <sarahhutchins@parkerpoe.com>
**Cc:** Candela, Madolyn R. <madelyncandela@parkerpoe.com>; Cary Davis <cdavis@rbh.com>; Middlebrooks, Charlie G. <charliemiddlebrooks@parkerpoe.com>; Summey, Tory I. <torysummey@parkerpoe.com>; Spencer Wiles <swiles@rbh.com>; Anna Claire Tucker <ATucker@rbh.com>; Davey, Joshua D. <Joshua.Davey@troutman.com>; Weddington, Keith M. <keithweddington@parkerpoe.com>; cwalker@kslaw.com; Cameron, Lawrence J. <Lawrence.Cameron@troutman.com>; Gibbs, J. Evan <Evan.Gibbs@troutman.com>; William Miller <WMiller@rbh.com>
**Subject:** RE: Review Protocol and Request for Response by 4pm

Sarah,

*Fourth*, to the extent JGR is seeking evidence that might replace the months-old text messages it insists on pursuing, Mr. Dickerson is not a source of such replacement evidence.  ==Mr. Dickerson's personal cell phone had a 30-day auto-deletion feature activated on it.  That feature erased all text messages on a rolling 30-day basis.  Mr. Dickerson suspended the auto-deletion feature on February 26, 2026, which is a day after JGR amended its lawsuit to name Spire as a defendant and the same day Spire engaged counsel to represent it.==  Mr. Dickerson did not anticipate litigation until that time, and immediately took steps to begin preserving potentially relevant documents from that date forward.  As a result of the 30-day auto-deletion feature that was previously applied to all of Mr. Dickerson's text messages, he has no text messages with anyone preceding approximately January 26, 2026.  It was JGR, not Mr. Dickerson, who chose to wait months to file its lawsuit.  It was JGR who chose not to send a preservation hold notice to Mr. Dickerson until today (March 24, 2026).  And it is JGR, not Mr. Dickerson, who must weather the consequences of its litigation strategy.

*Fifth*, to be clear, Spire and Mr. Dickerson have complied with their preservation obligations and taken appropriate steps to preserve potentially relevant evidence.  JGR will have ample opportunity to pursue discovery in the normal course and consistent with the Federal Rules of Civil Procedure.

Regards,

Troy



Case 3:26-cv-00133-SCR-DCK     Document 64-1     Filed 03/26/26     Page 25 of 93

# JGR Is Entitled to an Adverse Inference Finding

**"The Third Circuit affirmed an adverse inference based on a defendant's failure to testify because the "misappropriation of a trade secret often must be proved by 'construct[ing] a web of perhaps ambiguous circumstantial evidence' that outweighs the defendants' direct denial, the failure of defendants to testify in the face of a strong showing that a misappropriation or misuse occurred 'justifies the inference that their testimony would be unfavorable to their cause.'"**

*Bimbo Bakeries USA, Inc. v. Botticella,* 613 F.3d 102, 117–18 (3d Cir. 2010). (*citing SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1261 (3d Cir. 1985)).

# Gabehart Took JGR Confidential Information and Used For Spire



**GABEHART CREATED SPIRE PLAN BASED ON DOCUMENTS HE ACCESSED AND TOOK**

# Gabehart Took JGR Confidential Information and Used For Spire



**GABEHART CREATED SPIRE PLAN BASED ON DOCUMENTS HE ACCESSED AND TOOK**

Case 3:26-cv-00133-SCR-DCK    Document 64-1    Filed 03/26/26    Page 28 of 93

**GABEHART CREATED SPIRE PLAN BASED ON DOCUMENTS HE ACCESSED AND TOOK**

Case 3:26-cv-00133-SCR-DCK     Document 64-1     Filed 03/26/26     Page 29 of 93

**GABEHART CREATED SPIRE PLAN BASED ON DOCUMENTS HE ACCESSED AND TOOK**

**GABEHART PLAN FOR SPIRE USING JGR TRADE SECRETS**

Case 3:26-cv-00133-SCR-DCK    Document 64-1    Filed 03/26/26    Page 30 of 93

# Gabehart Took JGR Confidential Information and Used For Spire

**PHOTO OF JGR CONFIDENTIAL SPREADSHEET TAKEN BY GABEHART**

**JGR CONFIDENTIAL SPREADSHEET**  **GABEHART USED SPREADSHEET FOR SPIRE**

Case 3:26-cv-00133-SCR-DCK     Document 64-1     Filed 03/26/26     Page 32 of 93

31

# What Gabehart Said

## "I was always looking out for JGR"

**- Gabehart to Coach Gibbs on 11/6/2025**

# What Gabehart Did

## Took 20 Photos of his JGR laptop screen on

**11/7/2025**





Case 3:26-cv-00133-SCR-DCK    Document 64-1    Filed 03/26/26    Page 33 of 93

# What Gabehart Said

"Good evening, Dave. Would it do us any good to have a discussion about what needs to happen from here? **Surely no one really wants to do the other any harm? I know I don't.**"

     - Gabehart to Alpern on 12/4/25

# What Gabehart Did

## Stole JGR's crown jewels



Case 3:26-cv-00133-SCR-DCK Document 9-4 Filed 02/24/26 Page 31 of 36

# What Gabehart Said

**Gabehart tells Alpern that he and Dickerson were just friends and had not discussed employment**

*- Gabehart to Alpern 12/4/2025*

# What Gabehart Did

**Gabehart received "unsolicited" job offer from Spire; continued accessing "Spire" folder**

*11/13/2025*



Case 3:26-cv-00133-SCR-DCK    Document 64-1    Filed 03/26/26    Page 35 of 93

# Gabehart's Counsel Said

**Gabehart's "Spire" folder contains personal notes and records**

— Letter from Gabehart's Counsel
12/17/2025

# The Truth

**"Spire" folder contains JGR trade secrets---race setups and analytics he operationalized to use for Spire**

11/13/2025

"Spire" Folder

| | |
|---|---|
| 25Tex End Race eLap Cold.pdf | PDF |
| 25WG End Race eLap Cold.pdf | PDF |
| 25pho2 Dyno Results.pdf | PDF |
| 25pho2 Post-Race Diffuser Skirts.pdf | PDF |
| 25pho2 Post-Race Survey.pdf | PDF |
| 25pho2 Qual eLap.pdf | PDF |
| 25pho2 Shift Points.pdf | PDF |
| 25pho2 Tire Sets.pdf | PDF |





# What Gabehart Said

"**A third-party forensic expert retained by JGR recently examined my laptop, cell phone, and personal Google Drive and found <span style="color:red">no evidence to support the baseless allegations</span> in JGR's lawsuit.**"

    - Gabehart's 2/20/2026 X post

# The Truth

Walton Decl.

Case 3:26-cv-00133-SCR-DCK    Document 9-4    Filed 02/24/26    Page 31 of 36

Case 3:26-cv-00133-SCR-DCK    Document 64-1    Filed 03/26/26    Page 37 of 93

4. On February 27, 2026 at 9:38 a.m., I received a text message from Stephen D'Hondt, Chief Operating Officer of Spire Motorsports. D'Hondt invited me to an event on March 7, 2026 hosted by Spire Motorsports to be held in Phoenix, Arizona during the NASCAR race weekend featuring many music artists, including Diplo.

5. Prior to receiving D'Hondt's text message, I had not seen D'Hondt in person in over a year. My last communication with D'Hondt was a text message I sent to him on January 19, 2026 letting him know Zep was sponsoring JGR for the 2026 NASCAR Cup season.

6. No other NASCAR team has invited me to attend its events for the Phoenix race weekend. I would be surprised to receive invitations from NASCAR teams Zep is not sponsoring.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

This the ___6___ day of March, 2026.

**GREG HEYER**



Decl. of Greg Heyer

37

3. Saia is a sponsor of Joe Gibbs Racing ("JGR") for the 2026 NASCAR season.

4. The week of February 23, 2026, I received a direct message on LinkedIn from Cameron Sieradzan of Spire Motorsports. Sieradzan's LinkedIn headline states: "Partnerships at Spire Motorsports | NASCAR Cup Series." I have never met Sieradzan or anyone at Spire Motorsports.

5. In the direct message, Sieradzan requested a meeting to discuss the racing industry. I declined the request. Sieradzan subsequently asked whether I would like to meet if he found a place near the hotel I was staying at in Austin, Texas for the NASCAR Cup race weekend. I likewise declined the second request.

6. This conversation occurred exclusively over LinkedIn's direct messaging platform. I have deleted this conversation from my LinkedIn messages.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury of the laws of the United States of America, that the foregoing is true and correct.

March 5, 2026

**BILL LEALOS**



# Newly Discovered: Spire Misrepresents Meeting with Gabehart in October 2025

**Dan Towriss denies meeting with Chris Gabehart on October, 21, 2025**

**"Gabehart told me on or about October 21, 2025 that he had a meeting with Dan Towriss, the co-owner of Spire. Later that night, I received the below text from Gabehart confirming he met with Towriss."**

- Berrier Decl.



**Dan Towriss**
**Co-Owner of Spire**

**Chris Gabehart**

# Evidence of Threatened Misappropriation by Spire

**Oct. 16, 2025**
Gabehart meets with Spire CEO Dickerson

**Oct. 21, 2025**
Gabehart meets with **Spire** co-owner Dan Towriss to discuss potential job; texts Todd Berrier to confirm meeting occurred

**Nov. 2, 2025**
Gabehart's wife flies on **Spire** owner Jeff Dickerson's private jet to NASCAR Cup Series race

**Nov. 7, 2025**
THE THEFT: Gabehart uses phone to photograph JGR laptop screen, taking > 20 pictures of confidential information

**Nov. 7, 2025**
Gabehart accesses the "**Spire**" folder.

**Nov. 12, 2025**
Gabehart accesses the "**Spire**" folder on his personal Google Drive containing subfolder "Past Setups"

**Nov. 13, 2025**
Gabehart receives "unsolicited" job offer from **Spire**

**Nov. 15, 2025**
Gabehart deletes texts with **Spire** co-owner Dickerson

**Nov. 23, 2025**
Gabehart repeatedly accesses JGR race setups and analytics files

**Nov. 25, 2025**
Gabehart creates "Focus Plan" using JGR confidential information

| October | November | December |
|---|---|---|

**2025**

# Evidence of Threatened Misappropriation by Spire

**Dec. 2, 2025 (Morning)**
Gabehart accesses and modifies **Spire** organizational charts stored in **Spire** folder

**Dec. 2, 2025 (Lunch)**
Gabehart meets **Spire** owner Jeff Dickerson for lunch

**Dec. 3, 2025 (Evening)**
JGR's Eric Schaffer calls **Spire's** Bill Anthony, warning of tortious interference to hire Gabehart

**Dec. 4, 2025 (12:15 a.m.)**
Gabehart searched for "indemnify"

**Jan. 28, 2026**
Gabehart last accesses "audit spreadsheet" based on JGR confidential information

**Feb. 9, 2026**
**Spire** begins paying Gabehart

**Feb. 16, 2026**
Gabehart signs NDA with **Spire**

**Feb. 19, 2026**
JGR files lawsuit against Gabehart

**Feb. 21, 2026**
**Spire** announces Gabehart's hiring as Chief Motorsports Officer—less than 48 hours after JGR filed lawsuit

**Feb. 23-27, 2026**
**Feb. 24, 2026**
JGR adds Spire to lawsuit

**Feb. 23-27, 2026**
**Spire** *Contacts JGR sponsors (Saia, Zep)*

**Feb. 26, 2026**
Dickerson turns off 30 day auto-delete texts feature

| December | January | February |
| --- | --- | --- |
| 2025 | | 2026 |

Case 3:26-cv-00133-SCR-DCK    Document 64-1    Filed 03/26/26    Page 42 of 93

# Spire Is Wrong About Forensic Exam

A comprehensive forensic examination…confirmed that Mr. Gabehart did not transmit, distribute, use, or otherwise share any JGR Confidential Information with any third party, including Spire.

- Gabehart Opp. Br., at 2

**The 3rd Party Forensic Examiner**
1. Gabehart took JGR's Confidential Information and Trade Secrets
2. Did not rule out that the Confidential Information and Trade Secrets were shared
3. He found activity that suggested transmission was a threat

Case 3:26-cv-00133-SCR-DCK     Document 64-1     Filed 03/26/26     Page 43 of 93

# Summary of Evidence of Threatened Misappropriation by Spire

1. **Spire's Hiring and Retention of Gabehart**
   - Hired and continues to employ someone who admittedly misappropriated JGR trade secrets
   - Spire owners met with Gabehart on multiple occasions while he was acquiring JGR's trade secrets

2. **Gabehart's Pattern of Misconduct**
   - Secretly accumulated 50+ proprietary JGR files in months before joining Spire
   - Stored files in a "Spire" folder with a "Past Setups" subfolder containing racecar setup data
   - Photographed laptop screen to avoid electronic detection
   - Continued accessing JGR files after receiving Spire job offer
   - Operationalized JGR confidential information to use for Spire
   - Concealed intent to join competitor; deleted files; refused discovery
   - Deleted only texts with Dickerson without explanation

3. **Inference of Spire Using Confidential Information**
   - Contacted JGR sponsors with expiring contracts for the first time, days after Gabehart joined and after Gabehart had accessed confidential sponsor information
   - need for confidential information given lack of success and high value
   - Co-owner Dickerson deleted his texts

# Case Law Supports Injunction Against Spire

| Type of Evidence of "Threat" as to New Employer | Cases Relying on Type of Evidence to Support Injunction Against New Employer | Evidence of "Threat" As to Spire Here |
|---|---|---|
| **Employee credibility issues or "lack of candor"** | *Am. Air Filter*, at *3<br>*Uncle B's Bakery*, at 1419<br>*PepsiCo*, at 1270<br>*Merck*, at 1449 | • The Court noted credibility issue. D33 (TRO Tr.) at 36.<br>• Gabe. stole JGR's trade secrets, used photos to avoid detection, deleted JGR files and relevant texts. TRO Hr. Tr. at 33; D9-4 ¶ 22.<br>• Gabe.'s December 17, 2025 letter misrepresented the contents of the "Spire" folder, trade secrets he retained, and the scope of Spire employment. D35-12. |
| **Employee access to and intimate knowledge of trade secrets and confidential information of former employer** | *Am. Air Filter*, at *9<br>*Uncle B's Bakery*, at 1436<br>*PepsiCo*, at *13<br>*Merck*, at 1450 | • Gabe. had access to and took JGR's "crown jewels" of JGR's racing operation. D35-9 at ¶¶ 5, 8–9, 1252–53; (Hamlin Decl.) at ¶¶ 8, 10–11).<br>• Even after ceasing services for JGR, Gabe. continued accessing JGR's stolen trade secrets on at least six occasions and attempted to access JGR's SharePoint while negotiating with Spire. D9-4 at ¶ 14; D35-12 at ¶¶ 19–22. |
| **Employee gathering former employer's trade secret and confidential information after accepting new job** | *Am. Air Filter*, at *9 | • Gabe. compiled JGR trade secrets in a "Spire" folder while still employed at JGR. D12 at ¶ 17; D22-2; D46-4; D45-2 at ¶¶ 26, 40; D35-12 at ¶¶ 19–22.<br>• Gabe. photographed his JGR laptop screen and continued accessing the materials after leaving JGR. D9-4 ¶ 22; D35-12 at ¶¶ 19–22. |
| **Employee performing similar job at new employer** | *Am. Air Filter*, at *8<br>*Uncle B's Bakery*, at 1420<br>*PepsiCo*, at *22<br>*Merck,* at 1460 | • The Court found "some, but not all, of the duties overlap with Gabehart's position at JGR as Director of Competition." TRO at ¶ 21.<br>• Gabe.'s counsel admitted "there's certainly some subject matter overlap" between the two roles. D33 at 38–39. Also compare D37 (Gabehart Sec. Decl.) at ¶ 6 with ¶¶ 5, 15, 21. |
| **New employer is a competitor** | *Am. Air Filter*, at *1<br>*Uncle B's Bakery*, at 1412<br>*PepsiCo*, at *2<br>*Merck*, at 1446 | Spire and JGR are direct competitors in the NASCAR Cup Series. Compare TRO at ¶ 1, with D12 (Gabehart Decl.) at ¶ 55, and D37 at ¶ 13. |
| **Employee or competitor soliciting clients of former employer** | *Am. Air Filter*, at *3<br>*Custom Comp. LLC v. Emcyte Corp.*, at *3 | Two JGR sponsors confirmed Spire contacted them days after Gabehart began at Spire. D35-7; D35-8. |

# Gabehart and Spire's Conduct Has and Will Cause Irreparable Harm to JGR

# JGR Has Shown:

 A likelihood of success on the merits on its claims against Gabehart and Spire;

 JGR will suffer irreparable harm in the absence of preliminary relief;

 The balance of equities tips in JGR's favor; and

 An injunction is in the public interest.

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

# The Court Has Found JGR Faces Irreparable Harm

**"In a competitive racing industry, loss of trade secrets leads to the immediate and irreparable harm to JGR's ability to compete.** *Merck & Co. Inc. v. Lyon,* 941 F. Supp. 1443, 1455 (M.D.N.C. 1996) **("The very nature of a trade secret mandates that misappropriation will have significant and continuous long-term effects. The party wronged may forever lose its competitive business advantage or, at the least, a significant portion of its market share.")** (quoting *Barr-Mullin, Inc. v. Browning,* 108 N.C. App. 590, 597, 424 S.E. 2d 226, 230 (1993))."

*TRO Order* at 10

**The "loss of even a single trade secret is irreparable harm."**

*Vessel Med., Inc. v. Elliot,* 2015 WL 5437173, at *9 (D.S.C. 2015) (emphasis added).

**Irreparable harm exists where an employee had an "opportunity to misappropriate the confidential information and trade secrets" and the competitor hiring the employee could "benefit by having [his] knowledge of [the former] employer's trade secrets because it could produce similar products without expending resources or research and development."**

*TSG Finishing, LLC v. Bollinger,* 238 N.C. App. 586, 602 (2014).

# Additional Evidence of Irreparable Harm

Case 3:26-cv-00133-SCR-DCK    Document 64-1    Filed 03/26/26    Page 50 of 93

# Harm Posed by Disclosure



**Denny Hamlin**

> "**Every week, Gabehart and I would work through detailed setup files, post-race analyses, and simulation data** to make our car as fast as possible."

> "**The materials …that Gabehart retained on his personal devices**—including the setup and simulation files that appear to have been saved in his "Spire" folder **are kinds of files I am familiar with....**"

Hamlin Decl. at ¶10

Case 3:26-cv-00133-SCR-DCK     Document 64-1     Filed 03/26/26     Page 51 of 93

50

# Harm Posed by Disclosure



**Denny Hamlin**

"**The materials Gabehart took—…represent decades of JGR's research, development, and innovation specifically designed to optimize speed and win races.** These materials provide a comprehensive roadmap for JGR's competitive strategies and **are the exact set of proprietary and confidential information any of JGR's competitors would want …that have led to** JGR's overwhelming success."

Hamlin Decl. at ¶14

Case 3:26-cv-00133-SCR-DCK     Document 64-1     Filed 03/26/26     Page 52 of 93

# Harm Posed by Disclosure



**Denny Hamlin**

"**Allowing Gabehart to use JGR's proprietary and confidential information for the benefit of a competitor like Spire would cause major harm not only to JGR but also to the sport of NASCAR.** …it would greatly diminish the value of such information, erode JGR's competitive advantage, and undermine the sanctity of fair competition in the sport."

Hamlin Decl. at ¶17

Case 3:26-cv-00133-SCR-DCK     Document 64-1     Filed 03/26/26     Page 53 of 93

52

# Harm Posed by Disclosure



"The secrecy of NASCAR racing teams' racecar setups and strategies have become particularly important in recent years given the implementation of NextGen racecars ...."

Jenkins Decl. at ¶4

Case 3:26-cv-00133-SCR-DCK    Document 64-1    Filed 03/26/26    Page 54 of 93

**Bob Jenkins – Front Row**

# Harm Posed by Disclosure



**Andy Graves – TRD**

"**The data and information generated by TRD is closely guarded and valuable to the Toyota teams TRD supports. This sort of information is** particularly valuable given the fact that all teams are now using the common NextGen car required by NASCAR. …**If anyone were to take confidential information such as that described** above …it would **allow that competitor to obtain an unfair advantage.**"

Graves Decl. at ¶11

Case 3:26-cv-00133-SCR-DCK    Document 64-1    Filed 03/26/26    Page 55 of 93

# JGR Has Shown:

 A likelihood of success on the merits on its claims against Gabehart and Spire;

 JGR will suffer irreparable harm in the absence of preliminary relief;

 **The balance of equities tips in JGR's favor; and**

 An injunction is in the public interest.

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

# Balance of Equities Strongly Favors Injunction

**"[The] lack of demonstrated irreparable harm to [the] defendant if the injunction is imposed"** generally warrants a finding that the balance of equities lies in favor of the plaintiff.

*See NovaQuest Cap. Mgmt., L.L.C. v. Bullard,* 498 F.Supp.3d 820, 838 (E.D.N.C. 2020).

# Balance of Equities Strongly Favors Injunction



# JGR Has Shown:

 A likelihood of success on the merits on its claims against Gabehart and Spire;

 JGR will suffer irreparable harm in the absence of preliminary relief;

 The balance of equities tips in JGR's favor; and

 An injunction is in the public interest.

Case 3:26-cv-00133-SCR-DCK    Document 64-1    Filed 03/26/26    Page 59 of 93

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

**"[T]he public interest favors protection of trade secrets."**

*Forestry Sys., Inc. v. Coyner,* No. 1:11-CV-295, 2011 WL 1457707, at *2 (M.D.N.C. Apr. 15, 2011).

**"It is as much a matter of public concern to see that valid covenants are observed as it is to frustrate oppressive ones."**

*Maaco Fran., LLC v. Boensch,* No. 3:16-CV-155-GCM, 2016 WL 4746215, at *7 (W.D.N.C. Sept. 12, 2016) (internal citations and modifications omitted)).

# Courts Routinely Enjoin New Employers in this Context

- *See **Bridgetree, Inc. v. Red F Mktg. LLC**, 2013 WL 443698 (W.D.N.C. 2013)* (permanently enjoining plaintiff's former employees <u>and their new employer</u> based on circumstantial evidence of misappropriation, including former employee's "downloading of [trade secret] information from Plaintiff's servers" and new employer's speedy development of new programs)

- *See **Prysmian Cables & Systems USA, LLC v. Szymanski**, 573 F. Suppl. 3d 1021(D.S.C. 2021)* (enjoining plaintiff's former employee <u>and new employer</u> where former employee emailed himself plaintiff's "business blueprint," and "initiated plans for an analogous [project] to compete with" plaintiff based on circumstantial evidence of irreparable harm even where dispute existed regarding new employers' acquisition of trade secrets)

- *See **American Air Filter Company, Inc. v. Price, 2017 WL 485517 (N.C. Super., 2017)*** (enjoining former employee <u>and new employer</u> based on threat of misappropriation where former employee downloaded plaintiff's trade secrets, performed same kind of duties at competitor, and contacted plaintiff's customers)

 A likelihood of success on the merits <span style="color:darkred">on its claims against Gabehart and Spire</span>;

 <span style="color:darkred">JGR will</span> suffer irreparable harm in the absence of preliminary relief;

 The balance of equities tips in <span style="color:darkred">JGR's</span> favor; and

 An injunction is in the public interest.

Case 3:26-cv-00133-SCR-DCK    Document 64-1    Filed 03/26/26    Page 62 of 93

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

# Gabehart's Position at Spire Breaches his Employment Agreement

Case 3:26-cv-00133-SCR-DCK     Document 64-1     Filed 03/26/26     Page 63 of 93

# Gabehart's Restrictive Covenant

6. **<u>Restrictive Covenants</u>**. To protect the Company's legitimate business interests including, among others, access to the Confidential Information, Employee acknowledges that certain restrictive covenants are necessary and appropriate. Except for termination without cause by Company or Term expiration, during the Term and for the longer of the balance of the Term including all Extensions, or nine (9) months after the date of termination (but not to exceed eighteen (18) months) (the "***Noncompete Period***"), Employee shall not provide services of the general type of services that Employee provided to Company in the year prior to such termination to any other NASCAR Xfinity Series or NASCAR Cup Series racing team (or their respective successor series) or any vehicle manufacturing company or other person or entity that provides goods or services to such a team.

Notwithstanding any contrary provision herein, the Noncompete Period will be reduced to one (1) week and Company shall pay Employee $100,000 (in exchange for a complete mutual release and net of all required withholding and deductions) if, at any time after September 1, 2025, and before June 1, 2026: (i) Employee in good faith notifies Company in writing of specific job duties or responsibilities assigned to Employee that are inconsistent with Employee's reasonable expectations or the job description provided by Company prior to the Start Date; (ii) Employee provides Company at least sixty (60) days to resolve such inconsistencies to Employee's reasonable satisfaction and Company fails to do so; and (iii) Employee provides Company sixty (60) days prior written notice of termination without cause due to such unresolved inconsistencies.

Complaint, Ex. 1 [1-1]

# Gabehart's Restrictive Covenant

5. **<u>Confidentiality</u>**.  Company's Confidential Information (defined below) is a valuable, special and unique asset of Company's and its affiliates' business, access to and knowledge of which are essential to the performance of Employee's duties hereunder.  "***Confidential Information***" includes but is not limited to non-public information about Company sponsors and partners, race strategy, engineering information, race car set-ups, pit crew training methods and practices, pit crew analytics, technology and strategy, wind tunnel data and testing of any kind, trade secrets and any Company information that is proprietary or not publicly known.  During the Term and for so long as such Confidential Information is not generally known (other than due to Employee's breach), Employee shall not disclose Confidential Information to any third party or use any Confidential Information for any purpose other than as necessary to perform pursuant to this Agreement unless and until such Confidential Information becomes generally known, except as a result of unauthorized disclosure. Employee will not be held criminally or civilly liable under any Federal or state trade secret law for the disclosure of a trade secret that is made in confidence to a Federal, state, or local government official, either directly or indirectly, or to an attorney and solely for the purpose of reporting or investigating a suspected violation of law, or is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

Complaint, Ex. 1 [1-1]

# Restrictive Covenant Is Enforceable

**"A restrictive covenant between an employer and an employee is valid and enforceable under North Carolina law if it is: '(1) in writing; (2) reasonable as to terms, time, and territory (3) made part of the employment contract; (4) based on valuable consideration; and (5) not against public policy."**

*Carlson Environmental Consultants, PC v. Slayton,* No. 3:17-cv-00149-FDWDCK, 2017 WL 4225993, at * 7 (W.D.N.C. Aug. 21, 2017) (quoting *Triangle Leasing Co., Inc. v. McMahon,* 327 N.C. 224, 228, 393 S.E.2d 854, 857 (1990)).

**"Restrictive covenants are enforceable when the scope is necessary to protect the employer's legitimate business interests"**

*Id.* (citing *Med. Staffing Network, Inc. v. Ridgway,* 194 N.C. App. 649, 656, 670 S.E.2d 321, 327 (2009)).

1. Same or Similar Role at Spire

2. Misappropriating JGR's Confidential Information

Case 3:26-cv-00133-SCR-DCK     Document 64-1     Filed 03/26/26     Page 67 of 93

# Gabehart's Role at Spire Overlaps with Role at JGR



| **JGR** – Dir. of competition for NASCAR | **Spire** – Chief Motorsports Officer |
|---|---|
| • Developing and promoting "best practices" among the NASCAR Cup Series teams;<br><br>• Interfacing with NASCAR officials on behalf of the team;<br><br>• Coordinating with an allied NASCAR team;<br><br>• Supporting the relationship with each team's OEM; and, most importantly<br><br>• Developing and deploying "of competitive initiatives" within the NASCAR Cup Series. | • Developing and promoting "best practices" among the NASCAR Cup Series teams;<br><br>• Interfacing with NASCAR officials on behalf of the team;<br><br>• Coordinating with an allied NASCAR team;<br><br>• Supporting the relationship with each team's OEM; and, most importantly<br><br>• Developing and deploying "of competitive initiatives" within the NASCAR Cup Series. |

**"My current role at Spire sits at the executive level and encompasses strategic oversight all of Spire's racing programs, not just the NASCAR Cup Series."**

Case 3:26-cv-00133-SCR-DCK    Document 64-1    Filed 03/26/26    Page 68 of 93

> MR. DAVIS: And I do think that there is probably --
> Your Honor, I think you'd have to acknowledge that, depending on how we define overlap, ==there's certainly some subject matter overlap,== but I don't know the details.



**Offensive Coordinator** → **Head Coach**





Case 3:26-cv-00133-SCR-DCK    Document 64-1    Filed 03/26/26    Page 69 of 93

# Spire Is Paying Gabehart A Lot to Win NASCAR Races

Case 3:26-cv-00133-SCR-DCK    Document 64-1    Filed 03/26/26    Page 70 of 93

# Spire Is Paying Gabehart A Lot to Win NASCAR Races

Case 3:26-cv-00133-SCR-DCK    Document 64-1    Filed 03/26/26    Page 71 of 93

# Spire Is Paying Gabehart A Lot to Win NASCAR Races

Case 3:26-cv-00133-SCR-DCK     Document 64-1     Filed 03/26/26     Page 72 of 93

# Gabehart and Spire Were Willing to Risk a Breach

Case 3:26-cv-00133-SCR-DCK     Document 64-1     Filed 03/26/26     Page 73 of 93

Gabehart000551-553

# Gabehart at NASCAR Race in Darlington on March 22, 2026



Radio

# Gabehart Did Not Trigger the Reduction of Noncompete Period

*Nov. 15, 2024*
Gabehart executes *written* Employment Agreement with JGR

*Oct. 7 - Nov. 2, 2025*
Gabehart engages with Spire and expresses uncertainty about employment with JGR

- **10/07** Visits Spire website starting on this date
- **10/16** Meets with Spire leadership
- **10/21** Meets with Spire leadership
- **10/26-27** CG accesses JGR cloud storage and trade secrets
- **10/26** Communicates uncertainty to Tim Carmichael re decision to not continue with JGR
- **11/02** Wife flies on Dickerson's private jet

*Nov. 6, 2025*
Gabehart meets with Coach Gibbs; demands complete operational control; Coach Gibbs declines; parties mutually agreed to pursue separation

*Nov. 6, 2025*
Gabehart provides general complaints to Coach but does not invoke Section 6

*Nov. 7, 2025*
Gabehart sends email to Tim Carmichael titled "RE: Future Planning"—expressing job dissatisfaction, but does not express intent to resign

*Nov. 13, 2025*
Gabehart receives "unsolicited" job offer from Spire; continues accessing "Spire" folder

*Feb. 9, 2026*
JGR terminates "The agreement" for cause

**60 DAYS**

| November | October | November | December | January | February |

| 2024 | 2025 | | | 2026 | |

Case 3:26-cv-00133-SCR-DCK    Document 64-1    Filed 03/26/26    Page 75 of 93

6. **Restrictive Covenants**. To protect the Company's legitimate business interests including, among others, access to the Confidential Information, Employee acknowledges that certain restrictive covenants are necessary and appropriate. Except for termination without cause by Company or Term expiration, during the Term and for the longer of the balance of the Term including all Extensions, or nine (9) months after the date of termination (but not to exceed eighteen (18) months) (the "**Noncompete Period**"), Employee shall not provide services of the general type of services that Employee provided to Company in the year prior to such termination to any other NASCAR Xfinity Series or NASCAR Cup Series racing team (or their respective successor series) or any vehicle manufacturing company or other person or entity that provides goods or services to such a team.

Notwithstanding any contrary provision herein, the Noncompete Period will be reduced to one (1) week and Company shall pay Employee $100,000 (in exchange for a complete mutual release and net of all required withholding and deductions) if, at any time after September 1, 2025, and before June 1, 2026: (i) Employee in good faith notifies Company in writing of specific job duties or responsibilities assigned to Employee that are inconsistent with Employee's reasonable expectations or the job description provided by Company prior to the Start Date; (ii) Employee provides Company at least sixty (60) days to resolve such inconsistencies to Employee's reasonable satisfaction and Company fails to do so; and (iii) Employee provides Company sixty (60) days prior written notice of termination without cause due to such unresolved inconsistencies.



JGR 107

Case 3:26-cv-00133-SCR-DCK    Document 64-1    Filed 03/26/26    Page 77 of 93

# Gabehart Was the First to Breach



**Nov. 15, 2024**
Gabehart executes *written* Employment Agreement with JGR

**Oct. 7 - Nov. 2, 2025**
Gabehart engages with Spire and expresses uncertainty about employment with JGR

**Nov. 7, 2025**
Gabehart photographs JGR laptop screen (at least 20 pictures of confidential information) between 2:43–3:00 p.m.

**Nov. 10, 2025**
Gabehart returns JGR laptop and ceased providing services to JGR

**Nov. 12, 2025**
Gabehart accesses the "Spire" folder on his personal Google Drive containing subfolder "Past Setups"

**Nov. 21, 2025**
Gabehart last would have been paid by JGR

**Nov. 23, 2025**
Gabehart continues engaging "Spire"/"Past Setups" Folder

**Dec. 5, 2025**
Next upcoming pay period

**Feb. 9, 2026**
JGR terminates Gabehart for cause

| November | October | November | December | January | February |

| 2024 | 2025 | | | 2026 | |

Case 3:26-cv-00133-SCR-DCK    Document 64-1    Filed 03/26/26    Page 78 of 93

# The Expedited Discovery Shows Ongoing Negotiations for a Mutual Release, Not That Gabehart Invoked the Shorter Period

JGR_0000306

# Brown and Carmichael November 6, 2025 text string

Case 3:26-cv-00133-SCR-DCK     Document 64-1     Filed 03/26/26     Page 81 of 93

# Scope of Noncompete Injunction is Reasonable

Case 3:26-cv-00133-SCR-DCK     Document 64-1     Filed 03/26/26     Page 82 of 93

# 18 months is not an unreasonable length

**North Carolina courts regularly enforce noncompetition restrictions of up to twenty-four (24) months.**

***Harwell Enters., Inc. v. Heim,*** 276 N.C. 475, 481, 173 S.E.2d 316 (1970) (upholding a two-year restriction); Triangle Leasing Co., 327 N.C. at 229.

# North Carolina courts enforce restrictions with similar language

**"A court also may enjoin 'an employee from working for a former employer's competitor where there is a showing of bad faith, underhanded dealing, or inferred misappropriation (justified by circumstances tending to show the new employer plainly lacks comparable technology).'"**

*Philips Electronics North America Corp. v. Hope,* 631 F.Supp.2d 705, 723 (M.D.N.C., 2009) (citations omitted).

# Spire Tortiously Interfered with Gabehart's Contract

# Spire Tortiously Interfered with Gabehart's Contract

**"Under North Carolina law, the elements are: "(1) a valid contract between the plaintiff and a third person; (2) the defendant's knowledge of the contract; (3) that the defendant intentionally induced the third person not to perform the contract; (4) that the defendant acted without justification; and (5) that the plaintiff suffered actual damage."**

*dmarcian, Inc. v. dmarcian Eur. BV,* 60 F.4th 119, 142 (4th Cir. 2023).

# Poaching Gabehart Served Spire—Not JGR

**Non-outsider** or insiders "have a qualified privilege to interfere between **the corporation** and **a third party**, because such acts are presumed to have been done in the interest of **the corporation**." *Alexander v. City of Greensboro*, 762 F. Supp. 2d 764, 819 (M.D.N.C. 2011) (citation and quotations omitted)

**Spire** has "a qualified privilege to interfere between **[JGR]** and **[Gabehart]**, **[only if]** such acts are presumed to have been done in the interest of **[JGR]**."

# The Record Supports an Inference of Unjustified Interference

**A jury can reasonably infer unjustified interference where "[Defendant] knew, at the time it hired [the employee], that [the employee] had signed covenants not to compete, and, in fact, agreed to pay all legal expenses, if any, [the employee] would incur as a result of breaching the covenants."**

*United Lab'ys, Inc. v. Kuykendall,* 322 N.C. 643, 663, 370 S.E.2d 375, 387–88 (1988)

# Spire Tortiously Interfered with Gabehart's Contract

**Oct. 21, 2025**
Gabehart met with Spire co-owner Dan Towriss to discuss potential job; texted Todd Berrier to confirm meeting occurred

**Dec. 2, 2025 (Morning)**
Gabehart accesses and modifies JGR organizational charts stored in Spire folder

**Dec. 2, 2025 (Lunch)**
Gabehart met Spire owner Jeff Dickerson for lunch—same day he accessed JGR documents



**Dec. 3, 2025 (Evening)**
JGR's Eric Schaffer called Spire's Bill Anthony, warned that hiring Gabehart would constitute tortious interference; Anthony did not provide substantive response

**Dec. 4, 2025**
Gabehart tells Alpern that he and Dickerson were just friends and had not discussed employment

**Feb. 9, 2025**
Gabehart Spire employment starts

**NEW EVIDENCE**

| October | November | December | January | February |
|---|---|---|---|---|
| | | **2025** | | **2026** |

# Spire Tortiously Interfered with Gabehart's Contract

 A valid contract between the plaintiff and a third person;

 The defendant's knowledge of the contract;

 That the defendant intentionally induced the third person not to perform the contract;

 That the plaintiff suffered actual damage.

Case 3:26-cv-00133-SCR-DCK     Document 64-1     Filed 03/26/26     Page 90 of 93

# Claims and Requested Relief

| Claim | Requested Relief Against <u>Gabehart</u> | Requested Relief Against <u>Spire</u> |
|---|---|---|
| Breach of Confidentiality Provision (Section 5) | Enforcement of Confidentiality Provision | |
| Breach of Non-Compete Provision (Section 6) | Enforcement of Confidentiality Non-Compete Provision | |
| Tortious Interference with Gabehart's Non-Compete Provision | | Restriction Against Spire from Interfering with Non-Compete |
| Misappropriation of Trade Secrets /Unfair and Deceptive Trade Practice Claims | Trade Secrets Cease & Desist<br><br>Restriction Against Spire from Interfering with Non-Compete | Trade Secrets Cease & Desist |

# New Evidence Since TRO

| Date | New Evidence | What It Shows | Source |
|---|---|---|---|
| **Oct. 16, 2025** | **Gabehart Meeting with Dickerson** | conspiracy began earlier than Gabehart admitted | Ex. 45-2, Dickerson Decl., par. 27 |
| **Oct. 21, 2025** | **Spire credibility issue regarding Gabehart Meeting with Spire Co-Owner Dan Towriss** | conspiracy began earlier than Gabehart admitted | Ex. C, Berrier Decl. at ¶ 4; Berrier Supp. Decl. at ¶ 1 |
| **Nov. 2, 2025** | **Gabehart's wife flew on Dickerson's private jet** | Relationship between Gabehart and Spire predates the alleged "unsolicited" offer | Ex. E, Alpern Decl. at ¶ 4 |
| **Nov. 23 & 25, 2025** | **Deleted files in "Spire" folder** | Spoliation; consciousness of guilt; evidence of intentional concealment | Ex. K, Walton Second Suppl. Decl. at ¶¶ 25–26 |
| **Dec. 2, 2025** | **Clandestine meeting with Dickerson** | Evidence of conspiracy between Gabehart and Spire; timing showing coordination of misappropriation | Ex. C, Simpson Decl. |
| **Dec. 3, 2025** | **JGR's warning to Spire re: tortious interference** | Spire's knowledge of the contract and apparent disregard for Gabehart's restrictive covenants; tortious interference | Ex. D, Schaffer Decl. at ¶¶ 4–6 |
| **Dec. 4, 2025 (12:15 a.m.)** | **Gabehart's "indemnify" search linked to call between Schaffer and Anthony** | Circumstantial evidence that Spire intended to indemnify Gabehart for liability; coordination between Gabehart and Spire | Ex. K, Walton Second Suppl. Decl. at ¶ 23 |
| **Dec. 4, 2025 (11:19 a.m.)** | **Gabehart's lie to Alpern** | Pattern of deception; bad faith; threat of misappropriation; breach of fiduciary duty | Ex. E, Alpern Decl. at ¶¶ 3–4 |
| **Post-hiring (Jan.–Feb. 2026)** | **Spire reaching out to JGR sponsor Zep** | Threat of misappropriation of sponsor/financial information; Spire using stolen information to target JGR business relationships | Ex. F, Heyer Decl. at ¶¶ 4–6 |
| **Post-hiring (Jan.–Feb. 2026)** | **Spire reaching out to JGR sponsor Saia** | Threat of misappropriation of sponsor/financial information; pattern of targeting JGR business relationships | Ex. G, Lealos Decl. at ¶¶ 4–6 |

# New Evidence Since Last Hearing/Expedited Discovery

| Date | New Evidence | What It Shows | Source |
|---|---|---|---|
| Nov. 15, 2025 | **Gabehart deletes texts with Dickerson** | Spoliation; evidence of intentional concealment | Ex. A-1, Gabehart's Resp. to RFPs No. 1 |
| Nov. 25, 2025 | **Gabehart makes "Focus Plan" and migrates it to Spire-branded presentation** | Gabehart misappropriated JGR's trade secrets for use at Spire | Ex. A-2, A-3 GABEHART00092-94 |
| Jan. 28, 2026 | **Gabehart last modifies Spire spreadsheet that mirrors JGR Audit Spreadsheet** | Gabehart misappropriated JGR's trade secrets for use at Spire | Ex. B ¶ 14; GABEHART00222 |
| Jan. 28, 2026 | **Gabehart's "Team Address" to Spire focuses on NASCAR** | Gabehart is doing the same thing for Spire as he did at JGR | Ex. A-18 GABEHART00343 |
| Feb. 3, 2026 | **Gabehart attending meetings at Spire before formally terminated from JGR** | Evidence of conspiracy between Gabehart and Spire; timing showing coordination of potential disclosure | Williams Decl. at Ex. 18; GABEHART00291-92 |
| Feb. 11, 2026 | **Gabehart and Dickerson strategize over "how we wanted any JGR language to look given all of this" in Employment Agreement** | Spire and Gabehart's conspiracy; pattern of deception | Ex. A-10 GABEHART00398-99 |
| Feb. 15, 2026 | **Spire and Gabehart use copycat spreadsheet at Daytona 500 race** | Ongoing threat of misappropriation by Spire and Gabehart | Ex. A-4, A-5; GABEHART00406-07 |
| Feb. 22, 2026 | **Dickerson directs Gabehart to Spire's "war room" at the Autotrader 400 race** | Threat of misappropriation | Ex.A-11 GABEHART00551-53 |
| Feb. 22, 2026 | **Dickerson lets Gabehart know Spire is "in the boat" with him** | Spire and Gabehart's conspiracy | Ex.A-11 GABEHART00551-53 |
| Mar. 22, 2026 | **Gabehart spotted in stands of Darlington race with a radio attempting to avoid detection** | Threat of misappropriation of racing strategy information; Gabehart and Spire's deception | Ex. D – Schaffer Decl., ¶¶ 9–11 and Ex. 1 |
| Ongoing | **Gabehart's compensation tied to NASCAR performance** | Gabehart focus on NASCAR competition and for Spire | Williams Decl. at Ex. 12; GABEHART00030 |