# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
#### Case No. 3:26-CV-00133-SCR-DCK

JOE GIBBS RACING, LLC,

        Plaintiff,

    v.

CHRISTOPHER GABEHART and SPIRE
MOTORSPORTS, LLC,

        Defendants.

**PLAINTIFF JOE GIBBS RACING, LLC'S SECOND MOTION FOR EXPEDITED DISCOVERY AND INCORPORATED MEMORANDUM IN SUPPORT**

In response to Court-ordered expedited discovery (Dkt. 48), Gabehart disclosed to Joe Gibbs Racing, LLC ("JGR") for the first time that he deleted all of his text messages with Spire Motorsports, LLC's ("Spire") co-owner, Jeff Dickerson ("Dickerson")—and only his text messages with Dickerson—predating November 15, 2025. Dkt. 62-1 p. 5. Shortly thereafter, Spire's counsel informed JGR that Dickerson's text messages with Gabehart prior to approximately January 26, 2026 have also been deleted.

The deletion of these text messages justifies additional expedited discovery, which is necessary to preserve relevant evidence that is at risk of being lost before merits discovery, and to provide greater information about the circumstances leading to the deletions. Expedited discovery is also necessary because Gabehart and Dickerson's conduct demonstrates a risk of concealment of dissemination and use of JGR's Confidential Information and Trade Secrets and delay in identifying the extent of what is being hidden risks further irreparable harm to JGR.

## I. FACTUAL BACKGROUND

On March 16, 2026, the Court heard extended argument from the parties on the scope of discovery which JGR previously sought to obtain from Defendants—a significant amount of which

focused on communications between Gabehart and Dickerson. At no point during that argument or in their briefing did either Gabehart or Spire inform the Court or JGR that these relevant communications between Gabehart and Dickerson may have been or had been lost or destroyed, though, as to Gabehart, it was later revealed by Gabehart's counsel the deletion was known to Gabehart and his counsel at the time.

When forced to respond to requests for production of documents after the hearing on March 16, 2026, Gabehart had no option but to admit that on November 15, 2025 he deleted all of his text messages with Dickerson pre-dating November 15, 2025.[1] In response to requests for production seeking communications with Dickerson, Gabehart responded in part:

> Mr. Gabehart further responds that **his text messages with Mr. Dickerson prior to November 15, 2025 were deleted and are not available at this time**. The deletion occurred on November 15, 2025, before litigation was threatened or reasonably anticipated, and therefore Mr. Gabehart was under no legal duty at that time to preserve information related to this lawsuit. **Mr. Gabehart did exchange texts with Mr. Dickerson before November 15, 2025, and to the best of his memory at least one of those texts would be responsive to this Request**. In particular, Mr. Gabehart recalls receiving a text from Mr. Dickerson on or around November 13, 2025 in which Mr. Dickerson communicated the framework of an unsolicited offer to become the Chief Motorsports Officer at Spire. Mr. Gabehart does not deny that texts with Mr. Dickerson prior to November 15, 2025 regarding potential employment at Spire would be discoverable, if available, and every effort is being made to recover them.

Dkt. 62-1 at 5 (emphasis added).

From Gabehart's response it appears that he did not delete text messages with other potentially relevant custodians—only communications with Dickerson. **<u>Gabehart provides no explanation for why he decided to delete these messages, and only these messages</u>**. Why this

---

[1] Gabehart made the decision to delete his text messages with Dickerson only eight days after he surreptitiously took photographs of JGR's Confidential Information and Trade Secrets and only two days after he claims he received an "unsolicited" offer from Spire. Dkt. 12 ¶¶ 13 & 17. The same day he decided to delete his text messages with Dickerson, he accessed a file titled "2025 Spire Offer" within the "Spire Folder" on his personal Google Drive. Dkt. 35-12 ¶ 17.

information was not disclosed during the March 16, 2026 hearing is deeply troubling to JGR because of what it indicates about the ongoing threat of disclosure and use of JGR's trade secrets and confidential information. In light of this fact, Gabehart's assurances to the Court in his briefing in response to JGR's initial Motion for Expedited Discovery ring hollow: "[h]ere, there is no risk that evidence will be lost if this case proceeds along the traditional discovery path." Dkt. 41 at 7. Critical evidence had already been destroyed at the time Gabehart made this representation, and that information was material to the Court's decision in ruling on JGR's initial Motion for Expedited Discovery.

Gabehart also erroneously asserted his later deletion of certain JGR files on November 23 and 25 of 2025 was excusable because Gabehart did not have notice of any potential claims at that time. *Id.* Gabehart makes the same assertion in his discovery responses, stating "[t]he deletion occurred on November 15, 2025 before litigation was threatened or reasonably anticipated . . . ." Dkt. 62-1 at 5.

When Gabehart deleted his text messages with Dickerson on November 15, 2025, he knew or reasonably should have known[2] about the potential litigation with JGR for his **admitted** intentional misappropriation of JGR's trade secrets that occurred just a few days earlier. Further, Dickerson and Gabehart texted each other **only three days after the text deletion on November 18, 2025** commenting about a "rumor" at JGR that Gabehart was coming to Spire. Indeed, Dickerson capped this message by including an ironic angel emoji. *See* Dkt. 60 at 99. They then banter about not being able to control rumors. *Id.* Gabehart was also represented by counsel in negotiating a separation agreement with JGR **no later than November 11, 2025**. Dkt. 12-2 at 2

---

[2] "The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri v. GMC*, 271 F.3d 583, 591 (4th Cir. 2001).

(Gabehart November 10, 2025 email stating that he would "seek counsel"); GABEHART00019 (November 11, 2025 email forwarded by Gabehart to his agent, Carmony, which included message from Tim Carmichael stating Carmichael knew Gabehart was addressing the terms of the separation agreement with his attorney).

Understanding that Gabehart could not produce all responsive communications with Dickerson because he deleted them, JGR sought the communications from Dickerson. Through Spire's counsel, Dickerson informed JGR he opposed providing any voluntary discovery and opposed any request for expedited discovery as to Spire. Through those discussions, on March 25, 2026 Spire's counsel also disclosed that Dickerson no longer possessed the very text messages Gabehart deleted due to a purported automatic deletion feature, which Dickerson asserts he did not deactivate until February 26, 2026. The timing of this decision is also suspicious given Dickerson's knowledge of the numerous legal issues surrounding Gabehart at that time, but in any case highly prejudicial to JGR .[3] In any case, based on Dickerson's representations, Dickerson no longer has access to any text messages prior to approximately January 26, 2026.

Gabehart claims in this litigation that he believed he was not bound by a non-compete agreement as of November 10, 2025 through exercising Section 6 of his employment agreement

---

[3] The text messages Gabehart produced show that on February 11, 2026—eight days before JGR filed suit—Dickerson drafted a proposed press release responding to a lawsuit JGR had not yet brought and sent it to Gabehart. Dickerson clearly expected litigation arising out of Gabehart's misappropriation of JGR's Confidential Information and Trade Secrets to benefit Spire no later than February 11, 2026. Dickerson should have expected litigation. JGR's in house counsel informed Spire on December 3, 2026 of JGR's position that Spire would be tortiously interfering with JGR's contractual rights arising out of Gabehart's noncompete obligations if Spire hired Gabehart to a role that violated Gabehart's noncompete. Dkt. 35-5 ¶ 5. JGR cannot, therefore, understand why the automatic deletion function on Dickerson's phone was not deactivated until February 26, 2026.

with JGR.[4]  Dkt. 12 ¶ 12.  Dickerson has declared that he met with Gabehart as early as October 16, 2025 and "had nothing to hide" with respect to this meeting.  Dkt. 45-2 ¶¶ 27 & 43.  Dickerson further claimed JGR was well aware that Spire was recruiting Gabehart during this time.  Gabehart likewise has further stated that he "was not trying to conceal" a meeting he had with Dickerson in early December 2025.  Dkt. 37 ¶ 37.  If Gabehart and Dickerson's own repeated statements and positions are taken at face value, they had no reason to hide their engagement and communications related to Spire's recruitment of Gabehart and allegedly did not believe that a non-compete restriction was at issue.

So then, why would messages be proactively deleted?  Gabehart has not provided any justification or account of his decision to delete text messages with Dickerson on November 15, 2025 and Dickerson's purported automatic deletion practice, at a minimum, calls into question his retention of relevant material at a time when he should have taken measures to secure it.  Thus, the complete unavailability of messages between two critical actors in this dispute prior to November 15, 2025 begs the immediate question of "**why?**"  The most plausible inference is that the texts were deleted to conceal misconduct.  Given Gabehart's admitted theft of JGR's Confidential Information and Trade Secrets three days earlier, and the fact that he was communicating with the person for whose benefit Gabehart stole the information, the most plausible inference is that the misconduct was related to this stolen information.

---

[4] As noted throughout the preliminary injunction briefing and arguments, this is factually incorrect and disputed by JGR.

## II. EXPEDITED DISCOVERY REQUESTS

JGR seeks leave to undertake the expedited discovery set forth below in order to attempt to prevent the further loss of relevant evidence and to take reasonable steps to identify what communications were deleted and if they can somehow be recovered:

1. Third-party subpoena to Dickerson requesting production of all: (a) communications with Gabehart about employment or potential employment with Spire; (b) all documents referring to or referencing Gabehart's employment or potential employment with Spire; (c) all documents or communications referring to or relating to JGR's Confidential Information and Trade Secrets; and (d) all documents and data relating to activation and deactivation of autodelete features;

2. Requests for production of documents on Spire requesting production of all: (a) Dickerson's communications with Gabehart about employment or potential employment with Spire; (b) all communications and documents referring to or referencing Gabehart's employment or potential employment with Spire; (c) all communications with Gabehart referring to or relating to JGR's Confidential Information and Trade Secrets; (d) all documents relating to document retention policies and activation and deactivation of autodelete features; and (e) all data indicating when the autodelete feature(s) were activated on Dickerson's Devices;

3. Third-party subpoenas to Gabehart's and Dickerson's telephone providers requesting production of records reflecting Gabehart's and Dickerson's text messages and phone calls for the time period of October 1, 2025 through March 13, 2026;

4. Third-party subpoenas to Joe Custer, Justin Marks, Todd Meredith, Rick Ware, and Tommy Baldwin for communications with Dickerson referencing or relating to JGR's Confidential Information and Trade Secrets; and

5. Court ordered forensic review of Dickerson's cell phone(s), tablet(s) and computer(s) (collectively, "Devices") to determine: (a) if text messages responsive to JGR's Requests for Production of Documents to Gabehart are recoverable from those devices; and (b) when the autodelete function(s) on any of Dickerson's Devices were activated.

## III. ARGUMENT

Rule 26 of the Federal Rules of Civil Procedure empowers the Court to order expedited discovery before a Rule 26(f) conference when it is in the interests of justice. In doing so, the Court considers the totality of the surrounding circumstances to apply a "good cause" or "reasonableness" request. *See, e.g.*, *Gaming v. W.G. Yates & Sons Constr. Co.*, 2016 WL 3450829, at *3 (W.D.N.C. June 16, 2016). Courts applying this test consider the timing of the motion[5], whether the requests are narrowly tailored, and whether the party seeking early discovery has shown a likelihood of irreparable harm absent discovery. *Teamworks Innovations*, 2020 WL 406360, at *3; *W.G. Yates & Sons Constr. Co.*, 2016 WL 3450829, at *3–4. Courts also consider "whether information sought would be unavailable or subject to destruction in the absence of expedited production." *Bojangles' Int'l, LLC v. CKE Restaurants Holdings, Inc.*, No. 3:17-cv-00398-MOC-DSC, 2017 WL 3065115, at *6 (W.D.N.C. July 19, 2017)

---

[5] JGR approached the Court about these issues on March 25, 2026—less than 48 hours after Gabehart served written responses to JGR's initial requests for production disclosing he deleted text messages with Dickerson. The Court then set a briefing schedule and amended the briefing schedule after a conference with all counsel. *See* March 26, 2026 Text Only Order; March 30, 2026 Text-Only Order. JGR submits the relief requested herein is timely.

Pertinent to the relief JGR seeks in this Motion, the Court considers irreparable harm the requesting party would experience if it is not permitted to take discovery until after the Rule 26(f) conference and whether materials sought may be unavailable in the future or could be destroyed. *Chryso, Inc. v. Innovative Concrete Sols. of the Carolinas, LLC*, No. 5:15-CV-115-BR, 2015 WL 12600175, at *3 (E.D.N.C. 30 June 2015) (citing *Dimension Data North America, Inc. v. NetStar-1, Inc.,* 226 F.R.D. 528, 532 (2005)).

The nature and significance of the irreparable harm JGR is experiencing cannot be overstated. Gabehart has repeatedly admitted to taking JGR's trade secrets, and has admitted to deleting communications responsive to the narrow scope of discovery the Court permitted to determine if he used or disclosed those trade secrets. Once a trade secret is lost it is lost forever, and "the ***potential*** for the loss of trade secrets . . . demonstrates irreparable harm." *Atlas Powers Tech., Inc. v. Hinton*, No. 5:25-CV-00783-M, 2025 WL 3473362, at * 2 (E.D.N.C. Dec. 3, 2025) (citations omitted and emphasis added); *Comet Tech. United States of America, Inc. v. Beurman*, No. 18-CV-01441-LHK, 2018 WL 1990226, at * 7 (N.D. Cal. 2018) (expedited discovery targeted to determining how plaintiff's competitors are using plaintiff's information against it is essential to protect plaintiff's trade secrets). Courts also permit expedited discovery on third-parties seeking materials relevant to a defendants' alleged illegal conduct in order to mitigate irreparable harm. *TracFone Wireless, Inc. v. SCS Supply Chain, LLC*, 330 F.R.D. 613, 614–616, (S.D. Fla. 2019) (allowing third party discovery on expedited basis to non-parties plaintiff believed possessed information relating to defendants' alleged illegal conduct).

Gabehart has told this Court he took JGR's trade secrets and that he deleted pertinent evidence the Court ordered that he produce to JGR. The irreparable harm is self-evident. JGR

must be granted further expedited discovery to diagnose and potentially seek to mitigate the harm Gabehart caused it.

District Courts also routinely allow for expedited discovery where relevant materials might be lost or destroyed or are in fact lost or destroyed—as Defendants have admitted to here. *Epic Games, Inc. v. Atas*, 2025 WL 2394877, No. 5:25-CV-318-M-BM, at * 4 (E.D.N.C. Aug. 18, 2025) (allowing early discovery based on allegation evidence was destroyed); *WeRide Corp. v. Kun Huang*, 379 F.Supp.3d 834, 854–55 (N.D. Cal. 2019) (ordering expedited discovery on one defendant based in part on deletion of relevant materials by co-defendant); *Humphrey*, 2010 WL 2522743, at *1 (allowing expedited discovery on third-parties via subpoenas to obtain cell phone records from non-party).

Moreover, expedited discovery is appropriate where there is little or no burden on the defendant in responding to the proposed discovery. *See Humphrey v. Sallie Mae, Inc.*, 3:10-cv-01505-JFA, 2010 WL 2522743, at *1 (D.S.C. June 17, 2010).

### a. Third-Party Subpoenas to Dickerson and Requests for Production of Documents to Spire.

JGR's requests to serve a third-party subpoena on Dickerson and requests for production of documents on Spire seeking: (a) communications with Gabehart about employment or potential employment with Spire; (b) all communications and documents referring to or referencing Gabehart's employment or potential employment with Spire; (c) all documents or communications referring to or relating to JGR's Confidential Information and Trade Secrets; (d) all documents relating to document retention policies and activation of autodelete features; and (e) all data indicating when the autodelete feature(s) were activated on Dickerson's Devices. The totality of the circumstances surrounding the deletion of relevant text messages, not disclosed to the Court

when it ruled on JGR's initial Motion for Expedited Discovery, warrants allowing JGR to take additional expedited discovery. *See WeRide Corp.*, 379 F.Supp. at 854–55 (N.D. Cal. 2019).

Concerning the communications with Gabehart about employment or potential employment with Spire, JGR's requests are designed to accomplish three limited goals. The first is to identify any communications that Gabehart and/or Dickerson deleted. The second is to identify any documents and communications concerning Spire's assertion that Dickerson does not possess his communications with Gabehart from October 1, 2025 through November 15, 2025 that Gabehart deleted. Third, to the extent that the text messages between Gabehart and Dickerson between October 1, 2025 and November 15, 2025 are in fact no longer available, JGR seeks to obtain documents from Spire and Dickerson regarding Gabehart's employment discussions with Spire and any references to JGR's Confidential Information and Trade Secrets.

### b. Third-Party Subpoenas to Gabehart's and Dickerson's Cell Phone Providers.

JGR also seeks leave to serve third-party subpoenas to Gabehart's and Dickerson's cell phone providers in order to obtain records disclosing the frequency and volume of messages and phone calls between the two individuals and the amount of text messages that have been lost. Expedited discovery of these records is appropriate because they may be lost permanently through standard data deletion policies by the cell phone providers if not obtained now. *Humphrey*, 2010 WL 2522743, at *1 (noting standard data deletion policies of cell phone providers weighed in favor of allowing expedited discovery to obtain phone records).

The information JGR seeks to obtain largely would have been disclosed by Gabehart had he not deleted his text messages with Dickerson prior to November 15, 2025. Phone records indicating whether Gabehart and Dickerson spoke by phone in that timeframe are relevant to whether Dickerson was complicit in Gabehart's decision to delete the texts.

     **c.   Third-party subpoenas to Joe Custer, Justin Marks, Todd Meredith, Rick Ware, and Tommy Baldwin.**

JGR also seeks leave to serve third party subpoenas on five individuals, all of whom serve in leadership roles on NASCAR teams that partner with Spire's original equipment manufacturer. Consequently, these individuals are among the most likely individuals Dickerson may have communicated with concerning Spire's possession of JGR's Confidential Information and Trade Secrets due to their common Chevrolet relationship. For that reason, JGR requests the ability to serve narrow third party subpoenas on these individuals, seeking only production of communications with Spire or Spire's agents concerning Spire's possession of JGR's Confidential Information and Trade Secrets. *See TracFone Wireless, Inc.*, 330 F.R.D. at 614–616.

Through bad acts, negligence, or a combination of both, communications relevant to this dispute have been deleted. JGR should be permitted to serve these narrow and limited subpoenas to only a few recipients to ensure other relevant communications are not deleted by individuals not involved in this litigation, which is now the most efficient way to ensure highly relevant communications are preserved.

     **d.   Court Ordered Forensic Review of Dickerson's Cell Phone(s), Tablet(s) and Computer(s).**

Last, JGR requests that the Court order a forensic review of Dickerson's cell phones, tablets and computers. As to the cell phones, since relevant information has been deleted, forensic review may permit the parties to determine if there is any way the deleted messages Gabehart admitted are relevant can be restored. It will also provide the Court and parties with clarity regarding what text messages have been deleted and details surrounding when Dickerson activated the autodelete feature.

Concerning the tablets and computers, forensic review will allow the parties to determine if the deleted text messages were synched and saved to a location other than Dickerson's cell phone. The Court should order this review now as opposed to later. While telling the Court he has nothing to hide as to his recruitment by Spire, he has deleted the text messages from the time period in which he was being recruited by Spire. Dickerson also deleted those text messages. The most plausibly inference from Gabehart's intentional deletion of these messages is that those messages would hinder, or even foreclose, his ability to argue he has not shared JGR's Confidential Information and Trade Secrets or used them for Spire's benefit. Allowing a forensic review of Dickerson's devices will show if and to what extent he had access to and used the materials originating from JGR that Gabehart took from JGR. More, if the effort to recover these materials does not begin until merits discovery, the parties will likely be delayed in resolving the issues caused by the deletion of relevant documents. Conversely, resolving these issues now will ensure merits discovery can proceed without delay.

## IV. CONCLUSION

For the foregoing reasons and the reasons stated in the Motion, JGR respectfully requests that the Court permit it to take further expedited discovery because of the intentional deletion of relevant materials by Gabehart, the impact of which was exacerbated by the deletion of relevant communications by Dickerson.

This the 1st day of April, 2026.

**PARKER POE ADAMS & BERNSTEIN LLP**

/s/ Sarah F. Hutchins
Sarah F. Hutchins
N.C. Bar No. 38172
Tory Ian Summey
N.C. Bar No. 46437
Keith M. Weddington

N.C. Bar No. 14352
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com
*Attorneys for Joe Gibbs Racing, LLC*

**KING & SPALDING LLC**

Danielle T. Williams
dwilliams@kslaw.com

N.C. Bar No. 23283
300 South Tryon Street, Suite 1700
Charlotte, NC 28202
Thomas M. Melsheimer – *Pro Hac Vice*
tmelsheimer@kslaw.com
Chad B. Walker – *Pro Hac Vice*
cwalker@kslaw.com
Tracea Rice – *Pro Hac Vice*
trice@kslaw.com
Alexandra Moore - *Pro Hac Vice*
almoore@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201

*Attorneys for Joe Gibbs Racing, LLC*

## <u>ARTIFICIAL INTELLIGENCE CERTIFICATION</u>

No artificial intelligence was employed in doing the research for the preparation of this Motion, with the exception of the standard artificial intelligence embedded in WestLaw. Every statement and every citation to an authority contained in this Motion has been checked by an attorney in this case as to the accuracy of the proposition for which it is offered.

**PARKER POE ADAMS & BERNSTEIN LLP**

/s/ Sarah F. Hutchins
Sarah F. Hutchins
N.C. Bar No. 38172
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
*Attorney for Joe Gibbs Racing, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date the foregoing **PLAINTIFF JOE GIBBS RACING, LLC'S SECOND MOTION FOR EXPEDITED DISCOVERY** was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send notice and serve same upon counsel of record via the Court's electronic case filing system.

This the 1st day of April, 2026.

**PARKER POE ADAMS & BERNSTEIN LLP**

/s/ Sarah F. Hutchins
Sarah F. Hutchins
N.C. Bar No. 38172
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
*Attorney for Joe Gibbs Racing, LLC*