| | |
|---|---|
| JOE GIBBS RACING, LLC,<br><br>**Plaintiff,**<br><br>v.<br><br>CHRISTOPHER GABEHART and SPIRE MOTORSPORTS, LLC,<br><br>**Defendants.** | **DEFENDANT CHRISTOPHER GABEHART'S BRIEF IN OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR EXPEDITED DISCOVERY** |

Defendant Christopher Gabehart ("Mr. Gabehart"), by and through undersigned counsel, respectfully submits this Opposition to Plaintiff Joe Gibbs Racing, LLC's ("JGR" or "Plaintiff") Second Motion for Expedited Discovery (the "Motion"), ECF 65, and states as follows:

## I.      INTRODUCTION

JGR's Motion should be denied.[1] The Motion seeks to relitigate issues the Court has already addressed, expand expedited discovery well beyond the narrow scope the Court previously authorized, and needlessly pull third parties into the litigation without even trying to articulate a factual basis. JGR's litigation strategy—file motion after motion, accuse first and ask questions later—cannot manufacture evidence of disclosure of confidential JGR information where none exists.

JGR is clearly desperate. It has yet to identify a single verified instance in which Mr. Gabehart transmitted, disclosed, or used any JGR Confidential Information. Not for lack of trying: a pre-litigation examination of Mr. Gabehart's JGR-issued laptop, cell phone, and Google

---

[1] Mr. Gabehart, however, does not oppose the request for a subpoena to his cellphone provider. He has already initiated the process of requesting any available data for the deleted texts from his cellphone provider. In the event the Court permits a subpoena to his cellphone provider, the subpoena should be issued by Mr. Gabehart – not Plaintiff – to ensure only relevant, non-privileged information is provided to JGR.

accounts—conducted by JGR's own examiner pursuant to JGR's own protocol—and a first round of Court-ordered expedited discovery both came up empty. The only documents JGR has been able to point to are personal to Mr. Gabehart and cannot seriously be said to qualify as "Confidential Information" or trade secrets—a high-level business plan and a basic scorecard form used to compile widely-disseminated race information and take notes. JGR's latest Motion is yet another attempt to paper over this fundamental shortfall with volume rather than substance.

Mr. Gabehart disclosed the deletion of his text messages with Mr. Dickerson in direct response to the Court's expedited discovery order—a disclosure made voluntarily, transparently, and well before even the answer deadline in this case. The deletion occurred on November 15, 2025, well before litigation was ever threatened or anticipated, and Mr. Gabehart has made every effort—and would like nothing more than—to recover the messages. JGR now attacks Mr. Gabehart and his counsel for supposedly not disclosing this information sooner. But what exactly does JGR expect? That Mr. Gabehart's counsel should prematurely reveal client confidences while efforts to retrieve the texts are still ongoing? That they should just abandon their duty of loyalty to their client and bend a knee to Team JGR? No, thank you. JGR's attempt to weaponize Mr. Gabehart's voluntary and timely disclosure reflects the punitive nature of this litigation, not any legitimate evidentiary need.

## II. ARGUMENT

### A. JGR's Latest Request for Expedited Discovery – Like Its Legal Claims – Rests on Pure Conjecture, Not Evidence.

The expedited discovery this Court already ordered yielded no evidence that Mr. Gabehart transmitted, distributed, or shared any JGR Confidential Information. JGR now asks for still more *expedited, early* discovery in a frantic search for evidence to support its speculative claims. Its

stated rationale this time—the purported *ongoing* risk that evidence could be destroyed—wilts under scrutiny.

JGR attempts to create urgency from Mr. Gabehart's disclosure that text messages with Mr. Dickerson prior to November 15, 2025 were deleted. But this disclosure demonstrates Mr. Gabehart's continuing pattern of transparency, not his bad faith. Mr. Gabehart disclosed this fact in direct response to the Court's expedited discovery order—voluntarily and well before even the answer deadline in this case. He provided a complete response that acknowledged the deletion and explained the circumstances.

The deletion occurred on November 15, 2025, when litigation was not on anyone's mind, much less threatened or reasonably anticipated. At that time, Mr. Gabehart had not even engaged his own counsel. Rather, he was working through his sports agent, Mark Carmony, who works with counsel to provide legal advice to clients like Mr. Gabehart on an as-needed basis. Mr. Gabehart had not even provided his first round of comments to the draft separation agreement JGR provided to him—those comments were not transmitted to JGR until November 18, 2025, three days after the deletion. When an employee departing on *amicable* terms has not yet even begun substantive negotiations over a separation agreement, by no objective measure is litigation "reasonably anticipated." *See, e.g.*, *Puebla Palomo v. DeMaio*, No. 515-CV-1536, 2019 WL 1323927, at *3-4 (N.D.N.Y. Mar. 25, 2019) ("Defendants' request that Plaintiff sign an employment separation agreement does not amount to contemplated or threatened litigation which would trigger Plaintiff's duty to preserve the subject audio files."); *Little v. JB Pritzker for Governor*, No. 18-C-6954, 2020 WL 13189999, at *3 (N.D. Ill. Mar. 26, 2020) (same). The duty to preserve arises "somewhere between knowledge of the dispute and direct, specific threats of

litigation." *Bhattacharya v. Murray*, No. 3:19-CV-00054, 2022 WL 1510550, at *4 (W.D. Va. May 12, 2022). On November 15, no external event triggering a duty to preserve had occurred.

Further, as stated in Mr. Gabehart's discovery responses, efforts to recover the texts are ongoing. They could still be recovered. In addition, there are means by which to discover the same substantive information. Already, Mr. Gabehart has produced a spreadsheet he created on November 13 memorializing the framework of the Spire offer as relayed in the text of the same day. Depositions are another means to discover this information. *See Paul v. W. Express, Inc.*, No. 6:20-CV-00051, 2021 WL 8083473, at *4 (W.D. Va. Oct. 27, 2021).

For the Court to assume that Mr. Gabehart deleted his texts with Mr. Dickerson to conceal something harmful, there would need to be some evidentiary basis to connect Mr. Dickerson to a claim against Mr. Gabehart. No such evidentiary nexus exists. Instead, JGR relies on exaggerated labels and rank speculation. In reality, there is a much more plausible and pedestrian explanation than the one JGR advances: the most relevant deleted texts concerned the job offer communicated on November 13. This explanation, provided in Mr. Gabehart's discovery responses, is far more consistent with the evidence than JGR's assume-the-worst working theory. As articulated in prior filings, there was no noncompete in play on November 15—and as JGR's counsel conceded in the Preliminary Injunction hearing, the alleged "for cause" termination did not occur until February 9, 2026 (although JGR was unable to articulate any reason why Mr. Gabehart was not paid for several months prior to that). Additionally, there is no evidence that JGR Confidential Information was shared with Spire. To the contrary, both Mr. Gabehart and Mr. Dickerson have testified under oath that no JGR information has been shared or disclosed. ECF 12 ¶ 44; ECF 45-2 ¶¶ 45-52. Mr. Dickerson, in fact, testified that Spire does not want or need JGR's information. ECF 45-2 ¶ 46. Mr. Gabehart and Spire signed an NDA prohibiting Mr. Gabehart from disclosing to Spire or using

any JGR Confidential Information. ECF 12 ¶ 47; ECF 12-9; ECF 45-2 ¶ 48. *That is the evidence in the record.*

Common sense confirms the point. Mr. Gabehart readily volunteered to undergo forensic examination of his phone and cloud storage accounts—something no person would do if they had something bad to hide. If Mr. Gabehart had shared confidential information via text and then deleted the texts to cover his tracks, surely he would have deleted the files themselves from his phone and Google Drive at the same time. As the Court is well aware, he did not. Mr. Gabehart's own conduct throughout this litigation—including his voluntary disclosure of the deletion, his ongoing efforts to recover the messages, and his willingness to consent to a carrier subpoena—demonstrates his good faith. Yet JGR repeatedly attempts to weaponize this transparency against Mr. Gabehart.

JGR's reliance on Mr. Gabehart's discovery responses to manufacture an inference of wrongful conduct[2] justifying expedited discovery is equally unavailing. JGR selectively cites Mr. Gabehart's responses to Requests for Production Nos. 1, 4, and 5—which relate to employment discussions—while conspicuously ignoring Request No. 3, which sought communications "relating to JGR's race setups, analytics, sponsorships, or JGR employee recruitment." Mr. Gabehart's response to that request—the one that actually addresses JGR's Confidential Information—was unequivocal: "Mr. Gabehart has no documents that are responsive to this Request." JGR cannot rely on Mr. Gabehart's truthful responses only when it suits them.

---

[2] JGR continues to demonstrate a willingness to twist facts at the expense of truth. It claims: "Gabehart has told this Court he …. deleted pertinent evidence the Court ordered that he produce to JGR." (ECF 65 at 8). That statement, taken literally, clearly intends to convey to the reader that Mr. Gabehart deleted "evidence" *after* the Court ordered that evidence to be produced, in defiance of a court order. That, of course, is false on multiple levels. First, when Mr. Gabehart deleted texts on November 15, 2025, he was not deleting "evidence" because at that time, the thought of litigation had not crossed anyone's mind. Second, as JGR knows, the texts were deleted three months before JGR filed suit and four months before the Court ordered expedited discovery.

Even setting aside the lack of evidence supporting JGR's claims, its requests for additional expedited discovery fail to meet the applicable legal standard.

**B.**      **JGR's Requests Are Not Narrowly Tailored and Fail to Establish Good Cause.**

Federal Rule of Civil Procedure 26(d) provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized . . . by court order." Fed. R. Civ. P. 26(d). Courts in the Fourth Circuit apply a "reasonableness" or "good cause" standard when evaluating requests for expedited discovery. *See Dimension Data N. Am., Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528, 531 (E.D.N.C. 2005); *NAPCO, Inc. v. Landmark Tech. A, LLC*, 555 F. Supp. 3d 189, 225 (M.D.N.C. 2021); *Allen v. City of Graham*, No. 1:20-CV-997, 2021 WL 2037983, at \*6 (M.D.N.C. May 21, 2021) (collecting cases).

Even where good cause exists, the discovery request must be "narrowly tailored to obtain information relevant to a preliminary injunction determination." *2311 Racing LLC v. Nat'l Ass'n for Stock Car Auto Racing, LLC*, 2024 WL 4919420, at \*3 (W.D.N.C. Oct. 31, 2024) (quoting *Dimension Data N. Am., Inc.*, 226 F.R.D. at 532).

JGR now seeks discovery far beyond what this Court previously authorized: third-party subpoenas to individuals at other race teams, forensic examination of Mr. Dickerson's personal devices, and carrier subpoenas seeking all records beyond Mr. Gabehart and Mr. Dickerson through March 13, 2026—a scope that extends well beyond the previously ordered expedited discovery. This is not "narrowly tailored" discovery; it is a fishing expedition dressed up as urgency.

The traditional discovery process exists to ensure fairness, efficiency, and due process for all parties. JGR should not be permitted to bypass these fundamental procedural protections simply because it is dissatisfied with the results of its own previously conducted forensic examination and

6

the expedited discovery this Court already authorized. As Mr. Gabehart has previously argued, this case should proceed according to the standard discovery timeline established by the Federal Rules of Civil Procedure and this Court's scheduling order. *See 2311 Racing LLC*, 2024 WL 4919420, at *3 (finding that a five-day response timeframe would put a significant burden on Defendants).

### C. Requests 1, 2, and 5 Are Not Directed at Mr. Gabehart, Are Not Narrowly Tailored, and Reflect JGR's Selective Invocation of Litigation Positions.

Requests 1, 2, and 5 of JGR's Motion seek discovery from and concerning Jeff Dickerson and Spire Motorsports, LLC—not Mr. Gabehart. While Mr. Gabehart would therefore defer to Spire's arguments regarding those requests, he is compelled to object to the extent these requests rest on the premise that Mr. Gabehart engaged in wrongful conduct. Mr. Gabehart did not "destroy evidence." As explained above, the text messages in question were deleted on November 15, 2025- before any litigation was reasonably anticipated, before Mr. Gabehart had even engaged his own counsel, and before any duty to preserve had arisen. Absent some duty to preserve, people are free to manage their documents – texts, emails, voicemails, files – as they see fit. *See Trainer v. Cont'l Carbonic Prods., Inc.*, No. 16-CV-4335, 2018 WL 3014124, at *4 (D. Minn. June 15, 2018) (finding that individual was not required to preserve text messages unless and until a duty to preserve arose) (citing Fed. R. Civ. P. 37(e), Advisory Committee Notes to 2015 Amendment, which states that Rule 37(e) "does not apply when information is lost before a duty to preserve arises"). JGR's characterization of Mr. Gabehart's conduct as evidence destruction, ECF 65 at 3, is misleading and should not serve as a basis for expanded discovery against Mr. Dickerson.

Mr. Gabehart also notes that JGR's request for forensic examination of Mr. Dickerson's devices is contrary to JGR's prior position in this very litigation. When Mr. Gabehart requested reciprocal discovery—including forensic examination of devices belonging to JGR personnel— JGR opposed that request. JGR argued that third-party personal devices should be excluded from

expedited discovery. Now that JGR wants to examine a third party's devices, it readily abandons that position.

The Court should not permit JGR to selectively invoke litigation positions when they are advantageous and discard them when they are not. Litigants are entitled to expect consistency from their adversaries. JGR's approach—one rule for thee, another for me—is contrary to the orderly administration of justice and should be rejected.

Should the Court order any third-party discovery in connection with the Motion, Mr. Gabehart respectfully requests the Court revisit its prior ruling on expedited discovery, ECF 48. Fairness requires that Mr. Gabehart have the same opportunity as JGR to gather relevant evidence. *See CIENA Corp. v. Jarrard*, 203 F.3d 312, 324 (4th Cir. 2000) (remanding with instructions to provide defendant with opportunity to conduct expedited discovery); *Dimension Data*, 226 F.R.D. at 532 (recognizing court's broad discretion to structure discovery fairly).

Specifically, if the Court permits forensic examination of Mr. Dickerson's devices or subpoenas to third parties, Mr. Gabehart requests the reciprocal discovery of the cell phones of Heather Gibbs, Eric Schaeffer, Dave Alpern, and Toni Rogers, consistent with prior requests. These individuals played central roles in JGR's decision to pursue this litigation and in the so-called "for cause" termination that JGR claims triggered the 18-month noncompete. Their communications are directly relevant to Mr. Gabehart's defenses and counterclaims.

### D. Request 3 – Third-Party Subpoena to Carrier.

Mr. Gabehart does not object to a third-party subpoena to his cellular carrier and, in fact, readily volunteers to issue the subpoena himself. Indeed, Mr. Gabehart has already made a similar request to his own provider in an effort to recover the deleted text messages. Mr. Gabehart has not yet received a response from his carrier. Mr. Gabehart's willingness to pursue recovery of these messages—and to consent to JGR's forensic examiner exhausting all available means to recover

the texts from the prior imaging of Mr. Gabehart's phone—demonstrates his continuing good faith and transparency. He has nothing to hide and would like nothing more than for JGR and the Court to see these texts.

However, JGR's Request 3 is substantially broader than the previously ordered expedited discovery and is not narrowly tailored as required by the governing case law. JGR requests all communications between Mr. Gabehart and Mr. Dickerson through March 13, 2026—well beyond the timeframe relevant to the preliminary injunction issues before the Court. *See 2311 Racing LLC*, 2024 WL 4919420, at *3; *Dimension Data N. Am., Inc.*, 226 F.R.D. at 532 (expedited discovery must be "narrowly tailored to obtain information relevant to a preliminary injunction determination"). The deletion in question occurred on November 15, 2025. Mr. Gabehart's text messages have now been preserved multiple times—once in January 2026 by JGR's forensic examiner and once in March 2026 by Mr. Gabehart's forensic expert. JGR's Request 3 date range is much too broad without justification.

Given the open-ended nature of the request, Mr. Gabehart should issue the subpoena and any documents produced should be directed to Mr. Gabehart's counsel first for privilege review and a relevance determination before production to any other party. Mr. Gabehart has legitimate concerns about the protection of attorney-client privileged communications and joint defense materials. JGR's requested timeframe extends through March 13, 2026—a period during which Mr. Gabehart was actively represented by counsel in this litigation and engaged in joint defense communications with co-defendants. Permitting JGR unfettered access to these records without appropriate privilege review would be fundamentally unfair and contrary to established discovery practice.

**E. Request 4 – Third-Party Subpoenas to Joe Custer, Justin Marks, Todd Meredith, Rick Ware, and Tommy Baldwin.**

Request 4 seeks leave to serve third-party subpoenas on five individuals—Joe Custer, Justin Marks, Todd Meredith, Rick Ware, and Tommy Baldwin—for "communications with Spire or Spire's agents concerning Spire's possession of JGR's Confidential Information and Trade Secrets." The Court should deny this request for a simple reason: the Court has already addressed and rejected a prior identical request from JGR, and JGR offers no new information to justify this extraordinary second request.

JGR has repeatedly sought to expand discovery to third parties outside the core dispute based on an evolving theory. Each time, the Court has appropriately limited expedited discovery to the narrow issues actually relevant to the preliminary injunction. JGR's attempt to relitigate this issue should be rejected.

Despite repeated invitations from the Court to provide substantiation for JGR's claims that Mr. Gabehart or Mr. Dickerson shared JGR's Confidential Information with other race teams, JGR has pointed to none—including in the present filing. Initially, JGR cited "garage chatter" as a basis for expedited third-party discovery. Now, having apparently abandoned that unsubstantiated rationale, JGR continues to speculate that Mr. Dickerson "may have communicated" with these individuals "concerning Spire's possession of JGR's Confidential Information and Trade Secrets." *See* ECF 65 at 11. Anyone can speculate about anything—but that is obviously not a legitimate basis for expedited discovery.

JGR has not pointed to a single communication, document, or act demonstrating that Mr. Gabehart shared any JGR Confidential Information. Nor has JGR identified any instance in which Spire or Mr. Dickerson received such information, or any instance in which its Confidential

Information has been used by either Defendant. Under these circumstances, there is no basis to burden five third parties with expedited subpoenas based on nothing more than a hunch.

JGR's request is part of a continued harassment campaign designed to drag Mr. Gabehart, Mr. Dickerson, and anyone associated with Spire through the mud with no evidentiary basis. The racing community is small and tight-knit. JGR knows that serving subpoenas (with no evidentiary basis) on leaders of competing teams will deliver a message throughout the industry. The Court should not become a surrogate for JGR's turf war.

### III. CONCLUSION

For the foregoing reasons, Defendant Christopher Gabehart respectfully requests that this Court deny Plaintiff Joe Gibbs Racing, LLC's Second Motion for Expedited Discovery in its entirety and allow this case to proceed according to the traditional discovery timeline. Mr. Gabehart, however, will consent to a subpoena to his phone carrier if proper safeguards are put in place.

If, however, the Court is inclined to grant any expedited third-party discovery, Mr. Gabehart respectfully requests that the Court revisit its prior ruling on expedited discovery and permit reciprocal discovery of the cell phones of Heather Gibbs, Eric Schaeffer, Dave Alpern, and Toni Rogers, consistent with prior requests.

Respectfully submitted,

This the 8th day of April, 2026.

By:  */s/ Cary B. Davis*
        Cary B. Davis
        N.C. Bar No. 36172
        cdavis@rbh.com

        Spencer T. Wiles
        N.C. Bar No. 53664
        swiles@rbh.com

11

William M. Miller
N.C. Bar No. 36946
wmiller@rbh.com

Anna Claire Tucker
N.C. Bar No. 59457
atucker@rbh.com

ROBINSON, BRADSHAW & HINSON, P.A.
600 S. Tryon Street, Suite 2300
Charlotte, North Carolina 28202
(704) 377-2536

*Attorneys for Defendant Christopher Gabehart*

**ARTIFICIAL INTELLIGENCE CERTIFICATION**

Pursuant to the Court's June 18, 2024 Order, 3:24-mc-104, I hereby certify that:

- No artificial intelligence was employed in doing the legal research for the preparation of this document, with the exception of such artificial intelligence embedded in standard on-line legal research sources such as Westlaw, Lexis, FastCase, and Bloomberg; and

- Every statement and every citation to an authority contained in this document has been checked by an attorney at this firm and/or paralegal working at their direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 8th day of April, 2026.

/s/ *Cary B. Davis*
Cary B. Davis

13