**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Case No. 3:26-CV-00133-SCR-DCK**

JOE GIBBS RACING, LLC,

      Plaintiff,

      v.

CHRISTOPHER GABEHART and SPIRE
MOTORSPORTS, LLC,

      Defendants.

**PLAINTIFF JOE GIBBS RACING,
LLC'S CONSOLIDATED REPLY
MEMORANDUM IN SUPPORT OF
ITS SECOND MOTION FOR
EXPEDITED DISCOVERY**

Defendants do not even attempt to refute the key fact justifying expedited discovery—Gabehart inexplicably deleted his texts with Spire co-owner, Jeff Dickerson, only eight days after stealing JGR's trade secrets and confidential information. With more than two weeks since Gabehart's March 23 disclosure, he has not *asserted*, much less submitted any evidence supporting, an innocent reason for the deletion. This demonstrates a desire to conceal behavior and justifies targeted discovery, both to ensure the already impaired evidentiary record—a problem exacerbated by Dickerson's own text deletions—is not further diminished and to investigate the circumstances surrounding the deletion itself.

## I. ARGUMENT

### A. The Landscape Has Changed: Defendants' Admitted Deletion of Relevant Evidence Makes Expedited Discovery Reasonable Under the Circumstances.

Since the Court's ruling on JGR's initial request for expedited discovery, materially new facts have emerged. Gabehart has admitted that he deleted all text messages with Dickerson, prior to November 15, 2025. This deletion, which Gabehart did not disclose to the Court when expedited discovery was first considered, fundamentally alters the good-cause analysis and provides a sufficient basis for JGR's renewed request, especially in light of the entire record that includes Gabehart's admitted theft of trade secrets and confidential information.

Defendants' suggestion that JGR is relitigating a previously denied motion ignores the key point: JGR sought its initial expedited discovery without knowing that Defendants had deleted responsive materials under circumstances suggesting they were deleted to conceal their contents from litigation. Because Defendants have repeatedly asserted that they did not believe they had anything to hide with respect to Spire's recruitment of Gabehart, it stands to reason that the destruction concealed other bad acts. At no point during the March 16 hearing or briefing did Gabehart disclose he had erased communications with Dickerson and only Dickerson—despite

1

knowing of the deletion at the time. Only after discovery was ordered over Gabehart's objection, did the deletions shortly thereafter come to light.[1] The present motion responds to that newly admitted evidence of destruction, not dissatisfaction with the Court's prior ruling. This evidence independently warrants expedited discovery under the good cause standard.

Courts in this District apply a totality-of-the-circumstances "good cause" standard when considering expedited discovery, with particular emphasis on whether relevant information "would be unavailable or subject to destruction in the absence of expedited production." *Gaming v. W.G. Yates & Sons Constr. Co.*, 2016 WL 3450829, at *3 (W.D.N.C. June 16, 2016); *see also Bojangles' Int'l, LLC v. CKE Rests. Holdings, Inc.*, 2017 WL 3065115, at *6 (W.D.N.C. July 19, 2017). District courts routinely permit expedited discovery where relevant materials have been lost or destroyed. *See Epic Games, Inc. v. Atas*, 2025 WL 2394877, at *4 (E.D.N.C. Aug. 18, 2025); *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 854–55 (N.D. Cal. 2019).

Spire's attempt to distinguish *Epic Games* based on the need in that case to identify additional defendants is unavailing. In *Epic Games*, the court generally stated that the risk that "Defendants could destroy information [plaintiff] intends to seek [is] sufficient to warrant expedited discovery," and it did not limit its rationale to the need to identify additional defendants. 2025 WL 2394877, at *4. Here, the risk of destroying evidence of the transmission of JGR's trade secrets is just as dire, and the risk of additional destroyed evidence is apparent because Gabehart has already demonstrated his willingness to deliberately delete relevant evidence.

Further, *WeRide* is analogous to the present facts, contrary to Spire's assertion that it is unrelated given the "implausibly fast development" of competing technology in that case. There,

---

[1] Gabehart's attempt to excuse his failure to disclose the deletion of his text messages earlier, on the ground that efforts to locate them were "ongoing," rings hollow. Dkt. 67 (Gabehart Opp'n Br.) at 4. Even if follow up efforts were continuing, nothing prevented Defendants from disclosing the deletion itself earlier.

2

as here, despite the absence of direct proof of transmission to the new employer, expedited discovery was warranted because a defendant deliberately destroyed relevant evidence, creating an evidentiary gap and risk of ongoing harm. 379 F. Supp. 3d at 849–50, 855–56. Here, Gabehart's targeted deletion of evidence—combined with evidence that he immediately operationalized JGR's confidential materials for Spire's benefit—also creates heightened circumstances that support expedited discovery. *See, e.g.*, Dkt. 59 (JGR's Second Supplemental Br. ISO PI) at 8–12.

Moreover, Gabehart does not dispute his selective deletion of evidence and offers no explanation for why only the Dickerson messages were deleted. Gabehart does not claim routine data cleanup, storage concerns, or any other benign rationale. But the timing and context of the deletion are telling. Gabehart deleted the messages on November 15, 2025: (a) eight days after photographing JGR's most sensitive trade secrets; (b) two days after receiving Spire's purported "unsolicited" offer; and (c) on the same day he accessed the "Spire" folder on his personal Google Drive containing JGR's proprietary files he admittedly stole. Dkt. 35-12 (Walton Supp. Decl.) at ¶¶ 10–11, 15–18; Dkt. 12 (Gabehart Decl.) at ¶ 17. He thus erased his communications with Spire's co-owner at the precise moment he was actively engaging with the stolen information.

Gabehart even argues that his failure to delete stolen JGR files from his phone and Google Drive at the same time he deleted the text somehow demonstrates his innocence. *See* Dkt. 67 (Gabehart Opp'n Br.) at 5. But the opposite is true. If Gabehart had nothing to hide, as Defendants suggest, then there would have been no reason to delete the text to begin with. Further, such speculation can be given no weight when Gabehart is unwilling to submit a sworn declaration that he had an innocent reason for the deletion. The argument also fails because, as JGR's forensic analysis shows, the access logs were only discovered due to Gabehart's failure to disable cloud-based syncing, a technical mishap that anyone other than a forensic expert could have made. Dkt.

3

46 at 10–11 (citing Dkt. 35-12 at ¶¶ 13–22). This is not good-faith openness and the mistake only shows that Gabehart is not a trained forensic expert, not that his conscience is so clear that he gives no thought to covering his tracks. The record establishes he took photographs of a computer screen showing JGR's Confidential Information and Trade Secrets precisely ***to avoid detection***, and the only logical inference from the deleted texts is that he had a ***similar evasive purpose***.

Independent of Rule 26 of the Federal Rules of Civil Procedure's good-cause analysis, Gabehart's conduct violates his duty to preserve evidence once litigation was reasonably foreseeable. Under Fourth Circuit law, that duty arises before a complaint is filed when a party should reasonably anticipate litigation. *Silvestri v. GMC*, 271 F.3d 583, 591 (4th Cir. 2001). Here, Gabehart's deliberate misappropriation of trade secrets—photographing confidential files to avoid detection, stockpiling trade secrets and confidential information in a "Spire" folder, and accessing them after departure—constitutes intentional conduct from which litigation should plainly be anticipated. *See Bryan Bros., Inc. v. Cont'l Cas. Co.*, 704 F. Supp. 2d 537, 541 (E.D. Va. 2010) (finding that "a reasonable person in [the employee's] position would have a basis to believe that commission of intentional and illegal acts might reasonably be expected to be the basis of a claim.") (internal quotes omitted). Moreover, Gabehart's role in investigating another employee who attempted to take JGR's confidential information only further establishes his anticipation of litigation following his own theft. Dkt. 9-2 (Brown Decl.) at ¶¶ 18–20; *see also Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 107 (E.D. Va. 2018) (noting a party's "familiarity with the predicates for litigation should have caused him to reasonably anticipate that [the claimant] would eventually bring suit against him").

Further, Gabehart's argument about anticipation focuses solely on the contract claims, ignoring his trade secret theft. A rule that permitted the destruction of trade secret theft evidence

prior to a subjective belief in a contract breach suit would create a perverse incentive for individuals to immediately destroy evidence of their theft and transmission of the secrets. Anyone who has just stolen trade secrets, including in a way designed to avoid detection, should know that a suit is likely. And in Gabehart's case, he happened to have sophisticated personal experience concerning these obligations and the legal ramifications. Dkt. 9-2 at ¶¶ 18–20. Further, even leaving aside the trade secret theft, any suggestion that an employment contract-based lawsuit was not "on anyone's mind" at the time of deletion is belied by the record, including surviving texts between Gabehart and Dickerson referencing a "[l]awsuit" and "settlement talks" three days after the deletion of the prior message thread, and Gabehart's contemporaneous engagement with employment lawyers, as reflected in his subsequently produced privilege log. Dkt. 67 at 3; *see also* Ex. 5 to Dkt. 60-1 (Williams Decl.) at GABEHART00048.

This destruction purposefully deprived JGR of evidence concerning Gabehart's communications with Spire and potential transmission of trade secrets and confidential information, and Spire's knowledge of or participation in the misappropriation. As explained, the destruction leaves open multiple avenues by which JGR's information may have been shared and now cannot be traced.[2] Dkt. 9-4 (Walton Decl.) at ¶ 30. This evidentiary void, in light of the larger record of admitted trade secret theft, establishes good cause for targeted expedited discovery to prevent further loss and to investigate the circumstances and consequences of the deletion.

---

[2] Despite these limitations, the record contains affirmative evidence that Gabehart used JGR's confidential information for Spire's benefit. Defendants' suggestion that JGR's prior forensic review "came up empty" is therefore incorrect. Dkt. 67 at 2. This Court has already found that the information Gabehart took constituted confidential information as defined in his employment agreement, despite Gabehart's assertion that it does not warrant this recognition. Dkt. 26 (TRO) at ¶ 14; *see also* Dkt. 67 at 2. And JGR's competition director attested that the spreadsheet Gabehart created for Spire duplicates JGR's confidential metrics, diagnostic categories, and analytical methodology. Dkt. 60 (Brown Third Decl.) at ¶¶ 5–6, 8, 13–14, 16–19. But the present question is not whether Gabehart used JGR's confidential information—the spreadsheet confirms that he did—but rather, the question concerns what else he may have transmitted, discussed, or shared through the channels he took pains to destroy.

### B. Defendants' Deletion Compounds the Need for Third Party Discovery.

#### 1. *Spire's Post-Suit Preservation Efforts Do Not Moot the Need for Expedited Discovery*

Spire's claim that its post-suit preservation efforts negate the need for expedited discovery fails because it conflates prevention of future spoliation with remediation of past spoliation. Here, relevant communications have likely already been lost through Gabehart's selective deletion of texts with Dickerson and Dickerson's auto-deletion of messages before any litigation hold was in place. No post-litigation preservation effort can recover communications that no longer exist. The only remaining potential sources of this evidence are third parties—wireless carriers and individuals with whom Dickerson was most likely communicating at the relevant time.

Spire's reliance on *2311 Racing LLC* for the premise that a defendant's implementation of a "litigation hold that preserves relevant materials, including those requested by Plaintiffs . . . weighs against" expedited discovery is misplaced. No. 3:24-cv-00886-FDW-SCR, 2024 WL 4919420, at *3 (W.D.N.C. Oct. 31, 2024). There, the court found that the litigation hold weighed against expedited discovery *in the absence of any evidence that materials had been deleted or were at risk of loss*. *Id.* This case presents the opposite circumstance: evidence has not merely been threatened—it has already been destroyed. A litigation hold imposed after the fact does not retroactively cure that evidentiary void, nor does it eliminate the need to obtain potentially time-sensitive records from third parties whose data may be purged in the ordinary course.

Even if Spire is not at fault for the deletion of Dickerson's texts, which exacerbated the results of the intentional deletions by Gabehart, the reality remains that the impaired evidentiary record justifies expedited discovery. The record at the very least raises significant questions about the sufficiency of Spire's practices. Spire attempts to excuse losing Dickerson's messages as the result of automatic deletion and claims that spoliation is impossible because litigation was not

6

Case 3:26-cv-00133-SCR-DCK     Document 72     Filed 04/13/26     Page 7 of 18

anticipated until months later. But the record supports a contrary inference, including JGR's December 3, 2025 warning that Spire faced potential legal exposure if it hired Gabehart. Dkt. 35-5 (Schaffer Decl.) at ¶¶ 4–5.

While Spire disputes that notice was given, at a minimum, the Court has discretion to consider that conflicting evidence as to when Spire reasonably anticipated litigation only underscores the need for early discovery. *See U.S. ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002) ("We afford substantial discretion to a district court in managing discovery."); *Lulu Enters., Inc. v. N-F Newsite, LLC*, No. 5:07-CV-347-D, 2007 WL 3101011, at *6 (E.D.N.C. Oct. 19, 2007) (noting "broad discretion in regulating discovery.").

In short, Spire's belated preservation efforts do not negate good cause, as no litigation hold, however robust, can recover what has already been permanently deleted. Evidence has been lost, and additional evidence remains at risk. Targeted expedited discovery is warranted.

### 2. *The Discovery Is Narrowly Targeted and Cannot Be Obtained Elsewhere.*

The deletion of evidence created circumstances where discoverable evidence cannot be obtained elsewhere—knowledge neither JGR nor the Court were privy to at the time of the Court's earlier ruling. *Abrego Garcia v. Noem*, 348 F.R.D. 589, 591 (D. Md. 2025) (courts consider whether evidence can "be obtained more efficiently from some other source."). Thus, assuming Defendants were correct, a broader scope is justified as the factual landscape has changed. Regardless, JGR's requests are not broad but are reasonable, narrowly tailored, and impose only a minimal burden.[3]

**Request No. 1: Third-party subpoena to Dickerson for employment-related communications, documents concerning JGR's confidential information, and autodelete**

---

[3] Nor would expedited discovery be inefficient or prejudicial. JGR's claims and any counterclaims Defendants may assert arise from the same core facts and timeframe, and discovery will necessarily cover substantially similar issues regardless of the procedural path. Proceeding now promotes efficiency rather than delay and does not expand the ultimate scope of discovery.

**records**. This request targets the individual whose communications with Gabehart were selectively deleted. Dickerson is Spire's co-owner, admits he conducts all Spire business exclusively on personal devices, and the already-produced texts show he used those devices to communicate with Gabehart regarding employment. Because Dickerson's pre-January 2026 texts are gone due to auto-deletion, this subpoena seeks to recover what can be recovered and to determine when the autodelete feature was activated—information directly relevant to investigating the deletion.

**Request No. 2: Dickerson-Gabehart communications, retention policies, and autodelete data**. This request seeks Spire's retention and auto-deletion policies, which may reveal if data marked "deleted" can nevertheless be retrieved. It also seeks data showing when autodelete features were activated on Dickerson's devices—information that may reveal if the deletion was routine or strategic, which is essential to investigating the circumstances of the loss of evidence.

**Request No. 3: Cell Phone Carriers for Dickerson-Gabehart records**. The parties have agreed to issue a joint subpoena to Gabehart's cell phone provider, limited to (1) the time period from October 1, 2015, to November 15, 2025, and (2) text messages and any information or metadata regarding text messages and calls between Gabehart and Dickerson. This agreement is without prejudice to future discovery requests and obviates the need for court intervention.

**Request No. 4: Third-party subpoenas to Spire's alliance partners for communications with Dickerson concerning JGR's confidential information**. The requests to Spire's partner teams are narrowly tailored to individuals most likely to possess communications reflecting whether Dickerson shared JGR's trade secrets or whether Spire had access to JGR's confidential information—evidence we now know may no longer be obtainable from Defendants themselves due to their deletions. Defendants' assertion that these subpoenas were previously denied ignores this critical change in circumstances. Contrary to Spire's argument, the recipients

8

are its Chevrolet alliance members. Even Dickerson acknowledged that Spire shares "certain of its own trade secrets and confidential information with its technical alliance partner, Hendrick Motorsports." Second Dickerson Decl. (Dkt. 68–1) at ¶ 19. It is therefore logical to infer he may have communicated with other manufacturer partners about information obtained from a Toyota-affiliated competitor—precisely the kind of intelligence that would interest members of a manufacturer alliance. These third parties represent the best remaining source for evidence of dissemination given the destruction of texts. JGR need not prove the contents of those communications before seeking discovery; it seeks discovery precisely *because* the evidence has been destroyed. Dickerson's assertion that he did not share such information does not minimize JGR's need for expedited discovery. Further, any burden or relevance objections properly belong to the subpoena recipients, not Defendants. The tight-knit nature of the NASCAR industry—which Gabehart himself acknowledges—underscores why subpoenas are necessary. Dkt. 67 at 11. Voluntary cooperation cannot be expected when providing information may reflect negatively on a colleague.

**Request No. 5: Forensic review of Dickerson's personal devices.** This request allows JGR to verify Spire's assertions that deleted information is unrecoverable. JGR is entitled to an independent forensic analysis not conducted by Defendants' own expert. The review would determine both whether texts are recoverable and when the autodelete function was activated.

### 3. *Defendants' Destruction and Delay Will Inflict Irreparable Harm.*

Gabehart does not address JGR's irreparable harm arguments. Spire also misses the mark—mischaracterizing JGR's position, ignoring the deletion of relevant evidence, and offering false assurances that will not protect the evidentiary record. Spire argues JGR has not demonstrated any

temporal need for expedited discovery. Dkt. 68 at 10. But in view of the admitted deletions, time is of the essence.

The fact that the deletions occurred at all, and where no explanation has been provided despite ample opportunity, can only mean that the purpose of destroying the communications was to conceal material. Given the timing of the deletions in association with the misappropriation of JGR's Confidential Information and Trade Secrets, and the fact that Defendants claim no concealment of their recruitment efforts, there is strong reason to believe these communications relate to JGR's Confidential Information and Trade Secrets. For all of the reasons that were stated in JGR's Preliminary Injunction arguments, and incorporated herein, there is material risk to JGR, and the employees that rely on its winning record, if JGR's Confidential Information and Trade Secrets are outside JGR. JGR should be permitted expedited discovery regarding the disclosure of its protected information.

Further, there is a legitimate and serious concern that parties may delete additional evidence when one current employee (Gabehart) has admitted to deleting responsive texts—with no innocent explanation—and another (Dickerson), though providing a purportedly innocent explanation, deleted texts with the same person during the timeframe he was recruiting him.

Regardless of intent, the evidentiary record has been impaired. Spire's vaunted "preservation methods" were demonstrably inadequate in Dickerson's case—his pre-January 2026 texts with Gabehart are gone. JGR should not be required to trust that no further losses will occur. Spire also contends that "most" of JGR's requests are merits-based. This tacitly admits that some requests are targeted at the issues flowing from the deletion. But as explained above, all of JGR's requests are tied to investigating and mitigating the consequences of Defendants' destruction of relevant communications. Spire's argument that expedited discovery is pointless because the texts

10

are already gone and "impossible to recover" (Dkt. 68 at 11) actually proves JGR's point—the evidentiary record has been impaired, including through admitted bad conduct. Expedited discovery is necessary both to assess the extent of that damage and to prevent further destruction—objectives that cannot wait until merits discovery, when additional evidence may disappear. This is particularly true for the requested discovery from third parties, for whom Spire's (albeit unsatisfactory) assurances of preservation efforts hold no sway.

Finally, Spire's purported "mutual pursuit of an expedited trial" provides no assurance. Spire would only agree to a trial date one month earlier than the standard trial date. An expedited trial does not adequately mitigate the risk of future deletions before that trial, including by third parties. Nor does it provide adequate assurance against additional deletions by the parties, given Gabehart's admitted bad conduct, the evidence of complicity by Dickerson and Spire, and Spire's continued employment of Gabehart despite his misconduct. Gabehart, Spire, and Dickerson are, after all, now "in the same boat." Ex. 11 to Dkt. 60-1 at GABEHART000551–53.[4]

Gabehart also argues JGR can obtain the "same substantive information" through depositions and a spreadsheet he created. Dkt. 67 at 4. But testimony about what texts might have contained is no substitute for the texts themselves—particularly when Gabehart's deletion and failure to provide an innocent explanation suggests the contents would be harmful to his defense. JGR need not accept Gabehart's self-serving characterization of messages he destroyed.

### C.      The Court Should Reject Defendants' Request for Reciprocal Discovery.

The Court should deny Defendants' requests for reciprocal discovery. Spire seeks an order requiring (1) JGR to disclose whether its relevant owners and employees have destroyed relevant

---

[4] As more fully described in JGR's contemporaneously filed Notice of Subsequent Authority (Dkt. 71), it appears that Spire is actively engaging Gabehart, and Gabehart is actively engaging in the role of Competition Director for Spire during the NASCAR Cup Series Practice and Qualifying events. This contradicts the Court's TRO, and resultingly renders Spire complicit in Gabehart's violation of that order.

11

communications, and (2) JGR's owners and employees to submit to third-party discovery of communications stored on their personal devices. Gabehart joins in the second request. Gabehart's request is framed as a request to "revisit [the Court's] prior ruling on expedited discovery" and should be denied for failing to properly move for reconsideration.[5] Moreover, both requests should be denied for violating the Local Rule prohibiting motions in responsive briefing. LCvR 7.1(c)(1). Finally, neither Defendant has demonstrated any good cause for expedited discovery.

Reciprocal expedited discovery is unwarranted. The facts are not reciprocal. Only Gabehart admitted to deleting responsive texts. Good cause exists only for expedited discovery reasonably scoped to address this conduct. This differs from the court-ordered discovery before the preliminary injunction hearing. There, the Court ordered limited discovery from both parties to develop the factual record for an imminent decision. JGR now seeks expedited discovery to mitigate further destruction of the evidentiary record.

Spire's brief argues the requested discovery is necessary "to identif[y] potential evidentiary gaps that may prejudice Spire's ability to defend itself in this case if unresolved." Dkt 68 at 12. A generalized need to defend against the lawsuit is not good cause. Similarly, Spire's argument for seeking text messages from JGR's employees is that JGR is seeking text messages from Defendants. But seeking a reciprocal category of evidence is not a basis for expedited discovery. In short, only JGR has demonstrated good cause for its properly requested expedited discovery.

## II. CONCLUSION

For these reasons and those stated in the Motion, JGR respectfully requests that the Court permit it to take further expedited discovery due to the intentional deletion of relevant materials.

---

[5] For example, Gabehart does not lay out the proper standard for reconsideration or attempt to argue the standard has been met. *See, e.g.*, *Glenn v. Velociti, Inc.*, No. 3:24-CV-00031-KDB-DCK, 2025 WL 2480131, at *1 (W.D.N.C. Aug. 14, 2025) ("Grounds for Rule 54(b) reconsideration include: '(1) an intervening change in the law, (2) new evidence that was not previously available, or (3) correction of a clear error of law or to prevent manifest injustice.'").

12

This the 13th day of April, 2026

**KING & SPALDING LLC**

*/s/ Danielle T. Williams*
Danielle T. Williams
dwilliams@kslaw.com
N.C. Bar No. 23283
300 South Tryon Street, Suite 1700
Charlotte, NC 28202
Thomas M. Melsheimer – *Pro Hac Vice*
tmelsheimer@kslaw.com
Chad B. Walker – *Pro Hac Vice*
cwalker@kslaw.com
Tracea Rice – *Pro Hac Vice*
trice@kslaw.com
Alexandra Moore - *Pro Hac Vice*
almoore@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201

Sarah F. Hutchins
N.C. Bar No. 38172
Tory Ian Summey
N.C. Bar No. 46437
Keith M. Weddington
N.C. Bar No. 14352
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com

*Attorneys for Joe Gibbs Racing, LLC*

13

# ARTIFICIAL INTELLIGENCE CERTIFICATION

No artificial intelligence was employed in doing the research for the preparation of this Memorandum, with the exception of the standard artificial intelligence embedded in WestLaw. Every statement and every citation to authority contained in this Memorandum has been checked by an attorney in this case as to the accuracy of the proposition for which it is offered.

This the 13th day of April, 2026

**KING & SPALDING LLC**

*/s/ Danielle T. Williams*
Danielle T. Williams
dwilliams@kslaw.com
N.C. Bar No. 23283
300 South Tryon Street, Suite 1700
Charlotte, NC 28202
Thomas M. Melsheimer – *Pro Hac Vice*
tmelsheimer@kslaw.com
Chad B. Walker – *Pro Hac Vice*
cwalker@kslaw.com
Tracea Rice – *Pro Hac Vice*
trice@kslaw.com
Alexandra Moore - *Pro Hac Vice*
almoore@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201

Sarah F. Hutchins
N.C. Bar No. 38172
Tory Ian Summey
N.C. Bar No. 46437
Keith M. Weddington
N.C. Bar No. 14352
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com

torysummey@parkerpoe.com
keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com

*Attorneys for Joe Gibbs Racing, LLC*

15

The undersigned counsel hereby certifies that the foregoing **PLAINTIFF JOE GIBBS RACING, LLC'S CONSOLIDATED REPLY MEMORANDUM IN SUPPORT OF ITS SECOND MOTION FOR EXPEDITED DISCOVERY** was electronically filed with the Clerk using the CM/ECF system which will automatically send notice and serve same upon counsel of record via the Court's electronic case filing system.

This the 13th day of April, 2026

**KING & SPALDING LLC**

*/s/ Danielle T. Williams*
Danielle T. Williams
dwilliams@kslaw.com
N.C. Bar No. 23283
300 South Tryon Street, Suite 1700
Charlotte, NC 28202
Thomas M. Melsheimer – *Pro Hac Vice*
tmelsheimer@kslaw.com
Chad B. Walker – *Pro Hac Vice*
cwalker@kslaw.com
Tracea Rice – *Pro Hac Vice*
trice@kslaw.com
Alexandra Moore - *Pro Hac Vice*
almoore@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201

Sarah F. Hutchins
N.C. Bar No. 38172
Tory Ian Summey
N.C. Bar No. 46437
Keith M. Weddington
N.C. Bar No. 14352
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Bank of America Tower
620 South Tryon St., Suite 800

16

Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com

*Attorneys for Joe Gibbs Racing, LLC*

17