# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### Case No. 3:26-CV-00133-SCR-DCK

JOE GIBBS RACING, LLC,

    Plaintiff,

    v.

CHRISTOPHER GABEHART and SPIRE
MOTORSPORTS, LLC,

    Defendants.

**PLAINTIFF JOE GIBBS RACING, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR EXPEDITED TRIAL**

Though Defendants concede that an expedited schedule of some kind is warranted, their proposal sets a trial date well into another NASCAR season—unnecessarily prolonging JGR's exposure to irreparable harm when Mr. Gabehart has already admitted to misappropriating trade secrets and confidential information, did so in a manner designed to evade detection, and deleted text messages containing relevant evidence. All the while, Gabehart has continued attending NASCAR Cup Series races, and Defendants have not explained his presence with any specificity. Although the Court has clarified that mere attendance is permissible, Defendants have offered no concrete information regarding the nature of Gabehart's role, responsibilities, or interactions while at the track. This information, along with additional discovery, is necessary to conclusively prove that his activities amount to the same or similar services that the restrictive covenant, which this Court has found reasonable and enforceable, prohibits.

Given the ongoing nature of Gabehart's race-weekend activities, the proof of competitive harm is now on the track for the industry to see—even NASCAR industry insiders are publicly acknowledging that Spire's competitive race-day performance in the Cup Series is suddenly and dramatically improving this season *as the direct result of Gabehart's assistance. See infra* Section

1

I.A. This state of affairs should not go unchecked one day longer than necessary. An expedited trial will therefore ensure that the parties enter the 2027 NASCAR Cup Series season with clarity and fairness. If Defendants truly have nothing to hide, they should welcome the opportunity to clear their names at the earliest reasonable opportunity—which is precisely what JGR's proposed schedule would afford them.

## I. ARGUMENT

### A. Defendants' Oppositions Do Not Undercut the Showing of Good Cause.

As explained below, Defendants' oppositions do not adequately rebut the basis for expedited proceedings. First, Defendants' acknowledgement that expedited proceedings are warranted, at all, concedes the existence of good cause necessary to support an expedited trial. The remaining dispute merely reflects a disagreement over the length of the schedule.

Second, Defendants mischaracterize the need for expedition and ignore the ongoing unfair competitive risk. Indeed, Defendants continue to misstate that JGR's forensic examiner confirmed that there is no evidence of dissemination when, in reality, he recognized that there are other avenues outside the scope of his review by which JGR's information may have been shared. Dkt. 9-4 (Walton Decl.) at ¶ 30. Defendants likewise mischaracterize JGR's showing of use and any corresponding risk of use as "speculation," but even with the limited evidence available to it prior to discovery, JGR has already demonstrated that Gabehart undertook efforts to use its trade secrets and confidential information for Spire's benefit. Dkt. 70 (Opening Br.) at 1–2 (referencing JGR's evidence of use). As such, the Court has acknowledged that, in doing so, "JGR has *rightly expressed concerns* related to Gabehart's use of JGR's Confidential Information to create [these] new documents." Dkt. 78 (PI Order) n.10 (emphasis added). While the Court found this insufficient

2

to justify preliminary relief against Spire at this time, it supports exercising the Court's wide discretion to expedite the proceedings, as all parties concede is appropriate to some degree.

The ongoing risk of harm is further underscored by Gabehart's conduct after entry of the TRO. Within weeks, he progressed from observing races from the grandstands while wearing a two-way team radio to positioning himself inside Spire's pit road workstation alongside personnel actively monitoring race data. *See, e.g.*, March 26, 2026 Hr'g Tr. at 40:22–41:19; Dkt. 71 (Notice of Supplemental Evidence) and accompanying exhibits. This steady encroachment places Gabehart in precisely the environment where he can violate the Court's order through real-time, oral, or radio communications—conduct that is difficult to detect but impossible to ignore. *See generally*, Dkt 71-1 (Third Brown Decl.). Defendants have yet to offer a plausible explanation for services Gabehart is performing at these times and places that do not violate his restrictive covenant. Against this backdrop, Defendants' insistence that "there is no potential harm to JGR during pendency of this litigation" and a delayed trial "would have no impact on the 2027 NASCAR season" rings hollow. Dkt. 76 (Spire Opp'n) at 8, 10. Without explanation of Gabehart's activity at the Cup Series races, discovery is necessary to understand his role and any improper competitive harm already underway.

NASCAR commentators have openly noted that Spire—a team long regarded as a perennial back marker—now appears transformed. Suddenly, "everything's looking up for them," with multiple cars qualifying inside the top 10. Ex. A-1 (Transcript of NASCAR Broadcast Commentary) at 1:9; *see also* Ex. A-2 (Video of NASCAR Broadcast).[1] As one analyst candidly acknowledged, there is a "rhyme and reason" behind Spire's newfound speed and "there's a reason

---

[1] Exhibit A-2 is a video recording of the NASCAR broadcast from which the quoted commentary is drawn. Consistent with guidance from the Clerk's Office, the video has been submitted to the Court on physical media, with a placeholder filed on the Electronic Case Filing system.

there's a lawsuit going on." Ex. A-1 at 2:20–21. As the commentator explained, "everything is about people in this world, and [Spire] hired a good one with Chris Gabehart"—a person who admittedly misappropriated JGR's trade secrets and confidential information—and "that's a big reason why they're running good." *Id.* at 2:22–24.

These are not isolated musings. They reflect an emerging recognition that Spire's implausible single season competitive leap coincides directly with Gabehart's arrival and influence on the Cup Series. In fact, just this past week, a Spire driver—who appears in previously submitted evidence to be in close proximity to Gabehart during Qualifying—won a Cup Series race for only the second time in Spire's history.[2] Dkt 71-1 (Third Brown Decl.) at ¶ 13. Spire's only other win occurred in a weather-shortened race seven years prior.[3] This underscores that unfair competitive harm is already underway, visible on the track, and being openly attributed to the very conduct at issue in this case. The case should proceed to merits discovery and trial for a judgment on Defendants' actions as quickly as reasonably possible.

Third, contrary to Defendants' assertions, the pendency of any forensic review does not support delaying expedited proceedings or other discovery.[4] The theory that forensic review of Gabehart's devices and accounts will conclusively define the universe of misappropriated trade secrets is false. That premise assumes JGR's misappropriated trade secrets and confidential

---

[2] Holly Cain, *Carson Hocevar earns first career Cup win in Talladega Thriller*, NASCAR.com: News Media (Apr. 26, 2026), https://www.nascar.com/news-media/2026/04/26/cup-series-2026-talladega-spring-race-recap/.

[3] Chris Gollon, *Carson Hocevar Breaks Through for Talladega Win*, Above the Yellow Line Media (Apr. 26, 2026), https://www.abovetheyellowline.com/nascar/cup/hocevar-rides-the-dente/.

[4] Moreover, Spire is not a participant in the forensic examination protocol governing Gabehart's devices and accounts and is not entitled to receive the materials exchanged pursuant to that process. The obligations, procedures, and exchange of materials under that protocol run exclusively between JGR and Gabehart. The protocol contemplates limited sharing of certain reports with Spire's counsel only in narrow circumstances. Spire does not otherwise participate in or benefit from the forensic process. Thus, its insistence that proceedings be delayed until completion of a review, from which it has only potential contingent involvement, underscores that the forensic review cannot justify postponing expedited proceedings in this case.

information and evidence of transmission exist only as files retained on Gabehart's personal devices. But trade secrets and confidential information may be conveyed orally, recorded or memorialized after the fact on other systems, or revealed only through their subsequent use—none of which would appear on Gabehart's devices. The misappropriated information may therefore be reflected not only in Gabehart's devices, but also in Spire's own systems, communications, and work product. Nor does the law require a plaintiff to definitively identify every misappropriated trade secret before proceeding with discovery. To the contrary, it is often through the discovery process itself that the full scope of misappropriation comes to light. Accordingly, nothing in the governing law supports conditioning formal discovery in a trade secrets action on a limited review of the defendant's devices and accounts, particularly where other discovery may illuminate how, when, and whether confidential information was exploited. Further, such a limitation ignores the other claims in this matter, including that Defendants are improperly having Gabehart perform the same or similar duties in breach of his non-compete.

Finally, Defendants neither meaningfully rebut the authority favoring JGR's motion for expedited trial nor cite any authority supporting its denial. Indeed, Defendants' attempt to distinguish *2311 Racing* ultimately underscores—rather than undermines—its relevance. While *2311* involved broader antitrust claims, the benefit of an expedited schedule encompassed a shared concern that is equally present here: the need to resolve material NASCAR-related disputes before the next racing season began, so that participants would not be forced to compete under uncertainty. *See 2311 Racing LLC v. NASCAR*, No. 3:24-cv-866, Dkt. 84. That same logic applies with full force in this case. As in *2311*, delay carries competitive consequences that cannot be unwound after the fact, and trial was scheduled in a manner designed to conclude before the next season commenced. *Id.* at Dkt. 74, pp. 18, 20 ("A Case Management schedule will be set by the

Court which . . . provides for a trial on Plaintiffs' claims to be concluded in advance of the beginning of the 2026 NASCAR race season"). JGR's proposed schedule serves the same purpose—ensuring that the parties enter the 2027 NASCAR Cup Series season with clarity, finality, and a level competitive playing field. And like *2311*, this case has industry-wide implications because of its precedential value for future key NASCAR employees considering the consequences of potential misconduct.

Further, both Defendants attempt to rely on cases that are factually and procedurally different. Gabehart first cites *Krug*, a case that addressed a premature motion for judgment as a matter of law—not a motion to expedite trial—and expressly relied on the absence of an answer and any discovery to suggest an expedited trial would be improper. *Krug v. Travelers Home & Marine Ins. Co.*, No. CV 8:22-2245-HMH-KFM, 2022 WL 18831683, at *1 (D.S.C. Nov. 1, 2022). Here, the parties have already engaged in discovery; and although Defendants' answers are due today,[5] *Krug* still confirms that "[e]xpedited trial generally will mean trial between three (3) and eight (8) months after joinder of the issues," which is fairly plausible under JGR's proposed schedule. *Id.* Likewise, *Boudreaux* is materially different because, there, the plaintiff expressly conditioned its request for an expedited trial on the conclusion of parallel proceedings before a regulatory authority, rendering the motion premature in part because "there [was] no indication as to when the [authority would] decide the related case before it or how many issues will remain before" the court. Here, by contrast, JGR's request is not contingent on the outcome of any unresolved regulatory proceeding, and there is no comparable uncertainty preventing this Court from proceeding on a defined and concrete schedule.

---

[5] JGR anticipates serving an amended complaint, and/or moving for leave to do so, in the near future. The anticipated amendment would only add allegations related to JGR's tortious interference claim against Spire.

Spire's cited authority is similarly unavailing. *Berenson* addressed a motion to accelerate a standard trial schedule that neither party initially challenged; whereas here, both parties agree that some form of expedited proceedings is warranted. *Berenson v. Adm'rs of the Tulane Univ. Educ. Fund*, No. CV 17-329, 2017 WL 3480794, at *1 (E.D. La. Aug. 14, 2017); Dkt. 76 (Spire Opp'n) at 3 ("Spire and JGR Agree Expedited Proceedings Are Warranted"). Last, Spire's reliance on *Nguyen v. The Boeing Co.*, No. C15-793RAJ, 2016 WL 2855357 (W.D. Wash. May 16, 2016), is also misplaced. Unlike the retrospective employment claims at issue in *Nguyen*, this case concerns the admitted misappropriation of trade secrets and an ongoing threat of irreparable, competitive harm. *See generally*, *id.* Further, the Court has already entered a temporary restraining order and a preliminary injunction and authorized expedited discovery. *See, e.g.*, Dkt. 78 (PI Order); Dkt. 26 (TRO); Dkt. 48 (Order Granting Expedited Discovery). The case has therefore progressed well beyond the early posture on which *Nguyen* turned. *Nguyen*, 2016 WL 2855357, *8 (denying expedited trial where the parties "have yet to exchange discovery"). In doing so, the Court has recognized JGR's likelihood of success on the merits and the existence of irreparable harm as to Gabehart, further distinguishing *Nguyen* where expedition was denied in view of plaintiff's undeveloped claims. *Compare id.*, *with* PI Order at ¶¶ 58–65, *and* TRO at ¶¶ 29–30.

### B. JGR's Request is Not Unrealistic or Unduly Prejudicial.

#### 1. JGR's Proposed Schedule Balances the Need for Expediency with Limitations of Litigation.

JGR has revised its proposed pretrial order to accommodate the briefing schedule of the instant motion. Ex. B (JGR's Second Proposed Pretrial Order and Case Management Plan); *see also infra* Section I.D. JGR's new proposed trial date is December 7, 2026, which will still accommodate an orderly and robust discovery schedule and resolution of the issues before the beginning of the 2027 NASCAR Cup season. The deadlines proposed by JGR are expedited but

are not unduly burdensome or impractical, [6] especially given that the process of forensic examination and written discovery has already commenced.[7]

Defendants' contention that JGR's motion is premature because the pleadings may still be amended and the forensic examination of Gabehart's devices is not complete are also misplaced. As explained above, the instant facts are meaningfully different than the circumstances in the early-stage cases Gabehart relies on to argue the motion is premature. Namely, responsive pleadings will be filed in the coming weeks or promptly following resolution of any Rule 12 motions, the parties have already exchanged some discovery, and the factual and legal issues in this case are well established through extensive briefing and argument to date. *See cf. Krug*, 2022 WL 18831683 (noting that an expedited trial request would be premature where no discovery had taken place, there was no operative responsive pleading, and plaintiff could not satisfy local rule regarding expedited trial); *Boudreaux*, 2018 WL 9785308  (denying motion for expedited trial where parties disagreed on scope of discovery, related administrative proceedings were ongoing, and plaintiff could not satisfy local rule regarding expedited trial). Further, as described above, completion of the forensic examination of Gabehart's devices is not a prerequisite to engaging in discovery. Indeed, the parties have already engaged in limited expedited discovery simultaneously with the forensic protocol negotiation and execution. One is not dependent on the other.

---

[6] Spire's characterization of JGR's proposed expedited discovery deadlines as "impossible" because they are expedited in comparison to the default 30 day timeline to respond to document requests, wholly ignores that the parties are submitting proposed *expedited* deadlines and Federal Rule of Civil Procedure 34(b)(2) expressly recognizes that "[a] shorter or longer time may be stipulated to under Rule 29 or be ordered by the court."

[7] Defendants' attempts to distinguish *Four Seasons Marina Rentals, Inc. v. City of Osage Beach, MO*, are inapposite. As is the case here, the court in *Four Seasons*, was tasked with evaluating an expedited trial motion where the factual record was well developed. The court granted the motion and set a trial date that would "give the parties and the Court sufficient time to file and resolve dispositive motions." 2008 WL 5427870, at *3 (W.D. Mo. 2008). JGR's Motion for Expedited Trial is likewise premised on a developed record and seeks a trial date affording sufficient time for discovery and motions practice.

### 2. Gabehart and Spire Will Not Be Prejudiced by an Expedited Trial or Streamlined Discovery.

Defendants' complaints concerning the alleged prejudice and burden of undergoing discovery during the 2026 NASCAR Cup Season under JGR's proposed schedule are belied by their own scheduling proposal. Defendants propose a completion of fact discovery by October 1, 2026 and opening expert reports be served on October 8, 2026—well within the confines of the 2026 NASCAR Cup season, which as Spire highlights, ends on November 8, 2026. The discovery process will be substantially undertaken during this NASCAR season under either proposed schedule. Moreover, Defendants' proposed trial date is squarely in the middle of the 2027 NASCAR Cup Season, which begins in February 2027, and guarantees the parties will devote a significant amount of resources to this litigation into next season. In contrast, JGR's proposed December 2026 trial date during NASCAR's off season ensures an efficient resolution of the instant dispute and addresses Defendants' concerns about the diversion of their time and resources to this litigation by reducing the time leading up to trial. An expedited trial ensures certainty and finality prior to the start of the 2027 NASCAR season. Defendants are benefitted, not unduly prejudiced, by JGR's proposed expedited trial date.

Regarding "per-side" or "per-party" discovery, in this situation something in between is appropriate. Courts may consider several factors when evaluating whether discovery limits should apply on a per-side or per-party basis, including the relationship between the parties, the extent of overlapping facts, shared counsel, and the alignment of the parties' interest. *See e.g.*, *Felman Prod., Inc. v. Indus. Risk Insurers*, 2009 WL 3668038, at *3 (S.D.W. Va. 2009); *Layani v. Ouazana*, 2024 WL 3233999, at *4 (D. Md. 2024) (noting that "whether the propounding parties are aligned or share a common interest" should be considered when considering "per-party vs. per-side interrogator[ies]"). Although there are some individual differences in claims and facts, common

9

facts predominate. As a result, it would be unfair to allow Defendants to collectively take and issue double the depositions and written discovery afforded to JGR.

When considering whether to allow per-side or per-party written discovery, the Federal Rules of Civil Procedures' proportionality considerations control. *Layani*, 2024 WL 3233999, at *4 (citing 8B Fed. Prac. & Proc. Civ. § 2168.1 (3d ed.)); *see also* FED. R. CIV. P. 26, Advisory Committee's Notes to 2000 Amendment, Subdivision (b)(1)) ("When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action."). Given proportionality as a guiding principle, per-side discovery is not atypical in cases with multiple parties. *See Evans v. Griffin*, 2017 WL 11341416, at *4 (M.D.N.C. 2017) (ordering "per side" discovery limits in advance of summary judgment ruling); *FS Med. Supplies, LLC v. TannerGAP, Inc.*, 2024 WL 589119, at *4 (W.D.N.C. 2024), *report and recommendation adopted*, 2024 WL 1122058 (W.D.N.C. 2024) (recommending 20 depositions for "each side").

Given the presence of both common and defendant-specific issues, JGR has proposed to Defendants a tailored discovery framework that provides ample opportunity for both sides to develop the record while avoiding unnecessary duplication. Under this proposal, JGR may take up to 15 non-expert depositions not to exceed 75 total hours, while Defendants together may take up to 18 non-expert depositions not to exceed 90 total hours. Ex. B at 2. With respect to written discovery, JGR may propound up to 25 interrogatories, 25 requests for admission, and 30 requests for production, while Defendants together may propound up to 35 interrogatories, 35 requests for admission, and 40 requests for production. *Id.* To account for both shared and defendant-specific issues, Defendants may jointly propound a core set of requests directed to common issues, with each Defendant permitted a limited allotment of party-specific requests for individualized defenses—without increasing the overall discovery burden. *Id.* This compromise reflects the

10

Case 3:26-cv-00133-SCR-DCK    Document 80    Filed 04/27/26    Page 10 of 17

reality that certain issues overlap entirely while others do not, and it ensures discovery remains targeted, proportional, and efficient consistent with Rule 26 and applicable case law. Defendants rejected this proposal, asserting that discovery limits should apply on a per-party basis and that each party should be afforded identical limits on written discovery and depositions based on their view that Gabehart and Spire face different factual and legal allegations.

### C. The Court Should Reject Defendants' Local Rule 7.1(b) Arguments.

Defendants' arguments that the Court should deny the Motion based on an alleged violation of Local Rule 7.1(b) are unfounded. In particular, JGR "conferred and attempted in good faith to resolve areas of disagreement" with respect to an expedited scheduling order in accordance with Local Rule 7.1(b). As stated in the email from JGR's counsel attached to Exhibit C of Spire's Response, JGR "raised expedited trial a number of times, including in filings and with the Court. [JGR has] invited many conversations on the topic." Spire Resp, Ex. C, Ex. 1 (Dkt 76-3). Given that the issue was previously raised, and, in response to JGR's proposed schedule, Defendant responded with a proposed trial date seven months later than JGR's suggestion and only one month shorter than an ordinary trial setting. JGR "understood the parties to be at an impasse," necessitating the instant motion. *Id.*

Moreover, although the Local Rule states that a motion *may* be denied for failure to confer—which is not the case here, this Court has rejected similar requests to deny motions based solely on an alleged failure to comply with Local Rule 7.1(b) and it should likewise decline Defendants' requests. *See Byrd v. Fat City Condo. Owners Ass'n, Inc.*, 2024 WL 3930970, at *3–4 (W.D.N.C. 2024) (declining to deny motion on Rule 7.1(b) grounds where "Plaintiff cannot claim that the [motion] took her by surprise[, and] the Court accepts Defendant's contention that any attempt at conference would have been futile."); *see also Raycap Asset Holdings Ltd. v. Gora LLC*,

11

2023 WL 3396600, at \*2 (W.D.N.C. 2023) (refusing to deny motion for failure to comply with Rule 7.1(b) where defendant's expressed opposition "rendered any consultation likely futile," there was no evidence of bad faith, and the lack of conferral "was plainly harmless"); *Com. Credit Grp., Inc. v. Carlock*, 2015 WL 4459444, at \*5 (W.D.N.C. 2015) (the Court was "not persuaded that Plaintiff's otherwise sound motion should be rejected on [the failure to comply with Rule 7.1(b)] alone").

### D. JGR's Modified Proposed Case Management Plan.

JGR's previously proposed case schedule (Dkt. 70-1) was premised on the parties' ability to agree to a joint case schedule, which would have obviated the need for motion practice. The parties' failure to reach agreement instead necessitated full briefing, which will not conclude until April 27, 2026. JGR has therefore adjusted the original proposal to account for that development and the Court's anticipated ruling, as reflected in Exhibit B (JGR's Second Proposed Pretrial Order and Case Management Plan).[8] JGR provided the revised proposal to Defendants' counsel in advance of filing this reply. Defendants rejected the proposal and instead represented that they would be willing to confer on a schedule tied to the completion of the forensic examination and the anticipated timing of any additional pleadings. To date, however, Defendants have not proposed any additional alternative schedule or specific deadlines for the Court's consideration.

## II. CONCLUSION

For the foregoing reasons, JGR respectfully requests that the Court enter a scheduling order setting this matter for trial on an expedited basis, as set forth in Exhibit B (JGR's Second Proposed Pretrial Order and Case Management Plan).

---

[8] As noted above, JGR anticipates filing an amended complaint in due course, independent of the Court's consideration of this motion. *See* n.2. The anticipated amendment will not however undermine the bases for expedited proceedings addressed herein.

This the 27th day of April, 2026

**KING & SPALDING LLP**

*/s/  Danielle T. Williams*
Danielle T. Williams
dwilliams@kslaw.com
N.C. Bar No. 23283
300 South Tryon Street, Suite 1700
Charlotte, NC 28202
Thomas M. Melsheimer – *Pro Hac Vice*
tmelsheimer@kslaw.com
Chad B. Walker – *Pro Hac Vice*
cwalker@kslaw.com
Tracea Rice – *Pro Hac Vice*
trice@kslaw.com
Alexandra Moore - *Pro Hac Vice*
almoore@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201

**PARKER POE ADAMS & BERNSTEIN**

Sarah F. Hutchins
N.C. Bar No. 38172
Tory Ian Summey
N.C. Bar No. 46437
Keith M. Weddington
N.C. Bar No. 14352
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com

*Attorneys for Joe Gibbs Racing, LLC*

13

**ARTIFICIAL INTELLIGENCE CERTIFICATION**

No artificial intelligence was employed in doing the research for the preparation of this Memorandum, with the exception of the standard artificial intelligence embedded in WestLaw. Every statement and every citation to authority contained in this Memorandum has been checked by an attorney in this case as to the accuracy of the proposition for which it is offered.

This the 27th day of April, 2026

**KING & SPALDING LLC**

/s/ *Danielle T. Williams*
Danielle T. Williams
dwilliams@kslaw.com
N.C. Bar No. 23283
300 South Tryon Street, Suite 1700
Charlotte, NC 28202
Thomas M. Melsheimer – *Pro Hac Vice*
tmelsheimer@kslaw.com
Chad B. Walker – *Pro Hac Vice*
cwalker@kslaw.com
Tracea Rice – *Pro Hac Vice*
trice@kslaw.com
Alexandra Moore - *Pro Hac Vice*
almoore@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201

**PARKER POE ADAMS & BERNSTEIN**
Sarah F. Hutchins
N.C. Bar No. 38172
Tory Ian Summey
N.C. Bar No. 46437
Keith M. Weddington
N.C. Bar No. 14352
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com

keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com

*Attorneys for Joe Gibbs Racing, LLC*

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR EXPEDITED TRIAL** was electronically filed with the Clerk using the CM/ECF system which will automatically send notice and serve same upon counsel of record via the Court's electronic case filing system.

This the 27th day of April, 2026

**KING & SPALDING LLC**

/s/ *Danielle T. Williams*
Danielle T. Williams
dwilliams@kslaw.com
N.C. Bar No. 23283
300 South Tryon Street, Suite 1700
Charlotte, NC 28202
Thomas M. Melsheimer – *Pro Hac Vice*
tmelsheimer@kslaw.com
Chad B. Walker – *Pro Hac Vice*
cwalker@kslaw.com
Tracea Rice – *Pro Hac Vice*
trice@kslaw.com
Alexandra Moore - *Pro Hac Vice*
almoore@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201

**PARKER POE ADAMS & BERNSTEIN**
Sarah F. Hutchins
N.C. Bar No. 38172
Tory Ian Summey
N.C. Bar No. 46437
Keith M. Weddington
N.C. Bar No. 14352
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com

16

keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com

*Attorneys for Joe Gibbs Racing, LLC*

17