# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
#### Case No. 3:26-CV-00133-SCR-DCK

| | |
|---|---|
| JOE GIBBS RACING, LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>CHRISTOPHER GABEHART and SPIRE MOTORSPORTS, LLC,<br><br>        Defendants. | **REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO AMEND FIRST AMENDED COMPLAINT** |

Plaintiff Joe Gibbs Racing, LLC ("JGR") submits this Reply Memorandum in Support of its Motion for Leave to Amend its First Amended Complaint (the "Motion to Amend," Dkt. No. 84).

Defendant Spire Motorsports, LLC ("Spire")[1] stakes its opposition to JGR's Motion to Amend entirely on its assertion that the amendment to the tortious interference allegation against Spire is purportedly futile. Dkt. 90 at 1. Spire's argument fails for two reasons: (1) amending a complaint to correct Defendant's corporate name to Spire Motorsports II, LLC fully justifies granting JGR's motion; and (2) JGR plausibly alleges Spire's tortious interference with JGR's contract with Defendant Christopher Gabehart ("Gabehart"). For these reasons, and for the reasons outlined in JGR's memorandum in support of its Motion to Amend, Dkt. 85, the Court should grant JGR's Motion to Amend.

---

[1] As addressed in JGR's Motion to Amend and herein, the First Amended Complaint named Spire as a defendant. The Motion to Amend seeks leave to name the correct corporate entity, Spire Motorsports II, LLC, as a defendant. For ease of reference, the defined term "Spire" refers to Spire Motorsports II, LLC.

<u>**ARGUMENT**</u>

Spire's opposition to JGR's amendment ignores the standard required by the Federal Rules and diligently followed by this jurisdiction that courts "should freely give leave" for further amendments "when justice so requires." Fed. R. Civ. P. 15(a)(2). Because federal policy favors "resolving cases on their merits instead of disposing of them on technicalities," "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (*en banc*) (cleaned up). To do otherwise would effectively reward a defendant for gamesmanship where early facts were obscured.

Spire has not argued prejudice or bad faith. There can be no question that amendment both to designate the proper defendant after Gabehart's contractual relationship with Spire has become known and to supplement JGR's existing tortious interference claim with further facts is not futile.

## I. THE MOTION TO AMEND IS FULLY JUSTIFIED BY THE NEED TO CORRECT A PARTY NAME.

The Court can and should grant JGR's Motion to Amend for the straightforward reason that JGR mistakenly named Spire in the First Amended Complaint as "Spire Motorsports, LLC" rather than "Spire Motorsports II, LLC." Spire informed JGR of the proper entity through counsel on April 27, 2026. Amendments of this nature are typically uncontroversial and granted as a matter of course. *See, e.g.*, *Harrison v. Infinity Ward, Inc.*, 2021 WL 4255151, at *2 (M.D.N.C. Sept. 17, 2021) (holding that "justice so require[d]" the court to grant a motion to amend a complaint to correct a misnomer).

Spire acknowledges that "Spire Motorsports II, LLC is the proper party in interest in this case." Dkt. 90 at 1 n.1. It does not oppose the name correction or contend that it would be improper for the Court to grant JGR's motion on that basis. Instead, Spire suggests, in a footnote, that the

Court could choose to address the name correction through party substitution under Federal Rule of Civil Procedure 21, Misjoinder and Nonjoinder of Parties, rather than as an amendment. *Id.*

However, Spire cites ***no*** authority for its suggestion that the Court correct the Defendant's name under Rule 21. It cannot, because Spire's suggestion "fail[s] to consider the well-recognized distinction between a complaint that sues the wrong party, and a complaint that sues the right party by the wrong name." *Roberts v. Michaels*, 219 F.3d 775, 777-78 (8th Cir. 2000) (reversing the denial of a motion for leave to amend to correct a party's name). Suing the wrong party is generally resolved under Rule 21. Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party."). Suing the right party by the wrong name is properly handled under Rule 15. *See* Fed. R. Civ. P. 15(c)(1)(C) (describing the effect of amendments that change "the naming of the party against whom a claim is asserted").

This distinction has been recognized by federal courts across the country for decades. *See, e.g.*, *United States v. A.H. Fischer Lumber Co.,* 162 F.2d 872, 874 (4th Cir. 1947) ("What was involved was, at most, a mere misnomer that injured no one, and there is no reason why it should not have been corrected by amendment."); *Vadenais v. Christina*, 325 F.2d 157, 158 (2d Cir. 1963) ("The original motion should have been to correct the misnomer, not to add a defendant . . . . When this motion was, in effect, ultimately made, it should have been granted."); *Datskow v. Teledyne, Inc.*, 899 F.2d 1298, 1301 (2d Cir. 1990) ("[W]e believe that plaintiffs did not select the wrong defendant but committed the lesser sin of mislabeling the right defendant . . . ."). Indeed, in *Prevette v. Crown Dodge, LLC*, the court expressly rejected a motion to resolve a misnomer under Rule 21, but permitted the correction as a motion to amend under Rule 15(a). 2003 WL 22110782, at *2 & n.5 (M.D.N.C. Sept. 2, 2003).

This reason **alone** clearly provides sufficient grounds for the Court to grant JGR's Motion to Amend. *See, e.g.*, *Harrison*, 2021 WL 4255151, at *2 (granting a motion to amend to correct a misnomer even though the court found the pleadings insufficient to survive a motion to dismiss).

## II. THE PROPOSED SECOND AMENDED COMPLAINT IS NOT "CLEARLY INSUFFICIENT OR FRIVOLOUS," AND PROPERLY ALLEGES TORTIOUS INTERFERENCE.

Spire's futility argument also fails because JGR's Proposed Second Amended Complaint is not "clearly insufficient or frivolous," and properly alleges Spire's tortious interference with JGR's Employment Agreement with Gabehart. *Frankenmuth Mut. Ins. Co. v. Nat'l Bridge Builders, LLC*, 2023 WL 2824896, at *5 (W.D.N.C. Jan. 4, 2023) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986)).

Spire's opposition challenges only two elements of the tortious interference claim: (1) Spire intentionally induced Gabehart to violate the Employment Agreement; and (2) Spire did so without justification. *See King v. Chaffin*, 759 F. Supp. 3d 690, 698 (W.D.N.C. 2024) (citation omitted).[2] Supplemental allegations in the Proposed Second Amended Complaint include additional new details concerning Spire's efforts to structure Gabehart's role as a subterfuge to induce and cover up his contractual violations and misappropriation of trade secrets; Spire's knowing use of JGR's Trade Secrets and efforts to cover up its wrongdoing; and the resulting improvement in Spire's NASCAR race performance. *E.g.*, Proposed Second Am. Compl. ¶¶ 118, 126-27, 129, 132, 134, 136-37, 180-81.

The allegations in the Proposed Second Amended Complaint satisfy "the established liberal standard for obtaining leave to amend [a] complaint." *Z.G. ex rel. C.G. v. Pamlico Cnty. Pub. Schs.*

---

[2] Spire does not dispute that the Proposed Second Amended Complaint properly pleads the existence of a valid contract between JGR and Gabehart, Spire's knowledge of the contract, and actual damages. *See, e.g.*, Proposed Second Am. Compl. ¶¶ 30-54, 125-126, 132, 151.

*Bd. of Educ.*, 744 F. App'x 769, 782 (4th Cir. 2018). Amendment is not futile because the allegations of tortious interference are not "clearly insufficient or frivolous." *Frankenmuth Mut. Ins. Co.*, 2023 WL 2824896 at *5 (granting a motion for leave to amend with respect to a claim for tortious interference).

In arguing futility of the amendment, Spire improperly asks the Court to adopt its view of the merits. For example, Spire asserts, without explanation, that the Court must reject the plausibility of JGR's allegation that Spire created Gabehart's title specifically as a ruse to induce and cover up his violations, simply based on Spire's naked assertion that this is implausible. Dkt. 90 at 7. This argument demonstrates that Spire is asking the Court to improperly delve into the merits at this stage, which would violate the principle that "unless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations, conjecture about the merits of the litigation should not enter into the decision whether to allow amendment." *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980). JGR's proposed amendment meets the pleading standards for both the inducement and malice elements.

    **a.    The Proposed Amendment Sufficiently Alleges Spire Induced Gabehart to Breach His Employment Agreement with JGR.**

The proposed amendment plausibly alleges that Spire induced Gabehart to breach his Employment Agreement with JGR. Specifically, the proposed amendment includes not only the specific allegation that Spire induced Gabehart to breach his restrictive covenant (Proposed Second Am. Compl. ¶¶ 126, 181, 183) and to misappropriate trade secrets and confidential information (*id.* ¶ 134), but the following examples of specific factual allegations support the plausibility of the inducement allegations:

- Gabehart created a Google Drive folder named "Spire," where he stored photos and images of JGR files containing Confidential Information and Trade Secrets, Proposed Second Am.

5

Compl. ¶ 68;

- Gabehart accessed JGR's Confidential Information and Trade Secrets specifically for the purpose of obtaining a job with Spire, *id.* ¶ 111;

- One of the documents in the Spire folder compared the race performance of a JGR driver to that of a Spire driver, and identified areas of improvement for the Spire driver, *id.* ¶ 97;

- No later than November 13, 2025, and after Gabehart began collecting JGR's Confidential Information and Trade Secrets in the Google Drive Spire folder, Gabehart received an offer of employment from Spire, *id.* ¶ 72;

- Gabehart frequently interacted with the JGR Confidential Information and Trade Secrets he saved in his Google Drive Spire folder, including on December 2, 2025, the same day he met with Spire co-owner Jeff Dickerson, *id.* 109-10;

- Spire knowingly "created a bespoke role for Gabehart which required him to perform the same or similar services he provided JGR in the prior year," in direct conflict with Gabehart's noncompete and confidentiality obligations, *id.* ¶ 126; and

- A "Spire employee has informed a JGR employee that Gabehart is in charge of and/or significantly participating in Spire's competition strategy and decisions," *id.* ¶ 129.

Further, these underlying factual allegations plausibly allege that Spire designed Gabehart's role as a subterfuge—that is, Spire structured his responsibilities and compensation, for the specific purpose of inducing Gabehart to violate the noncompete and confidentiality provisions of his Employment Agreement with JGR. *See The Bldg. Ctr., Inc. v. Carter Lumber, Inc.*, 2016 WL 6142993, at *6 (N.C. Super. Ct. Oct. 21, 2016) (denying a motion to dismiss a claim for tortious interference with contract where the complaint alleged the use of increased

compensation to induce breach of employment contracts).[3]

Spire attempts to strawman JGR's position by focusing on the timing of Gabehart's departure from JGR, Dkt. 90 at 9, but JGR's tortious interference claim does not hinge on whether Spire induced Gabehart to leave JGR. Rather, JGR expressly alleges that Spire induced Gabehart to violate the noncompete and confidentiality provisions of his Employment Agreement after becoming aware of their terms, and to misappropriate trade secrets in violation of the law and Gabehart's agreement. Proposed Second Am. Compl. ¶ 134. That inducement could logically occur at any time before, during, or after Gabehart's separation from JGR, and the facts of this case clearly demonstrate as much.

In an attempt to downplay JGR's actual allegations, Spire asserts that "JGR sets forth no facts even suggesting that Spire had any involvement in Gabehart's conduct" related to the breach of his noncompete obligations. Dkt. 90 at 10. But this assertion overlooks the Second Amended Complaint's assertions including that JGR's allegation that it learned through a Spire employee that Spire put Gabehart "in charge of and/or significantly participating in Spire's competition strategy and decisions"—a direct violation of Gabehart's noncompete obligations—and instructed its employees not to discuss Gabehart's responsibilities outside of the company.[4] Proposed Second Am. Compl. ¶ 129. Additional allegations and inferences of breach are also ignored by Spire

---

[3] Spire's attempt to distinguish *The Building Center, Inc. v. Carter Lumber, Inc.*, 2016 WL 6142993 (N.C. Super. Ct., Oct. 21, 2016), fails. Just as in *The Building Center*, JGR has alleged that Spire (1) targeted one of JGR's "most critical employees," (2) structured Gabehart's employment arrangements to induce breach of Gabehart's obligations to JGR, and (3) used unlawful and improper means to harm its competitor. *Id.* ¶ 28. And just like *The Building Center*, this Court should find that JGR properly pled a claim for tortious interference with contract against Spire.

[4] Allegations that Spire gave Gabehart responsibilities that violated his noncompete, and then encouraged employees to keep the arrangement secret, distinguish JGR from the plaintiff in *MarketPlace 4 Insurance v. Vaughn*, 2023 WL 2229694 (N.C. Super. Ct. Feb. 24, 2023). In *MarketPlace*, the court dismissed claims of tortious interference against a company that hired the plaintiff's former employee because, unlike JGR, the *MarketPlace* plaintiff conceded it had not alleged any "purposeful conduct, active persuasion, request, or petition" on the part of the company itself. *Id.* at *15.

including allegations of Gabehart's frequent access of JGR's Confidential Information and Trade Secrets during his employment negotiations with Spire and after he left JGR, including an analysis identifying how a Spire driver could improve his performance relative to a JGR driver.

Thus, JGR has alleged facts that are more than sufficient to plausibly allege inducement under "the established liberal standard for obtaining leave to amend [a] complaint." *Z.G. ex rel. C.G.*, 744 F. App'x at 782.[5]

    **b.    The Proposed Amendment Sufficiently Alleges Spire's Interference with JGR's Rights Under the Employment Agreement Was Without Justification and with Malice**.

JGR properly alleges that Spire acted without legal justification and with legal malice. A tortious interference claim fails "only where the complaint shows the interference was justified or privileged." *See King*, 759 F. Supp. 3d at 698 (citation omitted). In evaluating whether the defendant's conduct was justified, the courts consider the surrounding circumstances as well as the defendant's motive and conduct. *Id.*

The proposed amendment provides numerous specific allegations showing that Spire's role in inducing Gabehart to breach his contract and misappropriate trade secrets was malicious, unlawful, and without justification. First, JGR alleges that Spire, with knowledge of Gabehart's noncompete obligations under the Employments Agreement, created a bespoke role for Gabehart as an intentional subterfuge—a role that provided a cover for Gabehart to perform the same or similar services for Spire that he performed for JGR in the prior year. Proposed Second Am. Compl. ¶¶ 125-26. JGR also alleges that Spire executive Jeff Dickerson possesses JGR's Confidential Information and Trade Secrets that Gabehart took from JGR, and that Spire is

---

[5] Indeed, although not necessary at this stage of the litigation, JGR's allegations in the Proposed Second Amended Complaint move its claims that Spire intentionally induced Gabehart to violate his noncompete and confidentiality obligations "across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

encouraging Gabehart to use that information and perform services in violation of his noncompete. *Id.* ¶¶ 118, 132-34.

Further, the Proposed Second Amended Complaint asserts that a Spire employee has informed a JGR employee that Spire "[e]mployees were instructed not to discuss the fact Gabehart is leading and/or participating in Spire's competition and strategy decisionmaking process outside of Spire." *Id.* ¶ 129. This allegation, which Spire ignores, independently supports a finding that JGR plausibly alleged malice.

Spire argues JGR's Proposed Second Amended Complaint does not include factual allegations to support that Spire acted without justification. In doing so, it fundamentally mischaracterizes what JGR alleges in the Proposed Second Amended Complaint. According to Spire, the only relevant allegations are that Spire hired Gabehart to a different role with different job responsibilities that were tailored to avoid implicating any noncompete obligations. Dkt. 90 at 7. That is *not* what the Proposed Second Amended Complaint alleges.

Instead, it alleges that Spire hired Gabehart to a role with a deceptive title intending to hide the nature of the services Gabehart would provide, required Gabehart to perform the same job responsibilities he had for JGR, and required him to violate his noncompete obligations. Proposed Second Am. Compl. ¶¶ 126-27. It alleges Spire created the misleading role and title to give Gabehart a plausible explanation allowing him to be present at NASCAR Cup Series events so he could violate his noncompete obligations without JGR learning of the violations. *Id.* ¶ 127. Spire's need to mischaracterize this allegation in a way that is more favorable to Spire underscores that it is improperly inviting the Court to delve into the merits. If JGR's plausibly alleged subterfuge allegation is taken as true, as it should be, it amply supports the malice element.

9

Additional allegations support this element. For example, the Proposed Second Amended Complaint also alleges Dickerson has JGR's Confidential Information and Trade Secrets and that Spire has "encouraged Gabehart to use [JGR's] Trade Secrets and confidential information to help Spire and to damage JGR's competitive standing in the NASCAR Cup Series." *Id.* ¶¶ 118, 134.

Spire's attempt to rely on the competitive privilege to interfere addressed in *Peoples Security Life Ins. Co. v. Hooks*, 322 N.C. 216 (1988), and its progeny to foreclose liability for tortious interference is unavailing. *Hooks* stands only for the proposition that "in some situations a competitor may hire an employer's former employees without being liable for tortious interference with contract." *United Lab'ys, Inc. v. Kuykendall*, 322 N.C. 643, 662 (1988). The competitive privilege to interfere does not protect an actor who interferes for a wrong purpose. *Id.* "[A] wrong purpose exists where the act is done other than as a reasonable and *bonafide* attempt to protect the interests of the defendant which is involved." *Id.* (quoting *Hooks*, 322 N.C. at 220). As the Supreme Court of North Carolina put it, the privilege in *Hooks* applies where "a competitor is merely hiring a competitor's employees." *Id.* at 663.

JGR does not allege, as Spire contends, that Spire tortiously interfered with JGR's contractual rights under the Employment Agreement by only hiring Gabehart. Instead, JGR's claim is based on Spire hiring Gabehart in a manner that was wrongful and not "a reasonable and *bonafide* attempt to protect the interests of [Spire]." *See Kuykendall*, 322 N.C. at 662 (citations omitted). Like in *Kuykendall*, JGR's tortious interference claim is that its former employee's new employer, Spire, continued to compete unfairly against JGR using the information the former employee wrongfully took from JGR with knowledge of the former employee's noncompete obligation. *See id.* 662-63.

*Hooks* does not vitiate the allegations here of malicious intent to harm JGR, including through creating a ruse title to hide contractual violations, instructing employees to cover up violations, and inducing the unlawful misappropriation of trade secrets and confidential information.  Nor does Spire's position as JGR's competitor justify these deceptive and unlawful actions. *See MarketPlace 4 Insurance*, 2023 WL 2229694, at *12-13 (interference is "without justification" when the interference is not motivated by a desire to protect the defendants' "legitimate business interests." (citations omitted)); *Mech. Sys. & Servs., Inc. v. Howard*, 2021 WL 3559444, at * 5 (N.C. Super. Ct. Aug. 11, 2021) (allegations that method of competition used included misappropriation of trade secrets sufficiently allege lack of justification to interfere with competitor's contract).

Yet, Spire glosses over JGR's *factual* allegations that Spire created a role for Gabehart that concealed that Gabehart was providing it with the same services he provided JGR.  It in fact never engages with this allegation.  Instead, it ignores it by describing Gabehart's role as different and intended to avoid noncompete obligations.[6]  Dkt. 90 at 7.

Spire similarly fails to address the allegations that it has instructed its employees not to disclose the services Gabehart is providing it and that Gabehart is providing it with services that violate Gabehart's noncompete obligations. What JGR alleged about Spire's employees disclosing instructions not to speak publicly about Gabehart's role, Proposed Second Am. Compl. ¶ 129, gives rise to a reasonable inference Spire is seeking to conceal what Gabehart is actually doing for

---

[6] Spire's effort to strain the allegations of the Proposed Second Amended Complaint to fit its preferred narrative are impotent; the Court accepts JGR's allegations as true for purposes of the Motion. *Ricketts v. Wake Cnty. Public School System*, 125 F.4th 507, 520 (4th Cir. 2025) (reversing district court for denying leave to amend and noting it must accept the allegations contained in the amended filing as true in conducting a futility analysis).  Particularly troubling is that Gabehart's counsel has acknowledged in open court there is subject matter overlap in Gabehart's role at Spire and his previous role at JGR. How Spire can square that representation with its representation the role is different and was intended to avoid noncompete obligations is a head scratcher.

Spire in violation of his JGR contract. JGR alleges that its personnel have been informed Gabehart is running or participating in Spire's Cup Series competition efforts. *Id.* ¶¶ 129-30. It also alleges that Dickerson has informed others he has JGR's Confidential Information and Trade Secrets and that Spire has encouraged Gabehart to use that information to benefit Spire. *Id.* ¶¶ 118, 134. These specific details, among others, further bolster the plausibility of JGR's allegation that Spire's interference with JGR's rights under the Employment Agreement was not lawful.

Most glaringly, Spire ignores the allegation that Dickerson, Spire's co-owner and public face of the team, has told third parties he possesses JGR's Confidential Information and Trade Secrets.[7] Proposed Second Am. Compl. ¶ 118. Instead Spire asserts—untethered to that factual allegation—it was unaware of Gabehart's misuse of JGR's Confidential Information and Trade Secrets. *Id.* at 8. Spire similarly does not materially engage with the allegation it encouraged Gabehart to use JGR's Confidential Information and Trade Secrets.

Those allegations show Spire's motivations in hiring Gabehart were not to lawfully protect Spire's interests, but to further Spire's interests in a manner that motivated Gabehart to breach the confidentiality and noncompete obligations he was subject to after he was terminated for cause. Further underscoring that Spire's actions are unfair and without justification are the allegations that Gabehart is performing the services that violate his noncompete agreement and that Spire is actively attempting to hide how Gabehart is helping Spire compete against JGR while Dickerson has informed third parties that he possesses JGR's car setups. This conduct supports a reasonable inference Spire's motivation is to compete in a way that injures JGR. *Ashcroft v. Iqbal*, 556 U.S.

---

[7] Spire points the Court to *Design Gaps, Inc. v. Hall*, No. 23CV040664-590, 2024 WL 1917606 (N.C. Super Ct. May 1, 2024) to contend JGR's allegations of misappropriation of trade secrets do not demonstrate malice to remove Spire's conduct from the competitive privilege exception. The misappropriation of trade secrets claim in that case was dismissed solely because the plaintiff did not sufficiently identify its trade secrets. *Id.* at * 4. *Design Gaps* therefore affords Spire no support.

662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The proposed amendment includes plausible allegations that independently meet the standard for pleading malice, and in combination they easily meet the standard. Because JGR's allegations state a claim for tortious interference with contract against Spire, allowing the amendment is not futile. *Frankenmuth Mut. Ins. Co.*, 2023 WL 2824896, at *5 (amendment is futile only when it is "clearly insufficient or frivolous.").

## CONCLUSION

The Court should grant the Motion to Amend because the proposed amendment is not futile and states sufficient factual allegations to support its claim for tortious interference with contract against the correct Spire entity. For these reasons, and for the reasons set forth in its prior briefing, JGR respectfully requests that the Court grant its Motion to Amend.

*[Remainder of page intentionally left blank]*

Respectfully submitted this the 19th day of May, 2026.

**PARKER POE ADAMS & BERNSTEIN LLP**

/s/ Sarah F. Hutchins
Sarah F. Hutchins
N.C. Bar No. 38172
Tory Ian Summey
N.C. Bar No. 46437
Keith M. Weddington
N.C. Bar No. 14352
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Chad F. Lee
N.C. State Bar No. 56350
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com
chadlee@parkerpoe.com


**KING & SPALDING LLC**

Danielle T. Williams
dwilliams@kslaw.com
N.C. Bar No. 23283
300 South Tryon Street, Suite 1700
Charlotte, NC 28202
Thomas M. Melsheimer – *Pro Hac Vice*
tmelsheimer@kslaw.com
Chad B. Walker – *Pro Hac Vice*
cwalker@kslaw.com
Tracea Rice – *Pro Hac Vice*
trice@kslaw.com
Alexandra Moore - *Pro Hac Vice*
almoore@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201

*Attorneys for Joe Gibbs Racing, LLC*

14

## <u>ARTIFICIAL INTELLIGENCE CERTIFICATION</u>

No artificial intelligence was employed in doing the research for the preparation of this Motion, with the exception of the standard artificial intelligence embedded in WestLaw. Every statement and every citation to an authority contained in this Motion has been checked by an attorney in this case as to the accuracy of the proposition for which it is offered.

**PARKER POE ADAMS & BERNSTEIN LLP**

/s/ Sarah F. Hutchins
Sarah F. Hutchins
N.C. Bar No. 38172
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
*Attorney for Joe Gibbs Racing, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this date the foregoing **REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO AMEND FIRST AMENDED COMPLAINT** was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send notice and serve same upon counsel of record via the Court's electronic case filing system.

This the 19th day of May, 2026.

**PARKER POE ADAMS & BERNSTEIN LLP**

/s/ Sarah F. Hutchins
Sarah F. Hutchins
N.C. Bar No. 38172
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
*Attorney for Joe Gibbs Racing, LLC*

16