# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

JOE GIBBS RACING, LLC,

      Plaintiff,

v.

CHRISTOPHER GABEHART and SPIRE
MOTORSPORTS II, LLC,

      Defendants.

Case No. 3:26-cv-00133-SCR-DCK

## DEFENDANT SPIRE MOTORSPORTS II, LLC'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendant Spire Motorsports II, LLC ("Spire"), by and through its undersigned counsel, submits its Answer, Defenses, and Counterclaims to Plaintiff Joe Gibbs Racing, LLC's ("JGR") Second Amended Complaint, Dkt.95.

## PRELIMINARY STATEMENT

This case is about a NASCAR team that, unable to keep a rising competitor in its rearview mirror, turned to the courthouse in a futile effort to protect its long-dominant reign over the sport. Rather than acknowledge that Spire is a bystander to what amounts to a bad breakup that one side evidently regrets, JGR has chosen to ignore its own behavior and blame everyone else for the position it finds itself in. The only explanation for JGR's irrational behavior is that it wants to take competition off the racetrack and bully a competitor in the courtroom. That isn't what racing is about.

Success in NASCAR Cup Series racing comes from many factors, including driving talent, engineering talent, the right equipment, adaptability, strategic execution, and old-fashioned luck. JGR, an entrenched Cup Series competitor, has historically enjoyed great success, deploying its

considerable financial resources to field competitive teams over many years. But JGR elevated nepotism over competitive excellence when it installed the grandson of JGR's owner as the No. 54 car's driver, instead of re-signing the driver that had won multiple Cup Series championships for JGR—and the No. 54 car's performance began to slip. To make matters worse, JGR demanded the team treat that new driver with kid gloves and refused to let anyone within JGR's organization hold him accountable for his conduct. Christopher Gabehart—a NASCAR standout who helped JGR achieve many of its successes—understandably didn't want to babysit a neophyte driver, but quickly learned that was the role JGR expected him to take on. So Gabehart eventually decided to leave JGR, in a manner that triggered a bespoke provision of his Employment Agreement that reduced the duration of his non-compete restriction to a single week. Upon receiving Gabehart's notification, JGR acknowledged that Gabehart and JGR should part ways, with the understanding that Gabehart would seek a new role that matched his considerable skill.

Meanwhile, Spire, a relative newcomer to NASCAR team ownership (but not a newcomer to motorsports), offered Gabehart the opportunity that JGR would not. Founded in 2018, Spire's team operation has grown from a one-car operation into a dynamic enterprise that fields entries across multiple professional motorsports series, including various grassroots series and three entries in the Cup Series. Spire now operates with the support of approximately 175 dedicated and talented technicians, crew chiefs, car chiefs, drivers, and engineers, among others, and technical alliances with Hendrick Motorsports and General Motors. Spire's growth from an upstart to industry leader is the product of significant financial investment, improved equipment, disciplined long-term planning, and the strategic recruitment and development of top-tier talent—not shortcuts, and not cheating. Spire's long-term development strategy is paying off. Already this year, Spire has achieved two Cup Series victories—a milestone that represents the culmination of

2

years of hard work against the sport's old-guard, entrenched, and better-resourced teams. In other words, Spire is closing the gap in the only way it knows how: by outworking and out-planning the competition.

JGR is clearly having trouble accepting Spire's gains on the racetrack, clearly has ignored Spire's continued upward trajectory over the past several years, and clearly regrets losing a top talent like Gabehart to Spire due to its own mismanagement. Sensing a threat to its competitive position, JGR seeks to stymie Spire's progress, demean Spire's success, and distract from Spire's development by using litigation as a sword. The result is this lawsuit, in which JGR has claimed—without any basis identified to this day—that Spire engaged in a fantastic and once-in-a-generation conspiracy by unlawfully hiring Gabehart so that Spire could cheat, using confidential information and trade secrets to improve its performance on the track.

Nothing could be further from reality. Spire's success on the racetrack has nothing to do with JGR's trade secrets or confidential information, and everything to do with Spire's investment, determination, and grit. JGR knows this. Spire has never requested, reviewed, or used any of JGR's confidential information or trade secrets, which Spire neither needs nor has any use for, as the two teams use cars produced by different manufacturers, eliminating any meaningful possibility for any impactful crossover of confidential information. JGR knows this too. In fact, since this lawsuit was first filed in February 2026, Spire has *repeatedly* asked JGR to identify what confidential information and/or trade secrets Spire has used to compete. But despite five months of effort, JGR has not produced or even identified *any* confidential information or trade secrets obtained or used by Spire.

JGR apparently believes a team with its history and resources is simply entitled to win. And if you can't win on the merits, you can always outspend and beat the competition into

3

submission.  Spire is not having it.  JGR's calculated effort to punish an up-and-coming competitor that has disrupted the NASCAR status quo will not succeed, because Spire built its success the hard way, and its hands are clean.

* * *

Spire reserves the right to amend its Answer, in whole or in part.  Spire denies each and every allegation not expressly admitted below.  Spire further denies any allegations contained in, or inferences that could be drawn from, the headings found in the Second Amended Complaint or any other portion outside the numbered paragraphs, and they are repeated herein solely for convenience.  Spire denies that JGR is entitled to any relief.  In response to the numbered paragraphs of the Second Amended Complaint, Spire responds as follows:

1.      Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 and therefore they are deemed to be denied.

2.      Spire, upon information and belief, admits allegations contained in Paragraph 2.

3.      Spire admits allegations contained in Paragraph 3.

4.      Paragraph 4 contains a legal conclusion to which no response is required.  To the extent any further response is deemed to be required, Spire admits that JGR purports to assert a claim under the Defend Trade Secrets Act, 18 U.S.C. § 1836, but denies that JGR is entitled to any relief.

5.      Paragraph 5 contains a legal conclusion to which no response is required.  To the extent any further response is deemed to be required, Spire admits only that the Second Amended Complaint includes state-law claims alleged to arise from the same nucleus of operative fact as the Defend Trade Secrets Act ("DTSA") claim, and denies that JGR is entitled to any relief.

4

6.    Paragraph 6 contains a legal conclusion to which no response is required.  To the extent any further response is deemed to be required, Spire admits that this Court has personal jurisdiction over Spire and that Spire is domiciled in the State of North Carolina and within this Judicial District.  Spire, upon information and belief, admits the allegations regarding Gabehart's domicile.

7.    Paragraph 7 contains a legal conclusion to which no response is required.  To the extent any further response is deemed to be required, Spire admits that venue is proper in this Court and that Spire resides in this Judicial District. Spire, upon information and belief, admits the allegations regarding Gabehart's domicile.

8.    Spire admits that JGR operates NASCAR teams that compete in the NASCAR Cup Series and NASCAR O'Reilly Auto Parts Series.  Spire, upon information and belief, admits the remaining allegations contained in Paragraph 8.

9.    Spire admits that JGR operates NASCAR teams that compete in the NASCAR Cup Series and NASCAR O'Reilly Auto Parts Series.  Spire lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 9 and therefore they are deemed to be denied.

10.   Spire admits that NASCAR is frequently competitive and that certain on-track results can under certain circumstances impact financial interests, professional reputations, and the livelihoods of individuals working in NASCAR.  Spire further admits that some NASCAR fans closely follow race outcomes but lacks knowledge or information sufficient to form a belief as to the subjective expectations of NASCAR fans generally.  Except as expressly admitted, the allegations in this paragraph are denied.

11.   Spire admits the allegations contained in Paragraph 11.

12. Spire admits that JGR has had some success in NASCAR. Spire lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 12 and therefore they are deemed to be denied. Spire expressly denies that JGR's results are solely the result of JGR's actions.

13. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 and therefore they are deemed to be denied.

14. Paragraph 14 contains a legal conclusion to which no response is required. To the extent any further response is deemed to be required, Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14, including subparagraphs (a) – (g), and therefore they are deemed to be denied. In addition, the allegations in Paragraph 14 of the Second Amended Complaint purport to characterize one or more documents (including the purported trade secrets at issue), the contents of which speak for themselves.

15. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 and therefore they are deemed to be denied.

16. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 and therefore they are deemed to be denied. Spire expressly denies the allegations contained in Paragraph 16 to the extent any of JGR's alleged trade secrets have been shared outside of JGR.

17. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17, including subparagraphs (a) – (i), and therefore they are deemed to be denied. In addition, the allegations in Paragraph 17 of the Second Amended Complaint purport to characterize one or more documents (including the information protection

policies and procedures at issue, as well as accompanying agreements), the contents of which speak for themselves.

18. Spire denies that JGR reasonably relies on its employees' strict adherence to the covenants and terms in the employment agreements and employment policies and procedures to protect its purported Confidential Information and Trade Secrets in all instances, including because it was prepared to permit Defendant Gabehart to begin working immediately for a competitor pursuant to certain terms in Gabehart's employment agreement. Spire lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 18 and therefore they are deemed to be denied.

19. Denied.

20. Spire denies that possession of the information referenced in Paragraph 20 would enable competitors to improve their teams in ways those competitors could not achieve through independent development and therefore also denies that possession of such information would allow a competitor to unfairly compete with JGR. Spire lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 20 and therefore denies them.

21. Spire admits that NASCAR introduced the NextGen car platform in 2022 and that the rules reduce certain equipment differences among teams while simultaneously creating new competitive opportunities. Spire denies any implication that this makes the categories of information JGR describes unique, protectable, or trade secrets. Spire lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 21 and therefore they are deemed to be denied.

22. Spire admits that introduction of the NextGen car platform changed some aspects of how NASCAR teams compete, while other aspects remained unchanged, and that sometimes NASCAR races are close. Spire expressly denies that car setup alone controls or is the most important factor in the outcome of a NASCAR race, expressly denies that a car setup in isolation is useful to competitors (particularly competitors who use components made by different manufacturers), and expressly denies that it ever possessed, acquired or used any JGR car setup. Spire lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 22 and therefore they are deemed to be denied.

23. Spire denies the allegations in Paragraph 23.

24. Spire denies the allegations in Paragraph 24.

25. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25 and therefore they are deemed to be denied. Spire expressly denies that JGR has identified any impairment to its ability to compete, lost profits, lost business opportunities, or reputational harm that are correlated to Spire's alleged conduct.

26. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 and therefore they are deemed to be denied.

27. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 27 and therefore they are deemed to be denied.

28. Spire admits that JGR previously employed Gabehart. Spire lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 28 and therefore they are deemed to be denied.

29. Spire admits upon information and belief that Gabehart held different positions with JGR during his time as an employee of JGR, including as an engineer, crew chief, and Cup Series

Director of Competition.  Spire lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 29 and therefore they are deemed to be denied.

30. Paragraph 30 references a document, which speaks for itself.  Spire denies the allegations in Paragraph 30 to the extent they are inconsistent with that document.  To the extent any further response is required, Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30 and therefore they are deemed to be denied.

31. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31 and therefore they are deemed to be denied.

32. Spire admits upon information and belief that the agreement referenced in Paragraph 32 is written.  Spire denies that the restrictive covenant contained in the agreement is applicable, valid or enforceable as it relates to Gabehart's employment with Spire.  The remaining allegations of Paragraph 32 contain legal conclusions to which no response is required.  To the extent any further response is deemed to be required, Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 and therefore they are deemed to be denied.

33. Spire admits upon information and belief that Gabehart served as Cup Series Director of Competition for JGR and in that capacity, was responsible for oversight of Cup Series competition efforts, including directing competition activities, coordinating competition-related matters among JGR's teams and partners, and serving as JGR's primary competition liaison with NASCAR officials.  Spire further admits upon information and belief that Gabehart served as crew chief for the No. 54 car for a period of time and in that capacity he performed crew-chief-level

9

responsibilities, including calling the races on Sundays. Spire lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 33 and therefore they are deemed to be denied.

34. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34, including subparagraphs (a) – (f), and therefore they are deemed to be denied. Spire specifically denies any implication that the information described in Paragraph 34 is unique, protectable, or trade secrets.

35. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35 and therefore they are deemed to be denied.

36. Paragraph 36 references a document, which speaks for itself. Spire accordingly denies the allegations in Paragraph 36 to the extent they are inconsistent with that document. To the extent any further response is required, Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36 and therefore they are deemed to be denied.

37. Paragraph 37 references a document, which speaks for itself. Spire accordingly denies the allegations in Paragraph 37 to the extent they are inconsistent with that document. To the extent any further response is required, Spire admits only that the language quoted in Paragraph 37 appears to match the corresponding language in the copy of the agreement that was provided to Spire.

38. Paragraph 38 references a document, which speaks for itself. Spire accordingly denies the allegations in Paragraph 38 to the extent they are inconsistent with that document. To the extent any further response is required, Spire admits only that the language quoted in Paragraph

38 appears to match the corresponding language in the copy of the agreement that was provided to Spire, and denies the remaining allegations in Paragraph 38.

39. Paragraph 39 references a document, which speaks for itself. Spire accordingly denies the allegations in Paragraph 39 to the extent they are inconsistent with that document. To the extent any further response is required, Spire admits only that the language quoted in Paragraph 39 appears to match the corresponding language in the copy of the agreement that was provided to Spire.

40. Paragraph 40 references a document, which speaks for itself. Spire accordingly denies the allegations in Paragraph 40 to the extent they are inconsistent with that document. To the extent any further response is required, Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 40 and therefore they are deemed to be denied.

41. Paragraph 41 references a document, which speaks for itself. Spire denies the allegations in Paragraph 41 to the extent they are inconsistent with that document. Spire lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 41 and therefore they are deemed to be denied.

42. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 42 and therefore they are deemed to be denied.

43. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 43 and therefore they are deemed to be denied.

44. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 44 and therefore they are deemed to be denied.

45. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 45 and therefore they are deemed to be denied.

46. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 46 and therefore they are deemed to be denied.

47. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 47 and therefore they are deemed to be denied.

48. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 48 and therefore they are deemed to be denied.

49. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 49 and therefore they are deemed to be denied.

50. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 50 and therefore they are deemed to be denied.

51. Paragraph 51 references a document, which speaks for itself. Spire accordingly denies the allegations in Paragraph 51 to the extent they are inconsistent with that document. To the extent any further response is required, Spire admits only that the language quoted in Paragraph 51 appears to match the corresponding language in the copy of the agreement that was provided to Spire, and denies the remaining allegations in Paragraph 51.

52. Paragraph 52 references a document, which speaks for itself. Spire accordingly denies the allegations in Paragraph 52 to the extent they are inconsistent with that document. To the extent any further response is required, Spire admits only that the language quoted in Paragraph 52 appears to match the corresponding language in the copy of the agreement that was provided to Spire, and denies the remaining allegations in Paragraph 52.

53. Paragraph 53 contains a legal conclusion to which no response is required. To the extent any further response is deemed to be required, Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 53 and therefore they are deemed to be denied.

54. Paragraph 54 references a document, which speaks for itself. Spire accordingly denies the allegations in Paragraph 54 to the extent they are inconsistent with that document. To the extent any further response is required, Spire admits only that the language quoted in Paragraph 54 appears to match the corresponding language in the copy of the agreement that was provided to Spire, and denies the remaining allegations in Paragraph 54.

55. Spire admits upon information and belief that Gabehart became dissatisfied with aspects of his employment with JGR in 2025. Except as expressly admitted, the allegations of this paragraph are denied.

56. Spire denies the allegations contained in Paragraph 56.

57. Spire admits upon information and belief that Gabehart and Coach Gibbs agreed to meet and did meet on November 6, 2025, during which meeting Gabehart explained that his job duties at JGR were materially inconsistent with his reasonable expectations when he accepted the position of Director of Cup Series Competition and with the job description provided by JGR and Coach Gibbs prior to his start date. Coach Gibbs then indicated that JGR and Gabehart should voluntarily part ways. Except as expressly admitted, the allegations of this paragraph are denied.

58. Spire admits upon information and belief that Gabehart and Coach Gibbs agreed to meet and did meet on November 6, 2025, during which meeting Gabehart explained that his job duties at JGR were materially inconsistent with his reasonable expectations when he accepted the position of Director of Cup Series Competition and with the job description provided by JGR and

Coach Gibbs prior to his start date. Coach Gibbs then indicated that JGR and Gabehart should voluntarily part ways.  Except as expressly admitted, the allegations of this paragraph are denied.

59.	Spire admits upon information and belief that Gabehart and Coach Gibbs agreed to meet and did meet on November 6, 2025, during which meeting Gabehart explained that his job duties at JGR were materially inconsistent with his reasonable expectations when he accepted the position of Director of Cup Series Competition and with the job description provided by JGR and Coach Gibbs prior to his start date. Coach Gibbs then indicated that JGR and Gabehart should voluntarily part ways.  Except as expressly admitted, the allegations of this paragraph are denied.

60.	Spire admits upon information and belief that Gabehart and Coach Gibbs agreed to meet and did meet on November 6, 2025, during which meeting Gabehart explained that his job duties at JGR were materially inconsistent with his reasonable expectations when he accepted the position of Director of Cup Series Competition and with the job description provided by JGR and Coach Gibbs prior to his start date. Coach Gibbs then indicated that JGR and Gabehart should voluntarily part ways.  Except as expressly admitted, the allegations of this paragraph are denied.

61.	Paragraph 61 references a document which speaks for itself.  Spire accordingly denies the allegations in Paragraph 61 to the extent they are inconsistent with that document.  To the extent any further response is required, Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 61 and therefore they are deemed to be denied.

62.	Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 62 and therefore they are deemed to be denied.

63.	Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 63 and therefore they are deemed to be denied.

64.     Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 64 and therefore they are deemed to be denied.

65.     Spire admits that it is a competitor of JGR and that it was originally formed—as Spire Motorsports, LLC—in 2018.  Spire Motorsports II, LLC was formed in August 2020, and became the operating entity (as it remains today).  Spire further admits that it entered the NASCAR Cup Series in 2019 and, by the start of the 2024 Cup Series season, operated three full-time Cup Series entries, which continues to operate.  Spire denies the remaining allegations in Paragraph 65 to the extent they suggest that Spire's activities are limited to a single NASCAR team or otherwise understate the scope of Spire's operations, and states that, in addition to its three-car Cup Series team, Spire owns and operates a NASCAR Craftsman Truck Series team with multiple entries and several other professional motorsports programs, supported by approximately 175 motorsports employees and technical alliances with Hendrick Motorsports and General Motors.  Spire's business operations are much broader in scope than JGR's.

66.     Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 66 and therefore they are deemed to be denied.

67.     Spire admits upon information and belief that Gabehart and JGR have agreed to multiple third-party forensic examinations, which have included Gabehart's JGR computer, Gabehart's personal devices, and Gabehart's personal accounts, among other sources of data. Except as expressly admitted, the allegations of this paragraph are denied.

68.     Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 68, including subparagraphs (a) – (d), and therefore they are deemed to be denied.  In addition, the allegations in Paragraph 68 of the Second Amended

Complaint purport to characterize one or more documents, the contents of which speak for themselves.

69. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 69 and therefore they are deemed to be denied. In addition, the allegations in Paragraph 69 of the Second Amended Complaint purport to characterize one or more documents, the contents of which speak for themselves.

70. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 70 and therefore they are deemed to be denied. In addition, the allegations in Paragraph 70 of the Second Amended Complaint purport to characterize one or more documents, the contents of which speak for themselves.

71. Paragraph 71 references a document which speaks for itself. Spire accordingly denies the allegations in Paragraph 71 to the extent they are inconsistent with that document. To the extent any further response is required, Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 71 and therefore they are deemed to be denied.

72. Paragraph 72 references a document which speaks for itself. Spire accordingly denies the allegations in Paragraph 72 to the extent they are inconsistent with that document. To the extent any further response is required, Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 72 and therefore they are deemed to be denied.

73. Spire admits upon information and belief that Gabehart and JGR agreed to a forensic review as set forth in the protocol referenced in Paragraph 73, which speaks for itself.

Spire accordingly denies the allegations in Paragraph 73 to the extent they are inconsistent with that document. Except as expressly admitted, the allegations of this paragraph are denied.

74. Spire admits upon information and belief that Gabehart and JGR agreed to a forensic review as set forth in the protocol referenced in Paragraph 74, which speaks for itself. Spire accordingly denies the allegations in Paragraph 74 to the extent they are inconsistent with that document. Except as expressly admitted, the allegations of this paragraph are denied. Spire specifically denies that the materials subject to the examination referenced in Paragraph 74 constitute critical trade secrets. Spire expressly denies that Gabehart has placed "[s]ignificant limitations" on JGR's access to his personal devices and accounts. To the extent any further response is required, Spire lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 74 and therefore they are deemed to be denied.

75. Spire denies the allegations contained in Paragraph 75.

76. Spire admits upon information and belief that Gabehart and JGR agreed to a forensic review as set forth in the protocol referenced in Paragraph 76, which speaks for itself. Spire accordingly denies the allegations in Paragraph 76 to the extent they are inconsistent with that document. Except as expressly admitted, the allegations of this paragraph are denied. Spire specifically denies that Gabehart's alleged misappropriation of JGR's information was for the benefit of Spire. Spire expressly denies that Gabehart has not permitted a "wholesale forensic review of his electronic devices" by JGR. To the extent any further response is required, Spire lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 76 and therefore they are deemed to be denied.

77. Spire denies the allegations contained in Paragraph 77.

78. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 78 and therefore they are deemed to be denied.

79. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 79 and therefore they are deemed to be denied.

80. Spire admits upon information and belief that on or about February 4, 2026, the forensic examiner selected by JGR pursuant to the protocol permanently deleted all files and data identified as potentially containing JGR confidential information from Gabehart's cloud-based accounts and personal cell phone.

81. Spire admits upon information and belief that on or about February 9, 2026 JGR sent Gabehart a letter purporting to terminate the Agreement for cause, which letter is a writing the contents of which speak for itself. Spire denies the allegations in Paragraph 81 to the extent they are inconsistent with that document. Spire denies that JGR properly and effectively terminated Gabehart's employment for cause because, among other things, Gabehart had invoked the Section 6, Paragraph 2 carveout in his employment agreement with JGR and JGR ceased paying Gabehart in November 2025, effectuating a termination without cause. To the extent Paragraph 81 contains legal conclusions, no response is required. Except as expressly admitted, the allegations of this paragraph are denied.

82. Spire admits that it hired Gabehart as its Chief Motorsports Officer, but denies JGR's characterization of that role and denies that JGR first learned that Gabehart planned to assume the position of Spire's Chief Motorsports Officer in February 2026.

83. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 83 and therefore they are deemed to be denied.

84. Spire denies the allegations contained in Paragraph 84.

85. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 85 and therefore they are deemed to be denied. Spire specifically denies that Gabehart disclosed any confidential or trade secret information of JGR to Spire.

86. Spire admits the allegations contained in Paragraph 86.

87. Spire denies the allegations contained in Paragraph 87.

88. Paragraph 88 references a written communication, that communication speaks for itself and Spire accordingly denies the allegations in Paragraph 88 to the extent they are inconsistent with that document. To the extent Paragraph 88 references a verbal communication, Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 88 and therefore they are deemed to be denied.

89. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 89 and therefore they are deemed to be denied.

90. Spire admits upon information and belief that Gabehart and Coach Gibbs agreed to meet and did meet on November 6, 2025, during which meeting Gabehart explained that his job duties at JGR were materially inconsistent with his reasonable expectations when he accepted the position of Director of Cup Series Competition and with the job description provided by JGR and Coach Gibbs prior to his start date. Coach Gibbs then indicated that JGR and Gabehart should voluntarily part ways. Except as expressly admitted, the allegations of this paragraph are denied.

91. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 91 and therefore they are deemed to be denied.

92. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 92 and therefore they are deemed to be denied. Spire denies that taking photographs on a phone does not leave a "paper trail[]."

93. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 93 and therefore they are deemed to be denied.

94. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 94, and subparagraphs (a) – (g), and therefore they are deemed to be denied. In addition, the allegations in Paragraph 94 of the Second Amended Complaint purport to characterize one or more documents (including photographs that have still not been produced by JGR in this litigation), the contents of which speak for themselves.

95. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 95 and therefore they are deemed to be denied.

96. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 96 and therefore they are deemed to be denied.

97. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 97, including subparagraphs (a) – (l), and therefore they are deemed to be denied. Spire specifically denies that the information described in Paragraph 97 is unique, protectable, or trade secrets. In addition, the allegations in Paragraph 97 of the Second Amended Complaint purport to characterize one or more documents, the contents of which speak for themselves.

98. Spire admits the following: NASCAR Cup Series races can be close; NASCAR Cup Series races run on dozens of different tracks; that each track is unique and the cars react differently based on the track's configuration, size, surface type, level of grip, banking, radius of

turns, pit road configurations, driver skill, style and strategy, and environmental factors (among many other factors); cars are assembled and tuned to maximize the car's speed and handling on each unique track and for each unique driver (among other considerations); various data is collected from tests and race events; the standardization of the Next Gen cars and the fact that parts are sourced from common suppliers, the setup of a car and adjustments made all contribute to a car's performance on any given day (among other factors). To the extent any further response is required, Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 98 and therefore they are deemed to be denied.

99. Spire denies requesting, seeking, obtaining and/or using any confidential or trade secret information of JGR. Spire lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 99 and therefore they are deemed to be denied.

100. Spire denies the allegations in Paragraph 100, including the assertion that any pictures or materials allegedly taken or saved by Gabehart constitute "the exact set of Confidential Information and Trade Secrets any of JGR's competitors would want" to gain a competitive advantage over JGR, and specifically denies that any such materials provide competitive value or benefit to Spire. Spire has never requested, reviewed, or used any JGR confidential information or trade secrets, including the materials referenced in Paragraph 100. Spire is a Chevrolet team with its own technical alliances with Hendrick Motorsports and General Motors, and thus has no need for JGR's information because Spire uses Hendrick-built engines and GM aerodynamic and simulation tools, whereas JGR is aligned with Toyota; the outerbody and underbody work together, such that information from JGR would not be an easy carry over for performance, and any JGR data would be almost impossible to use and could actually harm Spire given Spire's inability to

21

validate outside information.  Spire lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 100 and therefore they are deemed to be denied.

101.    Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 101 and therefore they are deemed to be denied.

102.    Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 102 and therefore they are deemed to be denied.

103.    Spire admits upon information and belief the allegations contained in Paragraph 103.

104.    Spire admits upon information and belief that Gabehart and Coach Gibbs agreed to meet and did meet on November 6, 2025, during which meeting Gabehart explained that his job duties at JGR were materially inconsistent with his reasonable expectations when he accepted the position of Director of Cup Series Competition and with the job description provided by JGR and Coach Gibbs prior to his start date.  Coach Gibbs then indicated that JGR and Gabehart should voluntarily part ways.  Except as expressly admitted, the allegations of this paragraph are denied.

105.    Spire admits only that on November 13, 2025, it engaged in preliminary discussions with Gabehart regarding the general framework of a potential employment opportunity, but denies that it extended any formal job offer to him on that date.  Spire extended its first written employment agreement proposal to Gabehart on January 27, 2026.

106.    Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 106 and therefore they are deemed to be denied.  Spire further notes that JGR's counsel admitted, at the February 27, 2026 hearing on JGR's motion for

a temporary restraining order, that JGR lacked any evidence of actual access to the websites referenced in Paragraph 106.

107. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 107 and therefore they are deemed to be denied.

108. Spire admits the allegations contained in Paragraph 108.

109. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 109 and therefore they are deemed to be denied.

110. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 110 and therefore they are deemed to be denied.

111. Spire denies the allegations contained in Paragraph 111.

112. Spire denies the allegations contained in Paragraph 112.

113. Spire denies the allegations contained in Paragraph 113.

114. Spire denies the allegations contained in Paragraph 114.

115. Spire denies that Gabehart retained, disclosed, or used any JGR Confidential Information and Trade Secrets for the benefit of Spire. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 115 and therefore they are deemed to be denied.

116. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 116 and therefore they are deemed to be denied.

117. Spire denies the allegations contained in Paragraph 117.

118. Spire denies the allegations contained in Paragraph 118.

119. Spire admits that a former JGR employee, Charles Donaldson, began employment with Spire in early January 2026, but denies that this hiring had any connection whatsoever to

Gabehart, his separation from JGR, or any of the conduct alleged in the Second Amended Complaint.

120. Spire admits that a former JGR employee, Charles Donaldson, began employment with Spire in early January 2026, but denies that this hiring had any connection whatsoever to Gabehart, his separation from JGR, or any of the conduct alleged in the Second Amended Complaint. Spire lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 120.

121. Spire denies the allegations contained in Paragraph 121.

122. Paragraph 122 references a document, which speaks for itself. Spire accordingly denies the allegations in Paragraph 122 to the extent they are inconsistent with that document. To the extent any further response is required, Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 122 and therefore they are deemed to be denied.

123. Paragraph 123 references a document, which speaks for itself. Spire accordingly denies the allegations in Paragraph 123 to the extent they are inconsistent with that document. To the extent any further response is required, Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 123 and therefore they are deemed to be denied.

124. Spire admits the allegations contained in Paragraph 124.

125. Spire admits it was aware that Gabehart had an Employment Agreement with JGR since no later than December 3, 2025, but denies any awareness of the specific provisions of that Employment Agreement, or JGR's interpretation of them, at that time. Spire further denies that Eric Shaffer informed Bill Anthony that Gabehart was subject to a noncompete, non-solicitation,

and confidentiality provisions during the phone call referenced in Paragraph 125. Spire similarly admits it was generally aware of the employment agreement between JGR and Gabehart no later than February 19, 2026, but denies specific knowledge of its terms at that time, and denies any implication of misconduct related thereto.

126. Spire denies the allegations in Paragraph 126.

127. Spire denies the allegations in Paragraph 127.

128. The allegations in Paragraph 128 of the Second Amended Complaint purport to characterize one or more documents, the contents of which speak for themselves. To the extent any further response is required, Spire admits that its Employment Agreement with Gabehart contains a noncompete provision and a non-solicitation provision. Spire denies any implication that the existence of these provisions in Gabehart's employment agreement with Spire establishes, suggests, or tends to show that Spire had knowledge of, or intended to induce a breach of, any contractual obligation Gabehart owed to Plaintiff Joe Gibbs Racing, LLC, or that Spire acted with wrongful intent or lacked a legitimate business justification in entering into its employment agreement with Gabehart.

129. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegation that a Spire employee informed a JGR employee that Gabehart is in charge of and/or significantly participating in Spire's competition strategy and decisions, and that allegation is therefore deemed denied. Spire denies that Gabehart is leading and/or participating in Spire's competition and strategy decision making process, denies that employees were instructed not to discuss the same, and denies that any role Gabehart performs for Spire violates his noncompete obligations as set forth in the Agreement. Paragraph 129 also calls for a legal conclusion, to which

no response is required; however, to the extent a response is required, those allegations are deemed denied. Spire denies any allegations contained in Paragraph 129 not expressly admitted herein.

130. Spire denies the allegations in Paragraph 130.

131. Paragraph 131 references Spire's website, which speaks for itself. Spire accordingly denies the allegations in Paragraph 131 to the extent they are inconsistent with that source. To the extent any further response is required, Spire admits Paragraph 131 accurately quotes Spire's website and the URL linked to Spire's website is accurate.

132. Spire admits it hired Gabehart as its Chief Motorsports Officer, but denies that any restrictive covenants apply to his employment with JGR and denies the remaining allegations in Paragraph 132. Spire specifically denies that it acquired or used JGR's trade secrets, denies that it obtained any competitive advantage from JGR information, denies that the Chief Motorsports Officer role requires Gabehart to perform the same or similar services as those he performed for JGR in the year prior, and denies that Spire's hiring of Gabehart was done to violate Gabehart's employment agreement with JGR and in order to use JGR's confidential information and trade secrets for Spire's benefit.

133. Spire admits that as of March 2, 2026, it was aware that Gabehart's employment agreement with JGR contained a noncompete provision which applied in certain circumstances. Spire specifically denies that it has directed Gabehart to perform services for Spire of the same kind or similar to those he provided for JGR in the prior year. The remaining allegations in Paragraph 133 call for a legal conclusion to which no response is required; to the extent a response is deemed required, Spire denies the same.

134. Spire admits that Gabehart is employed as its Chief Motorsports Officer. Spire denies that it induced or encouraged Gabehart to use any JGR information to help Spire or to

damage JGR's competitive standing in the NASCAR Cup Series, or for any other purpose. The remaining allegations in Paragraph 134 call for a legal conclusion to which no response is required; to the extent a response is deemed required, Spire denies the same.

135. Spire denies that it rejected any reasonable request from JGR for the return of the alleged confidential information and trade secrets and enforcement of the terms of the Employment Agreement between JGR and Gabehart.

136. Paragraph 136 calls for a legal conclusion, to which no response is required; to the extent a response is required, Spire denies the allegations in Paragraph 136. Spire specifically denies that it created an intentionally misleading title and role for Gabehart.

137. Denied.

## FIRST CLAIM FOR RELIEF
### (Misappropriation of Trade Secrets – Federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.* – Gabehart and Spire)

138. Spire restates and incorporates by reference all prior paragraphs of the Answer, Defenses, and Counterclaims in Response to Plaintiff's Second Amended Complaint.

139. Paragraph 139 contains a legal conclusion to which no response is required. Paragraph 139 also references a statute, which speaks for itself. Spire accordingly denies the allegations in Paragraph 139 to the extent they are inconsistent with that source. To the extent any further response is required, Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 139 and therefore they are deemed to be denied.

140. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 140 and therefore they are deemed to be denied.

141. Denied.

142. Spire denies it can obtain economic value from the JGR information at issue in this lawsuit and denies that the JGR information at issue in this lawsuit gives JGR a valuable

27

competitive advantage. Spire lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 142 and therefore they are deemed to be denied.

143. Spire denies that independent development of the JGR information at issue in this lawsuit would be impossible or extraordinarily difficult and expensive. Spire lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 143 and therefore they are deemed to be denied.

144. Denied as to Spire. To the extent the allegations in Paragraph 144 pertain to Gabehart, no response is required. To the extent any further response is required, Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 144, and therefore they are deemed to be denied.

145. Denied as to Spire. To the extent the allegations in Paragraph 145 pertain to Gabehart, no response is required. To the extent any further response is required, Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 145, and therefore they are deemed to be denied.

146. Spire denies the allegations contained in Paragraph 146.

147. Spire denies the allegations contained in Paragraph 147.

148. Spire denies the allegations contained in Paragraph 148.

149. The allegations in Paragraph 149 of the Second Amended Complaint purport to characterize one or more documents, the contents of which speak for themselves. To the extent any further response is required, Spire denies the allegations contained in Paragraph 149 as to Spire. Spire specifically denies any implication that the information described in Paragraph 149 is unique, protectable, or trade secrets. To the extent the allegations in Paragraph 149 pertain to

28

Gabehart, no response is required. To the extent any further response is required, Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 149, and therefore they are deemed to be denied.

150. Spire denies the allegations contained in Paragraph 150.

151. Spire denies the allegations contained in Paragraph 151.

152. Spire denies the allegations contained in Paragraph 152.

**SECOND CLAIM FOR RELIEF**
**(Misappropriation of Trade Secrets – North Carolina Trade Secrets Protection Act,**
**N.C. Gen. Stat. §§ 66-152, *et seq.* – Gabehart and Spire)**

153. Spire restates and incorporates by reference all prior paragraphs of the Answer, Defenses, and Counterclaims in Response to Plaintiff's Second Amended Complaint.

154. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 154 and therefore they are deemed to be denied

155. Denied.

156. Spire denies it can obtain economic value from the JGR information at issue in this lawsuit and denies that the JGR information at issue in this lawsuit gives JGR a valuable competitive advantage. Spire lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 156 and therefore they are deemed to be denied.

157. Denied.

158. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 158, and therefore they are deemed to be denied.

159. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 159, and therefore they are deemed to be denied.

160. Denied as to Spire. To the extent the allegations in Paragraph 160 pertain to Gabehart, no response is required. To the extent any further response is required, Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 160, and therefore they are deemed to be denied.

161. Denied as to Spire. To the extent the allegations in Paragraph 161 pertain to Gabehart, no response is required. To the extent any further response is required, Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 161, and therefore they are deemed to be denied.

162. Denied as to Spire. Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 162 that concern Gabehart. Spire denies the allegations in Paragraph 162 to the extent they implicate Spire.

163. Paragraph 163 contains legal conclusions, to which no response is required. To the extent any further response is deemed to be required, Spire denies that the JGR information at issue in this case, including those identified in subparagraphs (a) – (h), constitutes trade secrets.

164. Denied as to Spire. To the extent the allegations in Paragraph 164 pertain to Gabehart, no response is required. To the extent any further response is required, Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 164, and therefore they are deemed to be denied.

165. Denied as to Spire. To the extent the allegations in Paragraph 165 pertain to Gabehart, no response is required. To the extent any further response is required, Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 165, and therefore they are deemed to be denied.

166.    Paragraph 166 contains legal conclusions, to which no response is required.  To the extent any further response is deemed to be required, Spire specifically denies that JGR is entitled to any relief.

## THIRD CLAIM FOR RELIEF
### (Unfair Trade Practices – North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.* – Gabehart and Spire)

167.    Spire restates and incorporates by reference all prior paragraphs of the Answer, Defenses, and Counterclaims in Response to Plaintiff's Second Amended Complaint.

168.    The allegations in Paragraph 168 constitute legal conclusions, to which no response is required.  To the extent any further response is deemed to be required, Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 168, and therefore they are deemed to be denied.

169.    The allegations in Paragraph 169 constitute legal conclusions, to which no response is required.  To the extent any further response is deemed to be required, Spire denies the allegations in Paragraph 169.

170.    Spire denies the allegations contained in Paragraph 170.

171.    Spire denies the allegations contained in Paragraph 171.

## FOURTH CLAIM FOR RELIEF
### (Breach of Contract – Gabehart)

172.    Spire restates and incorporates by reference all prior paragraphs of the Answer, Defenses, and Counterclaims in Response to Plaintiff's Second Amended Complaint.

173.    The allegations in Paragraph 173 pertain to Gabehart, and thus no response is required from Spire.  To the extent any further response is required, the allegations in Paragraph 173 constitute legal conclusions, to which no response is required.  To the extent any further

31

response is deemed to be required, Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 173, and therefore they are deemed to be denied.

174. The allegations in Paragraph 174 pertain to Gabehart, and thus no response is required from Spire. To the extent any further response is required, the allegations in Paragraph 174 constitute legal conclusions, to which no response is required. To the extent any further response is deemed to be required, Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 174, and therefore they are deemed to be denied. Spire specifically denies that Gabehart disclosed any JGR information to Spire.

175. The allegations in Paragraph 175 pertain to Gabehart, and thus no response is required from Spire. To the extent any further response is required, the allegations in Paragraph 175 constitute legal conclusions, to which no response is required. To the extent any further response is deemed to be required, Spire lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 175, and therefore they are deemed to be denied. Spire denies that Gabehart breached Section 6 of the Agreement because, upon information and belief, Gabehart and Coach Gibbs agreed to meet and did meet on November 6, 2025, during which meeting Gabehart explained that his job duties at JGR were materially inconsistent with his reasonable expectations when he accepted the position of Director of Cup Series Competition and with the job description provided by JGR and Coach Gibbs prior to his start date. Coach Gibbs then indicated that JGR and Gabehart should voluntarily part ways. Except as expressly admitted, the allegations of this paragraph are denied. Spire also specifically denies that Gabehart disclosed any JGR information to Spire, and that Gabehart's services as Spire's Chief Motorsports Officer are services of the general type he provided to JGR as competition director. Spire further denies that JGR terminated Gabehart for cause.

176.    Spire denies the allegations contained in Paragraph 176.

## FIFTH CLAIM FOR RELIEF
### (Tortious Interference with Contract – Spire)

177.    Spire restates and incorporates by reference all prior paragraphs of the Answer, Defenses, and Counterclaims in Response to Plaintiff's Second Amended Complaint.

178.    The allegations in Paragraph 178 constitute legal conclusions, to which no response is required.  To the extent any further response is deemed to be required, Spire denies that any enforceable restrictive covenant exists that is applicable to Gabehart's employment with Spire. Spire lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 178, and therefore they are deemed to be denied.

179.    Spire denies the allegations contained in Paragraph 179.

180.    Spire denies the allegations contained in Paragraph 180.

181.    Spire denies the allegations contained in Paragraph 181.

182.    Spire denies the allegations contained in Paragraph 182.

183.    Spire denies the allegations contained in Paragraph 183.

184.    Spire denies the allegations contained in Paragraph 184.

## SIXTH CLAIM FOR RELIEF
### (Preliminary and Permanent Injunctive Relief)

185.    Spire restates and incorporates by reference all prior paragraphs of the Answer, Defenses, and Counterclaims in Response to Plaintiff's Second Amended Complaint.

186.    Spire denies the allegations contained in Paragraph 186.

187.    Spire denies the allegations contained in Paragraph 187.

188.    Spire denies the allegations contained in Paragraph 188.

189.    Spire denies the allegations contained in Paragraph 189.

190.    Spire denies the allegations contained in Paragraph 190.

**RESPONSE TO PLAINTIFF'S PRAYER FOR RELIEF**

Spire denies that it is liable to JGR on any Counts, denies that JGR is entitled to any of the relief sought as to Spire, and denies that JGR is entitled to recover any relief whatsoever. Spire prays that the Court enter judgment in its favor, award it the costs and attorneys' fees incurred in connection with this suit, under any applicable statute or law, and further award Spire any such other and further relief to which it may be entitled.

\*       \*       \*

Spire denies all allegations contained in the Second Amended Complaint (including headings and the Prayer for Relief) not specifically admitted herein, and it denies that Plaintiff is entitled to any of the relief they have requested.

**DEFENSES AND AFFIRMATIVE DEFENSES**

Spire asserts the following defenses and affirmative defenses without assuming the burden of proof as to any issue or element that otherwise rests with JGR. This statement of defenses and affirmative defenses is based on Spire's investigation to date, and Spire reserves the right to supplement or amend these defenses and affirmative defenses in the course of litigation.

**FIRST DEFENSE**

JGR's claims should be dismissed because JGR fails to state a claim for relief.

**SECOND DEFENSE**

JGR's claims should be dismissed, in whole or in part, because they have not suffered any injuries or damages legally or proximately caused by any act of Spire.

**THIRD DEFENSE**

JGR's claims are barred, in whole or in part, because Spire did not possess the requisite level of knowledge regarding Gabehart's alleged taking, use, or disclosure of JGR's alleged trade secrets or otherwise protectable confidential information.

## FOURTH DEFENSE

JGR's claims are barred, in whole or in part, because Spire did not request, take, use, acquire, misappropriate, or disclose any of JGR's alleged confidential information or trade secrets or otherwise protectable information.

## FIFTH DEFENSE

JGR's claims are barred, in whole or in part, because Spire is not liable vicariously or under the doctrine of respondeat superior for Gabehart's alleged misappropriation of trade secrets.

## SIXTH DEFENSE

JGR's claims are barred, in whole or in part, because the documents and/or other information allegedly misappropriated by Gabehart are not protectable trade secrets or otherwise protectable confidential information, including because they (1) have not been identified with sufficient particularity; (2) are not legally owned or licensed by JGR; (3) have not been subject to reasonable steps to protect their secrecy; (4) do not derive independent economic value from their secrecy; or (5) have been publicly disclosed or otherwise shared with third parties (including JGR's competitors); or (6) have been rendered obsolete or otherwise lost any value they may have allegedly had in the past.

## SEVENTH DEFENSE

JGR's claims are barred, in whole or in part, by the doctrines or laches, waiver and/or estoppel.

## EIGHTH DEFENSE

JGR's claims are barred, in whole or in part, because the relevant provisions of the JGR Employment Agreement, including restrictive covenants, are not enforceable under the circumstances here. In particular and without limiting the foregoing, those provisions (a) are rendered inapplicable by the agreement's own carve-out because JGR effectively terminated Gabehart without cause, (b) are unenforceable in equity due to JGR's prior material breach and unclean hands in failing to pay Gabehart and honor the negotiated carve-out, (c) are vague, overbroad, and not narrowly tailored to any legitimate business interest, and (d) in any event, have not been breached because Gabehart's Chief Motorsports Officer role at Spire does not involve providing "services of the general type of services" that Gabehart "provided to" JGR in the year prior to his departure from JGR.

## NINTH DEFENSE

JGR's claims are barred, in whole or in part, because Spire did not act with legal malice when it hired Gabehart as its Chief Motorsports Officer. Instead, Spire hired Gabehart in good faith and with the understanding that he was not subject to any enforceable non-compete, and reasonably relying on his assurances that he would honor obligations to JGR and not bring or use JGR information. Spire further implemented its own contractual and policy restrictions prohibiting acquisition or use of any JGR information.

## TENTH DEFENSE

JGR's claims are barred, in whole or in part, because Gabehart did not breach the JGR Employment Agreement when he joined Spire as its Chief Motorsports Officer.

## ELEVENTH DEFENSE

JGR's claims are barred, in whole or in part, because it cannot show the required elements for injunctive relief.

JGR's claims are barred, in whole or in part, to the extent JGR has failed to mitigate its alleged damages.

**THIRTEENTH DEFENSE**

JGR's claims are barred, in whole or in part, to the extent that any losses or damages were caused by its own actions or inactions.

**FOURTEENTH DEFENSE**

JGR's claims are barred, in whole or in part, to the extent that any losses or damages were caused by persons or entities other than Spire, and are not attributable to actions taken by or on behalf of Spire.

**FIFTEENTH DEFENSE**

JGR's claims are subject to offset to the extent Spire receives any monetary award in this action.

**SIXTEENTH DEFENSE**

JGR's requests for exemplary, treble, and punitive damages fail because Spire did not engage in willful or malicious misappropriation, did not act with fraud, malice, or oppression, and did not engage in conduct sufficient to support treble or punitive damages under applicable law.

**SEVENTEENTH DEFENSE**

JGR's UDTPA claim is barred because the alleged conduct does not rise to the level of "unfair" or "deceptive" acts in or affecting commerce and does not involve substantial aggravating circumstances beyond a typical business or employment dispute. To the extent JGR's UDTPA claim merely repackages trade secret or contract allegations, it is improper.

**EIGHTEENTH DEFENSE**

Any amount that might be awarded to JGR (which Spire denies is warranted) must be offset by amounts owed to Spire on its counterclaims and by any other payments or benefits that reduce JGR's alleged damages.

## NINETEENTH DEFENSE

JGR's claims for enforcement of any restrictive covenants and for injunctive or other equitable relief are barred, in whole or in part, by the doctrines of unclean hands and prior material breach. Before and during the time period relevant to this action, JGR materially breached its own obligations to Gabehart—including, on information and belief, failing to timely pay compensation owed and failing to honor the negotiated carve-out in his agreement—while simultaneously seeking to enforce restrictive covenants and to obtain injunctive relief based on that same agreement. JGR's material breaches excused any further performance by Gabehart, preclude JGR from equitably enforcing those covenants or obtaining injunctive relief against Spire, and otherwise bar or limit JGR's claims sounding in equity or premised on those restrictive covenants.

## TWENTIETH DEFENSE

JGR's claims are barred, in whole or in part, by the doctrine of promissory estoppel, because JGR made a clear and definite promise that, in exchange for Spire's release of its employee Robert Smith from his employment agreement and waiver of his non-compete so that Smith could immediately join JGR, JGR would, within a reasonable time, either (a) release a JGR employee selected by Spire from any contractual restrictions so that Spire could hire that person, or (b) pay Spire $100,000. Spire reasonably and foreseeably relied on that promise by performing its side of the bargain and suffered detriment when JGR accepted that benefit yet refused to release any JGR employee for Spire or pay the $100,000. JGR's claims are barred, in whole or in part, to the extent they are inconsistent with the promise on which Spire detrimentally relied.

38

## TWENTY-FIRST DEFENSE

JGR's misappropriation of trade secrets claim under the DTSA is barred, in whole or in part, to the extent it was made in bad faith and/or because it was made without factual support. If and when Spire prevails on JGR's DTSA claim, Spire will be entitled to recover an award of the costs, expenses, and fees (including reasonable attorney's fees) incurred in connection with its defense of JGR's allegations of misappropriation against Spire, and for such other and further relief as warranted at law or in equity.

## COUNTERCLAIMS

Pursuant to Federal Rule of Civil Procedure 13(a), Counterclaimant Spire Motorsports II, LLC ("Spire") countersues Counterdefendant Joe Gibbs Racing, LLC ("JGR").

## THE PARTIES

1. Spire is a limited liability company organized and existing under the laws of the State of North Carolina, with its principal place of business in Mooresville, North Carolina.

2. JGR is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Huntersville, North Carolina.

## JURISDICTION AND VENUE

3. To the extent this Court has jurisdiction over JGR's claims, this court has supplemental jurisdiction over Spire's counterclaims under 28 U.S.C. § 1367. In the event JGR's claims are dismissed, this Court will retain jurisdiction over Spire's counterclaims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Venue is proper in this district under 28 U.S.C. § 1391.

4. Spire incorporates by reference the undisputed or admitted portions of Paragraphs 1–190 of JGR's Second Amended Complaint.

39

## FACTUAL ALLEGATIONS

### Spire's Background and Business Operation

5. Spire is a professional motorsports organization that owns and operates multiple racing teams across several series, including a NASCAR Cup Series team with three entries and a NASCAR Craftsman Truck Series team with two full-time entries and one part-time entry. Spire also owns a High Limit Sprint Car Series team and partners with a USAC Silver Crown team, among others.

6. Spire was founded in 2018 by its then co-owners, Jeffrey Dickerson and T.J. Puchyr, as a NASCAR team owner and multi-series motorsports enterprise. Today, Spire is owned and controlled by Dickerson and TWG Motorsports, a division of TWG Global Holdings, LLC. Spire's owners also co-own related chassis, manufacturing, and fabrication businesses that support Spire, competitor teams in various series, and non-motorsports third party clients/customers.

7. Spire's roots trace back to Spire Sports & Entertainment ("SSE"), a talent management and sports consulting agency formed in 2010 by Dickerson and Puchyr. SSE represented high-profile NASCAR drivers and sponsors, consulted with nearly every team in the NASCAR industry, and helped direct many millions of dollars of sponsorship to NASCAR teams, including Joe Gibbs Racing ("JGR") and its manufacturer, Toyota.

8. Spire first entered the NASCAR Cup Series—the premier level of stock car racing—in 2019 with a single chartered entry purchased from the former Cup Series team Furniture Row Racing. As of the 2024 season, Spire has three full-time Cup Series charters.

9. Spire competes in the NASCAR Cup Series as a Chevrolet-aligned organization. Its Cup Series car bodies are manufactured by a series vendor according to a design and shape submitted to and approved by Chevrolet, its engines are supplied by Hendrick Motorsports, and it

participates in a technical alliance with Hendrick Motorsports and receives aerodynamics data, tools, and simulation support from General Motors.

<b><u>Dickerson and Gabehart's Relationship</u></b>

10. Dickerson first met Christopher Gabehart in 2009, when Dickerson was employed by Motorsports Management International, LLC ("MMI") and represented NASCAR driver Kyle Busch. In that year, Dickerson helped Gabehart obtain his first professional opportunity within the NASCAR industry with Kyle Busch Motorsports, and assisted Gabehart negotiate his first crew chief contract.

11. From the outset of their relationship, Dickerson understood Gabehart to be both a talented Late Model driver and a highly capable engineer, and Dickerson worked hard to recruit him because he believed Gabehart had a bright future in the sport.

12. Although Gabehart left Kyle Busch Motorsports in January of 2012 to join JGR as a race engineer, Dickerson and Gabehart have maintained a continuous professional and personal relationship. They have remained in regular contact through periodic phone calls, informal meetings in the NASCAR garage, and frequent meals together at or around racetracks. Dickerson and Gabehart's relationship is emblematic of the long-standing cross-team relationships that are common in the motorsports industry, where personnel frequently move among teams.

<b><u>Spire Attempts To Hire JGR Personnel Pursuant To The<br>Implied Trade Contract While Tension at JGR Persists</u></b>

13. JGR is one of many direct competitors of Spire in the NASCAR Cup Series.

14. Tension surrounding JGR's treatment of the No. 54 car and Ty Gibbs—Coach Gibbs' grandson—was no secret in the NASCAR community during the 2025 season.

15. JGR employees routinely criticized Ty Gibbs' conduct and performance during and before the 2025 season.

41

16. JGR treated Ty Gibbs differently than other drivers, and applied different, more lenient and permissive standards to him.

17. In 2025, at least one JGR driver criticized JGR's owners for giving preferential treatment to Ty Gibbs.

18. In the spring of 2025, following a series of pit-road and on-track incidents involving JGR's No. 54 car and Spire vehicles, Dickerson concluded that JGR could benefit from more experienced personnel working with Ty Gibbs.

19. JGR apparently itself recognized the same need, and in the Spring of 2025, Spire became aware that JGR was actively attempting to recruit one of Spire's car chiefs—Robert "Cheddar" Smith—to be the car chief for JGR's No. 54 car.

20. Smith was a high value employee with extensive knowledge of Spire's race performance methods, race evaluation processes, racecar setups, and racing strategy because of his role as a car chief for Spire.

21. JGR, via its agents, actively solicited Smith, including via text messages and phone calls.

22. JGR, via its agents, expressly requested that Smith provide a copy of his confidential agreement with Spire.

23. JGR, via its agents, expressly requested details about Smith's compensation and bonus structure with Spire.

24. Smith provided JGR or its agents with a copy of his confidential agreement with Spire, including his compensation and bonus details.

25. JGR used Smith's compensation and bonus details to make an offer to him that he would be willing to accept.

26. A car chief (Smith's role at Spire and immediately thereafter at JGR) is the individual responsible for ensuring that a car meets NASCAR's standards and specifications and is optimized for peak performance. Spire informed JGR that Smith was subject to a non-compete covenant in his employment agreement with Spire, which prohibited him from working for JGR until November 30, 2025 (with an option to extend through November 30, 2026, with written notice).

27. Nevertheless, given JGR's insistence on attempting to hire Smith, Dickerson agreed to negotiate regarding a potential release of Smith from his contract. Dickerson communicated with Gabehart in his then-role as JGR's Competition Director to discuss the possibility that Spire had key competition personnel—namely, Robert Smith—that could assist JGR and Ty Gibbs.

28. That communication led to what Dickerson understood to be a "trade" arrangement (the "Implied Trade Contract"). Specifically, Spire agreed to release Robert Smith from his active contract and waive his non-compete so that Smith could immediately join JGR, if Smith chose to accept JGR's offer. In exchange, JGR agreed to allow Spire to hire a JGR employee of Spire's choosing at a later date.

29. Gabehart conveyed this proposal to JGR's senior leadership, including Coach Gibbs and Heather Gibbs. At their direction, Gabehart agreed to the Implied Trade Contract in principle, but insisted that JGR retain the option to satisfy the Implied Trade Contract with a $100,000 payment instead of releasing a future employee.

30. Spire agreed to those terms and understood JGR would perform by the end of the 2025 season. Pursuant to the Implied Trade Contract, JGR extended an employment offer to Smith and Spire mutually released Smith from his contract. Smith began working for JGR as the car chief of the No. 54 car in April 2025.

43

31. Upon information and belief, JGR agreed to pay Smith more than it paid to long-time JGR employees in similar positions.

32. JGR used Spire's confidential business information, including information about how Smith was compensated, in order to make an offer to Smith that he was willing to accept.

33. After Smith's hiring, JGR (via Gabehart to a news media outlet) announced that Smith's hiring was a "great opportunity to get someone with that level of experience, know-how, tenure and demeanor."

34. Spire is informed and believes that JGR has leveraged Smith's knowledge, expertise, experience, and know how.

35. Spire is informed and believes that Smith has used information learned while he worked for Spire to assist and advise JGR.

36. At JGR, Smith occupies the same position he occupied at Spire.

37. At JGR, Smith performs the same duties, tasks, and services that he performed at Spire.

38. At JGR, Smith is a car chief, which is the same position he held at Spire.

39. After Smith became the car chief for JGR's No. 54 car, the No. 54 car saw marked improvements in performance.

40. The performance of the No. 54 car has continued to improve during the 2026 NASCAR season.

41. After or around Smith's hiring, Heather Gibbs—one of JGR's owners—expressed excitement and gratitude that he had been hired away from Spire and hired to work for JGR.

42. In June 2025, after Smith joined JGR, Dickerson asked JGR to release the prior crew chief for the No. 54 car—Tyler Allen—from his contract so that Spire could hire him,

pursuant to the Implied Trade Contract. Tyler Allen occupied a key competition-leadership position at JGR, consistent with the parties' shared understanding that any reciprocal trade would involve a competition-side employee comparable in stature and responsibility to Smith. JGR refused to do so.

43. In or around September or October, Dickerson again raised the Implied Trade Contract with JGR, this time asking whether JGR would agree to release a car chief—Ryan Towles—from his contract so Spire could hire him. As with Tyler Allen, Ryan Towles performed a key competition-leadership role for JGR. Yet again, JGR refused.

44. To date, JGR has refused to identify any JGR employee it would release from its non-compete agreement for purposes of employment by Spire.

45. JGR has failed to pay Spire $100,000 pursuant to the Implied Trade Contract.

46. On October 16, 2025, Dickerson and Gabehart met for dinner at a popular restaurant in Mooresville, North Carolina, often frequented by motorsports personnel, to catch up personally and professionally, discuss the state of the sport and their respective careers, and revisit the Implied Trade Contract.

47. During the meal, Gabehart expressed serious concerns about his situation at JGR and stated that he intended to have a candid conversation with Coach Gibbs to attempt to fix the situation and determine his long-term future.

48. Dickerson asked what Gabehart would do if he could not resolve his concerns at JGR. Gabehart responded that he hoped the situation could be resolved, but that if it could not, he would consider other opportunities. No agreement was reached during that dinner concerning any specific role for Gabehart at Spire or any particular JGR employee who might move to Spire under the Implied Trade Contract.

## Gabehart Leaves JGR, and Spire Offers To Hire Gabehart
## as its Chief Motorsports Officer

49. On or about November 11, 2025, Gabehart told Dickerson that he and JGR had agreed to a mutual separation on November 6, 2025, and that he was subject to a one-week non-compete restriction that would expire on November 13. Dickerson had not seen Gabehart's JGR employment agreement at that time and reasonably relied on Gabehart's description.

50. During ensuing discussions, Gabehart made clear that he was not interested in a lateral move or in performing the same duties he had at JGR. Instead, he expressed a desire for a new, different role that would present a broader challenge than his former crew chief and competition positions at JGR.

51. Gabehart's interests aligned with a role Dickerson had begun considering following his October 16 meeting with Gabehart. For a number of months, Dickerson had been hoping to create a new role that would relieve Dickerson of day-to-day management of Spire Motorsports. Dickerson decided to create a role of Chief Motorsports Officer to act as an owner's advocate, deploying a strategic vision in all aspects of Spire's business, including motorsports, executive level personnel management, and other business initiatives. In Dickerson's view, the Chief Motorsports Officer would be responsible for strategic planning, resource allocation across departments, infrastructure growth, growing and stewarding Spire's various technical partnerships, collaborating with TWG Motorsports, and interfacing with NASCAR at an executive level as an advocate for Spire.

52. On November 13, Dickerson provided Gabehart the general framework for an employment offer from Spire, including the nature of his responsibilities as Chief Motorsports Officer and a rough outline of compensation. No formal offer was extended or accepted at that time.

53. In mid-November 2025, Gabehart informed Dickerson that JGR had stopped paying his salary. This development reasonably led Dickerson to understand that JGR had ended their relationship and that if Spire wished to hire Gabehart, it would need to move promptly before other teams did so.

54. On December 2, 2025, Dickerson and Gabehart met again for lunch at a restaurant in Mooresville, near the Toyota Gazoo Racing Garage. The meeting took place in a public setting where they were visible to other motorsports personnel, and they discussed potential future opportunities at Spire consistent with the non-compete information Gabehart had shared.

55. On December 3, 2025, Spire's Bill Anthony received a telephone call from JGR's Eric Schaffer. During that call, Schaffer informed Anthony that JGR was aware of communications between Spire and Gabehart, and that JGR would consider its options. Schaffer did not address Gabehart's Employment Agreement or any non-compete provisions contained therein during this phone call.

### Spire Hires Gabehart

56. On January 27, Spire made an offer of employment as Chief Motorsports Officer to Gabehart.

57. Gabehart began working as Spire's Chief Motorsports Officer on February 16, 2026. On that same day, Gabehart executed a confidentiality agreement, stating that he agreed to maintain at all times the confidentiality of JGR's information and prohibiting him from disclosing such information to Spire, or using such information on Spire's behalf or for Spire's benefit.

### JGR Files This Lawsuit

58. JGR filed this lawsuit on February 19, 2026, alleging that Gabehart misappropriated its trade secrets.

59.     On February 24, 2026, JGR informed Spire by telephone that it intended to amend its lawsuit to name Spire as a Defendant and requested that Spire immediate fire Gabehart.  That phone call was the first time JGR ever informed Spire of JGR's contention that Spire's employment of Gabehart violated any non-compete restriction in Gabehart's employment agreement with JGR.

60.     That same day, JGR amended its Complaint to name Spire as a Defendant and allege that Spire is liable for Gabehart's misappropriation of trade secrets and for tortiously interfering with Gabehart's employment contract.

61.     Spire has repeatedly informed JGR and the Court that it has not found any evidence that Gabehart transmitted JGR's purported trade secrets or confidential information to other Spire employees.

62.     JGR commenced and has continued this lawsuit against Spire in bad faith and with knowledge that it lacks a good faith factual and/or legal basis for its claims against Spire.

63.     As JGR knows, Spire and Gabehart executed a non-disclosure agreement on February 16, 2026 prohibiting Gabehart from using or disclosing any JGR information to Spire.

64.     Spire has no interest in, and no need for, JGR's purported trade secrets or confidential information.

65.     As of the date this Answer was filed, JGR has not produced any of the trade secrets or confidential information it contends Spire misappropriated.

66.     As of the date this Answer was filed, JGR has not identified any evidence showing that Gabehart transmitted JGR's purported trade secrets or confidential information to other Spire employees.

**COUNT 1**
**Breach of Contract**

67.     Spire repeats and re-alleges each allegation of the preceding counterclaim paragraphs as if fully set forth herein.

68.     The Implied Trade Contract is an enforceable, oral contract between JGR and Spire under North Carolina law.

69.     Spire fully performed its obligations under the Implied Trade Contract by releasing Robert Smith from his employment contract with Spire and allowing Smith to accept JGR's offer of employment as JGR's car chief in or around April 2025.

70.     To date, JGR has refused to identify any competition-level JGR employee it would release from contractual restrictions for purposes of employment by Spire, and JGR has likewise failed to pay Spire the $100,000 alternative performance contemplated by the Implied Trade Contract.

71.     JGR's refusal either to release a JGR employee for employment by Spire or to pay Spire $100,000 constitutes a material breach of the Implied Trade Contract.

72.     As a direct and proximate result of JGR's breach, Spire has suffered damages, including in the amount of the value of the benefit JGR received from Spire's release of Smith and waiver of his non-compete without providing the bargained-for reciprocal consideration.

73.     Spire is entitled to recover damages in an amount to be determined at trial, together with pre- and post-judgment interest.

**COUNT 2**
**Breach of Implied Contract**

74.     Spire repeats and re-alleges each allegation of the preceding counterclaim paragraphs as if fully set forth herein.

49

75.     This claim is brought in the alternative to Count 1, Spire's breach of contract claim based on the Implied Trade Contract.

76.     Through their words, conduct, and course of dealing, Spire and JGR entered into an implied-in-fact contract—the Implied Trade Contract—pursuant to which (1) Spire would immediately release its employee, Robert Smith, from his employment agreement and waive his non-compete so as to allow Smith to accept a job offer from JGR; and (2) in return, JGR would, within a reasonable time either (a) release a JGR employee selected by Spire from any contractual restrictions so Spire could hire that person or (b) pay Spire $100,000.

77.     The Implied Trade Contract was supported by valid consideration: Spire surrendered valuable contractual and non-compete rights in Smith, enabling JGR to immediately hire him into a key competition-side role, and JGR agreed to provide reciprocal value in the form of either a comparably situated JGR employee or a $100,000 payment.

78.     The parties' conduct—including JGR's request for Smith, Spire's release and waiver, JGR's hiring and use of Smith, and JGR's insistence on reserving a $100,000 payment option—demonstrates mutual assent to the essential terms of the Implied Trade Contract.

79.     Spire fully performed its obligations under the Implied Trade Contract by releasing Smith from his contract, waiving his non-compete restrictions, and allowing him to immediately commence employment with JGR.

80.     JGR materially breached the Implied Trade Contract by failing to either (a) release a JGR employee selected by Spire from contractual restrictions so that Spire could employ that person; or (b) pay Spire $100,000, within a reasonable time.

81. As a direct and proximate result of JGR's breach, Spire has suffered damages, including the loss of the bargained-for employee or $100,000 payment and the value of the contractual and non-compete rights it surrendered.

## COUNT 3
### Unjust Enrichment

82. Spire repeats and re-alleges each allegation of the preceding counterclaim paragraphs as if fully set forth herein.

83. This unjust enrichment claim is pleaded in the alternative to Counts 1 and 2, Spire's claims for breach of express contract and breach of implied-in-fact contract.

84. Pursuant to the Implied Trade Contract, and at JGR's request, Spire released Smith from his employment agreement with Spire and waived Smith's non-compete obligations to allow Smith to immediately begin working for JGR.

85. By releasing Smith and waiving his non-compete, and therefore enabling Smith to join JGR as the car chief for its No. 54 car, Spire conferred a substantial benefit on JGR.

86. JGR accepted and enjoyed the benefits of Spire's actions by hiring Smith and using his expertise for JGR's competitive advantage in the NASCAR Cup Series.

87. JGR accepted and retained this benefit with the knowledge that Spire relinquished valuable contractual and non-compete rights in Smith for JGR's benefit and in reliance on JGR's commitment to release a comparable JGR employee for hiring by Spire or payment of $100,000.

88. Despite receiving and retaining this benefit, JGR has failed to provide Spire with any compensation or consideration. Under these circumstances, it would be unjust and inequitable for JGR to retain the benefits of Spire's release of Smith and waiver of his non-compete, without compensating Spire for the value of those benefits. As a direct and proximate result of JGR's unjust

51

enrichment, Spire has suffered damages including the value of the contractual and non-compete rights it surrendered in Smith and the value of the benefit wrongfully retained by JGR.

89.     Spire is entitled to restitution and/or disgorgement from JGR in an amount equal to the reasonable value of the benefits JGR has unjustly obtained and retained, in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

Wherefor, Spire prays as follows:

1.     That JGR's claims against Spire be dismissed with prejudice;

2.     That JGR take nothing by way of their Second Amended Complaint;

3.     That judgment be entered in favor of Spire regarding all causes of action alleged in the Second Amended Complaint;

4.     That judgment be entered in favor of Spire regarding all counterclaims alleged herein;

5.     That the Court award Spire its reasonable attorney's fees and expenses, including but not limited to attorney's fees and the costs of this suit, including as to JGR's claims, Spire's counterclaims, and/or as authorized under the DTSA; and

6.     That the Court award Spire such other and further relief as may be appropriate.

## **JURY DEMAND**

Spire demands a jury trial in this matter on all issues for which a right to jury trial exists.

Dated: June 24, 2026.

By: */s/ Joshua D. Davey*

Joshua D. Davey (N.C. Bar No. 35246)
Jason D. Evans (N.C. Bar No. 27808)
Lawrence J. Cameron (N.C. Bar No. 41922)
Troy C. Homesley, III (N.C. Bar No. 62148)
Anais M. Jaccard (N.C. Bar No. 58438)
Benjamin E. Whorf (N.C. Bar No. 64279)
**TROUTMAN PEPPER LOCKE LLP**
301 S. College St., 34th Floor
Charlotte, NC 28202
Telephone: (704) 916-1503
joshua.davey@troutman.com
jason.evans@troutman.com
lawrence.cameron@troutman.com
troy.homesley@troutman.com
anais.jaccard@troutman.com
ben.whorf@troutman.com

John S. "Evan" Gibbs III – Pro Hac Vice
**TROUTMAN PEPPER LOCKE LLP**
600 Peachtree St, NE #3000
Atlanta, GA 30308
Telephone: (404) 885-3093
evan.gibbs@troutman.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on June 24, 2026, I filed a true and exact copy of the foregoing *Answer, Defenses, and Counterclaims* through the Court's CM/ECF System, which automatically served copies of the document on all counsel of record.

*/s/ Joshua D. Davey*