# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

JOE GIBBS RACING, LLC,

     Plaintiff,

     v.

CHRISTOPHER GABEHART and SPIRE
MOTORSPORTS, LLC,

     Defendants.

Case No. 3:26-CV-00133-SCR-DCK

**PLAINTIFF'S MOTION TO
SUPPLEMENT THE PROTECTIVE
ORDER AND SUPPORTING
MEMORANDUM OF LAW**

Plaintiff Joe Gibbs Racing, LLC ("JGR") respectfully moves to amend the Protective Order (Dkt. 89) to provide additional protections for highly confidential trade secret materials. As discovery has progressed, the scope and sensitivity of the trade secret information necessary to prove JGR's claims have become clear, and the existing confidentiality tiers do not adequately address the risks posed by producing those materials in ordinary electronic discovery. Defendants have refused to agree to any trade secret specific protections, even though Spire's own trade secrets may be produced in this case and would be protected by the same protocol. To avoid delaying discovery, JGR has already provided Defendants access to a secure "virtual clean room" containing the 235 files deleted from Gabehart's cell phone and drives pursuant to the parties' agreed forensic protocol, including materials that Gabehart acquired without JGR's consent and that the Court found to be JGR trade secrets. *See* Dkt. 78 ¶¶ 25, 58, 60–62. Consistent with Judge Keesler's direction during the parties' telephonic hearing, JGR now moves to incorporate the proposed Trade Secret Addendum, attached as Exhibit A, into the Protective Order so that

1

discovery may proceed under safeguards calibrated to the sensitivity of the materials at issue.[1]

## I.     FACTUAL AND PROCEDURAL BACKGROUND

JGR's dispute with Defendants centers on the proper protocol for handling highly confidential trade secret materials in discovery. Following a discovery conference on March 24, 2026, the parties jointly submitted a stipulated Protective Order (Dkt. 89). The existing Protective Order establishes three tiers of protection for information designated (1) Confidential, (2) Highly Confidential – AEO (Attorneys' Eyes Only); or (3) Highly Confidential – OCO (Outside Counsel Only). *See* Dkt. 89 at 2, 4. The OCO designation—the most restrictive tier currently available— was intended to provide a baseline for protecting sensitive materials and accordingly limits access to outside counsel of record and prohibits disclosure to in-house counsel or party personnel. *Id.* at 2. Although the stipulated order addressed JGR's broader confidentiality concerns at the time of stipulation—e.g., preventing disclosure of JGR's highly confidential materials to Defendants' personnel—it did not establish a detailed framework for handling highly sensitive trade secret information that both JGR and Spire have already produced or will produce.

Indeed, on April 23, 2026, the Court issued preliminary injunction findings that underscore the need for such trade-secret-specific protections. The Court found that Gabehart took JGR documents and information—including materials the Court determined to be trade secrets under both the DTSA and North Carolina's TSPA—without JGR's consent. *See* Dkt. 78 ¶¶ 58, 60–62. The Court also found that Gabehart took photographs of JGR information from his computer screen using his personal cell phone and sent other JGR files to his personal devices and drives. *See id.* ¶¶ 18–21, 97. Further, Gabehart acknowledged deleting discoverable text messages with

---

[1] JGR submits this Motion at the direction of United States Magistrate Judge David C. Keesler following the Court's June 25, 2026, telephonic conference, during which the parties presented their respective positions on JGR's proposed Trade Secret Addendum and the Court instructed JGR to file this Motion to facilitate resolution of the dispute.

Spire co-owner Jeff Dickerson. *See id.* ¶¶ 32, 76 & n.12; *see also* Dkt. 62-1 at 5. Spire then hired Gabehart, and the Court found that at least some of his duties in that role overlap with his former role as JGR's Director of Competition. *See* Dkt. 78 ¶¶ 34–42.

In light of these findings, the Court concluded that JGR has made a clear showing that it will continue to suffer irreparable harm absent injunctive relief preventing further misappropriation of its trade secrets. *See id.* ¶¶ 109–10. The Court found that the balance of equities favors JGR because "there is great harm in the release of JGR's Confidential Information and trade secrets in a highly competitive racing industry." *Id.* ¶ 111. The Court also determined that the public interest is furthered by protecting confidential business information disclosed without authorization and by recognizing JGR's legitimate interest in sharing confidential information with employees without fear that it will land in the hands of a competitor. *Id.* ¶ 113.

Cognizant of such risks, JGR has continued to assess how to best handle its trade secrets throughout the present litigation. Specifically, JGR has identified certain categories of highly sensitive trade secrets—including racecar scans, racecar setups, aerodynamic configurations, simulation data, engineering data, source code, technical specifications, and testing data—that require additional safeguards beyond mere OCO designations. JGR raised the need for such safeguards by proposing a trade secret-specific discovery protocol with Defendants on June 12, 2026, less than one month after the Court entered the Protective Order. It then provided a corresponding draft of the proposed Trade Secret Addendum to Defendants on June 18, 2026.

JGR's proposed Trade Secret Addendum does not displace the three-tiered confidentiality structure of the Protective Order. Instead, it builds on that structure by introducing a fourth, more targeted tier—"Highly Confidential – Trade Secrets"—for exceptionally sensitive materials whose disclosure would create a substantial risk of serious competitive harm. *Id.* While the OCO

designation provides protection against disclosure to party personnel, it does not address the unique risks associated with highly sensitive trade secret materials. JGR therefore proposed the additional trade secrets designation to operate in tandem with the existing OCO framework and ensure the appropriate handling of such materials.

Under the current Protective Order, the OCO designation addresses *who* may access materials—restricting disclosure to outside counsel of record and prohibiting access by in-house counsel or party personnel. *See* Dkt. 89 § 6(c). But the OCO designation does not address *how* those materials are accessed, stored, or safeguarded against inadvertent transfer or duplication. OCO materials may be copied, reproduced, transmitted electronically, and analyzed using any software or tools available to counsel. There are no restrictions on how many copies may be made, where materials may be stored, or whether electronic copies may be transferred between devices or systems. The proposed Trade Secret Addendum addresses this gap. Like the OCO designation, it limits access to outside counsel of record and approved experts. Exhibit A § 6(e). But unlike the OCO designation, it sets forth specific measures governing *how* trade secret materials may be handled—including requirements for secure review environments (*id.* § 16(a)); prohibitions on copying and downloading (*id.*); note-taking restrictions (*id.* § 16(b)); deposition safeguards (*id.* § 16(d)); filing limitations (*id.* § 16(e)); destruction obligations (*id.* § 16(f)); and correspondence restrictions (*id.* § 16(g)). JGR's June 18 Proposal required that highly confidential trade secret materials be reviewed in a controlled, in-person environment on a secure, offline computer at a designated location and prohibited copying, downloading, or removing the materials from the designated controlled locations. Exhibit A at 9–11. The parties met and conferred regarding this proposal but were unable to reach agreement, as Defendants objected to any additional trade secret protections.

On June 23, 2026, the parties submitted competing letters to Judge Keesler outlining their respective positions. *See* Exhibits B–D. Judge Keesler set a June 25, 2026, telephonic conference to address this matter. After the parties further conferred, JGR offered an alternative proposal that contemplated a "virtual secured room"—i.e., a cloud-hosted virtual desktop environment configured to prevent copying, printing, downloading, external file transfer, and, to the extent technically practicable, screen capture or screen recording while addressing Defendants' logistical concerns with the initially proposed physical secured environment. Exhibit A at 9–10. Accordingly, the currently disputed proposal sets forth the following additions to the original Protective Order:

> (1) creates a fourth, more restrictive confidentiality tier—"Highly Confidential – Trade Secrets"—for extremely sensitive materials, including racecar setups, designs, aerodynamics, simulation data, engineering data, source code, technical specifications, and testing data (*Id.* § 1(a));

> (2) prohibits Outside Counsel of Record from discussing trade secret materials with their clients, unlike the OCO designation, which permits discussions of the "general substance" of materials (*Id.* § 2(c));

> (3) requires prior written disclosure to the Designating Party before trade secret materials may be disclosed to a Receiving Party's Outside Counsel of Record (*Id.* § 3, 6(e)(i));

> (4) narrows the categories of persons who may access trade secret materials by, for example, eliminating access for professional vendors, mediators, and settlement officers without express written consent of the Designating Party (*Id.* § 3, 6(e));

> (5) establishes a new expert disclosure procedure requiring a written request followed by a seven-day objection period and mandatory meet-and-confer process (*Id.* § 7, 15);

> (6) requires that trade secret materials be reviewed in a virtual "secured room"—a cloud-hosted virtual desktop configured to disable copy/paste, printing, and downloads; restrict access to individually credentialed authorized users protected by multi-factor authentication; and maintain a complete audit log of all access activity (*Id.* § 8, 16(a));

> (7) prohibits copying, removing, or transferring any portion of trade secret materials onto any recordable media or device (*Id.* § 8, 16(a));

5

(8) permits note-taking but prohibits copying the content of trade secret materials to such notes, and treats all notes as trade secret information that is not discoverable unless relied upon by an expert in forming an opinion (*Id.* § 8, 16(b));

(9) requires the Receiving Party to maintain a record of any individual who has inspected trade secret materials, available to the Producing Party upon request (*Id.* § 8, 16(c));

(10) establishes deposition procedures requiring two business days' advance written notice to use trade secret materials at depositions, retrieval of paper copies at the end of each day, and prohibition on providing copies to court reporters or attaching them to deposition transcripts (*Id.* § 8, 16(d));

(11) prohibits including excerpts or quotations of trade secret materials in pleadings, exhibits, expert reports, or other court documents, permitting only production number references (*Id.* § 8, 16(e));

(12) requires secure destruction of all paper copies and notes containing trade secret information when no longer necessary or when the litigation has concluded (*Id.* § 8, 16(f)); and

(13) prohibits including images or copies of trade secret materials in correspondence between the parties, permitting only production number references (*Id.* § 8, 16(g)).

*See* Exhibit A, generally. Defendants did not agree to JGR's alternative proposal.

Following the June 25, 2026, telephonic conference, the Court directed JGR to file this Motion to resolve the present dispute. In the interim, JGR has made 235 documents removed from Gabehart's phone and Google Drive—which include the trade secret documents at issue in the preliminary relief orders—available to Defendants using the alternative, virtual protocol described above. As discovery progresses, JGR anticipates making additional documents available pursuant to the virtual protocol and during the pendency of this motion.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 26(c) authorizes a court, for good cause shown, to issue a protective order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed *or be revealed only in a specified way*." Fed. R. Civ. P.

6

26(c)(1)(G) (emphasis added). "Courts have the inherent power to modify protective orders, including protective orders arising from a stipulation by the parties." *SmithKline Beecham Corp. v. Synthon Pharms.*, Ltd., 210 F.R.D. 163, 166 (M.D.N.C. 2002). In determining whether a party has shown good cause for modifying a protective order, courts in the Fourth Circuit consider four factors: "(1) the reason and purpose for the modification, (2) whether a party has alternative means available to acquire the information, (3) the type of protective order which is at issue, and (4) the type of materials or documents which are sought." *Bell v. Am. Int'l Indus.*, 627 F. Supp. 3d 520, 529–30 (M.D.N.C. 2022).

### III.  ARGUMENT

#### A.  Good Cause Exists to Amend the Protective Order.

Applying the four-factor test, JGR has demonstrated good cause for modification, as each of the Bell factors supports the requested amendment to the Protective Order.

***First,*** the types of materials at issue weigh strongly in favor of modification because the materials at issue consist of highly sensitive trade secrets, which are precisely the type of materials that justify the greatest levels of protection. *Schaefer v. Fam. Med. Centers of S.C., LLC*, No. 3:18-CV-02775-MBS, 2019 WL 2135675, at \*13 (D.S.C. May 16, 2019) ("A party's reliance on a protective order to maintain the confidentiality of trade secrets is likely greater than where business information is at issue.").

JGR's trade secrets, much like many trade secrets, represent years of proprietary development and significant investment. These materials present unique disclosure risks that cannot be mitigated by standard confidentiality designations. Unlike general confidential information, core trade secrets derive their value from strict secrecy and limited dissemination. *See* Dkt. 78 ¶ 54 (citing *Sysco Mach. Corp. v. DCS USA Corp.*, 143 F.4th 222, 228 (4th Cir. 2025) (noting a trade secret "derives independent economic value" from its secrecy)). Once disclosed—

even if inadvertently—the resulting competitive harm is immediate and irreversible. *See id.* (citing *Prysmian Cables & Sys. USA, LLC v. Szymanski*, 573 F. Supp. 3d 1021, 1044 (D.S.C. 2021) ("[t]he loss of even a single trade secret is irreparable harm") (citation and quotations omitted)). In the context of modern electronic discovery, the risk is not hypothetical: highly technical materials can be easily copied, stored, and transmitted in ways that are difficult to detect or control. The existing Protective Order, including its OCO designation, does not address these risks. As such, courts in this district have routinely approved heightened protections—including secure review protocols—for precisely these types of materials. *See, e.g.*, *The Recon Group LLP v. Lowe's Home Centers, LLC*, No. 5:23-cv-163-KDB-DCK (W.D.N.C. Jan. 3, 2025) (Exhibit E, Protective Order) (implementing similar protocol in trade secrets action); *see also Bridgetree, Inc. v. Red F Marketing, LLC*, No. 3:10-cv-00228-FDW, 2013 WL 443698, at *23–24 (W.D.N.C. Feb. 5, 2013). JGR's proposed Trade Secret Addendum fits squarely within this well-established framework. Accordingly, JGR's motion does not amount to a request for extraordinary relief, and this factor favors the proposed Trade Secrets protocol.

Although Spire is opposed to the protocol, it could avail itself of the same protections for its own trade secret documentation. For example, JGR has requested Spire to produce certain race-by-race setups and car scans for each of its three cars in the NASCAR Cup Series. These materials contain significant competitive information necessary to understand the extent to which JGR's trade secrets have been misappropriated. This is the kind of information the Trade Secrets protocol is designed to protect. Third parties that maintain documents worthy of the same protections could similarly avail themselves of the virtual review protocol.

***Second,*** in light of the nature of materials at issue, the reason and purpose for the requested modification is clear: To protect JGR's most sensitive trade secrets from the irreparable harm that

would result from their disclosure. The existing Protective Order, however, leaves a material gap with respect to the protection of JGR's most sensitive trade secrets—a risk that JGR cannot leave to chance. While the current Protective Order includes an "Outside Counsel Only" designation that restricts *who* may access certain materials, it does not implement a precise framework for *how* those materials may be accessed, stored, or safeguarded to prevent inadvertent disclosure, transfer or duplication. *Supra* Section I. That distinction is critical here. For highly sensitive trade secrets, a significant risk arises from the ease with which such materials can be copied, transmitted, or retained once produced—particularly in electronic form. Indeed, courts have long recognized instances where a party's counsel has violated a protective order by losing, misplacing, or improperly disseminating copies of confidential documents, even when such mishaps may have occurred inadvertently or through mere negligent handling. *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 775–76, 784 (9th Cir. 1983).

JGR's proposed modification directly addresses that gap through narrowly tailored, practical safeguards. The Trade Secret Addendum provides thirteen specific provisions: a fourth confidentiality tier that identifies trade secrets warranting heightened protection (item 1); restrictions on client communications that prevent even general-substance discussions unlike OCO (item 2); prior written disclosure requirements and narrowed access categories that ensure the Designating Party knows who will view its trade secrets (items 3–4); expert disclosure procedures that allow objection before disclosure occurs (item 5); a virtual secured room requirement, prohibitions on copying and downloading, and note-taking restrictions that prevent materials from leaving the controlled environment (items 6–8); inspection record requirements that create accountability for access (item 9); deposition safeguards, filing limitations, and correspondence restrictions that prevent trade secret content from appearing in the litigation record or party

9

communications (items 10–11, 13); and destruction obligations that ensure materials do not persist after the litigation concludes (item 12).

It is important to note, however, that JGR seeks to supplement—not replace—the existing framework. Each of these provisions is necessary to address a specific gap left by the existing OCO framework. These measures are specifically tailored to the unique risks associated with highly sensitive technical materials and are designed solely to prevent inadvertent disclosure, not to restrict legitimate discovery. This effort to address *how* materials are handled—in addition to *who* may access them—provides a compelling and legitimate basis for modification. Accordingly, this factor weighs in favor of modifying the Protective Order.

***Third,*** the second Bell factor also strongly supports modification because JGR's proposal preserves—and in practice has already provided—Defendants access to certain, known trade secrets. Although this factor is often analyzed in the context of relaxing confidentiality restrictions, it likewise favors modification here because JGR's proposed protocol ensures Defendants have a practical and effective means to review the materials at issue, while simultaneously safeguarding their proprietary nature. Indeed, JGR does not seek to limit access to relevant discovery. To the contrary, JGR has already made highly sensitive trade secret materials available to Defendants through the secure protocol at issue here.[2] This motion simply asks the Court to approve of the mechanisms already set up and the additional requested procedural protections.

The proposed safeguards are reasonable and responsive to Defendants' concerns. JGR's proposal—a virtual secure review environment—provides remote access to materials in a controlled setting with technical restrictions that prevent copying, downloading, or unauthorized

---

[2] Importantly, JGR is not asking the Court to impose a novel or untested framework. JGR has already implemented the virtual secured room protocol and has made its highly confidential trade secret materials available to Defendants' counsel using these safeguards.

transmission. This approach eliminates the need for travel, reduces cost, and directly addresses Defendants' stated logistical concerns with an on-site secure environment. Authorized counsel and experts can access materials remotely at their convenience, without the need to travel to a physical location. The audit log further ensures accountability while the technical restrictions prevent inadvertent copying or transmission. The proposed protocol also expressly permits disclosure to qualified experts. Under the Addendum, Defendants may retain experts to review and analyze trade secret materials upon notice, subject to a standard objection procedure that places the burden on the designating party. This ensures that Defendants will have access not only to the materials themselves, but also to the technical expertise necessary to understand and respond to them.

Nor will it cause delay. Defendants have argued that a clean room would take "weeks" to set up and would be "incompatible with the current schedule." Exhibit C. But that objection was directed at JGR's *initial* proposal for an on-site physical review room—not the virtual secured room now at issue, which requires no physical setup, no travel, and no scheduling coordination. *Id.* The virtual room is already operational, Defendants have been provided access, and there is nothing left to "set up." Further, the parties have also discussed the need to potentially add tools for reviewing certain trade secrets, including the requested scans. Although Defendants are currently refusing to produce the scans, JGR has confirmed, with an eDiscovery vendor, the technical feasibility of implementing scan review tools in a virtual clean room. Accordingly, the protocol in no way impairs Defendants' ability to litigate their case.

By contrast, JGR has no alternative means to protect its trade secrets from inadvertent disclosure or dissemination. Defendants can fully access the information through the proposed safeguards, providing an alternative means to review the information; but JGR lacks any comparable alternative to prevent the inadvertent transmission or loss of its most sensitive

11

materials once produced. Accordingly, the established means to access the disputed materials weighs in favor of modification.

Finally, the nature of the existing protective order favors modification because the existing Protective Order expressly contemplates further refinement. The Protective Order at issue was entered at an early stage of the case and, by its terms, permits the parties to seek additional protections via modification to the Order. *See* Dkt. 89 ¶ 14. JGR's request is therefore not a departure from the existing framework, but a refinement of it—consistent with the parties' expectations that the Order could be tailored to address specific categories of sensitive information as they arise. Moreover, "[c]ourts grant blanket protective orders less deference than protective orders entered pursuant to a finding that the information is subject to Rule 26(c) protection." *Schaefer*, 2019 WL 2135675, at *13. Here, the proposed modification is expressly contemplated within the guardrails of Rule 26. This too favors amendment.

### B. The Parties Have Agreed to an Expedited Briefing Schedule for the Motion.

Recognizing the expedited nature of this case and the need to quickly resolve the foregoing dispute pending ongoing discovery, the parties have conferred and agreed to the following briefing schedule: Responses due on July 10, 2026, and replies due on July 15, 2026. JGR respectfully requests that the Court enter an order adopting these agreed deadlines.

### IV.  CONCLUSION

For the foregoing reasons, JGR requests that the Court enter an Order modifying the Protective Order (Dkt. 89) to incorporate the Trade Secret Addendum attached hereto as Exhibit A, thereby establishing a protocol for handling materials subject to a "highly confidential – trade secrets" designation, including a secured room protocol for reviewing such materials.

This the 1st day of July, 2026.　　　　　　　　**KING & SPALDING LLC**

/s/ *Danielle T. Williams*
Danielle T. Williams
dwilliams@kslaw.com
N.C. Bar No. 23283
300 South Tryon Street, Suite 1700
Charlotte, NC 28202
Thomas M. Melsheimer – *Pro Hac Vice*
tmelsheimer@kslaw.com
Chad B. Walker – *Pro Hac Vice*
cwalker@kslaw.com
Tracea Rice – *Pro Hac Vice*
trice@kslaw.com
Alexandra Moore - *Pro Hac Vice*
almoore@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201

**PARKER POE ADAMS & BERNSTEIN**
Sarah F. Hutchins
N.C. Bar No. 38172
Tory Ian Summey
N.C. Bar No. 46437
Keith M. Weddington
N.C. Bar No. 14352
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com

*Attorneys for Joe Gibbs Racing, LLC*

13

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(b), the undersigned counsel hereby certifies that they have conferred in good faith with counsel for the opposing parties regarding the relief sought in this Motion. On June 25, 2026, the parties further participated in a telephonic conference before United States Magistrate Judge David C. Keesler to address the present dispute. After hearing from the parties, Judge Keesler directed JGR to file the present Motion so that the Court may resolve the issue.

This the 1st day of July, 2026

**KING & SPALDING LLC**

/s/*Danielle T. Williams*
Danielle T. Williams
dwilliams@kslaw.com
N.C. Bar No. 23283
300 South Tryon Street, Suite 1700
Charlotte, NC 28202
Thomas M. Melsheimer – *Pro Hac Vice*
tmelsheimer@kslaw.com
Chad B. Walker – *Pro Hac Vice*
cwalker@kslaw.com
Tracea Rice – *Pro Hac Vice*
trice@kslaw.com
Alexandra Moore - *Pro Hac Vice*
almoore@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201

**PARKER POE ADAMS & BERNSTEIN**
Sarah F. Hutchins
N.C. Bar No. 38172
Tory Ian Summey
N.C. Bar No. 46437
Keith M. Weddington
N.C. Bar No. 14352
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Bank of America Tower

14

620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com

*Attorneys for Joe Gibbs Racing, LLC*

15

**ARTIFICIAL INTELLIGENCE CERTIFICATION**

No artificial intelligence was employed in doing the research for the preparation of this Memorandum, with the exception of the standard artificial intelligence embedded in Westlaw. Every statement and every citation to authority contained in this Memorandum has been checked by an attorney in this case as to the accuracy of the proposition for which it is offered.

This the 1st day of July, 2026

**KING & SPALDING LLC**

/s/ *Danielle T. Williams*
Danielle T. Williams
dwilliams@kslaw.com
N.C. Bar No. 23283
300 South Tryon Street, Suite 1700
Charlotte, NC 28202
Thomas M. Melsheimer – *Pro Hac Vice*
tmelsheimer@kslaw.com
Chad B. Walker – *Pro Hac Vice*
cwalker@kslaw.com
Tracea Rice – *Pro Hac Vice*
trice@kslaw.com
Alexandra Moore - *Pro Hac Vice*
almoore@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201

**PARKER POE ADAMS & BERNSTEIN**
Sarah F. Hutchins
N.C. Bar No. 38172
Tory Ian Summey
N.C. Bar No. 46437
Keith M. Weddington
N.C. Bar No. 14352
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202

sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com

*Attorneys for Joe Gibbs Racing, LLC*

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that the foregoing **PLAINTIFF'S MOTION TO SUPPLEMENT THE PROTECTIVE ORDER AND SUPPORTING MEMORANDUM OF LAW** was electronically filed with the Clerk using the CM/ECF system which will automatically send notice and serve same upon counsel of record via the Court's electronic case filing system.

This the 1st day of July, 2026

**KING & SPALDING LLC**

/s/ *Danielle T. Williams*
Danielle T. Williams
dwilliams@kslaw.com
N.C. Bar No. 23283
300 South Tryon Street, Suite 1700
Charlotte, NC 28202
Thomas M. Melsheimer – *Pro Hac Vice*
tmelsheimer@kslaw.com
Chad B. Walker – *Pro Hac Vice*
cwalker@kslaw.com
Tracea Rice – *Pro Hac Vice*
trice@kslaw.com
Alexandra Moore - *Pro Hac Vice*
almoore@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201

**PARKER POE ADAMS & BERNSTEIN**
Sarah F. Hutchins
N.C. Bar No. 38172
Tory Ian Summey
N.C. Bar No. 46437
Keith M. Weddington
N.C. Bar No. 14352
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202

18

sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com

*Attorneys for Joe Gibbs Racing, LLC*

19