# Exhibit B

JOE GIBBS RACING, LLC,

      Plaintiff,

      v.

CHRISTOPHER GABEHART and SPIRE
MOTORSPORTS II, LLC,

      Defendants.

Case No. 3:26-CV-00133-SCR-DCK

**PLAINTIFF'S SUMMARY OF
DISCOVERY DISPUTES FOR
JUNE 25, 2026 TELEPHONE
<u>CONFERENCE</u>**

Plaintiff Joe Gibbs Racing, LLC ("JGR") submits this summary of the following two issues to be discussed at the upcoming telephonic conference: (1) the parties' dispute regarding third-party subpoenas served on certain of Defendant Spire Motorsports II, LLC's ("Spire") personnel and (2) JGR's request to implement a trade secret-specific discovery protocol.

## I.    JGR'S THIRD PARTY SUBPOENAS ARE RELEVANT AND PROPORTIONAL.

The parties conferred on June 12 and 19, 2026 regarding JGR's 21 subpoenas to Spire competition personnel—one team manager, three crew chiefs, four car chiefs, eleven engineers, two spotters, and one foreman. JGR offered to withdraw six specific subpoenas. Ex. A, Email Excerpts. Spire rejected this and counter-proposed limiting discovery to the three crew chiefs.

The 21 subpoenas target personnel that likely possess evidence of Gabehart's competition-related activities at Spire. These individuals have a direct connection to the breach of contract, tortious interference, and trade secrets misappropriation claims. The recipients were selected based on Gabehart's activities at JGR as it is likely he would similarly interact with these roles at Spire regarding competition (thereby breaching his contract and violating the Court's injunction), and JGR's trade secrets would flow through them. Ex. B, Brown Fourth Decl. ¶¶ 10–25. The subpoenas are non-duplicative because they target operational personnel who implement competition information, whereas JGR's earlier subpoenas targeted leadership (president, co-owner, HR,

COO) and drivers. For example, the team manager "serves as a coordinating link between senior competition leadership and the individual car teams," and this role "can implement or facilitate the implementation of confidential processes." *Id.* ¶¶ 10–11. The same is true for crew chiefs (*Id.* ¶¶ 11–13), car chiefs (*Id.* ¶¶ 14–15), engineers (*Id.* ¶¶ 16–17), spotters (*Id.* ¶¶ 18–19), and shop foreman (*Id.* ¶¶ 20–21). Spire's argument that the subpoenas should be limited to "leadership" ignores this collaborative reality of NASCAR competition teams. *Id.* at ¶¶ 5–7.

Spire argues that Gabehart is the "sole material source" of evidence, but these individuals are likely to have evidence outside Gabehart's possession related to both trade secret and breach of contract issues. For example, other competition personnel are likely to text each other seeking to implement strategies based on JGR trade secrets derived from Gabehart. JGR's need for this discovery is heightened by Gabehart's admitted deletion of seven December 2025 texts with Spire co-owner Jeff Dickerson, and only Dickerson—for which he has provided no innocent explanation—and Dickerson's deletion of his texts with Gabehart. Gabehart's practices also illustrate the necessity for capturing personal devices for personnel that work so often at racetracks. Additionally, competition personnel are likely to communicate with each other to implement Gabehart's competition instructions without copying Gabehart.

Further, Spire's attempt to avoid the subpoenas in light of the ongoing forensic review is a red herring. Even complete forensic access would not eliminate the need for discovery from the targeted recipients at Spire. Finally, Spire's cited authorities are distinguishable as they involved subpoenas to uninvolved individuals or duplicative records.

## II. JGR＇S REQUEST FOR TRADE SECRET-SPECIFIC DISCOVERY PROTOCOL

On June 12, 2026, JGR raised with Defendants' counsel a trade secret protocol to protect highly sensitive trade secret information in discovery. JGR accordingly provided a draft Trade

Secret Addendum to the parties' Protective Order (Dkt. 89) ("Proposed Addendum," Ex. C) on June 18, 2026. After conferring the next day, Defendants refused to agree to any such protocol.

The Addendum proposed a protocol where materials designated as trade secrets would be reviewed only by outside counsel and their experts within "a secured room without Internet access or network access to other computers," and reviewers would be unable to copy, remove, or transcribe protected information outside the room. *Id.* at 9–10. As a compromise, JGR proposes a similar electronic "secured room"—i.e., a cloud-hosted virtual desktop configured to disable copy/paste, printing, and downloads; restrict access to authorized counsel and experts; and maintain a complete audit log. This Court, and others in this district, have approved similar protocols for highly sensitive materials. *See, e.g.*, *The Recon Group LLP v. Lowe's Home Centers, LLC*, No. 5:23-cv-163-KDB-DCK (W.D.N.C. Jan. 3, 2025) (Ex. D, Protective Order) (implementing similar protocol in trade secrets action); *see also Bridgetree, Inc. v. Red F Marketing, LLC*, No. 3:10-cv-00228-FDW, 2013 WL 443698, at *23–24 (W.D.N.C. Feb. 5, 2013).

Defendants' objections to such protocols lack merit. JGR decided additional protections were warranted after better understanding the scope of documents requiring protection, and the proposal comes well in advance of any qualifying production. Further, the materials at issue—racecar setups, aerodynamic configurations, analytics, and the like—reflect years of proprietary development, and once disclosed, the resulting harm cannot be undone. Spire and third parties will similarly benefit from these same protections for their own trade secrets. These protections do not imply any intentional misconduct by counsel, but guard against inadvertent disclosure—a risk inherent in discovery involving sensitive technical information. Accordingly, JGR requests that the Court approve either the physical or electronic secured room protocol or alternatively order the parties to meet and confer within five (5) business days to finalize a mutually acceptable protocol.

# EXHIBIT A

# Tracea Rice

**From:** Chad Walker
**Sent:** Friday, June 19, 2026 12:39 PM
**To:** Troy.Homesley; Alex L. Moore; EXT - Charlie Middlebrooks; cdavis; Tracea Rice; Danielle Williams; EXT - Sarah Hutchins; EXT - Tory Summey; EXT - Keith Weddington; EXT - Madelyn Candela; Tracea Rice
**Cc:** Wiles, Spencer; atucker; Whorf, Benjamin; Jaccard, Anais M.; Tincher, Moses M.; wmiller; Evan.Gibbs; Davey, Joshua D.; Lawrence.Cameron
**Subject:** RE: JGR/Gabehart - Draft ESI Protocol

Troy,

In advance of our meet and confer call this afternoon, and pursuant to the Court's guidance that the parties attempt to resolve the dispute over the twenty-one third-party subpoenas, JGR is prepared to propose a compromise.

In the spirit of compromise and to narrow the issues before the Court, if Spire agrees, JGR is willing to withdraw six (6) of the twenty-one subpoenas, reducing the total from twenty-one to fifteen. Specifically, JGR proposes to withdraw the subpoenas served on the following individuals:

1. Griffin Rider (Car Chief, No. 71—McDowell)
2. Adam Sturgill (Race Engineer)
3. Garett Peterson (Race Engineer)
4. Jonathan Branzelle (Race Engineer)
5. Collin Markle (Second Engineer and Tire Specialist)
6. Michael Fisher (Spotter, No. 71—McDowell)

This proposal is made without prejudice to JGR's right to serve additional third-party subpoenas in the future should the circumstances and evidence warrant.

For reference, the table below reflects the individuals we proposed dropping and the coverage provided for the various categories of personnel.
Please let us know whether Spire is amenable to this compromise so we can advise the Court accordingly, and we are also happy to discuss on our call.

| # | Individual | Position | Proposed to Drop |
|---|---|---|---|
| | **COMPETITION MANAGER (1)** | | |
| 1 | Kevin "Bono" Manion | Competition Manager | |
| | **CREW CHIEFS (3)** | | |
| 2 | Ryan Sparks | Crew Chief, No. 7 (Suarez) | |
| 3 | Travis Peterson | Crew Chief, No. 71 (McDowell) | |
| 4 | Luke Lambert | Crew Chief, No. 77 (Hocevar) | |
| | **CAR CHIEFS (2 remaining)** | | |
| 5 | Robbie Fairweather | Car Chief, No. 7 (Suarez) | |
| 6 | Griffin Rider | Car Chief, No. 71 (McDowell) | Drop |

| | | | |
|---|---|---|---|
| 7 | Dan Brzozowski | Car Chief, No. 77 (Hocevar) | |
| | **RACE ENGINEERS (5 remaining)** | | |
| 8 | Roy Gangdal | Vehicle Dynamics Simulation Engineer | |
| 9 | Adam Sturgill | Race Engineer | Drop |
| 10 | Nick Sowa | Head Engineer | |
| 11 | Garett Peterson | Race Engineer | Drop |
| 12 | Jonathan Branzelle | Race Engineer | Drop |
| 13 | Easton Price | NCS Vehicle Dynamics Engineer | |
| 14 | Collin Markle | Second Engineer and Tire Specialist | Drop |
| 15 | Zach Braun | Race Engineer | |
| | **DESIGN ENGINEERS (3)** | | |
| 16 | Wesley Gannt | Engineering Design Manager | |
| 17 | Luke Huffman | Design Engineer | |
| 18 | Jake Scinta | Design Engineer | |
| | **SPOTTERS (1 remaining)** | | |
| 19 | Michael Fisher | Spotter, No. 71 (McDowell) | Drop |
| 20 | Tyler Green | Spotter, No. 77 (Hocevar) | |
| | **VEHICLE OPTIMIZATION (1)** | | |
| 21 | Doug Powers | Vehicle Optimization Specialist | |

2

# EXHIBIT B

JOE GIBBS RACING, LLC,

               Plaintiff,

      v.

CHRISTOPHER GABEHART and SPIRE MOTORSPORTS II, LLC,

               Defendants.

## FOURTH DECLARATION OF WALTER BROWN

Walter Brown states as follows:

1.      I am an adult over the age of 18 years old and competent to testify.

2.      I incorporate by reference my prior declarations filed in this matter—specifically, my First Declaration (Dkt. 9-2), Second Declaration (Dkt. 35-3), and Third Declaration (Dkt. 71-1)—as if fully set forth herein.

3.      As explained in my prior declarations, I have worked for Joe Gibbs Racing, LLC ("JGR") since December of 2006. Since December 1, 2025, I have served as JGR's Competition Director, and I previously served as JGR's Competition Director from 2016 through 2023.

4.      As Competition Director, I am responsible for, among other things, overseeing and coordinating competitive operations across JGR's NASCAR Cup Series and O'Reilly Auto Parts Series programs. In that role, I work closely with the categories of competition personnel that I understand to be the subject of the subpoenas at issue: crew chiefs, drivers, engineers, analysts, pit crew leadership, and senior management.

1

5. As a result, based on my nearly two decades of experience at JGR and my role as Competition Director, I am personally familiar with how NASCAR Cup Series teams are organized, how competition personnel interact, and how confidential technical and strategic information typically flows within a racing organization.

6. In NASCAR Cup Series racing, race performance depends on integrated collaboration across multiple disciplines. Competitive success results from the coordinated work of engineers, crew chiefs, car chiefs, spotters, shop personnel, and leadership working together throughout the race week and on race day.

7. Information in a NASCAR team flows laterally, upward, and downward. Confidential technical data—including setup files, simulation outputs, tire strategies, and post-race analytics—is not confined to the executive level. It is communicated to and from, implemented by, and operationalized through engineers, crew chiefs, and car chiefs who translate that information into actual car performance on the track.

8. As Competition Director at JGR, Christopher Gabehart interfaced directly and regularly with engineers, crew chiefs, car chiefs, spotters, and shop leadership concerning competition issues, among other things. Through these interactions he implemented competitive strategy and operationalized JGR's trade secrets and confidential technical information.

9. Each of these categories of personnel at issue here: (1) is one with which Gabehart regularly interfaced concerning competition issues while at JGR; (2) would be in a position to operationalize JGR's trade secrets and confidential information to aid in Spire's competition efforts; or (3) could have knowledge of whether Gabehart is providing competition-related input at Spire.

2

10. A team manager or competition manager coordinates logistical and operational aspects of the competition program, working directly with the Competition Director and crew chiefs. In a NASCAR organization, the team manager typically serves as a coordinating link between senior competition leadership and the individual car teams. This role involves regular coordination with personnel across the competition program and participation in the implementation of strategic and operational decisions. Gabehart interfaced with the team manager concerning competition issues while at JGR and would likely interface with that role in performing competition-related functions at Spire.

11. The team manager can implement or facilitate the implementation of confidential processes because this role often involves coordinating workflows, ensuring that action items from competition meetings get executed, and managing operational consistency across the team—the type of activities through which new methodologies or practices are implemented across the team.

12. Crew chiefs are involved with setup decisions, call race strategy, and communicate with drivers throughout practice, qualifying, and the race. At JGR, Gabehart worked closely with crew chiefs regularly, discussing setup files, post-race analyses, and simulation data. Gabehart interfaced with the crew chiefs concerning competition issues while at JGR and would likely interface with that role in performing competition-related functions at Spire.

13. Crew chiefs have direct authority to implement confidential information. If a crew chief receives input on setup philosophy, measuring procedures, quality control processes, or performance evaluation frameworks, that crew chief translates that information into actual car configuration and race-day decisions. Spire's crew chiefs are a category of competition personnel through whom any competition-related knowledge Gabehart possesses would likely be deployed.

3

14. Car chiefs are responsible for the physical preparation and setup of the racecar. They work closely with the crew chief and engineers to ensure that setup decisions are accurately implemented on the car itself. Car chiefs participate in setup measuring, teardown procedures, and quality control processes—all areas that involve confidential technical information and methodology. Senior competition personnel interact with car chiefs to ensure that setup procedures and measuring protocols are being properly executed. Gabehart interfaced with the car chiefs concerning competition issues while at JGR and would likely interface with that role in performing competition-related functions at Spire.

15. Car chiefs have the practical ability to operationalize confidential information because they are the individuals who physically configure the car according to setup specifications. Spire's car chiefs are a category of competition personnel through whom any competition-related knowledge Gabehart possesses would likely be deployed.

16. Race engineers are core competition personnel who work directly with the crew chief and Competition Director on car setup, data analysis, and race strategy. In my experience at JGR, engineers regularly attended technical meetings, participated in simulation reviews, and received detailed setup and performance data that I also reviewed in my role as Competition Director. If Gabehart is providing competition-related input at Spire, race engineers are likely among the personnel to receive, discuss, and implement that information. Gabehart interfaced with the race engineers concerning competition issues while at JGR and would likely interface with that role in performing competition-related functions at Spire.

17. Race engineers have the practical ability to implement confidential technical information, including setup parameters, simulation methodologies, analytics frameworks, and

4

performance evaluation metrics. Spire's race engineers are a category of competition personnel through whom any competition-related knowledge Gabehart possesses would likely be deployed.

18. Spotters are essential competition personnel who communicate directly with drivers and crew chiefs during races. They relay real-time information about track conditions, competitor positions, and strategic developments. At JGR, spotters are incorporated into race-day communications regarding strategy and are part of the competition communication network during races. While at JGR, Gabehart interacted with spotters as part of coordinating race-day operations across the team.

19. Spotters play a key role in executing race strategy because they are the direct communication link to the driver during a race. Strategic approaches to traffic management, fuel windows, and competitor awareness are conveyed to the driver through spotter communications. Spire's spotters are a category of competition personnel through whom any competition-related knowledge Gabehart possesses would likely be deployed.

20. Shop leadership, including foremen, oversee the fabrication, assembly, and preparation of racecars during the week. While at JGR, Gabehart worked with shop leadership to ensure that competition priorities were properly executed in car preparation. Senior competition personnel interact with shop leadership to communicate priorities, quality standards, and procedural requirements that affect car performance. Gabehart interfaced with the shop leadership concerning competition issues while at JGR and would likely interface with that role in performing competition-related functions at Spire.

21. Shop leadership can implement confidential processes relating to car preparation, fabrication, and quality control procedures. Spire's shop leadership are a category of competition

5

personnel through whom any competition-related knowledge Gabehart possesses would likely be deployed.

22. If a senior competition leader at Spire possessed JGR's confidential information or trade secrets, the categories of personnel subject to JGR's subpoenas—race engineers, crew chiefs, car chiefs, the team manager, spotters, and shop foremen—are precisely the individuals through whom that information would likely be communicated, implemented, and operationalized.

23. In NASCAR, competitive improvements do not occur solely at the executive level. They occur when engineers apply new analytical approaches to data, when crew chiefs adjust their setup philosophies, when car chiefs implement new measuring or quality control procedures, and when the team collectively executes refined processes.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 22, 2026.

WALTER BROWN

_____

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### Case No. 3:26-CV-00133-SCR-DCK

JOE GIBBS RACING, LLC,

        Plaintiff,

        v.

CHRISTOPHER GABEHART and SPIRE
MOTORSPORTS II, LLC,

        Defendants.

## [DRAFT] TRADE SECRET ADDENDUM TO PROTECTIVE ORDER

Plaintiff Joe Gibbs Racing, LLC ("JGR"), Defendants Christopher Gabehart, and Spire Motorsports II, LLC (collectively, the "Defendants," and together with JGR, the "Parties") agree to this Trade Secret Addendum to Protective Order ("Trade Secret Addendum") for the review of materials designated as trade secrets in the above-captioned litigation.

This Trade Secret Addendum is intended to supplement the existing Protective Order (Dkt. 89) and the terms of the Protective Order shall remain in force unless directly contradicted by the terms of this Trade Secret Addendum, in which case this Trade Secret Addendum shall govern.

1. **ADDITIONS AND AMENDMENTS TO SECTION 1 (DEFINITIONS)**

   a. Section 1 (DEFINITIONS) is amended to add subsection (p) which reads as follows: (p) "HIGHLY CONFIDENTIAL – TRADE SECRETS" Information or Items: extremely sensitive and confidential trade secrets the disclosure of which to another Party or Non-Party, including their In-House Counsel, would create a substantial risk of serious harm that cannot be avoided by less restrictive means,

including but not limited to intellectual property and technical information such as racecar setups, designs, aerodynamics, analytics,

b.  The definition of <u>Protected Material</u> in Section 1(n) is amended to read as follows: "Protected Material: any Discovery Material that is designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – AEO," "HIGHLY CONFIDENTIAL – OCO," or "HIGHLY CONFIDENTIAL – TRADE SECRETS." Protected Material is also referred to herein as "Confidential Information."

2.  <u>**ADDITIONS AND AMENDMENTS TO SECTION 3 (DESIGNATING MATERIAL FOR PROTECTION)**</u>

a.  The first paragraph of Section 3 (DESIGNATING MATERIAL FOR PROTECTION) is amended to read as follows: Counsel for any Party or Non-Party, in complying with discovery requests, subpoenas, and/or in the production of any other documents for any purpose in this case (*e.g.*, producing materials pursuant to any applicable forensic protocol(s)), may designate any document, data, or portion or compilation thereof as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – AEO," "HIGHLY CONFIDENTIAL – OCO," or "HIGHLY CONFIDENTIAL – TRADE SECRETS."

b.  Section 3(b) is amended to read as follows: <u>Manner and Timing of Designations.</u> Except as otherwise provided in this Order, or as otherwise stipulated or ordered, Discovery Material that qualifies for protection under this Order may be designated as Confidential by placing or affixing the designation "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – AEO," "HIGHLY CONFIDENTIAL – OCO," "HIGHLY CONFIDENTIAL – TRADE SECRETS," or any other appropriate

notice, together with an indication of the portion or portions of the document considered to be "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – AEO" or "HIGHLY CONFIDENTIAL – OCO," or "HIGHLY CONFIDENTIAL – TRADE SECRETS." "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – AEO," "HIGHLY CONFIDENTIAL – OCO," or "HIGHLY CONFIDENTIAL – TRADE SECRETS" contained in electronic documents may also be designated as confidential by placing the "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – AEO," "HIGHLY CONFIDENTIAL – OCO," "HIGHLY CONFIDENTIAL – TRADE SECRETS," or any other appropriate notice, in the document metadata, image file, or through another mechanism that clearly identifies the document as confidential, such as identifying such designation in the cover letter or email transmitting or producing such materials. Masked or otherwise redacted copies of documents may be produced where the portions masked or redacted contain privileged matter, provided that the copy produced shall indicate at the appropriate point that portions have been masked or redacted and the reasons therefor.

c. Section 3(c) is amended to read as follows: <u>Deposition Testimony.</u> The Party or Non-Party desiring to designate any or all portions of oral testimony as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – AEO," "HIGHLY CONFIDENTIAL – OCO," or "HIGHLY CONFIDENTIAL – TRADE SECRETS" shall do so by stating orally on the record on the day that the oral testimony is being given or by notifying the parties in writing of the intention to designate any or all portions of oral testimony as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – AEO," "HIGHLY CONFIDENTIAL – OCO," or "HIGHLY CONFIDENTIAL –

TRADE SECRETS" after the oral testimony is given within 30 days of the testimony. Oral testimony shall be treated as HIGHLY CONFIDENTIAL – OCO until the 30 days expires. Notwithstanding the foregoing, Outside Counsel of Record may orally discuss with their client the general substance of testimony or documents designated HIGHLY CONFIDENTIAL – OCO to the extent reasonably necessary for litigation strategy and management purposes (including, without limitation, decisions regarding the scope, sequence, and necessity of discovery). Such discussions shall not include the disclosure of verbatim quotations, copies, or images of HIGHLY CONFIDENTIAL – AEO or HIGHLY CONFIDENTIAL – OCO materials. Any client representative participating in such discussions shall be informed of the confidential nature of the information and shall not further disseminate the substance of such discussions to any person not authorized to receive HIGHLY CONFIDENTIAL – AEO or HIGHLY CONFIDENTIAL – OCO information under this Order. Outside Counsel of Record shall not discuss HIGHLY CONFIDENTIAL – TRADE SECRETS Information or Items with their client.

d. The remaining provisions of Section 3 remain unchanged by this Trade Secret Addendum.

3. **ADDITIONS AND AMENDMENTS TO SECTION 6 (ACCESS TO AND USE OF PROTECTED MATERIAL)**

Section 6 is amended to add the following provision 6(e):

e. Disclosure of "HIGHLY CONFIDENTIAL – TRADE SECRETS" Information or Items. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any material designated "HIGHLY CONFIDENTIAL – TRADE SECRETS" only to:

i. The Receiving Party's Outside Counsel of Record to whom disclosure is reasonably necessary and only after prior written disclosure is provided to the Designating Party;

ii. Experts (as defined in this Protective Order) of the Receiving Party (a) to whom disclosure is reasonably necessary; (b) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A); and (c) as to whom the procedures set forth in Section 15 have been followed;

iii. The Court and its personnel pursuant to the requirements set forth below in Section 7;

iv. Court reporters and their staff to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A); and

v.

vi. Any person with the prior written consent of the Designating Party.

4. **ADDITIONS AND AMENDMENTS TO SECTION 8 (USE OF ARTIFICIAL INTELLIGENCE)**

a. Section 8 (USE OF ARTIFICIAL INTELLIGENCE) is amended to read as follows: No Receiving Party shall submit or provide any CONFIDENTIAL, HIGHLY CONFIDENTIAL – AEO, HIGHLY CONFIDENTIAL – OCO, or HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items a Receiving Party has received from any other Party or Non-Party to any artificial intelligence platform or tool (*e.g.*, ChatGPT, Gemini, etc.) without the express, written consent of the Producing Party.

5. **ADDITIONS AND AMENDMENTS TO SECTION 9 (PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION)**

   a. Section 9 (PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION) is amended to read as follows: If any Party receives a discovery request in any investigation or in any other proceeding or matter that may require the disclosure of any information or items designated in this action as CONFIDENTIAL, HIGHLY CONFIDENTIAL – AEO, HIGHLY CONFIDENTIAL – OCO, or HIGHLY CONFIDENTIAL – TRADE SECRETS, that Party must promptly notify in writing the Designating Party of such request. Such notification shall be in writing and served to the Designating Party at least fifteen (15) business days before production, and shall include a copy of this Protective Order. Nothing herein shall be construed as requiring the recipient of the discovery request or anyone else covered by this Protective Order to challenge or appeal any order requiring production of Confidential Material, to subject itself to any penalties for non-compliance with any such order, or to seek any relief from the Court. The recipient shall not oppose the Designating Party's efforts to challenge the disclosure of Confidential Material.

6. **ADDITIONS AND AMENDMENTS TO SECTION 10 (A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION)**

   a. The first paragraph of Section 10 (A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION) is amended to read as follows: The terms of this Order are applicable to information produced by a Non-Party in this action and designated as

CONFIDENTIAL, HIGHLY CONFIDENTIAL – AEO, HIGHLY CONFIDENTIAL – OCO, or HIGHLY CONFIDENTIAL – TRADE SECRETS. Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections. In the event that a Party is required, by a valid discovery request, to produce a Non-Party's Confidential Information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's Confidential Information, then the Party shall:

b. The remaining subsections of Section 10 remain unchanged by this Trade Secret Addendum.

7. **THE PROTECTIVE ORDER IS AMENDED TO INCLUDE THE FOLLOWING SECTION 15:**

**15. PROCEDURE FOR APPROVING OR OBJECTING TO THE DISCLOSURE OF HIGHLY CONFIDENTIAL – TRADE SECRET INFORMATION OR ITEMS TO EXPERTS**

a. Unless otherwise ordered by the Court or agreed to in writing by the Designating Party, a Party that seeks to disclose to an Expert (as defined in this Order) any information or item that has been designated "HIGHLY CONFIDENTIAL – TRADE SECRETS" first must make a written request to the Producing Party that (1) sets forth the full name of the Expert and the city and state of his or her primary residence, (2) attaches a copy of the Expert's current resume, (3) identifies the Expert's current employer(s), (4) identifies each person or entity from whom the Expert has received compensation or funding for work in his or her areas

of expertise or to whom the expert has provided professional services, including in connection with a litigation, at any time during the preceding five years, and (5) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five years.

b.  A Party that makes a request and provides the information specified in the preceding respective subsections may disclose the subject Protected Material to the identified Expert unless, within 7 days of delivering the request, the Party receives a written objection from the Designating Party. Any such objection must set forth in detail the grounds on which it is based.

c.  A Party that receives a timely written objection must meet and confer with the Designating Party (through direct voice to voice dialogue) to try to resolve the matter by agreement within seven days of the written objection. If no agreement is reached, the Party seeking to make the disclosure to the Expert may seek permission from the court to do so. Any such motion seeking court intervention must describe the circumstances with specificity, set forth in detail the reasons why the disclosure to the Expert is reasonably necessary, assess the risk of harm that the disclosure would entail, and suggest any additional means that could be used to reduce that risk. In addition, any such motion must be

accompanied by a competent declaration describing the parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet and confer discussions) and setting forth the reasons advanced by the Designating Party for its refusal to approve the disclosure. In any such proceeding, the Party opposing disclosure to the Expert shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Designating Party's need to disclose the Protected Material to its Expert.

8. **THE PROTECTIVE ORDER IS AMENDED TO INCLUDE THE FOLLOWING SECTION 16:**

16. **PROCEDURE FOR REVIEW AND HANDLING OF HIGHLY CONFIDENTIAL – TRADE SECRET INFORMATION OR ITEMS**

   a. Any HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items produced in discovery shall be made available for inspection, in a format allowing it to be reasonably reviewed and searched, during normal business hours or at other mutually agreeable times, at an office of the Producing Party's counsel or another mutually agreed upon location. Prior to the first inspection of any requested HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items, the Receiving Party shall provide seven (7) days written notice of the HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items that it wishes to inspect. The Receiving Party shall provide three (3) days' notice prior to any additional inspections. The HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items shall be

made available for inspection on a secured computer (a "Trade Secrets Computer") in a secured room without Internet access or network access to other computers, and the Receiving Party shall not copy, remove, or otherwise transfer any portion of the HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items onto any recordable media or recordable device.

b. The Receiving Party, at its own expense, may request that the Producing Party install one or more software tools on the Trade Secrets computer to analyze and perform searches of the HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items, provided that such software tools are necessary to perform the review of the HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items, consistent with all of the protections herein. The Receiving Party must provide the Producing Party with appropriate access and/or licenses to such software tools at least four (4) business days in advance of the date upon which the Receiving Party wishes to have the software available for use on the Trade Secret Computer. Timely requests for the installation of such software will not be denied, so long as the requested search software is compatible with the operating system and other software necessary to make the HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items available for inspection installed on a Trade Secret Computer and does not side-step any of the security features enabled on the Trade Secret Computer or otherwise compromise the security of the

HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items. The receiving party shall not erase, load, install, or otherwise modify any program on the Trade Secret Computer without first submitting a written request and obtaining the producing party's agreement to the request.

c. The Receiving Party's Outside Counsel of Record and/or Experts shall be entitled to take only handwritten notes relating to the HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items. Such handwritten notes may not copy the HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items to the notes. No computers, cell phones, or other electronic devices (including PDAs, tablets, wearables, cameras, storage, or peripheral equipment) may be brought into secured room. The Producing Party may visually monitor the activities of the Receiving Party's representatives during any HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items review, but only to ensure that there is no unauthorized recording, copying, or transmission of the HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items. Any notes taken pursuant to this subsection (3) by the Receiving Party's Outside Counsel of Record or Experts shall not be discoverable unless specifically relied upon by the Expert in forming an opinion and such notes shall be treated as "HIGHLY CONFIDENTIAL – TRADE SECRETS" information.

d. The Receiving Party shall maintain a record of any individual who has inspected any portion of the HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items. The Producing Party shall be entitled to a copy of the record upon request.

e. The Receiving Party may not print any copies of any portions of the HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items. If any HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items are needed for use during a deposition, the Receiving Party may make a written request to the Designating Party at least two (2) business days in advance of the date of the deposition the production numbers of the HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items that are needed for use in the deposition so that the Designating Party may make arrangements to bring the Trade Secret Computer, or copies of the requested HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items to the deposition. If any paper copies are made of the HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items for use during a deposition, such documents shall be retrieved by the Producing Party at the end of each day and must not be given to or left with a court reporter or any other unauthorized individual. Copies of HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items that are marked as deposition exhibits shall not be provided to the Court Reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers.

f. The Parties may not include excerpts or quotations of HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items in a pleading, exhibit, expert report, discovery document, or any other Court document. To the extent portions of HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items are referenced in any pleading, exhibit, or expert report, the Party seeking to file such information must do so by referencing the production number of the HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items without revealing the content of the HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items. If any reference is made to HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items in any pleading or other Court document: (1) the entire document will be stamped "HIGHLY CONFIDENTIAL – TRADE SECRET" – Subject to Protective Order" or (2) those pages containing references to HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items will be separately bound and stamped as "HIGHLY CONFIDENTIAL – TRADE SECRETS" – Subject to Protective Order." All such documents shall be filed under seal pursuant to Western District of North Carolina Local Rule 6.1.

g. All paper copies of HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items and all notes or memos containing or referencing HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items and notes taken during a HIGHLY CONFIDENTIAL – TRADE

SECRET Information or Items inspection shall be securely destroyed if they are no longer necessary in the litigation  or the litigation has concluded. Copies of HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items that are marked as deposition exhibits shall not be provided to the Court Reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers.

h.  Images or copies of HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items shall not be included in correspondence between the Parties (references to production numbers shall be used instead) and shall be omitted from pleadings and other papers as described herein.

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### CASE NO.  5:23-CV-163-KDB-DCK

| | | |
|---|---|---|
| THE RECON GROUP LLP, | ) | |
| | ) | |
| Plaintiff, | ) | **PROTECTIVE ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| LOWE'S HOME CENTERS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on the "Joint Motion For Entry Of Stipulated Protective Order" (Document No. 38) filed January 3, 2025.  This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and immediate review is appropriate.  Having carefully considered the motion and the record, the undersigned will <u>grant</u> the motion.

**IT IS, THEREFORE, ORDERED** pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, that the Court finds good cause to enter the parties' Proposed Stipulated Protective Order as follows:

### DEFINITIONS

A. "Action": the above-captioned case, and any cases resulting from the consolidation, severance or transfer of such case.

B. "Party" or "Parties":  any Party to the Action.

C. "Material":  all information, documents, items and things produced, served or otherwise provided in the Action (whether paper, electronic, tangible, or otherwise) by the Parties or by non-parties.

D.     "Producing Party":  a Party or non-party that produces, furnishes, or discloses Material during the course of the Action, for example in response to discovery requests or in the form of pleadings, briefs, memoranda, testimony adduced at trial, or materials introduced into evidence.

E.     "Receiving Party":  any Party to which a Producing Party produces, furnishes, or discloses Material, whether voluntarily or in response to formal or informal discovery requests, subpoena, deposition notice, or court order in the Action.

F.     "Designating Party":  a Party or non-party that designates Material as "CONFIDENTIAL," "ATTORNEYS' EYES ONLY," or "ATTORNEYS' EYES ONLY — SOURCE CODE."

G.     "CONFIDENTIAL Material":  Material the Designating Party believes in good faith is not generally known to others, and which the Designating Party (i) would not normally reveal to third parties except in confidence or has undertaken with others to maintain in confidence; or (ii) believes in good faith is protected by a right to privacy under federal or state law or any other applicable privilege or right related to confidentiality or privacy. CONFIDENTIAL Material includes all Material referring or relating to the foregoing, including but not limited to copies, summaries, and abstracts of the foregoing, and may be designated as such in the manner described in Section 2.

H.     "ATTORNEYS' EYES ONLY Material":  Material the Designating Party believes in good faith is not generally known to others and has significant competitive value such that unrestricted disclosure to others would create a substantial risk of serious injury, and which the Designating Party (i) would not normally reveal to third parties except in confidence or has undertaken with others to maintain in confidence;  (ii) believes in good faith is protected by a right

to privacy under federal or state law or any other applicable privilege or right related to confidentiality or privacy; or (iii) believes in good faith constitutes or contains trade secrets or other proprietary financial, technical, or commercially sensitive competitive information that the Producing Party maintains as highly confidential in its business. ATTORNEYS' EYES ONLY Material includes all Material referring or relating to the foregoing, including but not limited to copies, summaries, and abstracts of the foregoing, and may be designated as such in the manner described in Section 2.

I. "Source Code": refers to any computer source code, scripts, assembly, object code, source code listings, RTL code, computer instructions, in-code comments, or data definitions, schematics and documents that describe in detail the algorithms or structure of the source code or otherwise directly reflect the source code that is provided by the Designating Party, and must bear a label of "ATTORNEYS' EYES ONLY — SOURCE CODE" when printed.

J. "Designated Material": Material that is designated "CONFIDENTIAL," "ATTORNEYS' EYES ONLY," or "ATTORNEYS' EYES ONLY — SOURCE CODE."

K. "Outside Counsel": attorneys (including litigation and clerical support staff) who are not employees, directors, or officers of a Party or a Party's parents, affiliates, or subsidiaries but who are counsel of record for a Party.

L. "Outside Consultant": a person with specialized knowledge or experience in a matter pertinent to the Action who has been retained by a Party or its Outside Counsel to serve as an expert witness or as a consultant in the Action and who is not: (i) a current or anticipated future employee of a Party or of a Party's competitor; or (ii) a consultant involved in product and/or process design or development for a Party or for a Party's competitor.

M.      "Professional Vendors":  persons or entities that provide litigation support services (*e.g.,* photocopying, videotaping, translating, preparing exhibits or demonstrations, organizing or processing data) and their employees and subcontractors.  Court reporters and videographers are included.  This definition further includes a professional jury or trial consultant retained in connection with the Action and mock jurors retained by such a consultant to assist them in their work.  Professional Vendors do not include consultants who fall within the definition of Outside Consultant.

<u>**TERMS AND CONDITIONS**</u>

**1.      GENERAL LIMITATIONS ON DISCLOSURE AND USE OF DESIGNATED MATERIAL**

Designated Material produced and the substance and content thereof, including any copies, notes, memoranda, summaries, excerpts, compilations, or other similar documents relating thereto, may be used only for the purpose of this Action and not for any other purpose, including, without limitation, any business or commercial purpose, or dissemination to the media or public.  Any person in possession of Designated Material must exercise reasonably appropriate care with regard to storage, custody, or use of such Designated Material in order to ensure that the confidential nature of the Designated Material is maintained.  If Designated Material is disclosed or comes into the possession of any person other than in a manner authorized by this Protective Order, any Party having knowledge of the disclosure must immediately inform the Producing Party (and, if not the same person or entity, the Designating Party) of all pertinent facts relating to such disclosure and must make reasonable efforts to retrieve such Designated Material and to prevent further disclosure.

## 2. PROCEDURE FOR DESIGNATED MATERIALS

(a) <u>Documents and Other Tangible Materials</u>.  The designation of Material in the form of documents, discovery responses, or other tangible materials (other than depositions or other pre-trial testimony) must be made by the Designating Party by conspicuously affixing (physically or electronically) the legend "CONFIDENTIAL," "ATTORNEYS' EYES ONLY," or "ATTORNEYS' EYES ONLY — SOURCE CODE" on each page containing information to which the designation applies (or in the case of computer medium on the medium label and/or cover).  To the extent practical, the legend must be placed on the same line or otherwise near the Bates number identifying the Material.  If a document has more than one designation, the more restrictive or higher designation applies.  In the case of native files, the legend must be included in the title of the designated files.

(b) <u>Deposition Testimony and Transcripts</u>.  Any Party may designate as CONFIDENTIAL, ATTORNEYS' EYES ONLY, or ATTORNEYS' EYES ONLY – SOURCE CODE Material that is disclosed at a deposition by indicating on the record at the deposition that the testimony is CONFIDENTIAL, ATTORNEYS' EYES ONLY, or ATTORNEYS' EYES ONLY – SOURCE CODE and is subject to the provisions of this Protective Order.  Any Party may also designate Material as CONFIDENTIAL, ATTORNEYS' EYES ONLY, or ATTORNEYS' EYES ONLY – SOURCE CODE by notifying the court reporter and all of the parties, in writing within twenty-one (21) calendar days after receipt of the final deposition transcript, of the specific pages and lines of the final transcript that should be treated thereafter as CONFIDENTIAL, ATTORNEYS' EYES ONLY, or ATTORNEYS' EYES ONLY – SOURCE CODE.  The Designating Party must also provide a revised copy of the transcript with a corrected designation on the face of the transcript.  All deposition transcripts must be treated as

ATTORNEYS' EYES ONLY for at least a period of twenty-one (21) calendar days after receipt of the final transcript unless otherwise designated ahead of such time period.

(c)     Non-party Designations.  Non-parties who produce Material in the Action may avail themselves of the provisions of this Protective Order, and such Material produced by non-parties must be treated by the Parties in conformance with this Protective Order.  A non-party's use of this Protective Order for production of its Material does not entitle that non-party to have access to Material produced by any Party in the Action or any Material produced by another non-party in this Action.

## 3.     INADVERTENT PRODUCTION

(a)     Inadvertent Failures to Properly Designate.  If a Party or non-party inadvertently produces Material without labeling or otherwise designating it in accordance with the provisions of this Protective Order, the Party or non-party may give written notice to the Receiving Party that the Material previously produced is designated CONFIDENTIAL, ATTORNEYS' EYES ONLY, or ATTORNEYS' EYES ONLY – SOURCE CODE and should be treated as such in accordance with the provisions of this Protective Order.  The Receiving Party must treat such Material according to its most recent designation of CONFIDENTIAL, ATTORNEYS' EYES ONLY, or ATTORNEYS' EYES ONLY – SOURCE CODE from the date such notice is received.  If, before receiving such notice, the Receiving Party disclosed such Material to recipients who are not qualified to receive it under the most recent designation, the Receiving Party must inform the Designating Party of the pertinent facts relating to such disclosure and must make reasonable efforts to assure that the Material is treated in accordance with the provisions of this Protective Order, including retrieving or destroying any copies that may have been disclosed to unqualified recipients.

(b)    <u>No Waiver of Privilege</u>.    Pursuant to Federal Rule of Evidence 502(d), the production or disclosure of Material that a Producing Party claims was inadvertent and should not have been produced or disclosed because of the attorney-client privilege, the work product immunity, or any other applicable privilege or immunity from discovery is not and will not be deemed to be a waiver of any such privilege or immunity to which the Producing Party would have been entitled had the Material not inadvertently been produced or disclosed.  The Producing Party must promptly notify the Receiving Party of any such inadvertent production or disclosure and provide a privilege log setting forth the basis for its claim of privilege over the inadvertently produced or disclosed Material.  Upon receiving such notification and privilege log, the Receiving Party must immediately return all copies of such inadvertently produced Material, unless the Receiving Party contests the claim of attorney-client privilege, work product immunity,  or other applicable privilege or immunity from discovery.  If the Receiving Party challenges the propriety of such claim, pending resolution of that challenge the Receiving Party must sequester the challenged Material and must not use the challenged Material in any way or disclose it to any person other than those required to resolve the challenge (e.g., the Court, filed under seal, or any person required by law to be served with a copy of the challenge).  Other than the privilege log required to be provided in connection with the inadvertent production or disclosure of Material described in this paragraph, the Parties agree that they need not otherwise prepare or produce a privilege log of documents or information withheld on the basis of attorney client-privilege, work product immunity, or other applicable privilege or immunity from discovery, and that their agreement not to prepare or produce such a log is not and will not be deemed to be a waiver of any such privilege or immunity with respect to the documents so withheld.  Notwithstanding this

agreement, either Party may move the Court to require the other Party to produce a narrowly-tailored privilege log upon a showing of good cause.

## 4. MATERIAL NOT COVERED BY THIS PROTECTIVE ORDER

Material will not be considered CONFIDENTIAL, ATTORNEYS' EYES ONLY, or ATTORNEYS' EYES ONLY – SOURCE CODE if:

(a) it is in the public domain at the time of disclosure;

(b) it becomes part of the public domain as a result of publication not involving a violation of this Protective Order, any law, contract or court order;

(c) the Receiving Party shows it was in the Receiving Party's rightful and lawful possession at the time of disclosure;

(d) the Receiving Party lawfully received it from a non-party without restriction as to disclosure, provided such non-party had the right to make the disclosure to the Receiving Party; or

(e) the Receiving Party shows it was independently developed by the Receiving Party after the time of disclosure by personnel who did not have access to the Producing Party's Designated Material.

## 5. CHALLENGES TO DESIGNATIONS

(a) Written Notice and Requirement to Meet and Confer in Good Faith. The Designating Party must use reasonable care when designating Material as CONFIDENTIAL, ATTORNEYS' EYES ONLY, or ATTORNEYS' EYES ONLY – SOURCE CODE. Nothing in this Protective Order prevents a Receiving Party from contending that any Material has been improperly designated. If the Receiving Party disagrees with the designation of any Material, the Receiving Party may challenge such designation by providing the Designating Party with written

notice of such challenge and by identifying the Material as specifically as possible.  The challenge should be made as soon as is practicable following discovery of the alleged impropriety.  The parties must endeavor in good faith to resolve any dispute without calling upon the intervention of the Court and must Meet and Confer in an effort to do so.  If, after meeting and conferring in good faith to resolve the dispute the Parties are unable to do so, the Receiving Party may bring the issue to the Court.

## 6.      ACCESS TO CONFIDENTIAL MATERIAL

Unless otherwise ordered by the Court or permitted in writing by the Designating Party, CONFIDENTIAL Material must not be disclosed, directly or indirectly, to anyone except the following (and those identified in Section 15 below regarding use of Designated Material in connection with witness testimony):

(a)      Outside Counsel for the Receiving Party;

(b)      Employees of Outside Counsel for the Receiving Party assigned to and necessary to assist in the Action;

(c)      Employees of the Receiving Party who are deemed in good faith by Outside Counsel for the Receiving Party appropriate to assist in the Action, including any settlement discussions;

(d)      Former employees of the Receiving Party who are deemed in good faith by Outside Counsel for the Receiving Party appropriate to assist in the Action, including any settlement discussions, and subject to the requirement that such former employees execute the Confidentiality Agreement attached hereto as Exhibit A;

(e)      Outside Consultants (and their employees or assistants) who are retained by Outside Counsel for the Receiving Party in the Action;

(f) Others specifically identified and authorized in writing by the party who initially disclosed the CONFIDENTIAL Material in discovery;

(g) Professional Vendors (and their employees or assistants) who are retained by Outside Counsel for the Receiving Party in the Action;

(h) The Court and its personnel, mediators engaged by the Parties, or the jury at trial (with any such CONFIDENTIAL Material filed with or disclosed to or in Court being under seal).

**7. ACCESS TO ATTORNEYS' EYES ONLY MATERIAL**

Unless otherwise ordered by the Court or permitted in writing by the Designating Party, ATTORNEYS' EYES ONLY Material (including material designated ATTORNEYS' EYES ONLY – SOURCE CODE) must not be disclosed, directly or indirectly, to anyone except the following (and those identified in Section 15 below regarding use of Designated Material in connection with witness testimony):

(a) Outside Counsel for the Receiving Party;

(b) Employees of Outside Counsel for the Receiving Party assigned to and necessary to assist in the Action;

(c) Outside Consultants (and their employees or assistants) who are retained by Outside Counsel for the Receiving Party in the Action;

(d) Others specifically identified and authorized in writing by the party who initially disclosed the ATTORNEYS' EYES ONLY Material;

(e) Professional Vendors (and their employees or assistants) who are retained by Outside Counsel for the Receiving Party in the Action;

(f)     The Court and its personnel, mediators engaged by the Parties, or the jury at trial (with any such ATTORNEYS' EYES ONLY Material filed with or disclosed to or in Court being under seal);

(g)     Others expressly agreed to by both parties in writing.

## 8.     ADDITIONAL RESTRICTIONS ON ACCESS TO SOURCE CODE

Access to Source Code must be provided under the ATTORNEYS' EYES ONLY – SOURCE CODE designation only, must bear a label of "ATTORNEYS' EYES ONLY – SOURCE CODE" when printed, and will be subject to the following additional restrictions:

(a)     Source Code (including, if applicable, files associated with a source-code tree maintained in the ordinary course of business) is to be made available for inspection (rather than produced).  Source Code must be provided on a stand-alone computer (i.e., not connected to any network, including the Internet, or a printer) for live, in-person inspection in a secure location at the offices of the Producing Party's Outside Counsel, unless otherwise agreed to by the parties. The Producing Party may visually monitor the activities of the Receiving Party's representatives during any Source Code review, but only to ensure that there is no unauthorized recording, copying, or transmission of the Source Code.  The Receiving Party's representatives are allowed to make written notes about the contents of the Source Code while reviewing the Source Code.  These notes should then be labeled ATTORNEYS' EYES ONLY — SOURCE CODE.

(b)     Access to the stand-alone computer must be permitted, after notice to the Producing Party and an opportunity to object within seven (7) days of receipt of such notice, at any one time by up to two (2) Outside Counsel representing the Receiving Party and two (2) experts retained by the Receiving Party.  The stand-alone computer must be made available during regular business hours local time, Monday through Friday (excluding holidays), and other days and/or times,

including weekends, upon reasonable request, which must not be less than five (5) business days in advance of the requested inspection. Access on weekends (between 9 am to 5 pm), after hours (until 7 pm), or at other mutually agreed times, may only be permitted when reasonably necessary, also on at least five (5) business days advance notice. Individual Parties may agree to other methods that are mutually acceptable. Once access has been provided and inspection of Source Code is taking place, if the Receiving Party requests the inspection to continue to take place on the subsequent business day, the Producing Party must make reasonable efforts to make the stand-alone computer available on the subsequent business day.

(c) A single electronic copy of Source Code must be made available for inspection on the stand-alone computer. The stand-alone computer must be password protected and supplied by the Producing Party. The stand-alone computer must include software utilities that will allow counsel and experts to view, search, and analyze the Source Code if requested by the inspecting party. The Producing Party may use appropriate commercially available, licensed software tools for viewing and searching Source Code on the stand-alone computer, including text editors and multi-file test search tools such as "grep." Specific tools may include, but are not limited to: Eclipse, Visual Slick Edit, Source-Navigator, PowerGrep, Understand, and ExamDiff Pro, or similar programs. Should it be necessary, other mutually-agreed-upon tools may be used. To the extent that the Receiving Party wishes to use a particular tool the Receiving Party must request it and, if there is a cost to obtain or install that tool on the Source Code stand-alone computer, bear that cost. Upon such request, and in the event the Producing Party does not already possess a licensed copy of the requested software tool(s), the Receiving Party must provide the producing party with a licensed copy at least 10 business days in advance of the requested use of such tool(s),

with the Receiving Party to bear the cost of the licensed copy.  Consent to have such software tools installed may not be unreasonably withheld.

(d)     The Receiving Party may not copy, remove, or otherwise transfer any Source Code from the stand-alone computer including, without limitation, copying, photographing, removing, or transferring Source Code onto any other computers or peripheral equipment.  The Receiving Party will not transmit any source code in any way from the location of the Source Code inspection. The Receiving Party may inspect the Source Code as many times or days as reasonably necessary for preparation of its case until the hearing date on any dispositive motions or the close of expert discovery, whichever is later.  For good cause, the Receiving Party can inspect the Source Code after the later of the hearing date on any dispositive motions or the close of expert discovery, up to and including trial.  If the Producing Party contends that good cause does not exist and objects to such inspection, the Parties must Meet and Confer in good faith to resolve the dispute.  If the dispute is not resolved, the Receiving Party may bring the issue to the Court.

(e)     At the request of the Receiving Party, the Producing Party must provide paper copies of reasonable portions of code identified at the time of inspection by the Receiving Party. The Receiving Party may request printouts of only such portions of code as it believes in good faith are relevant to the claims and defenses in the case and are reasonably necessary for such purpose.  The Producing Party will provide the requested paper copies of reasonable portions of code on watermarked or colored paper and include Bates numbers and "ATTORNEYS' EYES ONLY — SOURCE CODE" labels when printed.  A Receiving Party may request 2 additional sets of such printed Source Code sections.  The paper copies must be kept in a secured location at the offices of the Receiving Party's Outside Counsel at all times.  No additional copies of such code may be made.  If the Producing Party objects to the volume of the source code portions

requested as being unreasonable, the Parties must Meet and Confer in good faith to resolve the dispute.  If the dispute is not resolved, the Receiving Party may bring the issue to the Court.

(f)     Notwithstanding subsection (e), the Receiving Party may make up to 4 copies of the printed Source Code sections (but on the same, or substantially the same, color paper as the originals) for purposes of a deposition.  At the conclusion of the deposition, the Producing Party will collect each copy of the printed Source Code sections, except that the Receiving Party may retain one copy of any such printed Source Code sections used as an exhibit.

(g)     Notwithstanding subsection (e), any printed pages of Source Code, and any other documents or things reflecting Source Code that have been designated by the Producing Party as "ATTORNEYS' EYES ONLY — SOURCE CODE" may not be copied, digitally imaged or otherwise duplicated, except in limited excerpts (including transient electronic copies) as necessary to use as exhibits for depositions, or to file, draft, and serve expert reports or court filings, subject to all other applicable provisions of this Protective Order.  The Receiving Party may create an electronic image of such limited excerpt of the "ATTORNEYS' EYES ONLY — SOURCE CODE" only when the electronic files containing such an image have been encrypted using commercially reasonable encryption software including password protection and the password sent under separate cover.  A Producing Party's ATTORNEYS' EYES ONLY – SOURCE CODE Material may otherwise only be transported by the Receiving Party on paper or removable electronic media via hand carry, Federal Express, or other similarly reliable courier.

## 9.     ACCESS BY PROFESSIONAL VENDORS

Subject to the requirements set forth in this Protective Order, Designated Material and such copies as are reasonably necessary for maintaining, defending, or evaluating this Action, may be furnished and disclosed to Professional Vendors as defined in Definition M, except that mock

jurors are not allowed to have access to Source Code. Before disclosing any Designated Material to any person or service described in this paragraph, Outside Counsel for the Receiving Party must first obtain from such person or service a written and signed Confidentiality Agreement, in the form attached hereto as Exhibit A. Such written agreement must be retained by Outside Counsel for the Receiving Party.

**10. TRANSMITTAL OF DESIGNATED MATERIALS**

Designated Materials must not be viewed, transmitted or transported outside of the United States, or communicated to any recipient under this Protective Order who is located outside of the United States, for any purpose without the express written permission of the Producing Party, except as needed in connection with prosecuting or defending this case.

**11. ELECTRONIC ACCESSIBILITY**

The Receiving Party must ensure that Materials designated as CONFIDENTIAL or ATTORNEYS' EYES ONLY are not transmitted via electronic mail, except that CONFIDENTIAL Materials may, when otherwise in compliance with Sections 7 through 10 of this Protective Order, be transmitted: among and between the Outside Counsel for any single Party via the private e-mail networks maintained by that Party's Outside Counsel (public networks and servers such as e-mail systems provided by Google, Yahoo, or by an Internet provider such as Comcast, may not be used; however, e-mails between co-counsel for a Party are considered private even if the transmission path includes the Internet, as long as the e-mail servers are controlled by the respective firms). Notwithstanding the foregoing, nothing in this paragraph must allow the electronic transmission of source code designated as ATTORNEYS' EYES ONLY — SOURCE CODE, except where such source code is an excerpt included in, or attached as an exhibit to, a brief or other submission filed with the Court under seal in accordance with this Protective Order

and the Local Rules of the Court.  In those circumstances, the electronic image of the excerpt of source code designated as "ATTORNEYS' EYES ONLY — SOURCE CODE" must be encrypted using commercially reasonable encryption software including password protection and the password sent under separate cover.

## 12. DISCLOSURE TO OUTSIDE CONSULTANTS

An Outside Consultant's access to Designated Material must be subject to the requirement that the Outside Consultant execute the Confidentiality Agreement attached hereto as Exhibit A. The original Confidentiality Agreement must be retained by Outside Counsel for the Party that retained the Outside Consultant.

## 13. EXCEPTIONS TO LIMITATIONS ON DISCLOSURE

Nothing in this Order prevents disclosure of Designated Material in the following situations: (a) by the Producing Party to anyone else the Producing Party deems appropriate;  (b) by the Receiving Party to a director, officer and/or employee of the Producing Party who has had or is eligible to have access to the Designated Material by virtue of their position with the Producing Party;  (c) by a Party to any person, whether or not affiliated with the Producing Party at the time of disclosure, who either authored the Designated Material, in whole or in part, or who has independently received the Designated Material other than through a means constituting a breach of this Protective Order;  or (d) to any person who is reasonably identified as previously having had access to the Designated Material, which identification is made by the sworn testimony of another or unambiguously appears on the face of a document, other than through a means constituting breach of this Protective Order.

## 14. FILING UNDER SEAL

It is understood by the Parties that any documents which become part of an official judicial proceeding or which are filed with the Court are public documents and that such documents can and will be sealed by the Court only upon motion and in accordance with Local Rule 6.1 and applicable law. This Protective Order does not provide for the automatic sealing of such documents.

## 15. USE WITH WITNESSES FROM WHOM TESTIMONY IS TAKEN OR TO BE TAKEN

(a) Except as otherwise ordered by the Court, any deposition or trial witness may be examined and may testify concerning Designated Material of which such person has prior knowledge. Without in any way limiting the generality of the foregoing:

(1) A present director, officer, employee, contractor and/or other agent. of a Producing Party may be examined and may testify concerning all Designated Material that has been produced by that Party when (a) the director, officer, employee, contractor and/or other agent has had or is eligible to have access to the Designated Material by virtue of their position with the Producing Party; (b) the director, officer, employee, contractor and/or other agent of the Producing Party designated has been designated as a witness under Fed. R. Civ. P. 30(b)(6) for topics relating to the Designated Material; (c) the director, officer, employee, contractor and/or other agent is identified in the Designated Material as an author, addressee, or recipient of such information; or (d) the director, officer, employee, contractor and/or other agent, although not identified as an author, addressee, or recipient of such Designated Material, has, in the ordinary course of business, seen such Designated Material or has personal knowledge about such Designated Material or its subject matter.

(2)     A former director, officer, employee, contractor and/or other agent of a Producing Party may be examined and may testify concerning all Designated Material that has been produced by that Party when (a) the former director, officer, employee, contractor and/or other agent has been designated as a witness under Fed. R. Civ. P. 30(b)(6) for topics relating to the Designated Material; (b) the former director, officer, employee, contractor and/or other agent is identified in the Designated Material as an author, addressee, or recipient of such information; or (c) the former director, officer, employee, contractor and/or other agent , although not identified as an author, addressee, or recipient of such Designated Material, has, in the ordinary course of business, seen such Designated Material or has personal knowledge about such Designated Material.  Nothing in the foregoing will preclude or otherwise limit the Producing Party's ability to object to (i) the use of the document during questioning or (ii) the admissibility of any such testimony.

(3)     The witness, although not identified as an author, addressee, or recipient of such Designated Material, has personal knowledge of the content of the Designated Material and was or is associated with the Producing Party.

(4)     Non-parties may be examined or testify concerning any document containing Designated Material that appears on its face or from other documents or testimony to have been received from, or communicated to, the non-party including as a result of any contact or relationship with the Producing Party.  Any person other than the witness, his or her counsel, and any person qualified to receive Designated Material under this Protective Order must be excluded from the portion of the examination concerning such Material, absent the consent of the Producing Party.  If the witness is represented by an attorney who is not qualified under this Protective Order to receive Designated Material, then prior to the examination, the attorney must

provide a signed Confidentiality Agreement in the form attached hereto as Exhibit A, declaring that he or she will comply with the terms of this Protective Order and maintain the confidentiality of Designated Material disclosed during the course of the examination.  If such attorney declines to sign such a Confidentiality Agreement before the examination, and if any Party so desires, then the Parties, by their counsel, must jointly seek a protective order from the Court prohibiting such attorney from receiving, seeing, inspecting, or otherwise having access to such Designated Material.

(b)     Except in the case of an Outside Consultant serving as an expert witness and bound by the terms of the Protective Order or a witness from a Producing Party that is otherwise authorized to see Designated Material from his/her own Producing Party, witnesses may not retain copies of any Designated Material used or reviewed at a deposition, and may not take out of the deposition room any exhibit that is marked CONFIDENTIAL, ATTORNEYS' EYES ONLY, or ATTORNEYS' EYES ONLY – SOURCE CODE.  The Producing Party of any Designated Material used at a deposition may also require that the transcript and exhibits not be copied by a third-party witness or his or her counsel and that the transcript and exhibits may only be reviewed by the third-party witness in the offices of Outside Counsel representing a Party in the Action (or another firm acting for Outside Counsel representing a Party in the Action under the supervision of one of the attorneys bound by the terms of this Protective Order).

## 16.     STIPULATIONS OR ADDITIONAL RELIEF FROM THE COURT

The Parties may, by stipulation, provide for exceptions to this Protective Order.  Nothing in this Protective Order will be deemed to preclude any Party from seeking and obtaining, on an appropriate showing, additional protection with respect to the confidentiality of Material or relief from this Protective Order with respect to particular Designated Material.

**17.     RETURN OF DESIGNATED MATERIAL**

The ultimate disposition of protected materials is subject to a final order of the Court on the completion of the Action.  Unless otherwise ordered or agreed in writing by the Producing Party, within 60 days after a final, non-appealable judgment or order, or the complete settlement of all claims asserted against all Parties in the Action, each Receiving Party must destroy or return all Designated Material to the Producing Party (at the Receiving Party's option).  As used in this section, "Designated Material" includes Designated Material and any derivatives therefrom, including, but not limited to, all copies, abstracts, compilations, summaries, notes, or any other form of reproducing, referring to, or capturing any portion of the Designated Material.  The Receiving Party's obligation to return Designated Material received from another Party extends to Designated Material the Receiving Party disclosed to others pursuant to this Protective Order. With written permission from the Producing Party, the Receiving Party may destroy some or all of the Designated Material instead of returning it.  Notwithstanding this section, Outside Counsel are not required to delete information that may reside on their respective firm's electronic back-up systems that are over-written in the normal course of business.  Whether the Designated Material is returned or destroyed, the Receiving Party must, if asked to, submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60-day deadline of its compliance with this section.  Notwithstanding this section, counsel are entitled to retain an archival copy of all pleadings, motion papers (including all supporting and opposing papers and exhibits and declarations thereto), transcripts, legal memoranda, correspondence, briefs (including all supporting and opposing papers and exhibits and declarations thereto), written discovery requests and responses, exhibits offered or introduced into evidence at trial, or work

product.  Any such archival copies remain subject to this Protective Order as set forth in Section 19.

**18.    INJUNCTIVE RELIEF**

The Parties acknowledge that any breach of this Protective Order may result in immediate and irreparable injury for which there is no adequate remedy at law.  If anyone violates or threatens to violate the terms of this Protective Order, the actual or potentially aggrieved entity may immediately apply to obtain injunctive relief against any such violation or threatened violation, and any respondent who is subject to the provisions of this Protective Order may not employ as a defense that movant possesses an adequate remedy at law.

**19.    SURVIVAL OF ORDER**

The terms of this Protective Order will survive the final termination of the Action to the extent that any Designated Material is not or does not become known to the public.  This Court will retain jurisdiction over the Action for the purpose of enforcing this Protective Order unless the Action is transferred to another forum.  The Parties agree that any order of dismissal of the Action as to any or all Parties must include a specific provision that the Court retains jurisdiction to enforce the terms of this Protective Order following dismissal.  Each Party hereby consents to the personal jurisdiction of the Court for that purpose.

**20.    TREATMENT PRIOR TO ENTRY OF ORDER**

Each Party agrees to be bound by the terms of this Protective Order as of the date it is filed with the Court for the Court's consideration, even if prior to entry of the Order by the Court.  If the Court changes any provisions proposed by the Parties, the changes will apply retroactively, except that no conduct occurring prior to entry of the Order that was permissible under the proposed provisions will be deemed a violation of any such changed provision.

## 21. PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED, OR SUBJECT TO A MOTION TO COMPEL, IN OTHER LITIGATION

If a Receiving Party is served with a subpoena or a court order that would compel disclosure of any Designated Material to a third party, or is subject to a motion seeking to compel such disclosure, the Receiving Party must so notify the Producing Party (and, if not the same person or entity, the Designating Party), in writing (by hand delivery, fax, or e-mail) promptly after receiving the subpoena, order, or motion. Such notification must include a copy of the subpoena, order, or motion. The Receiving Party also must promptly inform in writing the party who caused the subpoena, order, or motion to issue that some or all the material covered by the subpoena or order is subject to this Protective Order. In addition, the Receiving Party must deliver a copy of this Protective Order promptly to the party in the other action that caused the subpoena or order to issue, or the motion to be filed. The purpose of imposing these duties is to alert the interested parties to the existence of this Protective Order (which will apply to any material produced unless a separate Protective Order is obtained) and to afford the Producing or Designating Party in the Action an opportunity to try to protect its confidentiality interests in the court from which the subpoena or order issued, or in which the motion was filed. The Designating Party will bear the burdens and the expenses of seeking protection in that court of its Designated Material. Nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in the Action to disobey a lawful directive from another court, or as precluding another court from finding the Designated Material relevant and subject to disclosure in another case.

Signed: January 3, 2025

**SO ORDERED**.

David C. Keesler
United States Magistrate Judge

WE CONSENT:

This the 3rd day of January 2025.

/s/ *Marc E. Gustafson*
Marc E. Gustafson, N.C. Bar No. 34429
BELL, DAVIS & PITT P.A.
227 W Trade St., Suite 1800
Charlotte, NC 28202
Telephone: (704) 227-9837
Email: mgustafson@belldavispitt.com

Michael A. Sayre (admitted pro hac vice)
ARMSTRONG TEASDALE LLP
355 Alhambra Circle, Suite 1200
Coral Gables, FL 33134
Telephone: (305) 371-8809
Email: msayre@atllp.com

Marc Vander Tuig (admitted pro hac vice)
Paul L. Brusati (admitted pro hac vice)
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, MO 63105
Telephone: (314) 621-5070
Email: mvandertuig@atllp.com
          pbrusati@atllp.com

*Attorneys for Plaintiff The Recon Group LLP*

/s/ *Jacob Zambrzycki*
J. Mark Wilson, N.C. Bar No. 25763
Jacob Zambrzycki, N.C. Bar No. 56223
Rebecca E. Alba, N.C. Bar No. 61881
MOORE & VAN ALLEN PLLC
100 North Tryon Street
Suite 4700
Charlotte, North Carolina 28202
Telephone: (704) 331-1000
Facsimile: (704) 339-5981
Email: markwilson@mvalaw.com
Email: jacobzambrzycki@mvalaw.com
Email: rebeccaalba@mvalaw.com

*Attorneys for Defendant*
*Lowe's Home Centers, LLC*

<u>**EXHIBIT A**</u>

<u>**CONFIDENTIALITY AGREEMENT**</u>

I hereby certify that:

1.      Confidential Information, including documents and things, designated as "CONFIDENTIAL," "ATTORNEYS' EYES ONLY," or "ATTORNEYS' EYES ONLY — SOURCE CODE" as defined in the Protective Order entered in the above-captioned action ("Protective Order"), is being provided to me pursuant to the terms and restrictions of the Protective Order.

2.      I have been given a copy of and have read the Protective Order.

3.      I am familiar with the terms of the Protective Order, and I agree to comply with and to be bound by its terms.

4.      I agree not to use any Designated Material disclosed to me pursuant to the Protective Order except for purposes of the above-captioned litigation and not to disclose any of this information to persons other than those specifically authorized by the Protective Order, without the express written consent of the Designating Party or by order of the presiding judge.  I also agree to notify any of my employees or assistants (including stenographic, clerical or technical personnel) who are required to assist me of the terms of this Protective Order and of its binding effect on them and me.

5.      I understand that I am to retain all Designated Material in a secure manner, and that all such documents and materials are to remain in my personal custody until the completion of my assigned duties in this matter, whereupon all such documents and materials, including all copies thereof, and any writings prepared by me containing any Designated Material are to be returned to counsel who provided me with such documents and materials or will be destroyed by me.  Upon

such destruction, I will certify to counsel who provided me with such documents and materials this destruction has been done.

6.      I understand that my failure to abide by the terms of the Protective Order entered in the above-captioned action may subject me, without limitation, to civil and criminal penalties for contempt of court.

7.      I submit to the jurisdiction of this Court for enforcement of the Protective Order and waive any objections to jurisdiction or venue.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _____        _____

Printed Name: _____

Company Name/ Address/ Phone:

_____