# Exhibit D

**SUMMARY OF SPIRE'S POSITION ON DISCOVERY DISPUTES**

JGR still has not produced or identified the documents it alleges are trade secrets misappropriated by Spire. Instead—less than seven weeks before the close of discovery—JGR insists on a highly restrictive protocol and sweeping third-party discovery from lower-level Spire personnel with no connection to this litigation. The invasive, unnecessary, burdensome third-party subpoenas must be quashed. And the protocol is too late, seeks modification of an order already entered by Judge Rodriguez, and strikes at the core of Spire's very ability to defend itself.

**Third-Party Subpoenas.** On June 11, 2026, JGR served twenty-one subpoenas on various Spire employees and independent contractors. Added to the 11 subpoenas previously served, JGR has now subpoenaed nearly every person in Spire's NASCAR competition organization *individually*. The subpoenas contain the same nine, broad requests, relating to JGR's still unidentified trade secrets allegedly misappropriated by Gabehart and his role at Spire.

The subpoenas are facially overbroad and not proportionate to the litigation. The 21 subpoenaed third parties are all junior competition personnel—a competition manager, crew chiefs, car chiefs, engineers, spotters, and a foreman—and have no meaningful connection to this litigation. None were listed on any party's initial disclosures, submitted declarations, or are referenced in any of the material documents filed or produced thus far. Each report to Spire's Competition Director Matthew McCall, who has already responded to a subpoena from JGR seeking the same information and who has identified only a handful of responsive documents. *See Va. Dep't of Corr. v. Jordan*, 921 F. 3d 180, 190 (4th Cir. 2019) (quashing subpoena seeking "information beyond what the requesting party reasonably requires"). Indeed, JGR already sought (and Spire has agreed to produce, where it exists) the *same* information from Spire and eleven more senior Spire employees, including drivers, senior competition personnel and leadership team. The additional 21 subpoenas to lower-level personnel are duplicative, harassing, and little "more

1

than a fishing expedition hoping to turn up responsive documents." *Boyette Bros. Produce, LLC v. Arvila, LLC*, 2017 U.S. Dist. LEXIS 74188, at \*20–21 (E.D.N.C. May 16, 2017) (quashing subpoenas to 11 non-parties as "not proportional" and "nothing more than a fishing expedition").

Moreover, the requested documents and information are properly discoverable from Gabehart, a party to the litigation and the source of the information JGR seeks. Documents and communications relating to the information that *Gabehart* allegedly misappropriated or *Gabehart's* role at Spire are in *Gabehart's* possession, custody, and control. *See Johnson v. Wal-Mart Stores East, L.P.*, 2012 U.S. Dist. LEXIS 12342, at \*9 (W.D.N.C. Feb. 2, 2012) (quashing twelve third-party subpoenas where "the better practice [ ] would have been for Plaintiff to seek information directly from Defendant"). Indeed, the Court already ordered a forensic review of Gabehart's devices and accounts. *See* Dkt.48 at 4. Thus, for months, JGR has had reams of data, several devices, and dozens of data exports that would have allowed it to identify any sharing or distribution of its purported trade secrets by Gabehart with anyone at Spire, yet it has not done so.

Spire attempted to compromise this issue (and met with JGR's counsel on June 4, 12, and 19) by accepting subpoenas issued to its three crew chiefs—an offer JGR rejected. Spire respectfully requests that the Court quash the subpoenas. To the extent the Court does not, Spire requests that JGR pay all of the costs imposed on these third parties in connection with responding, including attorneys' fees, data and device collection and storage costs, and lost work time.

**Trade Secret Protocol.** JGR has refused to identify a single document that it contends constitutes a trade secret misappropriated by Spire.[1] On June 10, 2026, in response to Spire's First

---

[1] With discovery near its end, JGR has only identified two purported trade secrets that remained in Gabehart's possession when he began working for Spire: (1) a series of one- to two-word high-level strategy notes which are facially not trade secrets); and (2) a spreadsheet that tracks publicly available information about race performance and does not contain any JGR data.

Set of Requests for Production, JGR responded that it will make the documents available for inspection only "pursuant to an appropriate protocol." This was the first Spire had heard of a trade secret protocol, despite the fact that JGR has known for months that it would need to produce its alleged trade secrets. Moreover, Judge Rodriguez already heard and ruled on JGR's motion for a protective order, in which JGR insisted on an "Outside Counsel Only" designation over Spire's objection. JGR's present attempt to modify Judge Rodriguez's Protective Order should have been raised then and, in fact, should be heard by Judge Rodriguez as the issuing judge.

The protocol is unduly restrictive, burdensome, and unnecessary. It bars Spire's (but not JGR's) counsel from even discussing the documents JGR designates as "trade secrets"; forces Spire's (but not JGR's) counsel to view JGR's trade secrets in a "clean room" supervised by JGR; prohibits Spire (but not JGR) from filing any document JGR designates as a "trade secret;" and forces disclosure of Spire's (but not JGR's) consulting experts. *See* Protocol, **Ex. A**. The protocol would fundamentally curtail Spire's counsel from defending against JGR's baseless allegations because it would require Spire's counsel to bring its experts into the "clean room" and leave with nothing but handwritten notes. Meanwhile, JGR is free to analyze its purported trade secrets at its leisure. Moreover, compliance with the protocol would be cumbersome, expensive, and time-consuming for all parties—time the parties do not have in light of the schedule JGR insisted upon.

Further, the protocol is wholly unnecessary in light of the three-tier Protective Order that JGR sought at the start of this litigation. The Protective Order's "Outside Counsel Only" designation is sufficient to protect JGR's alleged trade secrets (the very reason JGR sought an OCO tier the first place). Even this OCO tier is unduly restrictive and prejudicial to Spire, and Spire intends to seek appropriate relief from Judge Rodriguez, who should decide the issue.

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### Case No. 3:26-CV-00133-SCR-DCK

JOE GIBBS RACING, LLC,

        Plaintiff,

    v.

CHRISTOPHER GABEHART and SPIRE
MOTORSPORTS II, LLC,

        Defendants.

### [DRAFT] TRADE SECRET ADDENDUM TO PROTECTIVE ORDER

Plaintiff Joe Gibbs Racing, LLC ("JGR"), Defendants Christopher Gabehart, and Spire Motorsports II, LLC (collectively, the "Defendants," and together with JGR, the "Parties") agree to this Trade Secret Addendum to Protective Order ("Trade Secret Addendum") for the review of materials designated as trade secrets in the above-captioned litigation.

This Trade Secret Addendum is intended to supplement the existing Protective Order (Dkt. 89) and the terms of the Protective Order shall remain in force unless directly contradicted by the terms of this Trade Secret Addendum, in which case this Trade Secret Addendum shall govern.

1. **ADDITIONS AND AMENDMENTS TO SECTION 1 (DEFINITIONS)**

    a. Section 1 (DEFINITIONS) is amended to add subsection (p) which reads as follows: (p) "HIGHLY CONFIDENTIAL – TRADE SECRETS" Information or Items: extremely sensitive and confidential trade secrets the disclosure of which to another Party or Non-Party, including their In-House Counsel, would create a substantial risk of serious harm that cannot be avoided by less restrictive means,

including but not limited to intellectual property and technical information such as racecar setups, designs, aerodynamics, analytics,

b. The definition of Protected Material in Section 1(n) is amended to read as follows: "Protected Material: any Discovery Material that is designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – AEO," "HIGHLY CONFIDENTIAL – OCO," or "HIGHLY CONFIDENTIAL – TRADE SECRETS." Protected Material is also referred to herein as "Confidential Information."

**2. ADDITIONS AND AMENDMENTS TO SECTION 3 (DESIGNATING MATERIAL FOR PROTECTION)**

a. The first paragraph of Section 3 (DESIGNATING MATERIAL FOR PROTECTION) is amended to read as follows: Counsel for any Party or Non-Party, in complying with discovery requests, subpoenas, and/or in the production of any other documents for any purpose in this case (*e.g.*, producing materials pursuant to any applicable forensic protocol(s)), may designate any document, data, or portion or compilation thereof as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – AEO," "HIGHLY CONFIDENTIAL – OCO," or "HIGHLY CONFIDENTIAL – TRADE SECRETS."

b. Section 3(b) is amended to read as follows: Manner and Timing of Designations. Except as otherwise provided in this Order, or as otherwise stipulated or ordered, Discovery Material that qualifies for protection under this Order may be designated as Confidential by placing or affixing the designation "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – AEO," "HIGHLY CONFIDENTIAL – OCO," "HIGHLY CONFIDENTIAL – TRADE SECRETS," or any other appropriate

notice, together with an indication of the portion or portions of the document considered to be "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – AEO" or "HIGHLY CONFIDENTIAL – OCO," or "HIGHLY CONFIDENTIAL – TRADE SECRETS." "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – AEO," "HIGHLY CONFIDENTIAL – OCO," or "HIGHLY CONFIDENTIAL – TRADE SECRETS" contained in electronic documents may also be designated as confidential by placing the "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – AEO," "HIGHLY CONFIDENTIAL – OCO," "HIGHLY CONFIDENTIAL – TRADE SECRETS," or any other appropriate notice, in the document metadata, image file, or through another mechanism that clearly identifies the document as confidential, such as identifying such designation in the cover letter or email transmitting or producing such materials. Masked or otherwise redacted copies of documents may be produced where the portions masked or redacted contain privileged matter, provided that the copy produced shall indicate at the appropriate point that portions have been masked or redacted and the reasons therefor.

c. Section 3(c) is amended to read as follows: <u>Deposition Testimony.</u> The Party or Non-Party desiring to designate any or all portions of oral testimony as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – AEO," "HIGHLY CONFIDENTIAL – OCO," or "HIGHLY CONFIDENTIAL – TRADE SECRETS" shall do so by stating orally on the record on the day that the oral testimony is being given or by notifying the parties in writing of the intention to designate any or all portions of oral testimony as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – AEO," "HIGHLY CONFIDENTIAL – OCO," or "HIGHLY CONFIDENTIAL –

TRADE SECRETS" after the oral testimony is given within 30 days of the testimony. Oral testimony shall be treated as HIGHLY CONFIDENTIAL – OCO until the 30 days expires. Notwithstanding the foregoing, Outside Counsel of Record may orally discuss with their client the general substance of testimony or documents designated HIGHLY CONFIDENTIAL – OCO to the extent reasonably necessary for litigation strategy and management purposes (including, without limitation, decisions regarding the scope, sequence, and necessity of discovery). Such discussions shall not include the disclosure of verbatim quotations, copies, or images of HIGHLY CONFIDENTIAL – AEO or HIGHLY CONFIDENTIAL – OCO materials. Any client representative participating in such discussions shall be informed of the confidential nature of the information and shall not further disseminate the substance of such discussions to any person not authorized to receive HIGHLY CONFIDENTIAL – AEO or HIGHLY CONFIDENTIAL – OCO information under this Order. Outside Counsel of Record shall not discuss HIGHLY CONFIDENTIAL – TRADE SECRETS Information or Items with their client.

d. The remaining provisions of Section 3 remain unchanged by this Trade Secret Addendum.

3. **ADDITIONS AND AMENDMENTS TO SECTION 6 (ACCESS TO AND USE OF PROTECTED MATERIAL)**

Section 6 is amended to add the following provision 6(e):

e. Disclosure of "HIGHLY CONFIDENTIAL – TRADE SECRETS" Information or Items. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any material designated "HIGHLY CONFIDENTIAL – TRADE SECRETS" only to:

i. The Receiving Party's Outside Counsel of Record to whom disclosure is reasonably necessary and only after prior written disclosure is provided to the Designating Party;

ii. Experts (as defined in this Protective Order) of the Receiving Party (a) to whom disclosure is reasonably necessary; (b) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A); and (c) as to whom the procedures set forth in Section 15 have been followed;

iii. The Court and its personnel pursuant to the requirements set forth below in Section 7;

iv. Court reporters and their staff to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A); and

v.

vi. Any person with the prior written consent of the Designating Party.

4. **ADDITIONS AND AMENDMENTS TO SECTION 8 (USE OF ARTIFICIAL INTELLIGENCE)**

a. Section 8 (USE OF ARTIFICIAL INTELLIGENCE) is amended to read as follows: No Receiving Party shall submit or provide any CONFIDENTIAL, HIGHLY CONFIDENTIAL – AEO, HIGHLY CONFIDENTIAL – OCO, or HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items a Receiving Party has received from any other Party or Non-Party to any artificial intelligence platform or tool (*e.g.*, ChatGPT, Gemini, etc.) without the express, written consent of the Producing Party.

5. **ADDITIONS AND AMENDMENTS TO SECTION 9 (PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION)**

   a. Section 9 (PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION) is amended to read as follows: If any Party receives a discovery request in any investigation or in any other proceeding or matter that may require the disclosure of any information or items designated in this action as CONFIDENTIAL, HIGHLY CONFIDENTIAL – AEO, HIGHLY CONFIDENTIAL – OCO, or HIGHLY CONFIDENTIAL – TRADE SECRETS, that Party must promptly notify in writing the Designating Party of such request. Such notification shall be in writing and served to the Designating Party at least fifteen (15) business days before production, and shall include a copy of this Protective Order. Nothing herein shall be construed as requiring the recipient of the discovery request or anyone else covered by this Protective Order to challenge or appeal any order requiring production of Confidential Material, to subject itself to any penalties for non-compliance with any such order, or to seek any relief from the Court. The recipient shall not oppose the Designating Party's efforts to challenge the disclosure of Confidential Material.

6. **ADDITIONS AND AMENDMENTS TO SECTION 10 (A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION)**

   a. The first paragraph of Section 10 (A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION) is amended to read as follows: The terms of this Order are applicable to information produced by a Non-Party in this action and designated as

CONFIDENTIAL, HIGHLY CONFIDENTIAL – AEO, HIGHLY CONFIDENTIAL – OCO, or HIGHLY CONFIDENTIAL – TRADE SECRETS. Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections. In the event that a Party is required, by a valid discovery request, to produce a Non-Party's Confidential Information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's Confidential Information, then the Party shall:

b. The remaining subsections of Section 10 remain unchanged by this Trade Secret Addendum.

7. **THE PROTECTIVE ORDER IS AMENDED TO INCLUDE THE FOLLOWING SECTION 15:**

15. **PROCEDURE FOR APPROVING OR OBJECTING TO THE DISCLOSURE OF HIGHLY CONFIDENTIAL – TRADE SECRET INFORMATION OR ITEMS TO EXPERTS**

   a. Unless otherwise ordered by the Court or agreed to in writing by the Designating Party, a Party that seeks to disclose to an Expert (as defined in this Order) any information or item that has been designated "HIGHLY CONFIDENTIAL – TRADE SECRETS" first must make a written request to the Producing Party that (1) sets forth the full name of the Expert and the city and state of his or her primary residence, (2) attaches a copy of the Expert's current resume, (3) identifies the Expert's current employer(s), (4) identifies each person or entity from whom the Expert has received compensation or funding for work in his or her areas

of expertise or to whom the expert has provided professional services, including in connection with a litigation, at any time during the preceding five years, and (5) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five years.

b. A Party that makes a request and provides the information specified in the preceding respective subsections may disclose the subject Protected Material to the identified Expert unless, within 7 days of delivering the request, the Party receives a written objection from the Designating Party. Any such objection must set forth in detail the grounds on which it is based.

c. A Party that receives a timely written objection must meet and confer with the Designating Party (through direct voice to voice dialogue) to try to resolve the matter by agreement within seven days of the written objection. If no agreement is reached, the Party seeking to make the disclosure to the Expert may seek permission from the court to do so. Any such motion seeking court intervention must describe the circumstances with specificity, set forth in detail the reasons why the disclosure to the Expert is reasonably necessary, assess the risk of harm that the disclosure would entail, and suggest any additional means that could be used to reduce that risk. In addition, any such motion must be

accompanied by a competent declaration describing the parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet and confer discussions) and setting forth the reasons advanced by the Designating Party for its refusal to approve the disclosure. In any such proceeding, the Party opposing disclosure to the Expert shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Designating Party's need to disclose the Protected Material to its Expert.

8. **THE PROTECTIVE ORDER IS AMENDED TO INCLUDE THE FOLLOWING SECTION 16:**

16. **PROCEDURE FOR REVIEW AND HANDLING OF HIGHLY CONFIDENTIAL – TRADE SECRET INFORMATION OR ITEMS**

   a. Any HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items produced in discovery shall be made available for inspection, in a format allowing it to be reasonably reviewed and searched, during normal business hours or at other mutually agreeable times, at an office of the Producing Party's counsel or another mutually agreed upon location. Prior to the first inspection of any requested HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items, the Receiving Party shall provide seven (7) days written notice of the HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items that it wishes to inspect. The Receiving Party shall provide three (3) days' notice prior to any additional inspections. The HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items shall be

made available for inspection on a secured computer (a "Trade Secrets Computer") in a secured room without Internet access or network access to other computers, and the Receiving Party shall not copy, remove, or otherwise transfer any portion of the HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items onto any recordable media or recordable device.

b. The Receiving Party, at its own expense, may request that the Producing Party install one or more software tools on the Trade Secrets computer to analyze and perform searches of the HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items, provided that such software tools are necessary to perform the review of the HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items, consistent with all of the protections herein. The Receiving Party must provide the Producing Party with appropriate access and/or licenses to such software tools at least four (4) business days in advance of the date upon which the Receiving Party wishes to have the software available for use on the Trade Secret Computer. Timely requests for the installation of such software will not be denied, so long as the requested search software is compatible with the operating system and other software necessary to make the HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items available for inspection installed on a Trade Secret Computer and does not side-step any of the security features enabled on the Trade Secret Computer or otherwise compromise the security of the

HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items. The receiving party shall not erase, load, install, or otherwise modify any program on the Trade Secret Computer without first submitting a written request and obtaining the producing party's agreement to the request.

c. The Receiving Party's Outside Counsel of Record and/or Experts shall be entitled to take only handwritten notes relating to the HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items. Such handwritten notes may not copy the HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items to the notes. No computers, cell phones, or other electronic devices (including PDAs, tablets, wearables, cameras, storage, or peripheral equipment) may be brought into secured room. The Producing Party may visually monitor the activities of the Receiving Party's representatives during any HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items review, but only to ensure that there is no unauthorized recording, copying, or transmission of the HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items. Any notes taken pursuant to this subsection (3) by the Receiving Party's Outside Counsel of Record or Experts shall not be discoverable unless specifically relied upon by the Expert in forming an opinion and such notes shall be treated as "HIGHLY CONFIDENTIAL – TRADE SECRETS" information.

d. The Receiving Party shall maintain a record of any individual who has inspected any portion of the HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items. The Producing Party shall be entitled to a copy of the record upon request.

e. The Receiving Party may not print any copies of any portions of the HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items. If any HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items are needed for use during a deposition, the Receiving Party may make a written request to the Designating Party at least two (2) business days in advance of the date of the deposition the production numbers of the HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items that are needed for use in the deposition so that the Designating Party may make arrangements to bring the Trade Secret Computer, or copies of the requested HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items to the deposition. If any paper copies are made of the HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items for use during a deposition, such documents shall be retrieved by the Producing Party at the end of each day and must not be given to or left with a court reporter or any other unauthorized individual. Copies of HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items that are marked as deposition exhibits shall not be provided to the Court Reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers.

f. The Parties may not include excerpts or quotations of HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items in a pleading, exhibit, expert report, discovery document, or any other Court document. To the extent portions of HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items are referenced in any pleading, exhibit, or expert report, the Party seeking to file such information must do so by referencing the production number of the HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items without revealing the content of the HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items. If any reference is made to HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items in any pleading or other Court document: (1) the entire document will be stamped "HIGHLY CONFIDENTIAL – TRADE SECRET" – Subject to Protective Order" or (2) those pages containing references to HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items will be separately bound and stamped as "HIGHLY CONFIDENTIAL – TRADE SECRETS" – Subject to Protective Order." All such documents shall be filed under seal pursuant to Western District of North Carolina Local Rule 6.1.

g. All paper copies of HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items and all notes or memos containing or referencing HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items and notes taken during a HIGHLY CONFIDENTIAL – TRADE

SECRET Information or Items inspection shall be securely destroyed if they are no longer necessary in the litigation  or the litigation has concluded. Copies of HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items that are marked as deposition exhibits shall not be provided to the Court Reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers.

h.  Images or copies of HIGHLY CONFIDENTIAL – TRADE SECRET Information or Items shall not be included in correspondence between the Parties (references to production numbers shall be used instead) and shall be omitted from pleadings and other papers as described herein.