| | |
|---|---|
| JOE GIBBS RACING, LLC,<br><br>**Plaintiff,**<br><br>v.<br><br>CHRISTOPHER GABEHART and SPIRE MOTORSPORTS II, LLC,<br><br>**Defendants.** | **DEFENDANT CHRISTOPHER GABEHART'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO SUPPLEMENT PROTECTIVE ORDER** |

Defendant Christopher Gabehart ("Mr. Gabehart"), by and through his undersigned counsel, respectfully submits this Memorandum in Opposition to Plaintiff Joe Gibbs Racing, LLC's ("JGR") Motion to Supplement the Protective Order (ECF No. 101 or the "Motion"). The Court should deny JGR's Motion and require JGR to abide by the existing Protective Order, which JGR requested, because it already provides robust, multi-tiered protections to adequately safeguard JGR's purported trade secrets and confidential information for the duration of the litigation.

## I.     FACTUAL BACKGROUND

Four months ago—at the start of this case—JGR unilaterally proposed a protective order with three tiers of protection for discovery materials: "Confidential," "Highly Confidential – AEO," and "Highly Confidential – OCO" (the "OCO Designation"). During the parties' negotiations regarding the proposed protective order, Defendant Spire Motorsports II, LLC ("Spire") and Mr. Gabehart pushed back on JGR's inclusion of the OCO Designation, raising concerns that outside counsel would not have the industry knowledge to understand certain technical or purported trade secret materials that JGR may designate as OCO. *See* Exhibit A (Emails re: JGR v. Gabehart & Spire - Protective Order). JGR declined to remove the OCO

Designation from the proposed protective order noting that "**the OCO designation protects JGR's information at the outset**." *See* Ex. A. Because the parties could not agree on whether to include the OCO Designation, they brought the issue before the Court. After a contested hearing on March 24, 2026, the Court determined that the OCO Designation was warranted and subsequently granted JGR's Motion for a Protective Order, which is the protective order currently in effect. *See* ECF No. 89 (the "Protective Order").

Despite obtaining precisely the protections it sought, JGR now demands even more stringent and unworkable restrictions through a proposed Trade Secret Addendum (the "Proposed Addendum") —which it circulated for the first time on June 18, 2026, four months after initiating this litigation and with less than seven weeks remaining in fact discovery.[1] Mot. at 3. The Proposed Addendum contains a litany of would-be additions to the Protective Order, Mot. at 5-6, and most importantly, it establishes an entirely new confidentiality designation of "Highly Confidential – Trade Secrets." *See generally* Mot. Ex. A. Discovery materials marked with this new designation would only be available for review in a "virtual secured room" accessible only by outside counsel. Mot. at 5. Moreover, outside counsel would be prohibited from communicating with their respective clients in any way about any material designated as such.

---

[1] There is no scheduling order currently in place. The dates referenced herein are from the Joint Motion for Entry of Pretrial Order and Resolution of Disputed Provisions. *See* ECF No. 91. The Court should be aware that JGR's eleventh-hour tactical request for a burdensome, unjustified modification of the Protective Order is reflective of JGR's failure to conduct discovery in a manner consistent with the focused, efficient approach required of the expedited schedule it urged the Court to impose. For example, JGR failed to meet the substantial document production deadline of June 17, 2026 and to this date has still failed to materially achieve that milestone. Indeed, it has refused to produce in discovery the very alleged trade secrets it claims were misappropriated in the manner required by the Protective Order it advocated for. The parties have yet to take a single deposition, largely because of JGR's delays and repeated attempts to move the goalposts. Such delays and tactics pose significant risks of prejudicing Mr. Gabehart's ability to adequately defend himself against JGR's claims.

After meeting and conferring with JGR, Mr. Gabehart and Spire did not accept the Proposed Addendum. JGR raised this issue with Judge Keesler in an informal discovery conference on June 25, 2026 and was subsequently directed to file this Motion.

## II.    ARGUMENT

JGR's Motion is an effort to gain a tactical advantage in an expedited case. The Proposed Addendum would fundamentally impair Mr. Gabehart's ability to defend himself by, among other things, barring his own counsel from discussing designated materials with him, requiring document review in a "virtual clean room," and prohibiting the inclusion of evidence in court filings. These restrictions are duplicative, disproportionate, and unnecessary in light of the existing Protective Order's comprehensive protections. JGR has shown no good cause for modifying the Protective Order, and the Court should deny the Motion.

### a.    The Protective Order Already Protects JGR's Confidential Information

The Protective Order establishes a comprehensive, three-tiered framework that provides substantial protection for confidential and trade secret materials. JGR itself designed and advocated for this framework, and the Court entered it after a contested hearing. JGR cannot now claim that the very protections it sought are inadequate without explaining what has changed.

By the Protective Order's terms, the OCO Designation—the most restrictive confidentiality tier currently available—is appropriate for "very sensitive and confidential material the disclosure of which to another Party or Non-Party, including their In-House Counsel, would create a substantial risk of serious harm that could not be avoided by less restrictive means." ECF No. 89 § 1(c). The OCO Designation therefore limits access exclusively to outside counsel of record, the Court, court reporters, and experts or mediators who have executed an applicable confidentiality agreement subjecting them to stringent non-disclosure obligations. ECF No. 89 §

3

6(c).  The OCO Designation also prohibits disclosure to in-house counsel or other party personnel, *id.*, which is precisely the restriction needed to prevent competitive use of trade secret information.

Moreover, discovery material designated OCO is covered by all other safeguards for Protected Material of any confidentiality tier in the Protective Order, including the following:

- *Section 4 (Use Limited to This Action)*: All Confidential Information must be "held and used by the person(s) receiving such information solely for use in connection with the above-captioned action."  ECF No. 89 § 4.  This provision already prevents any use of JGR's materials for competitive purposes.

- *Section 7 (Written Permission Needed to Publicly File)*: No party may file any Protected Material in the public record without written permission from the Designating Party or a court order.  ECF No. 89 § 7.  This provision addresses JGR's purported concern about public disclosure.

- *Section 8 (Use of Artificial Intelligence)*: No Receiving Party may submit or provide any confidential materials to any artificial intelligence platform or tool without the express, written consent of the Producing Party.  ECF No. 89 § 8.

- *Section 11 (Unauthorized Disclosure)*: The Protective Order already provides a comprehensive remedial framework in the event of any unauthorized disclosure, including immediate notification, best efforts to retrieve materials, and informing recipients of the Protective Order's terms.  ECF No. 89 § 11.

The preliminary injunction provides an additional layer of protection, separately prohibiting the disclosure and use of JGR's confidential information and trade secrets.  *See* ECF No. 78.  Any violation would subject the violator to contempt of court.  JGR has not explained why these combined protections are now suddenly inadequate.

JGR's argument that the OCO Designation addresses only *who* may access sensitive materials but not *how* they should be handled is a distinction without a meaningful difference. Mot. at 4.  The purposes of a protective order are to limit access to confidential information and to restrict its use or dissemination—both of which the existing Protective Order accomplishes.  JGR's demand for a virtual clean room and restrictions on counsel's ability to print, copy, or download information goes far beyond what is necessary or proportionate.

While Paragraph 14 of the Protective Order reserves the right of any party to apply to the Court for additional protections, Mot. at 12; ECF No. 89 ¶ 14, JGR still bears a burden to demonstrate that modifications are warranted, and it has failed to do so. JGR has not identified a single instance in which the existing Protective Order has proven inadequate.

Moreover, the discovery JGR now seeks is particularly unjustified in light of the existing injunctive relief. The TRO and preliminary injunction already expressly prohibit the very conduct JGR claims to be "investigating" through this expanded discovery protocol. *See* ECF No. 78. JGR has identified no evidence that the Court's orders have been violated. If the preliminary injunction is effective—as JGR has steadfastly maintained—then there is no basis to pursue sweeping discovery into Spire's current-season competition data on the theory that prohibited conduct may nonetheless be occurring. The proportionality concerns here are substantial: What justifies this significant additional, prejudicial burden when the conduct at issue is already enjoined and there is no evidence of any violation?

### b. JGR's Delay Warrants Denial of Its Motion

JGR's belated request for its Proposed Addendum belies any genuine claim of urgency or necessity. JGR was the driving force behind the original Protective Order and had every opportunity to include any trade-secret-specific provisions it deemed necessary. That it chose not to do so—only to demand them now, four months later with fact discovery closing in weeks— suggests that this Motion is driven by litigation strategy rather than genuine need.

Indeed, JGR has delayed at every turn. Despite Mr. Gabehart's full participation in the parties' forensic review protocol, JGR waited nearly eight weeks to request the content of any of

the thousands of user-created file listings and search hit directories provided by Mr. Gabehart.[2] This pattern of delay—demanding expedited procedures only to sit on the results—has continued throughout discovery.

To date, JGR has produced no tangible evidence that any trade secrets were actually misappropriated. Apart from Mr. Gabehart's possession of certain files—which JGR recovered through the forensic review protocol before filing suit—discovery has yielded nothing to support JGR's claims. The files at issue were identified and deleted during the initial forensic review conducted pursuant to the parties' stipulated protocol; they were not "misappropriated" and whisked away to Spire. JGR has had possession of these materials since before this litigation began and cannot point to a single instance of transmittal, distribution, or use by any third party.

JGR itself requested an aggressive discovery schedule with fact discovery closing on August 7, 2026. Yet JGR waited until June 12, 2026 to raise the need for a trade secret protocol and did not circulate the Proposed Addendum until June 18, 2026—one day after the June 17, 2026 deadline for substantial completion of document production. JGR then waited until July 1, 2026 to file this Motion—just over five weeks before the close of fact discovery.

JGR's delay is particularly notable in light of the 235 files at issue. Every one of these files was identified and deleted during the initial forensic review and has been in JGR's possession ever since. A substantial portion are patently irrelevant to JGR's trade secret claims—including photographs of non-JGR vehicles, Mr. Gabehart's personal notes related to his compensation, and even a photograph of the results of an internet speed test. This overreach speaks for itself.

---

[2] Per the parties' stipulated forensic review protocol, Mr. Gabehart began to provide the file directories contemplated by the protocol to JGR on April 29, 2026. JGR first requested the content of materials it believed contained JGR confidential information on June 23, 2026.

### c.  JGR's Proposed Addendum Prejudices Mr. Gabehart

Even if JGR could demonstrate a gap in the existing Protective Order, its Proposed Addendum goes far beyond what is necessary or proportionate to address any legitimate concern. The Proposed Addendum imposes extraordinary restrictions that would severely prejudice Mr. Gabehart's ability to participate in his own defense—restrictions that are particularly oppressive as applied to an individual defendant with limited resources. *See* Fed. R. Civ. P. 26(b)(1) (discovery must be "proportional to the needs of the case," considering "the parties' resources"). The Proposed Addendum's modifications are prejudicial in several respects:

### 1.  Prohibition of Counsel-Client Communications

Section 3(e) of the Proposed Addendum bars Mr. Gabehart's counsel from discussing with him—even in general terms—any documents that JGR designates as "Highly Confidential – Trade Secrets." ECF No. 101-1 at 5-6. Unlike the OCO Designation, which permits counsel to "orally discuss with their client the general substance of testimony or documents [designated OCO] to the extent reasonably necessary for litigation strategy and management purposes," ECF No. 89 § 3(c), the Proposed Addendum eliminates this critical caveat entirely.

This restriction would fundamentally impair counsel's ability to advise Mr. Gabehart and develop litigation strategy. How could Mr. Gabehart argue that JGR's alleged trade secrets are not, in fact, trade secrets if he—as an industry expert—is not allowed even to discuss the materials at issue? This restriction violates basic principles of due process and the attorney-client relationship.

### 2.  Virtual Clean Room

The Proposed Addendum's requirement that all trade secret materials be reviewed only in a cloud-hosted virtual desktop environment—with prohibitions on copying, downloading, external file transfer, and screen capture—is unduly burdensome. *See* ECF No. 101-1 at 5. These

7

restrictions would add significant delay and expense to an already compressed discovery schedule, serving no purpose beyond what the existing OCO Designation already achieves—namely, limiting access to authorized counsel and experts.

### 3. Prohibition on Filing and Quoting Trade Secret Materials

The Proposed Addendum prohibits Defendants from including excerpts or quotations of trade secret materials in pleadings, exhibits, expert reports, or any other court documents—permitting only production number references. ECF No. 101-1 at 6. This would severely limit Defendants' ability to present evidence; production number references alone cannot convey the substance of technical materials necessary for the Court to evaluate the parties' arguments. The existing Protective Order already addresses the risk of public disclosure through Section 7's requirement that parties obtain written permission or a court order before filing Protected Material publicly. ECF No. 89 § 7.

### 4. Expert Disclosure and Veto Procedure

The Proposed Addendum creates an expert disclosure procedure requiring a written request, a seven-day objection period, and a mandatory meet-and-confer process before any expert may access trade secret materials. *See* ECF No. 101-1 at 5. This effectively grants JGR veto power over Defendants' experts. With fact discovery closing on August 7, 2026 and opening expert reports due on August 26, 2026, these delays are particularly prejudicial. If Mr. Gabehart's counsel are barred from discussing trade-secret-designated materials with him, and at the same time cannot easily provide access to these materials to his experts, Mr. Gabehart is essentially barred from presenting any meaningful defense.

### d. Relevant Case Law Warrants Denial of JGR's Motion

"The party seeking to modify an existing protective order bears the burden of showing good cause for the modification." *Pergo, Inc. v. Faus Grp., Inc.*, No. 5:05-CV-50-FL(1), 2005

WL 8159324, at *4 (E.D.N.C. Sept. 20, 2005). Some courts "even require a showing of compelling need, improvidence in consenting to the order, or some extraordinary circumstance" before permitting modification. *Id.* (quoting *SmithKline Beecham Corp. v. Synthon Pharms.*, 210 F.R.D. 163, 166 (M.D.N.C. 2002)). Courts consider four factors: "(1) the reason and purpose for the modification, (2) whether a party has alternative means available to acquire the information, (3) the type of protective order which is at issue, and (4) the type of materials or documents which are sought." *Bell v. Am. Int'l Indus.*, 627 F. Supp. 3d 520, 529–30 (M.D.N.C. 2022). Each factor weighs against JGR.

As for the reason and purpose for the modification, JGR has not demonstrated that the existing OCO framework has been violated or is inadequate. JGR's stated reason—that the OCO tier does not address how materials are handled—does not constitute good cause where the existing framework already ensures that only outside counsel and approved experts have access, use is limited solely to this litigation, and any unauthorized disclosure triggers immediate remedial obligations. At bottom, JGR can show only a preference that the Proposed Addendum be adopted. This is not enough. *See Schaefer v. Fam. Med. Ctrs. of S.C., LLC*, No. 3:18-CV-02775, 2019 WL 2135675, at *14 (D.S.C. May 16, 2019).

With respect to the type of materials sought, JGR has not identified its purported trade secrets with the specificity required to justify the extraordinary protections it seeks. Despite months of litigation and discovery, JGR has yet to clearly define the specific information it seeks to protect, keeping all doors open in search of a theory to manufacture a case for misappropriation when no tangible evidence exists.

Unable to identify any evidence of actual misappropriation through ordinary discovery, JGR now pivots to an unpleaded theory—that Mr. Gabehart may have misappropriated yet-to-be-

identified "memorized" trade secrets. Because JGR understandably cannot identify or articulate the contents of Mr. Gabehart's memory, it instead seeks to "test" this novel theory by obtaining broad access to Spire's highly confidential, competitively sensitive information from the current race season—including racecar scans, setups, and similar technical data. JGR's transparent strategy is to compare Spire's proprietary information to its own and then have an expert opine that any similarities must be attributable to misappropriation. The Proposed Addendum is the vehicle designed to open the door to this fishing expedition. This Court should not permit JGR to use discovery tools as a means to pursue theories unsupported by its pleadings or the factual record.

JGR's belated attempt at specificity only underscores the overbreadth of its claims. In supplemental interrogatory responses served on July 1, 2026, JGR for the first time identified specific documents it contends are trade secrets. A substantial portion are described simply as "Photograph of JGR vehicle parts" or "Photograph of JGR vehicle parts located in shop." JGR designates dozens of these generic photographs as trade secrets—without any showing that they contain information with independent economic value, that competitors could derive benefit from them, or that JGR took reasonable measures to maintain their secrecy. The notion that ordinary photographs of vehicle parts constitute protectable trade secrets strains credulity – particularly in an open industry like NASCAR, where competitors spend some 36 weekends a year together in close proximity in the garage and their every movement is captured by broadcasters and podcasters for public consumption. Silicon Valley and source codes this is not.

Similarly suspect are JGR's alleged "setups." Despite JGR's repeated invocation of "racecar setups" as supposedly critical trade secrets, the documents JGR has actually produced are not final setups at all—they are simulation outputs reflecting potential car configurations that were never finalized or implemented. Simulation data showing what a car might look like under

hypothetical conditions is categorically different from the actual setup a team uses on race day. JGR's conflation of these concepts reveals that JGR's case is not about its so-called "crown jewels" but instead rests on preliminary modeling exercises dressed up as actionable trade secrets.

JGR's reference to "source code" is equally opaque. JGR has never explained what "source code" it allegedly possesses, what software it relates to, or how it could possibly have been misappropriated. It is far from clear that any relevant "source code" even exists in this context— NASCAR racing teams are not software companies, and JGR has offered no explanation of what proprietary code it developed or how Mr. Gabehart could have taken it.

Worse still, many of the photographs JGR claims as trade secrets *are not JGR materials at all*. A significant number—photographs dated between 2021 and 2023—are from work Mr. Gabehart performed for Port City Racecars, an unrelated company that sells cars, chassis, and parts to hobby racers. These photographs depict Super Late Model cars and pavement Late Model chassis—none of which are NASCAR-related, much less connected to JGR. JGR is thus misattributing Mr. Gabehart's independent work product as its own proprietary information. This overreach epitomizes the problem: JGR is weaponizing trade secret designations as a litigation tactic, regardless of whether the materials have any factual connection to JGR.

These overbroad designations go to the heart of whether JGR's alleged trade secrets are, in fact, trade secrets at all. Under both the DTSA and NCTSPA, a trade secret must derive independent economic value from not being generally known and must be the subject of reasonable efforts to maintain its secrecy. *See Sysco Mach. Corp. v. DCS USA Corp.*, 143 F.4th 222, 228 (4th Cir. 2025). JGR's sweeping designations raise serious questions about whether JGR is using the trade secret label to shield ordinary business information from scrutiny.

11

The fundamental irony of JGR's position should not be lost on the Court. JGR recovered its alleged trade secrets before filing this lawsuit; the forensic review ensured that any files Mr. Gabehart possessed were identified and deleted. There is no evidence that anything was ever shared with Spire. Yet despite having its materials back, JGR now seeks a draconian amendment so that it can obtain Spire's most sensitive competitive information under the guise of investigating conduct for which it has no proof. This is not a proper purpose for a protective order.

When "determining whether a modification is warranted, the court must balance the risk of inadvertent disclosure of confidential information against the risk that the protective order will impair the prosecution or defense of the opposing party's claims." *Pergo*, 2005 WL 8159324, at *4. Here, there has been no demonstrated risk of inadvertent disclosure of confidential information. However, the Proposed Addendum that JGR seeks will undoubtedly handicap the Defendants' ability to defend the claims against them. JGR's strategic delay in bringing this Motion, coupled with the prejudice it will cause both Mr. Gabehart and Spire, warrants its denial. In sum, "[a] natural feeling of unfairness arises when the rules are modified during the middle of the game, especially without very good cause," and the Court should decline to entertain this Motion. *SmithKline Beecham Corp*, 210 F.R.D. at 166.

### III.    CONCLUSION

For the foregoing reasons, Mr. Gabehart respectfully requests that the Court deny JGR's Motion to Supplement the Protective Order.

This the 10th day of July, 2026.

By: *s/ Cary B. Davis* ___
 Cary B. Davis
 N.C. Bar No. 36172
 cdavis@rbh.com

Spencer T. Wiles
N.C. Bar No. 53664
swiles@rbh.com

William M. Miller
N.C. Bar No. 36946
wmiller@rbh.com

Anna Claire Tucker
N.C. Bar No. 59457
atucker@rbh.com

ROBINSON, BRADSHAW & HINSON, P.A.
600 S. Tryon Street, Suite 2300
Charlotte, North Carolina 28202
(704) 377-2536

*Attorneys for Defendant Christopher Gabehart*

13

### IV. Artificial Intelligence Certification

Pursuant to the Court's June 18, 2024 Order, 3:24-mc-104, I hereby certify that:

- No artificial intelligence was employed in doing the legal research for the preparation of this document, with the exception of such artificial intelligence embedded in standard on-line legal research sources such as Westlaw, Lexis, FastCase, and Bloomberg; and

- Every statement and every citation to an authority contained in this document has been checked by an attorney at this firm and/or paralegal working at their direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 10th day of July, 2026.

/s/ *Cary B. Davis*
Cary B. Davis

14