# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | | |
|---|---|---|
| JOE GIBBS RACING, LLC, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No: 3:26-cv-00133 |
| | ) | |
| CHRISTOPHER GABEHART and SPIRE | ) | |
| MOTORSPORTS II, LLC, | ) | Honorable Susan C. Rodriguez |
| *Defendants.* | ) | |
| | ) | |
| | ) | |

**SPIRE'S MEMORANDUM OF LAW IN OPPOSITION TO JGR'S MOTION TO AMEND PROTECTIVE ORDER**

Pursuant to Rule 26(c), Defendant Spire Motorsports II, LLC ("Spire") submits this memorandum in opposition to JGR's Motion to Supplement the Protective Order, Dkt. 101.

**INTRODUCTION**

Months of discovery—including more than 80 third-party subpoenas issued by JGR—have produced no evidence that Spire obtained, possessed, or used JGR's confidential information or trade secrets. JGR did not identify the documents it now calls stolen trade secrets until July 1, and those documents are not the "crown jewels" JGR has repeatedly suggested. JGR also admits that its own forensic examiner deleted those materials before Gabehart began working for Spire. Dkt. 95 ¶ 80. Even if those documents remain relevant, they include numerous facially non-protectable materials, including more than 97 photos of racecars or parts (including cars and parts unrelated to JGR or the Cup Series), approximately 30 public or irrelevant documents (such as an internet speed test and a NASCAR rulebook page), and approximately 25 computer-simulation outputs—not the race-day "setups" JGR rushed to Court over.[1] JGR also admits in its latest discovery responses that it cannot identify any loss caused by the alleged misappropriation, let alone by Spire.

With no evidence of use (let alone misappropriation) by Spire and no tangible damages, JGR has pivoted: it now seeks Spire's most confidential trade secrets—laser-generated three-dimensional scans showing the aerodynamic properties of Spire's cars—so it can argue those scans somehow prove theft of JGR information. Spire opposes any such production, and JGR attempted to submit this scan dispute to Judge Keesler on July 6, 2026, who declined to conduct an informal conference on the issue and instead direct JGR to file a motion. Spire will oppose that motion in

---

[1] Copies of four examples—a photograph of a late model chassis, a NASCAR document sent to all teams, internet speed-test results, and a photograph of an equipment rack—are attached as Exhibits D, E, F, G, to the Declaration of Joshua Davey ("Davey Dec.").

1

due course.   If permitted, this new theory would require comparable scans from NASCAR, JGR, and other Cup Series teams, vastly expanding the scope, burden, and cost of this litigation. With fact discovery presumptively closing on August 7, there is no time to pursue that theory without derailing the schedule JGR demanded.

Because this new theory would require JGR to produce its own scans, JGR asks the Court to impose onerous amendments to the Protective Order it drafted, sought, and obtained over Spire's objection just months ago. JGR bears the burden to show both good cause and timeliness. It can show neither. Spire's scans are irrelevant and unduly burdensome to produce, making it unnecessary to modify the Protective Order. And apart from its new scan theory, JGR identifies no incident, deficiency, or development showing that the current "Outside Counsel Only" designation is inadequate.

JGR's proposed protocol is not a modest safeguard. It would bar counsel from downloading, transmitting, organizing, or using key documents; prohibit Spire from quoting critical evidence in court filings; and give JGR effective veto power over Spire's chosen experts. Those restrictions would compound the prejudice already caused by the Outside Counsel Only designation, all to support a speculative theory for which JGR has no evidence. The motion is also untimely: JGR has known since February 2026 that this case involves its alleged trade secrets, yet waited until June 12—weeks before the August 7 deadline—to first raise a trade-secret-specific protocol. The Court should deny the motion.

## BACKGROUND

### A.  JGR Files This Lawsuit Alleging Misappropriation by Gabehart and Spire

JGR's lawsuit alleges that Gabehart and Spire misappropriated JGR's confidential information and trade secrets. Across three complaints, JGR has identified categories of allegedly protected information, including racecar setups, simulation technology, performance and fuel-

2

consumption processes, compensation and bonus information, and sponsorship revenue. Dkt. 1 ¶ 13; Dkt. 8 ¶ 137; Dkt. 95 ¶ 14. The allegations arise from photographs Gabehart took of documents on his JGR laptop—including post-race analysis, setup-simulation files, chassis photographs for vehicles JGR does not race, and documents concerning race, pit-crew, and fuel-mileage evaluations—and saved to a "Past Set Ups" subfolder in a "Spire" folder on his personal Google Drive, which had synced to his JGR-issued laptop. Dkt. 95 ¶¶ 96–97. At JGR's insistence, those documents were deleted before Gabehart began working for Spire. Dkt. 9–4 ¶ 31. Neither the Complaint nor the preliminary-injunction record identified any actual evidence of *Spire's* misappropriation.

### B. JGR Demands, and the Court Grants, a Rigorous Protective Order

The parties negotiated a stipulated Protective Order to govern discovery. JGR drafted that Order to include an Outside Counsel Only designation for the "sensitive nature of potentially discoverable information in this case, namely Plaintiff's trade secrets and proprietary information." *See* Mar. 23 email from D. Williams to D. Grigg (attached to Davey Dec. as Exhibit A). Spire objected because that designation would prevent its in-house counsel from reviewing the most important documents in the case and impair counsel's ability to advise the client, but the Court entered JGR's proposed Protective Order on May 14, 2026. Dkt. 89.

### C. JGR Now Seeks Onerous New Limits After Identifying Its Alleged Trade Secrets for the First Time

After months of discovery yielded no evidence supporting JGR's misappropriation claims against Spire, JGR supplemented its interrogatory response on July 1—more than four months after filing suit and five weeks before the presumptive August 7 fact-discovery deadline—to identify 204 files it claims are both "Confidential Information" under Gabehart's JGR employment agreement and trade secrets under federal and North Carolina law. *See* JGR's Supplemental

3

Responses and Objections to Spire's First Set of Interrogatories (attached to Davey Dec. as Exhibit B) at 16–25. That same day, after significant delays and technical issues, Spire accessed JGR's "clean room," which contained 235 documents: the 204 identified files plus 31 unexplained additional files. The production is overinclusive on its face. It includes more than 100 photographs of parts, chassis, and racecars unrelated to JGR or significantly outdated (including two photographs of Gabehart's personal Lexus), 25 computer-simulation outputs with only partial non-final setup information, a NASCAR rulebook page, a blank HR interview form, and a one-weekend itinerary. Many documents are illegible, stripped of metadata, and produced only as images rather than in native format, frustrating meaningful review and use in this litigation. And all were deleted from Gabehart's possession *before* he began working for Spire. *See* Dkt. 9–4 ¶ 31.

Recognizing it cannot show that many of these materials are trade secrets—much less that Spire ever had or used them—JGR has shifted theories. It now demands Spire's most sensitive *actual* trade secrets so it can argue they show misappropriation of JGR's underlying car setups, apparently on a memory-based theory. JGR recently sought Judge Keesler's assistance to compel production of those scans. *See* July 6 email from D. Williams to D. Grigg (attached to Davey Dec. as Exhibit C). Because that theory would require JGR to produce its own scans, JGR now seeks to amend the existing Protective Order.[2]

JGR seeks to add a fourth tier of confidentiality: "Highly Confidential – Trade Secrets," defined as "extremely sensitive and confidential trade secrets the disclosure of which to another Party or Non-Party, including their in-House counsel, would create a substantial risk of serious

---

[2]Spire recognizes that the scans are the subject of a letter to Judge Keesler seeking resolution of a discovery dispute. But because the scan issue drives JGR's request to amend its own Protective Order and affects case scope and scheduling, Spire addresses it here so the Court has the full context.

harm that cannot be avoided by less restrictive means[.]" Dkt. 101-1 at 1. JGR also seeks to impose new procedures for review of such materials, including by requiring that they be viewed only "in an electronic 'secured room'—*i.e.*, a cloud-hosted virtual desktop configured to disable copy/paste, printing, and downloads; restrict access to authorized counsel and experts; and maintain a complete audit log." Dkt. 101-1 at 9. While experts and outside counsel may "take notes" in the secured room, "[s]uch notes may not copy the HIGHLY CONFIDENTIAL – TRADE SECRETS Information or Items to the notes." *Id.* at 10. The proposed protocol also prohibits the parties from "includ[ing] excerpts or quotations of HIGHLY CONFIDENTIAL – TRADE SECRETS Information or Items in a pleading, exhibit, expert report, discovery document, or any other Court document[,]" permitting only "reference[] the production number" without "revealing [its] content[s]." *Id.* at 11–12. Finally, JGR seeks to add new procedures for expert disclosures: a party seeking to disclose trade secret materials to an expert must first obtain the designating party's written consent—or, upon objection, seek court permission. *Id.* at 7–8.

## ARGUMENT

Federal Rule of Civil Procedure 26(c) governs the issuance of protective orders, including orders "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). "The party seeking to modify an existing protective order bears the burden of showing good cause for the modification." *Pergo, Inc. v. Faus Grp., Inc.*, No. 5:05-CV-50-FL(1), 2005 WL 8159324, at \*4 (E.D.N.C. Sept. 20, 2005) (citing *SmithKline Beecham Corp. v. Synthon Pharms., Ltd*, 210 F.R.D. 163, 166 (M.D.N.C. 2002)). Whether good cause exists depends upon at least four factors: "'(1) the reason and purpose for the modification, (2) whether a party has alternative means available to acquire the information, (3) the type of protective order which is at issue, and (4) the type of materials or documents which are sought.'" *Bell v. Am. Int'l Indus.*, 627 F. Supp. 3d 520,

5

529-30 (M.D.N.C. 2022) (quoting *SmithKline* Beecham, 210 F.R.D. at 166). While the rule does not set a time limit, "there is an implicit requirement that the motion must be timely," *Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 413 (M.D.N.C. 1991)"—and by extension, any motion for modification thereof must be as well.

## I.   JGR Has Not Shown Good Cause to Amend the Protective Order

### A. The Existing Protective Order Already Provides Robust Protections For JGR's Alleged Trade Secrets And There Have Been No New Trade Secrets Discovered Since JGR Proposed the Protective Order Already in Place

The primary factor—the "reason and purpose" for modification, *Bell*, 627 F. Supp. 3d at 529—defeats JGR's motion. JGR says its new protocol is needed "to protect JGR's most sensitive trade secrets from the irreparable harm that would result from their disclosure." Dkt 101 at 8–9. But the Protective Order *already* does that. JGR drafted an Order with three confidentiality tiers, including an OCO designation *specifically* designed to protect its "trade secrets and proprietary information." *See* Ex. A. That Order reflects JGR's judgment that OCO protection adequately safeguards its sensitive materials and bars disclosure to competitors and non-parties. Of the 204 documents JGR has identified as trade secrets are facially not trade secrets: they include, for instance, numerous photos of non-Cup Series racecars, public documents and materials NASCAR distributes to teams, and outputs of potential—not final—JGR setups. *See* Exhibits D, E, F, G. JGR's blatant over-designation of these materials highlights precisely why the proposed amendment's extra level of restriction is not necessary in this case.

JGR justifies its motion in part on the fear that its materials will be inadvertently "copied, transmitted, or retained once produced." Dkt. 101 at 9. But that fear is inherently speculative, unfounded, and already addressed by the existing Protective Order. All counsel in this case are bound by ethical and professional obligations and by the existing Protective Order's confidentiality

requirements. JGR points to no developments since the entry of the Protective Order—no incidents, discoveries, disclosures, violations, or deficiencies—that suggest even a minute risk of such inadvertent retention or disclosure. Having secured the precise protection it asked for, JGR cannot now claim that protection is inadequate without any evidence or justification.[3]

In contrast, the proposed protocol would significantly prejudice Spire's ability to defend itself. Its "clean room" environment limits counsel's and experts' ability to meaningfully review the most important documents in this case; prohibits filing or quoting key evidence in Court; and gives JGR effective veto rights over Spire's experts. As detailed above, the clean room has already frustrated Spire's review because many documents are illegible and stripped of metadata. This onerous protocol effectively prevents Spire's counsel from adequately advising its client, frustrates preparation for upcoming depositions, and limits Spire's ability to present evidence in its defense in an already compressed schedule—including evidence relevant to the threshold question of whether these documents are in fact trade secrets, which can be determined as a matter of law at summary judgment. *Synopsys, Inc. v. Risk Based Sec., Inc.*, 70 F.4th 759, 771–75 (4th Cir. 2023). JGR's proposal thus dramatically compounds the impairment that already exists under the Protective Order, all in the name of guarding against a purely speculative risk.

JGR's arguments in support of the proposed amendment are unavailing. JGR first asserts that the proposed amendment is appropriate simply "because the materials at issue consist of highly sensitive trade secrets." Dkt. 101 at 7. But JGR has known from the outset that this case

---

[3] JGR's motion is especially remarkable because, after months of discovery and a comprehensive forensic investigation, JGR still has no evidence that Gabehart transmitted any alleged trade secrets to Spire. If JGR cannot show a single transmission after reviewing multiple devices and accounts, its demand for an unprecedented clean-room protocol to prevent further disclosure is speculative. And as the accompanying declarations of Dax Gerringer, Wesley Gantt, Luke Lambert, Easton Price, Doug Powers, and Ryan Sparks explain, Gabehart has not disclosed, transmitted, or used any JGR information in connection with his employment at Spire.

would involve its alleged trade secrets, so it sought and obtained a comprehensive Protective Order specifically to address those risks. JGR offers no explanation for why those protections are now insufficient and JGR's belated production of the 204 documents over which it claims trade secret protection—a claim that is facially meritless in many cases—confirm the adequacy of the existing protections. And the cases upon which JGR relies are inapposite. *The Recon Group LLP v. Lowe's Home Centers, LLC*, No. 5:23-cv-163-KDB-DCK (W.D.N.C. Jan. 3, 2025), involved a *joint* protective order that *initially* contemplated heightened protections—not a motion to amend an existing order with no substantive justification. Nor did *Bridgetree, Inc. v. Red F Marketing, LLC*, No. 3:10-cv-00228-FDW, 2013 WL 443698, at *23–24 (W.D.N.C. Feb. 5, 2013), involve such a motion; there, the court imposed a "clean room" *after* a jury found the defendant guilty of misappropriation.

JGR's attempt to argue the protocol is necessary to address a "material gap" in the Protective Order fares no better. Dkt. 101 at 9. Any such gap is a problem of JGR's own making—JGR drafted the existing Protective Order. Critically, JGR does not point to a single problem caused by any supposed gap—because there is none. JGR invokes the "unique risks associated with highly sensitive technical materials," but those risks have been present since JGR filed this lawsuit, and discovery has been ongoing for months without incident. *Id.* at 10. If JGR truly had concerns, it should have incorporated the proposed protocol into the original Protective Order rather than sandbagging Defendants at the eleventh hour. Finally, the case JGR cites for a "significant risk" of inadvertent loss is inapposite, as it was decided over 40 years ago in an era of physical-document discovery with no electronic audit trail. *Id.* at 9; *see Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 775–76, 784 (9th Cir. 1983).

### B. JGR's Motion Is a Vehicle for Corporate Espionage into Irrelevant Aspects of Spire's Business

Implicitly recognizing its inability to justify amending the Protective Order, JGR attempts to paint the proposed amendment as being in Spire's best interest because "it could avail itself of the same protections for its own trade secret documentation." Dkt. 101 at 8. But JGR's request, the subject of a forthcoming motion before Judge Keesler, for "race by race setups and car scans," *id.*, would constitute an improper expansion of the scope of this case at the eleventh hour of discovery and does not justify the proposed amendment. While Spire will fully respond to JGR's forthcoming motion at the appropriate time, a brief discussion of the issue is important to illustrate that JGR's true intention—and the reason it seeks to amend the protective order—is to dramatically expand the scope of this litigation on a dubious, newly-minted theory of liability.

The scans JGR seeks are irrelevant to its trade-secret claims. JGR must identify with particularity the trade secrets it contends Defendants misappropriated. *See Makina Ve Kimya Endustrisi A.S. v. Zenith Quest Corp.*, 2025 U.S. Dist. LEXIS 116492, at *22 (W.D. Va. June 18, 2025). That identification allows the parties "to better determine the scope of discovery" and "help[s] define the extent to which the defendant can be compelled to produce its *own* trade secrets." *Id.* at *35 (internal citations and quotations omitted) (emphasis added); *see Ikon Off. Sols., Inc. v. Konica Minolta Bus. Sols., U.S.A., Inc.*, 2009 U.S. Dist. LEXIS 116372, at *11-15 (W.D.N.C. Nov. 25, 2009) (granting defendant's motion for a protective order against production of trade secrets in light of plaintiff's failure). Despite repeated requests, JGR waited until July 1 to identify its alleged trade secrets; even then, all 204 files had been deleted before Gabehart joined Spire.

But JGR does not contend Gabehart or Spire ever misappropriated JGR's scans, nor does it identify any scans among the 204 trade secrets at issue. Indeed, none of Spire's racecar setups and scans JGR now seeks are meaningful comparators to the 204 documents JGR has identified as

9

trade secrets. Setting aside documents where JGR's trade secret designation is patently frivolous (such as NASCAR rulebook materials or photos of non-JGR vehicles), the bulk of the purported trade secrets appear to be outputs of JGR simulations, not final setups. How Spire's scans—which do not show setups, but rather whether the aerodynamic surfaces and mechanical dimensions of Spire's racecars conform to NASCAR's requirements—are connected to these documents remains a mystery. Without identification of specific setups JGR contends Defendants misappropriated, there is no basis to require Spire to produce its own scans and setups. JGR's request is a blatant fishing expedition into a competitor's confidential materials. *See R. Ernest Cohn, D.C., D.A.B.C.O. v. Bond*, 953 F.2d 154, 159 (4th Cir. 1991) (affirming denial of motion for further discovery into irrelevant information because "discovery should not become a 'fishing expedition'") (quoting *Sandcrest Outpatient Servs., P.A. v. Cumberland Cnty. Hosp. Sys., Inc.*, 853 F.2d 1139, 1147 (4th Cir. 1988)).

JGR appears to assume that Spire's scans will permit reverse engineering of the underlying car setup. Spire will show in response to JGR's motion to compel that this theory is meritless. If discovery of Spire's scans is permitted, it would dramatically expand the scope of discovery, cost and time required to litigate this case. This is because even if it assumed that conclusions about setups could be drawn from scans, in order for a meaningful comparison to occur it would need to encompass historical and current scans from *all* (or at least most) 36 Cup Series entries, taken by NASCAR's own scanner, to assess whether any similarities are outliers. Cup Series teams engineer toward the same goal—maximizing downforce using NASCAR-specified components— so Spire must be allowed to show that any similarities reflect engineering within the laws of physics, not theft. Obtaining this information from NASCAR and other teams would take months,

increase costs, and be impossible before the August 7 deadline.[4] It would also prejudice Spire by forcing expert discovery before Spire has the factual record needed to defend itself.[5]

### C. In Any Event, JGR's Motion Is Untimely

Although Rule 26(c) prescribes no deadline for protective order motions, "there is an implicit requirement that the motion . . . must be timely." *Brittain*, 136 F.R.D. at 413.

JGR has known since February 2026 that this case would involve its alleged trade secrets and that it would need to produce them in discovery. JGR moved for the existing Protective Order in March, and the parties have engaged in expedited and formal discovery for months. Yet JGR never said the protections it sought were insufficient. Instead, it waited four months—and until seven weeks before the August 7 deadline—to raise the issue.

The proposed protocol's restrictions—including limiting review to the clean room, barring discussion with Spire, prohibiting electronic notetaking, the expert-objection process, and limiting inclusion of trade secret materials in court pleadings—will substantially compress the time available for Spire's counsel and experts to review and respond to the most important documents in this case. The protocol all but ensures that Spire cannot conduct a thorough, informed review of complex technical materials before the discovery window closes—effectively foreclosing supplemental discovery, depositions, or expert consultations within the existing schedule. Given

---

[4] NASCAR has objected to the scan subpoena and intends to move to quash. JGR has repeatedly extended NASCAR's compliance deadline, including because JGR has not provided proposed search terms or custodians. There is no reasonable chance that NASCAR's motion, much less any production after resolution, will be complete before the fact-discovery deadline.

[5] If Judge Keesler or this Court orders production of Spire's scans, additional protections beyond the current Protective Order may be necessary, but the parties and NASCAR should negotiate the details with an agreed-upon vendor at the appropriate time.

11

these serious burdens, JGR's conduct does not reflect reasonable diligence; it reflects a party that sat on its hands and then sandbagged its opponent at the eleventh hour.

JGR attempts to excuse this delay by asserting that its proposal came "well in advance of any qualifying production." Dkt. 101-2 at 3. But that framing obscures what actually occurred: despite months of requests, JGR delayed providing Defendants with any access to its alleged trade secrets until July 1—and even then, produced those documents only in a virtual clean room plagued by the technical difficulties that continue to frustrate Defendants' ability to meaningfully review these documents and prepare for depositions within the allocated timeframe. *See supra* p. 4.

## CONCLUSION

The Court should deny the Motion to Supplement the Protective Order.

Dated: July 10, 2026.

By: */s/ Joshua D. Davey*
Joshua D. Davey (N.C. Bar No. 35246)
Jason D. Evans (N.C. Bar No. 27808)
Lawrence J. Cameron (N.C. Bar No. 41922)
Troy C. Homesley, III (N.C. Bar No. 62148)
Anais M. Jaccard (N.C. Bar No. 58438)
Ben E. Whorf (N.C. Bar No. 64279)
**TROUTMAN PEPPER LOCKE LLP**
301 S. College St., 34th Floor
Charlotte, NC 28202
Telephone: (704) 916-1503
joshua.davey@troutman.com
lawrence.cameron@troutman.com
troy.homesley@troutman.com
anais.jaccard@troutman.com
ben.whorf@troutman.com

John S. "Evan" Gibbs III – Pro Hac Vice
**TROUTMAN PEPPER LOCKE LLP**
600 Peachtree St, NE #3000
Atlanta, GA 30308
Telephone: (404) 885-3093

12

evan.gibbs@troutman.com

13

## CERTIFICATION PURSUANT TO THE COURT'S ORDER IN RE: USE OF ARTIFICIAL INTELLIGENCE

I hereby certify the following in preparation of this Motion:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his or her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Dated: July 10, 2026.

*/s/ Joshua D. Davey*

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 10, 2026, I filed the foregoing Spire's Memorandum of Law in Opposition to JGR's Motion to Amend the Protective Order through the Court's ECF system, which will serve all counsel of record.

Dated: July 10, 2026.

*/s/ Joshua D. Davey*

15