# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

JOE GIBBS RACING, LLC,

     Plaintiff,

v.

CHRISTOPHER GABEHART and SPIRE
MOTORSPORTS II, LLC,

     Defendants.

Case No. 3:26-cv-00133-SCR-DCK

## DEFENDANT SPIRE MOTORSPORTS II, LLC'S BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INFORMATION

Pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, Defendant Spire Motorsports II, LLC ("Spire"), by and through counsel, submits this Brief in Support of its Motion to Compel Plaintiff Joe Gibbs Racing, LLC's ("JGR") production of documents and information in response to Spire's Interrogatory No. 6 and Request for Production Nos. 1, 3, 8, 10, 14, 15, 16, 22, and 23. While JGR has represented that it will eventually produce some of the requested documents and information, it refuses to do so on any given date. With the close of discovery approaching on August 7, 2026, and with depositions scheduled in the coming days, Spire has no choice but to seek immediate relief from the Court.

## BACKGROUND

JGR has consistently made demands for discovery at a pace and volume disproportionate to the scope of this case, despite dragging its feet on multiple fronts and despite the dubious nature of its claims against Spire. At the outset of this litigation, JGR represented to the Court that it was prepared to proceed swiftly with discovery and, on that basis, obtained a significantly abbreviated discovery schedule over Defendants' objections. JGR's discovery schedule mandated a June 17,

1

2026 deadline for substantial production of documents, a deadline that JGR missed despite Spire's repeated attempts to keep the case on track. JGR did not even make its first production (outside of a limited production during the expedited discovery process) until July 3, 2026—it consisted of a grand total of 85 documents.

Now, with less than a month left in discovery, JGR has continued to withhold known, responsive documents across a variety of subjects. JGR did not produce the most important documents of all—the alleged trade secrets that it contends stand at the core of this case—until July 1, 2026, even though JGR has had them since December 2025, well before it filed this lawsuit.

Despite delaying production of its own documents, JGR has engaged in aggressive discovery on all fronts. JGR has served over eighty third-party subpoenas, nineteen of which were served on Spire employees and independent contractors. And JGR has requested reaching, burdensome discovery into every corner of Spire's business, including Spire's highly proprietary information, that has little or no bearing on any parties' claims or defenses.

Spire has worked diligently to comply with JGR's demanding discovery schedule, having produced nearly 600 documents across over 1,600 pages[1] since discovery commenced just months ago. Gabehart, too, has produced over 800 documents spanning over 1,500 pages. Yet, despite the fact that JGR alleges that its information has been misappropriated and carries the burden of proving as much, JGR has produced only 800 or so documents and continues to withhold key documents and information.

Spire served a First Set of Interrogatories and First Set of Requests for Production on JGR on May 11, 2026 and Second Set of Requests for Production on May 28, 2026. JGR served its

---

[1] These figures do not include the documents that have been or will be produced in response to the nineteen third-party subpoenas JGR served on Spire's employees and independent contractors.

2

responses on June 10 and 29, 2026, objecting on various grounds and purporting to withhold batches of documents and information. *See* JGR's Resp. to Interrog., attached hereto as **Exhibit A**; JGR's Resp. to 1st Req., attached hereto as **Exhibit B**; JGR's Resp. to 2d Req., attached hereto as **Exhibit C**. The parties met and conferred on the various deficiencies in JGR's responses, prompting JGR to serve supplemental response on July 1, 2026. *See* JGR's Supp. Resp. to Interrog., attached hereto as **Exhibit D**; JGR's Supp. Resp. to 1st Req., attached hereto as **Exhibit E**. JGR's supplemental responses, however, did not remedy in full the deficiencies Spire had identified, specifically with respect to Interrogatory No. 6 and Request for Production Nos. 1, 3, 8, 10, 14, 15, 16, 22, and 23.

Spire met and conferred with JGR over a more than two-week period from June 23 to July 9, 2026, regarding JGR's discovery responses, including during meet-and-confer conferences on June 23, June 30, and July 7, and was unable to resolve the disputes listed below. With the close of discovery just weeks away and depositions already under way, Spire is left with no recourse but to seek relief from the Court.

## ARGUMENT

"The purpose of discovery is to provide a mechanism for making relevant information available to the litigants." *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 238 (M.D.N.C. 2010) (quoting Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment). Thus, "[u]nless otherwise limited by court order, …. [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, "a party may move for an order compelling … discovery … if a party fails to answer an interrogatory" or "fails to produce

documents."  Fed. R. Civ. P. 37(a).  Whether to grant or deny a motion to compel is within the district court's discretion.  *See Nester v. Poston*, 200 F.R.D. 268, 270 (W.D.N.C. 2001).

JGR has failed to produce relevant documents and information in response to discovery requests touching on the employment agreement that Gabehart allegedly breached, the trade secrets that Gabehart and Spire allegedly misappropriated, and even the damages that JGR allegedly suffered.  The documents and information that Spire seeks go to the heart of the parties' claims and defenses and must be produced.

### A.    JGR Unilaterally Narrows Spire's Interrogatory No. 6.[2]

Spire's Interrogatory No. 6 seeks information regarding JGR's practice of "enforcing or not enforcing non-competition or non-solicitation provisions against employees in roles comparable to or similar to Gabehart's."  In response, JGR unilaterally narrows the scope of the Interrogatory, responding that "there have been no departures of JGR personnel *who were similar in seniority to Gabehart* under circumstances that similarly implicated a non-competition or non-solicitation provision of an employment agreement *due to the misappropriation of JG's trade secrets or confidential information while the employee was in active discussions about employees with a competing team*."  As a result, JGR effectively excludes nearly every departure of competition personnel who worked for JGR during the relevant time period.  *See* JGR's Resp. to Interrog. No. 13 (listing over 100 former or current JGR competition employes that are—in JGR's view—not "similar in seniority to Gabehart").

---

[2] JGR still has not even responded to Spire's Interrogatory No. 21, even though its response was due on June 10, 2026.  *See* **Exhibit A**.  JGR appears to have simply ignored Interrogatory No. 21 altogether and, despite repeated requests from Spire, JGR has refused to provide a date certain by which it will respond.  Spire reserves the right to bring this straightforward issue to the Court if not remedied promptly.

4

JGR's prior enforcement of non-competition provisions is squarely relevant to (1) the extent to which JGR takes steps to protect its purported trade secrets and confidential information; and (2) the extent to which JGR has a legitimate business purpose for enforcing its non-compete agreements. *See, e.g.*, *Makina ve Kimya Endustrisi A.S. v. Zenith Quest Corp.*, 2025 WL 1709679, at *20 (W.D. Va. June 18, 2025) (compelling production of non-disclosure agreements with third-party vendors as "relevant to whether [plaintiff] took reasonable steps to maintain the secrecy of its alleged trade secrets"). At the very least, JGR should be ordered to provide the requested information for each individual listed in response to Interrogatory No. 13 and their counterparts for the period from January 1, 2022, to the present.

**B.** **JGR is Withholding Responsive Documents in Response to Spire's Requests for Production**

As an initial matter, JGR repeatedly objects, in conclusory fashion, that it will "not produce any of its confidential information and trade secrets except for those that it contends were misappropriated by Defendants." *E.g.*, JGR's Resp. to Req. Nos. 3, 9, 10. That categorical exclusion of relevant, responsive documents is baseless. JGR specifically moved the Court for, and obtained, an Outside Counsel Only designation in the applicable protective order that protects against disclosure of documents bearing that designation. JGR's attempt to exclude all of its "confidential information and trade secrets" from discovery (except for the few allegedly misappropriated ones) leaves an unwarranted, potentially massive hole in JGR's production.

For example, a large category of responsive documents are documents demonstrating the precise scope of Gabehart's role at JGR. JGR's categorical "confidential information and trade secrets" exclusion would allow it to withhold ***all*** of those documents that say a word about JGR's "confidential information" (whatever that may mean to JGR). JGR cannot withhold otherwise responsive documents solely on the grounds that such documents contain confidential information

5

or purported trade secrets—particularly given the *three-tier* protective order that JGR advocated for. Dkt.89; *see MDK, Inc. v. Mike's Train House, Inc.*, 27 F.3d 116, 120 (4th Cir. 1994) (observing that "trade secrets have widely been held to be discoverable upon appropriate findings and with an appropriate protective order"); *Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 417 (M.D.N.C. 1991) (compelling production of trade secrets subject to protective order).

JGR similarly objects that certain documents may be subject to third-party confidentiality concerns. *E.g.*, JGR's Resp. to Req. No. 8. Third-party confidentiality concerns do not warrant withholding otherwise discoverable documents. *See Covil Corp. v. U.S. Fidelity & Guaranty Co.*, 544 F. Supp. 3d 588, 604 (M.D.N.C. 2021) (compelling production of documents subject to confidentiality agreement); *Virmani v. Novant Health Inc.*, 259 F.3d 284, 287 n.4 (4th Cir. 2001) (observing that "[a]n appropriate protective order can alleviate problems and concerns regarding both confidentiality and scope of the discovery material produced in a particular case"). Moreover, JGR fails to identify which third parties are implicated or which documents are being withheld on that basis. If JGR withholds any documents on this basis (including alliance agreements or agreements with other race teams), JGR should not be permitted to use those documents later in the litigation. *See* Fed. R. Civ. P. 37(c).

### i. JGR is Withholding Known Communications Relating to Gabehart's Employment Agreement

Spire's Request for Production No. 1 seeks written agreements between JGR and Gabehart and communications relating to any such agreements. Despite agreeing to produce communications concerning such agreements, JGR has nevertheless failed to produce the central communications in this dispute—communications concerning the negotiation of Gabehart's employment agreement, including the non-compete provision and the carve-out embedded in that agreement. These communications are relevant to the scope and duration of Gabehart's non-

6

competition agreement and JGR's allegations that Spire tortiously interfered with that agreement. *See* 2d Am. Compl. ¶¶ 175, 181.  And they undoubtedly exist because, as JGR alleges, Gabehart bargained for a bespoke carve-out to his non-compete agreement.  *See, e.g.*, 2d Am. Compl. ¶ 31 (alleging that "Gabehart negotiated the Agreement's terms including, in particular, the language regarding his ability to accept employment with a competitor of JGR following the end of his employment"); *see also id.* at ¶¶ 51, 54.  JGR should therefore be compelled to produce communications relating to its agreements with Gabehart.  *See Nester*, 200 F.R.D. at 271 (granting motion to compel production of documents relating to whether defendant violated a non-compete agreement).

> ii.  JGR is Withholding Key Documents and Information Relating to the Information Allegedly Misappropriated

Spire's Request for Production Nos. 3, 5, and 19 seek documents relating to the allegedly misappropriated information and any forensic examination in connection therewith, documents which JGR has agreed to produce.  Critically, though, JGR has not produced the metadata associated with each of the trade secrets allegedly misappropriated, which are in the possession of JGR's pre-litigation forensic examiner pursuant to the forensic protocol between JGR and Gabehart.  Notwithstanding JGR's and Gabehart's agreement to quarantine the metadata with the forensic examiner, this metadata is relevant to, among other things, the chain of custody, alleged impropriety of access, timing of creation or modification, the timing of Gabehart's employment with Spire, and the very source (and even ownership) of the purported JGR trade secrets at the core of this case.

Nor has JGR produced original documents of the alleged trade secrets it claims Gabehart partially photographed or screenshotted.  The complete source documents and datasets for these partial "trade secrets" are likewise relevant to show, for instance, where the "trade secrets"

originated on JGR's system, who used them and how they were used (e.g., their value, if any), the ownership of the alleged trade secrets, whether the alleged "trade secrets" are in fact a small percentage of a much larger composite, and the timing of Gabehart's alleged misappropriation. *See, e.g.*, *Decision Insights, Inc. v. Sentia Grp., Inc.*, 311 Fed. Appx. 586, 594 (4th Cir. 2009) (holding that "twelve individual portions of the program within [plaintiff's] source code" did not independently constitute a trade secret given that "if each individual process is considered independently, the information provided … is incomplete and fragmented").

JGR's failure to produce all documents and metadata responsive to these Requests for Production make it impossible for Spire to verify when these documents were last accessed, who created them, where they are housed at JGR, whether they are trade secrets at all, and whether they belong to JGR at all.

       iii.    <u>JGR is Withholding Confidentiality Agreements with Competitors on the Basis of Unwarranted Confidentiality Concerns</u>

Request for Production No. 8 seeks "agreements, contracts, or nondisclosure agreements that required any third party … who received access to Allegedly Misappropriated Information … to maintain the confidentiality or secrecy of such information." JGR acknowledges that it has shared its alleged trade secrets extensively with direct competitors and Toyota Racing Development. *See* JGR's Resp. to Interrog. No. 3. JGR has also relied on a declaration from Toyota Racing Development in an attempt to establish the value and importance of JGR's alleged confidential information and trade secrets. *See* Dkt.35-11. Yet JGR has refused to produce the agreements with 23XI, Legacy Motor Club, and Toyota Racing Development that it contends protect the confidentiality of its trade secrets, relying instead on purported third-party confidentiality protections.

Whether and to what extent JGR safeguarded the confidentiality of its alleged trade secrets is unquestionably relevant. *E.g.*, *Sysco Machinery Corp. v. DCS USA Corp.*, 143 F.4th 222, 229 (4th Cir. 2025) ("[A] trade secret is extinguished when it is disclosed to others who are under no obligation to protect the confidentiality of the information."). To the extent JGR intends to rely on its agreements with competitors and Toyota Racing Development to justify its broad sharing of its alleged trade secrets, the agreements must be produced. *See, e.g.*, *Makina*, 2025 WL 1709679, at *20 (compelling production of non-disclosure agreements with third-party vendors as "relevant to whether [plaintiff] took reasonable steps to maintain the secrecy of its alleged trade secrets"); *see also Covil*, 544 F. Supp. 3d at 604 (compelling production of confidential agreements). These documents are also relevant to evaluating JGR's claimed damages, because JGR has tethered the value of the allegedly misappropriated pictures to the value of its agreement with 23XI.

iv. JGR is Withholding All Documents Relating to its Alleged Damages

Spire's Request for Production No. 10 seeks documents "sufficient to show the economic value" of JGR's allegedly misappropriated trade secrets. JGR has not produced any documentation showing the economic value of its alleged trade secrets (or the costs of creating them, for that matter) and has categorically stated that it "will not produce any of its confidential information and trade secrets except for those that it contends were misappropriated." JGR's Resp. to Interrog. No. 10. Responsive documents that are highly probative of a central issue in the case—JGR's alleged damages—must be produced despite JGR's contention that they are trade secrets or confidential information. *See, e.g.*, *U.S. Hosiery Corp. v. The Gap, Inc.*, 707 F. Supp. 795, 799 (W.D.N.C. 1988) (compelling production of documents "which may support Plaintiffs' claims for lost profits allegedly suffered through The Gap's use of the trademark"); *Kinetic Concepts*, 268

9

F.R.D. at 253 (compelling production of documents concerning plaintiff's allegations as to damages).

> v.  JGR Unilaterally Narrows Spire's Request for Documents Relating to JGR's Prior Enforcement of Non-Compete Agreements

Spire's Request for Production No. 15 seeks documents relating to JGR's "efforts (or lack thereof) to enforce any other non-solicitation, non-compete, or employment agreement" between JGR and any former or current employee.  In response, JGR improperly narrows the scope of the Request to documents relating to its enforcement or non-enforcement of such agreements only "*to the extent credible violations of such agreements arose*."  JGR Resp. to Req. No. 15.  In so doing, JGR effectively excludes all prior instances of waiver or non-enforcement of a non-compete or non-solicitation provision, as there would be no "credible violation" of a non-compete if JGR waived it or chose not to enforce it.  Moreover, the *credibility* of a violation has no bearing on the *existence* of a violation.

All evidence relating to any violation (regardless of whether or not JGR believed it to be "credible") is relevant to the extent to which JGR takes steps to protect its purported trade secrets and should therefore be produced.  *See Makina*, 2025 WL 1709679, at *20 (compelling production of non-disclosure agreements as "relevant to whether [plaintiff] took reasonable steps to maintain the secrecy of its alleged trade secrets"); *see also Beach Mart, Inc. v. L & L Wings, Inc.*, 302 F.R.D. 396, 405 (E.D.N.C. 2014) (observing that "discovery requests should not be read or interpreted in an artificially restrictive or hypertechnical manner to avoid disclosure of information fairly covered by the discovery request" and awarding sanctions for withholding responsive documents (citation omitted)).

vi.  **JGR is Withholding Documents Relating to Services Performed by Gabehart at JGR**

Spire's Request No. 16 seeks documents and communications relating to Gabehart's roles as Competition Director and Crew Chief for the JGR No. 54 car.  JGR has agreed to produce responsive documents.  *See* JGR's Resp. to Req. No. 16.  And JGR has offered a laundry list of services it contends Gabehart performed prior to his departure from JGR.  *See* JGR's Resp. to Interrog. No. 10.  But JGR has not produced *any actual documents* showing that Gabehart *actually performed* those services.  The nature of the services Gabehart *actually performed* for JGR in the year leading up to his departure are squarely relevant to the scope of his non-competition agreement and JGR's claims arising thereunder.  JGR must produce documents sufficient to demonstrate that Gabehart performed the services it claims he performed.  *See Nester*, 200 F.R.D. at 271 (granting motion to compel production of documents relating to whether defendant violated a non-compete agreement).

vii.  **JGR is Withholding Documents Relating to the Cause of its Alleged Damages**

Spire's Request for Production No. 22 seeks documents relating to factors *other than Defendants' alleged conduct* that could have contributed to the damages JGR claims to have suffered.  JGR evidently intends to premise its claim for damages partly on decreased financial performance.  *See, e.g.*, 2d Am. Compl. ¶¶ 10, 19–20, 182.  And JGR agrees that  "NASCAR is a sport where countless factors impact performance in significant ways." JGR Resp. to Req. No. 22.  Yet JGR impermissibly narrows its production to documents "sufficient to show" "material factors" that "may have affected" its competitive and financial performance and states, categorically, that it "will not produce every document relating to each requested category of JGR's performance." *Id.*

11

To meaningfully determine damages in this case, Spire is entitled to all documents relating to the factors that may have impacted JGR's financial and competitive performance. *See 360 Mortgage Grp, LLC v. Home Point Fin. Corp.*, 740 Fed. Appx. 263, 267 (4th Cir. 2018) (holding that "a plaintiff may not recover for misappropriation if a defendant's use of a trade secret had no adverse economic effect upon the owner of the trade secret" and thus "must present evidence that the misappropriation was the proximate cause of those damages"); *see also Spring Comm'ns Co. L.P. v. Charter Comm'ns, Inc.*, 341 F.R.D. 291, 307 (D. Kan. 2022) (compelling production of information relating to "each customer that Sprint contends it lost, or lost business or revenue from, as a result of the alleged trade secret misappropriation"); *Hysitron Incorp. V. MTS Sys. Corp.*, 2008 WL 11383669, at *4 (D. Minn. Jan. 29, 2008) (compelling production of market share reports and documents concerning the parties' competitive relationship as relevant to damages for infringement); *Uni-Sys., LLC v. U.S. Tennis Association*, 2021 WL 790748, at *4 (E.D.N.Y. Mar. 31, 2021) (compelling production of financial documents as relevant to plaintiff's "baseline profitability before the alleged [misappropriation]" (citation omitted)).

### viii. JGR is Withholding the Same Financial Documents It Seeks from Spire

Spire's Request for Production No. 23 similarly seeks documents relating to JGR's financial performance. Despite the fact that it is JGR (not Spire) that will have to prove its damages in this case, JGR refuses to produce many of the same financial documents that it asks Spire to produce. This is surprising given that JGR's production of financial data should be *broader* than Spire's—after all, it is *JGR* who seeks recompense for damages it allegedly suffered. Nevertheless, Spire is willing to agree to JGR's narrowed production if JGR agrees that Spire's production of annual financial statements will satisfy its demands for Spire's financial documents.

12

### C.	Spire is Entitled to Fees and Costs

Spire is entitled to its reasonable attorney's fees and costs incurred in seeking this discovery from JGR.  Spire filed the present motion after attempting in good faith to obtain the discovery without court action; JGR's failure to meaningfully respond to the Spire's discovery requests was not substantially justified; and no other circumstances make an award of expenses unjust.  *See* Fed. R. Civ. P. 37(a)(5)(A).

### <u>CONCLUSION</u>

For all these reasons, Spire respectfully requests that the Court grant this Motion, compel JGR to produce the requested documents and information, and award Spire its reasonable fees and costs incurred.

This the 14th day of July, 2026.

By: */s/ Jason D. Evans*
Joshua D. Davey (N.C. Bar No. 35246)
Jason D. Evans (N.C. Bar No. 27808)
Lawrence J. Cameron (N.C. Bar No. 41922)
Troy C. Homesley, III (N.C. Bar No. 62148)
Anais M. Jaccard (N.C. Bar No. 58438)
Ben E. Whorf (N.C. Bar No. 64279)
**TROUTMAN PEPPER LOCKE LLP**
301 S. College St., 34th Floor
Charlotte, NC 28202
Telephone: (704) 916-1503
joshua.davey@troutman.com
lawrence.cameron@troutman.com
troy.homesley@troutman.com
anais.jaccard@troutman.com
ben.whorf@troutman.com

John S. "Evan" Gibbs III – Pro Hac Vice
**TROUTMAN PEPPER LOCKE LLP**
600 Peachtree St, NE #3000
Atlanta, GA 30308
Telephone: (404) 885-3093
evan.gibbs@troutman.com

13

## CERTIFICATION PURSUANT TO THE COURT'S ORDER IN RE: USE OF ARTIFICIAL INTELLIGENCE

I hereby certify the following in preparation of this Motion:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his or her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This is the 14th day of July, 2026.

*/s/ Jason D. Evans*

14

I hereby certify that on July 14, 2026, I filed the foregoing Defendant Spire Motorsport II, LLC's Brief in Support of Motion to Compel Production of Documents and Information on the Court's ECF system through which all counsel of record will be served.

This is the 14th day of July, 2026.

*/s/ Jason D. Evans*