# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### Case No. 3:26-CV-00133-SCR-DCK

JOE GIBBS RACING, LLC,

        Plaintiff,

   v.

CHRISTOPHER GABEHART and SPIRE
MOTORSPORTS, LLC,

        Defendants.

**PLAINTIFF'S RESPONSES AND
OBJECTIONS TO DEFENDANT
SPIRE MOTORSPORTS, LLC'S
FIRST SET OF INTERROGATORIES**

Plaintiff Joe Gibbs Racing, LLC ("JGR") hereby responds and objects to Defendant Spire

Motorsports, LLC's ("Spire") First Set of Interrogatories, dated May 11, 2026 (the

"Interrogatories").

## GENERAL RESPONSES AND OBJECTIONS

The following General Responses and Objections are incorporated into each specific

objection and response as if fully set forth therein:

1.     JGR's responses are based on information presently known to JGR after its diligent

and best efforts to respond to Spire's Interrogatories based on the investigation it has conducted to

date. There may be information relating to the subject matter of Spire's Interrogatories that JGR

has not yet located, identified, or reviewed, despite JGR's diligent and best efforts to do so.

Accordingly, JGR reserves the right to rely on facts, documents, or other information that may

develop or subsequently come to its attention and to supplement the general and specific objections

and responses to Spire's Interrogatories as required by the Federal Rules of Civil Procedure.

2.     JGR objects to certain Interrogatories to the extent they seek information protected

by the attorney-client privilege, the attorney work-product doctrine, or other applicable privilege

1

or immunity from discovery. JGR hereby claims such privileges and protections and excludes privileged or protected information from its responses. Any disclosure of such privileged or protected information is inadvertent and is not intended to waive those privileges or protections. In the event that a response that is privileged or exempt from disclosure is provided by JGR, it will have been provided inadvertently and shall not constitute a waiver of applicable privileges and/or protections.

3. JGR objects to the use of compound Interrogatories that include subparts that should be treated as distinct interrogatories for purposes of compliance with the Court's Scheduling Order. When each subpart is properly counted as a distinct interrogatory, Spire's total number of interrogatories far exceeds the limit of 25 interrogatories permitted by the Court.

4. JGR objects to the definition of the term "Spire" in that it refers to Spire Motorsports, LLC rather than Spire Motorsports II, LLC, the intended Defendant, as reflected in JGR's Motion for Leave to Amend First Amended Complaint (Dkt. 84).

5. JGR objects to each Interrogatory to the extent it seeks information irrelevant to the issues raised in this lawsuit, is not reasonably calculated to lead to the discovery of admissible evidence, or is otherwise inconsistent with or enlarges upon the Federal Rules of Civil Procedure.

6. JGR objects to the Interrogatories that constitute contention interrogatories on the basis that they are premature and do not require a response at this time.

7. JGR objects to each Interrogatory to the extent it is vague, ambiguous, overbroad, unduly burdensome, oppressive, exceeds the bounds of the discovery limits set in this case, or otherwise not reasonably limited in time or scope, or not proportional to the needs of the case.

2

8. JGR objects to each Interrogatory to the extent it requests information or materials not in JGR's possession, custody, or control, and not in the possession of persons or entities that are under JGR's control.

9. JGR objects to each Interrogatory to the extent it requests information or materials that have already been provided to Spire or are in Spire's possession, custody, or control.

10. JGR objects to each Interrogatory to the extent it is not limited in scope or in time and is therefore overbroad, unduly burdensome, and not proportional to the needs of the case.

11. JGR objects to the definition of the terms "Plaintiff," "JGR," and "You" as overbroad and unduly burdensome in that it includes Joe Gibbs Racing, LLC's "present or former members, officers directors, shareholders, employees, or agents," as well as "agents, vendors, [and] independent contractors," which are not properly identified and so numerous as to impose a burden not required by the Federal Rules of Civil Procedure, the Local Rules, or any applicable Court Order. JGR further objects to the definition of the terms "Plaintiff," "JGR," and "You" as vague and ambiguous in that it circularly includes "agents, vendors, independent contractors engaged, or any entities engaged by You to provide services to You."

12. JGR objects to the definitions of "identify" to the extent they impose a burden not required by the Federal Rules of Civil Procedure. JGR will interpret "identify" within its ordinary meaning and understanding, and will provide sufficient information, to the extent known by JGR, to allow Gabehart to unambiguously ascertain the identity of the referenced document, individual, or entity.

13. JGR objects to the definition of "relating to," "relate to," and "concerning" as overbroad and unduly burdensome in that it imposes a burden not required by the Federal Rules

3

of Civil Procedure. JGR will interpret "relating to," "relate to," and "concerning" within their normally understood and intended meanings.

14. JGR objects to the definition of the term "Trade Understanding" in that it refers to an understanding that JGR does not agree existed.

15. JGR objects to the defined term "Allegedly Misappropriated Information" in that it characterizes as "alleged" the admitted misappropriation of JGR's trade secrets and confidential information, the full extent of which is currently unknown.

16. JGR objects to the definitions of "Document" and "Communication" to the extent they impose a burden not required by the Federal Rules of Civil Procedure. JGR will interpret "Document" and "Communication" within their ordinary meaning and understanding and in accordance with the requirements of the Federal Rules of Civil Procedure.

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1:** Identify all Persons who have or are likely to have knowledge or information concerning the allegations in the Amended Complaint. For each such Person:

    (a)    state the Person's full name, title, current or last known employer, and last known address and telephone number;

    (b)    identify the specific claim(s) or paragraph(s) of the Amended Complaint about which the Person has knowledge (by paragraph number);

    (c)    describe in detail the subject matter and substance of the Person's knowledge; and

    (d)    identify any Documents that contain or reflect statements by or about that Person relating to this Litigation (including written statements, recorded interviews, declarations, deposition testimony, or court testimony).

**ANSWER:** In addition to the foregoing General Objections, which are incorporated herein by reference, JGR objects to this Interrogatory as overbroad and unduly burdensome in that it would impose a burden not required by the Federal Rules of Civil Procedure, the Local Rules, or any applicable Court Order. JGR objects to the use of the defined terms "Document," "identify"

4

and "relating to" to the extent they are interpreted to impose a burden not required by the Federal Rules of Civil Procedure, and will interpret the terms within their ordinary meaning and understanding.

Subject to and without waiving the foregoing objections, JGR refers Spire to JGR's initial disclosures under Rule 26(a), dated May 11, 2026, and any subsequently served amendments to the same.

**INTERROGATORY NO. 2:** For each piece or category of information that You contend is "Allegedly Misappropriated Information" by Gabehart and/or Spire:

(a)    Describe the information with as much specificity as possible;

(b)    state whether You contend that the information is a trade secret under the Defend Trade Secrets Act and/or the North Carolina Trade Secrets Protection Act, and/or constitutes "Confidential Information" under the Employment Agreement;

(c)    describe the facts on which You rely to support that contention (including any steps You took to maintain the secrecy or confidentiality of that information);

(d)    state whether You contend that Spire accessed or used that information; describe the facts on which You rely to contend that Spire accessed or used that information (including the date(s), manner(s), and Person(s) involved); and

(e)    describe the harm or damages You allege JGR suffered as a result of any such alleged access or use, including the type of harm and the amount of damages You attribute to that information and how that amount was calculated.

**ANSWER:** In addition to the foregoing General Objections, which are incorporated herein by reference, JGR objects to this Interrogatory as a premature contention interrogatory that does not require a response at this time, including to the extent it seeks information regarding Spire's access to or use of JGR's information and damages, the full extent of which are still being evaluated through discovery. JGR further objects to use of the term "Allegedly Misappropriated Information" in that it characterizes the misappropriation of JGR's trade secrets and confidential information as "alleged." JGR further objects to the definition of the terms "You" and "JGR" for the reasons stated in General Objection No. 11.

5

Subject to and without waiving the foregoing objections, JGR refers Spire to the responsive descriptions of Defendants' misconduct in JGR's proposed Second Amended Complaint (*e.g.*, Dkt. 84-1 ¶¶ 68-121, 139-166) and Walter Brown's Declarations (*e.g.*, Dkt. 9-2; Dkt. 35-3; Dkt. 61-2). Exemplary categories of misappropriated trade secrets and confidential information include, but are not limited to, details of JGR's race strategy, including car setup, recommended gear shift points, processes for real-time performance evaluation, and the race team's system for sorting and selecting tires; post-race audits and analyses; cost-saving techniques for pre- and post-race equipment transportation; compensation details, including race team incentive compensation; and information concerning business arrangements, including revenues from JGR's sponsors and partners.

Gabehart also misappropriated non-documentary trade secrets, including negative know-how—that is, knowledge acquired through JGR's years of investment in research, testing, and competition regarding approaches, strategies, and setups that do not work, which allows one to avoid costly errors and accelerate development by eliminating unproductive avenues. These memorized trade secrets are protectable regardless of the form in which they are retained.

JGR reserves the right to supplement its response to this Interrogatory as discovery progresses, including by producing responsive business records under Rule 33(d) of the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 3:** For each piece or category of Allegedly Misappropriated Information identified in Your answer to Interrogatory No. 2:

 (a) describe the steps, efforts, or precautions JGR took prior to October 1, 2025 to guard the alleged confidentiality or secrecy of that information (including, for example, access controls, passwords, physical security, confidentiality agreements, policies, training, and monitoring);

 (b) identify the Persons inside JGR who were permitted to access that information prior to October 1, 2025 and describe how they accessed it (for example, via email, shared drive, OneDrive, hard copy, or other means); and

6

(c)     identify any instance in which that information was shared with, accessed by, or accessible to any third party (including sponsors, manufacturers, vendors, consultants, or other teams) or otherwise available to the public at any time prior to October 1, 2025, including the identity of the third party and a description of the circumstances and dates of such access or disclosure.

**ANSWER:** In addition to the foregoing General Objections, which are incorporated herein by reference, JGR objects to this Interrogatory as a premature contention interrogatory that does not require a response at this time. JGR objects to the use of the defined term "identify" to the extent it imposes a burden not required by the Federal Rules of Civil Procedure, and will interpret "identify" within its ordinary meaning and understanding. JGR also objects to use of the term "Allegedly Misappropriated Information" in that it characterizes the misappropriation of JGR's trade secrets and confidential information as "alleged." JGR further objects to the definition of the term "JGR" for the reasons stated in General Objection No. 11.

Subject to and without waiving the foregoing objections, JGR refers Spire to the responsive descriptions of JGR's efforts to protect its trade secrets and confidential information included in JGR's proposed Second Amended Complaint (*e.g.*, Dkt. 84-1 ¶¶ 68-121, 139-166) and Walter Brown's Declarations (*e.g.*, Dkt. 9-2; Dkt. 35-3; Dkt. 61-2). Such efforts include, but are not limited to, physical and electronic security measures, password protection for JGR devices and systems; muti-factor authentication practices; restrictions on employees' system access according to job function and on a need-to-know basis; restrictions on access to JGR facilities; conditioning employment on execution of and abiding by JGR's confidentiality policy; maintenance of comprehensive policies and procedures regarding the handling of confidential information and trade secrets; regular training of employees to prevent third party access to JGR systems; and endpoint and network security monitoring. *See also* Dkt. 9-2 at 16 (JGR Employee Handbook listing categories of trade secrets and confidential information).

7

Access to most of the categories of trade secrets and confidential information misappropriated by Gabehart and Spire—particularly information that most directly relates to race performance—is limited to the competition group, the crew chiefs, and on some occasions, the executive leadership team. Additionally, some of the trade secrets and confidential information misappropriated by Gabehart and Spire are shared with Toyota Racing Development, 23XI Racing, and Legacy Motor Club, subject to the terms of confidentiality agreements between the parties.

JGR personnel information, including but not limited to compensation and contractual terms, is limited to human resources, the executive leadership team, and the leader of each specific department. Information concerning JGR's cost-saving strategies, business arrangements, sponsors, and partners is limited to the executive leadership team, the leader of each specific department.

JGR reserves the right to supplement its response to this Interrogatory as discovery progresses, including by producing responsive business records under Rule 33(d) of the Federal Rules of Civil Procedure, and by providing supporting expert testimony at the times and means established by the Court's Scheduling Order.

**INTERROGATORY NO. 4**: Describe the efforts JGR made between November 1, 2025 and the present to investigate whether Gabehart downloaded, copied, transferred, or otherwise removed any JGR Documents or Data from any JGR systems or devices, including to any personal devices, email accounts, or cloud-storage accounts. Your answer shall:

    (a)    describe the devices, accounts, and data sources examined (including any JGR-issued laptops or phones and any JGR-sponsored OneDrive or other cloud storage associated with Gabehart);

    (b)    identify any third-party vendors or consultants involved in the investigation; and

    (c)    state whether the investigation identified any instance in which Allegedly Misappropriated Information or other JGR Documents or Data were transmitted from any device or account associated with Gabehart to any Spire-owned or Spire-controlled system, email address, phone number, or account, and if so, describe

each such instance, and if not, describe any material limitations in the scope of the investigation (including any devices, accounts, or data sources that were not imaged, not preserved, or not analyzed).

**ANSWER:** In addition to the foregoing General Objections, which are incorporated herein by reference, JGR objects to this Interrogatory as premature to the extent it seeks investigatory conclusions concerning Gabehart's transmittal of JGR's documents or data to Spire while discovery is ongoing. JGR objects to the use of the defined terms "Document" and "identify" to the extent they impose a burden not required by the Federal Rules of Civil Procedure, and will interpret these terms within their ordinary meaning and understanding. JGR further objects to the definition of the term "JGR" for the reasons stated in General Objection No. 11. JGR further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable privilege or immunity from discovery. JGR also objects to use of the term "Allegedly Misappropriated Information" in that it characterizes the misappropriation of JGR's trade secrets and confidential information as "alleged."

Subject to and without waiving the foregoing objections, JGR refers Spire to the responsive descriptions of the forensic investigation performed by Reliance Forensics, LLC ("Reliance") on behalf of JGR. *See* Second Amended Complaint, Dkt. 84-1 ¶¶ 67-80; Dkt. 9-4; Dkt. 22-3; Dkt. 35-12. Reliance's investigation included an examination of (1) a Lenovo ThinkPad (Serial No. PF57YJEX) assigned to Gabehart during his employment at JGR; (2) an older JGR laptop Gabehart previously used while employed at JGR; (3) Gabehart's Google Drive account associated with chris.gabehart@gmail.com; (4) a Microsoft OneDrive account associated with Gabehart's JGR email address; (5) a tablet assigned to Gabehart during his employment at JGR; and (6) Gabehart's personal cell phone, a Samsung Galaxy S22 Plus.

With respect to part (c), JGR states that the pre-litigation forensic review was subject to material limitations imposed by Gabehart. Reliance's forensic examiner expressly stated that, under the constraints of the protocol, he could "not exclude the possibility of such files being sent via email from a web portal, being sent via text message then deleted the message, shared directly via Google Photos or any other fileshare site." *See* Dkt. 9-4 ¶ 30; Dkt. 12-5 at 1. Known devices and accounts that Gabehart did not make available for examination include: (a) Gabehart's personal laptop; (b) Gabehart's personal email account; (c) other cloud-based storage systems, including an Unknown OneDrive account identified in Mr. Walton's Second Supplemental Declaration that Gabehart routinely interacted with while accessing JGR materials; and (d) file-sharing accounts, including a ShareFile account Gabehart accessed at 1:15 a.m. on December 4, 2025. *See* Dkt. 35-12 ¶¶ 15–17, 29–30.

JGR's investigation is ongoing as discovery in this matter continues, and JGR reserves the right to supplement this response as additional information becomes available through the discovery process, including but not limited to forensic review of Defendants' devices and accounts ordered or agreed upon after the initiation of this litigation.

**INTERROGATORY NO. 5:** Identify the Persons who have or are likely to have knowledge or information concerning the "Trade Understanding" referenced in the Amended Complaint, for the period January 1, 2025 to the present. For each such Person, state the Person's full name, title, current or last known employer, last known address and telephone number, and describe the subject matter of that Person's knowledge relating to the Trade Understanding, including any Communications or Documents of which the Person is aware that relate to the Trade Understanding.

**ANSWER:** In addition to the foregoing General Objections, which are incorporated herein by reference, JGR objects to this Interrogatory's reference to a "Trade Understanding," including that JGR does not agree it existed. JGR further objects to the use of the defined terms "Communication," "Document," "identify" and "relating to" to the extent they are interpreted to

impose a burden not required by the Federal Rules of Civil Procedure, and will interpret these terms within their ordinary meaning and understanding.

Subject to and without waiving the foregoing objections, JGR names the following individuals as most likely to have information or knowledge of circumstances relating to Robert Smith's departure from Spire and/or Smith's employment with JGR:

- Robert Smith, Car Chief for JGR's 54 Car: Likely to have knowledge of the circumstances of his departure from Spire and his employment with JGR.

- Jeffrey Dickerson, Co-owner of Spire: Likely to have knowledge of the circumstances of Smith's departure from Spire.

- Heather Gibbs, Co-Owner of JGR: Likely to have knowledge of the circumstances of Smith's employment with JGR.

- Joe Gibbs, Owner and Founder of JGR: Likely to have knowledge of the circumstances of Smith's employment with JGR.

- Toni Rogers, Chief People Officer of JGR: Likely to have knowledge of the circumstances of Smith's employment with JGR.

- Christopher Gabehart, Chief Motorsports Officer at Spire: Likely to have knowledge of the circumstances of Smith's employment with JGR.

- Michael Guttilla, President at Legacy Motor Club; former Chief Operating Officer of JGR: Likely to have knowledge of the circumstances of Smith's employment with JGR.

- Tim Carmichael, Chief Financial Officer of JGR: Likely to have knowledge of the circumstances of Smith's employment with JGR.

**INTERROGATORY NO. 6:** Describe JGR's practice since January 1, 2021 with respect to enforcing or not enforcing non-competition or non-solicitation provisions against employees in roles comparable to or similar to Gabehart's. Your answer shall identify each instance since January 1, 2021 in which such an employee left JGR's employment or was considering leaving, and for each instance state:

(a) the employee's name and position;

(b) the nature and duration of any non-competition or non-solicitation provision applicable to that employee;

(c) the employee's subsequent employer during any applicable restricted period (if known);

(d) whether JGR took any action to enforce or not enforce the provision (including sending a cease-and-desist letter, filing a lawsuit, agreeing to a waiver or modification, or entering into any standstill or transition arrangement); and

(e) the reasons JGR chose to enforce, not enforce, waive, or modify the provision in that instance.

**ANSWER:** In addition to the foregoing General Objections, which are incorporated herein by reference, JGR objects to this Interrogatory as vague and ambiguous in that it depends on the identification of "roles comparable to or similar to Gabehart's" without defining the terms "comparable" or "similar" in this context. JGR further objects to the use of the defined term "identify" to the extent it imposes a burden not required by the Federal Rules of Civil Procedure, and will interpret "identify" within its ordinary meaning and understanding. JGR further objects to the definition of the term "JGR" for the reasons stated in General Objection No. 11.

Subject to and without waiving the foregoing objections, JGR responds that since January 1, 2021, there have been no departures of JGR personnel who were similar in seniority to Gabehart under circumstances that similarly implicated a non-competition or non-solicitation provision of an employment agreement due to the misappropriation of JGR's trade secrets or confidential information while the employee was in active discussions about employment with a competing team. However, JGR notes two instances of employee departures since under circumstances that implicated non-complete provisions.

In 2024, JGR filed suit to enforce a noncompetition agreement against Jeffery Curtis, an engineer who misappropriated JGR's trade secrets and confidential information and accepted employment with a competing race team in violation of his employment agreement. *Joe Gibbs Racing LLC v. Jeffrey* Curtis, No. 24 CVS 1584 (N.C. Burke Cnty. Super. Ct.). Initially, when Curtis requested permission to seek employment with one of JGR's competitors, JGR agreed to waive the non-compete provision of his Employment Agreement in reliance upon Curtis's

continued loyalty to JGR during the remaining term of his employment. However, when JGR discovered that Curtis had transferred a large number of files containing JGR race and car data to a personal hard drive without authorization, JGR terminated Curtis for cause and filed a lawsuit to enforce its rights under the Employment Agreement. JGR and Curtis settled the lawsuit subject to the terms of a Consent Judgment that permanently enjoined Curtis from using any of JGR's trade secrets or confidential information, required him to immediately return all of JGR's confidential information and trade secrets, and permanently enjoined him from providing the types of services he provided to JGR for a specified period of time.

In April 2026, JGR's Chief Operating Officer, Michael Guttilla, accepted a position as President of another Toyota race team. JGR agreed to waive the non-competition provision of its Employment Agreement with Guttilla because (1) Guttilla transparently disclosed his employment plans to JGR and sought permission to discuss employment with another race team; (2) Guttilla promised to abide by all other restrictive covenants contained in his Employment Agreement; and (3) JGR had (and still has) no reason to believe that Guttilla misappropriated JGR's trade secrets or confidential information or otherwise violated his contractual and other duties to JGR while still employed by JGR.

**INTERROGATORY NO. 7:** Identify the Persons who have or are likely to have knowledge or information concerning:

(a) the negotiation and execution of Gabehart's Employment Agreement, including any discussions or proposals regarding the scope or duration of any restrictive covenants; and

(b) the circumstances surrounding Gabehart's departure from JGR, including JGR's decision to cease paying Gabehart in or around November 2025 and JGR's subsequent decision to terminate his employment for cause in 2026.

For each such Person, state:

(1) the Person's full name, title, current or last known employer, last known address and telephone number; and

(2)     describe the subject matter of that Person's knowledge on these topics.

**ANSWER:**     In addition to the foregoing General Objections, which are incorporated herein by reference, JGR objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable privilege or immunity from discovery. JGR further objects to the use of the defined term "identify" to the extent it imposes a burden not required by the Federal Rules of Civil Procedure, and will interpret "identify" within its ordinary meaning and understanding. JGR further objects to the definition of the term "JGR" for the reasons stated in General Objection No. 11.

Subject to and without waiving the foregoing objections, JGR names the following individuals as likely to have knowledge or information concerning the negotiation and execution of Gabehart's Employment Agreement and/or the circumstances surrounding Gabehart's departure from JGR:

- Joe Gibbs, Owner and Founder of JGR: Likely to have knowledge of Gabehart's Employment Agreement, the circumstances surrounding Gabehart's departure from JGR, and the decision to terminate Gabehart's Employment Agreement for Cause due to his misconduct. May be contacted through counsel.

- Heather Gibbs, Co-Owner of JGR: Likely to have knowledge of Gabehart's Employment Agreement, the circumstances surrounding Gabehart's departure from JGR, and the decision to terminate Gabehart's Employment Agreement for Cause due to his misconduct. May be contacted through counsel.

- Eric Schaffer, Executive Vice President & Chief Commercial Officer of JGR: Likely to have knowledge of Gabehart's Employment Agreement, the circumstances surrounding Gabehart's departure from JGR, and the decision to terminate Gabehart's Employment Agreement for Cause due to his misconduct. May be contacted through counsel.

- Dave Alpern, President of JGR: Likely to have knowledge of the circumstances surrounding Gabehart's departure from JGR and the decision to terminate Gabehart's Employment Agreement for Cause due to his misconduct. May be contacted through counsel.

- Tim Carmichael, Chief Financial Officer of JGR: Likely to have knowledge of Gabehart's Employment Agreement, the circumstances surrounding Gabehart's departure from JGR,

14

and the decision to terminate Gabehart's Employment Agreement for Cause due to his misconduct. May be contacted through counsel.

- Michael Guttilla, President at Legacy Motor Club; former Chief Operating Officer of JGR: Likely to have knowledge of the circumstances surrounding Gabehart's departure from JGR.

- Toni Rogers, Chief People Officer of JGR: Likely to have knowledge of Gabehart's Employment Agreement , the circumstances surrounding Gabehart's departure from JGR, and the decision to terminate Gabehart's Employment Agreement for Cause due to his misconduct. May be contacted through counsel.

- Todd Berrier, Director of Production, Fab & Vehicle Assembly at JGR: Likely to have knowledge of the circumstances surrounding Gabehart's departure from JGR. May be contacted through counsel.

- Walter Brown, Director of Competition at JGR: Likely to have knowledge of the circumstances surrounding Gabehart's departure from JGR. May be contacted through counsel.

- Christopher Gabehart, Chief Motorsports Officer at Spire: Likely to have knowledge of Gabehart's Employment Agreement, the circumstances surrounding Gabehart's departure from JGR, and the decision to terminate Gabehart's Employment Agreement for Cause due to his misconduct.

- Jennifer Schafer Gabehart, Wife of Gabehart: Likely to have knowledge of Gabehart's Employment Agreement and the circumstances surrounding Gabehart's departure from JGR.

- Jeffrey Dickerson, Co-owner of Spire: Likely to have knowledge of the circumstances of Gabehart's departure from JGR.

- Dan Towriss, Chief Executive Officer at TWG Motorsports (Co-Owner of Spire): Likely to have knowledge of the circumstances of Gabehart's departure from JGR.

- Bill Anthony, President of Spire: Likely to have knowledge of the circumstances of Gabehart's departure from JGR.

- Eric Phillips, Former Crew Chief at 23XI: Likely to have knowledge of the circumstances of Gabehart's departure from JGR.

- Mark Carmony, Gabehart's Sports Agent at CSE: Likely to have knowledge of Gabehart's Employment Agreement and the circumstances surrounding Gabehart's departure from JGR.

- Heather Masterson, Head of People Operations at Spire: Likely to have knowledge of the circumstances of Gabehart's departure from JGR.

15

- Karolina Powalka, Counsel to Gabehart: Likely to have knowledge regarding Gabehart's departure from JGR.

**INTERROGATORY NO. 8:** State the date or dates on which JGR decided to terminate Gabehart's employment for cause, identify each Person involved in making or approving that decision, and describe the reasons for that decision, including the facts, events, and alleged conduct that JGR contends constituted "cause" under the Employment Agreement.

**ANSWER:** In addition to the foregoing General Objections, which are incorporated herein by reference, JGR objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable privilege or immunity from discovery. JGR further objects to the use of the defined term "identify" to the extent it imposes a burden not required by the Federal Rules of Civil Procedure, and will interpret "identify" within its ordinary meaning and understanding. JGR further objects to the definition of the term "JGR" for the reasons stated in General Objection No. 11.

Subject to and without waiving the foregoing objections, JGR states that JGR decided to terminate Gabehart's employment for cause on February 9, 2026, and the following individuals were involved in making or approving that decision:

- Joe Gibbs, Owner and Founder of JGR; and

- Heather Gibbs, Co-Owner of JGR.

As set forth in his termination letter (Dkt. 8-3), Gabehart was terminated "in good faith based on [his] violations of Section 5 of the Employment Agreement, JGR policies and procedures relating to the safeguarding of confidential information, and the North Carolina Trade Secrets Protection Act and federal Defend Trade Secrets Act of 2016. Specifically, [he] misappropriated JGR's confidential information and trade secrets to personal accounts and devices with the intent to use and/or disclose this information to a direct competitor of JGR's."

**INTERROGATORY NO. 9:** If You contend that Section 6.2 of the Employment Agreement imposed on Gabehart a non-competition restriction longer than one week after he

ceased performing services for JGR, describe in detail the factual and legal basis for such contention, including:

(a)     your interpretation of the notice and payment provisions in Section 6.2;

(b)     the facts on which You rely for contending that any notice provided by or on behalf of Gabehart did not satisfy Section 6.2; and

(c)     the dates and time period during which You contend Gabehart was prohibited from competing with JGR pursuant to Section 6.2.

**ANSWER:**     In addition to the foregoing General Objections, which are incorporated herein by reference, JGR objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable privilege or immunity from discovery. JGR further objects to the definition of the terms "You" and "JGR" for the reasons stated in General Objection No. 11.

Subject to and without waiving the foregoing objections, JGR states that Gabehart's noncompetition restriction is effective for a period of 18 months from February 9, 2026. For further details regarding JGR's interpretation of Section 6.2 of the Employment Agreement and applicable facts and circumstances, JGR refers Spire to JGR's discussion of the noncompete provision of the Employment Agreement as briefed in support of its motions for a temporary restraining order and preliminary injunction, and to the evidence submitted in support of the briefing. *See, e.g.*, Dkt. 10; Dkt. 35; Dkt. 46. Among other reasons, Gabehart failed to satisfy any of the three conditions required to trigger the one-week reduction under Section 6.2: (1) Gabehart did not provide good-faith written notice of specific job duties inconsistent with his expectations—his communications contained only complaints and criticisms of JGR, and by November 6, 2025, he had already engaged in detailed discussions with Spire about potential employment, including meeting with Spire's co-owner, demonstrating that his purported notice was not made with "honesty in belief and purpose." (2) Rather than providing JGR with sixty days to resolve any purported

inconsistencies, Gabehart immediately pivoted to negotiating a mutual separation agreement with terms—including COBRA payments, a two-year non-solicitation provision, and mutual non-disparagement—that are not included in or contemplated by Section 6.2, confirming the parties were pursuing a new mutual agreement rather than proceeding under the Section 6.2 framework. (3) Gabehart never provided sixty days' prior written notice of termination without cause as expressly required by Section 6.2. Moreover, Gabehart's own conduct was fundamentally inconsistent with any belief that he had properly invoked Section 6.2.

**INTERROGATORY NO. 10:** Describe the job duties and responsibilities that You contend Gabehart is prohibited from performing for Spire pursuant to Section 6.2 of the Employment Agreement, including Your identification of the "general type of services that [he] provided to the Company in the year prior to such termination" that You contend he may not perform for Spire.

**ANSWER:** Subject to and without waiving the foregoing General Objections, which are incorporated herein by reference, JGR states that under Section 6.2 of the Employment Agreement, Gabehart is prohibited from performing services of the general type of services that he provided to the Company in the year prior to his termination. Regarding what those services were at JGR, JGR refers Spire to JGR's Proposed Order for Injunctive Relief (Dkt. 35-2) and the Second Declaration of Walter Brown (Dkt. 35-3). For example, in the year prior to his termination, Gabehart served as JGR's Cup Series Competition Director, and his services in that role encompassed overseeing race-related operations and technical coordination, running weekly crew chief meetings, coordinating race weekend strategy, promoting commonality across JGR's four Cup Series teams, communicating with shop departments regarding fabrication, aerodynamics, simulation tools, and analytics, interfacing with NASCAR officials on behalf of JGR's teams, and participating in driver and crew chief debriefs, postrace technical inspections, and immediate postrace analysis. In addition, Gabehart regularly interacted with representatives from Toyota and its affiliates, as Toyota was JGR's OEM partner. In addition, Gabehart performed crew chief duties

for JGR's No. 54 car, in which role his responsibilities included determining strategy and adjustments during the race, communicating with the driver, and controlling operations behind the scenes. Gabehart himself conceded at the TRO hearing that "there's certainly some subject matter overlap" between his position at JGR and his role at Spire, and his own declarations confirm that both roles involve developing and promoting "best practices" among NASCAR Cup Series teams, interfacing with NASCAR officials, coordinating with an allied NASCAR team, supporting the OEM relationship, and developing and deploying competitive initiatives within the NASCAR Cup Series.

**INTERROGATORY NO. 11:** For each cause of action alleged in the Amended Complaint, identify and describe the categories of damages JGR seeks. Your answer shall include:

(a)     the factual basis for the type of harm alleged (such as lost profits, lost business opportunities, unjust enrichment, reputational harm, or diminution in value of alleged trade secrets);

(b)     the methodology used to calculate each category and amount of damages;

(c)     all assumptions, inputs, or models used in any such calculations; and

(d)     the Person or Persons most knowledgeable regarding such calculations.

**ANSWER:**     In addition to the foregoing General Objections, which are incorporated herein by reference, JGR objects to this Interrogatory as overly broad and unduly burdensome, inappropriate for this form of discovery, and premature, and does not require a response at this time in that it seeks information regarding damages, the full extent of which is still being evaluated. JGR further objects to the use of the defined term "identify" to the extent it imposes a burden not required by the Federal Rules of Civil Procedure, and will interpret "identify" within its ordinary meaning and understanding. JGR further objects to the definition of the term "JGR" for the reasons stated in General Objection No. 11.

Subject to and without waiving the foregoing objections, JGR states that JGR anticipates that its trade secret damages under the DTSA and NCTSPA will be measured by either (a) the actual loss to JGR and unjust enrichment to Defendants, and/or (b) a reasonable royalty reflecting the value a willing licensee would have paid for unauthorized use of the trade secrets, determined through a hypothetical negotiation as of the time the misappropriation began and considering factors including changes in the parties' competitive posture, the importance of the secrets to JGR's business, JGR's development costs, the nature and extent of Defendants' use, and the availability of alternative processes. JGR further anticipates seeking exemplary damages of up to two times the compensatory award under the DTSA and punitive damages under the NCTSPA based on the willful and malicious nature of the misappropriation, as well as treble damages under the North Carolina Unfair and Deceptive Trade Practices Act for actual damages proximately caused by Defendants' deceptive conduct. For its breach of contract and tortious interference claims, JGR anticipates seeking compensatory damages measured by the actual loss proximately caused by the breach and the tortious conduct, including lost profits during the restricted period that JGR would have realized absent Gabehart's competition in violation of the Agreement.

JGR also anticipates seeking reasonable attorneys' fees, which are recoverable under the DTSA and NCTSPA where the trade secret was willfully and maliciously misappropriated, 18 U.S.C. § 1836(b)(3)(C); N.C. Gen. Stat. § 66-154(d), and under the NCUDTPA upon a showing that the defendant willfully engaged in the prohibited act and made an unwarranted refusal to fully resolve the matter, N.C. Gen. Stat. § 75-16.1(1).

JGR's damages analysis is ongoing, and JGR reserves the right to supplement this response as discovery proceeds and expert analysis is completed, including identification of the persons most knowledgeable regarding such calculations.

**INTERROGATORY NO. 12:** For each Person identified in Your answers to Interrogatory Nos. 1, 4, 5, 6, 7, 8, 9, and 10, identify the devices that Person used between October 1, 2025 and the date of Your answer to communicate about (a) Gabehart, (b) Spire, (c) Jeff Dickerson, or (d) the allegations in the Amended Complaint. Your answer shall identify each such device by type (for example, JGR-issued laptop, JGR-issued mobile phone, personal cell phone, personal laptop or tablet), whether it was JGR-issued or personally owned, and whether JGR has preserved or caused to be preserved data from that device that relates to the subject matter of this Litigation.

**ANSWER:** In addition to the foregoing General Objections, which are incorporated herein by reference, JGR objects to this Interrogatory as overbroad and unduly burdensome in that it seeks discovery beyond what is required by the Federal Rules of Civil Procedure by requesting information about personal devices that are outside of JGR's possession, custody, or control. In particular, JGR objects to the use of the defined term "identify" to the extent it imposes a burden not required by the Federal Rules of Civil Procedure, and will interpret "identify" within its ordinary meaning and understanding. JGR further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable privilege or immunity from discovery. JGR further objects to the definition of the term "JGR" for the reasons stated in General Objection No. 11.

Subject to and without waiving the foregoing objections, JGR will provide responsive information concerning devices that are within its possession, custody, or control, consistent with its obligations under Rule 34 of the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 13:** Identify the Persons who have or are likely to have knowledge or information concerning JGR's selection of its Cup Series car set ups, including the sources of information and data used to determine those set ups. For each such Person, state the Person's full name, title, current or last known employer, last known address and telephone number, and describe the subject matter of that Person's knowledge relating to JGR's selection of its Cup Series car set ups.

**ANSWER:** In addition to the foregoing General Objections, which are incorporated herein by reference, JGR objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable privilege

or immunity from discovery. JGR further objects to the use of the defined terms "identify" and "relating to" to the extent they are interpreted to impose a burden not required by the Federal Rules of Civil Procedure, and will interpret these terms within their ordinary meaning and understanding. JGR further objects to the definition of the term "JGR" for the reasons stated in General Objection No. 11.

Subject to and without waiving the foregoing objections, JGR's Cup Series car set ups are selected by members of JGR's competition team in conjunction individual race teams. JGR will provide an organizational chart to identify individuals with knowledge or information concerning JGR's selection of its Cup Series car set ups, as permitted under Rule 33(d) of the Federal Rules of Civil Procedure.

*[Remainder of page intentionally left blank]*

This the 10th day of June, 2026.

**PARKER POE ADAMS & BERNSTEIN LLP**

/s/ Sarah F. Hutchins
Sarah F. Hutchins
N.C. Bar No. 38172
Tory Ian Summey
N.C. Bar No. 46437
Keith M. Weddington
N.C. Bar No. 14352
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Chad F. Lee
N.C. Bar No. 56350
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com
chadlee@parkerpoe.com

**KING & SPALDING LLC**

Danielle T. Williams
dwilliams@kslaw.com
N.C. Bar No. 23283
300 South Tryon Street, Suite 1700
Charlotte, NC 28202
Thomas M. Melsheimer – *Pro Hac Vice*
tmelsheimer@kslaw.com
Chad B. Walker – *Pro Hac Vice*
cwalker@kslaw.com
Tracea Rice – *Pro Hac Vice*
trice@kslaw.com
Alexandra Moore – *Pro Hac Vice*
almoore@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201

*Attorneys for Joe Gibbs Racing, LLC*

23

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

**CHARLOTTE DIVISION**
**Case No. 3:26-CV-00133-SCR-DCK**

JOE GIBBS RACING, LLC,

        Plaintiff,

    v.

CHRISTOPHER GABEHART and SPIRE
MOTORSPORTS, LLC,

        Defendants.

**VERIFICATION**

    I, **Dave Alpern**, being first duly sworn, depose and say that I am President of Plaintiff Joe Gibbs Racing, LLC, and that I have read the foregoing Plaintiff's Responses and Objections to Defendant Spire Motorsports, LLC's First Set of Interrogatories, and, after reasonable inquiry and search, verify that the contents thereof are true and accurate to the best of my knowledge, except as to those matters and things therein set forth upon information and belief, and as to those matters and things I believe them to be true.

_____
Dave Alpern

Sworn to and subscribed before me
this _10_ day of _____June_____, 2026.

_Robin Donahue Lambe_
Notary Public for_ North Carolina_
My Commission Expires:_ August 24, 2029_

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this date the foregoing **PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANT SPIRE MOTORSPORTS, LLC'S FIRST SET OF INTERROGATORIES** was served upon all counsel of record via email.

This the 10th day of June, 2026.

**PARKER POE ADAMS & BERNSTEIN LLP**

/s/ Sarah F. Hutchins
Sarah F. Hutchins
N.C. Bar No. 38172
Tory Ian Summey
N.C. Bar No. 46437
Keith M. Weddington
N.C. Bar No. 14352
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Chad F. Lee
N.C. Bar No. 56350
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com
chadlee@parkerpoe.com

*Attorneys for Joe Gibbs Racing, LLC*
