JOE GIBBS RACING, LLC,

          Plaintiff,

v.

CHRISTOPHER GABEHART and SPIRE
MOTORSPORTS II, LLC,

          Defendants.

**PLAINTIFF'S REPLY IN SUPPORT
OF MOTION TO SUPPLEMENT THE
PROTECTIVE ORDER**

## ARGUMENT

This case centers on claims of misappropriation of JGR's highly-sensitive trade secrets and proprietary information by Gabehart and Spire, and implicates the trade secrets of NASCAR competitors JGR and Spire—the latter of which employs a chief motorsports officer who has admitted to stealing documents this Court has found to be trade secrets in a way intended to avoid detection and then to deleting relevant evidence. It follows that a comprehensive framework is necessary to protect JGR and Spire's respective trade secrets that will produced in the litigation. JGR's proposed Trade Secret Addendum provides necessary and proportional precautions. Dkt. 101-1. While the Stipulated Protective Order entered in this case, Dkt. 89, addressed JGR's general confidentiality concerns at the time of stipulation in the infancy of this litigation, it did not create a detailed procedure specifically for handling trade secret information. As stated in JGR's Motion to Amend the Protective Order [Dkt. 101] (the "Motion"), the Outside Counsel Only ("OCO") designation—the most restrictive tier currently available—was intended to provide a baseline level of protection for sensitive materials. *See* Dkt. 89 at 2. As discovery progresses and the case moves toward trial, there is good cause to implement additional discovery procedures governing not only

1

who can view trade secret documents, but also how counsel should handle each parties' respective trade secrets.

### A. JGR Has Demonstrated Good Cause to Amend the Protective Order

There is good cause to amend the Stipulated Protective Order in order to adequately protect the trade secrets of both parties that have and will be produced electronically, including highly technical competition materials that would cause severe and irreparable harm to either party if disclosed to their competitors. As discussed in further detail in JGR's Motion, the OCO designation in the existing Stipulated Protective Order does not address the manner in which such trade secret materials are accessed and stored. Thus, additional provisions are necessary to fill the gaps and safeguard the parties' trade secret documents.

The highly sensitive and proprietary nature of the trade secrets at issue in this case is well established and warrants the additional layers of protection JGR requests.[1] Both parties stand to suffer harm if copies of its trade secrets are discussed with the opposing party, inadvertently disclosed, or publicly filed.[2] In any event, any objection Defendants may have with regard to the

---

[1] Contrary to Defendant's position, the differing procedural postures of cases implementing similarly heightened discovery protections, *Bridgetree, Inc. v. Red F Marketing, LLC* and *The Recon Group LLP v. Lowe's Home Centers, LLC*, do not change the underlying recognition by those Courts that a secure review protocol is often necessary to protect trade secret materials. *See* 2013 WL 443698, at *23-24 (W.D.N.C. 2013) (implementing a "clean room" after a jury finding of trade secret misappropriation); Civil Action No. 5:23-cv-163-KDB-DCK (W.D.N.C. 2025) (implementing similar review protocol in trade secrets action).

[2] Spire's recent filings further illuminate that additional protections are warranted to govern the handling of trade secret documents. Despite the pendency of the instant Motion, Spire filed a motion to seal, *see* Dkt. 103, four exhibits to its Response comprised of documents JGR has designated as OCO and provided for review in the virtual clean room set up to view documents it would mark as "Highly Confidential - Trade Secrets" under the proposed Trade Secret Addendum. Spire filed these documents under seal instead of providing the documents in camera as would be mandated by JGR's proposed Trade Secret Addendum. JGR has not seen the as-filed versions of these documents, nor was it provided copies of the documents intended to be filed in advance—which may consist of screenshots or downloaded versions of documents JGR has uploaded into the virtual secured room.

designation of certain documents is properly raised as a challenge to a designation under the terms of the existing Stipulated Protective Order, not as a blanket objection to amending the protective order. Dkt. 89 at Section 5; *see also M-Edge Accessories LLC v. Amazon.com Inc.*, 2013 WL 12241898, at *4 (D. Md. 2013) ("The potential for disputes regarding whether documents contain trade secrets . . . is not a valid reason to enter a one-tiered confidentiality order in this case. If a dispute arises, the party challenging the designation of documents may file a motion for relief from the confidentiality order with the court.").

Although Defendants devote a significant amount of their briefing to debating the merits of whether the documents currently existing in the virtual secured room constitute trade secrets, this argument is a red herring. This Court has already determined at the preliminary injunction stage that JGR has shown that categories of highly-sensitive documents JGR has identified, including racecar setups, simulation data, engineering data, and testing data, "are trade secrets under both the DTSA and North Carolina's TSPA because they contain business, financial, or technical information, among other things, and the files contain information which JGR developed based on its extensive research and collection of data points about different cars, drivers, tracks, tires, and race conditions (to name a few), that would be extremely valuable in the hands of a competitor." Dkt. 78 at ¶ 62. The Court further found that, "[w]hile some portions of a compilation of confidential information may be publicly available, the entire compilation itself can still be considered as a trade secret." *Id.* at ¶ 63 (citing 18 U.S.C. § 1839(3); N.C. Gen. Stat. § 66-152(3)). For the sake of speed and completeness, JGR put into the clean room the entire set of the 235 that Gabehart admitted related to JGR and consented to have removed from his phone and Google Drive. JGR has separately identified in an interrogatory response the specific subset that it alleges

3

to be trade secrets, but the over inclusiveness of the clean room at this moment in time does not vitiate the need for protection of the documents this Court has already found to be trade secrets.

In addition to the trade secrets already in the clean room, both sides have requested additional documents that constitute trade secrets, including racecar setups, post-race analysis documents, and underbody scans. *See e.g.,* Ex. A, JGR's Second Set of Requests for Production to Spire (July 3, 2026); Ex. B, Spire's Third Set of Requests for Production to JGR (June 30, 2026).

### B. JGR's Proposed Trade Secret Addendum Would Not Expand the Scope of Discovery

Critically, the new provisions JGR seeks to include in an amended protective order govern only the manner in which discovery takes place, and do not alter the scope of documents that are discoverable or at issue in this case. Defendant Spire contends that "JGR's true intention-and the reason it seeks to amend the protective order-is to dramatically expand the scope of this litigation on a dubious, newly-minted theory of liability," based on certain requests for production JGR propounded to Spire concerning its racecar scans. Dkt. 105 at 9. Spire further alleges that "JGR's request is a blatant fishing expedition into a competitor's confidential materials." *Id.* at 10. These accusations bear no relation to reality or the Motion before the Court and should be disregarded.

Spire's unfounded accusation that the trade secret protocol is a discovery gambit is simply false. Having already been the victim of Gabehart's acknowledged taking of its trade secrets, along with Spire's public statements that it would "make JGR regret" bringing this lawsuit, JGR's motivation is genuine concerns about protecting the crown jewels of its racing operation, particularly in the context of the pattern of bad conduct already evidenced.

In reality, the forthcoming dispute on the scope of the production of key technical documents has no bearing on the issue at hand. The purpose of seeking those documents is to allow JGR to test whether Spire has implemented its trade secrets and confidential information in

its racecars, including car setups (the configuration of internal car parameters), post-race analysis, and underbody scans (which will evidence whether Spire has implemented JGR's underbody aerodynamic trade secrets. These documents are essential to testing the alleged misappropriation, but even if they are not required to be produced JGR seeks the protections of the other trade secrets at issue. Spire's argument is beside the point.

C. **Defendants are Not Prejudiced by JGR's Proposed Protections**

Contrary to Defendants' contentions, JGR's proposed trade secret addendum benefits all parties to the litigation and does not prejudice Defendants. Defendant Gabehart complains that the proposed additional restrictions "severely prejudice" his "ability to participate in his own defense," because of the implementation of the prohibition on counsel discussing JGR's trade secrets with Defendants, an expert disclosure procedure, the virtual clean room, and the prohibition on filling trade secret materials. Dkt. 102 at 7–8. Spire similarly complains that the protocol would prevent it from "meaningfully" reviewing documents in the virtual clean room, filing trade secrets on the public docket, and require it to comply with an expert disclosure procedure. Dkt. 105 at 7. Defendants' objections are misplaced.

As an initial matter, Gabehart's complaint that his outside counsel cannot discuss the substance of JGR's trade secrets with him highlights the need to tighten the protections afforded to trade secret materials in this case—not prejudice to Gabehart. Spire is a direct competitor of JGR, and Gabehart is employed by Spire in a role that this Court has found has some overlap with competition duties. As such, Spire and Gabehart should not be entitled to see or discuss the substance of JGR's trade secrets in this case. Of note, Defendants already cannot directly view OCO documents even under the existing Stipulated Protective Order. *See* Dkt. 89 at Section 6(c). Precluding Defendants' outside counsel from discussing the "general substance" of JGR's trade

secrets with Spire and Gabehart, respectively, protects JGR's confidential and proprietary information and does not in any way prohibit the development of Defendants' defenses or prejudice their representation. Other courts have rejected arguments that limiting access to highly confidential documents to outside counsel prejudice a receiving party. *See, e.g., M-Edge Accessories LLC,* 2013 WL 12241898, at *3 ("Plaintiff argues, in conclusory fashion, that its designee should be granted access to highly confidential documents 'to fully and effectively prosecute its claims' and 'promote an educated analysis of possible settlement.' There is no reason to doubt that outside counsel can competently represent plaintiff.") (internal citations omitted). Moreover, the same limitation applies equally to JGR—its outside counsel is not permitted to discuss the general substance of Spire's trade secrets with JGR under JGR's proposed addendum. This protection strengthens protection against disclosure of trade secrets to the parties' competitors and is mutually beneficial, not prejudicial.

The remainder of Defendants' objections on prejudice grounds are similarly meritless. The virtual clean room is set up and the review of documents within it is well underway.[3] Even with the additional prohibitions on copying or downloading the trade secret documents, outside counsel and experts with access to the clean room may view and take notes[4] on the materials in preparation for depositions and in furtherance of the litigation. There is no significant delay or undue burden imposed by the continued use of the existing virtual secured room rather than a comparatively less secure document database. Nor does the proposed expert disclosure procedure bear any meaningful

---

[3] Spire's assertion that "the clean room has already frustrated Spire's review because many documents are illegible and stripped of metadata" is misleading. Dkt. 105 at 7. JGR has uploaded the documents it received from the Reliance Forensics review of Gabehart's devices in the format that it received them from Gabehart's counsel. Any alleged issues with the documents is unrelated to the merits of using a clean room to review trade secret documents.

[4] JGR's proposed Trade Secret Addendum does not "prohibit[] electronic notetaking," as Spire suggests. Dkt. 105 at 11. *See* Dkt. 101-1 at Section 8(b).

impact on Defendants' ability to prepare a defense. Under the proposal, all parties may provide access to trade secret materials to experts after the standard objection and meet-and-confer process has concluded. This process imposes the same requirements on all parties equally and, as such, does not prejudice any parties' ability to use the documents to develop their case.

Likewise, the contentions that the inability to file excerpts or quotations of trade secret materials in court documents that are filed on a public docket "severely limit[s] Defendants' ability to present evidence" and that "production number references alone [in court filings] cannot convey the substance of technical materials necessary for the Court to evaluate the parties' arguments" is unfounded. Dkt. 102 at 5; *see also* Dkt. 105 at 7. The very nature of trade secrets is derived from their strict secrecy and limited dissemination. *See* Dkt. 78 ¶ 54 (citing *Sysco Mach. Corp. v. DCS USA Corp.*, 143 F.4th 222, 228 (4th Cir. 2025) (noting a trade secret "derives independent economic value" from its secrecy)). In line with this well-established legal principle, the proposed addendum limits the public disclosure of any parties' trade secrets but, importantly, does not prevent the Court from reviewing the trade secret documents in camera to evaluate the parties' arguments. In short, JGR's proffered heightened protections for trade secrets produced in this lawsuit do not pose any prejudice to Gabehart or Spire's respective positions in this lawsuit.

### D. JGR's Request is Timely and Warranted at this Stage in the Litigation

JGR's request for amendment is timely, was made in advance of producing any trade secrets in this case by either party, and is expressly contemplated by the Stipulated Protective Order. *See* Dkt.89, Section 14 ("The foregoing is entirely without prejudice to the right of any party to apply to the Court for any further Protective Order relating to Confidential Information."). Although the existing Stipulated Protective Order was entered in March 2026, fact discovery commenced on May 11, 2026. JGR determined that additional protections were warranted after

better understanding the scope of documents requiring protection and raised the addition of a trade secret protocol on June 12, 2026, and sent Defendants a proposed draft on June 18, 2026, in anticipation of producing any trade secrets. When Defendants refused to agree to additional protections, JGR sought court intervention, submitting a letter to Judge Keesler on the issue on June 23, 2026, for a telephone hearing on June 25, 2026, where Judge Keesler directed JGR to file the instant Motion.

Moreover, conscious of the importance of expediency in these proceedings, as mentioned above, JGR has set up the virtual clean room where documents have already been made available to Defendants pursuant to the terms of JGR's proposed Trade Secret Addendum. Defendants' own arguments belie their contentions that this protocol injects any delay or prevents Defendants' counsel from conducting meaningful review of the documents, as both sets of Defendants' outside counsel have been able to access and review documents in the virtual clean room. JGR's requested protocol does not impose any undue delay in discovery, it merely provides necessary guardrails to guide the parties' review and handling of the parties' prized and proprietary confidential information and trade secrets.

**<u>CONCLUSION</u>**

For the foregoing reasons, JGR requests that the Court enter an Order modifying the Protective Order (Dkt. 89) to incorporate the Trade Secret Addendum attached hereto as Exhibit A, thereby establishing a protocol for handling materials subject to a "highly confidential – trade secrets" designation, including a secured room protocol for reviewing such materials.

Dated: July 15, 2026                               **KING & SPALDING LLP**

/s/ *Danielle T. Williams*
Danielle T. Williams
dwilliams@kslaw.com

N.C. Bar No. 23283
300 South Tryon Street, Suite 1700
Charlotte, NC 28202
Thomas M. Melsheimer – *Pro Hac Vice*
tmelsheimer@kslaw.com
Chad B. Walker – *Pro Hac Vice*
cwalker@kslaw.com
Tracea Rice – *Pro Hac Vice*
trice@kslaw.com
Alexandra Moore - *Pro Hac Vice*
almoore@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201

**PARKER POE ADAMS & BERNSTEIN LLP**
Sarah F. Hutchins
N.C. Bar No. 38172
Tory Ian Summey
N.C. Bar No. 46437
Keith M. Weddington
N.C. Bar No. 14352
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com

*Attorneys for Joe Gibbs Racing, LLC*

9

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO AMEND THE PROTECTIVE ORDER** was electronically filed with the Clerk using the CM/ECF system which will automatically send notice and serve same upon counsel of record via the Court's electronic case filing system.

Dated: July 15, 2026

**KING & SPALDING LLP**

/s/ *Danielle T. Williams*
Danielle T. Williams
dwilliams@kslaw.com
N.C. Bar No. 23283
300 South Tryon Street, Suite 1700
Charlotte, NC 28202
Thomas M. Melsheimer – *Pro Hac Vice*
tmelsheimer@kslaw.com
Chad B. Walker – *Pro Hac Vice*
cwalker@kslaw.com
Tracea Rice – *Pro Hac Vice*
trice@kslaw.com
Alexandra Moore - *Pro Hac Vice*
almoore@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201

**PARKER POE ADAMS & BERNSTEIN LLP**
Sarah F. Hutchins
N.C. Bar No. 38172
Tory Ian Summey
N.C. Bar No. 46437
Keith M. Weddington
N.C. Bar No. 14352
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com

10

charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com

*Attorneys for Joe Gibbs Racing, LLC*

## ARTIFICIAL INTELLIGENCE CERTIFICATION

No artificial intelligence was employed in doing the research for the preparation of this Memorandum, with the exception of the standard artificial intelligence embedded in WestLaw. Every statement and every citation to authority contained in this Memorandum has been checked by an attorney in this case as to the accuracy of the proposition for which it is offered.

Dated: July 15, 2026

**KING & SPALDING LLP**

/s/ *Danielle T. Williams*
Danielle T. Williams
dwilliams@kslaw.com
N.C. Bar No. 23283
300 South Tryon Street, Suite 1700
Charlotte, NC 28202
Thomas M. Melsheimer – *Pro Hac Vice*
tmelsheimer@kslaw.com
Chad B. Walker – *Pro Hac Vice*
cwalker@kslaw.com
Tracea Rice – *Pro Hac Vice*
trice@kslaw.com
Alexandra Moore - *Pro Hac Vice*
almoore@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201

**PARKER POE ADAMS & BERNSTEIN LLP**
Sarah F. Hutchins
N.C. Bar No. 38172
Tory Ian Summey
N.C. Bar No. 46437
Keith M. Weddington
N.C. Bar No. 14352
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com

12

charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com

*Attorneys for Joe Gibbs Racing, LLC*