# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### Case No. 3:26-CV-00133-SCR-DCK

JOE GIBBS RACING, LLC,

        Plaintiff,

        v.

CHRISTOPHER GABEHART and SPIRE
MOTORSPORTS, LLC,

        Defendants.

**PLAINTIFF JOE GIBBS RACING, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS DEFENDANT SPIRE'S COUNTERCLAIMS**

Plaintiff Joe Gibbs Racing, LLC ("JGR"), by and through counsel, submits this Memorandum of Law in support of Plaintiff JGR's Motion to Dismiss the Counterclaims of Defendant Spire Motorsports, LLC ("Spire") in their entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

Through its counterclaims, Spire attempts to transform vague conversations in the garage into a binding agreement between NASCAR competitors. According to Spire, in exchange for Spire's promise not to enforce a restrictive covenant against its former employee Robert Smith, JGR promised to allow Spire to hire a future JGR employee of its choosing at some undefined point in the future. Taken as true, as they must be for a Motion to Dismiss, Spire's pleaded allegations demonstrate that the parties never reached agreement on the most fundamental terms of the purported bargain and they show that Spire itself did not believe it possessed the contractual right that forms the foundation of its counterclaims. Through its own pleaded allegations, it is clear that no contract existed between Spire and JGR to trade employees, either expressly or impliedly,

1

PPAB 13973099v5

and Spire does not show that any benefit was conferred onto JGR to support a claim for unjust enrichment. Consequently, Spire has fundamentally failed to plead a claim, and its counterclaims should be dismissed pursuant to Rule 12(b)(6).

<h3 style="text-align:center">STATEMENT OF FACTS[1]</h3>

Spire alleges that Robert "Cheddar" Smith worked as a car chief for Spire and possessed extensive knowledge of Spire's race-performance methods, evaluation processes, racecar setups, and racing strategies. Dkt. 99 at ¶ 20. In the spring of 2025, JGR allegedly began recruiting Smith to serve as the car chief for its No. 54 car, driven by Ty Gibbs. *Id.* at ¶ 19. Spire allegedly informed JGR that Smith was subject to a non-compete covenant that prohibited him from working for JGR until November 30, 2025, with an option to extend the restriction through November 30, 2026. *Id.* at ¶ 26.

Jeffrey Dickerson, Spire's co-owner, allegedly communicated with Christopher Gabehart, then JGR's Competition Director, about the possibility of Spire releasing Smith from his Spire employment contract and allowing him to move to JGR. *Id.* at ¶ 27. Spire alleges that Dickerson understood this oral communication to create a "trade arrangement," which Spire refers to as the "Implied Trade Contract." *Id.* at ¶ 28. Under the purported "Implied Trade Contract," Spire allegedly agreed to release Smith from his contract and waive his non-compete restrictions to allow him to join JGR. *Id.* In exchange, Spire alleges that JGR would allow Spire to "hire a JGR employee of Spire's choosing at a later date" as purportedly agreed to by Gabehart, the Defendant in this litigation that arose months later. *Id.*

---

[1] For purposes of this Memorandum of Law in Support of Plaintiff's Motion to Dismiss only, Plaintiff takes as true all of Defendant Spire's non-conclusory and non-contradictory allegations set forth in Defendant Spire's Counterclaims (Dkt. 99).

2

Gabehart allegedly presented Spire's proposal to "JGR's senior leadership, including Coach Gibbs and Heather Gibbs." *Id.* at ¶ 29. Spire claims that, "at their direction," Gabehart agreed "in principle" to the "Implied Trade Contract," but allegedly insisted that JGR "retain the option to satisfy the 'Implied Trade Contract' with a $100,000 payment instead of releasing an employee." *Id.*

Spire claims that, as a result of this purported "Implied Trade Contract," it released Smith from his Spire employment contract, JGR extended Smith an employment offer, and Smith began serving as the car chief of JGR's No. 54 car in April 2025. *Id.* at ¶ 30. After Smith joined JGR, the No. 54 car allegedly experienced "marked improvements in performance" that continued into the 2026 NASCAR season. *Id.* at ¶¶ 39–40.

In June 2025, Dickerson asked JGR to release Tyler Allen, the former crew chief of the No. 54 car, to allow Spire to hire him under the purported "Implied Trade Contract." *Id.* at ¶ 42. JGR did not release Tyler Allen. *Id.* In or around September or October 2025, Dickerson also allegedly asked JGR to release Ryan Towles, a car chief, from his contract so Spire could hire him, but JGR did not release Ryan Towles. *Id.* at ¶ 43. Spire alleges that JGR has not identified a JGR employee it would release for employment by Spire and has not paid the alleged $100,000 alternative-performance amount. *Id.* at ¶¶ 44–45.

## LEGAL STANDARD

Under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). To be well-pleaded, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the court can "draw the reasonable inference that the defendant is liable for

3

the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Merely reciting the elements of a claim supported by conclusory statements is not sufficient. *Id.* "The plausibility standard requires a plaintiff to demonstrate more than a 'sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Additionally, the court is neither required to accept the plaintiff's legal conclusions drawn from the facts nor to accept unwarranted inferences, unreasonable conclusions, or arguments. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). "Dismissal with prejudice is proper if there is no set of facts the plaintiff[] could present to support [his] claim." *Witherspoon v. State Employees' Credit Union*, 733 F. Supp. 3d 446, 453 (E.D.N.C. 2024) (quoting *Weigel v. Maryland*, 950 F. Supp. 2d 811, 826 (D. Md. 2013)); *see also Cozzarelli v. Inspire Pharmaceuticals Inc.*, 549 F.3d 618, 630–31 (4th Cir. 2008).

## ARGUMENT

### I. Spire's Breach of Contract Claim Fails

#### a. *The Implied Trade Contract Is Not an Enforceable Contract*

Spire contends that "[t]he Implied Trade Contract is an enforceable, oral contract between JGR and Spire under North Carolina law." Dkt. 99 at ¶ 68. That is wrong.

In order to state a claim for breach of contract under North Carolina law, a plaintiff must allege "(1) existence of a valid contract and (2) breach of the terms of the contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000); *see also, Jackson v. Carolina Hardwood Co.*, 120 N.C. App. 870, 871, 463 S.E.2d 571, 572 (1995); *McLamb v. T.P. Inc.*, 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005), *disc. rev. denied*, 360 N.C. 290, 627 S.E.2d 621 (2006). "A

4

contract, express or implied, requires mutual assent, mutuality of promises, and definite terms." *Great Am. Emu Co., LLC v. E.J. McKernan Co.*, 509 F. Supp. 3d 528, 536 (E.D.N.C. 2020). "Mutual assent is normally established by an offer by one party and an acceptance by the other, which offer and acceptance are essential elements of a contract." *Id.* (quoting *Creech v. Melnik*, 347 N.C. 520, 527, 495 S.E.2d 907 (1998)).

"Mutuality of promises means that promises, to be enforceable, must each impose a legal liability upon the promisor. Each promise then becomes a consideration for the other." *Wellington-Sears & Co. v. Dize Awning & Tent Co.*, 196 N.C. 748, 751, 147 S.E. 13, 15 (1929). "For an agreement to constitute a valid contract, the parties' 'minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement.'" *Chappell v. Roth*, 353 N.C. 690, 692, 548 S.E.2d 499, 500 (2001) (quoting *Boyce v. McMahan*, 285 N.C. 730, 734, 208 S.E.2d 692, 695 (1974)). "To be binding, the terms of a contract must be definite and certain or capable of being made so." *Horton v. Humble Oil & Ref. Co.*, 255 N.C. 675, 679, 122 S.E.2d 716, 719 (1961) (quoting *Williamson v. Miller*, 231 N.C. 722, 728, 58 S.E.2d 743, 747 (1950)). "[A] contract is nugatory and void for indefiniteness if it leaves any material portions open for future agreement," and "a contract to enter into a future contract must specify all its material and essential terms, and leave none to be agreed upon as a result of future negotiations." *Connor v. Harless*, 176 N.C. App. 402, 405, 626 S.E.2d 755, 757 (2006) (citation omitted). When an essential term is left to later agreement, the alleged contract is void. *Smith v. Smith*, 65 N.C. App. 139, 143, 308 S.E.2d 504, 506 (1983).

Here, Spire's concocted breach-of-contract claim rests on an alleged oral "Implied Trade Contract" under which Spire purportedly agreed to release Robert Smith from his non-competition agreement with Spire so that he could join JGR. Dkt. 99 at ¶ 69. In exchange, Spire alleges that

JGR agreed to either: (a) "allow Spire to hire a JGR employee of Spire's choosing at a later date" or (b) pay Spire $100,000 "instead of releasing a future employee." *Id.* at ¶¶ 28–29. This alleged arrangement cannot support a claim for breach of contract for two reasons.

First, assuming the allegations are true, as JGR must, the alleged agreement lacks the essential definiteness required to form a binding contract. A purported agreement whose central subject is left to one party's future selection is void for indefiniteness. *Gray v. Hager*, 69 N.C. App. 331, 334, 317 S.E.2d 59, 61 (1984); *Connor*, 176 N.C. App. at 405, 626 S.E.2d at 757. Here, the identity, position, and value of the JGR "employee-to-be-named-later" were never agreed upon and were instead left to subsequent agreement between the parties. Indeed, the supposed agreement lacks any detail about the identity, position, or value of the employee that JGR had supposedly agreed to "trade." Would the agreement apply to Spire's request to hire a member of JGR's pit crew, a crew chief, the President of JGR, or even JGR's top NASCAR Cup Series drivers? The fact that the supposed agreement provides no information to answer this question demonstrates its fatal lack of definiteness.

Indeed, Spire's own behavior conclusively demonstrates that the parties had merely agreed to agree about the potential release of an unidentified JGR employee. Spire admits that it requested two different JGR employees be released from their non-competition agreements, but that JGR declined. Dkt. 99 at ¶¶ 42–43. Spire concedes that "[n]o agreement was reached . . . concerning any specific role for Gabehart at Spire or any particular JGR employee who might move to Spire." Dkt. 99 at ¶ 48. Spire does not allege that it challenged JGR's refusal to release any of these employees or demanded payment of $100,000.

Additionally, the purported agreement also leaves open the time for performance. According to Spire, JGR agreed to either release an employee at Spire's request or pay $100,000

6

y

"at a later date." *Id.* at ¶¶ 28–29. As such, the purported agreement includes no deadline for compliance. Ultimately, Spire's allegations amount to an unenforceable agreement to agree.

Second, Spire fails to adequately allege mutual assent. Spire alleges that it continued negotiating with JGR to identify potential employees who might join Spire, but that JGR declined its specific requests. Spire's own allegations show that there was no meeting of the minds with respect to the terms of the "Implied Trade Contract." Spire alleges that "JGR agreed to allow Spire to hire a JGR employee of Spire's choosing at a later date." *Id.* at ¶ 28. However, in the next breath, Spire alleges that it continued negotiating with JGR to identify potential employees who might join Spire, but that JGR declined its specific requests. *Id.* at ¶¶ 42–44. Spire alleges that it first requested Tyler Allen's release and, after JGR refused, later requested Ryan Towles's release. *Id.* Those repeated requests are inconsistent with any prior agreement giving Spire unilateral selection rights. Instead, they show that the identity of any employee to be released remained open to future negotiation, confirming the alleged agreement's indefiniteness and the absence of mutual assent. These allegations show that even Spire did not understand itself to have an enforceable right to select any JGR employee unilaterally. If the alleged agreement had granted Spire that authority, Spire would not have needed to return to JGR for approval each time it identified a candidate.

      b.   *Spire Has Not Shown That JGR Breached the Terms of the Implied Trade Contract*

Spire's breach of contract claim also fails for another reason: Spire does not plausibly allege that JGR breached the Implied Trade Contract. "A breach of contract occurs when a party fails to perform a contractual duty that has become [due]." *Salvaggio v. New Breed Transfer Corp.*, 150 N.C. App. 688, 692, 564 S.E.2d 641, 644 (2002) (citing *Millis Constr. Co. v. Fairfield Sapphire Valley, Inc.*, 86 N.C. App. 506, 510, 358 S.E.2d 566, 569 (1987)). A breach is considered material if it "substantially defeats the purpose of the agreement or goes to the very heart of the

7

agreement, or can be characterized as a substantial failure to perform." *Supplee v. Miller-Motte Bus. Coll., Inc.*, 239 N.C. App. 208, 220, 768 S.E.2d 582, 593 (2015) (quoting *Long v. Long*, 160 N.C. App. 664, 668, 588 S.E.2d 1, 4 (2003)).

Here, Spire alleges that "JGR agreed to allow Spire to hire a JGR employee of Spire's choosing *at a later date*." Dkt. 99 at ¶ 28 (emphasis added). Spire claims that it "understood JGR would perform by the end of the 2025 season," but does not allege that JGR agreed to this purported deadline. *Id.* at ¶ 30. To the contrary, Spire appears to allege that JGR should have released Gabehart from his non-competition agreement even though Spire did not offer him employment until after the 2025 race season and did not directly approach JGR with the request. *Id.* at ¶¶ 52, 56. Therefore, under the alleged terms of the agreement, the time for performance has not expired and could still occur in the future.

The absence of a defined performance date defeats Spire's breach allegation. If the alleged agreement merely contemplated performance at an unspecified "later date," then Spire must plead facts showing that reasonable time had elapsed or that JGR unequivocally refused all performance. *See Metals Corp. v. Weinstein*, 236 N.C. 558, 561, 73 S.E.2d 472, 474 (1952) ("[i]f no time for the performance of an obligation is agreed upon by the parties, then the law prescribes that the act must be performed within a reasonable time.") (citations omitted). It has not done so. Thus, even assuming *arguendo* that some contract existed, Spire's Counterclaim does not plausibly allege a present breach.

## II.     Implied Contract Claim

Spire pleads its claim for breach of implied-in-fact contract in the alternative, alleging that the parties' words, conduct, and course of dealing created the same "Implied Trade Contract." Dkt. 99 at ¶¶ 74–81. That claim rises or falls with the same alleged bargain and alleged breach. *See*

*Creech*, 347 N.C. at 526–27, 495 S.E.2d at 911 (providing that "[e]xcept for the method of proving the fact of mutual assent, there is no difference in the legal effect of express contracts and contracts implied in fact."). A contract implied-in-law "is not based upon an actual agreement." *Whitfield v. Gilchrist*, 348 N.C. 39, 42, 497 S.E.2d 412, 415 (1998). "In order to prevent unjust enrichment, a plaintiff may recover in quantum meruit on an implied contract theory for the reasonable value of services rendered to and accepted by a defendant." *Horack v. S. Real Estate Co.*, 150 N.C. App. 305, 311, 563 S.E.2d 47, 52 (2002) (citation omitted). However, an implied-in-fact contract still requires mutual assent, consideration, and definite terms. *See Creech*, 347 N.C. at 526, 495 S.E.2d at 911. It cannot exist where the alleged obligation is materially indefinite or where the essential reciprocal performance is left open for later agreement. *See Charlotte Motor Speedway, LLC v. Cnty. of Cabarrus*, 230 N.C. App. 1, 7, 748 S.E.2d 171, 176 (2013) ("[t]o be enforceable, the terms of a contract must be sufficiently definite and certain, and a contract that leav[es] material portions open for future agreement is nugatory and void for indefiniteness.") (citations omitted); *see also St. Paul Mercury Ins. Co. v. Duke Univ.,* 849 F.2d 133, 135 (4th Cir. 1988) ("[i]n general, courts may refuse to enforce a contract as written where enforcement would contravene public policy.").

Spire's implied contract claim simply restates the same indefinite and unenforceable terms: Spire would release Smith and waive his non-compete, and JGR would later either release a JGR employee selected by Spire or pay $100,000. Dkt. 99 at ¶¶ 28–29. The implied-contract label does not supply the missing material terms or cure the lack of a definite employee or performance date. Therefore, Spire's implied contract claim should be dismissed on the same bases as its breach of contract claim. *See Keister v. Nat'l Council of the YMCA of the U.S.*, No. 12 CVS 1137, 2013 WL 3864583, at *8 (N.C. Super. Ct. July 18, 2013) (dismissing a claim for breach of implied-in-fact

PPAB 13973099v5

contract where "[p]laintiffs have alleged no acceptance or consideration for Y-USA's offer sufficient to imply mutual assent to the terms of any alleged agreement.").

### III.    Unjust Enrichment

Spire's unjust enrichment claim fares no better than its contract claims. Spire alleges that it conferred a benefit on JGR by releasing Smith from his employment agreement and waiving his non-compete, thereby enabling Smith to later join JGR as car chief, and that JGR retained that benefit without releasing a reciprocal employee or paying $100,000. Dkt. 99 at ¶¶ 84–87. Spire's unjust enrichment claim is expressly pleaded as an alternative to the contract claims and seeks restitution or disgorgement measured by the value of the alleged benefit JGR received.

Under North Carolina law, to state a claim for quantum meruit and unjust enrichment, "a plaintiff must show three elements: (1) plaintiff conferred a measurable benefit to defendant, (2) defendant knowingly and voluntarily accepted the benefit, and (3) the benefit was not given gratuitously." *TSC Research, LLC v. Bayer Chems. Corp.*, 552 F. Supp. 2d 534, 540 (M.D.N.C. 2007) (internal citation omitted); *see also Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 351 F. Supp. 3d 436, 446 (M.D.N.C. 2005) (citation omitted). A claim for unjust enrichment is an equitable, quasi-contractual remedy "imposed by law to prevent an unjust enrichment." *Jessey Sports, LLC v. Intercollegiate Men's Lacrosse Coaches Ass'n, Inc.*, 289 N.C. App. 166, 171–172, 888 S.E.2d 677, 683 (2023) (quoting *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988)).

Spire's unjust enrichment claim cannot succeed because Spire cannot show that it conferred a benefit to JGR. To the contrary, Spire alleges that it conferred a "substantial benefit" by "releasing Smith and waiving his non-compete, and therefore enabling Smith to join JGR." Dkt. 99 at ¶ 85. However, as alleged, in releasing Smith from his non-compete, Spire was conferring a

PPAB 13973099v5

benefit *onto Smith*, not JGR. The non-compete was binding only on Smith, not on JGR, so releasing and waiving it was a benefit only to Smith, not to JGR.

Thus, Spire does not allege that it conferred any measurable benefit on JGR, such as goods or services for which it should be compensated or releasing *JGR* from an existing obligation. *See KNC Techs., LLC v. Tutton,* No. 19 CVS 793, 2019 WL 6219035, at \*14 (N.C. Super. Ct. Oct. 9, 2019) (stating that "a claim for unjust enrichment must be based on a contract implied in law in which one party has provided a benefit to another, such as goods or services, for which the first party should rightfully be compensated"); *see also Chisum v. Campagna*, No. 16 CVS 2419, 2017 WL 5161978, at \*11 (N.C. Super. Ct. Nov. 7, 2017) (unjust enrichment claim dismissed where plaintiff did "not allege that he conferred any benefit on the [defendants], but rather only that the [defendants] 'received' or 'wrongfully retained' benefits from their alleged misconduct."); *Islet Scis., Inc. v. Brighthaven Ventures, LLC*, No. 15 CVS 16388, 2017 WL 129944, at \*6 (N.C. Super. Ct. Jan. 12, 2017) (holding that unjust enrichment claim failed where plaintiff alleged only that it was damaged by defendants' conduct and not that it had conferred a benefit on defendant company).

## <u>CONCLUSION</u>

For the foregoing reasons, JGR respectfully requests that the Court dismiss Spire's Counterclaims in their entirety with prejudice.

**[SIGNATURE PAGE FOLLOWS]**

11

This the 15th day of July, 2026.

**PARKER POE ADAMS & BERNSTEIN LLP**

/s/ Sarah F. Hutchins
Sarah F. Hutchins
N.C. Bar No. 38172
Tory Ian Summey
N.C. Bar No. 46437
Keith M. Weddington
N.C. Bar No. 14352
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com

**KING & SPALDING LLC**

Danielle T. Williams
dwilliams@kslaw.com
N.C. Bar No. 23283
300 South Tryon Street, Suite 1700
Charlotte, NC 28202
Thomas M. Melsheimer – *Pro Hac Vice*
tmelsheimer@kslaw.com
Chad B. Walker – *Pro Hac Vice*
cwalker@kslaw.com
Tracea Rice – *Pro Hac Vice*
trice@kslaw.com
Alexandra Moore - *Pro Hac Vice*
almoore@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201

*Attorneys for Joe Gibbs Racing, LLC*

12

## ARTIFICIAL INTELLIGENCE CERTIFICATION

No artificial intelligence was employed in doing the research for the preparation of this Motion, with the exception of the standard artificial intelligence embedded in Westlaw. Every statement and every citation to an authority contained in this Motion has been checked by an attorney in this case as to the accuracy of the proposition for which it is offered.

**PARKER POE ADAMS & BERNSTEIN LLP**

/s/ Sarah F. Hutchins
Sarah F. Hutchins
N.C. Bar No. 38172
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
*Attorney for Joe Gibbs Racing, LLC*

13

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this date the foregoing **PLAINTIFF JOE GIBBS RACING, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS DEFENDANT SPIRE'S COUNTERCLAIMS** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notice and serve same upon counsel of record via the Court's electronic case filing system.

This the 15th day of July, 2026.

**PARKER POE ADAMS & BERNSTEIN LLP**

/s/ Sarah F. Hutchins
Sarah F. Hutchins
N.C. Bar No. 38172
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
*Attorney for Joe Gibbs Racing, LLC*

14