# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | |
|---|---|
| JOE GIBBS RACING, LLC, | Case No. 3:26-CV-00133-SCR-DCK |
| Plaintiff, | |
| v. | **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL THE PRODUCTION OF ESSENTIAL TECHNICAL DOCUMENTS** |
| CHRISTOPHER GABEHART and SPIRE MOTORSPORTS II, LLC, | |
| Defendants. | |

Plaintiff Joe Gibbs Racing, LLC ("JGR") submits this Memorandum of Law in Support of its Motion to Compel the Production of Essential Technical Documents (the "Motion"). JGR respectfully requests that the Court grant its Motion and order Defendant Spire Motorsports II, LLC ("Spire") to produce documents responsive to JGR's First Set of Requests for Production.

Spire refuses to produce the fundamental technical documents JGR needs to test the extent to which Spire has implemented JGR's trade secrets in its NASCAR Cup Series racecar operations, including Spire's racecar setups, post-race analysis, and body scans comparable to those from JGR found on Gabehart's devices. Spire's primary basis for withholding these documents is that JGR has not proven, to Spire's own satisfaction, that it has the stolen trade secrets: "Without evidence of transmission or use of JGR's alleged trade secrets or confidential information, Spire will not produce its scans or setups . . . ." Ex. A, Em. fr. T. Homesley to Counsel for JGR (July 14, 2026).

Although evidence proving a key disputed fact is not required to warrant discovery into that fact, the record is *replete* with circumstantial evidence that Spire has implemented JGR's trade secrets and confidential information, *infra* Section III.C, including but not limited to: Gabehart's deletion of relevant communications with Spire's co-owner, and Spire's co-owner's deletion of the same evidence, *see* Ex. L, Gabehart ROG Resp. No. 13; Spire's continued employment of Gabehart

1

at a salary high above the industry standard rate and with incentive compensation tied directly to Cup Series performance, *see e.g.,* Ex. I, Spire ROG Resp. No. 6; an operationalized version of the stolen post-race analysis document *found in Spire's systems. See* Ex. J Spire_0000849; third-party data showing that Spire's aerodynamic profile is now more similar to JGR's than to that of its affiliated Chevrolet race team partners, *see* Ex. K, Spire_0001441–44. And discovery is ongoing.

Thus, Spire's mantra that "there is no evidence of misappropriation by Spire" is false. The evidence JGR requests here, however, is necessary to determine the full extent, manner, and means of that misappropriation, and Spire's flat refusal to produce it is impeding the progress of this case.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Following his separation from JGR, a forensic examination of Gabehart's JGR-issued computer and personal cell phone revealed that he copied, photographed, and retained JGR confidential information and trade secrets. *See* Preliminary Injunction Order, Dkt. 78 at ¶¶15–22. The information Gabehart admitted to wrongfully taking includes more than twenty different car setup and simulation files, a comprehensive post-race data analysis, materials detailing JGR's proprietary process for evaluating race and driver performance—categories of documents JGR now seeks from Spire to determine the scope of misappropriation by Spire. *See* Dkt. 78 at ¶ 18.

JGR served Spire with its first set of requests for production on May 12, 2026 (the "RFPs"), seeking, among other things, basic technical documents allowing JGR to test the extent to which Spire has taken or used JGR's confidential information and trade secrets. *See* Ex. B, JGR RFPs to Spire. Three RFPs in particular are relevant to this Motion: RFP 11 seeks documents and communications concerning JGR's confidential information and trade secrets; RFP 12 seeks documents "created, compiled, or derived in whole or in part" from JGR's confidential information and trade secrets; and RFP 21 seeks documents and communications reflecting changes in Spire's Cup Series performance that occurred since Gabehart began working there, including documents

2

reflecting changes to racecar setups, race strategy, pit strategy, or engineering processes, and any communications attributing such changes to Gabehart. *Id.* at 11–12, 15. On June 11, 2026, Spire served its responses and objections to the RFPs ("the R&Os"). *See* Ex. C, Spire R&Os.

Spire imposed two limitations that, together, foreclose any meaningful discovery into whether JGR's trade secrets have been implemented at Spire. In response to RFPs 11 and 12, Spire stated that it will only produce materials "reference or reflect the specific file names and items identified in the parties' forensic examinations." Ex. C at 18, 19. This limitation excludes any derivative Spire process, document, or methodology that reflects or incorporates JGR information without explicitly referencing the precise file name of the document. Second, in response to RFP 21, Spire stated that it will only produce only those documents "that relate to changes in Spire's performance attributable to Gabehart, to the extent any exist." *Id.* at 28. On June 18, 2026, JGR wrote to Spire to address such deficiencies in the R&Os. *See* Ex. D, Deficiency Letter.

On June 22, 2026, JGR requested priority production of a number of categories of documents responsive to RFPs 11, 12, and 21 ("Priority Documents"): Bolt6 scans showing the underbody design of Spire's Cup Series racecar; setup sheets detailing the highly technical settings that are set to maximize performance on given racetracks; and post-race analysis documents. *See* Ex. E at 8–9. JGR identified the Priority Documents because their timely production is essential to proceeding with key depositions and other discovery in the matter, and to streamline Spire's production efforts. In addition, for the Priority Documents, JGR limited their initial request to two race seasons of data, the absolute minimum required to compare last season with this one.[1]

In response, Spire informed JGR that it would not produce any car setup sheets or scans

---

[1] Providing the Priority Documents did not limit or obviate Spire's obligation to produce other responsive documents, including similar categories of documents that only Spire would likely know about that may similarly prove essential to testing Spire's misappropriation.

unless and until JGR first produced the documents taken by Gabehart. Those documents, as produced through the original protocol process by Gabehart with a "G" label, were made available for Spire's counsel to review no later than July 1, 2026, in a virtual clean room. Included among those documents were over twenty different car setup sheets that revealed how JGR adjusted its racecars to maximize performance on given racetracks, documents detailing JGR's proprietary processes for evaluating race and driver performance, and Bolt6 underbody scans. *See e.g.* Ex. F-1 (car setup sheet); F-2 (post-race analyses); F-3 (Bolt6 scans).[2] Importantly, Bolt6 underbody scans were also found wrongfully retained on Gabehart's phone. Dkt. 9-4 at 33 (citing Ex. F-3).

Even after producing the stolen JGR documents in a clean room, Spire maintained its position that it would not produce the Priority Documents, nor make any meaningful production regarding the three categories at issue. *See generally* Ex. A. Having reached an impasse, JGR filed a letter brief with the Court on July 6, requesting an informal conference. Judge Keesler denied that request on July 8, 2026, and encouraged the parties to work together to resolve or narrow these issues. The parties did so, but remain at an impasse regarding RFPs 11, 12, and 21.

## II.     LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). When a party fails to respond to an interrogatory or request for production, the party seeking discovery may move for an order compelling a response or the production of documents responsive to the request. Fed. R. Civ. P. 37(a)(3)(B). The party resisting the discovery has the burden to establish

---

[2] In the spirit of compromise, JGR withdrew its request for Hawkeye (outer body) scans on July 1, 2026. *See* Ex. H at 21. However, JGR reiterated that the remaining documents for which it requested priority production—the Bolt6 scans, post-race analyses, car setups, and AI materials— were responsive to RFPs 11, 12, and 21 but made clear that these categories of documents are not the entire universe of documents responsive to the requests as written, emphasizing that all such documents must be produced.

the lack of relevance by demonstrating that the requested discovery (1) is not relevant as defined under Rule 26(b)(1); or (2) is "of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Avalon Ctr. Inv. Co. v. Com. Defeasance, LLC*, 2010 WL 4226243, at *1 (W.D.N.C. 2010) (citation omitted).

## ARGUMENT

**A.** **The Documents Sought by RFPs 11, 12, and 21, Including the Priority Documents, Are Relevant and the Requests are Proportionate to the Needs of the Case.**

The documents requested by RFPs 11, 12, and 21 are the central mechanism for testing the extent to which Gabehart and Spire have implemented the confidential information and trade secrets that Gabehart misappropriated from JGR. And Spire cannot identify any reason why the production of these documents would be disproportionate to the needs of the case. As explained above, the documents taken by Gabehart included Bolt6 scans of the underbody of JGR cars, setup and simulation sheets for over twenty races in 2025, and numerous documents related to its proprietary race and driver evaluation processes. *See* Ex. G, JGR Supp. Resp. to Spire ROGs at 1–3. In order to examine how Spire has used the information contained within these documents or other JGR confidential information to compete with JGR, JGR must be permitted to examine documents evidencing Spire's car setups, car underbody design, and evaluation processes.

The Priority Documents are responsive to all three requests. RFP 11 seeks documents "related" to JGR's trade secrets and confidential information, and because these include the very categories of documents Gabehart stole or wrongfully retained from JGR, Spire's comparative documents are without question related to them. RFP 12 seeks documents "derivative" of JGR's trade secrets, which is precisely what the Priority Documents are intended to test. RFP 21 specifically enumerates "any changes to race setups, race strategy, pit strategy, analytics, or engineering processes implemented after Gabehart's commencement of employment." Every category of Priority Document other than the scans is expressly listed among these examples, and

5

the scans are without question a form of "analytics" similar to the enumerated examples, as a scan is an analysis of the shape and aerodynamic features of the car.[3]

Spire cannot demonstrate that the documents requested fall outside the broad scope of Rule 26(b)(1) or "is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Avalon Ctr. Inv.*, 2010 WL 4226243, at \*1. Fact discovery is slated to close on August 31, 2026, and JGR needs those documents to prepare for depositions of key witnesses and for its expert witnesses to analyze for written reports. JGR has already been forced to postpone scheduled depositions of Spire technical witnesses because of Spire's unwillingness to provide these basic technical documents, and with each passing deposition JGR continues to be prejudiced by Spire's delay.

**B.     Spire's Demand that JGR Prove Misappropriation by Spire Does Not Excuse Its Refusal to Produce the Priority Documents**

Spire's initial refusal to produce responsive documents focused on arguing that it could not meaningfully evaluate JGR's RFPs or identify any responsive documents until JGR has identified the precise trade secrets that it alleges Spire has misappropriated. But JGR has identified the confidential information and trade secrets that it is currently aware of multiple times and ways: in its Complaints, *see* Dkt. 1, 8, and 95, in its motion for preliminary injunction, *see* Dkt. 9, and, most recently, via a virtual clean room established for that very purpose. Ex. E, Email dated June 26, 2026.[4] Even after the creation of the clean room, Spire maintained its position that "[w]ithout

---

[3] Further, because these documents are absolutely essential and because of the time needed to obtain a ruling, JGR served another request specifically enumerating the priority categories. *See* JGR's Second Set of Requests for Production to Spire, Dkt. 110-1. JGR served these requests not because they were not already responsive, but because they are too important to take any chance on them being determined non-responsive.

[4] As in many trade secret cases, the universe of relevant trade secrets is not static. JGR has identified the trade secrets it currently understands to be at issue and will continue to do so as discovery unfolds. But Spire's repeated attempts to limit the universe of at issue trade secrets to the physical documents Gabehart admitted to taking after being caught is erroneous. Only the

6

evidence of transmission or use of JGR's alleged trade secrets or confidential information, Spire will not produce its scans or setups. . . ." Ex. A, Email dated July 13, 2026.

A defendant cannot condition its production of documents, despite its obligations under Rule 34, on a plaintiff proving the merits of its claims. *See Allison v. McCabe, Trotter & Beverly, P.C.*, 2017 WL 6363635, at \*4 (D.S.C. 2017) ("Defendant cannot put the cart before the horse by insisting on some showing of liability before it will respond to discovery requests."). JGR is not required to establish, in advance of discovery, whether Spire implemented the trade secrets that the Court has already found Gabehart misappropriated before it produces the very documents that would reveal whether implementation occurred. And neither of the cases that Spire cited in its response to JGR's motion to amend the protective order is availing. *See* Dkt. 105 (citing *Makina v. Kimya Endustrisi A.S.,* 2025 WL 1709679, at \*9, 12 (W.D. Va. 2025); *Ikon Office Sols., Inc. v. Konica Minolta Bus. Sols., U.S.A., Inc.*, 2009 WL 4429156, at \*3–6 (W.D.N.C. 2009)). Neither *Makina* nor *Ikon* dealt with the scenario now before the Court, where a former employer stole highly sensitive documents amid extended discussions with his eventual new employer and then destroyed evidence of those discussions only days after the theft. And neither case involved a preliminary finding of fact that an employee misappropriated trade secrets.

JGR has already done precisely what the courts in *Makina* and *Ikon* required: identify the currently known misappropriated trade secrets with reasonable particularity. In each case, the court distinguished between generic categories of information—such as "customer lists" and "sales reports"—and the actual items themselves. *See Makina*, 2025 WL 17069679 at \*16; *Ikon*, 2009 WL 4429156, at \*3–5. JGR has identified its currently known trade secrets numerous times over

completion of discovery will solidify the full universe of trade secrets at issue, which may include memorized trade secrets implemented at Spire.

in far greater detail than the level of detail provided in both *Makina* and *Ikon*, most recently in its amended interrogatory responses. *See* Ex. G at 16–25. In sum, JGR has already produced the currently known trade secrets at issue and is asking for limited comparator documents from Spire. RFPs 11, 12, and 21 do not ask Spire to turn over every single document related to its racing operations; they request targeted documents that mirror the documents that Gabehart misappropriated.

**C.  Abundant Record Evidence Shows Spire Has Misappropriated JGR's Trade Secrets and Confidential Information.**

JGR need not prove to Spire's satisfaction that Spire has implemented its trade secrets and confidential information to warrant discovery into that very question. *See* Section III.B, *supra*. In any event, the record contains abundant evidence that Spire has done so. The Court is already aware of much of this evidence, having considered it in connection with JGR's motion for preliminary injunction, including Gabehart's admitted taking of JGR's setups, post-race analyses, and aerodynamic component data and placement of those materials into a folder labeled "Spire," *see* Dkt. 35-12, Ex. 4, his deletion of his communications with Dickerson shortly after receiving Spire's offer, and Dickerson's own deletion of those same communications. Ex. L, Gabehart ROG Resp. No. 13; Ex. I, Spire ROG Resp. No. 15. But, since that time, three additional pieces of evidence have come to light that further confirm Spire has implemented JGR's stolen trade secrets.

First, the record from the preliminary injunction proceedings, together with Spire's own document production, establishes that Spire possesses a document mirroring a trade secret document Spire told the Court under pointed questioning that it did not believe it had. At the March 26, 2026, preliminary injunction hearing, JGR's counsel walked the Court through the provenance of a spreadsheet the parties referred to as "Gabehart 222" (also referenced as Exhibit 222), *see* Ex. F-4, GABEHART_0000222, explaining that Gabehart took JGR's proprietary post-race audit

8

methodology—"the algorithms we use to measure things ███████████████████ ████████████—all these different things that we analyze after the race is over"—and "mirrors that in creating a similar spreadsheet for Spire," populated on a race-by-race basis with data including average start, average stage finish, points, and number of fastest laps. Ex. N, Mar. 26, 2026, Preliminary Injunction Hr'g Tr. at 18–19. JGR's counsel further identified two categories embedded in that spreadsheet that are unique to JGR's proprietary methodology rather than generic industry terminology: ███████████████████████ ████████████—both appearing in the spreadsheet with the same definitions JGR uses internally. *Id.* at 102–103, 106. The Court itself observed that "the similarities between the two are striking," *id.* at 99, and pressed Spire's counsel on why Gabehart would have created "an Excel spreadsheet with your client's numbers on them if it wasn't for Spire." *Id.* at 66.

Despite this record, when the Court asked Spire's counsel directly, "What about the document 222 that we've been talking about . . . have you-all looked for a version of that on your system?," and cautioned that "a typical search" might not surface it, counsel represented only that Spire's forensic examiner had searched using file names drawn from Gabehart's personal OneDrive and that Spire "d[id]n't believe" it had "Gabehart 222"—a hedged denial based on a search the Court had just told Spire's own counsel might not be adequate. *Id.* at 65–66. Yet a document Spire itself has produced in this litigation, bearing Spire's own Bates number, contains an "Audit" tab using the identical diagnostic categories described at the hearing as unique to JGR's methodology—including a ██████████ column with the same or a similar algorithm implemented, and a ████████████ category, alongside ███████████████████ ████████████████████████████████████████ ████████ *populated with actual race results for Spire's own cars.* Ex. J, Spire_0000849. Spire's

9

possession of a document built on the very trade-secret methodology it told the Court it did not believe it had is direct evidence of misappropriation by Spire, not merely by Gabehart, and squarely refutes Spire's repeated assertion that "there is no evidence of misappropriation by Spire."

Second, third-party wind tunnel data suggests that Spire implemented JGR's proprietary aerodynamic design, including aspects of the underbody design captured in the Bolt6 scans found on Gabehart's devices—the same type of scans JGR is seeking from Spire. An independent NASCAR post-race wind tunnel audit following the Pocono race shows that Spire's aerodynamic coefficients (coefficient of lift and drag) are very similar to those of JGR and fellow Toyota-affiliated team Legacy Motor Club, and are further removed from the coefficients of Spire's own General Motors technical-alliance partner, Hendrick Motorsports. Ex. K, Spire_0001441–44. Although analysis of this data is ongoing and it is merely one data point, this convergence between a GM team (Spire) and two of JGR's own Toyota operations, rather than between Spire and its OEM/Chevy-aligned partners like Hendrick—is hard to explain other than by reference to data Gabehart has taken from Spire, including the Bolt6 scans Gabehart wrongfully kept and were found on his devices. Thus, JGR needs the 2025 and 2026 Spire Bolt6 scans to determine whether Spire has in fact implemented the JGR trade secrets in its underbody design after Gabehart took the information.

Third, and consistent with both the independent third-party aerodynamic data and Gabehart's evident intent in taking JGR's materials, Spire's improvement on the track this year has been dramatic, unprecedented, and open for all to see, as demonstrated by the public results.

| Driver | Metric | 2025 Season | 2026 Season (through 20 starts) | Source |
|---|---|---|---|---|
| Daniel Suárez (No. 7) | Wins | 0 | 1 | https://www.racing-reference.info/driver/Daniel_Suarez/ |
| Daniel Suárez (No. 7) | Avg. Start | 23.5 | 12.2 | https://www.racing-reference.info/driver/Daniel_Suarez/ |
| Daniel Suárez (No. 7) | Avg. Finish | 20.9 | 14.9 | https://www.racing-reference.info/driver/Daniel_Suarez/ |
| Daniel Suárez (No. 7) | Final/Current Points Rank | 29th | 11th | https://www.racing-reference.info/driver/Daniel_Suarez/ |
| Michael McDowell (No. 71) | Wins | 0 | 0 | https://www.racing-reference.info/driver/Michael_McDowell |
| Michael McDowell (No. 71) | Avg. Start | 15.7 | 16.6 | https://www.racing-reference.info/driver/Michael_McDowell |
| Michael McDowell (No. 71) | Avg. Finish | 18.2 | 18.7 | https://www.racing-reference.info/driver/Michael_McDowell |
| Michael McDowell (No. 71) | Final/Current Points Rank | 22nd | 21st | https://www.racing-reference.info/driver/Michael_McDowell |
| Carson Hocevar (No. 77) | Wins | 0 | 1 | https://www.racing-reference.info/driver/Carson_Hocevar |
| Carson Hocevar (No. 77) | Avg. Start | 17.6 | 11.2 | https://www.racing-reference.info/driver/Carson_Hocevar |
| Carson Hocevar (No. 77) | Avg. Finish | 21.6 | 14.4 | https://www.racing-reference.info/driver/Carson_Hocevar |
| Carson Hocevar (No. 77) | Final/Current Points Rank | 23rd | 8th | https://www.racing-reference.info/driver/Carson_Hocevar |

10

*See* Racing-Reference Info., www.racing-reference.info/active-drivers (last visited July 17, 2026).

In light of the admitted theft of JGR trade secrets, the most plausible explanation for Spire's dramatic improvement—particularly when considered alongside Spire's own operationalized audit document and the convergence in aerodynamic profile—is that Spire has implemented JGR's confidential information and trade secrets. Taken together, this evidence confirms that Spire's oft-repeated refrain that "there is no evidence of misappropriation by Spire" is simply false. JGR must be permitted to test for misappropriation of its trade secrets through discovery. The documents JGR seeks through RFPs 11, 12, and 21, including the exemplary requested Priority Documents are necessary to determine the full extent of that misappropriation.

**D.** **Spire's Limitations on RFPs 11, 12 and 21 Amount to a Refusal to Produce Altogether**

In addition to its flat refusal to produce the Priority Documents essential to testing for misappropriation, Spire's broader objections to the requests are also improper and amount to a refusal to produce anything responsive. Although the Priority Documents are essential, these RFPs seek other documents highly relevant to testing misappropriation—including categories of which only Spire is likely to know whether they exist. The priority documents reflect those categories that JGR could identify internally, including based on the categories of documents Gabehart improperly took from JGR. Identifying these priorities did not obviate Spire's basic obligation to produce these fundamental categories of relevant documents, but Spire's positions amount to refusing to produce anything responsive to these essential requests.

Spire stated it would produce documents "that reference or reflect the file names." *See* Ex. C, Spire RFP Resp. No. 11, 12. After being pushed on this unreasonable limitation, it stated that it would produce documents containing "JGR's purported trade secrets or confidential information." Ex. M, Email dated June 24, 2026 at 2. But this limitation is inconsistent with the language of the requests, which seek derivative materials that could have been developed based on JGR's

information without reproducing the information identically or referencing the file names.

Spire's position harkens back to the interchange at the preliminary injunction hearing, where counsel for Spire indicated that the post-race audit report did not hit on a "file name" search, as discussed in Section III.A, *supra.* Ex. N at 65–66. A file name search is clearly insufficient when the point is to test potential misappropriation, which of course would almost certainly not maintain the exact same file names as the stolen materials, even if the misappropriation is in the form of a simple file conversion. This is precisely the case with Spire_0000849, Ex. J, which copied the essential content of the stolen information but not the file name. The technical documents requested are necessary for JGR to *test* whether the documents in Spire's possession are related to or derivative of JGR confidential information or trade secrets. JGR has repeatedly expressed, and remains willing to discuss limitations on scope, but Spire has categorically refused to produce anything beyond what hits on a filename search, which is likely equivalent to producing nothing.

Spire's approach to RFP 21 is similar. The request seeks: (1) documents evidencing changes, and (2) communications discussing whether those changes are attributable to Gabehart. Spire's limitation to documents relating to "changes in [its] performance attributable to Gabehart, if any exist," Ex. C, Spire's RFP Resp. No. 21, impermissibly relies on Spire's unilateral determination of a disputed fact in this case—whether a change is "attributable to Gabehart." Spire has made it clear, however, that its position is that *no changes are attributable to Gabehart*. Thus, its objection equates to a refusal to produce responsive documents. Spire's unsupported unilateral conclusion and outright refusal is improper and fundamentally impedes the progress of discovery.

## CONCLUSION

For the reasons set forth herein, the Court should order Spire to immediately produce all responsive documents to RFPs 11, 12, and 21 as written, including the specifically enumerated Priority Documents, which Spire should produce on an expedited basis as originally requested.

This the 17th day of July, 2026

**KING & SPALDING LLP**

/s/ *Danielle T. Williams*
Danielle T. Williams
dwilliams@kslaw.com
N.C. Bar No. 23283
300 South Tryon Street, Suite 1700
Charlotte, NC 28202
Thomas M. Melsheimer – *Pro Hac Vice*
tmelsheimer@kslaw.com
Chad B. Walker – *Pro Hac Vice*
cwalker@kslaw.com
Tracea Rice – *Pro Hac Vice*
trice@kslaw.com
Alexandra Moore - *Pro Hac Vice*
almoore@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201

**PARKER POE ADAMS & BERNSTEIN**
Sarah F. Hutchins
N.C. Bar No. 38172
Tory Ian Summey
N.C. Bar No. 46437
Keith M. Weddington
N.C. Bar No. 14352
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com

*Attorneys for Joe Gibbs Racing, LLC*

13

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 7.1(b), the undersigned counsel hereby certifies that they have conferred in good faith with counsel for the opposing parties regarding the relief sought in this Motion. On July 6, 2026, JGR further submitted a request for an informal conference to address the present dispute, which was directed to United States Magistrate Judge David C. Keesler. After considering the request, Judge Keesler declined to hold the informal conference and directed JGR to alternatively file the present Motion so that the Court may resolve the issue.

This the 17th day of July, 2026

**KING & SPALDING LLP**

/s/ *Danielle T. Williams*
Danielle T. Williams
dwilliams@kslaw.com
N.C. Bar No. 23283
300 South Tryon Street, Suite 1700
Charlotte, NC 28202
Thomas M. Melsheimer – *Pro Hac Vice*
tmelsheimer@kslaw.com
Chad B. Walker – *Pro Hac Vice*
cwalker@kslaw.com
Tracea Rice – *Pro Hac Vice*
trice@kslaw.com
Alexandra Moore - *Pro Hac Vice*
almoore@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201

**PARKER POE ADAMS & BERNSTEIN**
Sarah F. Hutchins
N.C. Bar No. 38172
Tory Ian Summey
N.C. Bar No. 46437
Keith M. Weddington
N.C. Bar No. 14352
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Bank of America Tower

14

620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com

*Attorneys for Joe Gibbs Racing, LLC*

15

## ARTIFICIAL INTELLIGENCE CERTIFICATION

No artificial intelligence was employed in doing the research for the preparation of this Memorandum, with the exception of the standard artificial intelligence embedded in WestLaw. Every statement and every citation to authority contained in this Memorandum has been checked by an attorney in this case as to the accuracy of the proposition for which it is offered.

This the 17th day of July, 2026

**KING & SPALDING LLC**

/s/ *Danielle T. Williams*
Danielle T. Williams
dwilliams@kslaw.com
N.C. Bar No. 23283
300 South Tryon Street, Suite 1700
Charlotte, NC 28202
Thomas M. Melsheimer – *Pro Hac Vice*
tmelsheimer@kslaw.com
Chad B. Walker – *Pro Hac Vice*
cwalker@kslaw.com
Tracea Rice – *Pro Hac Vice*
trice@kslaw.com
Alexandra Moore - *Pro Hac Vice*
almoore@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201

**PARKER POE ADAMS & BERNSTEIN**
Sarah F. Hutchins
N.C. Bar No. 38172
Tory Ian Summey
N.C. Bar No. 46437
Keith M. Weddington
N.C. Bar No. 14352
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202

16

sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com

*Attorneys for Joe Gibbs Racing, LLC*

17

<strong>CERTIFICATE OF SERVICE</strong>

The undersigned counsel hereby certifies that the foregoing **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL THE PRODUCTION OF ESSENTIAL TECHNICAL DOCUMENTS** was electronically filed with the Clerk using the CM/ECF system which will automatically send notice and serve same upon counsel of record via the Court's electronic case filing system.

This the 17th day of July, 2026

**KING & SPALDING LLC**

/s/ *Danielle T. Williams*
Danielle T. Williams
dwilliams@kslaw.com
N.C. Bar No. 23283
300 South Tryon Street, Suite 1700
Charlotte, NC 28202
Thomas M. Melsheimer – *Pro Hac Vice*
tmelsheimer@kslaw.com
Chad B. Walker – *Pro Hac Vice*
cwalker@kslaw.com
Tracea Rice – *Pro Hac Vice*
trice@kslaw.com
Alexandra Moore - *Pro Hac Vice*
almoore@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201

**PARKER POE ADAMS & BERNSTEIN**
Sarah F. Hutchins
N.C. Bar No. 38172
Tory Ian Summey
N.C. Bar No. 46437
Keith M. Weddington
N.C. Bar No. 14352
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Bank of America Tower

18

620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com

*Attorneys for Joe Gibbs Racing, LLC*

19