# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
#### Case No. 3:26-CV-00133-SCR-DCK

JOE GIBBS RACING, LLC,

          Plaintiff,

    v.

CHRISTOPHER GABEHART and SPIRE
MOTORSPORTS, LLC,

          Defendants.

**PLAINTIFF JOE GIBBS RACING, LLC's FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT SPIRE MOTORSPORTS II, LLC**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Joe Gibbs Racing, LLC ("JGR" or "Plaintiff") hereby request that Defendant Spire Motorsports II, LLC ("Spire") respond hereto and produce for inspection and copying complete, true, and accurate copies of the following documents, electronically stored information, and tangible things in conformance with the above rules at the offices of Parker Poe Adams & Bernstein LLP, 620 S. Tryon St., Suite 800 (or at such other place as may be agreed upon by the parties) within thirty (30) days of service hereof or such earlier dates as may be imposed by Court order or agreed to by the parties.

## DEFINITIONS

As used herein, the terms listed below shall be defined as follows. Insofar as a term is not explicitly defined, the meaning to be used is the commonly accepted definition of the term. Notwithstanding any definition set forth below, each word, term, or phrase used in these Requests is intended to have the broadest meaning permitted under the applicable rules. For the purposes of these requests, the following definitions shall apply:

1.     "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses and information that might otherwise be construed to be outside of their scope.

2.     "Any" and "each" shall mean "all," and "all" shall mean "any and each."

3.     "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) by any means, whether orally, in writing, face-to-face, via any video conferencing platform (e.g., Zoom, FaceTime), by telephone, mail, email, text message, iMessage, short message service, messaging app (e.g., WhatsApp, Slack, Discord), or otherwise.

4.     "JGR Confidential Information and Trade Secrets" shall mean JGR's sensitive, confidential, and proprietary information, and intellectual property, including but not limited to, technical information such as racecar setups, analytics, compensation, and revenues. JGR Confidential Information and Trade Secrets includes information recalled, reconstructed, or reproduced from memory based on knowledge obtained during Gabehart's employment at JGR— including proprietary performance metrics, analytical methodologies, scoring algorithms, evaluation frameworks, diagnostic classification systems (e.g., ███████████ metrics and diagnostic categories), simulation parameters, setup procedures, and measurement processes— regardless of the form in which such information is subsequently expressed.

5.     "Document(s)" has the broadest possible meaning permissible under the Federal Rules of Civil Procedure and/or applicable precedent, including, without limitation, electronic or computerized data compilations and electronic email. A draft or non-identical copy is a separate Document within the meaning of this term. The term "Document" includes Communications and AI Materials.

6.     "Each" and "every" shall mean "each and every."

7.    "Includes" and "Including" shall mean "includes without limitation'" or "including, but not limited to" and neither term shall be construed as limiting any request.

8.    "Gabehart" means Defendant Christopher Gabehart.

9.    "Gabehart's JGR Employment Agreement" means the Employment Agreement between JGR and Gabehart dated December 1, 2024, as amended on June 26, 2025, including all exhibits and attachments thereto.

10.    "JGR" means Plaintiff Joe Gibbs Racing, LLC, and each of its respective subsidiaries and affiliates, and all owners, officers, directors, employees, agents, consultants, attorneys, and/or others acting on their behalf.

11.    "JGR Sponsor or Business Partner" means any Person or Entity, including each of its respective subsidiaries and affiliates, and all owners, officers, directors, employees, agents, consultants, attorneys, and/or others acting on their behalf, identified on the "Partners" page on JGR's website at the following URL: https://www.joegibbsracing.com/partners.

12.    "Person" or "entity" and their plural forms include, without limitation, natural persons, partnerships, corporations, associations, and any other legal entities and units thereof.

13.    "Relating to" shall be construed in its customary broad sense and means, without limitation, all information, data, facts, Documents, or anything else that directly, indirectly, or in any other way mention, discuss, refer to, contain, explain, show, represent, reflect, embody, constitute, identify, illustrate, describe, evidence, support, concern, negate, approve, condone, consent to, bear upon, touch upon, incorporate, affect, include, pertain to, or are otherwise connected with the subject matter about which the request is made.

14.    "The" shall not be construed as limiting the scope of any topic.

3

15. "Lawsuit" means the above-captioned civil action, Joe Gibbs Racing, LLC v. Christopher Gabehart and Spire Motorsports, LLC, Case No. 3:26-CV-00133-SCR-DCK, pending in the United States District Court for the Western District of North Carolina, Charlotte Division, including all claims, counterclaims, and cross-claims asserted therein.

16. "You," "Your" and/or "Spire" means Defendant Spire Motorsports II, LLC, and each of its respective subsidiaries and affiliates, and all owners, officers, directors, employees, agents, consultants, attorneys, and/or others acting on their behalf.

17. "Trade Understanding" means the alleged agreement or arrangement between JGR and Spire, referenced in the Declarations of Jeffrey Dickerson [Dkt. 45-2] and Toni Rogers [Dkt. 46-2] in the above-captioned case.

18. "AI Materials" means any data, output, or interaction relating to any artificial intelligence ("AI") software, platform, tool, or feature—including any generative AI platform, large language model, chatbot, AI assistant, voice assistant, AI-enabled feature within any software application, data analytics platform, simulation software, or computational tool incorporating machine learning, statistical modeling, or automated analysis—that involves, contains, references, or was created using JGR Confidential Information and Trade Secrets. AI Materials includes, without limitation: (a) chat threads, conversation histories, prompts, inputs, system messages, outputs, regenerated outputs, and shared or exported conversations; (b) prompt libraries, saved prompts, custom instructions, and prompt templates; (c) AI-generated or AI-assisted presentations, spreadsheets, code, images, formulas, macros, scripts, algorithms, or computational models, including associated metadata and version histories; (d) AI-enabled transcripts and AI-generated meeting notes or summaries; (e) Documents uploaded to AI tools or used as grounding materials (e.g., knowledge bases, connected drives, uploaded reference

4

documents, or retrieval-augmented sources); (f) any AI interaction in which JGR Confidential Information and Trade Secrets were described, summarized, paraphrased, recreated, or otherwise conveyed—whether by manual text entry, voice input, dictation, or any other method—regardless of whether any JGR Document was uploaded or attached; and (g) any AI interaction used to create, develop, replicate, refine, modify, reformat, anonymize, sanitize, or otherwise transform JGR Confidential Information and Trade Secrets into any new document, tool, framework, or material for use by any person or entity. For purposes of this definition, JGR Confidential Information and Trade Secrets includes information recalled, reconstructed, or reproduced from memory based on knowledge obtained during Gabehart's employment at JGR—including proprietary performance metrics, analytical methodologies, scoring algorithms, evaluation frameworks, diagnostic classification systems (e.g., ██████████ metrics and diagnostic categories), simulation parameters, setup procedures, and measurement processes—regardless of the form in which such information is subsequently expressed.

19. The use of the present or past tense shall encompass both the present and past tenses as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside its scope.

20. The use of the singular form of any word includes the plural and vice versa.

21. Any pronoun shall be construed to refer to the masculine, feminine, or neutral gender as in each case is most appropriate.

22. These definitions shall apply regardless of whether a term is capitalized.

## INSTRUCTIONS

1. Unless otherwise stated, these requests encompass the time- period from January 1, 2025, through the present.

5

2.	The requests herein cover all Documents within Your possession, custody, or control, including Documents received from third-parties. For any requested Document no longer in Your possession, custody, or control, state what disposition was made of the Document and the date of such disposition, and identify all persons having knowledge of the Document's contents.

3.	If You discover additional responsive Documents after Your initial production, You are requested to produce such Documents promptly.

4.	All Documents shall be produced in a manner that identifies how the Documents are kept in the ordinary course of business and by whom; each Document from a particular file, binder, container, or other device shall be accompanied by identifying information, including metadata, indicating the name and location of any such file, binder, container, or device from which the Document was taken and the authors, recipients, and custodians associated therewith.

5.	The below requests include requests for electronic information. Unless otherwise agreed by the parties, You should produce electronic information and documents in single-page TIFF images, with a load file and with all metadata fields. Additionally, JGR requests that electronic information and documents be produced in native format.

6.	If any part of a Document is responsive to any request herein, produce the entire Document.

7.	If any Documents and/or other materials requested are not complete, true, and/or accurate, please specifically identify what is missing and/or altered and why it is missing, not included, or redacted.

8.	Where a claim of privilege is asserted in objecting to any request or part thereof and information is not provided on the basis of such assertion, the following information should be provided in a privilege log served with the objection, if known or reasonably available, unless

6

divulging such information would cause disclosure of the allegedly privileged information: (a) the type of Document for which the privilege is claimed; (b) the date of the Document; (c) the author(s), addressee(s), custodian(s), and any other recipient of the Document, and, where not apparent, the relationships of the author(s), addressee(s), custodian(s), and any other recipient to each other; (d) the subject matter of the information requested or the Document withheld; and (e) the nature of the privilege asserted and the basis upon which it is claimed.

Case 3:26-cv-00133-SCR-DCK    Document 119-4    Filed 07/18/26    Page 8 of 22

## DOCUMENT REQUESTS

1. All Documents and Communications relating to the recruitment, hiring, employment, or potential employment of Gabehart by Spire, from October 1, 2024 through the present, including but not limited to: (a) any concerning job title, role, duties, responsibilities, compensation, job offers, start date, restrictive covenants, or any other terms or conditions of employment for Gabehart; (b) any concerning the decision to recruit or hire Gabehart or to create the position that came to be named Chief Motorsports Officer, its intended scope, and the selection of Gabehart for such position; (c) any offers of employment, employment contracts, term sheets, compensation agreements, job descriptions, or drafts of the same; (d) any concerning JGR or Spire restrictive covenants as they relate to Gabehart's employment or potential employment with Spire; (e) any concerning Gabehart's start date at Spire; (f) any concerning the date Gabehart first provided services to Spire; (g) any concerning Gabehart's actual compensation from Spire; (h) any concerning Your decision to retain, continue to employ, or not terminate Gabehart following the disclosure or discovery that Gabehart had taken, copied, photographed, or possessed any JGR Confidential Information or Trade Secrets, including any assessment of the legal, competitive, or reputational risks of continuing to employ Gabehart, any conditions, restrictions, limitations, or safeguards imposed on Gabehart's employment, role, duties, or access to information following the disclosure or discovery of his misappropriation, including the revocation of access to Spire's electronic systems; any assurances, representations, or commitments made by or to Gabehart.

2. All Documents and Communications relating to any in-person meetings, telephone calls, video calls, meals, social events, or other interactions between Gabehart and any representative, employee, agent, or owner of Spire (including Dan Towriss) prior to Gabehart's commencement of employment with Spire, including but not limited to: (a) any Communications arranging, confirming, or summarizing any such meeting or interaction; (b) any agendas, notes,

memoranda, or summaries prepared in connection with any such meeting or interaction; (c) any travel arrangements, lodging, transportation, meals, entertainment, event tickets, credentials, or hospitality provided to Gabehart or any member of Gabehart's family; and (d) any other gifts, perks, benefits, incentives, or things of value provided to Gabehart or any member of his family prior to Gabehart's commencement of employment with Spire.

3.      All Documents and Communications between You and any Person or Entity relating to any actual or proposed agreement,  including without limitation any non-disclosure agreement, confidentiality agreement, indemnity agreement, fee coverage agreement, hold harmless agreement, or restrictive covenant agreement, between You and Gabehart, including without limitation Communications and Documents relating to drafts, executed versions, negotiation of terms, decision to reject an agreement or term, and any Communications concerning compliance or non-compliance with such agreement(s).

4.      All Documents and Communications relating to any restrictive covenant, non-competition agreement, non-solicitation agreement, confidentiality agreement, or similar contractual obligation between Gabehart and JGR, including but not limited to: (a) any Communications with Gabehart, Spire, or any other Person concerning the existence, scope, enforceability, or applicability of any such agreement, including Gabehart's JGR Employment Agreement; and (b) any Documents reflecting Your understanding of whether Gabehart was subject to a non-competition restriction at the time You discussed employment or potential employment with Gabehart.

5.      All Documents and Communications relating to any alleged defenses You plan to raise in the Lawsuit including without limitation the alleged Trade Understanding and any Documents or Communication concerning or referencing the Trade Understanding.

9

6. All Documents and Communications between You and any Person or Entity regarding any JGR employee, including but not limited to Communications relating to or reflecting any discussion regarding Spire or potential employment at Spire.

7. All Documents and Communications relating to or evidencing Gabehart's duties, responsibilities, and activities in his roles or responsibilities at Spire, including but not limited to (a) any Documents describing his scope of authority, day-to-day activities, and any changes to his roles or responsibilities (b) Documents and Communications between you and your employees or agents relating to the scope or limitations of Gabehart's role at Spire; (c) Documents or Communications relating to communication about Gabehart's role at Spire.

8. All Documents and Communications between You and any Person or Entity relating to Gabehart's involvement in or access to Spire's NASCAR Cup Series race strategy, racecar setup analysis or input, pit crew operations, analytics, engineering, or any other competition-related activities in his role as Chief Motorsports Officer at Spire.

9. All Documents relating to Gabehart's presence or participation at any NASCAR Cup Series race, qualifying, practice, or event, including but not limited to: (a) any Communications directing, inviting, or permitting Gabehart to participate in competitive decisions, strategy meetings, or "war room" operations; (b) any Communications between Gabehart and any crew chief, race engineer, team manager, or other competition personnel at Spire concerning race strategy, racecar setup, pit strategy, or other real-time competition decisions; (c) any records, schedules, or itineraries reflecting Gabehart's assignments, tasks, or responsibilities during NASCAR Cup Series race weekends; (d) any Communications reflecting awareness that Gabehart's participation in NASCAR Cup Series Competition Activities could violate his restrictive covenant obligations; and (e) credential applications and issuances, hard cards, hot

10

passes, garage and pit access credentials, sign-in or check-in logs, expense reports, Communications occurring during race weekends, including practice, qualifying, and race sessions, and all events listed on the official event schedule for NASCAR race weekends[1] (including NCS, NOAPS, and NCTS events), including all text messages and records of calls sent or made to or received from any employee, contractor or agent of Spire, NASCAR or track-issued access records, and any rosters, schedules, or itineraries identifying your role, location, responsibilities, activities, interactions, or conversations at such events.

10. All Documents and Communications relating to Gabehart's compliance or noncompliance with the Court's Temporary Restraining Order and Preliminary Injunction Order entered in this matter.

11. All Documents and Communications between in Your possession or between You and any Person or Entity, including but not limited to any owner, officer, director, employee, or agent of any NASCAR team, relating to JGR's Confidential Information and Trade Secrets, including but not limited to: (a) any information, documents, data, photographs, race setups, car simulations, analytics, sponsorship data, or employee recruitment information or files originating from JGR; (b) any photographs taken of JGR's laptop, screens, displays, or physical documents containing JGR's Confidential Information and Trade Secrets; (c) any files stored, accessed, or maintained on Your devices, cloud storage accounts, or Google Drive containing JGR's Confidential Information and Trade Secrets; (d) any Communications concerning Your possession, use, dissemination, disposition, or deletion of any such information, and (e) any Communications or Documents relating to Your deletion, destruction, loss, non-preservation,

---

[1] An exemplar official event schedule for a NASCAR race weekend, the 2026 Texas Motor Speedway Race weekend schedule, is attached hereto as Exhibit A.

11

and/or retrieval efforts of any Documents, Communications, or electronically stored information relating to JGR or JGR Confidential Information and Trade Secrets, or efforts to recover, restore, or reconstruct any deleted Documents or Communications relating to JGR or JGR Confidential Information and Trade Secrets, including any forensic examinations or requests to wireless carriers, logs, records, metadata, analysis, or reports, reflecting such deletion or destruction or retrieval.

12. All Documents, work product, analyses, reports, presentations, models, or other materials created, compiled, or derived in whole or in part from any JGR Confidential Information or Trade Secrets, including but not limited to any race setups, strategies, simulations, engineering analyses, or competitive assessments that incorporate, reflect, or are based upon information originating from JGR, including any AI Materials.

13. All Documents and Communications relating to the decision to revoke, suspend, restrict, or terminate Gabehart's access to any Spire systems, networks, accounts, devices, or facilities, including but not limited to: (a) any concerning the reasons for revoking Gabehart's access; (b) any reflecting when the decision was made and by whom; (c) any assessments, reviews, or audits of Gabehart's activity on Spire's systems conducted before, during, or after the revocation of access; and (d) any Documents or Communications concerning what, if any, JGR information or data was identified on Spire's systems, devices, or accounts accessible to Gabehart prior to or at the time of revocation.

14. All Documents and Communications between You and any Person or Entity relating to any outreach, solicitation, proposal, pitch, or communication by You or any Person acting on Your behalf to any current or former JGR Sponsor or Business Partner or commercial affiliate of JGR, including but not limited to SAIA, Inc. and Zep, Inc., from October 1, 2025

through the present, and including but not limited to: (a) any proposals, presentations, pitch decks, or sponsorship agreements prepared for or delivered to any JGR Sponsor or Business Partner; (b) any Communications with Spire concerning the identification, targeting, or solicitation of any JGR Sponsor or Business Partner; (c) any Documents reflecting the source of information used to identify or evaluate any JGR Sponsor or Business Partner as a potential Spire sponsor or business partner; and (d) any Documents or Communications reflecting whether any information originating from JGR, including but not limited to sponsorship terms, contract values, renewal dates, or relationship contacts, was used in connection with any such outreach or solicitation.

15. All Documents and Communications relating to any forensic examination, imaging, inspection, review, or analysis of any device, account, or system used by, issued to, or accessible to Gabehart in connection with his employment or potential employment with Spire, including but not limited to: (a) any forensic images, reports, findings, or summaries prepared by Kevin Clarke or any other forensic examiner concerning Gabehart's Spire-issued laptop or any other device used by Gabehart; (b) any Documents identifying the files, data, applications, communications, or information found on any such device or account; (c) any Communications with Kevin Clarke or any other forensic examiner concerning the scope, methodology, findings, or conclusions of any such examination; (d) any Documents or Communications concerning whether any JGR Confidential Information or Trade Secrets were found on, transferred to, or accessible from any device, account, or system used by or issued to Gabehart by Spire; and (e) any Communications among Spire's owners, officers, employees, agents, or counsel concerning the results of any such forensic examination and any actions taken or recommended in response.

16. Documents and Communications sufficient to show the information sharing and financial terms of any technical alliance you have with another NASCAR Team, including but not

13

limited to Hendrick Motorsports, including any contracts or agreements, and documents sufficient to show the amount paid in exchange for information obtained from the alliance partner.

17. All Documents and Communications between You and any Person or Entity relating to the anticipation, threat, or commencement of litigation by JGR against Gabehart or Spire, including but not limited to: (a) any correspondence, warnings, or communications from JGR or its counsel concerning potential claims against Spire; (b) any draft or final press releases, public statements, or media responses prepared in anticipation of litigation by JGR; and (c) and any Communications concerning the preservation or retention of Documents, Communications, or electronically stored information in connection with any actual or anticipated claims by JGR.

18. All Documents reflecting Your quarterly revenue, costs, profits and losses from the inception of Spire through the present, including but not limited to income statements, balance sheets, ledgers or other financial statements, including drafts of the same.

19. All Documents and Communications from the inception of Spire through the present, reflecting presentations internal to Spire that discuss the financial performance of Spire, including but not limited to presentations made at any annual, monthly, or quarterly budget meetings.

20. All Documents and Communications sufficient to show Your primary revenue sources and cost categories from the inception of Spire through the present, including but not limited to documents reflecting (a) money Spire received from NASCAR, sponsors, or any other source, including whether or not the award of funds or amount of funds were based on the team's NASCAR performance, (b) current Cup Series charter agreement, and (c) data regarding the what percentage of the money Spire receives based on race-wins or performance is paid to Spire's drivers or staff as a bonus or payment for performance.

14

21. All Documents and Communications relating to or reflecting any changes in Spire's NASCAR Cup Series performance that occurred after Gabehart commenced employment at Spire, including but not limited to: (a) any Documents reflecting changes to racecar setups, race strategy, pit strategy, analytics, or engineering processes implemented after Gabehart's commencement of employment; and (b) any Communications attributing or relating any change in performance to Gabehart's contributions, knowledge, experience, or involvement.

This the 12th day of May, 2026

**KING & SPALDING LLC**

/s/ *Danielle T. Williams*
Danielle T. Williams
dwilliams@kslaw.com
N.C. Bar No. 23283
300 South Tryon Street, Suite 1700
Charlotte, NC 28202
Thomas M. Melsheimer – *Pro Hac Vice*
tmelsheimer@kslaw.com
Chad B. Walker – *Pro Hac Vice*
cwalker@kslaw.com
Tracea Rice – *Pro Hac Vice*
trice@kslaw.com
Alexandra Moore - *Pro Hac Vice*
almoore@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201

**PARKER POE ADAMS & BERNSTEIN LLP**
Sarah F. Hutchins
N.C. Bar No. 38172
Tory Ian Summey
N.C. Bar No. 46437
Keith M. Weddington
N.C. Bar No. 14352
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202

15

sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com

*Attorneys for Joe Gibbs Racing, LLC*

16

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned counsel hereby certifies that the foregoing **PLAINTIFF JOE GIBBS RACING, LLC'S FIRST SET OF REQUESTS FOR DOCUMENTS TO DEFENDANT SPIRE MOTORSPORTS II, LLC** was electronically filed with the Clerk using the CM/ECF system which will automatically send notice and serve same upon counsel of record via the Court's electronic case filing system.

This the 12th day of May, 2026

**KING & SPALDING LLC**

/s/ *Danielle T. Williams*
Danielle T. Williams
dwilliams@kslaw.com
N.C. Bar No. 23283
300 South Tryon Street, Suite 1700
Charlotte, NC 28202
Thomas M. Melsheimer – *Pro Hac Vice*
tmelsheimer@kslaw.com
Chad B. Walker – *Pro Hac Vice*
cwalker@kslaw.com
Tracea Rice – *Pro Hac Vice*
trice@kslaw.com
Alexandra Moore - *Pro Hac Vice*
almoore@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201

**PARKER POE ADAMS & BERNSTEIN LLP**
Sarah F. Hutchins
N.C. Bar No. 38172
Tory Ian Summey
N.C. Bar No. 46437
Keith M. Weddington
N.C. Bar No. 14352
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com

17

torysummey@parkerpoe.com
keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com

*Attorneys for Joe Gibbs Racing, LLC*

18

# EXHIBIT A



**2026 TEXAS MOTOR SPEEDWAY**
OFFICIAL EVENT SCHEDULE
**NCS, NOAPS, NCTS**
REVISED as of April 14, 02:53 PM



| WEDNESDAY, APRIL 29 | | | |
|---|---|---|---|
| **START** | **END** | **SERIES** | **EVENT** |
| 7:30 AM | 7:30 PM | TRACK OPS | EVENT OPERATIONS SET UP |

| THURSDAY, APRIL 30 | | | |
|---|---|---|---|
| **START** | **END** | **SERIES** | **EVENT** |
| 7:30 AM | 7:30 PM | TRACK OPS | EVENT OPERATIONS SET UP |
| 11:00 AM | 1:00 PM | NCTS | HAULERS ENTER (EQUIPMENT UNLOADING) |
| 12:00 PM | 6:00 PM | | NASCAR CREDENTIALING HOURS |
| *12:00 PM* | *5:30 PM* | *BROADCAST* | *BROADCAST SET UP*   TRACK COLD |
| 12:30 PM | 1:00 PM | NCTS | TEAM ACCESS FOR EQUIPMENT SET UP PERMITTED |
| *1:00 PM* | *3:00 PM* | *RACE CONTROL* | *TRACK TEXTURE SCANNING (GOODYEAR)* |
| 1:00 PM | 6:00 PM | NCTS | GARAGE HOURS |
| 1:30 PM | | NCTS | ROOKIE MEETING (SERIES INSPECTION TRAILER) |
| 3:00 PM | 4:00 PM | TRACK OPS | PRE-RACE STAGE PARKING & ROUTING REHEARSAL   TRACK COLD |
| 5:00 PM | | NCS, NOAPS, NCTS | DRIVER / CREW CHIEF MEETING (SENT ELECTRONICALLY) |

| FRIDAY, MAY 1 | | | |
|---|---|---|---|
| **START** | **END** | **SERIES** | **EVENT** |
| 9:00 AM | 11:00 AM | NOAPS | HAULERS ENTER (EQUIPMENT UNLOADING) |
| *10:00 AM* | *11:30 AM* | *TRACK OPS* | *OEM TRACK LAPS*   TRACK HOT |
| 10:00 AM | 7:00 PM | | NASCAR CREDENTIALING HOURS |
| | | | MINOR RESTRICTIONS ENFORCED 30 MINUTES PRIOR TO HOT TRACK STATUS |
| 10:30 AM | 11:00 AM | NOAPS | TEAM ACCESS FOR EQUIPMENT SET UP PERMITTED (GARAGE AREA) |
| 11:00 AM | 1:00 PM | NCS | HAULERS ENTER (EQUIPMENT UNLOADING) |
| 11:00 AM | 6:30 PM | NOAPS | GARAGE HOURS |
| *11:30 AM* | *12:30 PM* | *RACE CONTROL* | *DRIVER/TEAM TRACK WALK  (NO MOTORIZED VEHICLES AUTHORIZED)*   TRACK COLD |
| 11:30 AM | 11:00 PM | NCTS | GARAGE HOURS |
| 11:30 AM | | TRACK OPS | TRACK SERVICES MEETING (OUTSIDE OF INFIELD CARE CENTER) |
| *12:30 PM* | *1:30 PM* | *RACE CONTROL* | *TRACK PREPARATION  (COMPETITION OPERATIONS)* |
| *12:30 PM* | *12:45 PM* | *RACE CONTROL* | *PACE VEHICLE CALIBRATION (COMPETITION)*   TRACK HOT |
| 1:00 PM | 6:00 PM | NCS | GARAGE HOURS |
| **1:30 PM** | **2:20 PM** | **NCTS** | **PRACTICE**   TRACK HOT |
| **2:35 PM** | **3:30 PM** | **NCTS** | **QUALIFYING (IMPOUND)**   TRACK HOT |
| **4:00 PM** | **4:50 PM** | **NOAPS** | **PRACTICE**   TRACK HOT |
| **5:05 PM** | **6:00 PM** | **NOAPS** | **QUALIFYING (IMPOUND)**   TRACK HOT |
| 5:30 PM | | TRACK OPS | PIT ROAD TRACK SERVICES MEETING |
| 6:35 PM | | NCTS | GRID ACCESS OPEN TO PROPERLY CREDENTIALED GUESTS (UNTIL END OF ANTHEM) |
| 6:40 PM | | NCTS | DRIVER INTRODUCTIONS |
| **7:00 PM** | | **NCTS** | **RACE (STAGES 40/80/167 LAPS = 250.5 MILES)**   TRACK HOT |

**ALL TIMES LISTED ARE LOCAL TRACK TIME - CENTRAL DAYLIGHT TIME**
**NASCAR CUP SERIES (NCS), NASCAR O'REILLY AUTO PARTS SERIES (NOAPS), NASCAR CRAFTSMAN TRUCK SERIES (NCTS)**

## SATURDAY, MAY 2

| START | END | SERIES | EVENT |
|---|---|---|---|
| 9:00 AM | 2:30 PM | | NASCAR CREDENTIALING HOURS |
| | | | MINOR RESTRICTIONS ENFORCED 30 MINUTES PRIOR TO HOT TRACK STATUS |
| *9:00 AM* | *10:00 AM* | *RACE CONTROL* | *DRIVER/TEAM TRACK WALK  (NO MOTORIZED VEHICLES AUTHORIZED)*     TRACK COLD |
| 9:30 AM | 2:00 PM | NCS | GARAGE HOURS |
| 9:30 AM | | TRACK OPS | TRACK SERVICES MEETING (OUTSIDE OF INFIELD CARE CENTER) |
| 10:00 AM | 10:30 AM | NCS | DRIVER COMPETITION BRIEFING (FULL-TIME COMPETITORS) (MEDIA CENTER LUNCH ROOM) |
| 10:30 AM | 8:00 PM | NOAPS | GARAGE HOURS |
| *10:45 AM* | *11:30 AM* | *RACE CONTROL* | *TRACK PREPARATION  (COMPETITION OPERATIONS)* |
| **11:30 AM** | **12:30 PM** | **NCS** | **PRACTICE**     TRACK HOT |
| **12:40 PM** | **1:30 PM** | **NCS** | **QUALIFYING (IMPOUND)**     TRACK HOT |
| 1:00 PM | | TRACK OPS | PIT ROAD TRACK SERVICES MEETING |
| 1:45 PM | | NOAPS | GRID ACCESS OPEN TO PROPERLY CREDENTIALED GUESTS (UNTIL END OF ANTHEM) (PIT ROAD) |
| 1:55 PM | | NOAPS | DRIVER INTRODUCTIONS |
| **2:30 PM** | | **NOAPS** | **RACE (STAGES 45/90/200 LAPS = 300 MILES)**     TRACK HOT |
| **5:30 PM** | **6:00 PM** | **TRACK OPS** | **TRACK LAPS (TEXAS MOTOR SPEEDWAY)**     TRACK HOT |

## SUNDAY, MAY 3

| START | END | SERIES | EVENT |
|---|---|---|---|
| **8:00 AM** | **9:00 AM** | **RACE CONTROL** | **NASCAR VIP TRACK LAPS**     TRACK HOT |
| **9:00 AM** | **9:15 AM** | **RACE CONTROL** | **PACE VEHICLE LAPS (COMPETITION OPERATIONS)**     TRACK HOT |
| *9:15 AM* | *10:15 AM* | *RACE CONTROL* | *TRACK PREPARATION  (COMPETITION OPERATIONS)* |
| 9:45 AM | 10:30 AM | RACE CONTROL | PRE-RACE STAGE PARKING & SET UP PERMITTED     TRACK COLD |
| 10:00 AM | 2:30 PM | | NASCAR CREDENTIALING HOURS |
| | | | MINOR RESTRICTIONS ENFORCED 30 MINUTES PRIOR TO HOT TRACK STATUS |
| 10:30 AM | 2:20 PM | TRACK OPS | FAN TRACK ACCESS (FRONTSTRETCH)     TRACK COLD |
| 10:30 AM | 11:30 AM | NCS | TEAM ACCESS TO HAULERS PERMITTED |
| 11:00 AM | 2:30 PM | NCS | GARAGE & PIT PASS HOLDER - GARAGE ACCESS PERMITTED |
| 11:30 AM | 9:00 PM | NCS | GARAGE HOURS |
| 12:30 PM | | TRACK OPS | TRACK SERVICES MEETING (OUTSIDE OF INFIELD CARE CENTER) |
| 12:30 PM | 1:30 PM | TRACK OPS | CONCERT (START/FINISH LINE) |
| 1:00 PM | | NCS | GRID ACCESS OPEN TO PROPERLY CREDENTIALED GUESTS (UNTIL END OF ANTHEM) (PIT ROAD) |
| *1:25 PM* | | NCS | THE DRIVERS MEETING (O'REILLY SERIES GARAGE AREA) |
| 1:55 PM | | NCS | DRIVER INTRODUCTIONS |
| **2:30 PM** | | **NCS** | **RACE (STAGES 80/165/267 LAPS = 400.5 MILES)**     TRACK HOT |

**ALL TIMES LISTED ARE LOCAL TRACK TIME - CENTRAL DAYLIGHT TIME**
**NASCAR CUP SERIES (NCS), NASCAR O'REILLY AUTO PARTS SERIES (NOAPS), NASCAR CRAFTSMAN TRUCK SERIES (NCTS)**