# EXHIBIT C

JOE GIBBS RACING, LLC,

     Plaintiff,

v.

CHRISTOPHER GABEHART and SPIRE
MOTORSPORTS, LLC,

     Defendants.

Case No. 3:26-cv-00133-SCR-DCK

**DEFENDANT SPIRE MOTORSPORTS, LLC'S RESPONSES AND OBJECTIONS TO PLAINTIFF JGR'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

Defendant Spire Motorsports II, LLC ("Spire"), by and through its undersigned counsel, and pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, responds and objects to Plaintiff Joe Gibbs Racing's ("JGR") First Request for Production of Documents (the "Requests") as follows:

**PRELIMINARY STATEMENT**

1. Spire objects to the Requests, including the definitions and instructions contained therein, to the extent they seek information protected by the attorney-client privilege, the work product doctrine or any other applicable privilege or protection from discovery. Any response herein to the effect that Spire will produce "non-privileged documents" (or similar phrasing) means that Spire will produce the specified documents to the extent they are not protected by the attorney-client privilege, work product doctrine, or other applicable privilege or protection. Further, any documents produced in response to these Requests will be subject to the Protective Order agreed to by the parties and entered by this Court on May 14, 2026. Dkt.89. Spire objects to Plaintiffs' requests to the extent they call for the disclosure of confidential and/or proprietary documents

related to Spire, its customers, business partners, and/or employees to persons or entities not covered by the Protective Order.

2. Discovery in this matter is in its early stages. Spire has not completed its investigation of the facts, witnesses, documents, or analysis of available information. The following responses are therefore based on a reasonable and diligent search of the information presently available to and within Spire's custody, control, or possession. Spire reserves the right to amend these responses, including objections, upon the discovery of additional information. The fact that Spire has responded to any Request is not intended and shall not be construed as a waiver of all or any part of any objection to any Request.

3. Spire will produce documents after the parties agree upon protocols for the exchange of electronically stored information ("ESI") and confidential information, and after such stipulations are entered by the Court.

**OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS**

1. Spire objects to the definition of "JGR Confidential Information and Trade Secrets," as vague, ambiguous, and overbroad because it relies on inherently subjective and undefined terms such as "sensitive," "confidential," and "proprietary," and therefore does not provide an objective or reasonably discernible scope. The definition also improperly requires Spire to speculate as to what JGR considers to be sensitive, confidential, proprietary, or otherwise protected information and to anticipate JGR's subjective characterizations and internal designations. It further calls for Spire to make legal determinations as to what constitutes a "trade secret" under applicable law, which is a legal conclusion that depends on multiple factors and is not a determination Spire is required to make in responding to discovery.

2

2. Spire objects to the definition of "JGR" as vague, ambiguous, and overbroad to the extent it extends beyond Plaintiff Joe Gibbs Racing, LLC to include "each of its respective subsidiaries and affiliates, and all owners, officers, directors, employees, agents, consultants, attorneys, and/or others acting on their behalf," because it calls for Spire to determine which unknown third parties may arguably be subsidiaries, affiliates, or otherwise "acting on behalf of" JGR, and thus improperly requires Spire to speculate about JGR's corporate relationships, internal structures, and purported agency or affiliation with third parties when identifying potentially responsive information.

3. Spire objects to the definition of "You," "Your," and "Spire" because that definition includes Spire's "employees," "agents," and "consultants," without regard to or distinction between actions taken by such individuals in their official or individual capacities and without regard for whether those actions were taken before or after they became employer or affiliated with Spire. Spire will not produce documents in the custody of its owners, officers, directors, employees, agents, consultants, attorneys and/or others acting on their behalf to the extent those documents relate to actions taken in those individual's individual capacities and/or taken prior to being employed by or affiliated with Spire. Spire further will not produce documents in the custody of its subsidiaries or affiliates.

**OBJECTIONS AND RESPONSES TO DOCUMENT REQUESTS**

**REQUEST FOR PRODUCTION 1:** All Documents and Communications relating to the recruitment, hiring, employment, or potential employment of Gabehart by Spire, from October 1, 2024 through the present, including but not limited to: (a) any concerning job title, role, duties, responsibilities, compensation, job offers, start date, restrictive covenants, or any other terms or conditions of employment for Gabehart; (b) any concerning the decision to recruit or hire Gabehart

3

or to create the position that came to be named Chief Motorsports Officer, its intended scope, and the selection of Gabehart for such position; (c) any offers of employment, employment contracts, term sheets, compensation agreements, job descriptions, or drafts of the same; (d) any concerning JGR or Spire restrictive covenants as they relate to Gabehart's employment or potential employment with Spire; (e) any concerning Gabehart's start date at Spire; (f) any concerning the date Gabehart first provided services to Spire; (g) any concerning Gabehart's actual compensation from Spire; (h) any concerning Your decision to retain, continue to employ, or not terminate Gabehart following the disclosure or discovery that Gabehart had taken, copied, photographed, or possessed any JGR Confidential Information or Trade Secrets, including any assessment of the legal, competitive, or reputational risks of continuing to employ Gabehart, any conditions, restrictions, limitations, or safeguards imposed on Gabehart's employment, role, duties, or access to information following the disclosure or discovery of his misappropriation, including the revocation of access to Spire's electronic systems; any assurances, representations, or commitments made by or to Gabehart.

**RESPONSE**: Spire objects to Request for Production No. 1 as overbroad, unduly burdensome, and vague. The Request seeks all documents related to the "employment" of Gabehart by Spire, which, on its face, could be construed to encompass any document that Gabehart touched, created, received, or forwarded while employed at Spire, regardless of subject matter, thus sweeping in vast categories of materials that are irrelevant and disproportionate to the needs of the litigation. Spire also objects to Request No. 1 on the grounds that it seeks information and/or documents that are not in the possession, custody, or control of Spire. Spire further objects that the phrase "provided services" in subpart (f) is vague and ambiguous, as it does not specify whether it refers to formal employment duties, informal consulting, discrete tasks, or any interaction between Gabehart and

4

Spire, and thus fails to provide a clear or objective boundary for what documents are sought. Spire also objects that the phrase "JGR Confidential Information or Trade Secrets" is vague, calls for Spire to draw legal conclusions about whether particular JGR-related information does or does not constitute a "trade secret" under applicable law, and improperly requires Spire to speculate about JGR's subjective designations of its own information. In addition, many of the documents sought by this Request—including, without limitation, documents reflecting draft or proposed agreements concerning Gabehart's employment and documents reflecting Spire's consideration of whether and on what terms to continue Gabehart's employment in light of JGR's allegations—are protected from disclosure by the attorney–client privilege and/or work-product doctrine because they reflect confidential communications with Spire's counsel and counsel's legal advice and mental impressions concerning the risks, obligations, and strategy relating to Gabehart's employment. Spire further objects to subpart (h) as overbroad and not reasonably related to the stated topic of "recruitment, hiring, employment, or potential employment" documents, because it seeks broad information about Spire's subsequent internal legal and business deliberations rather than core recruitment and employment documentation.

Subject to and without waiving the foregoing, Spire is conducting a reasonable, proportionate search and will produce relevant, responsive, and non-privileged documents within its custody, possession, or control, that relate to Spire's recruitment, hiring, and potential employment of Gabehart. Spire's search includes a review of all personnel/HR files relating to Spire's recruitment, hiring, and potential employment of Gabehart, as well as a search of Spire's electronically stored information, documents, and communications. In particular, with regard to the latter, Spire proposes applying the search terms set forth in Cell C2 of the spreadsheet attached hereto as Exhibit 1, across an appropriate set of custodial data consistent with the ESI protocol

5

presently being negotiated and agreed to by the parties. Once the custodial data set has been agreed upon, the search(es) performed, and hit count reports generated, Spire's counsel will further meet and confer with JGR's counsel for purposes of agreeing on an appropriate and proportionate scope of review for the documents responsive to the search parameters.

**REQUEST FOR PRODUCTION 2**. All Documents and Communications relating to any in-person meetings, telephone calls, video calls, meals, social events, or other interactions between Gabehart and any representative, employee, agent, or owner of Spire (including Dan Towriss) prior to Gabehart's commencement of employment with Spire, including but not limited to: (a) any Communications arranging, confirming, or summarizing any such meeting or interaction; (b) any agendas, notes, memoranda, or summaries prepared in connection with any such meeting or interaction; (c) any travel arrangements, lodging, transportation, meals, entertainment, event tickets, credentials, or hospitality provided to Gabehart or any member of Gabehart's family; and (d) any other gifts, perks, benefits, incentives, or things of value provided to Gabehart or any member of his family prior to Gabehart's commencement of employment with Spire.

**RESPONSE:** Spire objects to Request for Production No. 2 as seeking information that is irrelevant to the claims and defenses in this action, overbroad, unduly burdensome, and disproportionate to the needs of the case. The issues in this lawsuit concern Spire's alleged acquisition or use of JGR's purported trade secrets and whether Spire's recruitment and employment of Gabehart violated the law; this Request, however, seeks documents and communications that have no nexus to those issues and instead would sweep in broad categories of materials unrelated to any alleged misappropriation or employment law violation. In particular, the Request is especially overbroad and burdensome because it is directed to documents and communications between Gabehart and anyone at Spire, rather than being narrowly tailored to the

6

specific individuals JGR alleges were involved in the purported wrongful conduct, and thus would require Spire to collect and review essentially all communications involving Gabehart during his employment, regardless of subject matter.

Subject to and without waiving the foregoing, Spire is conducting a reasonable, proportionate search and will produce relevant, responsive, and non-privileged documents within its custody, possession, or control, that document or evidence interactions between Gabehart and Jeff Dickerson, Dan Towriss, and Bill Anthony. Specifically, Spire proposes applying the search terms set forth in Cell C3 of the spreadsheet attached hereto as Exhibit 1, across an appropriate set of custodial data consistent with the ESI protocol presently being negotiated and agreed to by the parties. Once the custodial data set has been agreed upon, the search(es) performed, and hit count reports generated, Spire's counsel will further meet and confer with JGR's counsel for purposes of agreeing on an appropriate and proportionate scope of review for the documents responsive to the search parameters.

**REQUEST FOR PRODUCTION 3**. All Documents and Communications between You and any Person or Entity relating to any actual or proposed agreement, including without limitation any non-disclosure agreement, confidentiality agreement, indemnity agreement, fee coverage agreement, hold harmless agreement, or restrictive covenant agreement, between You and Gabehart, including without limitation Communications and Documents relating to drafts, executed versions, negotiation of terms, decision to reject an agreement or term, and any Communications concerning compliance or non-compliance with such agreement(s).

**RESPONSE:** Spire objects to Request for Production No. 3 on the grounds that is overbroad and calls for documents protected from disclosure by the attorney–client privilege and/or work-product doctrine. With respect to overbreadth, the Request seeks documents and communications between

7

Spire and "any Person" concerning "any actual or proposed agreement" relating to the subject matter of this litigation. That request is overbroad and unduly burdensome because it is not limited to communications with Gabehart, or to specific categories of agreements that could conceivably be relevant (such as Gabehart's employment agreement or non-disclosure agreement), but instead sweeps in *all* types of agreements and communications with *any* third party. To the extent the Request encompasses drafts of agreements, negotiations over agreement terms, or Spire's internal and external legal analysis of whether to enter into, revise, reject, or enforce any such agreements, those documents consist of or reflect confidential communications between Spire and its counsel, counsel's legal advice and mental impressions, and other privileged or work-product-protected materials.

Subject to and without waiving the foregoing, Spire is conducting a reasonable, proportionate search and will produce relevant, responsive, and non-privileged documents within its custody, possession, or control, that relate to executed employment and non-disclosure agreements between Spire and Gabehart. Spire's search includes a review of Gabehart's HR/personnel file, as well as a search of Spire's electronically stored information, documents, and communications. In particular, with regard to the latter, Spire proposes applying the search terms set forth in Cell C4 of the spreadsheet attached hereto as Exhibit 1, across an appropriate set of custodial data consistent with the ESI protocol presently being negotiated and agreed to by the parties. Once the custodial data set has been agreed upon, the search(es) performed, and hit count reports generated, Spire's counsel will further meet and confer with JGR's counsel for purposes of agreeing on an appropriate and proportionate scope of review for the documents responsive to the search parameters.

8

**REQUEST FOR PRODUCTION 4.** All Documents and Communications relating to any restrictive covenant, non-competition agreement, non-solicitation agreement, confidentiality agreement, or similar contractual obligation between Gabehart and JGR, including but not limited to: (a) any Communications with Gabehart, Spire, or any other Person concerning the existence, scope, enforceability, or applicability of any such agreement, including Gabehart's JGR Employment Agreement; and (b) any Documents reflecting Your understanding of whether Gabehart was subject to a non-competition restriction at the time You discussed employment or potential employment with Gabehart.

**RESPONSE**: Spire objects to Request for Production No. 4 to the extent it seeks documents and communications protected from disclosure by the attorney–client privilege, the work-product doctrine, or any other applicable privilege or protection. The Request expressly calls for documents and communications "relating to" the "existence, scope, enforceability, or applicability" of restrictive covenants and other contractual obligations, which necessarily encompasses legal advice, attorney mental impressions, and communications with counsel regarding the negotiation, interpretation, and enforceability of such agreements. Spire further objects to the Request as being overbroad, vague, and ambiguous, to the extent it extends to undefined "similar contractual obligation[s]." As drafted, the Request is not reasonably limited to any particular category of contract or obligation and purports to sweep in a broad universe of agreements and obligations that bear no reasonable relation to the claims or defenses in this action.

Subject to and without waiving the foregoing, Spire is conducting a reasonable, proportionate search and will produce relevant, responsive, and non-privileged documents within its custody, possession, or control, that relate to any restrictive covenant, non-compete agreement, non-solicitation agreement, or confidentiality agreement between Gabehart and JGR. Specifically,

9

Spire proposes applying the search terms set forth in Cell C5 of the spreadsheet attached hereto as Exhibit 1, across an appropriate set of custodial data consistent with the ESI protocol presently being negotiated and agreed to by the parties. Once the custodial data set has been agreed upon, the search(es) performed, and hit count reports generated, Spire's counsel will further meet and confer with JGR's counsel for purposes of agreeing on an appropriate and proportionate scope of review for the documents responsive to the search parameters.

**REQUEST FOR PRODUCTION 5**. All Documents and Communications relating to any alleged defenses You plan to raise in the Lawsuit including without limitation the alleged Trade Understanding and any Documents or Communication concerning or referencing the Trade Understanding.

**RESPONSE:** Spire objects to Request for Production No. 5 as premature because it seeks documents "relating to" defenses that Spire has not yet asserted, and therefore calls for speculation about what defenses Spire may raise and what information might be associated with them. Spire further objects that the Request, as framed, calls for documents reflecting Spire's and its counsel's analysis of potential defenses, which are protected by the attorney–client privilege and work-product doctrine.

Subject to and without waiving the foregoing, Spire is conducting a reasonable, proportionate search and will produce relevant, responsive, and non-privileged documents within its custody, possession, or control, that relate to the so-called "Trade Understanding."  Specifically, Spire proposes applying the search terms set forth in Cell C6 of the spreadsheet attached hereto as Exhibit 1, across an appropriate set of custodial data consistent with the ESI protocol presently being negotiated and agreed to by the parties.  Once the custodial data set has been agreed upon, the search(es) performed, and hit count reports generated, Spire's counsel will further meet and

10

confer with JGR's counsel for purposes of agreeing on an appropriate and proportionate scope of review for the documents responsive to the search parameters. Spire will supplement its response and production, as appropriate, if and when Spire asserts any defenses for which additional responsive, non-privileged documents exist.

**REQUEST FOR PRODUCTION 6**. All Documents and Communications between You and any Person or Entity regarding any JGR employee, including but not limited to Communications relating to or reflecting any discussion regarding Spire or potential employment at Spire.

**RESPONSE**: Spire objects to Request for Production No. 6 on the ground that it is overbroad, unduly burdensome, and not proportional to the needs of the case, as it seeks all Documents and Communications between Spire and *any* Person or Entity regarding *any* JGR employee, without limitation as to subject matter, purpose of the communication, or the particular employees at issue in this litigation. As drafted, the Request would encompass virtually any communication with any third party that merely references any JGR employee, regardless of whether the communication has any connection to Spire, to employment or recruitment, or to the claims or defenses in this action, and the vast majority of such communications would be irrelevant and outside the proper scope of discovery, making the burden of identifying and producing them disproportionate to the needs of the case.

Subject to and without waiving the foregoing, Spire is conducting a reasonable, proportionate search and will produce relevant, responsive, and non-privileged documents within its custody, possession, or control, that relate to Spire's communications with, and about, Chris Gabehart, Robert Cheddar, and Charles Donaldson's potential employment at Spire. Spire's search includes a review of all personnel/HR files relating to these individuals, as well as a search of Spire's electronically stored information, documents, and communications. In particular, with

11

regard to the latter, Spire proposes applying the search terms set forth in Cell C7 of the spreadsheet attached hereto as Exhibit 1, across an appropriate set of custodial data consistent with the ESI protocol presently being negotiated and agreed to by the parties.  Once the custodial data set has been agreed upon, the search(es) performed, and hit count reports generated, Spire's counsel will further meet and confer with JGR's counsel for purposes of agreeing on an appropriate and proportionate scope of review for the documents responsive to the search parameters.

**REQUEST FOR PRODUCTION 7**. All Documents and Communications relating to or evidencing Gabehart's duties, responsibilities, and activities in his roles or responsibilities at Spire, including but not limited to (a) any Documents describing his scope of authority, day-to-day activities, and any changes to his roles or responsibilities (b) Documents and Communications between you and your employees or agents relating to the scope or limitations of Gabehart's role at Spire; (c) Documents or Communications relating to communication about Gabehart's role at Spire.

**RESPONSE:**  Spire objects to Request for Production No. 7 as overbroad, unduly burdensome, and disproportionate to the needs of the case because it calls for "all Documents and Communications concerning Gabehart's activities" at Spire. The term "activities" is significantly broader than Gabehart's job duties, responsibilities, or work relating to the claims at issue and, on its face, could be construed to encompass every task, project, communication, or interaction in which he engaged during his employment, regardless of subject matter. As drafted, the Request would therefore require Spire to collect and review essentially all documents and communications involving Gabehart, including those that have no connection to JGR, any alleged trade secrets, or the recruitment and employment issues in this case, rendering the Request overbroad, burdensome, and seeking information that is irrelevant to the claims and defenses asserted.

Subject to and without waiving the foregoing, Spire is conducting a reasonable, proportionate search and will produce relevant, responsive, and non-privileged documents within its custody, possession, or control, that describe Gabehart's role at Spire. Specifically, Spire proposes applying the search terms set forth in Cell C8 of the spreadsheet attached hereto as Exhibit 1, across an appropriate set of custodial data consistent with the ESI protocol presently being negotiated and agreed to by the parties. Once the custodial data set has been agreed upon, the search(es) performed, and hit count reports generated, Spire's counsel will further meet and confer with JGR's counsel for purposes of agreeing on an appropriate and proportionate scope of review for the documents responsive to the search parameters.

**REQUEST FOR PRODUCTION 8**. All Documents and Communications between You and any Person or Entity relating to Gabehart's involvement in or access to Spire's NASCAR Cup Series race strategy, racecar setup analysis or input, pit crew operations, analytics, engineering, or any other competition-related activities in his role as Chief Motorsports Officer at Spire.

**RESPONSE:** Spire objects to Request for Production No. 8 as overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks documents and communications between Spire and "any Person," rather than being appropriately limited to individuals within the Spire organization or to specific custodians reasonably connected to the issues in this lawsuit. Spire further objects that the Request is vague and ambiguous in that it does not define what constitutes "competition related activities," and fails to explain what it means for Gabehart to have "access to" race strategy (for example, whether this refers to formal assignments, incidental exposure, high-level briefings, or any indirect familiarity).

Subject to and without waiving the foregoing, Spire is conducting a reasonable, proportionate search and will produce relevant, responsive, and non-privileged documents within

its custody, possession, or control, between Spire and Spire's employees, agents, or other action on behalf of Spire, that evidence any purported involvement in Spire's NASCAR Cup competition-related decision making by Gabehart. Specifically, Spire proposes applying the search terms set forth in Cell C9 of the spreadsheet attached hereto as Exhibit 1, across an appropriate set of custodial data consistent with the ESI protocol presently being negotiated and agreed to by the parties. Once the custodial data set has been agreed upon, the search(es) performed, and hit count reports generated, Spire's counsel will further meet and confer with JGR's counsel for purposes of agreeing on an appropriate and proportionate scope of review for the documents responsive to the search parameters.

**REQUEST FOR PRODUCTION 9**. All Documents relating to Gabehart's presence or participation at any NASCAR Cup Series race, qualifying, practice, or event, including but not limited to: (a) any Communications directing, inviting, or permitting Gabehart to participate in competitive decisions, strategy meetings, or "war room" operations; (b) any Communications between Gabehart and any crew chief, race engineer, team manager, or other competition personnel at Spire concerning race strategy, racecar setup, pit strategy, or other real-time competition decisions; (c) any records, schedules, or itineraries reflecting Gabehart's assignments, tasks, or responsibilities during NASCAR Cup Series race weekends; (d) any Communications reflecting awareness that Gabehart's participation in NASCAR Cup Series Competition Activities could violate his restrictive covenant obligations; and (e) credential applications and issuances, hard cards, hot passes, garage and pit access credentials, sign-in or check-in logs, expense reports, Communications occurring during race weekends, including practice, qualifying, and race sessions, and all events listed on the official event schedule for NASCAR race weekends (including NCS, NOAPS, and NCTS events), including all text messages and records of calls sent

or made to or received from any employee, contractor or agent of Spire, NASCAR or track-issued access records, and any rosters, schedules, or itineraries identifying your role, location, responsibilities, activities, interactions, or conversations at such events.

**RESPONSE**: Spire objects to Request for Production No. 9 on the grounds that it seeks Documents concerning conduct that the Court has already expressly held, in its preliminary injunction order, is permissible by Mr. Gabehart, and thus is not properly the subject of further discovery to the extent the Request is premised on the theory that such conduct is prohibited or violative of his restrictive covenant obligations. Spire further objects to subpart (d) of this Request to the extent it seeks Documents or Communications "reflecting awareness that Gabehart's participation in NASCAR Cup Series Competition Activities could violate his restrictive covenant obligations," as such materials would necessarily encompass attorney–client communications and attorney work product reflecting legal advice, legal analysis, and mental impressions regarding whether Mr. Gabehart is or is not in compliance with his restrictive covenant obligations. Spire also objects to subpart (e) as overbroad, unduly burdensome, and not proportional to the needs of the case because it purports to require production of Documents related to virtually anything that occurs on any NASCAR Cup Series race weekend (and related practice, qualifying, and associated events), including all text messages and call records sent, made, or received by any Spire employee, contractor, or agent, regardless of the subject matter, the person involved, the purpose of the communication, or any nexus to the claims or defenses in this action. The breadth of subpart (e) would require an unreasonably burdensome and wide-ranging search of communications and records that are predominantly irrelevant to the issues in dispute.

Subject to and without waiving the foregoing, Spire is conducting a reasonable, proportionate search and will produce relevant, responsive, and non-privileged documents within

its custody, possession, or control, that relate to Gabehart's presence at NASCAR Cup Series practices and race weekends and any communications between Gabehart and Spire's competition related personnel relating to competition strategy and competition-related decision making. Specifically, Spire proposes applying the search terms set forth in Cell C10 of the spreadsheet attached hereto as Exhibit 1, across an appropriate set of custodial data consistent with the ESI protocol presently being negotiated and agreed to by the parties. Once the custodial data set has been agreed upon, the search(es) performed, and hit count reports generated, Spire's counsel will further meet and confer with JGR's counsel for purposes of agreeing on an appropriate and proportionate scope of review for the documents responsive to the search parameters.

**REQUEST FOR PRODUCTION 10**. All Documents and Communications relating to Gabehart's compliance or noncompliance with the Court's Temporary Restraining Order and Preliminary Injunction Order entered in this matter.

**RESPONSE**: Spire objects to this Request to the extent it calls for legal conclusions or a subjective determination of Gabehart's compliance or noncompliance with the Temporary Restraining Order and Preliminary Injunction Order in this matter. Spire further objects to this Request as vague and ambiguous because it does not define the scope of Gabehart's conduct constituting "compliance or noncompliance" with the Court's Orders. Spire further objects to this Request to the extent it seeks information protected by the attorney-client privilege, work-product doctrine, or other applicable privilege.

Subject to and without waiving the foregoing, Spire is conducting a reasonable, proportionate search and will produce relevant, responsive, and non-privileged documents within its custody, possession, or control, that relate to Spire's understanding of Gabehart's compliance with this Court's Temporary Restraining Order and Preliminary Injunction Order. Specifically,

Spire proposes applying the search terms set forth in Cell C11 of the spreadsheet attached hereto as Exhibit 1, across an appropriate set of custodial data consistent with the ESI protocol presently being negotiated and agreed to by the parties. Once the custodial data set has been agreed upon, the search(es) performed, and hit count reports generated, Spire's counsel will further meet and confer with JGR's counsel for purposes of agreeing on an appropriate and proportionate scope of review for the documents responsive to the search parameters.

**REQUEST FOR PRODUCTION 11**. All Documents and Communications in Your possession or between You and any Person or Entity, including but not limited to any owner, officer, director, employee, or agent of any NASCAR team, relating to JGR's Confidential Information and Trade Secrets, including but not limited to: (a) any information, documents, data, photographs, race setups, car simulations, analytics, sponsorship data, or employee recruitment information or files originating from JGR; (b) any photographs taken of JGR's laptop, screens, displays, or physical documents containing JGR's Confidential Information and Trade Secrets; (c) any files stored, accessed, or maintained on Your devices, cloud storage accounts, or Google Drive containing JGR's Confidential Information and Trade Secrets; (d) any Communications concerning Your possession, use, dissemination, disposition, or deletion of any such information; and (e) any Communications or Documents relating to Your deletion, destruction, loss, non-preservation, and/or retrieval efforts of any Documents, Communications, or electronically stored information relating to JGR or JGR Confidential Information and Trade Secrets, or efforts to recover, restore, or reconstruct any deleted Documents or Communications relating to JGR or JGR Confidential Information and Trade Secrets, including any forensic examinations or requests to wireless carriers, logs, records, metadata, analysis, or reports, reflecting such deletion or destruction or retrieval.

**RESPONSE:** Spire objects to Request for Production No. 11 on the ground that it is vague, ambiguous, and improper to the extent it seeks Documents and Communications concerning "JGR Confidential Information and Trade Secrets," because that phrase calls for Spire to make subjective determinations about what information JGR considers sensitive or valuable and to draw legal conclusions as to what constitutes a "trade secret" under applicable law, which is a legal determination reserved for the Court.

Subject to and without waiving the foregoing, Spire is conducting a reasonable, proportionate search and will produce relevant, responsive, and non-privileged documents within its custody, possession, or control, that reference or reflect to the specific file names and items identified in the parties' forensic examinations. Specifically, Spire proposes applying the search terms set forth in Cell C12 of the spreadsheet attached hereto as Exhibit 1, across an appropriate set of custodial data consistent with the ESI protocol presently being negotiated and agreed to by the parties. Once the custodial data set has been agreed upon, the search(es) performed, and hit count reports generated, Spire's counsel will further meet and confer with JGR's counsel for purposes of agreeing on an appropriate and proportionate scope of review for the documents responsive to the search parameters. Spire is amenable to considering additional reasonable search terms if JGR identifies, with specificity, the particular items or categories of information it contends constitute JGR Confidential Information and/or trade secrets.

**REQUEST FOR PRODUCTION 12**. All Documents, work product, analyses, reports, presentations, models, or other materials created, compiled, or derived in whole or in part from any JGR Confidential Information or Trade Secrets, including but not limited to any race setups, strategies, simulations, engineering analyses, or competitive assessments that incorporate, reflect, or are based upon information originating from JGR, including any AI Materials.

18

**RESPONSE:** Spire objects to Request for Production No. 12 as vague, ambiguous, and improper to the extent it seeks Documents and Communications concerning "JGR Confidential Information and Trade Secrets," because the Request requires Spire to make subjective determinations about what JGR considers to be confidential or valuable and to draw legal conclusions as to what constitutes a "trade secret" under applicable law, which is a legal determination reserved for the Court. Spire further objects that the Request is overbroad and unduly burdensome because it seeks documents that are "based upon" information "originating from JGR," without providing any objective criteria for determining whether a given document is "based upon" such information, and because the phrase "information originating from JGR" is itself vague and unclear as to whether it sweeps more broadly than whatever JGR specifically contends is "JGR Confidential Information and Trade Secrets."

Subject to and without waiving the foregoing, Spire is conducting a reasonable, proportionate search and will produce relevant, responsive, and non-privileged documents within its custody, possession, or control, that reference or reflect the file names and other specific pieces of information that Spire has agreed to search for and produce in response to Request for Production No. 11. Specifically, Spire proposes applying the search terms set forth in Cell C13 of the spreadsheet attached hereto as Exhibit 1, across an appropriate set of custodial data consistent with the ESI protocol presently being negotiated and agreed to by the parties. Once the custodial data set has been agreed upon, the search(es) performed, and hit count reports generated, Spire's counsel will further meet and confer with JGR's counsel for purposes of agreeing on an appropriate and proportionate scope of review for the documents responsive to the search parameters. Spire is amenable to considering additional reasonable search terms if JGR identifies, with specificity,

the particular items or categories of information it contends constitute JGR Confidential Information and/or trade secrets.

**REQUEST FOR PRODUCTION 13**. All Documents and Communications relating to the decision to revoke, suspend, restrict, or terminate Gabehart's access to any Spire systems, networks, accounts, devices, or facilities, including but not limited to: (a) any concerning the reasons for revoking Gabehart's access; (b) any reflecting when the decision was made and by whom; (c) any assessments, reviews, or audits of Gabehart's activity on Spire's systems conducted before, during, or after the revocation of access; and (d) any Documents or Communications concerning what, if any, JGR information or data was identified on Spire's systems, devices, or accounts accessible to Gabehart prior to or at the time of revocation.

**RESPONSE:** Spire objects to this Request to the extent it seeks information protected by the attorney-client privilege, work-product doctrine, or other applicable privilege.  To the extent this Request seeks documents and communications concerning JGR's information accessible to Gabehart on Spire's systems, Spire further objects on the grounds that such documents and communications do not relate to the decision to revoke Gabehart's access to Spire's systems and are thus beyond the scope of the Request.

Subject to and without waiving the foregoing, Spire is conducting a reasonable, proportionate search and will produce relevant, responsive, and non-privileged documents within its custody, possession, or control, that relate to Spire's decision to revoke, suspend, restrict, or terminate Gabehart's access to Spire's system.  Specifically, Spire proposes applying the search terms set forth in Cell C14 of the spreadsheet attached hereto as Exhibit 1, across an appropriate set of custodial data consistent with the ESI protocol presently being negotiated and agreed to by the parties.  Once the custodial data set has been agreed upon, the search(es) performed, and hit

20

count reports generated, Spire's counsel will further meet and confer with JGR's counsel for purposes of agreeing on an appropriate and proportionate scope of review for the documents responsive to the search parameters.

**REQUEST FOR PRODUCTION 14**. All Documents and Communications between You and any Person or Entity relating to any outreach, solicitation, proposal, pitch, or communication by You or any Person acting on Your behalf to any current or former JGR Sponsor or Business Partner or commercial affiliate of JGR, including but not limited to SAIA, Inc. and Zep, Inc., from October 1, 2025 through the present, and including but not limited to: (a) any proposals, presentations, pitch decks, or sponsorship agreements prepared for or delivered to any JGR Sponsor or Business Partner; (b) any Communications with Spire concerning the identification, targeting, or solicitation of any JGR Sponsor or Business Partner; (c) any Documents reflecting the source of information used to identify or evaluate any JGR Sponsor or Business Partner as a potential Spire sponsor or business partner; and (d) any Documents or Communications reflecting whether any information originating from JGR, including but not limited to sponsorship terms, contract values, renewal dates, or relationship contacts, was used in connection with any such outreach or solicitation.

**RESPONSE:** Spire objects to Request for Production No. 14 on the grounds that it is vague, ambiguous, and overbroad in seeking "any" Documents or Communications with "any current or former JGR sponsor or partner or business affiliate," a category that is undefined and not reasonably limited as to the entities, subject matter, time period, or issues in this case. The Request is also unduly burdensome and not proportional to the needs of the case, particularly in light of the fact that JGR has identified only SAIA and Zep as allegedly implicated by Spire's conduct, and Spire further objects to the extent the Request seeks Documents or Communications

21

with former sponsors, partners, or business affiliates whose relationships and communications would not be relevant to the claims or defenses in this action.

Subject to and without waiving the foregoing, Spire is conducting a reasonable, proportionate search and will produce relevant, responsive, and non-privileged documents within its custody, possession, or control, that relate to its communications with SAIA and Zep. Specifically, Spire proposes applying the search terms set forth in Cell C15 of the spreadsheet attached hereto as Exhibit 1, across an appropriate set of custodial data consistent with the ESI protocol presently being negotiated and agreed to by the parties. Once the custodial data set has been agreed upon, the search(es) performed, and hit count reports generated, Spire's counsel will further meet and confer with JGR's counsel for purposes of agreeing on an appropriate and proportionate scope of review for the documents responsive to the search parameters.

**REQUEST FOR PRODUCTION 15**. All Documents and Communications relating to any forensic examination, imaging, inspection, review, or analysis of any device, account, or system used by, issued to, or accessible to Gabehart in connection with his employment or potential employment with Spire, including but not limited to: (a) any forensic images, reports, findings, or summaries prepared by Kevin Clarke or any other forensic examiner concerning Gabehart's Spire-issued laptop or any other device used by Gabehart; (b) any Documents identifying the files, data, applications, communications, or information found on any such device or account; (c) any Communications with Kevin Clarke or any other forensic examiner concerning the scope, methodology, findings, or conclusions of any such examination; (d) any Documents or Communications concerning whether any JGR Confidential Information or Trade Secrets were found on, transferred to, or accessible from any device, account, or system used by or issued to Gabehart by Spire; and (e) any Communications among Spire's owners, officers, employees,

agents, or counsel concerning the results of any such forensic examination and any actions taken or recommended in response.

**RESPONSE:** Spire objects to Request for Production No. 15 on the grounds that it improperly seeks discovery of materials exchanged with, and conclusions drawn by, Spire's expert witnesses that are protected from disclosure by the attorney–client privilege and work-product doctrine. Spire further objects that, to the extent the Request calls for Documents and Communications concerning "JGR Confidential Information and Trade Secrets," it is vague and improper because it requires Spire and its experts to make subjective determinations about what information JGR considers valuable or confidential and to draw legal conclusions as to what constitutes a "trade secret" under applicable law—determinations reserved for the Court. Spire also specifically objects to subject (e) to the extent it seeks communications with Spire's counsel concerning the results of any examination or any actions taken or recommended in response, because such communications are protected by the attorney–client privilege and/or work-product doctrine and will not be produced.

Subject to and without waiving the foregoing, Spire is conducting a reasonable, proportionate search and will produce relevant, responsive, and non-privileged documents within its custody, possession, or control, concerning its experts that are required to be disclosed at the time and in the manner provided by the Court's scheduling order and the applicable rules. Spire further proposes applying the search terms set forth in Cell C16 of the spreadsheet attached hereto as Exhibit 1, across an appropriate set of custodial data consistent with the ESI protocol presently being negotiated and agreed to by the parties. Once the custodial data set has been agreed upon, the search(es) performed, and hit count reports generated, Spire's counsel will further meet and

confer with JGR's counsel for purposes of agreeing on an appropriate and proportionate scope of review for the documents responsive to the search parameters.

**REQUEST FOR PRODUCTION 16**. Documents and Communications sufficient to show the information sharing and financial terms of any technical alliance you have with another NASCAR Team, including but not limited to Hendrick Motorsports, including any contracts or agreements, and documents sufficient to show the amount paid in exchange for information obtained from the alliance partner.

**RESPONSE:** Spire objects to Request for Production No. 16 on the grounds that it seeks documents concerning the financial terms of any technical alliance, which are not relevant to any claim or defense in this case. The financial terms of any such alliance have no bearing on whether trade secrets were misappropriated or whether Spire's employment of Gabehart violated the law, and discovery into those terms is therefore disproportionate to the needs of the case. Spire further objects that the Request improperly seeks sensitive, confidential commercial and financial information unrelated to the issues in this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Accordingly, Spire stands on this objection and will not produce documents in response to Request for Production No. 16.

**REQUEST FOR PRODUCTION 17**. All Documents and Communications between You and any Person or Entity relating to the anticipation, threat, or commencement of litigation by JGR against Gabehart or Spire, including but not limited to: (a) any correspondence, warnings, or communications from JGR or its counsel concerning potential claims against Spire; (b) any draft or final press releases, public statements, or media responses prepared in anticipation of litigation by JGR; and (c) any Communications concerning the preservation or retention of Documents,

Communications, or electronically stored information in connection with any actual or anticipated claims by JGR.

**RESPONSE:** Spire objects to this Request to the extent it seeks information protected by the attorney-client privilege, work-product doctrine, or other applicable privilege. Spire objects to subpart (b) as unduly burdensome, vague, and ambiguous to the extent press releases or other publicly available materials are equally available to JGR and because it fails to explain what it means for press releases or other public statements to be "prepared for" Spire or "on behalf of or for the benefit of" Spire.

Subject to and without waiving the foregoing, Spire is conducting a reasonable, proportionate search and will produce relevant, responsive, and non-privileged documents within its custody, possession, or control, that relate to Spire's anticipation (or lack thereof) of litigation by JGR against Gabehart or Spire. Specifically, Spire proposes applying the search terms set forth in Cell C18 of the spreadsheet attached hereto as Exhibit 1, across an appropriate set of custodial data consistent with the ESI protocol presently being negotiated and agreed to by the parties. Once the custodial data set has been agreed upon, the search(es) performed, and hit count reports generated, Spire's counsel will further meet and confer with JGR's counsel for purposes of agreeing on an appropriate and proportionate scope of review for the documents responsive to the search parameters.

**REQUEST FOR PRODUCTION 18**. All Documents reflecting Your quarterly revenue, costs, profits and losses from the inception of Spire through the present, including but not limited to income statements, balance sheets, ledgers or other financial statements, including drafts of the same.

25

**RESPONSE:** Spire objects to Request for Production No. 18 as overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks financial documents from Spire's inception to the present, an extremely expansive time frame that bears no reasonable relationship to the claims or defenses in this action. The legal issues in this case concern the alleged acquisition of JGR's trade secrets and the allegedly unlawful hiring of a corporate officer, and historical financial documents from Spire's past are not relevant to, and are not reasonably calculated to lead to the discovery of admissible evidence regarding, those issues. The breadth and temporal scope of this Request appear designed to harass Spire rather than to obtain information tied to the claims at issue, and the potential harm, competitive prejudice, and invasion of financial privacy that would result from disclosure of such sweeping financial information far outweigh any minimal, speculative relevance these documents could have. Accordingly, Spire stands on this objection and will not produce documents in response to Request for Production No. 18.

**REQUEST FOR PRODUCTION 19**. All Documents and Communications from the inception of Spire through the present, reflecting presentations internal to Spire that discuss the financial performance of Spire, including but not limited to presentations made at any annual, monthly, or quarterly budget meetings.

**RESPONSE:** Spire objects to Request for Production No. 19 as overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks financial documents from Spire's inception to the present, an extremely expansive time frame that bears no reasonable relationship to the claims or defenses in this action. The legal issues in this case concern the alleged acquisition of JGR's trade secrets and the allegedly unlawful hiring of a corporate officer, and historical financial documents from Spire's past are not relevant to, and are not reasonably calculated to lead to the discovery of admissible evidence regarding, those issues. The breadth and temporal scope

26

of this Request appear designed to harass Spire rather than to obtain information tied to the claims at issue, and the potential harm, competitive prejudice, and invasion of financial privacy that would result from disclosure of such sweeping financial information far outweigh any minimal, speculative relevance these documents could have. Accordingly, Spire stands on this objection and will not produce documents in response to Request for Production No. 19.

**REQUEST FOR PRODUCTION 20**. All Documents and Communications sufficient to show Your primary revenue sources and cost categories from the inception of Spire through the present, including but not limited to documents reflecting (a) money Spire received from NASCAR, sponsors, or any other source, including whether or not the award of funds or amount of funds were based on the team's NASCAR performance, (b) current Cup Series charter agreement, and (c) data regarding what percentage of the money Spire receives based on race-wins or performance is paid to Spire's drivers or staff as a bonus or payment for performance.

**RESPONSE:** Spire objects to Request for Production No. 20 as overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks expansive financial and related business documents from Spire's inception to the present, an extremely broad temporal and substantive scope that bears no reasonable relationship to the claims or defenses in this action. The legal issues in this case concern the alleged acquisition of JGR's trade secrets and the allegedly unlawful hiring of a corporate officer, and historical financial and business records from Spire's past are not relevant to, and are not reasonably calculated to lead to the discovery of admissible evidence regarding, those issues. The breadth and temporal scope of this Request appear designed to harass Spire rather than to obtain information tied to the claims at issue, and the potential harm, competitive prejudice, and invasion of financial and commercial privacy that would result from disclosure of such sweeping information far outweigh any minimal, speculative relevance these

documents could have.  Accordingly, Spire stands on this objection and will not produce documents in response to Request for Production No. 20.

**REQUEST FOR PRODUCTION 21**. All Documents and Communications relating to or reflecting any changes in Spire's NASCAR Cup Series performance that occurred after Gabehart commenced employment at Spire, including but not limited to: (a) any Documents reflecting changes to racecar setups, race strategy, pit strategy, analytics, or engineering processes implemented after Gabehart's commencement of employment; and (b) any Communications attributing or relating any change in performance to Gabehart's contributions, knowledge, experience, or involvement.

**RESPONSE:** Spire objects to Request No. 21 **t**o the extent this Request seeks documents and communications relating to *any* change in Spire's performance after the commencement of Gabehart's employment—regardless of whether such change is in any way attributable to Gabehart or his employment—as vague, ambiguous, unduly burdensome, overly broad, and not reasonably calculated to lead to admissible evidence.

Subject to and without waiving the foregoing, Spire is conducting a reasonable, proportionate search and will produce relevant, responsive, and non-privileged documents within its custody, possession, or control, that relate to changes in Spire's performance attributable to Gabehart, to the extent any exist.  Specifically, Spire further proposes applying the search terms set forth in Cell C22 of the spreadsheet attached hereto as Exhibit 1, across an appropriate set of custodial data consistent with the ESI protocol presently being negotiated and agreed to by the parties.  Once the custodial data set has been agreed upon, the search(es) performed, and hit count reports generated, Spire's counsel will further meet and confer with JGR's counsel for purposes of

28

agreeing on an appropriate and proportionate scope of review for the documents responsive to the search parameters.

Dated: June 11, 2026.

By: */s/ Joshua D. Davey*

Joshua D. Davey
N.C. Bar No. 35246
Lawrence J. Cameron
N.C. Bar No. 41922
Troy C. Homesley, III
N.C. Bar No. 62148
**TROUTMAN PEPPER LOCKE LLP**
301 S. College St., 34th Floor
Charlotte, NC 28202
Telephone: (704) 916-1503
joshua.davey@troutman.com
lawrence.cameron@troutman.com
troy.homesley@troutman.com

John S. "Evan" Gibbs III – Pro Hac Vice
**TROUTMAN PEPPER LOCKE LLP**
600 Peachtree St, NE #3000
Atlanta, GA 30308
Telephone: (404) 885-3093
evan.gibbs@troutman.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and exact copy of the foregoing was served via electronic mail on June 11, 2026, upon the following:

Sarah F. Hutchins (NC Bar No. 38172)
Tory Ian Summey (NC Bar No. 46437)
Keith M. Weddington (NC Bar No. 14352)
Charles G. Middlebrooks (NC Bar No. 55171)
Madelyn R. Candela (NC Bar No. 63827)
PARKER POE ADAMS & BERNSTEIN LLP
Bank of America Tower
620 S. Tryon St., Suite 800
Charlotte, NC 28202
Telephone: (704) 916-1503
sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com

Danielle T. Williams (NC Bar No. 23283)
KING & SPAULDING LLP
300 S. Tryon St., Suite 1700
Charlotte, NC 28202
dwilliams@kslaw.com

Thomas M. Melsheimer – *pro hac vice*
Chad B. Walter – *pro hac vice*
Tracea Rice – *pro hac vice*
Alexandra Moore – *pro hac vice*
KING & SPAULDING LLP
2601 Olive St., Suire 2300
Dallas, TX 75201
tmelsheimer@kslaw.com
cwalker@kslaw.com
trice@kslaw.com
almoore@kslaw.com

*Attorneys for Plaintiff Joe Gibbs Racing, LLC*

Cary B. Davis (NC Bar No. 36172)
Spencer T. Wiles (NC Bar No. 53664)
William M. Miller (NC Bar No. 36946)
Anna Claire Tucker (NC Bar No. 59457)
ROBINSON, BRADSHAW & HINSON, P.A.
600 S. Tryon St., Suite 2300
Charlotte, NC 28202
cdavis@rbh.com
swiles@rbh.com
wmiller@rbh.com
atucker@rbh.com

*Attorneys for Defendant Chrisopher Gabehart*

*/s/ Joshua D. Davey*

30