# EXHIBIT D

# KING & SPALDING

King & Spalding LLP
2601 Olive Street
Suite 2300
Dallas, TX 75201
Tel: +1 214 764-4600
Fax: +1 214 764-4601
www.kslaw.com

Chad B. Walker
Partner
Tel: 214 764 4451
cwalker@kslaw.com

June 18, 2026

*Via Email*

Joshua D. Davey
Lawrence J. Cameron
Troy C. Homesley
J. Evan Gibbs III

**Troutman Pepper Locke LLP**
301 S. College Street, 34th Floor
Charlotte, NC 28202
600 Peachtree Street, NE #3000
Atlanta, GA 30308

Cary B. Davis
Spencer T. Wiles
William M. Miller
Anna Clair Tucker

**Robinson, Bradshaw, & Hinson, P.A.**
600 S. Tyron Street, Suite 2300
Charlotte, NC 28202

Re:     **Deficiencies in Defendants' Responses and Objections to JGR's First Requests for Production**

Counsel:

We write on behalf of Plaintiff Joe Gibbs Racing, LLC ("JGR") to identify issues with the discovery responses served by Defendant Spire Motorsports II, LLC ("Spire") and Defendant Christopher Gabehart ("Gabehart") on June 11, 2026, and to request a meet and confer to discuss them. Section I addresses Spire's responses; Section II addresses Gabehart's responses. JGR reserves all rights in the event the parties are unable to resolve these matters, including the right to seek a motion to compel under Federal Rule of Civil Procedure 37(a).

## I.     Deficiencies in Spire's Objections and Responses

### A.  Definition of "Confidential Information and Trade Secrets"

Spire's objection to JGR's definition of "JGR Confidential Information and Trade Secrets" as vague and overbroad is without merit because the definition tracks the Employment Agreement's definition of "Confidential Information," and the specific items at issue have been

1

identified in the forensic review and Second Amended Complaint. Spire's further assertion that the definition requires it to make legal determinations about trade secret status is unavailing — JGR's requests ask Spire to produce documents relating to the categories of information identified, not to adjudicate trade secret status. This objection does not provide a basis for withholding responsive documents.

### B. Definition of "You"/"Your"/"Spire"

Spire's carve-out of documents relating to actions taken by its owners, officers, and employees in their "individual capacities" or prior to their affiliation with Spire is improper because it would exclude communications between Spire's principals (including Dickerson and Towriss) and Gabehart during the recruitment period — the very period when Gabehart's misappropriation and recruitment were occurring, as the Court has already found. This limitation must not be used to withhold responsive documents.

### C. Trade Secret Documents (RFPs 11–12)

Spire's limitation of its production to documents that "reference or reflect the specific file names and items identified in the parties' forensic examinations" is insufficient because the requests seek documents relating to JGR's Confidential Information and Trade Secrets broadly, including communications that may not reference specific file names. JGR acknowledges Spire's willingness to consider additional search terms and is prepared to discuss an expanded set of terms during the meet and confer. However, Spire's obligation extends to all documents reflecting the use, dissemination, or incorporation of JGR's information into Spire's operations.

### D. Recruitment, Hiring, and Employment of Gabehart (RFP 1)

Spire's limitation of its production to documents relating to "Spire's recruitment, hiring, and potential employment of Gabehart" is too narrow to satisfy RFP 1, which seeks documents and communications relating to the recruitment, hiring, *and employment* of Gabehart across eight specific subparts (a) through (h). Spire's proposed scope effectively excludes documents relating to Gabehart's ongoing employment, role, and conduct at Spire, all of which are squarely within the request.

In addition, Spire raises specific objections to subparts (f) and (h). With respect to subpart (f), Spire objects that the phrase "provided services" is vague. To clarify, this subpart seeks documents reflecting any services Gabehart provided to Spire prior to his official start date, which should be captured by any communications between Gabehart and Spire prior to that date. With respect to subpart (h), Spire objects that it "seeks broad information about Spire's subsequent internal legal and business deliberations rather than core recruitment and employment documentation." Non-privileged documents related to Spire's decision to retain, continue to employ, or not terminate Gabehart after learning that he had taken JGR Confidential Information and Trade Secrets are directly relevant to Spire's knowledge of and potential involvement in that conduct, and thus to JGR's claims against Spire for misappropriation of trade secrets, unfair trade practices, and tortious interference. JGR expects production of all non-privileged documents responsive to RFP 1 as written, including subparts (f) and (h).

### E. Agreements Between Spire and Gabehart (RFP 3)

Spire's limitation of its production on RFP 3 to "executed employment and non-disclosure agreements between Spire and Gabehart" is insufficient because the request also seeks drafts, redlines, negotiations, and any proposed indemnity, fee coverage, or hold harmless agreements. Non-privileged drafts and negotiations over agreement terms are discoverable and relevant to understanding the scope of Spire's arrangements with Gabehart, including what protections Spire sought or declined in connection with its hiring of an individual it knew to be subject to restrictive covenants. JGR expects production of all non-privileged documents responsive to RFP 3 as written.

### F. Limitation to Specific Individuals and Entities (RFPs 2, 6, 14)

Spire's narrowing of several requests to specific individuals or entities is insufficient to satisfy its production obligations. With respect to RFPs 2 (pre-employment interactions) and 6 (communications regarding JGR employees), Spire limits production to documents involving certain identified individuals. With respect to RFP 14 (sponsor solicitation), Spire limits production to communications with SAIA and Zep only, even though the information Gabehart took included sponsor revenue data for 2024–2026. In each case, the requests are not limited to the specific individuals or entities Spire has identified, and the record supports a broader scope. JGR would like to discuss expanding these productions during the meet and confer and as part of the ongoing custodian discussions under the ESI Protocol.

### G. Gabehart's Role and Competition Activities (RFPs 7, 9)

RFPs 7 and 9 together seek documents necessary to determine the nature and scope of Gabehart's actual involvement in Spire's competition efforts — the central factual question in JGR's breach-of-contract claim. Spire's limitation of its production on RFP 7 to documents that "describe Gabehart's role at Spire" is insufficient because the request seeks documents relating to Gabehart's actual duties, responsibilities, and activities — not merely his formal job description. Documents reflecting the scope of Gabehart's *actual* duties, responsibilities, and activities for Spire are necessary to ascertain whether his involvement in Spire's competition efforts violates Section 6 of the Employment Agreement.

With respect to RFP 9, Spire's assertion that the Court's preliminary injunction order forecloses discovery into Gabehart's presence at NASCAR Cup Series events is incorrect, as his presence at these events is relevant to determining whether he has breached multiple provisions of the contract, whether he is continuing to use or transfer the trade secrets and confidential information, and whether he is violating the Court's preliminary injunction order. The Court's order stated only that attendance at races and services not implicated by Section 6 are permissible — it did not foreclose merits discovery on this topic. With respect to subpart (d), factual documents reflecting awareness of a potential restrictive covenant violation are not inherently privileged, and any privileged documents should be logged rather than used as a basis for a blanket refusal to search. With respect to subpart (e), the request is limited to documents relating to Gabehart's presence and participation at NASCAR events, not all communications occurring during race weekends. JGR would like to discuss the appropriate scope of production during the meet and confer.

3

### H. Changes in Spire's Performance (RFP 21)

Spire limits its production on RFP 21 to documents relating to "changes in Spire's performance attributable to Gabehart, to the extent any exist." This limitation allows Spire to unilaterally determine what is "attributable" to Gabehart. The request seeks documents relating to changes in Spire's performance after Gabehart commenced employment — including changes to setups, strategy, analytics, or engineering processes — regardless of whether Spire concedes attribution. Whether those changes resulted from Gabehart's contributions or use of JGR's information is a factual question for discovery, not a basis for narrowing production.

### I. Financial Documents (RFPs 16, 18, 19, 20)

Spire's categorical refusal to produce any documents in response to RFPs 16, 18, 19, and 20 (technical alliance terms, quarterly financials, internal financial presentations, and revenue/cost information) is untenable and must be withdrawn. JGR seeks damages exceeding $8,000,000 for lost profits, diminished competitive advantage, and unjust enrichment, and Spire's financial information is directly relevant to those claims. Spire's financial performance is also relevant to Spire's motivations in hiring Gabehart and its potential involvement in the misappropriation of JGR's Confidential Information and Trade Secrets. JGR is willing to discuss reasonable temporal limitations — for example, a scope tied to the period from the commencement of Gabehart's employment at Spire to the present — but will not accept a blanket refusal. The Protective Order adequately addresses any confidentiality concerns.

### J. Forensic Examination Documents (RFP 15)

Spire's objection to RFP 15 as seeking expert witness materials conflates factual findings with protected expert analysis. While certain expert materials may be subject to the Court's scheduling order, RFP 15 also seeks factual documents — what was found on Gabehart's Spire-issued laptop, what JGR information was identified on Spire's systems, and related communications among Spire personnel. Factual findings are distinguishable from expert analysis and should be produced now. JGR would like to discuss separating these categories during the meet and confer.

## II. Deficiencies in Gabehart's Responses and Objections

### A. Definition of "Confidential Information and Trade Secrets"

Gabehart's objection to JGR's definition as vague and "inconsistent with applicable legal standards" lacks merit because the definition tracks the Employment Agreement that Gabehart personally negotiated and agreed to. Gabehart's disagreement with JGR's legal characterization of the information is a merits argument, not a valid basis for withholding documents in discovery.

### B. "Relevant to the Matters in Dispute" Qualifier (RFPs 3, 9, 13)

On multiple RFPs, Gabehart states he will produce documents "relevant to the matters in dispute" without defining how that limitation will be applied. This self-imposed qualifier gives Gabehart unilateral discretion to withhold responsive documents. Rule 34 requires production of

4

all responsive, non-privileged documents — not only those a responding party deems "relevant." Gabehart must either drop this qualifier or specifically identify the categories of documents he intends to exclude.

### C. Trade Secret Documents (RFP 10)

Gabehart's deferral to the Forensic Analysis Protocol in response to RFP 10 does not satisfy his obligations under Rule 34. The protocol was a limited mechanism to identify and return specific JGR files, not a substitute for merits discovery. Gabehart must independently search for and produce all communications concerning these materials. This is a basic obligation under the Federal Rules, not a point of scope to be negotiated.

### D. Spire Confidentiality Objection (RFP 6)

Gabehart's objection that documents responsive to RFP 6 contain "Spire's confidential business and trade secret information" cannot be used to withhold documents directly relevant to JGR's claims. The Protective Order provides adequate safeguards, and Gabehart may not unilaterally refuse production on this basis.

### E. Communications and Competition Activities (RFPs 7, 9)

RFPs 7 and 9 together seek documents necessary to determine the nature and scope of Gabehart's actual involvement in Spire's competition efforts — the central factual question in JGR's breach-of-noncompete claim. Gabehart's overbreadth objection to RFP 9 is unfounded because the request is narrowly tailored to a defined time period beginning March 2, 2026 (the date the Court determined the noncompete was enforceable) and is directly relevant to whether Gabehart is providing prohibited services. Gabehart's overbreadth objection to RFP 7 is similarly unfounded — the request targets documents reflecting his activities at race events, which are necessary to evaluate compliance with Section 6 of the Employment Agreement. JGR would like to discuss reasonable search parameters and scope of production during the meet and confer.

### F. Deletion of Evidence (RFP 14)

Gabehart's "discovery on discovery" objection to RFP 14 is untenable and must be withdrawn because RFP 14 does not seek information about Gabehart's litigation discovery process — it seeks documents relating to his deletion, destruction, or non-preservation of JGR's information, which is directly relevant to JGR's substantive claims and to potential spoliation. While courts scrutinize "discovery on discovery," there is no outright prohibition on such inquiries, and their appropriateness turns on the particular circumstances of each case. *Black v. W. Virginia State Police*, No. 3:22-CV-00096, 2023 WL 4834948, at \*10 (S.D.W. Va. July 27, 2023) (quoting *Cardinali v. Plusfour, Inc.*, No. 216CV02046JADNJK, 2019 WL 3456630, at \*3 (D. Nev. June 20, 2019)). Here, the circumstances plainly warrant production: the request targets pre-litigation deletion of substantive communications with the owner of the company that hired Gabehart. The record establishes that Gabehart deleted only his text messages with Jeff Dickerson on November 15, 2025 — three days after receiving a job offer from Spire — and Gabehart's counsel has acknowledged this deletion. This is core merits discovery. JGR expects full production responsive to this request.

**III.     Conclusion**

JGR requests a meet and confer at the earliest mutual convenience to discuss these issues. JGR looks forward to engaging constructively with counsel to resolve these matters promptly. This letter does not contain an exhaustive list of deficiencies in Spire's and Gabehart's respective objections and responses, and JGR reserves all rights, including the right to raise additional issues and to seek a motion to compel and reasonable expenses under Rule 37.


Respectfully,

Chad B. Walker


cc:     Danielle Williams, dwilliams@kslaw.com
        Sarah Hutchins, sarahhutchins@parkerpoe.com
        Troy Summey, troysummey@parkerpoe.com
        Keith Weddington, keithweddington@parkerpoe.com
        Charles Middlebrooks, charliemiddlebrooks@parkerpoe.com
        Madelyn Candela, madelyncandela@parkerpoe.com
        Chad Lee, chadlee@parkerpoe.com