# EXHIBIT N

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:26-cv-133

JOE GIBBS RACING, LLC,                    Charlotte, North
                                          Carolina

          Plaintiff,                      March 26, 2026

          vs.                             9:19 a.m. - 2:30 p.m.

CHRISTOPHER GABEHART and SPIRE
MOTORSPORTS, LLC,

          Defendants.
_____


          HEARING ON MOTION FOR PRELIMINARY INJUNCTION
          BEFORE THE HONORABLE SUSAN C. RODRIGUEZ
                UNITED STATES DISTRICT JUDGE


STENOGRAPHICALLY REPORTED BY:

                    REBECCA MAXCY, RMR, CRR
                    Federal Official Court Reporter
                    United States District Court
                    Charles R. Jonas Federal Building
                    401 W. Trade Street
                    Charlotte, North Carolina 28202
                    (704)350-7493

APPEARANCES:

FOR THE PLAINTIFF:                    THOMAS M. MELSHEIMER
                                      CHAD B. WALKER
                                      Attorneys at Law
                                      King & Spalding
                                      2601 Olive Street
                                      Suite 2300
                                      Dallas, TX 75201

                                      E. DANIELLE T. WILLIAMS
                                      Attorney at Law
                                      King & Spalding
                                      300 S. Tryon Street
                                      Suite 1700
                                      Charlotte, NC 28202

                                      SARAH F. HUTCHINS
                                      TORY I. SUMMEY
                                      KEITH M. WEDDINGTON
                                      CHARLES G. MIDDLEBROOKS
                                      Attorneys at Law
                                      Parker Poe Adams & Bernstein,
                                       LLP
                                      620 S. Tryon Street
                                      Suite 800
                                      Charlotte, NC 28202

FOR DEFENDANT CHRISTOPHER              CARY B. DAVIS
GABEHART:                              SPENCER WILES
                                      Attorneys at Law
                                      Robinson, Bradshaw & Hinson
                                      600 S. Tryon Street
                                      Suite 2300
                                      Charlotte, NC 28202

FOR DEFENDANT SPIRE                    JOSHUA D. DAVEY
MOTORSPORTS, LLC:                      LAWRENCE J. CAMERON
                                      TROY C. HOMESLEY, III
                                      JOHN S. GIBBS, III
                                      Attorneys at Law
                                      Troutman Pepper Locke, LLP
                                      301 S. College Street
                                      Suite 3400
                                      Charlotte, NC 28202

all this. Again, it's just not being displayed in open court. What is on the left is the picture and what is on the right is what we obtained in expedited discovery, this worksheet that he created. And, Your Honor, it's a worksheet -- again, the race -- post-race analytics is something that has been developed over 35 years at our company; hundreds of people, thousands of hours, millions of dollars. That's the Hamlin declaration and the Brown declaration. No one disputes that. No one says this is something that's public information. No one says this is no big deal. There's no -- no one has joined issue on that. So that's pretty much undisputed.

But what's shown on the right is -- what he took is he took that kind of information and created this spreadsheet for Spire. And it's not -- it's using Spire information. ███████ ███████████████████████████████████████████████████████ ████████████████████████████████████████████ He took our proprietary diagnostic categories and then he plugged them into Spire's cars, Spire's vehicles.

And the declaration from Mr. Brown explains all this in great detail, including how the arrangement, the metrics we choose, the algorithms we use to measure things, ████████████ ████████████████████████████████████ -- all these different things that we analyze after the race is over, and he mirrors that in creating a similar spreadsheet for Spire.

So that's on the right of slide 31. So -- and that,

Your Honor, is 222 that you asked about. So it only took me a few minutes to get to your question.

THE COURT: Okay.

MR. MELSHEIMER: But the slide on the right on page 31, that is 222. They're not going to tell you, Your Honor, they have the right to have that. They're not going to tell you that he took that by accident.

THE COURT: Well, I guess that's my question. I understand the Spire logo is at the top of it. I don't know, because of the scope of discovery that we did, that they actually have that. We know that Defendant Gabehart has it, but --

MR. MELSHEIMER: Correct.

THE COURT: -- we don't have information that they have it at this point.

MR. MELSHEIMER: I don't -- Your Honor, I want to make it clear when I -- if I say Spire has something, I know that they have it. If I don't say that, it means we don't know that.

THE COURT: I understand.

MR. MELSHEIMER: So I'm not suggesting that -- when I say it's Spire, what I'm saying is Mr. Gabehart is populating this literally with their car numbers; car 7, the 71 car, the 77 car --

THE COURT: So where is that? I think it could be just

sauce that JGR has been focused on.

Beyond that, though, as Mr. Cameron talked about, JGR has taken a number of steps to ensure -- excuse me. Spire has taken a number of steps to ensure that there's no possibility for transmission of any information that might be trade secrets.

And to begin with, to remind the Court -- and the Court knows this, but most of that information, the information that Mr. Gabehart had, was deleted before he got a Spire computer, which he had for nine days before we took that away and quarantined it. Since then we've searched, as Mr. Cameron said. We don't have JGR information. We've actually cut off Mr. Gabehart's access to any email or any other Spire systems --

THE COURT: What about the document 222 that we've been talking about --

MR. DAVEY: Yes, Your Honor.

THE COURT: -- have you-all looked for a version of that on your system?

MR. DAVEY: We looked --

THE COURT: I mean, sitting in your shoes today, I'm not sure if you did like a typical search that document would come up. And so that might be something you-all want to go back and look at as well.

MR. DAVEY: Certainly, Your Honor.

THE COURT: I don't know that that would necessarily come up immediately. It's a little bit more nuanced than that.

MR. DAVEY: Well, what I can say is that we had our own forensic examiner look for all of the files, the file names that were in Mr. Gabehart's OneDrive that JGR has claimed were trade secrets taken in this case and looked for that information across all of Spire's email and systems, and we don't have anything. I don't believe we have Gabehart 222. It certainly hasn't been used by Spire in any competitive way, even if it -- again, I don't believe we have it, Your Honor. Nothing we've done to date has indicated that we do. And so --

THE COURT: So, Mr. Davey, I hear you on that, but why in the world would Defendant Gabehart create an Excel spreadsheet with your client's numbers on them if it wasn't for Spire?

MR. DAVEY: Well, Your Honor --

THE COURT: This might be speculation on my part. I don't know what the answer is.

MR. DAVEY: I don't know is the truthful answer to that question, Your Honor. But I think what was going on is he was -- everyone was talking about the possibility through this time frame, in November, in middle November, when, as the documents show, Mr. Gabehart was negotiating with JGR for a separation agreement pursuant to that carve-out in the noncompete. And the expectation of JGR and Mr. Gabehart and

case before you rule, we'll send it.

THE COURT: You can always file a supplement if we need to, but we'll see where we end up today too. You know, I'm kind of going to consider where we're at. I'm not sure if I'm going to rule yet or not. I think it remains to be seen. So I'm going to keep an open mind.

All right. Thank you.

MR. DAVIS: Thank you.

MR. MELSHEIMER: May it please the Court, Your Honor.

THE COURT: Yes.

MR. MELSHEIMER: I've written down all the Court's questions, and so I think it might be efficient if I went through those. And then --

THE COURT: That would be very helpful.

MR. MELSHEIMER: -- if you think I haven't answered them -- let me start out by saying the defense to trade secret theft can't be I'm a nerd. So that is not know-how. There are ways in a trade secret case to bring experts to say something is general knowledge or general know-how. That's not what -- you don't need to take pictures or download things that are general know-how.

And if I ask you to look at one thing closely -- and I know you'll look at everything closely -- it's the Wally Brown declaration that we just filed. And that goes into great detail of why that -- the combination of that Focus Plan and

that Gabehart 222 is so critical. Mr. Brown talks about how this was a bespoke method, a proprietary method for evaluating race performance that we invented -- that he invented in part with help of a lot of other people at Joe Gibbs Racing, and he bragged about how that was a difference maker or something important.

So the notion that it's simply, well, anybody can figure out how fast the cars go or how many -- that's not what this is. It's a confluence -- and I'll ask you to look specifically in Mr. Brown's declaration. I'll place this out. But if you look at 222, you'll see he's got -- this is sealed. But he's got car 71. And then he does have -- in black there are some things that are more generic, but the things that are in gray are not generic. They are part of the proprietary methodology that he helped develop.

And the one thing we have highlighted, Your Honor, in our deck is this thing ███████████████████. So that is not just attaboy. Okay? That is --

THE COURT: Would you say it's like in a logarithm? I'm sort of thinking about a lot of technology we have out there these days. You know, where you live, how often you rent Netflix. You know, you put all of that in, what the home values are in your neighborhood, and then people use that data. They put it all together, and they spit it out and then all of a sudden you have something that's proprietary. Would you say

not fussing at them for not doing that, but what I'm saying when we're here for preliminary relief, I think you have to weigh what you have on our side and what you don't have on their side. That's really my whole point of saying that.

So that's the issue of irreparable harm with the Gabehart Exhibit 222.

I'd like to go to slide 31. And I've kind of addressed this, but I just want to make sure that it's clear. And this is from my original presentation. So when you hover over the native file there on the spreadsheet, what you get is the definition ████████████████, which is exactly what is the definition that's used at Joe Gibbs Racing. So you really see the confluence of what his plan was and how he was planning on using it.

And, also, another metric that we have in our formula, so to speak, is ███████████. Sort of this generic kind of, well, those are other things that sometimes occur in races. Again, that shows up in Exhibit 222 as well. And it's more than just a coincidence. I think the Court used the term suspicious. I think it's an inference of misappropriation and when tending to benefit Spire.

So the other point I wanted to address -- and some of these are points the Court made and some of them just came up. So this suggestion that was made that, well, there's no real threat here because he's not working in any competitive way.