# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

JOE GIBBS RACING, LLC,

      Plaintiff,

v.

CHRISTOPHER GABEHART and SPIRE
MOTORSPORTS, LLC,

      Defendants.

Case No. 3:26-cv-00133-SCR-DCK

**DEFENDANT SPIRE MOTORSPORTS, LLC'S FIRST
SET OF INTERROGATORIES TO PLAINTIFF**

Defendant Spire Motorsports, LLC ("Spire"), by and through its undersigned counsel, submits the following First Set of Interrogatories to Plaintiff Joe Gibbs Racing, LLC ("JGR") to be answered separately and fully in accordance with Rule 33 of the Federal Rules of Civil Procedure and the Definitions and Instructions below within thirty (30) days after service.

**DEFINITIONS**

1. The terms "Plaintiff," "JGR," and "You" mean Joe Gibbs Racing, LLC, the plaintiff in this action, including any of its divisions, departments, parents, predecessors, successors, subsidiaries, and other organizational or operating units and present or former members, officers directors, shareholders, employees, or agents. The terms Plaintiff," "JGR," and "You" include agents, vendors, independent contractors engaged, or any entities engaged by You to provide services to You, including those to whom JGR employees are or were directed to return electronic devices issued by You.

2. The term "Gabehart" means Christopher Gabehart, a defendant in this Litigation.

3. The term "Spire" means Spire Motorsports, LLC, a defendant in this Litigation.

1

4. The terms "all," "any," "each," and "every" shall mean "all, any, each, and every," as necessary to bring within the scope of these Interrogatories any information, Documents, or things that might otherwise be construed to be outside their scope. In no event shall the use of the term "all," "any," "each," or "every" be construed to narrow the scope of any Interrogatory.

5. The term "Allegedly Misappropriated Information" means each and every Document, Data set, or item of information that You contend constitutes a trade secret or confidential information that was misappropriated or otherwise wrongfully acquired, used, or disclosed by Gabehart and/or Spire, including the categories identified in Paragraphs 14, 34–35, 94–98, and 137–138 of the Amended Complaint.

6. The term "Amended Complaint" means JGR's Amended Complaint filed in this Litigation on February 24, 2026.

7. The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Interrogatories any information, Documents, or things that might otherwise be construed to be outside of their scope. In no event shall the use of the term "and" or "or" be construed to narrow the scope of any Interrogatory.

8. The term "Communication" means the transmittal of information by any means including oral, written, or electronic, and in any form, including by electronic transmission (including via e-mail, any online or cloud service or account such as, for example, Google Cloud, Google Docs, Google Sheets, Google Drive, Gmail, Google Photos, Amazon Cloud Drive, Amazon Cloud Drive Photos, or DropBox, instant message, text or SMS message, Skype, FaceTime or other internet (video) phone service, WebEx or other online meeting service, Facebook or other social media service, WhatsApp, Facebook Messenger, SnapChat, Signal,

Discord (or other electronic messaging service or website), facsimile, letter, memorandum, voicemail, personal meeting, phone call, teleconference, or videoconference).

9.      The term "Confidential Information" means the term as defined in § 5 of the Employment Agreement attached as Exhibit 1 to the Amended Complaint, including "non-public information about Company sponsors and partners, race strategy, engineering information, race car set-ups, pit crew training methods and practices, pit crew analytics, technology and strategy, wind tunnel data and testing of any kind, trade secrets and any Company information that is proprietary or not publicly known," as well as any other information You contend is confidential in this Litigation.

10.     The term "Data" means any information, electronic data, forensic artifacts, or digital information, and explicitly incorporates by reference the definition for "Document" as defined herein.

11.     The phrase "Describe, in detail" means to supply a full description and narrative account of the event, transaction, relationship, thing, or occurrence inquired into, including references to specific Communications and Documents and to the dates, places, and Persons involved.

12.     The terms "DLP Report" and "DLP Program" mean any logs, audit logs, reports, analyses, trackers, or other Documents that are in JGR's possession, custody, or control and reflect electronic activity, track user activity, retain digital forensic artifacts or information, or otherwise record the occurrence of a digital event, the time at which the event occurred, the responsible user or service, and the impacted entity.

13.     The term "Document" means any written or graphic matter of every kind and description, however produced or reproduced, whether draft or final, original or reproduction, internal or otherwise,

3

whether stored in tangible, electric, mechanical, or electronic form or representation of any kind (including (i) electronically stored information on or in computer tapes, disks, CDs, DVDs, hard drives, removable disk drives, flash drives, mp3 devices, cellular telephones, smartphones, personal data assistants (PDAs), tablet devices, and any other devices capable of storing electronic information, and (ii) backup copies and "deleted" information contained on or in any computer or device capable of storing electronic information), whether located on-site or off-site, including, but not limited to, letters, correspondence, electronic mail, text messages, instant messages, SMS communications, website pages, website postings, social media postings, blog postings, memoranda (internal or otherwise), minutes, notes (whether typed or handwritten), films, recordings of any type, transcripts, contracts, memoranda and/or notes of telephone conversations, personal conversations or meetings, diaries, desk calendars, telegrams, circulars, pamphlets, manuals, statements, notices, reports, telexes, interoffice or intra-office communications, minutes of meetings, reports, studies, tests, and the underlying data of any reports, studies or tests, books or records of accounts, bank account records, checks, bank drafts, invoices, requisitions, microfilms, movies, slides, photographs, data stored in any computer media, computer runs or printouts, tabulations, charts, guides, outlines, summaries, abstracts, plans, drawings, specifications, blueprints, graphs, drafts and/or non-identical copies of any one or more of the foregoing, and copies of documents showing names of, or otherwise identifying, recipients whose names are not shown on the originals or on other copies, or material similar to any of the foregoing, however denominated and by whomever prepared and to whomever addressed. For the avoidance of doubt, the term "Documents" incorporates by reference the term "Communications," such that a request for any "Documents" responsive to an Interrogatory means that any "Communications" regarding or involving the requested subject matter should also be produced.

14. The term "Employment Agreement" means the agreement that Gabehart executed on November 15, 2024, in his role as Competition Director for JGR.

15. The term "identify," when used with respect to a Person, means to provide the Person's full name, mailing address, e-mail address, current role and employer, and the Person's role and employer at the time of the events described in the Amended Complaint.

16. The term "identify," when used with respect to a Document, means to state the date of the document; the date the document was created; the title of the document; the subject of the document; the custodian of the document; the author(s), sender(s), and recipient(s) of the document; and the location of the document on JGR's electronic systems.

17. The term "identify," when used with respect to a piece of Allegedly Misappropriated Information that is a Document, has the same meaning as the term "identity" when used with respect to a Document, as detailed in paragraph 13, with the additional requirement that You state the basis for JGR's claim that the Document is a trade secret or that it contains JGR's confidential information, and the JGR personnel to whom it was disseminated.

18. The term "identify," when used with respect to a piece of Allegedly Misappropriated Information that is Information not contained in a Document, means to state (a) the source of that Information; (b) the date(s) it was created; (c) JGR's basis for the claim that the Information is a trade secret or that it constitutes JGR's confidential information, and the JGR personnel to whom it was disseminated.

19. The terms "including," "includes," and "include" mean including, includes, and include without limitation. Under no circumstances should the use of any of the above words in any Interrogatory be construed to limit the scope of the Interrogatory.

5

20. The term "Litigation" means the lawsuit *Joe Gibbs Racing, LLC v. Gabehart, et al.,* Case No. 3:26-cv-00133-SCR-DCK, pending before this Court.

21. The term "OneDrive" refers to any cloud-based storage account (whether Microsoft OneDrive or shared servers) that are made available to JGR employees for business purposes by JGR.

22. The term "Person" means a natural person or any entity viewed by the law as having legal personhood.

23. The terms "relating to," "related to," "concerning," and all thereof mean relating to, related to, referring to, reflecting, concerning, supporting, contradicting, undercutting, or pertaining to in any manner, logically, factually, indirectly, or directly to the matter discussed.

24. The term "Trade Understanding" has the meaning ascribed to it in the Declaration of Jeff Dickerson dated March 11, 2026, ECF No. 45-2, and more generally refers to the understanding between JGR and Spire that Spire would agree to mutually terminate Robert Smith's contract, which would allow him to begin working for JGR immediately—in exchange for JGR extending the same waiver for an employee that Spire would identify in the future, or $100,000, to be completed by the end of 2025.

25. To the extent not otherwise defined, all words shall have their usual and ordinary meaning as the context of the Interrogatory would indicate.

26. The use of the singular form of any word includes the plural, and the use of the plural form of any word includes the singular.

27. Whenever a defined term is used, its definition as stated herein applies, regardless of whether the term capitalized or lowercased.

6

28. The use of the past tense includes the present tense, and vice versa, as necessary to bring within the scope of each Interrogatory all responses that might otherwise be considered outside its scope. Whenever a term is used in the present, past, future, subjunctive, or other tense, voice, or mood, it shall also be construed to include all other tenses, voices, or moods.

## INSTRUCTIONS

1. Unless otherwise specified herein, the time period applicable to these Interrogatories is January 1, 2025, through the present.

2. These Interrogatories call for all responsive information in Your possession, custody, or control. Information within Your possession, custody, or control includes, but is not limited to, information in the possession, custody, or control of any of Your agents, attorneys, advisors, and representatives, or other person acting or purporting to act on Your or their behalf.

3. Restate in full each Interrogatory, followed immediately by Your written response to the Interrogatory. Separate answers should be given in response to each Interrogatory, and, if an Interrogatory has subdivisions, to each subdivision.

4. If, in responding to any of these Interrogatories, You encounter any ambiguity in construing either the Interrogatory or a definition or instruction relevant to it, set forth the matter deemed ambiguous and the construction selected or used in responding to the Interrogatory.

5. If You elect to answer any Interrogatory in the manner provided by Federal Rule of Civil Procedure 33(d), identify the Documents with specificity (by Bates number) and product them. All Documents should be produced in the manner, form, and position in which they are kept in the ordinary course of business and in the format specified in Spire's First Set of Requests for Production of Documents to JGR, which is being served contemporaneously herewith.

7

6. If You elect to answer any Interrogatory in full, You should comply with the Interrogatory to the extent possible, with an explanation as to why full compliance is not possible.

7. There Interrogatories are continuing in character and require supplementation.

8. These Interrogatories do not seek, and should not be construed as seeking, information subject to a valid claim of privilege. If privilege is claims with respect to any Document, Communication, or information otherwise required to be provided pursuant to these Interrogatories, state the following: (a) the legal and factual basis for the claim that such Document, Communication, or information is privileged; (b) the identity of the person who wrote the allegedly privileged Document or the person who made the allegedly privileged Communication or transmitted the allegedly privileged information; (c) the date of the allegedly privileged Document, Communication, or information; (d) the nature of the Document or Communication, if written (e.g., memorandum, letter, note); and (f) the subject matter of the allegedly privileged Document, Communication, or information.

**INTERROGATORIES**

**INTERROGATORY NO. 1:** Identify all Persons who have or are likely to have knowledge or information concerning the allegations in the Amended Complaint. For each such Person:

(a) state the Person's full name, title, current or last known employer, and last known address and telephone number;

(b) identify the specific claim(s) or paragraph(s) of the Amended Complaint about which the Person has knowledge (by paragraph number);

(c) describe in detail the subject matter and substance of the Person's knowledge; and

8

(d) identify any Documents that contain or reflect statements by or about that Person relating to this Litigation (including written statements, recorded interviews, declarations, deposition testimony, or court testimony).

**ANSWER:**

**INTERROGATORY NO. 2:** For each piece or category of information that You contend is "Allegedly Misappropriated Information" by Gabehart and/or Spire:

(a) Describe the information with as much specificity as possible;

(b) state whether You contend that the information is a trade secret under the Defend Trade Secrets Act and/or the North Carolina Trade Secrets Protection Act, and/or constitutes "Confidential Information" under the Employment Agreement;

(c) describe the facts on which You rely to support that contention (including any steps You took to maintain the secrecy or confidentiality of that information);

(d) state whether You contend that Spire accessed or used that information; describe the facts on which You rely to contend that Spire accessed or used that information (including the date(s), manner(s), and Person(s) involved); and

(e) describe the harm or damages You allege JGR suffered as a result of any such alleged access or use, including the type of harm and the amount of damages You attribute to that information and how that amount was calculated.

**ANSWER:**

**INTERROGATORY NO. 3:** For each piece or category of Allegedly Misappropriated Information identified in Your answer to Interrogatory No. 2:

(a) describe the steps, efforts, or precautions JGR took prior to October 1, 2025 to guard the alleged confidentiality or secrecy of that information (including, for example, access

9

controls, passwords, physical security, confidentiality agreements, policies, training, and monitoring);

(b) identify the Persons inside JGR who were permitted to access that information prior to October 1, 2025 and describe how they accessed it (for example, via email, shared drive, OneDrive, hard copy, or other means); and

(c) identify any instance in which that information was shared with, accessed by, or accessible to any third party (including sponsors, manufacturers, vendors, consultants, or other teams) or otherwise available to the public at any time prior to October 1, 2025, including the identity of the third party and a description of the circumstances and dates of such access or disclosure.

**ANSWER:**

**INTERROGATORY NO. 4**: Describe the efforts JGR made between November 1, 2025 and the present to investigate whether Gabehart downloaded, copied, transferred, or otherwise removed any JGR Documents or Data from any JGR systems or devices, including to any personal devices, email accounts, or cloud-storage accounts. Your answer shall:

(a) describe the devices, accounts, and data sources examined (including any JGR-issued laptops or phones and any JGR-sponsored OneDrive or other cloud storage associated with Gabehart);

(b) identify any third-party vendors or consultants involved in the investigation; and

(c) state whether the investigation identified any instance in which Allegedly Misappropriated Information or other JGR Documents or Data were transmitted from any device or account associated with Gabehart to any Spire-owned or Spire-controlled system, email address, phone number, or account, and if so, describe each such instance, and if not, describe any

material limitations in the scope of the investigation (including any devices, accounts, or data sources that were not imaged, not preserved, or not analyzed).

**ANSWER:**

**INTERROGATORY NO. 5:** Identify the Persons who have or are likely to have knowledge or information concerning the "Trade Understanding" referenced in the Amended Complaint, for the period January 1, 2025 to the present. For each such Person, state the Person's full name, title, current or last known employer, last known address and telephone number, and describe the subject matter of that Person's knowledge relating to the Trade Understanding, including any Communications or Documents of which the Person is aware that relate to the Trade Understanding.

**ANSWER:**

**INTERROGATORY NO. 6:** Describe JGR's practice since January 1, 2021 with respect to enforcing or not enforcing non-competition or non-solicitation provisions against employees in roles comparable to or similar to Gabehart's. Your answer shall identify each instance since January 1, 2021 in which such an employee left JGR's employment or was considering leaving, and for each instance state:

(a) the employee's name and position;

(b) the nature and duration of any non-competition or non-solicitation provision applicable to that employee;

(c) the employee's subsequent employer during any applicable restricted period (if known);

(d) whether JGR took any action to enforce or not enforce the provision (including sending a cease-and-desist letter, filing a lawsuit, agreeing to a waiver or modification, or entering into any standstill or transition arrangement); and

11

(e) the reasons JGR chose to enforce, not enforce, waive, or modify the provision in that instance.

**ANSWER:**

**INTERROGATORY NO. 7:** Identify the Persons who have or are likely to have knowledge or information concerning:

(a) the negotiation and execution of Gabehart's Employment Agreement, including any discussions or proposals regarding the scope or duration of any restrictive covenants; and

(b) the circumstances surrounding Gabehart's departure from JGR, including JGR's decision to cease paying Gabehart in or around November 2025 and JGR's subsequent decision to terminate his employment for cause in 2026.

For each such Person, state:

(1)  the Person's full name, title, current or last known employer, last known address and telephone number; and

(2) describe the subject matter of that Person's knowledge on these topics.

**ANSWER:**

**INTERROGATORY NO. 8:**  State the date or dates on which JGR decided to terminate Gabehart's employment for cause, identify each Person involved in making or approving that decision, and describe the reasons for that decision, including the facts, events, and alleged conduct that JGR contends constituted "cause" under the Employment Agreement.

**ANSWER:**

**INTERROGATORY NO. 9:** If You contend that Section 6.2 of the Employment Agreement imposed on Gabehart a non-competition restriction longer than one week after he ceased

12

performing services for JGR, describe in detail the factual and legal basis for such contention, including:

    (a) your interpretation of the notice and payment provisions in Section 6.2;

    (b) the facts on which You rely for contending that any notice provided by or on behalf of Gabehart did not satisfy Section 6.2; and

    (c) the dates and time period during which You contend Gabehart was prohibited from competing with JGR pursuant to Section 6.2.

**ANSWER:**

**INTERROGATORY NO. 10:** Describe the job duties and responsibilities that You contend Gabehart is prohibited from performing for Spire pursuant to Section 6.2 of the Employment Agreement, including Your identification of the "general type of services that [he] provided to the Company in the year prior to such termination" that You contend he may not perform for Spire.

**ANSWER:**

**INTERROGATORY NO. 11:** For each cause of action alleged in the Amended Complaint, identify and describe the categories of damages JGR seeks. Your answer shall include:

    (a) the factual basis for the type of harm alleged (such as lost profits, lost business opportunities, unjust enrichment, reputational harm, or diminution in value of alleged trade secrets);

    (b) the methodology used to calculate each category and amount of damages;

    (c) all assumptions, inputs, or models used in any such calculations; and

    (d) the Person or Persons most knowledgeable regarding such calculations.

**ANSWER:**

13

**INTERROGATORY NO. 12:** For each Person identified in Your answers to Interrogatory Nos. 1, 4, 5, 6, 7, 8, 9, and 10, identify the devices that Person used between October 1, 2025 and the date of Your answer to communicate about (a) Gabehart, (b) Spire, (c) Jeff Dickerson, or (d) the allegations in the Amended Complaint. Your answer shall identify each such device by type (for example, JGR-issued laptop, JGR-issued mobile phone, personal cell phone, personal laptop or tablet), whether it was JGR-issued or personally owned, and whether JGR has preserved or caused to be preserved data from that device that relates to the subject matter of this Litigation.

**ANSWER:**

**INTERROGATORY NO. 13:** Identify the Persons who have or are likely to have knowledge or information concerning JGR's selection of its Cup Series car set ups, including the sources of information and data used to determine those set ups. For each such Person, state the Person's full name, title, current or last known employer, last known address and telephone number, and describe the subject matter of that Person's knowledge relating to JGR's selection of its Cup Series car set ups.

**ANSWER:**

Dated: May 11, 2026.

By: */s/ Joshua D. Davey*

Joshua D. Davey
N.C. Bar No. 35246
Lawrence J. Cameron
N.C. Bar No. 41922
Troy C. Homesley, III
N.C. Bar No. 62148
**TROUTMAN PEPPER LOCKE LLP**
301 S. College St., 34th Floor
Charlotte, NC 28202
Telephone: (704) 916-1503
joshua.davey@troutman.com
lawrence.cameron@troutman.com
troy.homesley@troutman.com

John S. "Evan" Gibbs III – Pro Hac Vice
**TROUTMAN PEPPER LOCKE LLP**
600 Peachtree St, NE #3000
Atlanta, GA 30308
Telephone: (404) 885-3093
evan.gibbs@troutman.com

15

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and exact copy of the foregoing was served via electronic mail on May 11, 2026, upon the following:

Sarah F. Hutchins (NC Bar No. 38172)
Tory Ian Summey (NC Bar No. 46437)
Keith M. Weddington (NC Bar No. 14352)
Charles G. Middlebrooks (NC Bar No. 55171)
Madelyn R. Candela (NC Bar No. 63827)
PARKER POE ADAMS & BERNSTEIN LLP
Bank of America Tower
620 S. Tryon St., Suite 800
Charlotte, NC 28202
Telephone: (704) 916-1503
sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com

Danielle T. Williams (NC Bar No. 23283)
KING & SPAULDING LLP
300 S. Tryon St., Suite 1700
Charlotte, NC 28202
dwilliams@kslaw.com

Thomas M. Melsheimer – *pro hac vice*
Chad B. Walter – *pro hac vice*
Tracea Rice – *pro hac vice*
Alexandra Moore – *pro hac vice*
KING & SPAULDING LLP
2601 Olive St., Suire 2300
Dallas, TX 75201
tmelsheimer@kslaw.com
cwalker@kslaw.com
trice@kslaw.com
almoore@kslaw.com

*Attorneys for Plaintiff Joe Gibbs Racing, LLC*

Cary B. Davis (NC Bar No. 36172)
Spencer T. Wiles (NC Bar No. 53664)
William M. Miller (NC Bar No. 36946)
Anna Claire Tucker (NC Bar No. 59457)
ROBINSON, BRADSHAW & HINSON, P.A.
600 S. Tryon St., Suite 2300
Charlotte, NC 28202
cdavis@rbh.com
swiles@rbh.com
wmiller@rbh.com
atucker@rbh.com

*Attorneys for Defendant Chrisopher Gabehart*

*/s/ Joshua D. Davey*

16