**EXHIBIT B**

JOE GIBBS RACING, LLC,

     Plaintiff,

v.

CHRISTOPHER GABEHART and SPIRE
MOTORSPORTS, LLC,

     Defendants.

Case No. 3:26-cv-00133-SCR-DCK

## DEFENDANT SPIRE MOTORSPORTS, LLC'S FIRST SET OF REQUESTS FOR PRODUCTION TO PLAINTIFF

Defendant Spire Motorsports, LLC ("Spire"), by and through its undersigned counsel, submits the following First Set of Requests for Production to Plaintiff to be answered separately and fully in accordance with Rule 34 of the Federal Rules of Civil Procedure and the Definitions and Instructions below within thirty (30) days after service.

### DEFINITIONS

1.     The terms "Plaintiff," "JGR," and "You" mean Joe Gibbs Racing, LLC, the plaintiff in this action, including any of its divisions, departments, parents, predecessors, successors, subsidiaries, and other organizational or operating units and present or former members, officers directors, shareholders, employees, or agents. The terms Plaintiff," "JGR," and "You" include agents, vendors, independent contractors engaged, or any entities engaged by You to provide services to You, including those to whom JGR employees are or were directed to return electronic devices issued by You.

2.     The term "Gabehart" means Christopher Gabehart, a defendant in this Litigation.

3.     The term "Spire" means Spire Motorsports, LLC, a defendant in this Litigation.

1

4. The terms "all," "any," "each," and "every" shall mean "all, any, each, and every," as necessary to bring within the scope of these Requests any information, Documents, or things that might otherwise be construed to be outside their scope. In no event shall the use of the term "all," "any," "each," or "every" be construed to narrow the scope of any Request.

5. The term "Allegedly Misappropriated Information" means each and every Document, Data set, or item of information that You contend constitutes a trade secret or confidential information that was misappropriated or otherwise wrongfully acquired, used, or disclosed by Gabehart and/or Spire, including the categories identified in Paragraphs 14, 34–35, 94–98, and 137–138 of the Amended Complaint.

6. The term "Amended Complaint" means JGR's Amended Complaint filed in this Litigation on February 24, 2026.

7. The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Requests any information, Documents, or things that might otherwise be construed to be outside of their scope. In no event shall the use of the term "and" or "or" be construed to narrow the scope of any Request.

8. The term "Communication" means the transmittal of information by any means including oral, written, or electronic, and in any form, including by electronic transmission (including via e-mail, any online or cloud service or account such as, for example, Google Cloud, Google Docs, Google Sheets, Google Drive, Gmail, Google Photos, Amazon Cloud Drive, Amazon Cloud Drive Photos, or DropBox, instant message, text or SMS message, Skype, FaceTime or other internet (video) phone service, WebEx or other online meeting service, Facebook or other social media service, WhatsApp, Facebook Messenger, SnapChat, Signal,

2

Discord (or other electronic messaging service or website), facsimile, letter, memorandum, voicemail, personal meeting, phone call, teleconference, or videoconference).

9. The term "Confidential Information" means the term as defined in § 5 of the Employment Agreement attached as Exhibit 1 to the Amended Complaint, including "non-public information about Company sponsors and partners, race strategy, engineering information, race car set-ups, pit crew training methods and practices, pit crew analytics, technology and strategy, wind tunnel data and testing of any kind, trade secrets and any Company information that is proprietary or not publicly known," as well as any other information You contend is confidential in this Litigation.

10. The term "Data" means any information, electronic data, forensic artifacts, or digital information, and explicitly incorporates by reference the definition for "Document" as defined herein.

11. The terms "DLP Report" and "DLP Program" mean any logs, audit logs, reports, analyses, trackers, or other Documents that are in JGR's possession, custody, or control and reflect electronic activity, track user activity, retain digital forensic artifacts or information, or otherwise record the occurrence of a digital event, the time at which the event occurred, the responsible user or service, and the impacted entity.

12. The term "Document" means any written or graphic matter of every kind and description however produced or reproduced, whether draft or final, original or reproduction, internal or otherwise, whether stored in tangible, electric, mechanical, or electronic form or representation of any kind (including (i) electronically stored information on or in computer tapes, disks, CDs, DVDs, hard drives, removable disk drives, flash drives, mp3 devices, cellular telephones, smartphones, personal data assistants (PDAs), tablet devices, and any other devices capable of storing electronic information, and (ii) backup copies and

3

"deleted" information contained on or in any computer or device capable of storing electronic information), whether located on-site or off-site, including, but not limited to, letters, correspondence, electronic mail, text messages, instant messages, SMS communications, website pages, website postings, social media postings, blog postings, memoranda (internal or otherwise), minutes, notes (whether typed or handwritten), films, recordings of any type, transcripts, contracts, memoranda and/or notes of telephone conversations, personal conversations or meetings, diaries, desk calendars, telegrams, circulars, pamphlets, manuals, statements, notices, reports, telexes, interoffice or intra-office communications, minutes of meetings, reports, studies, tests, and the underlying data of any reports, studies or tests, books or records of accounts, bank account records, checks, bank drafts, invoices, requisitions, microfilms, movies, slides, photographs, data stored in any computer media, computer runs or printouts, tabulations, charts, guides, outlines, summaries, abstracts, plans, drawings, specifications, blueprints, graphs, drafts and/or non-identical copies of any one or more of the foregoing, and copies of documents showing names of, or otherwise identifying, recipients whose names are not shown on the originals or on other copies, or material similar to any of the foregoing, however denominated and by whomever prepared and to whomever addressed. For the avoidance of doubt, the term "Documents" incorporates by reference the term "Communications," such that a request for any "Documents" responsive to a request means that any "Communications" regarding or involving the requested subject matter should also be produced.

13.     The term "Forensic Investigation" means any review, analysis, or examination of electronic systems, devices, cloud accounts, or data undertaken by or on behalf of JGR relating to Gabehart, Spire, or alleged misappropriation, including the work described in Paragraphs 67–81, 87, and 90–101 of the Amended Complaint, and any work by third-party forensic vendors.

14. The terms "including," "includes," and "include" mean including, includes, and include without limitation. Under no circumstances should the use of any of the above words in any Request be construed to limit the scope of the Request.

15. The term "Litigation" means the lawsuit *Joe Gibbs Racing, LLC v. Gabehart, et al.*, Case No. 3:26-cv-00133-SCR-DCK, pending before this Court.

16. The term "OneDrive" refers to any cloud-based storage account (whether Microsoft OneDrive or shared servers) that are made available to JGR employees for business purposes by JGR.

17. The term "Person" means a natural person or any entity viewed by the law as having legal personhood.

18. The terms "relating to," "related to," "concerning," and all thereof mean relating to, related to, referring to, reflecting, concerning, supporting, contradicting, undercutting, or pertaining to in any manner, logically, factually, indirectly, or directly to the matter discussed.

19. The term "Trade Understanding" refers to the understanding between JGR and Spire that Spire would agree to mutually terminate Robert Smith's contract, which would allow him to begin working for JGR immediately—in exchange for JGR extending the same waiver for an employee that Spire would identify in the future, or $100,000, to be completed by the end of 2025.

20. To the extent not otherwise defined, all words shall have their usual and ordinary meaning as the context of the Request would indicate.

21. The use of the singular form of any word includes the plural, and the use of the plural form of any word includes the singular.

5

22.     Whenever a defined term is used, its definition as stated herein applies, regardless of whether the term capitalized or lowercased.

23.     The use of the past tense includes the present tense, and vice versa, as necessary to bring within the scope of each Request all responses that might otherwise be considered outside its scope.  Whenever a term is used in the present, past, future, subjunctive, or other tense, voice, or mood, it shall also be construed to include all other tenses, voices, or moods.

## INSTRUCTIONS

1.     Unless otherwise specified herein, the time period applicable to these Requests is January 1, 2025, through the present.

2.     Produce all responsive Documents in Your possession, custody, or control. Documents within Your possession, custody, or control include, but are not limited to, documents in the possession, custody, or control of any of Your agents, attorneys, advisors, and representatives, or other person acting or purporting to act on Your or their behalf.  A document is deemed to be in Your possession, custody, or control if it is in Your physical custody, or if it is in the physical custody of any other person or entity and You: (i) own such document in whole or in part; (ii) have a right, by contract, statute, or otherwise, to use, inspect, examine, or copy such document on any terms; (iii) have an understanding, express or implied, that You may use, inspect, examine, or copy such document when you seek to do so, or (iv) as a practical matter, have been able to use, inspect, examine or copy such document on any terms.

3.     As the term "possession" pertains to e-mail, the term includes, but is not limited to, e-mail contained in Your electronic e-mail directories containing (i) "deleted" e-mails which have not been permanently deleted, including all subdirectories irrespective of the title of such subdirectories; (ii) "sent" e-mails, including all subdirectories irrespective of the title of such

6

subdirectories; and (iii) "received" e-mails, including all subdirectories irrespective of the title of such subdirectories.

4. If, in responding to any of these Requests, You encounter any ambiguity in construing either the Request or a definition or instruction relevant to it, set forth the matter deemed ambiguous and the construction selected or used in responding to the request.

5. Produce all Documents as they are kept in the normal course of business, in accordance with Rule 34(b) of the Federal Rules of Civil Procedure. All Documents should be Bates-stamped.

6. These Requests are continuing in character and require further production if additional Documents are obtained or located after the time of the initial production.

7. In the event You seek to withhold any document, thing, or information on the basis that it is properly entitled to some privilege or other limitation of discovery, You shall produce as much of the document concerned as to which no claim of privilege or other limitation of discovery is made. With respect to documents or portions of documents for which a claim of privilege or other limitation of discovery is made, You are instructed to provide a numerical list of the document(s) and thing(s) for which a privilege or limitation is claimed that (1) identifies the nature of the privilege or limitation (including work product) asserted and, if the privilege or limitation is governed by state law, indicate the state of the privilege rule or other limitation invoked; and (2) provides the following information in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged or otherwise protected information: (i) the type of document; (ii) the name and capacity of each author and recipient of the document; (iii) the general subject matter of the document in a manner sufficient to support the privilege or other protection claimed; (iv) the date of the document; and (v) the same information referenced in (i)-(iv) above for each enclosure or attachment to each listed

7

document if the enclosure or attachment is also withheld from production. Notwithstanding the assertion of any privilege or other protection, any requested document that contains responsive, non-privileged or protected information should be produced, but that portion of the document for which the privilege or other protected is asserted may be redacted, provided that the redacted portion is identified and described consistently according to the requirements listed herein.

8.     If any meaning of any term in any Request herein is unclear to You, without waiver of the right to seek a full and complete response to the Request, You shall assume a reasonable meaning, state what the assumed meaning is, and respond to the Request according to the assumed meaning.

9.     Unless and until the parties reach an agreement concerning the form of production of electronically stored information ("ESI"), ESI is to be produced in a single-page TIFF format, with an Opticon load file demarcating document breaks, and a Concordance compatible load file with relevant metadata (defined in the following instruction), except that Excel or other ESI file types that cannot easily be converted to images (video, audio, proprietary, etc.) are to be produced in native format. For each document produced in native format, a bates-numbered placeholder document with the text "Document Produced in Native Format" or similar text shall be included with the production and the native file shall be named with the bates number for the corresponding placeholder. Word documents shall be produced reflecting track changes and comments, if any, and PowerPoint documents and other presentations shall be produced with speaker notes and hidden slides. Extracted Text/OCR are to be provided as document-level text files. Responsive non-ESI documents are to be produced: (a) in a single-page TIFF format, with an Opticon load file demarcating document breaks, and containing searchable document text (that is, OCR data), (b) in a manner that reflects physical boundaries such as boxes, folders, tabs, etc., and (c) in a manner which reflects the document custodian. OCR is to be provided as document level text files. Spire

8

reserves the right to request that certain Documents be produced in additional forms, including native form if reasonably necessary.

10. Unless and until the parties reach an agreement concerning the form of production of ESI, You must provide the following metadata for all ESI produced, to the extent such metadata exists: Custodian, File Path, Email Subject, Conversation Index, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Time Received, All Custodians, Filename, Author, Date Created, Date Modified, MD5 Hash, File Size, File Extension, Control Number Begin, Control Number End, Attachment Begin, and Attachment End (or equivalent thereof), Confidentiality, Time Zone, Text Link, Native Link, Redaction [yes/no].

11. You shall conduct a reasonable search of all locations where responsive ESI and Documents are reasonably likely to be found, including but not limited to: JGR-issued laptops and mobile devices for Gabehart and relevant custodians; JGR email servers; JGR OneDrive, SharePoint, and other cloud repositories. Your written responses shall identify the custodians and primary data sources searched.

12. For any Request seeking Documents concerning Allegedly Misappropriated Information, You must identify, by Bates number or other unique identifier, the specific Documents You contend constitute or contain each such trade secret and the specific portion(s) of each Document that You contend are trade secret or confidential.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:** All non-privileged written agreements between You and Gabehart, whether formally executed or not, including all drafts of (a) any written employment agreements and amendments, and (b) any proposed separation agreement referenced in Paragraph 61 of the Amended Complaint, and all related term sheets, redlines, or comments. This Request

9

includes all non-privileged Communications relating to any such agreements between You and Gabehart, including any non-privileged Communications regarding the scope or enforceability of any non-competition, non-solicitation, or confidentiality provisions.

**REQUEST FOR PRODUCTION NO. 2:** Gabehart's complete personnel file, and all non-privileged Documents relating to his employment at JGR, including performance evaluations, promotion records, job descriptions, disciplinary records, complaints, notes concerning his duties, responsibilities, and authority, and handbook, policies, confidentiality agreements or codes of conduct JGR contends governed his use of confidential information or trade secrets, together with any acknowledgments or certifications signed by Gabehart.

**REQUEST FOR PRODUCTION NO. 3:** All non-privileged Documents that You contend constitute or contain any Allegedly Misappropriated Information. The production shall allow identification of: (a) the custodian; (b) creation date(s); and (c) metadata showing access, modification, or transmission. For each such Document, identify, by Bates number or other unique identifier, the specific portion(s) You contend constitute trade secret or Confidential Information.

**REQUEST FOR PRODUCTION NO. 4:** All non-privileged Documents that You may use, rely upon, or refer to in support of any claim, allegation, or theory asserted in the Amended Complaint, including Documents that You contend support Your allegations of misappropriation, breach, or damages.

**REQUEST FOR PRODUCTION NO. 5:** All non-privileged Documents reflecting or relating to any Forensic Investigation into whether Gabehart downloaded, transferred, accessed, or stored any JGR Documents or Data on any personal device, personal email account, personal cloud-based storage account, or other non-JGR system, including without limitation:

10

(a) all forensic chain-ofanalyses, reports, workpapers, DLP Reports, logs, screenshots, and other Data for any device or account JGR alleges Gabehart used to misappropriate information (including his JGR-issued laptop and JGR-sponsored OneDrive);

(b) Documents sufficient to show all instances in which Gabehart backed up any JGR cloud-based storage account that JGR authorized him to use (including OneDrive) or downloaded/transferred files from any such JGR cloud-based storage account to an external device or cloud-based storage account for the period October 1, 2025, to the present; and

(c) Documents sufficient to show any wiping, destruction, failure to preserve, or deletion of data from any JGR-issued device used by Gabehart, including chain-of-custody records and internal investigations concerning such wiping, destruction, or deletion.

**REQUEST FOR PRODUCTION NO. 6:** Documents sufficient to show all policies, procedures, or protocols governing the use of any systems, devices, or software that JGR uses to monitor, control, limit, minimize, detect, or otherwise stop the misappropriation, extraction, downloading, or taking of its trade secrets and/or confidential information , including but not limited to any such procedures or protocols relating to JGR's use of OneDrive, SharePoint, or any other cloud storage system (including downloading, external sharing, and syncing with personal devices).

**REQUEST FOR PRODUCTION NO. 7:** Documents sufficient to show all steps JGR takes to maintain the confidentiality of, and to protect against or monitor the extraction, downloading, sharing, or taking of, any trade secrets or confidential information, including but not limited to Documents sufficient to show:

(a) categories of employees whose activities are monitored by JGR's systems, devices, or software referenced in the preceding Request;

(b) the schedule or frequency with which JGR monitors the inflow or outflow of its confidential data, information, documents, or trade secrets; and

(c) the frequency and manner in which JGR reviews any reports generated as a result of such monitoring.

**REQUEST FOR PRODUCTION NO. 8:** Documents sufficient to show any agreements, contracts, or nondisclosure agreements that required any third party (including, without limitation, sponsors, original equipment manufacturers (OEMs), vendors, consultants, or other teams) who received access to any Allegedly Misappropriated Information at any time before October 1, 2025, to maintain the confidentiality or secrecy of such information. This Request includes Documents sufficient to show any instance in which any Allegedly Misappropriated Information was shared with, accessed by, or accessible to any third party (including, but not limited to, Toyota/TRD, sponsors, vendors, OEMs, consultants, or other teams) or the public generally at any time before October 1, 2025.

**REQUEST FOR PRODUCTION NO. 6:** All non-privileged Documents relating to any investigation, inquiry, or analysis by or for JGR regarding the alleged misappropriation, acquisition, use, or disclosure of any Allegedly Misappropriated Information by Gabehart, Spire, or any other Person, including all Documents relating to any allegation that Spire acquired, used, or benefitted from any Allegedly Misappropriated Information.

**REQUEST FOR PRODUCTION NO. 7**: All Documents sufficient to show the economic value of the Allegedly Misappropriated Information and the role that such information allegedly plays in JGR's ability to obtain or maintain a competitive advantage in the NASCAR Cup Series or any other racing series, including, but not limited to, any alliance agreements evidencing the type of information JGR provides to its alliance partners and the value of that information

12

**REQUEST FOR PRODUCTION NO. 11**: All non-privileged Documents relating to the rationale(s) or reason(s) given by or within JGR for Gabehart's departure from JGR, and all non-privileged Communications between JGR employees regarding Gabehart's departure from JGR for the period January 1, 2025, to the present.

**REQUEST FOR PRODUCTION NO. 12:** Documents sufficient to show which aspects of JGR's sponsor relationships (categories, spend ranges, activation elements) are shared with or visible to other teams, agencies, OEMs, or sponsors, including any Documents showing the extent to which such information is treated as confidential versus routinely shared, for the period January 1, 2020, to the present.

**REQUEST FOR PRODUCTION NO. 13:** All non-privileged Documents and Communications, from January 1, 2025, to the present, between JGR (including its owners, officers, and employees) and any third party, including but not limited to sponsors, NASCAR, other teams, manufacturers, agencies, and media, relating to:

(a) this Litigation;

(b) the allegations in the Amended Complaint; or

(c) any declaration, affidavit, or written statement JGR requested, drafted, or obtained from any third party concerning Spire, Gabehart, or any alleged misappropriation of JGR's information.

This Request includes, without limitation, all non-privileged Documents and Communications with Bob Jenkins, NASCAR, and any other third party in which JGR accused or suggested that Spire cheated, stole JGR's trade secrets, or otherwise engaged in unlawful or unethical conduct, and all Documents relating to any declarations, affidavits, or written statements that JGR requested

13

or obtained from Jenkins or other third parties regarding Spire, Gabehart, or the allegations in this case.

**REQUEST FOR PRODUCTION NO. 14:** All Documents relating to any harm or damages You allege You have suffered as a result of the actions of Gabehart or Spire. This Request includes all Documents relating to any effort You made to mitigate any damages You contend You suffered as a result of the actions of Gabehart or Spire.

**REQUEST FOR PRODUCTION NO. 15:** Documents sufficient to show Your efforts (or lack thereof) to enforce any other non-solicitation, non-compete, or employment agreement between You and any former or current JGR employee since January 1, 2018, including any lawsuits or pre-litigation demands.

**REQUEST FOR PRODUCTION NO. 16:** All non-privileged Documents and Communications between and among JGR employees or personnel from January 1, 2025, to the present related to:

   (a) the Trade Understanding;

   (b) Ty Gibbs' performance on track;

   (c) Gabehart's role as Competition Director at JGR; and

   (d) Gabehart's role as Crew Chief for the JGR No. 54 Car.

**REQUEST FOR PRODUCTION NO. 17:** All prior versions of the document produced as JGR_0000251 in this Litigation, including Documents showing any efforts to preserve, retrieve, or recover original and prior versions.

**REQUEST FOR PRODUCTION NO. 18:** Documents sufficient to show any penalties, sanctions, or formal findings imposed by NASCAR on JGR for violations of NASCAR rules or regulations relating to competition, car conformity, or use of competitors' information for the period January 1, 2021, through the present, including Documents sufficient to show any instance

in which NASCAR or JGR determined that JGR used information or data belonging to any of its competitors.

**REQUEST FOR PRODUCTION NO. 19:** All non-privileged Documents and Communications between JGR and Reliance Forensics, LLC (and its agents and representatives) relating to this Litigation, any Forensic Investigation concerning Gabehart or Spire, or any Allegedly Misappropriated Information.

**REQUEST FOR PRODUCTION NO. 20:** All non-privileged Documents and Communications not previously produced that:

(a) refer or relate to any allegation that Spire acquired, used, or benefitted from any Allegedly Misappropriated Information;

(b) refer or relate to JGR's contentions regarding the impact of any alleged misappropriation on Spire's competitive performance, including any analyses comparing JGR's and Spire's results before and after November 2025; or

(c) refer or relate to any statements by JGR personnel about Spire's "cheating," "stealing," or other alleged misconduct that are not encompassed by earlier Requests.

15

Dated: May 11, 2026.

By: */s/ Joshua D. Davey*

Joshua D. Davey
N.C. Bar No. 35246
Lawrence J. Cameron
N.C. Bar No. 41922
Troy C. Homesley, III
N.C. Bar No. 62148
**TROUTMAN PEPPER LOCKE LLP**
301 S. College St., 34th Floor
Charlotte, NC 28202
Telephone: (704) 916-1503
joshua.davey@troutman.com
lawrence.cameron@troutman.com
troy.homesley@troutman.com

John S. "Evan" Gibbs III – Pro Hac Vice
**TROUTMAN PEPPER LOCKE LLP**
600 Peachtree St, NE #3000
Atlanta, GA 30308
Telephone: (404) 885-3093
evan.gibbs@troutman.com

16

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and exact copy of the foregoing was served via electronic mail on May 11, 2026, upon the following:

Sarah F. Hutchins (NC Bar No. 38172)
Tory Ian Summey (NC Bar No. 46437)
Keith M. Weddington (NC Bar No. 14352)
Charles G. Middlebrooks (NC Bar No. 55171)
Madelyn R. Candela (NC Bar No. 63827)
PARKER POE ADAMS & BERNSTEIN LLP
Bank of America Tower
620 S. Tryon St., Suite 800
Charlotte, NC 28202
Telephone: (704) 916-1503
sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com

Danielle T. Williams (NC Bar No. 23283)
KING & SPAULDING LLP
300 S. Tryon St., Suite 1700
Charlotte, NC 28202
dwilliams@kslaw.com

Thomas M. Melsheimer – *pro hac vice*
Chad B. Walter – *pro hac vice*
Tracea Rice – *pro hac vice*
Alexandra Moore – *pro hac vice*
KING & SPAULDING LLP
2601 Olive St., Suire 2300
Dallas, TX 75201
tmelsheimer@kslaw.com
cwalker@kslaw.com
trice@kslaw.com
almoore@kslaw.com

*Attorneys for Plaintiff Joe Gibbs Racing, LLC*

Cary B. Davis (NC Bar No. 36172)
Spencer T. Wiles (NC Bar No. 53664)
William M. Miller (NC Bar No. 36946)
Anna Claire Tucker (NC Bar No. 59457)
ROBINSON, BRADSHAW & HINSON, P.A.
600 S. Tryon St., Suite 2300
Charlotte, NC 28202
cdavis@rbh.com
swiles@rbh.com
wmiller@rbh.com
atucker@rbh.com

*Attorneys for Defendant Chrisopher Gabehart*

*/s/ Joshua D. Davey*

17