# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### Case No. 3:26-CV-00133-SCR-DCK

| | |
|---|---|
| JOE GIBBS RACING, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>CHRISTOPHER GABEHART and SPIRE MOTORSPORTS, LLC,<br><br>        Defendants. | **PLAINTIFF'S SECOND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANT SPIRE MOTORSPORTS, LLC'S FIRST SET OF INTERROGATORIES** |

Plaintiff Joe Gibbs Racing, LLC ("JGR") hereby provides its second supplemental responses and objections to Defendant Spire Motorsports, LLC's ("Spire") First Set of Interrogatories, dated May 11, 2026 (the "Interrogatories").

## GENERAL RESPONSES AND OBJECTIONS

The following General Responses and Objections are incorporated into each specific objection and response as if fully set forth therein:

1. JGR's responses are based on information presently known to JGR after its diligent and best efforts to respond to Spire's Interrogatories based on the investigation it has conducted to date. There may be information relating to the subject matter of Spire's Interrogatories that JGR has not yet located, identified, or reviewed, despite JGR's diligent and best efforts to do so. Accordingly, JGR reserves the right to rely on facts, documents, or other information that may develop or subsequently come to its attention and to supplement the general and specific objections and responses to Spire's Interrogatories as required by the Federal Rules of Civil Procedure.

2. JGR objects to certain Interrogatories to the extent they seek information protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable privilege

1

or immunity from discovery. JGR hereby claims such privileges and protections and excludes privileged or protected information from its responses. Any disclosure of such privileged or protected information is inadvertent and is not intended to waive those privileges or protections. In the event that a response that is privileged or exempt from disclosure is provided by JGR, it will have been provided inadvertently and shall not constitute a waiver of applicable privileges and/or protections.

3.     JGR objects to the use of compound Interrogatories that include subparts that should be treated as distinct interrogatories for purposes of compliance with the Court's Scheduling Order. When each subpart is properly counted as a distinct interrogatory, Spire's total number of interrogatories far exceeds the limit of 25 interrogatories permitted by the Court.

4.     JGR objects to the definition of the term "Spire" in that it refers to Spire Motorsports, LLC rather than Spire Motorsports II, LLC, the intended Defendant, as reflected in JGR's Motion for Leave to Amend First Amended Complaint (Dkt. 84).

5.     JGR objects to each Interrogatory to the extent it seeks information irrelevant to the issues raised in this lawsuit, is not reasonably calculated to lead to the discovery of admissible evidence, or is otherwise inconsistent with or enlarges upon the Federal Rules of Civil Procedure.

6.     JGR objects to the Interrogatories that constitute contention interrogatories on the basis that they are premature and do not require a response at this time.

7.     JGR objects to each Interrogatory to the extent it is vague, ambiguous, overbroad, unduly burdensome, oppressive, exceeds the bounds of the discovery limits set in this case, or otherwise not reasonably limited in time or scope, or not proportional to the needs of the case.

8. JGR objects to each Interrogatory to the extent it requests information or materials not in JGR's possession, custody, or control, and not in the possession of persons or entities that are under JGR's control.

9. JGR objects to each Interrogatory to the extent it requests information or materials that have already been provided to Spire or are in Spire's possession, custody, or control.

10. JGR objects to each Interrogatory to the extent it is not limited in scope or in time and is therefore overbroad, unduly burdensome, and not proportional to the needs of the case.

11. JGR objects to the definition of the terms "Plaintiff," "JGR," and "You" as overbroad and unduly burdensome in that it includes Joe Gibbs Racing, LLC's "present or former members, officers directors, shareholders, employees, or agents," as well as "agents, vendors, [and] independent contractors," which are not properly identified and so numerous as to impose a burden not required by the Federal Rules of Civil Procedure, the Local Rules, or any applicable Court Order. JGR further objects to the definition of the terms "Plaintiff," "JGR," and "You" as vague and ambiguous in that it circularly includes "agents, vendors, independent contractors engaged, or any entities engaged by You to provide services to You."

12. JGR objects to the definitions of "identify" to the extent they impose a burden not required by the Federal Rules of Civil Procedure. JGR will interpret "identify" within its ordinary meaning and understanding, and will provide sufficient information, to the extent known by JGR, to allow Gabehart to unambiguously ascertain the identity of the referenced document, individual, or entity.

13. JGR objects to the definition of "relating to," "relate to," and "concerning" as overbroad and unduly burdensome in that it imposes a burden not required by the Federal Rules

3

of Civil Procedure. JGR will interpret "relating to," "relate to," and "concerning" within their normally understood and intended meanings.

14. JGR objects to the definition of the term "Trade Understanding" in that it refers to an understanding that JGR does not agree existed.

15. JGR objects to the defined term "Allegedly Misappropriated Information" in that it characterizes as "alleged" the admitted misappropriation of JGR's trade secrets and confidential information, the full extent of which is currently unknown.

16. JGR objects to the definitions of "Document" and "Communication" to the extent they impose a burden not required by the Federal Rules of Civil Procedure. JGR will interpret "Document" and "Communication" within their ordinary meaning and understanding and in accordance with the requirements of the Federal Rules of Civil Procedure.

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1:** Identify all Persons who have or are likely to have knowledge or information concerning the allegations in the Amended Complaint. For each such Person:

    (a)    state the Person's full name, title, current or last known employer, and last known address and telephone number;

    (b)    identify the specific claim(s) or paragraph(s) of the Amended Complaint about which the Person has knowledge (by paragraph number);

    (c)    describe in detail the subject matter and substance of the Person's knowledge; and

    (d)    identify any Documents that contain or reflect statements by or about that Person relating to this Litigation (including written statements, recorded interviews, declarations, deposition testimony, or court testimony).

**ANSWER:** In addition to the foregoing General Objections, which are incorporated herein by reference, JGR objects to this Interrogatory as overbroad and unduly burdensome in that it would impose a burden not required by the Federal Rules of Civil Procedure, the Local Rules, or any applicable Court Order. JGR objects to the use of the defined terms "Document," "identify"

4

and "relating to" to the extent they are interpreted to impose a burden not required by the Federal Rules of Civil Procedure, and will interpret the terms within their ordinary meaning and understanding. JGR further objects to this Interrogatory to the extent it seeks information equally known to Spire Motorsports II, LLC, Christopher Gabehart, or other persons aligned with Defendants. Subject to and without waiving those objections, and supplementing JGR's Rule 26(a) initial disclosures, JGR responds as follows.

Unless otherwise stated below, for JGR-affiliated witnesses the last known contact information is through counsel for JGR; for Spire-affiliated witnesses it is through counsel for Spire; and for Gabehart and his spouse it is through counsel for Gabehart. JGR's current disclosures identify those contact routes and the witness summaries incorporated below.

**Joe Gibbs, founder and owner of JGR, JGR.**

Claims/paragraphs: Allegations concerning JGR's business and operations, the value and confidentiality of JGR's trade secrets, Gabehart's role and employment agreement, the November 6, 2025 meeting, the contemplated separation, the reasons for JGR's response to Gabehart's conduct, and the claims for breach of contract, trade secret misappropriation, and injunctive relief.

Substance of knowledge: Joe Gibbs has knowledge concerning JGR's business and operations; the competitive dynamics of NASCAR; the importance of keeping racecar setups, strategies, and trade secrets confidential; Gabehart's employment agreement; negotiations concerning a mutual separation; the November 6, 2025 meeting and the reasons for JGR's response to Gabehart's conduct.

Documents reflecting statements by/about witness: JGR is not presently aware of any non-privileged responsive documents that contain or reflect statements by or about this witness within the meaning of Interrogatory No. 1(d). JGR will supplement this response if additional responsive materials are identified.

**Heather Gibbs, co-owner of JGR, JGR.**

Claims/paragraphs: Allegations concerning JGR's operations, the confidentiality and competitive value of trade secrets, Gabehart's role at JGR, his employment agreement, the separation discussions, and the contract- and trade-secret-based claims.

Substance of knowledge: Heather Gibbs has familiarity with JGR's business and operations and may have knowledge of the NASCAR industry, the competitive dynamics between teams, the

5

importance of confidentiality of racecar setups and strategies, Gabehart's role at JGR, his employment agreement, and negotiations concerning a mutual separation agreement.

Documents reflecting statements by/about witness: JGR is not presently aware of any non-privileged responsive documents that contain or reflect statements by or about this witness within the meaning of Interrogatory No. 1(d). JGR will supplement this response if additional responsive materials are identified.

**Eric Schaffer, Executive Vice President, Chief Commercial Officer, and in-house counsel, JGR.**

Claims/paragraphs: Allegations concerning JGR's legal affairs, notice to Spire regarding Gabehart's restrictive covenants, and the tortious-interference and breach-of-contract claims.

Substance of knowledge: JGR disclosed that Eric Schaffer may have knowledge concerning Gabehart's employment agreement with JGR, negotiation of a proposed mutual separation agreement with Gabehart, and notice to Spire that Gabehart's employment there would violate his JGR agreement.

Documents reflecting statements by/about witness: JGR is not presently aware of any non-privileged responsive documents that contain or reflect statements by or about this witness within the meaning of Interrogatory No. 1(d). JGR will supplement this response if additional responsive materials are identified.

**David Alpern, President, JGR.**

Claims/paragraphs: Allegations concerning Gabehart's role and responsibilities at JGR, his representations concerning prospective employment with Spire, and the allegations that his eventual role at Spire overlapped with his JGR role.

Substance of knowledge: David Alpern may have knowledge concerning Gabehart's role and responsibilities as Competition Director and his representations to JGR concerning his potential employment at Spire.

Documents reflecting statements by/about witness: JGR is not presently aware of any non-privileged responsive documents that contain or reflect statements by or about this witness within the meaning of Interrogatory No. 1(d). JGR will supplement this response if additional responsive materials are identified.

**Toni Rogers, Chief People Officer, JGR.**

Claims/paragraphs: Allegations concerning Gabehart's employment and compensation, the restrictive covenant, the separation discussions, and the alleged "Trade Understanding."

Substance of knowledge: Toni Rogers may have knowledge concerning Gabehart's employment and compensation at JGR and the alleged "Trade Understanding" between JGR and Spire.

PPAB 13992757v3

Documents reflecting statements by/about witness: JGR is not presently aware of any non-privileged responsive documents that contain or reflect statements by or about this witness within the meaning of Interrogatory No. 1(d). JGR will supplement this response if additional responsive materials are identified.

**Polly Crisson, Payroll and Benefits Manager, JGR.**

Claims/paragraphs: Allegations concerning Gabehart's JGR employment and compensation, including factual matters associated with compensation and payroll information.

Substance of knowledge: Polly Crisson may have knowledge concerning Gabehart's employment and compensation at JGR.

Documents reflecting statements by/about witness: JGR is not presently aware of any non-privileged responsive documents that contain or reflect statements by or about this witness within the meaning of Interrogatory No. 1(d). JGR will supplement this response if additional responsive materials are identified.

**Tim Carmichael, Chief Financial Officer, JGR.**

Claims/paragraphs: Allegations concerning Gabehart's employment agreement, the proposed mutual separation agreement with Gabehart, compensation-related issues, and allegations relating to JGR's handling of his departure.

Substance of knowledge: JGR disclosed that Tim Carmichael may have knowledge concerning the employment agreement and negotiations concerning a mutual separation agreement.

Documents reflecting statements by/about witness: JGR is not presently aware of any non-privileged responsive documents that contain or reflect statements by or about this witness within the meaning of Interrogatory No. 1(d). JGR will supplement this response if additional responsive materials are identified.

**Walter Brown, Competition Director, JGR.**

Claims/paragraphs: Allegations concerning the role of Competition Director, the nature and value of JGR's trade secrets, the steps JGR takes to protect them, the files and materials Gabehart took, and the overlap between Gabehart's JGR duties and his role at Spire.

Substance of knowledge: Walter Brown may have knowledge concerning the scope of the Competition Director role, Gabehart's role and responsibilities, the importance of confidentiality in NASCAR, JGR's trade secrets, steps JGR takes to maintain secrecy, and the files Gabehart took. Walter Brown also has knowledge of the categories of race setup, analytics, payroll, sponsorship, and other trade-secret materials at issue.

Documents reflecting statements by/about witness: JGR is not presently aware of any non-privileged responsive documents that contain or reflect statements by or about this witness within the meaning of Interrogatory No. 1(d). JGR will supplement this response if additional responsive materials are identified.

PPAB 13992757v3

**Todd Berrier, Director of Production, Fabrication, and Vehicle Assembly, JGR.**

Claims/paragraphs: Allegations concerning Gabehart's recruitment or hiring by Spire and related factual allegations concerning the timeline of his transition.

Substance of knowledge: Todd Berrier may have knowledge concerning Gabehart's recruitment and hiring by Spire.

Documents reflecting statements by/about witness: JGR is not presently aware of any non-privileged responsive documents that contain or reflect statements by or about this witness within the meaning of Interrogatory No. 1(d). JGR will supplement this response if additional responsive materials are identified.

**Dennis "Denny" Hamlin, driver, JGR.**

Claims/paragraphs: Allegations concerning the Competition Director role, JGR's confidential information and trade secrets, the importance of confidentiality in NASCAR, and damages or competitive harm flowing from misuse of those materials.

Substance of knowledge: Dennis Hamlin may have knowledge concerning Gabehart's role and responsibilities at JGR, JGR's confidential information and trade secrets, and the importance of confidentiality of racecar setups and strategies.

Documents reflecting statements by/about witness: JGR is not presently aware of any non-privileged responsive documents that contain or reflect statements by or about this witness within the meaning of Interrogatory No. 1(d). JGR will supplement this response if additional responsive materials are identified.

**Clark Walton, principal digital forensics expert, Reliance Forensics, LLC.**

Claims/paragraphs: Allegations concerning the forensic analysis of Gabehart's devices, the discovery of the "Spire" folder, the materials located there, and the timing and nature of the forensic review.

Substance of knowledge: Clark Walton has knowledge concerning facts related to the forensic analysis of Gabehart's devices and accounts

Documents reflecting statements by/about witness: JGR is not presently aware of any non-privileged responsive documents that contain or reflect statements by or about this witness within the meaning of Interrogatory No. 1(d). JGR will supplement this response if additional responsive materials are identified.

**Edgar Fritz, forensic examiner, Reliance Forensics, LLC.**

Claims/paragraphs: Same forensic-allegation categories identified for Clark Walton.

Substance of knowledge: Edgar Fritz has knowledge concerning facts related to the forensic analysis of Gabehart's devices and accounts.

PPAB 13992757v3

Documents reflecting statements by/about witness: JGR is not presently aware of any non-privileged responsive documents that contain or reflect statements by or about this witness within the meaning of Interrogatory No. 1(d). JGR will supplement this response if additional responsive materials are identified.

**Ryan Simpson, Private Investigator Associate, Barefoot Private Investigations.**

Claims/paragraphs: Allegations concerning the December 2, 2025 meeting between Gabehart and Jeffrey Dickerson.

Substance of knowledge: Ryan Simpson may have information concerning the meeting between Gabehart and Dickerson on December 2, 2025.

Documents reflecting statements by/about witness: JGR is not presently aware of any non-privileged responsive documents that contain or reflect statements by or about this witness within the meaning of Interrogatory No. 1(d). JGR will supplement this response if additional responsive materials are identified.

**Christopher Gabehart, Chief Motorsports Officer, Spire.**

Claims/paragraphs: Virtually all factual allegations and claims concerning his JGR role, his confidentiality and noncompete obligations, the November 2025 events, the "Spire" folder, the forensic findings, misappropriation of JGR confidential information and trade secrets, his recruitment and hiring by Spire, any use or disclosure of JGR trade secrets and/or confidential information to Spire, any solicitation of JGR employees, the trade secret claims, breach-of-contract claim, and injunctive-relief claim.

Substance of knowledge: Gabehart has knowledge concerning his actions with respect to JGR's confidential information and trade secrets, his employment agreement, his role at JGR, and his role at Spire, laptop-screen photos taken on November 7, 2025, syncing a personal Google Drive containing a folder titled "Spire," retaining multiple categories of JGR confidential materials, and later assuming the role of Chief Motorsports Officer at Spire.

Documents reflecting statements by/about witness: JGR is not presently aware of any non-privileged responsive documents that contain or reflect statements by or about this witness within the meaning of Interrogatory No. 1(d). JGR will supplement this response if additional responsive materials are identified.

**Spire Motorsports II, LLC.**

Claims/paragraphs: Allegations that Spire is a direct competitor, recruited and hired Gabehart, possessed or used JGR trade secrets or benefits derived from them, knew of his restrictive covenants, and tortiously interfered with his JGR agreement.

Substance of knowledge: Spire has knowledge concerning the NASCAR industry, Gabehart's actions with respect to JGR's confidential information and trade secrets, whether Spire possesses or has used JGR confidential information or information derived from it, its knowledge of Gabehart's restrictive covenant, and his recruiting, hiring, employment, and role there.

9

Documents reflecting statements by/about witness: JGR is not presently aware of any non-privileged responsive documents that contain or reflect statements by or about this witness within the meaning of Interrogatory No. 1(d). JGR will supplement this response if additional responsive materials are identified.

**Jeffrey Dickerson, co-owner of Spire.**

Claims/paragraphs: Allegations concerning recruitment and hiring of Gabehart, knowledge of the JGR agreement, the December 2, 2025 meeting, and whether Spire possessed or used JGR information.

Substance of knowledge: Jeffrey Dickerson may have knowledge concerning Gabehart's actions with respect to JGR's confidential information and trade secrets, whether Spire possesses or has used JGR information, Gabehart's employment agreement with JGR, Spire's knowledge of his restrictive covenants, and his recruiting, hiring, and role at Spire. Personal meetings between Dickerson and Gabehart, including the meeting on December 2, 2025.

Documents reflecting statements by/about witness: JGR is not presently aware of any non-privileged responsive documents that contain or reflect statements by or about this witness within the meaning of Interrogatory No. 1(d). JGR will supplement this response if additional responsive materials are identified.

**Dan Towriss, Chief Executive Officer of TWG Motorsports, a co-owner of Spire.**

Claims/paragraphs: Allegations concerning whether Spire possessed or used JGR information; knowledge of Gabehart's restrictive covenants; and his recruitment, hiring, and role at Spire.

Substance of knowledge: Dan Towriss may have knowledge concerning whether Spire possesses or has used JGR confidential information or information derived from it, Gabehart's employment agreement, Spire's knowledge of the restrictive covenants, and his recruitment, hiring, and role at Spire.

Documents reflecting statements by/about witness: JGR is not presently aware of any non-privileged responsive documents that contain or reflect statements by or about this witness within the meaning of Interrogatory No. 1(d). JGR will supplement this response if additional responsive materials are identified.

**Matt McCall, Competition Director, Spire; Dax Gerringer, Technical Director, Spire; Ryan Sparks, crew chief, Spire; Travis Peterson, crew chief, Spire; and Luke Lambert, crew chief, Spire.**

Claims/paragraphs: Allegations concerning whether Spire possessed or used JGR confidential information or information derived from it, and the services Gabehart provides or has provided at Spire.

Substance of knowledge: Each of these individuals as potentially having knowledge concerning whether Spire possesses or has used JGR confidential information or information derived therefrom and/or the services Gabehart provides at Spire.

10

Documents reflecting statements by/about witness: JGR is not presently aware of any non-privileged responsive documents that contain or reflect statements by or about this witness within the meaning of Interrogatory No. 1(d). JGR will supplement this response if additional responsive materials are identified.

**Brandon Bridges, Director of IT, Spire;**

Claims/paragraphs: Allegations concerning Gabehart's access to Spire's IT systems, existence of JGR materials on Spire systems, his recruiting and hiring, his role and responsibilities at Spire, and agreements between Spire and Gabehart.

Substance of knowledge: Brandon Bridges may have knowledge concerning the period Gabehart had access to the Spire IT network and whether documents containing or derived from JGR information exist on Spire's systems, and Heather Masterson may have knowledge concerning Gabehart's recruiting, hiring, employment, responsibilities, employment agreement with Spire, and the confidentiality/non-disclosure agreement between them.

Documents reflecting statements by/about witness: JGR is not presently aware of any non-privileged responsive documents that contain or reflect statements by or about this witness within the meaning of Interrogatory No. 1(d). JGR will supplement this response if additional responsive materials are identified.

**Heather Masterson, Head of People Operations, Spire.**

Claims/paragraphs: Allegations concerning Gabehart's access to Spire's IT systems, existence of JGR materials on Spire systems, his recruiting and hiring, his role and responsibilities at Spire, and agreements between Spire and Gabehart.

Substance of knowledge: Heather Masterson may have knowledge concerning Gabehart's recruiting, hiring, employment, responsibilities, employment agreement with Spire, and the confidentiality/non-disclosure agreement between them.

Documents reflecting statements by/about witness: JGR is not presently aware of any non-privileged responsive documents that contain or reflect statements by or about this witness within the meaning of Interrogatory No. 1(d). JGR will supplement this response if additional responsive materials are identified.

**William "Bill" Anthony, President of Spire**

Claims/paragraphs: Allegations concerning notice to Spire of Gabehart's restrictive covenant, his recruiting/hiring/employment, and Spire's communications with JGR sponsors.

Substance of knowledge: JGR disclosed that Bill Anthony may have knowledge concerning his December 3, 2025 call with Eric Schaffer, Gabehart's JGR and Spire agreements, and related hiring matters; that Stephen D'Hondt may have knowledge concerning Gabehart's role at Spire and communications with JGR sponsors including Zep; and that Cameron Sieradzan may have knowledge concerning communications with JGR sponsors including Saia.

11

Documents reflecting statements by/about witness: JGR is not presently aware of any non-privileged responsive documents that contain or reflect statements by or about this witness within the meaning of Interrogatory No. 1(d). JGR will supplement this response if additional responsive materials are identified.

**Stephen D'Hondt, COO of Spire**

Claims/paragraphs: Allegations concerning Spire's communications with JGR sponsors.

Substance of knowledge: Stephen D'Hondt may have knowledge concerning Gabehart's role at Spire and communications with JGR sponsors including Zep.

Documents reflecting statements by/about witness: JGR is not presently aware of any non-privileged responsive documents that contain or reflect statements by or about this witness within the meaning of Interrogatory No. 1(d). JGR will supplement this response if additional responsive materials are identified.

**Cameron Sieradzan, Business Development Manager, Spire.**

Claims/paragraphs: Allegations concerning Spire's communications with JGR sponsors.

Substance of knowledge: Cameron Sieradzan may have knowledge concerning communications with JGR sponsors including Saia.

Documents reflecting statements by/about witness: JGR is not presently aware of any non-privileged responsive documents that contain or reflect statements by or about this witness within the meaning of Interrogatory No. 1(d). JGR will supplement this response if additional responsive materials are identified.

**Sponsor and industry witnesses identified in JGR's initial disclosures, including Bill Lealos, Greg Heyer, Eric Phillips, Robert Jenkins, Andy Graves, Rick Ware, Tommy Baldwin, Joe Custer, Justin Marks, Todd Meredith, Richard Childress, Mike Verlander, and Sammy Johns.**

Claims/paragraphs: Allegations concerning industry confidentiality practices, sponsor relationships, Spire's alleged contacts with sponsors, and whether entities connected with Spire or its OEM relationships possessed or used JGR information.

Substance of knowledge: These individuals may have knowledge regarding the NASCAR industry, the importance of confidentiality of racecar setups, strategies and trade secrets, sponsor relationships and sponsor communications, and/or whether Spire possessed or used JGR information or information derived therefrom. Bill Lealos and Greg Heyer may have information concerning sponsor communications with Spire; various OEM-partner-affiliated witnesses are identified as potentially having knowledge concerning whether Spire possessed or used JGR confidential information or information derived from it.

PPAB 13992757v3

Documents reflecting statements by/about witness: JGR is not presently aware of any non-privileged responsive documents that contain or reflect statements by or about this witness within the meaning of Interrogatory No. 1(d). JGR will supplement this response if additional responsive materials are identified.

**Jennifer Gabehart.**

Claims/paragraphs: Allegations concerning Gabehart's interactions with Spire prior to leaving JGR, his hiring at Spire, and his actions with respect to JGR's confidential information and trade secrets.

Substance of knowledge: Jennifer Gabehart traveled on Dickerson's airplane to the NASCAR Cup Series Championship race on November 2, 2025, potentially had access to Gabehart's Google Photos account where the November 7, 2025 photos were stored, and may have knowledge concerning Gabehart's interactions with Spire personnel and his actions regarding JGR's information.

Documents reflecting statements by/about witness: JGR is not presently aware of any non-privileged responsive documents that contain or reflect statements by or about this witness within the meaning of Interrogatory No. 1(d). JGR will supplement this response if additional responsive materials are identified.

JGR reserves the right to supplement this response as discovery proceeds, including to identify additional persons, refine complaint-paragraph references if the operative pleading changes, and identify additional nonprivileged documents reflecting statements by or about any witness.

**INTERROGATORY NO. 2:** For each piece or category of information that You contend is "Allegedly Misappropriated Information" by Gabehart and/or Spire:

(a)     Describe the information with as much specificity as possible;

(b)     state whether You contend that the information is a trade secret under the Defend Trade Secrets Act and/or the North Carolina Trade Secrets Protection Act, and/or constitutes "Confidential Information" under the Employment Agreement;

(c)     describe the facts on which You rely to support that contention (including any steps You took to maintain the secrecy or confidentiality of that information);

(d)     state whether You contend that Spire accessed or used that information; describe the facts on which You rely to contend that Spire accessed or used that information (including the date(s), manner(s), and Person(s) involved); and

(e)     describe the harm or damages You allege JGR suffered as a result of any such alleged access or use, including the type of harm and the amount of damages You attribute to that information and how that amount was calculated.

**ANSWER:** In addition to the foregoing General Objections, which are incorporated herein by reference, JGR objects to this Interrogatory as a premature contention interrogatory that does not require a response at this time, including to the extent it seeks information regarding Spire's access to or use of JGR's information and damages, the full extent of which are still being evaluated through discovery. JGR further objects to use of the term "Allegedly Misappropriated Information" in that it characterizes the misappropriation of JGR's trade secrets and confidential information as "alleged," notwithstanding acknowledgements made by Gabehart's counsel in open court. JGR further objects to the definition of the terms "You" and "JGR" for the reasons stated in General Objection No. 11.

Subject to and without waiving the foregoing objections, JGR refers Spire to the responsive descriptions of Defendants' misconduct in JGR's proposed Second Amended Complaint (*e.g.*, Dkt. 84-1 ¶¶ 68-121, 139-166) and Walter Brown's Declarations (*e.g.*, Dkt. 9-2; Dkt. 35-3; Dkt. 61-2). JGR further supplements its response as follows:

(a) The categories of allegedly misappropriated trade secret and confidential information, described with particularity, are: (i) race-strategy information, comprising car-setup parameters, recommended gear-shift points, processes for real-time performance evaluation, and the methodology for sorting and selecting tires; (ii) post-race audits and analyses, including without limitation the specific manner in which such data was compiled and the content of such analysis; (iii) cost-saving techniques for pre- and post-race equipment transportation; (iv) compensation information, including race-team incentive-compensation structures; (v) business-arrangement information, including revenues and terms associated with JGR's sponsors and partners; and (vi) negative know-how, comprising specific approaches, strategies, and setups that JGR's research, testing, and competition have shown not to work.

PPAB 13992757v3

(b) For each category, JGR contends the information constitutes a trade secret under both the DTSA and the NCTSPA and also constitutes "Confidential Information" under the Employment Agreement.

(c) The facts supporting that contention, including the measures taken to maintain the secrecy of each category, are set forth in JGR's response to Interrogatory No. 3.

(d) JGR contends Spire acquired, accessed, or used the foregoing information. The facts presently known supporting that contention include Gabehart's improper acquisition of the information during his active recruitment by Spire, Gabehart's taking of JGR information in a way calculated to avoid detection, Gabehart's continued access of improperly taken JGR information, Gabehart's deletion of relevant texts with Dickerson and only Dickerson, Dickerson's deletion of texts with Gabehart, Gabehart's creation of audit spreadsheets for use by Spire to audit/track the same compilation of data points that Gabehart developed for JGR, including values assigned to certain data points, Spire's decision to continue to employ Gabehart despite knowledge of the preceding facts, Gabehart's subsequent role at Spire, Spire's role in creating the misimpression that Gabehart is not engaged in Cup Series competition activities, Spire's role in inducing and encouraging Gabehart to continue to violate his contact and the Court's orders, Spire's improved race performances, and the findings of the forensic investigation described in JGR's response to Interrogatory No. 4.

(e) The damages suffered by JGR are identified in response to Interrogatory No. 11. Further supplementing subpart (a), and in further response to subparts (b), (c), (d), and (e), JGR identifies below, by control number and file name, each file containing the trade secret and confidential information that Gabehart misappropriated, together with a general summary of the information contained in each file.

15

JGR contends that each file identified in the table below constitutes both "Confidential Information" under the Employment Agreement and a trade secret under the Defend Trade Secrets Act and the North Carolina Trade Secrets Protection Act. The information and/or compilation of information in each file derives independent economic value from not being generally known to, and not being readily ascertainable by, others who could obtain economic value from its disclosure or use, and JGR took reasonable measures to maintain its secrecy, as described in JGR's response to Interrogatory No. 3. JGR also incorporates by reference the findings of the Court in its Preliminary Injunction Order regarding the trade secret status of numerous documents.

| File Name | General Summary of Information |
| --- | --- |
| 25Atl2 End Race eLap Cold.pdf | Race car setup for a specific track and race. |
| 25BG Excel 6 car.pdf | Race car setup for a specific track and race. |
| 25Bri2 End Race eLap Cold.pdf | Race car setup for a specific track and race. |
| 25CSC End Race eLap Cold.pdf | Race car setup for a specific track and race. |
| 25Cha End Race eLap Cold.pdf | Race car setup for a specific track and race. |
| 25Cota End Race eLap Cold.pdf | Race car setup for a specific track and race. |
| 25Dar2 End Race eLap Cold.pdf | Race car setup for a specific track and race. |
| 25Dov End Race eLap Cold.pdf | Race car setup for a specific track and race. |
| 25Gat End Race eLap Cold.pdf | Race car setup for a specific track and race. |
| 25Hom End Race eLap Cold.pdf | Race car setup for a specific track and race. |
| 25Ind End Race eLap Cold.pdf | Race car setup for a specific track and race. |
| 25Iowa End Race eLap Cold.pdf | Race car setup for a specific track and race. |
| 25Kan2 End Race eLap Cold.pdf | Race car setup for a specific track and race. |
| 25Las2 Post Race Analytics.pdf.pdf | Post-race performance analytics. |

16

| File Name | General Summary of Information |
|---|---|
| 25Las2 Race eLap Cold.pdf | Race car setup for a specific track and race. |
| 25Mar2 End Race eLap Cold.pdf | Race car setup for a specific track and race. |
| 25Mex End Race eLap Cold.pdf | Race car setup for a specific track and race. |
| 25Mic End Race eLap Cold.pdf | Race car setup for a specific track and race. |
| 25NWB End Race eLap Cold.pdf | Race car setup for a specific track and race. |
| 25Nash End Race eLap Cold.pdf | Race car setup for a specific track and race. |
| 25Pho2 Race eLap Hot.pdf | Race car setup for a specific track and race. |
| 25Poc End Race eLap Cold.pdf | Race car setup for a specific track and race. |
| 25Ric End Race eLap Cold.pdf | Race car setup for a specific track and race. |
| 25Son End Race eLap Cold.pdf | Race car setup for a specific track and race. |
| 25Tex End Race eLap Cold.pdf | Race car setup for a specific track and race. |
| 25WG End Race eLap Cold.pdf | Race car setup for a specific track and race. |
| 25pho2 Dyno Results.pdf | Engine dynamometer test results. |
| 25pho2 Post-Race Diffuser Skirts.pdf | Post-race analysis of diffuser skirts. |
| 25pho2 Post-Race Survey.pdf | Post-race survey/analysis. |
| 25pho2 Qual eLap.pdf | Race car setup for a specific track and race. |
| 25pho2 Shift Points.pdf | Recommended gear shift points for a specific track and race. |
| 25pho2 Tire Sets.pdf | Tire set selection and allocation data for a specific track and race. |
| CG Org Chart.pdf | JGR competition group organizational chart and related notes. |
| CG's Org Chart Notes.pdf | JGR competition group organizational chart and related notes. |
| Hauler Project.pdf | Equipment transportation/hauler logistics project materials. |
| JGR Fuel Tracking Process.pdf.pdf | JGR fuel tracking process documentation. |

PPAB 13992757v3

| File Name | General Summary of Information |
|---|---|
| 0_34725_JGR_Pit_Crew_2023_Interview_1207202 2.pdf.txt | JGR pit crew personnel interview materials. |
| 20230928_NCS_CHA_BuildCompare_JGR_DS.pdf | 9/28/23 Build Lap Tests relating to Charlotte Roval 400 race. |
| JGR_Pit_Crew_2023_Interview_12072022.pdf | JGR pit crew personnel interview materials including specific questions and rankings to potential candidates. |
| 20251107_145324.jpg | Photograph taken by Gabehart of his laptop display showing a confidential master spreadsheet that he developed and/or sensitive financial information. |
| 101285.jpeg | Photograph of JGR vehicle parts located in shop. |
| 131361.jpeg | Photograph of JGR vehicle parts located in shop. |
| Screenshot_20250402_211120_OneNote.jpg | Screenshot of race position report saved to OneNote. |
| 20241102_163122.jpg | Photograph of JGR vehicle parts. |
| 20211112_160241.jpg | Photograph of JGR vehicle parts. |
| Screenshot_20250521_223556_X.jpg | Screenshot of Top 5% results of teams through 12 races from 2015 to 2025 seasons. |
| Screenshot_20250124_093414_OneNote.jpg | Screenshot of 2025 race schedule with tack types and practice schedule. |
| 20251107_145519.jpg | Photograph taken by Gabehart of his laptop display showing a confidential master spreadsheet that he developed and/or sensitive financial information. |
| 20210625_161747.jpg | Photograph of JGR vehicle parts. |
| 109052.jpeg | Photograph of JGR vehicle parts. |
| 20231006_095228.jpg | Photograph of JGR vehicle parts. |
| 20231006_093657.jpg | Photograph of JGR vehicle parts. |
| 20211021_101357.jpg | Photograph of JGR vehicle parts. |
| Screenshot_20250620_140710_OneDrive.jpg | Screenshot of JGR KPR Metrics during the 2025 season. |
| 20251107_144600.jpg | Photograph taken by Gabehart of his laptop display showing a confidential master spreadsheet that he developed and/or sensitive financial information. |
| 20210625_164606.jpg | Photograph of JGR vehicle parts. |
| 114063.jpeg | Photograph of JGR vehicle parts. |

PPAB 13992757v3

| File Name | General Summary of Information |
|---|---|
| 20210913_195117.jpg | Photograph of JGR vehicle parts. |
| 20250511_101919.jpg | Photograph of JGR vehicle parts. |
| 111458.jpeg | Photograph of JGR vehicle parts. |
| 113493.jpeg | Photograph of JGR vehicle parts. |
| Screenshot_20250714_151715_Slack.jpg | Screenshot of Race Lap Number report from 2025 season. |
| 20250513_094430.jpg | Photograph of JGR vehicle parts. |
| 20250726_195805.jpg | Photograph of JGR racecar being setup at track. |
| 20211205_082711.jpg | Photograph of JGR vehicle parts. |
| Screenshot_20250414_200233_Abobe Acrobat.jpg | Screenshot of Performance metrics for JGR racecars compared against competitors. |
| 20251015_152046.jpg | Photograph of JGR racecar. |
| 20210625_161621.jpg | Photograph of JGR vehicle parts. |
| 0000GJGR.bin | Screenshot of racecar setups for Race 11 in the 2025 Season at Las Vegas |
| Screenshot_20240826_131404_OneNote.jpg | Screenshot of racecar scan taken during 2024 season. |
| 20251107_144654.jpg | Photograph taken by Gabehart of his laptop display showing a confidential master spreadsheet that he developed and/or sensitive financial information. |
| 2250cff2-2407-460b-b708-c526cb3ee248.jpg | Photograph of computer equipment. |
| 20220228_103044.jpg | Photograph of Gabehart compensation negotiations with JGR for 2022 season. |
| 0000CJGR.bin | Slip ratio report. |
| 20231006_095222.jpg | Photograph of JGR vehicle parts. |
| 20211112_160313.jpg | Photograph of JGR vehicle parts. |
| Screenshot_20240618_204753_Outlook.jpg | Screenshot of race planning notes during 2024 season. |
| 20231203_093925.jpg | Photograph of JGR vehicle parts. |
| 20231203_094422.jpg | Photograph of JGR vehicle parts. |
| Screenshot_20241020_162717_Adobe Acrobat.jpg | 2024 season average pit stop data report. |
| 103860.jpeg | Photograph of JGR vehicle parts. |
| 20210625_161812.jpg | Photograph of JGR vehicle parts. |
| 20210625_161634.jpg | Photograph of JGR vehicle parts. |
| 20211112_170650.jpg | Photograph of JGR vehicle parts. |

19

| File Name | General Summary of Information |
|---|---|
| Screenshot_20240816_100110_OneNote.jpg | Screenshot of car planning during 2024 season. |
| 20231006_100024.jpg | Photograph of JGR vehicle parts. |
| 20210913_195426.jpg | Photograph of JGR vehicle parts. |
| 20210625_161911.jpg | Photograph of JGR vehicle parts. |
| 20251107_145315.jpg | Photograph taken by Gabehart of his laptop display showing a confidential master spreadsheet that he developed and/or sensitive financial information. Photograph specifically shows Contract Calculators for JGR competition personnel. |
| IMG_20250504_143744.jpg | Photograph taken by Gabehart of planning for JGR competition efforts. |
| 20210625_162543.jpg | Photograph of JGR vehicle parts. |
| Screenshot_20240809_204921_OneNote.jpg | Scan of racecar during 2024 season. |
| 20251107_144806.jpg | Photograph taken by Gabehart of his laptop display showing a confidential master spreadsheet that he developed and/or sensitive financial information. Specifically shows payroll and contract details for JGR competition personnel. |
| 6b0b153a-419a-4cf2-b44a-7804bddbe15c.jpg | Screenshot of JGR schedule and daily meetings on 2/10/25. |
| 106917.jpeg | Photograph of JGR vehicle parts. |
| 20231006_095451.jpg | Photograph of JGR vehicle parts. |
| 20210625_161848.jpg | Photograph of JGR vehicle parts. |
| 20211112_160855.jpg | Photograph of JGR vehicle parts. |
| 20251107_144703.jpg | Photograph taken by Gabehart of his laptop display showing a confidential master spreadsheet that he developed and/or sensitive financial information. Specifically shows post-race audits for JGR racecars during the 2025 season. |
| 20210913_202652.jpg | Photograph of JGR vehicle parts. |
| Screenshot_20250324_221253_OneDrive.jpg | Screenshot of post-race audit spreadsheet during 2025 season. |
| 103827.jpeg | Photograph of JGR vehicle parts. |
| Screenshot_20240815_134528_Adobe Acrobat.jpg | 2024 season average pit stop data report. |
| 20231004_081437.jpg | Photograph of JGR vehicle parts. |

20

| File Name | General Summary of Information |
|---|---|
| 00005JGR.bin | Screenshot of TRD LTS Data Tool displaying race car performance data. |
| 20251107_144747.jpg | Photograph taken by Gabehart of his laptop display showing a confidential master spreadsheet that he developed and/or sensitive financial information. |
| 20251107_144824.jpg | Photograph taken by Gabehart of his laptop display showing a confidential master spreadsheet that he developed and/or sensitive financial information. |
| 20211205_082827.jpg | Photograph of JGR vehicle parts. |
| 20231203_094816.jpg | Photograph of JGR vehicle parts. |
| Screenshot_20241029_214535_OneNote.jpg | Screenshot of data charts plotting Average Rolling CL Loss. |
| Screenshot_20250512_215449_Excel.jpg | Screenshot of 2025 CC Post-Race Audit data chart. |
| 20210913_195444.jpg | Photograph of JGR vehicle parts. |
| 20231203_094405.jpg | Photograph of JGR vehicle parts. |
| 111300.jpeg | Photograph of JGR vehicle parts. |
| 20211205_082848.jpg | Photograph of JGR vehicle parts. |
| 20211112_165247.jpg | Photograph of JGR vehicle parts. |
| Screenshot_20241023_222427_Adobe Acrobat.jpg | Screenshot of fuel data graph. |
| 20231006_094316.jpg | Photograph of JGR vehicle parts. |
| 20211205_082528.jpg | Photograph of JGR vehicle parts. |
| 20210913_195411.jpg | Photograph of JGR vehicle parts. |
| 20211002_144057.jpg | Photograph of JGR vehicle parts. |
| 20251107_144543.jpg | Photograph taken by Gabehart of his laptop display showing a 2025 CC Post-Race Audit. |
| 20210913_195419.jpg | Photograph of JGR vehicle parts. |
| 20231203_093917.jpg | Photograph of JGR vehicle parts. |
| IMG_20250518_211957.jpg | Photograph taken by Gabehart of his laptop display showing the results of an internet speed test. |
| Screenshot_20250610_193850_Excel.jpg | Screenshot of Excel chart tracking well executed races. |
| 20211112_165205.jpg | Photograph of JGR vehicle parts. |
| 20251107_145232.jpg | Photograph taken by Gabehart of his laptop display showing a confidential |

PPAB 13992757v3

| File Name | General Summary of Information |
|---|---|
| | master spreadsheet that he developed and/or sensitive financial information. |
| 20211112_160230.jpg | Photograph of JGR vehicle parts. |
| 20211112_160337.jpg | Photograph of JGR vehicle parts. |
| PART_1756593351034_4f1ebacf-5ca0-4a7b-92d5-e171d18dde64.jpg | Photograph taken by Gabehart of his laptop display showing graphs of ambient temperatures from the Darlington 2 event. |
| 109048.jpeg | Photograph of JGR vehicle parts. |
| 20231006_095333.jpg | Photograph of JGR vehicle parts. |
| 20211112_165158.jpg | Photograph of JGR vehicle parts. |
| 20211112_170849.jpg | Photograph of JGR vehicle parts. |
| 20231006_094401.jpg | Photograph of JGR vehicle parts. |
| 20251107_145641.jpg | Photograph taken by Gabehart of his laptop display showing confidential notes on short-, medium-, and long-term plans for operations improvements. |
| 20250706_114510.jpg | Photograph taken by Gabehart of his laptop display showing confidential notes race strategy. |
| 20231203_094215.jpg | Photograph of JGR vehicle parts. |
| 111456.jpeg | Photograph of JGR vehicle parts. |
| Screenshot_20250408_221855_OneNote.jpg | Screenshot of Post Practice Balance Analysis. |
| PART_1684256761408_JGR_154_C.jpg | Photograph of JGR vehicle part. |
| 20211205_082553.jpg | Photograph of JGR vehicle parts. |
| 20231006_093855.jpg | Photograph of JGR vehicle parts. |
| 20250116_173657.jpg | Photograph taken by Gabehart of his laptop display showing internal JGR email. |
| 20251107_150003.jpg | Photograph taken by Gabehart of his laptop display showing a confidential master spreadsheet that he developed and/or sensitive financial information. |
| 20251107_145306.jpg | Photograph taken by Gabehart of his laptop display showing a confidential master spreadsheet that he developed and/or sensitive financial information. |
| 113379.jpeg | Photograph of JGR vehicle parts. |

22

| File Name | General Summary of Information |
|---|---|
| 101284.jpeg | Photograph of JGR vehicle parts. |
| 20211002_143744.jpg | Photograph of JGR vehicle parts. |
| 20211112_165152.jpg | Photograph of JGR vehicle parts. |
| 113378.jpeg | Photograph of JGR vehicle parts. |
| 20251107_145141.jpg | Photograph taken by Gabehart of his laptop display showing a confidential master spreadsheet that he developed and/or sensitive financial information. |
| 116535.jpeg | Photograph of JGR vehicle parts. |
| 108947.jpeg | Photograph of JGR vehicle parts. |
| 20231006_100102.jpg | Photograph of JGR vehicle parts. |
| 20251107_144629.jpg | Photograph taken by Gabehart of his laptop display showing a confidential master spreadsheet that he developed and/or sensitive financial information. |
| 109412.jpeg | Photograph of JGR vehicle body inspection. |
| 106918.jpeg | Photograph of JGR vehicle parts. |
| 109575.jpeg | Photograph of JGR vehicle parts. |
| 20211002_143852.jpg | Photograph of JGR vehicle parts. |
| 20250727_123535.jpg | Photograph taken by Gabehart of his laptop display showing confidential notes on race strategy. |
| 131362.jpeg | Photograph of JGR vehicle parts. |
| 20251107_145258.jpg | Photograph taken by Gabehart of his laptop display showing a confidential master spreadsheet that he developed and/or sensitive financial information. |
| 20231006_093956.jpg | Photograph of JGR vehicle parts. |
| 112516.jpeg | Photograph of JGR vehicle parts. |
| Screenshot_20250322_181053_Adobe Acrobat.jpg | Screenshot showing race analytics. |
| 103868.jpeg | Photograph of JGR vehicle parts. |
| 20231006_094327.jpg | Photograph of JGR vehicle parts. |
| 116539.jpeg | Photograph of JGR vehicle parts. |
| 20250211_190111.jpg | Photograph taken by Gabehart of hand-drawn analysis. |
| 161845.jpeg | Photograph of JGR vehicle parts. |
| 20251107_144615.jpg | Photograph taken by Gabehart of his laptop display showing a confidential |

PPAB 13992757v3

| File Name | General Summary of Information |
|---|---|
| | master spreadsheet that he developed and/or sensitive financial information. |
| 116538.jpeg | Photograph of JGR vehicle parts. |
| 109597.jpeg | Photograph of JGR vehicle parts. |
| Screenshot_20250610_193719_Excel.jpg | Screenshot of Excel workbook showing Well Executed Races analysis. |
| 131365.jpeg | Photograph of JGR vehicle parts. |
| 20250513_094425.jpg | Photograph of JGR vehicle parts. |
| 109595.jpeg | Photograph of JGR vehicle parts. |
| | |
| 20231006_095522.jpg | Photograph of JGR vehicle parts. |
| 108932.jpeg | Photograph of JGR vehicle parts. |
| Screenshot_20250408_221750_OneNote.jpg | Screenshot of Post Practice Balance Analysis. |
| 20211112_165254.jpg | Photograph of JGR vehicle parts. |
| 20231006_093704.jpg | Photograph of JGR vehicle parts. |
| 20250220_163604.jpg | Photograph of JGR vehicle parts. |
| 20250823_134441.jpg | Photograph taken by Gabehart of his laptop display showing fuel analysis for the Augst 23, 2025 Daytona 2 Cup Series event. |
| b155cd29-302a-44dc-baeb-f101b2ed63b9.jpg | Photograph taken by Gabehart of his laptop display showing post-race Driver Meeting Talking Points for the 33-Las Vegas 2. |
| 20211112_170631.jpg | Photograph of JGR vehicle parts. |
| 20250511_180213.jpg | Photograph of JGR vehicle parts. |
| 104282.jpeg | Photograph of JGR vehicle parts. |
| Screenshot_20250417_075110_Excel.jpg | Screenshot showing confidential JGR payroll data. |
| 20210625_162534.jpg | Photograph of JGR vehicle parts. |
| 116533.jpeg | Photograph of JGR vehicle parts. |
| PART_1750893049542_image000000.jpg | Image of NASCAR Cup Series Event Roster Structure. |
| 20210913_195052.jpg | Photograph of JGR vehicle parts. |
| Screenshot_20240622_150312_Adobe Acrobat.jpg | Screenshot of JGR vehicle performance analysis. |
| 20211115_143041.jpg | Photograph of JGR vehicle parts. |
| Screenshot_20250324_221249_OneDrive.jpg | Screenshot of JGR race performance analysis. |

24

| File Name | General Summary of Information |
|---|---|
| Screenshot_20250415_114003_Adobe Acrobat.jpg | Screenshot of 25BRI1 - Race - Brake Zeroed Pressure and Distance to White Line analyses. |
| 20231006_095234.jpg | Photograph of JGR vehicle parts. |
| 20231201_112539.jpg | Photograph of JGR vehicle parts. |
| 20210913_195437.jpg | Photograph of JGR vehicle parts. |
| dd2f11d5-969f-400c-a4c7-40f52c36c929.mp4 | Video taken by Gabehart of his laptop monitor showing JGR vehicle pit stop. |

JGR reserves the right to supplement its response to this Interrogatory as discovery progresses, including by producing responsive business records under Rule 33(d) of the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 3:** For each piece or category of Allegedly Misappropriated Information identified in Your answer to Interrogatory No. 2:

(a) describe the steps, efforts, or precautions JGR took prior to October 1, 2025 to guard the alleged confidentiality or secrecy of that information (including, for example, access controls, passwords, physical security, confidentiality agreements, policies, training, and monitoring);

(b) identify the Persons inside JGR who were permitted to access that information prior to October 1, 2025 and describe how they accessed it (for example, via email, shared drive, OneDrive, hard copy, or other means); and

(c) identify any instance in which that information was shared with, accessed by, or accessible to any third party (including sponsors, manufacturers, vendors, consultants, or other teams) or otherwise available to the public at any time prior to October 1, 2025, including the identity of the third party and a description of the circumstances and dates of such access or disclosure.

**ANSWER:** In addition to the foregoing General Objections, which are incorporated herein by reference, JGR objects to this Interrogatory as a premature contention interrogatory that does not require a response at this time. JGR objects to the use of the defined term "identify" to the extent it imposes a burden not required by the Federal Rules of Civil Procedure, and will interpret "identify" within its ordinary meaning and understanding. JGR also objects to use of the term "Allegedly Misappropriated Information" in that it characterizes the misappropriation of JGR's

PPAB 13992757v3

trade secrets and confidential information as "alleged," despite the statements made by Gabehart's counsel in open court. JGR further objects to the definition of the term "JGR" for the reasons stated in General Objection No. 11.

Subject to and without waiving the foregoing objections, JGR refers Spire to the responsive descriptions of JGR's efforts to protect its trade secrets and confidential information included in JGR's proposed Second Amended Complaint (*e.g.*, Dkt. 84-1 ¶¶ 68-121, 139-166) and Walter Brown's Declarations (*e.g.*, Dkt. 9-2; Dkt. 35-3; Dkt. 61-2). Such efforts include, but are not limited to, physical and electronic security measures, password protection for JGR devices and systems; muti-factor authentication practices; restrictions on employees' system access according to job function and on a need-to-know basis; restrictions on access to JGR facilities; conditioning employment on execution of and abiding by JGR's confidentiality policy; maintenance of comprehensive policies and procedures regarding the handling of confidential information and trade secrets; regular training of employees to prevent third party access to JGR systems; and endpoint and network security monitoring. *See also* Dkt. 9-2 at 16 (JGR Employee Handbook listing categories of trade secrets and confidential information).

Access to most of the categories of trade secrets and confidential information misappropriated by Gabehart and Spire—particularly information that most directly relates to race performance—is limited to the competition group, the crew chiefs, and on some occasions, the executive leadership team. Additionally, some of the trade secrets and confidential information misappropriated by Gabehart and Spire are shared with Toyota Racing Development, 23XI Racing, and Legacy Motor Club, subject to the terms of confidentiality agreements between the parties.

JGR personnel information, including but not limited to compensation and contractual terms, is limited to human resources, the executive leadership team, and the leader of each specific department. Information concerning JGR's cost-saving strategies, business arrangements, sponsors, and partners is limited to the executive leadership team, the leader of each specific department.

JGR supplements its response to this Interrogatory as follows:

| Category of Information | Precautions to Safeguard | Persons Inside JGR with Access | Instances Shared with Third Parties |
|---|---|---|---|
| Race-strategy information (car-setup parameters, recommended gear-shift points, real-time performance-evaluation processes, and tire sorting and selection methodology) | Password protection for JGR devices and systems; multi-factor authentication; system access restricted by job function on a need-to-know basis; restricted physical access to JGR facilities; confidentiality policy and Employee Handbook; confidentiality obligations in employment agreements; regular employee training; and endpoint and network security monitoring. Maintained on access-controlled JGR systems and restricted to competition personnel. | The Competition Committee, including Todd Berrier (Director of Production, Fab & Vehicle Assembly), Walter Brown (Competition Director), Kyle McClenathren (Director of Aerodynamics), and Rick MacGowan (Technical Director); the crew chiefs, including Chris Gayle, James Small, Adam Stevens, and Tyler Allen; and, on some occasions, the executive leadership team, including Joe Gibbs (Owner), Heather Gibbs (Owner), Dave Alpern (President), Tim Carmichael (CFO), Chris Gilligan (CIO), Michael Guttila (former COO), Toni | Shared with Toyota Racing Development, 23XI Racing, and Legacy Motor Club pursuant to written confidentiality agreements; not otherwise shared with third parties and not available to the public. |

PPAB 13992757v3

| Category of Information | Precautions to Safeguard | Persons Inside JGR with Access | Instances Shared with Third Parties |
|---|---|---|---|
| | | Rogers (Chief People Officer), Eric Schaffer (EVP/Chief Commercial Officer), and Steve de Souza (Executive VP of Xfinity & ARCA). | |
| Post-race audits and analyses | Password protection for JGR devices and systems; multi-factor authentication; system access restricted by job function on a need-to-know basis; restricted physical access to JGR facilities; confidentiality policy and Employee Handbook; confidentiality obligations in employment agreements; regular employee training; and endpoint and network security monitoring. Maintained on access-controlled JGR systems. | The Competition Committee, including Todd Berrier (Director of Production, Fab & Vehicle Assembly), Walter Brown (Competition Director), Kyle McClenathren (Director of Aerodynamics), and Rick MacGowan (Technical Director); the crew chiefs, including Chris Gayle, James Small, Adam Stevens, and Tyler Allen; and, on some occasions, the executive leadership team, including Joe Gibbs (Owner), Heather Gibbs (Owner), Dave Alpern (President), Tim Carmichael (CFO), Chris Gilligan (CIO), Michael Guttila (former COO), Toni Rogers (Chief People Officer), Eric Schaffer | Shared with Toyota Racing Development and, to the extent applicable, JGR's allied teams (23XI Racing and Legacy Motor Club) pursuant to written confidentiality agreements; not otherwise shared with third parties and not available to the public. |

28

| Category of Information | Precautions to Safeguard | Persons Inside JGR with Access | Instances Shared with Third Parties |
|---|---|---|---|
| | | (EVP/Chief Commercial Officer), and Steve de Souza (Executive VP of Xfinity & ARCA). | |
| Cost-saving techniques for pre- and post-race equipment transportation (hauler logistics) | Password protection for JGR devices and systems; multi-factor authentication; system access restricted by job function on a need-to-know basis; restricted physical access to JGR facilities; confidentiality policy and Employee Handbook; confidentiality obligations in employment agreements; regular employee training; and endpoint and network security monitoring. Maintained on access-controlled JGR systems. | The executive leadership team (including Joe Gibbs (Owner), Heather Gibbs (Owner), Dave Alpern (President), Tim Carmichael (CFO), Chris Gilligan (CIO), Michael Guttila (former COO), Toni Rogers (Chief People Officer), Eric Schaffer (EVP/Chief Commercial Officer), and Steve de Souza (Executive VP of Xfinity & ARCA)) and the leader of the relevant department. | Not shared with other race teams; not available to the public. |
| Compensation information, including race-team incentive-compensation structures | Password protection for JGR devices and systems; multi-factor authentication; system access restricted by job function on a need-to-know basis; restricted physical access to JGR facilities; confidentiality policy and Employee Handbook; confidentiality obligations in employment agreements; regular employee training; and endpoint and network security monitoring. Maintained on restricted human-resources and finance systems. | Human resources, including Toni Rogers (Chief People Officer), Teri Joyce (Director of Travel), and Polly Crisson (Payroll and Benefits Manager); the executive leadership team, including Joe Gibbs (Owner), Heather Gibbs (Owner), Dave Alpern | Not shared with third parties and not available to the public. |

PPAB 13992757v3

| Category of Information | Precautions to Safeguard | Persons Inside JGR with Access | Instances Shared with Third Parties |
|---|---|---|---|
| | | (President), Tim Carmichael (CFO), Chris Gilligan (CIO), Michael Guttila (former COO), Toni Rogers (Chief People Officer), Eric Schaffer (EVP/Chief Commercial Officer), and Steve de Souza (Executive VP of Xfinity & ARCA); and the leader of the relevant department. | |
| Business-arrangement information, including revenues and terms associated with JGR's sponsors and partners | Password protection for JGR devices and systems; multi-factor authentication; system access restricted by job function on a need-to-know basis; restricted physical access to JGR facilities; confidentiality policy and Employee Handbook; confidentiality obligations in employment agreements; regular employee training; and endpoint and network security monitoring. Maintained on restricted systems accessible to leadership and the relevant department. | The executive leadership team (including Joe Gibbs (Owner), Heather Gibbs (Owner), Dave Alpern (President), Tim Carmichael (CFO), Chris Gilligan (CIO), Michael Guttila (former COO), Toni Rogers (Chief People Officer), Eric Schaffer (EVP/Chief Commercial Officer), and Steve de Souza (Executive VP of Xfinity & ARCA)) and the leader of the relevant department. | Shared with the applicable sponsor or partner counterparties under the confidentiality terms of the governing agreements. While the identity of JGR's sponsors may be publicly visible, the confidential commercial terms (including revenues, bonus/performance opportunities, spend ranges, and activation details) were not shared publicly and were not available to the public. |
| Negative know-how (approaches, strategies, and setups that JGR's | Password protection for JGR devices and systems; multi-factor authentication; system access restricted by job function | The Competition Committee, including Todd Berrier (Director of | Not shared with third parties and not available to the public. |

30

| Category of Information | Precautions to Safeguard | Persons Inside JGR with Access | Instances Shared with Third Parties |
|---|---|---|---|
| research, testing, and competition have shown not to work) | on a need-to-know basis; restricted physical access to JGR facilities; confidentiality policy and Employee Handbook; confidentiality obligations in employment agreements; regular employee training; and endpoint and network security monitoring. Conveyed only to competition personnel on a need-to-know basis and not reduced to broadly accessible documents. | Production, Fab & Vehicle Assembly), Walter Brown (Competition Director), Kyle McClenathren (Director of Aerodynamics), and Rick MacGowan (Technical Director); and the crew chiefs, including Chris Gayle, James Small, Adam Stevens, and Tyler Allen. | |

JGR reserves the right to supplement its response to this Interrogatory as discovery progresses, including by producing responsive business records under Rule 33(d) of the Federal Rules of Civil Procedure, and by providing supporting expert testimony at the times and means established by the Court's Scheduling Order.

**INTERROGATORY NO. 4**: Describe the efforts JGR made between November 1, 2025 and the present to investigate whether Gabehart downloaded, copied, transferred, or otherwise removed any JGR Documents or Data from any JGR systems or devices, including to any personal devices, email accounts, or cloud-storage accounts. Your answer shall:

(a) describe the devices, accounts, and data sources examined (including any JGR-issued laptops or phones and any JGR-sponsored OneDrive or other cloud storage associated with Gabehart);

(b) identify any third-party vendors or consultants involved in the investigation; and

(c) state whether the investigation identified any instance in which Allegedly Misappropriated Information or other JGR Documents or Data were transmitted from any device or account associated with Gabehart to any Spire-owned or Spire-controlled system, email address, phone number, or account, and if so, describe each such instance, and if not, describe any material limitations in the scope of the investigation (including any devices, accounts, or data sources that were not imaged, not preserved, or not analyzed).

**ANSWER:** In addition to the foregoing General Objections, which are incorporated herein by reference, JGR objects to this Interrogatory as premature to the extent it seeks investigatory conclusions concerning Gabehart's transmittal of JGR's documents or data to Spire while discovery is ongoing. JGR objects to the use of the defined terms "Document" and "identify" to the extent they impose a burden not required by the Federal Rules of Civil Procedure, and will interpret these terms within their ordinary meaning and understanding. JGR further objects to the definition of the term "JGR" for the reasons stated in General Objection No. 11. JGR further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable privilege or immunity from discovery. JGR also objects to use of the term "Allegedly Misappropriated Information" in that it characterizes the misappropriation of JGR's trade secrets and confidential information as "alleged."

Subject to and without waiving the foregoing objections, JGR responds that on December 8, 2025, JGR's Chief Information Officer, Chris Gilligan, performed a preliminary review of Gabehart's Lenovo ThinkPad (Serial No. PF57YJEX), older JGR laptop, and JGR tablet. JGR's review of these devices disclosed the existence of Gabehart's synced Google Drive account including a folder titled "Spire" and a OneDrive account registered to Gabehart's JGR email address. Following this initial review, JGR retained Reliance Forensics.

JGR refers Spire to the responsive descriptions of the forensic investigation performed by Reliance Forensics, LLC ("Reliance") on behalf of JGR. *See* Second Amended Complaint, Dkt. 84-1 ¶¶ 67-80; Dkt. 9-4; Dkt. 22-3; Dkt. 35-12. Reliance's investigation included an examination of (1) a Lenovo ThinkPad (Serial No. PF57YJEX) assigned to Gabehart during his employment at JGR; (2) an older JGR laptop Gabehart previously used while employed at JGR; (3) Gabehart's

PPAB 13992757v3

Google Drive account associated with chris.gabehart@gmail.com; (4) a Microsoft OneDrive account associated with Gabehart's JGR email address; (5) a tablet assigned to Gabehart during his employment at JGR; and (6) Gabehart's personal cell phone, a Samsung Galaxy S22 Plus.

With respect to part (c), JGR states that the pre-litigation forensic review was subject to material limitations imposed by Gabehart. Reliance's forensic examiner expressly stated that, under the constraints of the protocol, he could "not exclude the possibility of such files being sent via email from a web portal, being sent via text message then deleted the message, shared directly via Google Photos or any other fileshare site." *See* Dkt. 9-4 ¶ 30; Dkt. 12-5 at 1. Known devices and accounts that Gabehart did not make available for examination include: (a) Gabehart's personal laptop; (b) Gabehart's personal email account; (c) other cloud-based storage systems, including an Unknown OneDrive account identified in Mr. Walton's Second Supplemental Declaration that Gabehart routinely interacted with while accessing JGR materials; and (d) file-sharing accounts, including a ShareFile account Gabehart accessed at 1:15 a.m. on December 4, 2025. *See* Dkt. 35-12 ¶¶ 15–17, 29–30.

Subsequent to the filing of this action, JGR and Gabehart have engaged in a Court-ordered forensic review process that is still ongoing.  Dkt. 48 p. 4.

Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, JGR will produce documents from which Spire can ascertain the answers to this Interrogatory.

JGR's investigation is ongoing as discovery in this matter continues, and JGR reserves the right to supplement this response as additional information becomes available through the discovery process, including but not limited to forensic review of Defendants' devices and accounts ordered or agreed upon after the initiation of this litigation.

**INTERROGATORY NO. 5:** Identify the Persons who have or are likely to have knowledge or information concerning the "Trade Understanding" referenced in the Amended

Complaint, for the period January 1, 2025 to the present. For each such Person, state the Person's full name, title, current or last known employer, last known address and telephone number, and describe the subject matter of that Person's knowledge relating to the Trade Understanding, including any Communications or Documents of which the Person is aware that relate to the Trade Understanding.

**ANSWER:** In addition to the foregoing General Objections, which are incorporated herein by reference, JGR objects to this Interrogatory's reference to a "Trade Understanding," including that JGR does not agree it existed. JGR further objects to the use of the defined terms "Communication," "Document," "identify" and "relating to" to the extent they are interpreted to impose a burden not required by the Federal Rules of Civil Procedure, and will interpret these terms within their ordinary meaning and understanding.

Subject to and without waiving the foregoing objections, JGR names the following individuals as most likely to have information or knowledge of circumstances relating to Robert Smith's departure from Spire and/or Smith's employment with JGR and the alleged "Trade Understanding":

- Robert Smith, Car Chief for JGR's 54 Car: Likely to have knowledge of the circumstances of his departure from Spire and his employment with JGR.

- Jeffrey Dickerson, Co-owner of Spire: Likely to have knowledge of the circumstances of Smith's departure from Spire, including the fact that to the extent there were any discussions that formed the basis of what is now being portrayed as a "Trade Understanding," any such trade was limited to the possibility of a swap of spotters, as reflected in GABEHART 0644 and 0669, which never came to fruition.

- Heather Gibbs, Co-Owner of JGR: Likely to have knowledge of the circumstances of Smith's employment with JGR, including the fact that to the extent there were any discussions that formed the basis of what is now being portrayed as a "Trade Understanding," any such trade was limited to the possibility of a swap of spotters, as reflected in GABEHART 0644 and 0669, which never came to fruition..

- Joe Gibbs, Owner and Founder of JGR: Likely to have knowledge of the circumstances of Smith's employment with JGR.

- Toni Rogers, Chief People Officer of JGR: Likely to have knowledge of the circumstances of Smith's employment with JGR, including the fact that to the extent there were any discussions that formed the basis of what is now being portrayed as a "Trade

PPAB 13992757v3

Case 3:26-cv-00133-SCR-DCK    Document 125-5    Filed 07/28/26    Page 35 of 62

Understanding," any such trade was limited to the possibility of a swap of spotters, as reflected in GABEHART 0644 and 0669, which never came to fruition..

- Christopher Gabehart, Chief Motorsports Officer at Spire: Likely to have knowledge of the circumstances of Smith's employment with JGR, including the fact that to the extent there were any discussions that formed the basis of what is now being portrayed as a "Trade Understanding," any such trade was limited to the possibility of a swap of spotters, as reflected in GABEHART 0644 and 0669, which never came to fruition..

- Michael Guttilla, President at Legacy Motor Club; former Chief Operating Officer of JGR: Likely to have knowledge of the circumstances of Smith's employment with JGR.

- Tim Carmichael, Chief Financial Officer of JGR: Likely to have knowledge of the circumstances of Smith's employment with JGR.

Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, JGR will also produce documents from which Spire can ascertain the answers to this Interrogatory.

**INTERROGATORY NO. 6:** Describe JGR's practice since January 1, 2021 with respect to enforcing or not enforcing non-competition or non-solicitation provisions against employees in roles comparable to or similar to Gabehart's. Your answer shall identify each instance since January 1, 2021 in which such an employee left JGR's employment or was considering leaving, and for each instance state:

    (a)    the employee's name and position;

    (b)    the nature and duration of any non-competition or non-solicitation provision applicable to that employee;

    (c)    the employee's subsequent employer during any applicable restricted period (if known);

    (d)    whether JGR took any action to enforce or not enforce the provision (including sending a cease-and-desist letter, filing a lawsuit, agreeing to a waiver or modification, or entering into any standstill or transition arrangement); and

    (e)    the reasons JGR chose to enforce, not enforce, waive, or modify the provision in that instance.

**ANSWER:** In addition to the foregoing General Objections, which are incorporated herein by reference, JGR objects to this Interrogatory as vague and ambiguous in that it depends on the identification of "roles comparable to or similar to Gabehart's" without defining the terms "comparable" or "similar" in this context. JGR further objects to the use of the defined term "identify" to the extent it imposes a burden not required by the Federal Rules of Civil Procedure,

and will interpret "identify" within its ordinary meaning and understanding. JGR further objects to the definition of the term "JGR" for the reasons stated in General Objection No. 11.

Subject to and without waiving the foregoing objections, JGR responds that since January 1, 2021, there have been no departures of JGR personnel who were similar in seniority to Gabehart under circumstances that similarly implicated a non-competition or non-solicitation provision of an employment agreement due to the misappropriation of JGR's trade secrets or confidential information while the employee was in active discussions about employment with a competing team. However, JGR notes two instances of employee departures since January 1, 2021 under circumstances that implicated non-compete provisions.

In 2024, JGR filed suit to enforce a noncompetition agreement against Jeffery Curtis, an engineer who misappropriated JGR's trade secrets and confidential information and accepted employment with a competing race team in violation of his employment agreement. *Joe Gibbs Racing LLC v. Jeffrey* Curtis, No. 24 CVS 1584 (N.C. Burke Cnty. Super. Ct.). Initially, when Curtis requested permission to seek employment with one of JGR's competitors, JGR agreed to waive the non-compete provision of his Employment Agreement in reliance upon Curtis's continued loyalty to JGR during the remaining term of his employment. However, when JGR discovered that Curtis had transferred a large number of files containing JGR race and car data to a personal hard drive without authorization, JGR terminated Curtis for cause and filed a lawsuit to enforce its rights under the Employment Agreement. JGR and Curtis settled the lawsuit subject to the terms of a Consent Judgment that permanently enjoined Curtis from using any of JGR's trade secrets or confidential information, required him to immediately return all of JGR's confidential information and trade secrets, and permanently enjoined him from providing the types of services he provided to JGR for a specified period of time.

PPAB 13992757v3

In April 2026, JGR's Chief Operating Officer, Michael Guttilla, accepted a position as President of another Toyota race team. JGR agreed to waive the non-competition provision of its Employment Agreement with Guttilla because (1) Guttilla transparently disclosed his employment plans to JGR and sought permission to discuss employment with another race team; (2) the owner of Legacy Motor Club contacted Coach Gibbs seeking permission to discuss the President role with Guttilla; (3) Guttilla promised to abide by all other restrictive covenants contained in his Employment Agreement; and (4) JGR had (and still has) no reason to believe that Guttilla misappropriated JGR's trade secrets or confidential information or otherwise violated his contractual and other duties to JGR while still employed by JGR.  Guttilla's title at JGR was Chief Operating Officer, in which role his responsibilities encompassed senior operational oversight of the company.  Mr. Guttilla was subject to an Employment Agreement dated February 24, 2023. Executed a Severance Agreement effective April 3, 2026 which permitted Mr. Guttilla to accept employment as President of Legacy Motor Club.

JGR further supplements its response by stating that since January 1, 2022, it has enforced non-competition agreements with the following competition-related employees or senior leaders:

- Kevon Jackson.  Pit Crew.  Subject to Employment Agreement dated October 23, 2023. Contract Term: 10/23/23 to 11/30/26.  Subject to non-competition clause for the longer of 10 months after the date of termination or the balance of the term (but not to exceed 18 months) and a non-solicitation clause for 18 months after the date of termination. Terminated for cause on 8/13/25.  23XI Racing requested permission to hire Jackson.  JGR declined.

- Brian Larson.  Fabricator.  Subject to Employment Agreement dated December 1, 2023. Contract Term: 12/1/23 to 11/30/26.  Subject to non-competition clause for the longer of 10 months after the date of termination or the balance of the term (but not to exceed 18 months) and a non-solicitation clause for 18 months after the date of termination. Voluntarily resigned on 5/31/25.  Employees asked for a release and JGR declined to allow him to work in a position that was similar to his position at JGR.

- Stephen Reeves.  Spotter.  Subject to Employment Agreement dated December 1, 2023. Contract Term: 12/1/23 to 11/30/25.  Subject to non-competition clause for the longer of 10 months after the date of termination or the balance of the term (but not to exceed 18

37

months) and a non-solicitation clause for 18 months after the date of termination. Voluntarily resigned on 5/21/25. Legacy Motor Club requested permission to hire Reeves in early March 2026. JGR advised Legacy Motor Club that his non-competition clause would expire on 3/21/26.

JGR additionally responds that since January 1, 2022, it has permitted the following competition-related employees or senior leaders to accept employment with another NASCAR team:

- Benjamin Beshore. Xfinity Crew Chief for JGR. Subject to an Employment Agreement dated December 1, 2020. Mr. Beshore received an opportunity to become a Cup Series Crew Chief with Legacy Motor Club. He finished the 2022 season with JGR and then executed a Termination of Employment Agreement dated November 10, 2023 which contained a release of non-competition restrictions. Subsequently joined Legacy Motor Club.

- Craig Greene. EVP of Business Operations. Subject to an Employment Agreement dated December 1, 2020. Executed a Severance and Release Agreement dated August 11, 2023 which reduced the length of the non-competition restriction to six months in duration. After leaving JGR Mr. Greene performed work for JTG Daughtery Racing before transitioning to work as a pediatric cardiologist.

- Christopher Hall. Pit Crew Coach. Subject to an Employment Agreement dated December 1, 2021. Mr. Hall requested a release from his non-competition restriction to pursue other opportunities and executed a Termination of Employment Agreement dated August 30, 2023 which contained a release of non-competition restrictions. Subsequently joined Legacy Motor Club as Director of Pit Crew Operations.

- Blake Harris. Car Chief. Subject to an Employment Agreement dated December 1, 2021. Mr. Harris was offered the opportunity to become a Cup Series Crew Chief for Front Row Motorsports. He executed a Termination of Employment Agreement dated January 4, 2022 which contained a release of his non-competition restrictions. Subsequently joined Front Row Motorsports as a Cup Series Crew Chief.

Due to the above-noted objections, and as noted in discussions with counsel JGR will not identify each and every departure of an employee bound by restrictive covenants since January 1, 2021.

**INTERROGATORY NO. 7:** Identify the Persons who have or are likely to have knowledge or information concerning:

38

(a) the negotiation and execution of Gabehart's Employment Agreement, including any discussions or proposals regarding the scope or duration of any restrictive covenants; and

(b) the circumstances surrounding Gabehart's departure from JGR, including JGR's decision to cease paying Gabehart in or around November 2025 and JGR's subsequent decision to terminate his employment for cause in 2026.

For each such Person, state:

(1) the Person's full name, title, current or last known employer, last known address and telephone number; and

(2) describe the subject matter of that Person's knowledge on these topics.

**ANSWER:** In addition to the foregoing General Objections, which are incorporated herein by reference, JGR objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable privilege or immunity from discovery. JGR further objects to the use of the defined term "identify" to the extent it imposes a burden not required by the Federal Rules of Civil Procedure, and will interpret "identify" within its ordinary meaning and understanding. JGR further objects to the definition of the term "JGR" for the reasons stated in General Objection No. 11.

Subject to and without waiving the foregoing objections, JGR names the following individuals as likely to have knowledge or information concerning the negotiation and execution of Gabehart's Employment Agreement and/or the circumstances surrounding Gabehart's departure from JGR:

- Joe Gibbs, Owner and Founder of JGR: Likely to have knowledge of Gabehart's Employment Agreement, the circumstances surrounding Gabehart's departure from JGR, and the decision to terminate Gabehart's Employment Agreement for Cause due to his misconduct. May be contacted through counsel.

- Heather Gibbs, Co-Owner of JGR: Likely to have knowledge of Gabehart's Employment Agreement, the circumstances surrounding Gabehart's departure from JGR, and the decision to terminate Gabehart's Employment Agreement for Cause due to his misconduct. May be contacted through counsel.

- Eric Schaffer, Executive Vice President & Chief Commercial Officer of JGR: Likely to have knowledge of Gabehart's Employment Agreement, the circumstances surrounding Gabehart's departure from JGR, and the decision to terminate Gabehart's Employment Agreement for Cause due to his misconduct. May be contacted through counsel.

- Dave Alpern, President of JGR: Likely to have knowledge of the circumstances surrounding Gabehart's departure from JGR and the decision to terminate Gabehart's Employment Agreement for Cause due to his misconduct. May be contacted through counsel.

- Tim Carmichael, Chief Financial Officer of JGR: Likely to have knowledge of Gabehart's Employment Agreement, the circumstances surrounding Gabehart's departure from JGR, and the decision to terminate Gabehart's Employment Agreement for Cause due to his misconduct. May be contacted through counsel.

- Michael Guttilla, President at Legacy Motor Club; former Chief Operating Officer of JGR: Likely to have knowledge of the circumstances surrounding Gabehart's departure from JGR.

- Toni Rogers, Chief People Officer of JGR: Likely to have knowledge of Gabehart's Employment Agreement , the circumstances surrounding Gabehart's departure from JGR, and the decision to terminate Gabehart's Employment Agreement for Cause due to his misconduct. May be contacted through counsel.

- Todd Berrier, Director of Production, Fab & Vehicle Assembly at JGR: Likely to have knowledge of the circumstances surrounding Gabehart's departure from JGR. May be contacted through counsel.

- Walter Brown, Director of Competition at JGR: Likely to have knowledge of the circumstances surrounding Gabehart's departure from JGR. May be contacted through counsel.

- Christopher Gabehart, Chief Motorsports Officer at Spire: Likely to have knowledge of Gabehart's Employment Agreement, the circumstances surrounding Gabehart's departure from JGR, and the decision to terminate Gabehart's Employment Agreement for Cause due to his misconduct.

- Jennifer Schafer Gabehart, Wife of Gabehart: Likely to have knowledge of Gabehart's Employment Agreement and the circumstances surrounding Gabehart's departure from JGR.

- Jeffrey Dickerson, Co-owner of Spire: Likely to have knowledge of the circumstances of Gabehart's departure from JGR.

- Dan Towriss, Chief Executive Officer at TWG Motorsports (Co-Owner of Spire): Likely to have knowledge of the circumstances of Gabehart's departure from JGR.

40

- Bill Anthony, President of Spire: Likely to have knowledge of the circumstances of Gabehart's departure from JGR.

- Eric Phillips, Former Crew Chief at 23XI: Likely to have knowledge of the circumstances of Gabehart's departure from JGR.

- Mark Carmony, Gabehart's Sports Agent at CSE: Likely to have knowledge of Gabehart's Employment Agreement and the circumstances surrounding Gabehart's departure from JGR.

- Heather Masterson, Head of People Operations at Spire: Likely to have knowledge of the circumstances of Gabehart's departure from JGR.

- Karolina Powalka, Counsel to Gabehart: Likely to have knowledge regarding Gabehart's departure from JGR.

**INTERROGATORY NO. 8:** State the date or dates on which JGR decided to terminate Gabehart's employment for cause, identify each Person involved in making or approving that decision, and describe the reasons for that decision, including the facts, events, and alleged conduct that JGR contends constituted "cause" under the Employment Agreement.

<u>**ANSWER:**</u>    In addition to the foregoing General Objections, which are incorporated herein by reference, JGR objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable privilege or immunity from discovery. JGR further objects to the use of the defined term "identify" to the extent it imposes a burden not required by the Federal Rules of Civil Procedure, and will interpret "identify" within its ordinary meaning and understanding. JGR further objects to the definition of the term "JGR" for the reasons stated in General Objection No. 11.

Subject to and without waiving the foregoing objections, JGR states that JGR decided to terminate Gabehart's employment for cause on February 9, 2026, and the following individuals were involved in making or approving that decision:

- Joe Gibbs, Owner and Founder of JGR; and

- Heather Gibbs, Co-Owner of JGR.

41

As set forth in his termination letter (Dkt. 8-3), Gabehart was terminated "in good faith based on [his] violations of Section 5 of the Employment Agreement, JGR policies and procedures relating to the safeguarding of confidential information, and the North Carolina Trade Secrets Protection Act and federal Defend Trade Secrets Act of 2016. Specifically, [he] misappropriated JGR's confidential information and trade secrets to personal accounts and devices with the intent to use and/or disclose this information to a direct competitor of JGR's."

The specific facts, events, and conduct underlying JGR's decision are described in response to Interrogatory No. 2.

**INTERROGATORY NO. 9:** If You contend that Section 6.2 of the Employment Agreement imposed on Gabehart a non-competition restriction longer than one week after he ceased performing services for JGR, describe in detail the factual and legal basis for such contention, including:

(a)      your interpretation of the notice and payment provisions in Section 6.2;

(b)      the facts on which You rely for contending that any notice provided by or on behalf of Gabehart did not satisfy Section 6.2; and

(c)      the dates and time period during which You contend Gabehart was prohibited from competing with JGR pursuant to Section 6.2.

**ANSWER:**    In addition to the foregoing General Objections, which are incorporated herein by reference, JGR objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable privilege or immunity from discovery. JGR further objects to the definition of the terms "You" and "JGR" for the reasons stated in General Objection No. 11.

Subject to and without waiving the foregoing objections, JGR states that Gabehart's noncompetition restriction is effective for a period of 18 months from February 9, 2026. For further details regarding JGR's interpretation of Section 6.2 of the Employment Agreement and applicable facts and circumstances, JGR refers Spire to JGR's discussion of the noncompete provision of the

42

Employment Agreement as briefed in support of its motions for a temporary restraining order and preliminary injunction, and to the evidence submitted in support of the briefing. *See, e.g.*, Dkt. 10; Dkt. 35; Dkt. 46. Among other reasons, Gabehart failed to satisfy any of the three conditions required to trigger the one-week reduction under Section 6.2: (1) Gabehart did not provide good-faith written notice of specific job duties inconsistent with his expectations—his communications contained only complaints and criticisms of JGR, and by November 6, 2025, he had already engaged in detailed discussions with Spire about potential employment, including meeting with Spire's co-owner, demonstrating that his purported notice was not made with "honesty in belief and purpose." (2) Rather than providing JGR with sixty days to resolve any purported inconsistencies, Gabehart immediately pivoted to negotiating a mutual separation agreement with terms—including COBRA payments, a two-year non-solicitation provision, and mutual non-disparagement—that are not included in or contemplated by Section 6.2, confirming the parties were pursuing a new mutual agreement rather than proceeding under the Section 6.2 framework. (3) Gabehart never provided sixty days' prior written notice of termination without cause as expressly required by Section 6.2. Moreover, Gabehart's own conduct was fundamentally inconsistent with any belief that he had properly invoked Section 6.2.

**INTERROGATORY NO. 10:** Describe the job duties and responsibilities that You contend Gabehart is prohibited from performing for Spire pursuant to Section 6.2 of the Employment Agreement, including Your identification of the "general type of services that [he] provided to the Company in the year prior to such termination" that You contend he may not perform for Spire.

**ANSWER:** Subject to and without waiving the foregoing General Objections, which are incorporated herein by reference, JGR states that under Section 6.2 of the Employment Agreement, Gabehart is prohibited from performing services of the general type of services that he provided to the Company in the year prior to his termination. Regarding what those services were at JGR, JGR refers Spire to JGR's Proposed Order for Injunctive Relief (Dkt. 35-2) and the Second

Declaration of Walter Brown (Dkt. 35-3). For example, in the year prior to his termination, Gabehart served as JGR's Cup Series Competition Director, and his services in that role encompassed overseeing race-related operations and technical coordination, running weekly crew chief meetings, coordinating race weekend strategy, promoting commonality across JGR's four Cup Series teams, communicating with shop departments regarding fabrication, aerodynamics, simulation tools, and analytics, interfacing with NASCAR officials on behalf of JGR's teams, and participating in driver and crew chief debriefs, postrace technical inspections, and immediate postrace analysis. In addition, Gabehart regularly interacted with representatives from Toyota and its affiliates, as Toyota was JGR's OEM partner. In addition, Gabehart performed crew chief duties for JGR's No. 54 car, in which role his responsibilities included determining strategy and adjustments during the race, communicating with the driver, and controlling operations behind the scenes. Gabehart himself conceded at the TRO hearing that "there's certainly some subject matter overlap" between his position at JGR and his role at Spire, and his own declarations confirm that both roles involve developing and promoting "best practices" among NASCAR Cup Series teams, interfacing with NASCAR officials, coordinating with an allied NASCAR team, supporting the OEM relationship, and developing and deploying competitive initiatives within the NASCAR Cup Series.

JGR further supplements its response by identifying the following duties and responsibilities:

**Race calling and strategy**

- Serving as a crew chief or assistant crew chief in any capacity.

- Calling races or providing race strategy, including decisions regarding pit stops, tire selection, fuel strategy, track position, or race adjustments.

PPAB 13992757v3

- Participating in any race-day decisions, strategy sessions, or real-time competitive decisions during practice, qualifying, or race events.

- Providing advice, consultation, or input regarding race strategy, race calling, or in-race decision-making to any crew chief, driver, or competition personnel.

**Meetings**

- Attending, participating in, organizing, facilitating, or contributing to any crew chief meetings, competition meetings, driver meetings, race debrief sessions, or race preparation meetings.

- Participating in any meetings involving race performance review, race results analysis, technical discussions regarding car setup, handling, or performance, or strategic planning for upcoming races.

- Attending or participating in any meetings or communications with original equipment manufacturers (OEMs) regarding engine performance, testing, simulations, aerodynamics, technical development, competition matters, or racing strategy.

- Attending, participating in, or contributing to car performance meetings, engineering meetings, aerodynamics meetings, tire meetings, pit crew meetings, race engineering meetings, or any other meetings related to on-track competition or vehicle performance.

- Conducting, facilitating, or participating in any meetings that involve driver feedback, driver rankings, driver performance analysis, or driver development related to competition.

- Serving as a participant or liaison in any meetings with NASCAR officials regarding competition rules, rule interpretations, technical matters, or compliance issues.

**Vehicle setup and technical development**

- Reviewing, analyzing, accessing, or providing input on vehicle setup files, setup sheets, setup data, or setup decisions for any race car.

- Participating in wind tunnel testing, wind tunnel test analysis, aerodynamic development, or review of aerodynamic data or results.

- Engaging in any activities related to vehicle handling, vehicle performance optimization, suspension setup, chassis setup, or mechanical adjustments.

- Reviewing, analyzing, or providing input on tire testing, tire data, tire strategy, or tire performance.

- Participating in technical inspection processes, technical compliance reviews, or interactions with NASCAR technical inspectors.

45

- Engaging in correlation activities between driver feedback and vehicle setup or performance data.

- Accessing, reviewing, analyzing, or providing input on any engineering reports, simulation data, driver-in-the-loop simulator testing or results, computational fluid dynamics (CFD) analysis, or any other technical or engineering data related to race car performance.

**Data and analytics**

- Accessing, reviewing, analyzing, or providing input on competition analytics, race analytics, performance metrics, pit stop metrics, driver performance metrics, or any data analytics related to competition.

- Accessing, reviewing, analyzing, or providing input on telemetry data, data acquisition information, vehicle sensor data, or any performance data from race cars.

- Accessing, reviewing, analyzing, or providing input on any proprietary databases, secure websites, or information systems containing competition data, technical data, performance data, or racing information, including any OEM platforms.

- Accessing, reviewing, analyzing, or providing input on the development, implementation, or utilization of analytical tools, models, or systems for race strategy, performance optimization, or competitive analysis.

**Personnel direction and management**

- Directing, managing, supervising, or providing guidance to crew chiefs, car chiefs, engineers, mechanics, pit crew members, or any other competition personnel.

- Participating in hiring decisions, personnel evaluations, performance reviews, or personnel development for any competition-related positions.

- Providing input on organizational structure, team composition, resource allocation, or staffing for competition operations.

- Participating in contract negotiations, employment discussions, or retention decisions for competition personnel.

- Communicating with or providing any work direction to individuals currently employed by Spire regarding competition matters, technical matters, or race operations.

**Coordination and information flow**

- Serving as a liaison, coordinator, or point of contact between any race-related departments, including engineering, aerodynamics, analytics, tire development, pit crew operations, fabrication, or vehicle dynamics.

PPAB 13992757v3

- Acting as a central hub or coordinator for competition information, technical information, or race operations information.

- Disseminating information, reports, directions, or guidance across multiple competition-related departments or personnel.

- Coordinating cross-functional initiatives, projects, or activities related to competition performance or race operations.

**Strategic planning and leadership**

- Participating in strategic planning, long-term competitive planning, or organizational direction-setting for any NASCAR competition operations.

- Attending or participating in meetings with executive leadership, ownership, or senior management regarding competition matters, team performance, competitive positioning, or racing operations.

- Providing input on capital expenditures, budget allocation, or resource planning for competition-related projects or initiatives.

- Participating in alliance discussions, partnership negotiations, or collaborative arrangements with other race teams or OEMs regarding competition matters.

- Providing recommendations or input on technical development priorities, competition priorities, or performance improvement initiatives.

**NASCAR liaison and compliance**

- Serving as a point person, representative, or liaison with NASCAR regarding competition rules, rule changes, rule interpretations, technical bulletins, or compliance matters.

- Communicating with NASCAR officials regarding technical aspects of racing, competition issues, or team operations.

- Participating in any NASCAR committees, working groups, or collaborative bodies involving competition or technical matters.

**Race weekends**

- Attending race weekends, practice sessions, qualifying sessions, or race events in any professional capacity related to competition.

- Being present in team haulers, pit areas, garage areas, or competition spaces during race weekends.

47

PPAB 13992757v3

- Observing, monitoring, or reviewing practice data, qualifying data, or race data during race weekend events.

- Communicating with drivers, crew chiefs, spotters, or team personnel during practice, qualifying, or races regarding competition matters.

- Providing support, advice, feedback, or direction to any team personnel during race weekend activities.

- Conducting post-race reviews, post-race debriefs, or post-race analysis activities.

**Simulators**

- Accessing, utilizing, reviewing, or providing input on car simulators, driver-in-the-loop simulators, or simulator data related to NASCAR competition.

- Engaging in, contributing to, or connecting with Spire's or any other Chevrolet alliance team's work in connection with racing simulators, including simulator development, testing, data analysis, or simulator-based vehicle setup development.

- If attending race weekends in a non-competition capacity, having any communication or interactions with any person responsible for executing Spire's competition activities, including crew chiefs, car chiefs, engineers, spotters, pit crew members, competition directors, or any other personnel involved in race strategy, vehicle setup, or race execution.

**INTERROGATORY NO. 11:** For each cause of action alleged in the Amended Complaint, identify and describe the categories of damages JGR seeks. Your answer shall include:

(a)    the factual basis for the type of harm alleged (such as lost profits, lost business opportunities, unjust enrichment, reputational harm, or diminution in value of alleged trade secrets);

(b)    the methodology used to calculate each category and amount of damages;

(c)    all assumptions, inputs, or models used in any such calculations; and

(d)    the Person or Persons most knowledgeable regarding such calculations.

**ANSWER:**    In addition to the foregoing General Objections, which are incorporated herein by reference, JGR objects to this Interrogatory as overly broad and unduly burdensome, inappropriate for this form of discovery, and premature, and does not require a response at this time in that it seeks information regarding damages, the full extent of which is still being evaluated.

48

JGR further objects to the use of the defined term "identify" to the extent it imposes a burden not required by the Federal Rules of Civil Procedure, and will interpret "identify" within its ordinary meaning and understanding. JGR further objects to the definition of the term "JGR" for the reasons stated in General Objection No. 11.

Subject to and without waiving the foregoing objections, JGR states that JGR anticipates that its trade secret damages under the DTSA and NCTSPA will be measured by either (a) the actual loss to JGR and unjust enrichment to Defendants, and/or (b) a reasonable royalty reflecting the value a willing licensee would have paid for unauthorized use of the trade secrets, determined through a hypothetical negotiation as of the time the misappropriation began and considering factors including changes in the parties' competitive posture, the importance of the secrets to JGR's business, JGR's development costs, the nature and extent of Defendants' use, and the availability of alternative processes. JGR further anticipates seeking exemplary damages of up to two times the compensatory award under the DTSA and punitive damages under the NCTSPA based on the willful and malicious nature of the misappropriation, as well as treble damages under the North Carolina Unfair and Deceptive Trade Practices Act for actual damages proximately caused by Defendants' deceptive conduct. For its breach of contract and tortious interference claims, JGR anticipates seeking compensatory damages measured by the actual loss proximately caused by the breach and the tortious conduct, including lost profits during the restricted period that JGR would have realized absent Gabehart's competition in violation of the Agreement.

JGR also anticipates seeking reasonable attorneys' fees, which are recoverable under the DTSA and NCTSPA where the trade secret was willfully and maliciously misappropriated, 18 U.S.C. § 1836(b)(3)(C); N.C. Gen. Stat. § 66-154(d), and under the NCUDTPA upon a showing

that the defendant willfully engaged in the prohibited act and made an unwarranted refusal to fully resolve the matter, N.C. Gen. Stat. § 75-16.1(1).

JGR's damages analysis is ongoing, and JGR reserves the right to supplement this response as discovery proceeds and expert analysis is completed, including identification of the persons most knowledgeable regarding such calculations.

**INTERROGATORY NO. 12:** For each Person identified in Your answers to Interrogatory Nos. 1, 4, 5, 6, 7, 8, 9, and 10, identify the devices that Person used between October 1, 2025 and the date of Your answer to communicate about (a) Gabehart, (b) Spire, (c) Jeff Dickerson, or (d) the allegations in the Amended Complaint. Your answer shall identify each such device by type (for example, JGR-issued laptop, JGR-issued mobile phone, personal cell phone, personal laptop or tablet), whether it was JGR-issued or personally owned, and whether JGR has preserved or caused to be preserved data from that device that relates to the subject matter of this Litigation.

**ANSWER:** In addition to the foregoing General Objections, which are incorporated herein by reference, JGR objects to this Interrogatory as overbroad and unduly burdensome in that it seeks discovery beyond what is required by the Federal Rules of Civil Procedure by requesting information about personal devices that are outside of JGR's possession, custody, or control. In particular, JGR objects to the use of the defined term "identify" to the extent it imposes a burden not required by the Federal Rules of Civil Procedure, and will interpret "identify" within its ordinary meaning and understanding. JGR further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable privilege or immunity from discovery. JGR further objects to the definition of the term "JGR" for the reasons stated in General Objection No. 11.

Subject to and without waiving its objections, and maintaining its objection to the extent the Interrogatory seeks information about personal devices outside JGR's possession, custody, or control, JGR supplements as follows. The JGR personnel and the devices within JGR's possession,

50

custody, or control that they used to communicate about the subject matter of this Litigation are identified in the table below.

| Custodian | Devices |
|---|---|
| Joe Gibbs (Founder and Owner) | JGR-issued phone. |
| Heather Gibbs (Co-Owner) | Personal phone. JGR email. |
| Eric Schaffer (Executive Vice President, Chief Commercial Officer, and in-house counsel) | Personal phone. JGR email. |
| David Alpern (President) | Personal phone.  JGR email. |
| Toni Rogers (Chief People Officer) | Personal phone.  JGR email. |
| Todd Berrier (Director of Production, Fabrication, and Vehicle Assembly) | Personal phone.  JGR email. |
| Polly Crisson (Payroll and Benefits Manager) | JGR email. |
| Walter Brown (Competition Director) | Personal phone.  JGR email. |
| Tim Carmichael (Chief Financial Officer) | JGR issued phone. JGR email. |
| David Biro (Content creator and social media manager for JGR driver Ty Gibbs) | Personal phone.  JGR email. |
| Christopher Gabehart (former Competition Director) | JGR issued laptops.JGR issued tablet. JGR email. |

JGR has implemented a litigation hold and has preserved, or caused to be preserved, data relating to the subject matter of this Litigation from the JGR-issued or JGR-controlled devices identified above. JGR has also instructed individual custodians regarding their obligations to preserve data relating to the subject matter of this Litigation.

**INTERROGATORY NO. 13:** Identify the Persons who have or are likely to have knowledge or information concerning JGR's selection of its Cup Series car set ups, including the sources of information and data used to determine those set ups. For each such Person, state the Person's full name, title, current or last known employer, last known address and telephone number, and describe the subject matter of that Person's knowledge relating to JGR's selection of its Cup Series car set ups.

**ANSWER:** In addition to the foregoing General Objections, which are incorporated herein by reference, JGR objects to this Interrogatory to the extent it seeks information protected

PPAB 13992757v3

by the attorney-client privilege, the attorney work-product doctrine, or other applicable privilege or immunity from discovery. JGR further objects to the use of the defined terms "identify" and "relating to" to the extent they are interpreted to impose a burden not required by the Federal Rules of Civil Procedure, and will interpret these terms within their ordinary meaning and understanding. JGR further objects to the definition of the term "JGR" for the reasons stated in General Objection No. 11.

Subject to and without waiving the foregoing objections, JGR's Cup Series car set ups are selected by members of JGR's competition team in conjunction individual race teams. JGR identifies the following individuals—members of JGR's Competition group—as having access to JGR's Race Studio database that contains information concerning JGR's Cup Series car setups and the sources of information and data used to determine those setups, including the setup-selection process, simulation and analytics inputs, tire data, and historical performance data. Unless otherwise stated, each is a current or former JGR employee who may be contacted through JGR's counsel:

- Anthony D. Hamm — Engineering Technician

- Alan C. Kulifay — Engineer

- Andrew Smith — Engineer

- Adam G. Stevens — Crew Chief

- Bryce A. Bratton — Mechanic - Road

- Michael B. Edwards — Mechanic

- Bradley R. Fritts — Mechanic - Lead

- Brendan K. Greene — Manager - Transportation

- Brandon J. Griffeth — Car Chief

- Benjamin J. Smith — Truck Driver

- Brian R. Witcher — Fabricator - Body

- Casey C. Smith — former Engineer - Aerodynamics

- Christopher J. Chase — Mechanic

- Christopher A. Gabehart — former Director - Competition.  May be contacted through his counsel.

- Christopher W. Gayle — Crew Chief

- Christopher J. Gilligan — Chief Information Officer

- Christopher M. Gillin — Asst Dir of Production

- Christopher F. Jones — Quality Control

- Cole W. Lanning — Engineer - Simulation

- Christopher R. Minogue — Engineer-Race Exempt

- Ronald C. Pearn — Engineer

- Cole E. Quinton — Intern - Shop

- Curtis J. Ratzlaff — Software Architect

- Christopher L. Sherwood — Car Chief

- Christopher M. Whitenight — Engineer-Race Exempt

- Daniel W. Robinson — Sr Engineer - Mechanical

- David J. Crate Jr. — Fabricator - Body

- David W. Smith — Quality Control

- Edwin L. Barnes — Engineer

- Evan R. Karl — Engineer-Race Exempt

- Grayson K. Pope — Engineer-Race Exempt

- Gregory A. Rice — Mechanic - Suspension

- Gregory B. Small — Manager - Quality

- Arthur I. Anderson — Pit Crew

53

- Jeffrey T. Adkins — Engineer

- David J. Crate Jr. — Fabricator - Body

- Jeffrey D. Eicher — Mechanic - Lead

- Joey L. Elliott — Quality Control

- Raymond J. Essma — Engineer

- Jeffrey D. Fender — Mechanic - Drivetrain

- Jason R. Fowler — Quality Control

- Jason R. Fowler — Quality Control

- Jaik Halpainy — Engineer-Race Exempt

- Joshua Hansen — Instrumentation Engineer

- Jeffery A. Koons — Mechanic

- Justin D. Langdon — Engineer - Simulation

- Justin R. Mount — Quality Control

- Justin Nottestad — former Mechanic - Lead

- Justin B. Peiffer — Mechanic

- Justin Pierce — Vehicle Prod Engineer

- Jason D. Pulver — Manager - Fabrication

- Justin N. Reising — Data Analyst

- Jesse C. Renner — Technician - Electrical

- Jon D. Rittle — Computational Fluid Dynmc

- John M. Ruggiero — Mechanic - Lead

- Jason D. Shapiro — Mechanic - R & D

- Jerold D. Shires — Mechanic

- James E. Small — Crew Chief

PPAB 13992757v3

- Joseph J. Stockov — Mechanic - Lead

- Jeffrey J. Swearengin — Mechanic - Road

- Kyle C. Abrahims — Engineer-Race Exempt

- Henry K. Broadbent — former Fabricator - Body

- Kevin M. Cremonesi — Engineer

- Kristin L. Denney — Crew Chiefs' Assistant

- Kyle X. Hendershott — Engineer - Metrology Lead

- Kyle McClenathen — Engineer - Aerodynamics

- Kenneth A. Oates III — Engineer

- Kenneth G. Purcell — Pit Crew

- Kurt Romberg — Engineer - Aerodynamics

- Kenny P. Sapper — Mechanic - Suspension

- Kevin M. Stimberis — Fabricator - R & D

- Keith E. Wittmer — Lead Sim Devo Engi

- Lee Herendeen — Mechanic

- Levi W. Porter — Engineer

- Lucas R. Weidner — Engineer

- Marcus Ager — Engineer - Simulation

- Michael C. Bischoff — Fabricator - R & D

- Mark N. Cehon — Mechanic

- Michael G. Engstrom — Manager - Production

- Matthew R. Eshleman — Mechanic - Road

- Matthew A. Faulkner — former Manager - Quality-Exempt

- Matthew D. Galko — Engineer-Race Exempt

55

- Michael Guttilla — former Chief Operating Officer

- Matthew D. Philpott — Mechanic - Road

- Monon Rahman — Performance Engineer

- Matthew A. Tyrrell — Pit Crew

- Nathan D. Bellows — Quality Control

- Nicholas J. Kopycinski — Computational Fluid Dynmc

- Nathan Ladimir — Data Analyst

- Robert P. Grove — Engineer

- Philip A. Keefer — Software Developer

- Phillip J. Ludwig — Fabricator - Components

- Peter Michel — Engineer

- Peyton D. Moore — Pit Crew

- Richard S. Baran — former Manager - Suspension

- Ryan W. Bowers — Engineer-Race Exempt

- Robert D. Christensen — Fabricator - Lead

- Rodney W. Combs Jr. — Quality Control

- Robert B. Grossman Jr. — Quality Control

- Charles F. MacGowan — Dir - Vehicle Systems

- John R. Mathis — Performance Engineer

- Robert R. Schnoor — Data Analyst

- Robert N. Smith — Car Chief

- Ryan O. Towles — former Car Chief

- Ryan Truex — Driver - Simulator & Testing

- Ryan A. Vorster — former Vehicle Dynamics Engineer

PPAB 13992757v3

- Seth D. Chavka — Crew Chief

- Schuyler J. Cox — Intern - Shop

- Sean T. Eaton — Mechanic

- Stephen P. Hoegler — Engineer

- Seth R. Klain — Engineer - Sr. Developmen

- Samuel B. McAulay — Crew Chief

- Scott D. Myers — Shock Specialist-Shop

- Steventon J. Oliver — Engineer - Sr. Developmen

- Scott J. Simmons — Mechanic - Road

- Tyler Allen — Crew Chief

- Todd Berrier — Director - Fabrication

- Todd A. Carmichael — Mechanic - Road

- Thomas P. Dean — Mechanic - Lead

- Robert T. DuPree — former Data Analyst

- William T. Foster — Mechanic

- Travis S. Lallier — former Fabricator - Body

- Tyler J. Lehr — Fabricator Underwing

- Thomas R. Mathews — former Engineer - Metallurgical

- Tyler N. Patterson — Engineer

- Tyler R. Paxton — Manager-Electrical System

- Timothy A. Sparkman — Shock Specialist-Shop

- Walter S. Brown Jr. — Director - Competition

- William H. Hartman — Engineer-Race Exempt

- Wesley G. Lape — Mechanic - Road

PPAB 13992757v3

- William B. Pegram — Mechanic - Lead

- Wesley S. Sherrill — Mechanic - R & D

*[Remainder of page intentionally left blank]*

PPAB 13992757v3

This the 16th day of July, 2026.

PARKER POE ADAMS & BERNSTEIN LLP

/s/ Tory Ian Summey
Sarah F. Hutchins
N.C. Bar No. 38172
Tory Ian Summey
N.C. Bar No. 46437
Keith M. Weddington
N.C. Bar No. 14352
Kevin Marshall
N.C. Bar No. 50856
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Chad F. Lee
N.C. Bar No. 56350
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com
kevinmarshall@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com
chadlee@parkerpoe.com

KING & SPALDING LLC
Danielle T. Williams
dwilliams@kslaw.com
N.C. Bar No. 23283
300 South Tryon Street, Suite 1700
Charlotte, NC 28202
Thomas M. Melsheimer – *Pro Hac Vice*
tmelsheimer@kslaw.com
Chad B. Walker – *Pro Hac Vice*
cwalker@kslaw.com
Tracea Rice – *Pro Hac Vice*
trice@kslaw.com
Alexandra Moore – *Pro Hac Vice*
almoore@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201
*Attorneys for Joe Gibbs Racing, LLC*

59

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this date the foregoing **PLAINTIFF'S SECOND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANT SPIRE MOTORSPORTS, LLC'S FIRST SET OF INTERROGATORIES** was served upon all counsel of record via email.

This the 16th day of July, 2026.

**PARKER POE ADAMS & BERNSTEIN LLP**

<u>/s/ Sarah F. Hutchins</u>
Sarah F. Hutchins
N.C. Bar No. 38172
Tory Ian Summey
N.C. Bar No. 46437
Keith M. Weddington
N.C. Bar No. 14352
Kevin Marshall
N.C. Bar No. 50856
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Chad F. Lee
N.C. Bar No. 56350
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com
kevinmarshall@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com
chadlee@parkerpoe.com

*Attorneys for Joe Gibbs Racing, LLC*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA

## CHARLOTTE DIVISION
## Case No. 3:26-CV-00133-SCR-DCK

| | |
|---|---|
| JOE GIBBS RACING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER GABEHART and SPIRE MOTORSPORTS, LLC,<br><br>Defendants. | **VERIFICATION** |

I, **Dave Alpern**, being first duly sworn, depose and say that I am President of Plaintiff Joe Gibbs Racing, LLC, and that I have read the foregoing Plaintiff's Second Supplemental Responses and Objections to Defendant Spire Motorsports LLC's First Set of Interrogatories, and, after reasonable inquiry and search, verify that the contents thereof are true and accurate to the best of my knowledge, except as to those matters and things therein set forth upon information and belief, and as to those matters and things I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Dave Alpern

This 16th day of July, 2026.