Docusign Envelope ID: CA31FC10-ACAF-8A63-80E5-5D5F3D4B6019

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:26-CV-00133-SCR-DCK**

| | |
|---|---|
| JOE GIBBS RACING, LLC,<br><br>   Plaintiff,<br><br>v.<br><br>CHRISTOPHER GABEHART and SPIRE MOTORSPORTS, LLC,<br><br>   Defendants. | **DECLARATION OF<br>JEFFREY ANDREWS** |

I, Jeffrey Andrews, declare under penalty of perjury, as follows:

1. I am a resident of North Carolina, and I am over eighteen years of age. The statements below are made on the basis of my personal knowledge and belief.

2. I have been made generally familiar with the allegations in this lawsuit, and I swear to this Declaration with the understanding that it will be used to oppose Plaintiff Joe Gibbs Racing, LLC's ("JGR") Motion to Compel Production of Essential Technical Documents.

3. I am President and General Manager at HMS Holdings, LLC d/b/a Hendrick Motorsports ("HMS"). I have been employed with HMS for thirty-four (34) years. In my role with HMS, I am familiar with HMS's overall business operations, record-keeping, confidential business information, and technical alliance with Spire Motorsports, LLC ("Spire") that is further detailed below.

4. The statements below are based on my personal knowledge and experience.

**THE HMS/SPIRE TECHNICAL ALLIANCE**

5. HMS is the winningest team in NASCAR Cup Series History. Founded in 1984, HMS holds the all-time records in every statistical category at the sport's premiere level, including

1

championships (15), points-paying race victories (332), and laps led. HMS currently fields four full-time Chevrolet entries in the NASCAR Cup Series with drivers Alex Bowman, William Byron, Chase Elliott, and Kyle Larson, as well as one in the NASCAR O'Reilly Series with newcomer Corey Day.

6. Like Spire, HMS fields Chevrolet Camaro ZL1 race cars in the NASCAR Cup Series - the components of which are designed and manufactured by Chevrolet, which is owned by General Motors ("GM").

7. HMS is a key partner of GM. Pursuant to that relationship, HMS receives from GM a variety of data, including, among other things, raw data from GM's wind tunnel analysis and tire modeling.

8. Spire and HMS are members of a technical alliance. A technical alliance in the NASCAR industry refers to formal partnerships between two teams that share a common original equipment manufacturer ("OEM"). These alliances are common across the automotive racing industry. While the specific parameters of a technical alliance vary from alliance to alliance, they generally entail some degree of data sharing—including wind tunnel data, simulation data, and chassis setup history—between larger, well-established teams with years of experience (like HMS) and corresponding historical data, and newer, emerging players in the industry (like Spire).

9. Spire and Hendrick's technical alliance is governed by a Racing Services Agreement, pursuant to which HMS provides Spire engine services, technical services, and pit crew services, in exchange for payment from Spire. The Racing Services Agreement contains a strict confidentiality provision that prohibits either Spire or HMS from disclosing information provided pursuant to the agreement to any third party.

2

**JGR'S SETUPS IMPLICATE DATA AND ANALYSIS DERIVED FROM HMS**

10.     Importantly, under the Racing Services Agreement, it is HMS that provides its highly confidential and sensitive race data to Spire, and I understand that this is the information that JGR is seeking in its Motion to Compel.

11.     I understand JGR's working theory is that a side-by-side comparison of JGR's and Spire's files will reveal similarities between JGR's and Spire's racecars that are somehow attributable to JGR information. I further understand that JGR's Motion to Compel seeks the production of purported "essential documents"—including setup files. In fact, requiring the production of Spire's "essential documents" – including setup files – will necessarily reveal highly sensitive confidential information supplied by or derived from HMS.

12.     In particular, Spire's setup files necessarily implicate data from HMS, because HMS provides setup recommendations to Spire based on information HMS receives directly from GM. Specifically, GM shares data with HMS, HMS incorporates that GM data into its own setups, and HMS then shares those setups with Spire. Spire's setups therefore contain and reflect highly confidential information, analysis, and decisions derived directly from HMS. Accordingly, any production of Spire's setups risks reveal HMS's own setup decisions—decisions HMS shared with Spire based on the understanding that neither team would disclose such information to competitor terms.

13.     HMS's confidential information, analysis, and decisions provide a competitive advantage on-track, and that on-track success then leads to financial rewards from being a successful NASCAR Cup Series race team. The race winnings from NASCAR, as well as from HMS sponsors, are a direct result of HMS's on-track performance. Were HMS confidential information and trade secrets developed over forty-two (42) years to become public, HMS would

3

lose its competitive advantage and ultimately the financial rewards that come from success. HMS's financial status allows HMS to stay ahead of other teams by investing in new technologies, professional athletes, and employees that contribute to its winning traditions.

14. The HMS-derived data contained in JGR's setup files is—and must remain—highly confidential information. The contract governing HMS and Spire's relationship contains a lengthy confidentiality provision that specifically prohibits either party from disclosing technical information provided pursuant to the technical alliance agreement—specifically including setup recommendation information—to any third party. Accordingly, the production of Spire's setups, to the extent they necessarily implicate information derived from HMS, would undermine HMS's contractual confidentiality expectation in that information.

**COMPELLING THE PRODUCTION OF SPIRE'S "ESSENTIAL TECHNICAL DOCUMENTS" THAT IMPLICATE HMS WOULD EXPAND THE SCOPE OF THIS LITIGATION AND PREJUDICE HMS**

15. Allowing JGR to obtain discovery of Spire's setups would prejudice HMS by threatening to expose HMS's proprietary data to a direct NASCAR competitor team.

16. Disclosure of Spire's setups would prejudice HMS because, as explained above, those setups are, at least in part, the product of recommendations made by HMS (including recommendations derived from testing opportunities Spire, as a non-key partner with GM, did not have) and shared with Spire pursuant to the terms of their technical alliance. If JGR — a direct Cup Series competitor of HMS — obtained these setups through discovery, it could reverse-engineer aspects of HMS's own setup decisions, such as the direction HMS took following its tire test or the simulation-model outputs HMS chose to share, even though HMS never disclosed its complete setups, processes, or procedures to Spire and would never have agreed to share that information with a competitor like JGR. Because HMS and Spire share information with a mutual

4

Docusign Envelope ID: CA31FC10-ACAF-8A63-80E5-5D5F3D4B6019

contractual expectation of confidentiality, compelling discovery of JGR's setups could effectively hand a competitive rival direct insight into HMS's engineering decision-making without HMS's consent and without affording HMS any opportunity to object.

This is the 31st day of July, 2026.

_____
Jeffrey Andrews, President
HMS Holdings, LLC d/b/a
Hendrick Motorsports