# Exhibit D

Docusign Envelope ID: 2B975EC1-95D4-81B2-8093-B984CB96D3B6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| JOE GIBBS RACING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER GABEHART and SPIRE MOTORSPORTS II, LLC,<br><br>Defendants. | Case No. 3:26-cv-00133-SCR-DCK |

**DEFENDANT SPIRE MOTORSPORTS II, LLC'S RESPONSES AND OBJECTIONS TO PLAINTIFF JGR'S FIRST SET OF INTERROGATORIES**

Defendant Spire Motorsports II, LLC ("Spire"), by and through its undersigned counsel, and pursuant to Rule 33 of the Federal Rules of Civil Procedure, responds and objects to Plaintiff Joe Gibbs Racing's ("JGR") First Set of Interrogatories (the "Interrogatories") as follows:

**GENERAL OBJECTIONS**

1. Spire objects to the Interrogatories, including the definitions and instructions contained therein, to the extent they seek information protected by the attorney-client privilege, the work product doctrine or any other applicable privilege or protection from discovery. Spire will not respond to any Interrogatory in a manner that divulges or discloses information protected by any applicable privilege or protection. Any disclosure of privileged or protected information is unintentional and inadvertent and does not constitute a waiver of such privilege or protection.

2. Spire objects to each Interrogatory that is compound, conjunctive, or disjunctive to the extent that, when aggregated with all other interrogatories served, would exceed the 25-Interrogatory limit permitted by this Court.

Docusign Envelope ID: 2B975EC1-95D4-81B2-8093-B984CB96D3B6

3. Discovery in this matter is in its early stages. Spire has not completed its investigation of the facts, witnesses, documents, or analysis of available information. The following responses are therefore based on a reasonable and diligent search of the information presently available to and within Spire's custody, control, or possession. Spire reserves the right to amend these responses, including objections, upon the discovery of additional information. The fact that Spire has responded to any Interrogatory is not intended and shall not be construed as a waiver of all or any part of any objection to any Interrogatory.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

1. Spire objects to the definition of "JGR Confidential Information and Trade Secrets," as vague, ambiguous, and overbroad because it relies on inherently subjective and undefined terms such as "sensitive," "confidential," and "proprietary," and therefore does not provide an objective or reasonably discernible scope. Spire further objects to that definition because JGR still has not produced the trade secrets it alleges Gabehart misappropriated, nor has it identified those trade secrets with sufficient specificity. The definition also improperly requires Spire to speculate as to what JGR considers to be sensitive, confidential, proprietary, or otherwise protected information and to anticipate JGR's subjective characterizations and internal designations. It further calls for Spire to make legal determinations as to what constitutes a "trade secret" under applicable law, which is a legal conclusion that depends on multiple factors and is not a determination Spire is required to make in responding to discovery. Accordingly, to the extent any of the following Interrogatories ask for information about JGR's Confidential Information and Trade Secrets, Spire's response will be limited to the specific file names JGR contends are at issue in this case. Spire is amenable to supplementing its responses if and when JGR identifies any further pieces of allegedly Confidential Information and/or Trade Secrets it believes are at issue.

Docusign Envelope ID: 2B975EC1-95D4-81B2-8093-B984CB96D3B6

2. Spire objects to the definition of "JGR" as vague, ambiguous, and overbroad to the extent it extends beyond Plaintiff Joe Gibbs Racing, LLC to include "each of its respective subsidiaries and affiliates, and all owners, officers, directors, employees, agents, consultants, attorneys, and/or others acting on their behalf," because it calls for Spire to determine which unknown third parties may arguably be subsidiaries, affiliates, or otherwise "acting on behalf of" JGR, and thus improperly requires Spire to speculate about JGR's corporate relationships, internal structures, and purported agency or affiliation with third parties when identifying potentially responsive information.

3. Spire objects to the definition of "You," "Your," and "Spire" because that definition includes Spire's "employees," "agents," and "consultants," without regard to or distinction between actions taken by such individuals in their official or individual capacities and without regard for whether those actions were taken before or after they became employed or affiliated with Spire. Spire will not produce documents in the custody of its owners, officers, directors, employees, agents, consultants, attorneys and/or others acting on their behalf to the extent those documents relate to actions taken in those individuals' individual capacities and/or taken prior to being employed by or affiliated with Spire. Spire further will not produce documents in the custody of its subsidiaries or affiliates.

## OBJECTIONS AND RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:** Identify and describe the process by which Spire created, defined, and approved the Chief Motorsports Officer position, including: (a) the date on which Spire first conceived of creating such a position; (b) the identity of each person who participated in defining, approving, or modifying the scope, title, duties, compensation, bonus structure, equity (phantom shares), or reporting structure of the position; (c) whether the position existed—in name or in

functional equivalent—at any time before Christopher Gabehart was identified as a candidate; (d) if new, the purpose of creating the role; (e) all iterations or drafts of any job description, scope-of-role document, compensation package, or term sheet prepared in connection with the position, and the author and date of each; (f) all changes made to the position's compensation, defined duties or scope before Gabehart began performing services for Spire, including the date of each change, the person who proposed it, and any stated or actual reason; (g) all changes made to the position's compensation, defined duties or scope after Gabehart began performing services for Spire, including the date of each change, the person who proposed it, and the stated or actual reason; and (h) any market analysis or research regarding how the position's compensation, duties, or scope compare to similar roles or positions in the NASCAR industry.

**SPIRE'S OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 1**: Spire objects to Interrogatory No. 1 as overbroad, unduly burdensome, and vague. Specifically, the phrase "functional equivalent" in subpart (c) is undefined, and it is unclear what standard JGR intends to apply in determining whether a prior role constitutes a "functional equivalent" of Gabehart's Chief Motorsports Officer role. The phrase "any market analysis or research" in subpart (h) is similarly vague and unlimited in scope, arguably encompassing any document that in any way references compensation or duties in the NASCAR industry, rendering subpart (h) overbroad and unduly burdensome. Spire further objects to Interrogatory No. 1 to the extent it calls for disclosure of communications between Spire and its counsel, or documents and information prepared by or at the direction of counsel, concerning the creation, structuring, approval, or compensation of the Chief Motorsports Officer position. Spire will not provide any response that implicates materials protected by such privilege(s).

Subject to and notwithstanding the foregoing objections, Spire responds to Interrogatory No. 1 by referring JGR to the Declaration of Jeffrey Dickerson, Dkt. 45-2. Spire further responds as follows:

(a) Jeff Dickerson first conceived of the position that would ultimately be titled Chief Motorsports Officer during the fall of 2025.

(b) Jeff Dickerson and Dan Towriss were involved in defining, approving, or modifying the scope, title, duties, compensation, bonus structure, and/or reporting structure of the position.

(c) Many of the duties and responsibilities assigned to the Chief Motorsports Officer were previously performed by Jeff Dickerson, in his capacity as co-owner of Spire. There was no other, prior, "functional equivalent" of the Chief Motorsports Officer role being performed at Spire.

(d) The purpose of creating the Chief Motorsports Officer role was to relieve Dickerson of the responsibility of managing the operation of Spire's diversified, varied racing programs and ancillary business endeavors, and to allow Jeff Dickerson to focus on strategic business initiatives. The Chief Motorsports Officer role is an executive-level role focused on long-term, organization-wide motorsports strategy. The role includes strategic planning and program development, resource allocation and infrastructure growth, and engagement/liaising with TWG Motorsports and other important partners, including NASCAR and sanctioning bodies for other racing series.

With respect to subpart (e), and pursuant to Spire's rights under Federal Rule of Civil Procedure 33(d), Spire's response can be derived or ascertained from non-privileged Documents in Spire's possession, custody, and control that are being produced in this litigation in response to JGR's Requests for Production Nos. 1(a), 1(b), and 1(c). Those documents will include non-privileged (1) communications and documents regarding the creation and development of the Chief Motorsports Officer position; (2) drafts and final versions of job descriptions, scope-of-role

documents, compensation packages, and term sheets relating to the position; and (3) communications and documents reflecting or referencing the duties associated with the Chief Motorsports Officer role—to the extent those documents exist.

With respect to subparts (f), (g), and (h), Spire responds that it has not made any changes to the compensation, duties, or scope of the Chief Motorsports Officer position after Gabehart began performing services for Spire, nor has it conducted any market analysis or other research concerning the Chief Motorsports Officer's role, compensation, duties, or scope as compared to similar roles or positions in the NASCAR industry. However, as a result of the Court's preliminary injunction order—which temporarily enforces the ambiguous restrictive covenant in Gabehart's employment agreement with JGR by prohibiting Gabehart from performing for Spire "services of the general type of services" he provided JGR as its Competition Director—Spire has taken a conservative approach to Gabehart's functions at Spire and has prohibited Gabehart from directing Cup Series activities. Further, JGR's baseless litigation against Spire has resulted in a chilling effect for Spire employees. Spire and its employees have shied away from requesting assistance from Mr. Gabehart on certain matters, even those not implicated by the Court's preliminary injunction Order against Gabehart, Dkt. 78, because of concerns that JGR will misrepresent those interactions. JGR's lawsuit has imposed a burden on Spire's ability to go about its day-to-day business in a normal and lawful fashion.

**INTERROGATORY NO. 2**: Identify all promises, representations and statements Gabehart made to Spire concerning services, information, performance benefits and/or added value he would provide to Spire as an employee and identify all compensation, benefits or equity interests Spire promised, offered or suggested it would provide to Gabehart or has provided Gabehart in exchange for or in recognition of those services, information, performance benefits and/or added value.

Docusign Envelope ID: 2B975EC1-95D4-81B2-8093-B984CB96D3B6

**SPIRE'S OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 2**: Spire objects to Interrogatory No. 2 as overbroad, unduly burdensome, and disproportionate to the needs of the case. Specifically, the Interrogatory calls for "statements" Gabehart made to Spire, which could encompass an unlimited universe of communications between Gabehart and Spire, including routine employment discussions unrelated to the claims or defenses in this litigation. Spire further objects to Interrogatory No. 2 to the extent it seeks information that is not relevant to any party's claim or defense, including "suggestions" or "offers" that were never accepted or agreed to and "services, information, performance benefits and/or added value" that do not concern JGR's allegedly misappropriated trade secrets. Spire also objects to Interrogatory No. 2 to the extent it calls for the disclosure of communications between Spire and its counsel, or documents and information prepared by or at the direction of counsel, including documents and communications providing legal analysis or advice concerning what Spire "would provide to Gabehart." Spire will not provide any response that implicates information protected by such privilege(s).

Subject to and without waiving the foregoing objections, Spire responds as follows: Spire agreed to pay Gabehart a salary and performance-related bonus, as set forth in Section 6 of Gabehart's Employment Agreement with Spire, which Spire has produced in this litigation at Spire_0000286–298. Spire has not reached an agreement to provide Gabehart any other compensation, benefits or equity interests in exchange for Gabehart's services to Spire. Gabehart agreed, via contract, to serve as the Chief Motorsports Officer for Spire, as reflected in his Employment Agreement. To Spire's knowledge, at no time did Gabehart offer to or suggest that he would provide any purported JGR trade secrets to Spire. To the contrary, Gabehart signed a Non-Disclosure Agreement with Spire, pursuant to which Gabehart agreed that he would maintain the confidentiality of any JGR Confidential Information and that he would not disclose any such

Docusign Envelope ID: 2B975EC1-95D4-81B2-8093-B984CB96D3B6

information to Spire or use such information in connection with services performed for Spire. *See* Spire_0000404.

**INTERROGATORY NO. 3**: Identify all Communications between any Spire personnel, or any other person affiliated with Spire or TWG Motorsports (including Jeffrey Dickerson, Daniel Towriss, William Anthony or any person or entity acting on their behalf) and Gabehart or any person or entity acting on Gabehart's behalf from October 1, 2025, through February 21, 2026, regarding: (a) Gabehart's potential employment with or provision of services to Spire; (b) Gabehart's separation from JGR, including the circumstances and terms thereof; or (c) any restrictive covenant, non-competition, non-solicitation, or confidentiality obligation owed by Gabehart to JGR. For each Communication, include: (a) the date; (b) the participants; (c) the method of communication (e.g., telephone, text message, email, in-person meeting, messaging application, or another form of electronic communication); (d) the subject matter discussed; and (e) whether the communication addressed Gabehart's potential employment at Spire, any aspect of JGR's operations, personnel, or Confidential Information, or any discussion of indemnification or legal liability arising from Gabehart's JGR Employment Agreement or Gabehart's employment by Spire.

**SPIRE'S OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 3**: Spire objects to Interrogatory No. 3 as overbroad, unduly burdensome, and vague, to the extent it calls for the identification of communications between anyone affiliated with Spire or TWG and Gabehart and anyone acting on his behalf—which communications are not relevant to the claims or defenses in this lawsuit. Spire will accordingly limit its response to the identification of non-privileged communications between Christopher Gabehart and Jeffrey Dickerson, Daniel Towriss, and William Anthony. Spire also objects to Interrogatory No. 3 on the basis of the attorney-client

privilege to the extent it calls for Spire to characterize or render legal conclusions about the subject matter of the referenced communications—including whether it addressed "indemnification" or "legal liability." Spire will not provide any response that implicates materials protected by such privileges.

Subject to and notwithstanding the foregoing objections and consistent with Spire's rights under Rule 33(d) of the Federal Rules of Civil Procedure, Spire responds to Interrogatory No. 3 by stating that Spire's response can be derived from the documents and communications Spire has and/or will produce in connection with JGR's Requests for Production Nos. 1(a), 1(d), 2(a), 2(b), and 4. Those documents will contain non-privileged communications between Gabehart, Jeffrey Dickerson, William Anthony, and/or Daniel Towriss, concerning Gabehart's potential and ultimate employment with Spire, Gabehart's separation from JGR, and Gabehart's contract with JGR—to the extent such documents exist.

**INTERROGATORY NO. 4**: Identify each Spire officer, director, owner, employee, agent, or representative who, at any time before this lawsuit was filed on February 19, 2026, had knowledge or was informed that Gabehart was subject to any restrictive covenant, non-competition obligation, non-solicitation obligation, or confidentiality obligation to JGR, and for each such person state: (a) the date on which that person first obtained such knowledge; (b) the source of the knowledge (including whether it was obtained from Gabehart, from a document, from counsel, or from another source, and identify that source); (c) what the person understood the restriction to be (including duration, geographic scope, and activity scope); and (d) all steps Spire took—through counsel or otherwise—to verify the existence, scope, or enforceability of any such restriction, including any requests for copies of employment agreements, any legal opinions sought, and any written confirmations obtained from Gabehart or third parties.

Docusign Envelope ID: 2B975EC1-95D4-81B2-8093-B984CB96D3B6

**SPIRE'S OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 4**: Spire objects to Interrogatory No. 4 on the grounds that it is premised on a legal conclusion that Spire disputes—namely, that Gabehart was or is "subject to" any restrictive covenant, non-competition obligation, non-solicitation obligation, or confidentiality obligation to JGR. Whether any such obligation exists, is enforceable, and binds Gabehart is a central legal dispute in this litigation, and Spire expressly denies that any enforceable restriction applied to Gabehart. Accordingly, Spire will construe this Interrogatory as requesting the identification of Spire officers, directors, owners, employees, agents, or representatives who, before February 19, 2026, had knowledge of or were informed of JGR's belief or contention that Gabehart was subject to a restrictive covenant, non-competition, non-solicitation, or confidentiality obligation to JGR.

Spire further objects to Interrogatory No. 4 as overbroad, unduly burdensome, and vague. Specifically, the Interrogatory calls for identification of every Spire "officer, director, owner, employee, agent, or representative" who possessed any knowledge, however attenuated, of any restrictive covenant obligation purportedly owed by Gabehart to JGR, without any limitation as to subject matter, relevance, role, or involvement in the events at issue in this litigation. To the extent the Interrogatory seeks to identify lower-level employees, agents, or representatives whose awareness of Gabehart's alleged obligations played no role in Spire's hiring decisions or the events giving rise to this dispute, the information sought is not relevant to any party's claim or defense and is not proportional to the needs of this case. Further, the state of mind or awareness of persons who were not involved in—and did not influence—the decision to employ Gabehart or the manner of his employment has no probative value as to any element of any claim at issue and is therefore outside the proper scope of discovery. Spire also objects to Interrogatory No. 4 to the extent it calls for information covered by the attorney-client or other applicable privilege, including, most

Docusign Envelope ID: 2B975EC1-95D4-81B2-8093-B984CB96D3B6

specifically, information about whether Spire learned of any alleged restriction from counsel, in subpart (b), and the "steps Spire took" "through counsel" to assess the referenced restrictions, in subpart (d). Spire will not provide a response that implicates materials protected by such privilege(s).

Subject to and without waiving the foregoing objections, Spire responds by directing JGR to the Declaration of Jeffrey Dickerson, Dkt. 45-2, and Declaration of Bill Anthony, Dkt. 45-3. Spire further states that Jeff Dickerson became aware that Gabehart was subject to a non-compete restriction with JGR on or around November 11, 2025, when Gabehart informed Dickerson that he and JGR had agreed to a mutual separation on November 6, 2025. Based on Gabehart's representations, Dickerson understood that Gabehart's restrictive covenant was limited to one week in duration. Dickerson had no independent knowledge of the specific duration, geographic scope, or activity scope of the restriction at that time.

William Anthony learned that Spire was interested in hiring Gabehart in the fall of 2025, from Dickerson. Anthony understood from Dickerson that the duration of any non-compete applicable to Gabehart was one week, and that Gabehart and JGR were negotiating a mutual separation agreement. The first time Anthony understood that JGR contended Gabehart was subject to a non-compete that prohibited him from joining Spire as its Chief Motorsports Officer was in February 2026, during a phone call with Eric Schaffer during which Mr. Schaffer explained that JGR intended to add Spire as a defendant in its lawsuit against Gabehart. During that phone call, Anthony asked Schaffer whether JGR contended that Gabehart was subject to an operational non-compete, and Mr. Schaffer—for the first time—responded affirmatively.

Neither Dickerson, nor William Anthony, viewed a copy of Gabehart's employment agreement with JGR until JGR filed this lawsuit. Except for any facts disclosed from Dickerson

to Anthony specifically related to any Gabehart non-compete in the fall of 2025, Spire maintains the attorney-client privilege with respect to any other internal communications with Anthony to the extent such communications involved seeking or providing legal advice. Spire also maintains the attorney work product protection with respect to any communications or documents created for the purpose of litigation.

**INTERROGATORY NO. 5**: Identify all agreements, understandings, or arrangements—whether written, oral or nonverbal—between Spire and Gabehart (or any third party on his behalf) to pay, advance, compensate, reimburse, or indemnify Gabehart for any legal fees, costs, expenses, judgments, or damages arising from or related to this litigation or any claims by JGR. For each, state: (a) the date of the agreement or understanding; (b) the parties; (c) the terms (including any caps, conditions, or triggers); (d) the total amounts paid or advanced to date; (e) the person(s) who approved the expenditure; and (f) where such payments or obligations are recorded in Spire's books and records.

**SPIRE'S OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 5**: Spire objects to Interrogatory No. 5 as overbroad and unduly burdensome. Specifically, the Interrogatory is overbroad in that it seeks information related to all agreements, understandings, or arrangements to compensate, reimburse, or indemnify Gabehart for fees, costs, expenses, judgments, or damages arising from "any claims by JGR"—a phrase that is not limited to the claims asserted in this lawsuit and would encompass any past, present, or future dispute between Gabehart and JGR regardless of whether it bears any relationship to the claims or defenses actually at issue in this litigation.

Subject to and without waiving the foregoing objections, Spire responds as follows: There are no agreements, understandings, or arrangements between Spire and Gabehart or a third party

acting on Gabehart's behalf to indemnify Gabehart for any legal fees, costs, or otherwise associated with this litigation or any other claims brought against Gabehart by JGR.

**INTERROGATORY NO. 6**: Identify all payments, accruals, transfers of items of value or other forms of consideration made or provided by Spire, or any person or entity affiliated with Spire, to or for the benefit of Gabehart, a family member of Gabehart, an entity owned or controlled by Gabehart or a family member of Gabehart from October 1, 2025, to the date of Your response to this Interrogatory and with respect to each payment, accrual, transfer of an item of value or other form of consideration, identify (a) the date of such payment, accrual or transfer, (b) the person or entity that made such payment, accrual or transfer, (c) the amount of such payment, accrual or the value of such transferred item, (d) the reason for such payment, accrual or transfer, and (e) all Documents relating to such payment or transfer.

**SPIRE'S OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 6**: Spire objects to Interrogatory No. 6 as overbroad, unduly burdensome, irrelevant, and vague. Specifically, the Interrogatory calls for Spire to identify payments, accruals, transfers of "items of value" and "other forms of consideration" made not only by Spire but an undefined universe of affiliated persons or entities, for the benefit of not only Gabehart, but a similarly undefined universe of affiliated persons or entities. Payments, accruals, transfers of items of value, or other forms of consideration offered to anyone besides Gabehart are not relevant to the claims and defenses in this litigation, and even if relevant, are not proportionate to the needs of this case, which concerns the conduct of Spire and Gabehart. The Interrogatory is also objectionably vague because it does not define "items of value" or "other forms of consideration," making the full scope of the Interrogatory impossible to ascertain with reasonable certainty. As such, Spire will limit its response to payments, accruals, transfers of items that, in Spire's estimation, are "of value," that Spire made

to Gabehart. Spire also objects to subpart (e) to the extent it purports to require the production of documents through an interrogatory response, and will not separately produce documents in response to this Interrogatory that are not also independently responsive to a Request for Production.

Subject to and without waiving the foregoing objections, Spire responds as follows: Spire has paid Gabehart his regular salary during the course of his employment, on the following dates and in the following amounts (before taxes and withholdings):

- February 27, 2026 - $97,692.31
- March 13, 2026 – $133,111,11
- March 27, 2026 – $132,111,11
- April 10, 2026 - $112,111.11
- April 24, 2026 - $112,111.11
- May 8, 2026 - $112,111.11
- May 22, 2026 - $132,111.11
- June 5, 2026 - $112,111.11
- June 18, 2026 - $132,111.11

Those payments were made for the purpose of compensating Gabehart in the ordinary course of his employment with Spire. Spire has also promised to provide Gabehart certain fringe benefits in connection with his employment—such as health insurance and use of Spire's aircraft—as set forth in the Employment Agreement. Spire_0000286–298. Spire has not made any other payments, accruals, transfers of items of value, or offered other forms of consideration to Gabehart during the relevant time period. As for subpart (e), Spire will produce payroll records reflecting the foregoing payments pursuant to Rule 33(d) to the extent such documents exist and are responsive to JGR's Request For Production 1(g).

**INTERROGATORY NO. 7**: State with specificity: Gabehart's title, job duties, responsibilities, reporting structure, and activities performed at Spire, or on behalf of or for the benefit of Spire, since February 9, 2026, including: listing and describing every activity Gabehart has performed or

Docusign Envelope ID: 2B975EC1-95D4-81B2-8093-B984CB96D3B6

participated in that relates in any way to the competition or performance of any Spire NASCAR Cup Series entry, including but not limited to: race strategy development or execution; car setup selection, car adjustment (e.g., brake bias, tire air pressure, track bar/wedge, etc.), or approval; engineering or aerodynamic decisions; simulation planning, execution or review or analysis of simulation outputs; data analysis or performance analytics; practice or qualifying session involvement; all activities at a race track or racing venue during any Race Weekend; all activities and Communications, directly or indirectly, in support of Spire's NASCAR Cup Series teams during any Race Weekend; attendance or presence at Spire's "war room" during any NASCAR Cup Series race or Race Weekend, race-day pit box or communications participation; post-race debrief or performance review; driver feedback sessions, and any communications with Spire's racecar drivers concerning race strategy or performance. For each such activity, state: (a) what the activity was (describe with specificity); (b) when it occurred (date and, if applicable, time or session); (c) who else participated or was present (name, title, and role); (d) where it took place (specific location, facility, or platform); (e) how Gabehart was involved (e.g., directed, advised, observed, approved, received information, provided input, asked or answered questions); and (f) what information, data, or work product Gabehart provided, accessed, reviewed, created, used, or received in connection with the activity.

**SPIRE'S OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 7**: Spire objects to Interrogatory No. 7 on the grounds that it is overbroad, unduly burdensome, and not proportionate to the needs of the case. The Interrogatory is overbroad on its face, as it demands a granular accounting of every activity, communication, attendance, presence, and piece of information accessed by Gabehart across every conceivable facet of Spire's NASCAR Cup Series operations for the duration of his employment at Spire. As a result, responding to Interrogatory No. 7 is not

Docusign Envelope ID: 2B975EC1-95D4-81B2-8093-B984CB96D3B6

possible, because it would require documenting each and every activity Gabehart has engaged in, each person he has communicated with, and each interaction he has had for each day during the past five months. These details are not proportionate to the needs of the case, nor to what could reasonably be obtained through less burdensome means. Spire further objects to Interrogatory No. 7 because it seeks information for which Gabehart is the primary source. To the extent this Interrogatory calls for a description of Gabehart's "activities," without limitation, Spire will limit its response to identifying any activities Gabehart has engaged in that concern Cup Series race strategy and/or execution, or that provide direct support to or evaluation of Spire's Cup Series teams—to the extent any such activities exist.

Subject to and without waiving the foregoing, Spire responds by directing JGR to the Declaration of Jeffrey Dickerson, Dkt. 45-2. Spire further responds as follows: Gabehart is Spire's Chief Motorsports Officer. That is an enterprise-wide, strategic, executive level position, in which Gabehart is responsible for developing strategic initiatives and maintaining operational oversight across Spire's multi-series motorsports enterprise, which includes entries in the NASCAR Cup Series, NASCAR Truck Series, High Limit Sprint Car Series, Dirt Late Model racing, Pavement Late Model Racing, and USAC Silver Crown. In this capacity, Gabehart is responsible for evaluating opportunities to expand into new racing series, maximizing development potential in existing racing series, and developing Spire's role in the grassroots racing series that have contributed to the groundswell of support Spire has experienced in the last few years. As Chief Motorsports Officer, Gabehart is also responsible for executive and technical-level personnel management, ensuring proper resource allocation across all of the racing series Spire participates in, spearheading medium to long term infrastructure planning and execution, managing and developing Spire's relationships with its vendors, manufacturers, and partners, including Chevrolet

and Hendrick Motorsports, collaborating with TWG Motorsports to discuss and develop common best practices across TWG Motorsports' portfolio of teams (including Andretti Global, TWG Motorsports' IndyCar team), and working with NASCAR executives as an advocate for Spire. Gabehart has not contributed to Spire's Cup Series strategy and/or decision making, other than high-level commentary consistent with his role as a Spire executive.

With respect to Gabehart's "activities," and consistent with Spire's rights under Rule 33(d) of the Federal Rules of Civil Procedure, Spire responds to Interrogatory No. 7 by stating that Spire's response can be derived from the documents and communications Spire has and/or will produce in connection with JGR's Request for Production Nos. 8, 9(a), 9(b), and 9(c). Those documents will contain non-privileged communications relating to participation in Spire's NASCAR Cup Series race strategy, racecar set ups, pit crew operations, analytics, and engineering, as well as communications directing, inviting, or permitting Gabehart to participate in Cup Series competition related decisions, communications reflecting such participation in Cup Series competition-related decisions, and records reflecting Gabehart's responsibilities during NASCAR Cup Series race weekends—to the extent such documents exist.

**INTERROGATORY NO. 8**: Identify all Communications, directives, policies, or instructions—whether formal or informal, written or oral—issued by or at the direction of any Spire officer, director, owner, manager, or attorney to any Spire personnel concerning what could or could not be disclosed about Christopher Gabehart's role, duties, title, or involvement in Spire's operations, whether internally or to any third party (including, but not limited to, the media, NASCAR officials, sponsors, or other racing teams), including any instruction or guidance related to, discouraging or prohibiting discussion of Gabehart's activities or responsibilities. For each such

Docusign Envelope ID: 2B975EC1-95D4-81B2-8093-B984CB96D3B6

Communication, directive, policy, or instruction, state: (a) the date; (b) the person(s) who issued it; (c) the recipient(s); (d) the form or medium; and (e) the substance of the instruction.

**SPIRE'S OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 8**: Spire objects to Interrogatory No. 8 on the grounds that it is vague and seeks information protected by the attorney-client privilege or other applicable privilege. Specifically, the Interrogatory fails to define what it means for something to be "disclosed" in this context, and conflates communications made internally at Spire with those made to unidentified and unlimited third parties. Accordingly, the Interrogatory is impossible to answer with reasonable certainty without speculation as to its intended scope. The Interrogatory also expressly seeks information and communications issued by or at the direction of Spire's attorneys, which are protected from disclosure by the attorney-client and work product privilege. Spire will not respond to this Interrogatory to the extent it calls for disclosure of such materials and/or information.

Subject to and notwithstanding the foregoing, Spire responds as follows: There are no communications, directives, policies, or instructions issued by or at the direction of any Spire officer, director, owner, or manager, concerning what could or could not be disclosed internally within Spire or to the media, NASCAR officials, sponsors, or other racing teams, about Gabehart's role, duties, title, or involvement in Spire's operations.

**INTERROGATORY NO. 9**: Identify all electronic systems, physical spaces, and communication channels to which Gabehart has been granted access or used since October 1, 2025, including: (a) all IT systems, applications, servers, cloud platforms, shared drives, databases, or software tools (state the system name, administrator, where data is stored, and retention period for logs); (b) all physical locations at Spire's facilities or at-track locations where race strategy, car setup, car adjustments (e.g., brake bias, tire air pressure, track bar/wedge, etc.), engineering, or competition

decisions are made or discussed (including but not limited to engineering rooms, "war rooms," "war wagons," pit box communication areas, simulator facilities, and garages, and technical areas); and (c) for each physical location, state whether electronic badge access or other access control is required, who grants such access, whether badge scan or access logs exist, the system that stores such logs, the retention period, and how logs are retrieved or exported. Provide the total number (or best estimate with method of estimation) of Gabehart's accesses to each such location since October 1, 2025.

**SPIRE'S OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 9**: Spire objects to Interrogatory No. 9 on the grounds that it is irrelevant, overbroad, vague, and seeks information disproportionate to the needs of the case. The Interrogatory is irrelevant on its face because it demands identification of every electronic system, physical space, and communication channel to which Gabehart has been granted access or has used since October 1, 2025, without any limitation to systems, spaces, or channels bearing a reasonable relationship to the claims or defenses at issue in this litigation. Relatedly, the Interrogatory is overbroad because it is not limited to Spire's own systems, facilities, or communication infrastructure, and therefore purports to require Spire to identify and describe electronic systems, physical spaces, and channels owned or operated by third parties over which Spire has no control and about which it may have no knowledge. Spire will limit its response to electronic systems, physical spaces, and communication channels maintained or used by Spire. Finally, the Interrogatory is vague and ambiguous as to the phrase "granted access or used" because it is unclear whether that phrase encompasses systems to which Gabehart holds active credentials, systems he has merely logged into, systems he has received information from without directly accessing, or communication channels on which he has been copied or included without his initiation. As a direct result of these problems, Spire is unable to ascertain

Docusign Envelope ID: 2B975EC1-95D4-81B2-8093-B984CB96D3B6

the total number of accesses to each location or system as requested, and declines to speculate on this issue. Finally, Spire objects to Interrogatory No. 9 to the extent it seeks the existence, storage, retention, and retrieval or export of badge-scan or other access logs as overbroad and disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, Spire responds as follows:

(a) With respect to Gabehart's access to Spire's electronic systems and communication channels, Spire directs JGR to the Declaration of Brandon Bridges, filed in this litigation on February 27, 2026, Dkt. 19, which states that Gabehart was given a Spire-issued laptop (Dell Precision laptop with serial number 85G7574) and given access to a Spire email account, Microsoft Teams, and a Microsoft OneDrive account linked to Gabehart's Spire email address, on February 17, 2026. On that same day, Gabehart was also given access to two SharePoint (Spire's document management system) sites—titled "Spire Motorsports LLC" and "Spire Communications."

On or around February 27, 2026, shortly after being named as a Defendant in this lawsuit, Spire secured Gabehart's Spire-issued laptop and sent it to Spire's forensic examiner, Lighthouse, for preservation. On March 18, 2026, and out of an abundance of caution, Spire revoked Gabehart's access to Spire's email, Teams, OneDrive, and SharePoint systems, after its forensic examiner reported that it had located certain "user files" on Gabehart's Spire-issued laptop containing file names similar to those identified in the Declaration of Clark Walton. Specifically, Spire's forensic examiner located user files—meaning files a user interacted with, modified, created, or otherwise accessed—named "CG Focus Plan.pptx," "Focus Plan.pdf" and "2026 CG Master.xlsx," on the laptop. More information about these documents is provided in response to Interrogatory No. 13, below. No other user files were identified as of interest by Spire's forensic

examiner. Since March 18, 2026, Gabehart has not had any access to any of Spire's electronic systems or devices.

With respect to subpart (b), Spire responds that Gabehart has access to Spire's facility located at 351 Mazeppa Rd., Mooresville, NC 28115, including Spire's offices, shop, and war room. Gabehart was in Spire's war room for the Daytona 500, although he did not provide substantive input or feedback. To Spire's knowledge, Gabehart has not been in the war room before any other race this season. Gabehart did not participate in any real-time discussions with Spire personnel via intercom, radio, or otherwise during the Daytona 500 (or other Cup Series races). With respect to race day facilities, Gabehart has access to Spire's hauler and the garage stall. While Spire's official race-day strategy meetings generally take place in its hauler, Gabehart has not been present for those meetings. Gabehart has access to a number of other Spire facilities for its various racing series and has been present at truck series races, truck series qualifying, truck series practices, IndyCar events for TWG, late model races, etc.

With respect to subpart (c), Spire responds that Gabehart has a key card that gives him access to any of the physical spaces in Spire's building.

**INTERROGATORY NO. 10**: Describe Spire's end-to-end process for creating racecar specification, design, setup, car adjustments (e.g., brake bias, tire air pressure, track bar/wedge, etc.), training pit crews, evaluating race performance, or competition engineering for its NASCAR Cup Series entries, including the process for making any changes to those processes, including: (a) who proposes changes (by name, title, and role); (b) who evaluates proposals; (c) who approves implementation; (d) who implements approved changes; (e) the full chain of Communication from Spire's technical staff through Spire's management to Spire's OEM partner (Chevrolet/General Motors) and any alliance partner (including Hendrick Motorsports); and (f) all formal channels

Docusign Envelope ID: 2B975EC1-95D4-81B2-8093-B984CB96D3B6

used in this process (including specific meetings, Microsoft Teams channels, email distribution lists, or other systems). For each person identified, state their name, title, and role in the process. State whether Gabehart has participated in, attended, observed, or received outputs from any step of this process since October 1, 2025, and if so, describe each instance, including dates, the identity of participants, subjects addressed and Documents related to such Communications.

**SPIRE'S OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 10**: Spire objects to Interrogatory No. 10 on the grounds that it is overbroad, irrelevant, seeks information disproportionate to the needs of the case, and seeks disclosure of confidential and/or proprietary information. The Interrogatory is overbroad and irrelevant because it demands a comprehensive description of Spire's internal processes without regard for whether Gabehart had any involvement in, exposure to, or effect on, those processes, and therefore has no relevance to the claims and defenses at issue in this litigation. The Interrogatory is also overbroad and irrelevant because it asks for information about Spire's processes, without limitation to Spire's Cup Series processes, which are the only processes conceivable at issue in this case. The Interrogatory is also vague to the extent it requests information about whether Gabehart "observed" or "received outputs from any step" of these processes—both undefined and impermissibly vague terms in this context. For the purposes of this Response, Spire construes both terms to call for the identification of instances where Gabehart was personally involved in the creation or modification of the referenced processes. Spire further objects to the Interrogatory to the extent it seeks disclosure of confidential and proprietary information regarding Spire's internal processes, competitive operations, and technical methodologies, the disclosure of which could cause competitive harm to Spire. Accordingly, Spire will limit its response to this Interrogatory to information about the creation of, or change in, any of Spire's Cup Series racecar specification, design, setup, car adjustments,

Docusign Envelope ID: 2B975EC1-95D4-81B2-8093-B984CB96D3B6

training pit crews, formal race performance evaluation, or competition engineering processes, in which Gabehart personally participated in, attended to, or received outputs from.

Subject to and notwithstanding the foregoing objections, Spire responds as follows: Gabehart has not personally participated in or attended to Spire's racecar specification, design set up, car adjustment, pit crew training, formal race performance evaluation, or competition engineering processes for Spire's NASCAR Cup Series team since October 1, 2025. Further, consistent with Spire's rights under Rule 33(d) of the Federal Rules of Civil Procedure, Spire responds to Interrogatory No. 10 by stating that Spire's response with respect to Gabehart's receipt of "outputs" from the referenced processes can be derived from the documents and communications Spire has and/or will produce in connection with JGR's Request for Production Nos. 7, 8, and 9.

**INTERROGATORY NO. 11**: Since Gabehart began performing services for Spire, identify all changes to Spire's technical operations, engineering processes, or competitive methodologies, including but not limited to changes to the following: (a) aerodynamic development approach, aerodynamic configurations or wind tunnel testing protocols; (b) suspension geometry; (c) ride height; (d) simulator use, including cadence, scenarios, or personnel involved; (e) car setup workflows, measuring procedures, or quality control processes; (f) analytics tools, data visualization, or performance metrics; (g) post-race review processes or engineering meeting cadence; (h) training pit crews; (i) evaluating pit crews; and (j) parts inventory or tracking systems (including any barcode, RFID, scanner, check-in/check-out, or audit trail systems). For each change, state: (i) when it was implemented; (ii) who proposed it; (iii) who approved it; (iv) whether Gabehart participated in, advised on, asked or answered questions about, or received outputs from the change; and (v) the reason for the change.

**SPIRE'S OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 11**: Spire objects to Interrogatory No. 11 on the grounds that it is overbroad, irrelevant, seeks information disproportionate to the needs of the case, and seeks disclosure of confidential and/or proprietary information. The Interrogatory is overbroad and irrelevant because it demands a comprehensive description of Spire's internal processes without regard for whether Gabehart had any involvement in, exposure to, or effect on, those processes. The Interrogatory is also overbroad and irrelevant because it asks for information about Spire's processes, without limitation to Spire's Cup Series processes, which are the only processes conceivable at issue in this case. The Interrogatory therefore calls for information about processes that have no connection to Gabehart or the claims and defenses at issue in this litigation. The Interrogatory is further overbroad to the extent it asks for information about processes that Gabehart "asked or answered questions about," without regard for whether those questions implicate the substance or application of those processes. Spire further objects to the Interrogatory to the extent it seeks disclosure of confidential and proprietary information regarding Spire's internal processes, competitive operations, and technical methodologies, the disclosure of which could cause competitive harm to Spire. Accordingly, Spire will limit its response to this Interrogatory to information about changes in Spire's Cup Series processes in which Gabehart personally participated or advised on.

Subject to and notwithstanding the foregoing objections, Spire responds as follows: Gabehart has not personally participated in any changes to Spire's Cup Series technical operations, engineering processes, or competitive methodologies, since joining Spire. Further, consistent with Spire's rights under Rule 33(d) of the Federal Rules of Civil Procedure, Spire responds to Interrogatory No. 11 by stating that Spire's response with respect to Gabehart's receipt of "outputs"

Docusign Envelope ID: 2B975EC1-95D4-81B2-8093-B984CB96D3B6

from the referenced processes can be derived from the documents and communications Spire has and/or will produce in connection with JGR's Request for Production Nos. 7, 8, and 9.

**INTERROGATORY NO. 12**: Describe all steps Spire has taken since November 2025 to prevent the use, disclosure, or dissemination of JGR's Confidential Information and Trade Secrets, whether formal or informal and whether written or oral, including, without limitation: (a) any information barriers, ethical screens, or segregation protocols implemented; (b) any non-disclosure or confidentiality agreements executed by or with Gabehart; (c) any training, instruction, guidance, or direction provided to Spire personnel—whether written or communicated orally or verbally—regarding JGR's information or restrictions on its use; (d) any monitoring, auditing, or review of Gabehart's activities, communications, or work product; (e) any investigation conducted at any time into whether any JGR materials, data, or information were present in any Spire facility or on any Spire system, device, or account, including the scope, timing, methodology, findings, and any remedial actions taken (including segregation, access revocation, restriction, deletion, or forensic review).

**SPIRE'S OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 12**: Spire objects to Interrogatory No. 12 on the grounds that it is vague, overbroad, and seeks information protected by the attorney-client privilege and/or work product doctrine. The Interrogatory is vague to the extent it seeks information about undefined "formal or informal" "steps," which render the scope of the Interrogatory impossible to ascertain. Spire further objects to the Interrogatory to the extent it seeks information regarding the evaluation, analysis, or consideration of potential steps made by, or in consultation with, Spire's attorneys.

Subject to and notwithstanding the foregoing, and consistent with Spire's rights under Rule 33(d) of the Federal Rules of Civil Procedure, Spire responds to Interrogatory No. 12 by stating

that Spire's response can be derived from the documents and communications Spire has and/or will produce in connection with JGR's Request for Production Nos. 3, 13(c), 13(d), and 15. Those documents will contain non-privileged communications concerning non-disclosure and/or confidentiality agreement(s) between Spire and Gabehart; assessments, reviews, and audits of Gabehart's activities on Spire's systems; what, if any, JGR information or data was identified on Spire's systems prior to the time of revocation; and forensic examination(s) of the systems used by or issued to Gabehart. With respect to subparts (d) and (e), Spire directs JGR to Spire's response to Interrogatory No. 9(a). Spire specifically reiterates that it, through counsel, engaged a forensic examiner to conduct a forensic review of Gabehart's Spire-issued laptop and Spire-issued accounts after sequestering Gabehart's laptop on February 27, 2026. That review was conducted at the direction of Spire's outside counsel. Spire further reiterates that it terminated Gabehart's access to all of Spire's electronic systems on March 18, 2026, and that it required Gabehart to sign a Non-Disclosure Agreement on February 16, 2026 prohibiting Gabehart from "disclosing any JGR Confidential Information" to Spire or using such information for Spire's benefit or in connection with any services performed for or on behalf of Spire. Spire further agreed not to solicit, obtain, or use any such information from Gabehart.

**INTERROGATORY NO. 13**: With respect to the documents referred to in this action as the "Focus Plan" and/or the "CC Audit" as defined or referred to in Plaintiff Joe Gibbs Racing, LLC's Second Supplemental Brief in Support of Motion for Preliminary Injunction (Dkt. No. 61), state whether Spire or any of its personnel received, accessed, reviewed, discussed, or became aware of such documents or their contents, and if so, identify when and how such awareness occurred, the persons involved, and describe in detail all actions taken in response, including any internal discussions, decisions, or remedial measures.

Docusign Envelope ID: 2B975EC1-95D4-81B2-8093-B984CB96D3B6

**SPIRE'S OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 13**: Spire objects to Interrogatory No. 13 on the following grounds. Spire objects to the extent the Interrogatory seeks information protected by the attorney-client privilege and/or the work product doctrine, including any "internal discussions, decisions, or remedial measures" undertaken by or at the direction of counsel. Spire further objects that the Interrogatory is vague and ambiguous as to the terms "became aware," "discussed," and "their contents." Spire further objects that this demand seeks information not within Spire's possession, custody, or control and calls for information Spire cannot reasonably ascertain, because Spire does not necessarily know, and cannot verify, whether each of its employees, agents, or representatives ever saw, accessed, or became aware of the referenced documents or their contents. Finally, given the nature of JGR's allegations and to avoid disclosing information protected by the attorney-client and/or work product privileges, Spire limits its response to Interrogatory No. 13 to identifying any Spire personnel—other than Gabehart—that received, accessed, reviewed, discussed, or became aware of the "Focus Plan" and/or "CC Audit" documents prior to the commencement of this litigation (if any).

Subject to and notwithstanding the foregoing, Spire responds as follows:

Spire has not seen the document referred to as CC Audit, as JGR has not produced this document in a form viewable by anyone other than the Court and outside counsel. And JGR has not produced whatever document it contends is, or forms the basis for, the "Focus Plan" document referred to in this Interrogatory. Accordingly, Spire is unable to answer this Interrogatory without improper speculation. Nevertheless, Spire has asked its forensic examiner to search Gabehart's Spire-issued devices to locate any similar file names, including file names similar to those documented in the Declaration of Clark Walton, Dkt. 9-4, ¶ 23. Spire has not located any evidence

Docusign Envelope ID: 2B975EC1-95D4-81B2-8093-B984CB96D3B6

showing that either of these documents or documents like them were shared or distributed with any Spire personnel by Gabehart.

Spire's forensic examiner did not find evidence of any document referred to as "CC Audit" anywhere on Gabehart's Spire-issued laptop or Spire's systems. In the interest of full disclosure, however, Spire notes that, on March 13, 2026, Spire's forensic examiner identified a document titled "CG Master.xlsx"—a file name similar to one noted by Clark Walton as appearing on Gabehart's Microsoft 365 account, Dkt. 9-4, ¶ 23—as a "user file" on Gabehart's Spire-issued laptop. Gabehart has already produced multiple versions of that document in this litigation. Gabehart_00190, Gabehart_00222, Gabehart_000379, Gabehart_00406. Spire understands based on publicly available court records, including the transcript from the March 26, 2026, hearing before Judge Rodriguez, that CG Master documents Gabehart's personal framework for race evaluation. Out of an abundance of caution, Spire notes that it uses its own process for evaluating race performance, and that it has not modified that process as a result of anything Gabehart has said, done, suggested, or otherwise proposed. Indeed, Gabehart has had no role in Spire's formal Cup Series race evaluation framework, and neither CG Master nor CC Audit have played any role in Spire's formal Cup Series race evaluation framework because no Spire employee (other than Gabehart) has ever seen either of those documents. Spire has not located any evidence that the CG Master document was distributed, shared with, or accessed by anyone at Spire.

As for the "Focus Plan" document, Spire responds that its forensic examiner located documents named CG Focus Plan.pptx and Focus Plan.pdf as "user files" on Gabehart's Spire-issued laptop. Again, because JGR has not produced whatever document it contends is the equivalent to, or basis for, the "Focus Plan" it contends is a trade secret, Spire has no knowledge of whether these files are in any way related to JGR's confidential information or trade secrets.

Further, Spire's employees are prohibited from viewing the "Focus Plan" documents produced by Gabehart given JGR's position that they are designated Outside Counsel Only. Spire has not located any evidence that either the CG Focus Plan.pptx, or Focus Plan.pdf, were distributed, shared with, or accessed by anyone at Spire.

Gabehart's Spire-issued laptop has been quarantined with Spire's forensic examiner since February 27, 2026, and no one at Spire has had access to it since that date.

**INTERROGATORY NO. 14**: Identify all performance metrics, diagnostic categories, evaluation frameworks, scoring methodologies, or analytical classification systems that have been changed, introduced, proposed, adopted, or used at Spire since Gabehart began performing services for Spire, including but not limited to any metric or classification referred to as a "well-executed race" metric or any substantially similar concept, and any diagnostic categories used to classify the reasons a car did not reach its finishing capability (such as categories for driver error, bad pit stops, poor balance, lack of speed, mechanical failure, or similar classifications). For each such metric, category, framework, or system identified, state: (a) the date it was first introduced or proposed at Spire; (b) who changed, proposed or introduced it; (c) whether Gabehart participated in, advised on, asked or answered questions about, or contributed to its creation or adoption; (d) whether it existed at Spire in any form prior to Gabehart receiving a job offer from Spire; (e) how it is or has been used; (f) whether it has been populated with race data, and if so, for which races and which driver/race car; and (g) the extent to which it is similar to or derived from any metric, category, framework, or system used at JGR.

**SPIRE'S OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 14**: Spire objects to Interrogatory No. 14 on the grounds that it is overbroad, irrelevant, seeks information disproportionate to the needs of the case, and seeks disclosure of confidential and/or proprietary

Docusign Envelope ID: 2B975EC1-95D4-81B2-8093-B984CB96D3B6

information. The Interrogatory is overbroad and irrelevant because it demands a comprehensive description of Spire's performance metrics, diagnostic categories, evaluation frameworks, scoring methodologies, and analytical classification systems, without regard for whether Gabehart had any involvement in, exposure to, or effect on, those processes. The Interrogatory is further overbroad to the extent it asks for information about processes that Gabehart "asked or answered questions about," without regard for whether those questions implicate the substance or application of those processes. The Interrogatory therefore calls for information about processes that have no connection to Gabehart or the claims and defenses at issue in this litigation. Spire further objects to the Interrogatory to the extent it seeks disclosure of confidential and proprietary information regarding Spire's internal processes, competitive operations, and technical methodologies, the disclosure of which could cause competitive harm to Spire. Spire further objects to (g) of this Interrogatory because JGR's internal processes and methodologies are not known to Spire, and Spire therefore cannot make any meaningful comparison between its own internal systems and those of JGR. Accordingly, Spire will not respond to subpart (g). Spire will limit its answer to the identification of metrics for which Gabehart participated in, advised on, or contributed to its creation or adoption.

Subject to and notwithstanding the foregoing objections, Spire responds as follows: Gabehart has not personally participated in, advised on, or contributed to the creation and/or adoption of any Cup Series performance metrics, diagnostic categories, evaluation frameworks, scoring methodologies, or analytical classifications since Gabehart began working for Spire.

**INTERROGATORY NO. 15**: Describe Spire's document preservation and litigation hold practices as applied to this litigation, including: (a) the date on which Spire first issued a litigation hold or preservation notice; (b) the scope of the hold (custodians, repositories, date ranges, and

categories of information covered); (c) all repositories covered by the hold (including email, Microsoft Teams, Slack, text messages, device images, and cloud storage); (d) any auto-delete, retention-limit, or ephemeral-messaging features active on any Spire communication platform at any time from October 1, 2025, through the present, and any changes to those settings; (e) all efforts Spire has made to recover deleted or lost Communications (including Communications between Dickerson and Gabehart from October through November 2025); (f) all efforts Spire made to recover deleted or lost Communications between Dickerson and any Spire officer, employee or agent at any time from October 1, 2025, through the present and (g) whether any Spire personnel deleted, destroyed, or failed to preserve any document, Communication, or electronically stored information potentially relevant to this litigation after October 1, 2025, and if so, identify the person, the material, the date, and the circumstances.

**SPIRE'S OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 15**: Spire objects to Interrogatory No. 15 as an improper request for "discovery on discovery." The Interrogatory does not seek information relevant to the claims or defenses in this action; instead, it seeks to investigate Spire's own preservation conduct and the mechanics of its document-collection process. Indeed, Spire's internal document preservation and litigation hold practices are not relevant to any claim or defense in this litigation, and the burden and expense of responding outweighs any potential benefit. Spire's discovery conduct is presumed to be carried out in good faith and in compliance with its obligations under the Federal Rules of Civil Procedure, and JGR may not use discovery to audit that conduct in the absence of concrete evidence of a deficiency.

Spire also objects to Interrogatory No. 15 (a)–(c) to the extent that it seeks information protected by the attorney-client privilege. Spire's document preservation and litigation hold practices—including the timing, scope, custodians, and repositories of any litigation hold, as well

Docusign Envelope ID: 2B975EC1-95D4-81B2-8093-B984CB96D3B6

as all recovery and remediation efforts concerning deleted or lost communications—were developed, implemented, and directed by and at the advice of counsel in anticipation of and in connection with this litigation, and any substantive response to this Interrogatory would necessarily disclose confidential attorney-client communications, counsel's legal judgments, and litigation strategy. Accordingly, Spire will not provide a response to subparts (a)–(c).

Spire further objects to subpart (d) on the grounds that the phrase "any Spire communication platform" is vague and undefined, and the Interrogatory seeks information regarding platforms and settings with no demonstrated nexus to any claim or defense at issue in this litigation. Spire further objects that the Interrogatory seeks information predating any reasonable anticipation of litigation by requesting details about platform settings and practices as of October 1, 2025, a date that precedes any threat of litigation or circumstances giving rise to a preservation obligation.

Subject to and notwithstanding the foregoing, Spire responds, with respect to subparts (e) and (f), by directing JGR to the Second Declaration of Jeffrey Dickerson, Dkt. 68-1. Spire further responds to subparts (e) and (f) by stating that it instructed its forensic examiner to investigate whether it is possible to recover communications between Dickerson and Gabehart, on Dickerson's personal cell phone, between October 1, 2025, through the present, which communications were automatically deleted pursuant to a 30-day auto-retention setting that had previously been enabled on Dickerson's phone. Dickerson deactivated the 30-day auto-retention setting on his cell phone on February 26, 2026, at the instruction of counsel. Dickerson deactivated the 30-day auto-retention setting on his iPad on March 31, 2026. Because messages that appear on Dickerson's iPad are duplicated on his iPhone, deactivating the auto-retention setting on his iPad was unnecessary to preserve any messages. At the direction of counsel, Spire's forensic examiner

reviewed Dickerson's cell phone and iPad, and concluded that with the exception of a few irrelevant outlier messages, there were no messages on either device that pre-date January 21, 2026. Also at the direction of counsel, Spire's forensic examiner examined Dickerson's iCloud account to determine if backups of Dickerson's iPhone or iPad exist, and concluded that although backups exist for both devices, the oldest backups post-date January 21, 2026, and therefore would not contain messages sent before that date. As for subpart (g), Spire states that, to its knowledge, no Spire personnel deleted, destroyed, or failed to preserve any document potentially relevant to this litigation after anticipating litigation.

**INTERROGATORY NO. 16**: Identify each instance in which any Spire personnel contacted, communicated with, or made a pitch or proposal to any current or former JGR sponsor, partner (including, but not limited to, [redacted]), vendor, or employee from October 1, 2025, through the present, regarding sponsorship of or for the benefit of Spire, including: (a) the date; (b) the Spire participant(s); (c) the JGR-affiliated entity or individual contacted; (d) the method of communication (e.g., telephone, text messages, email, in-person meeting, messaging application or other form of electronic communication); (e) the subject matter and purpose of the Communication; and (f) whether Gabehart provided information, participated, or was referenced in connection with the Communication.

**SPIRE'S OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 16:** Spire objects to this Interrogatory on the grounds that it is overbroad and seeks information disproportionate to

the needs of the case. The Interrogatory demands identification of every instance in which any Spire personnel contacted, communicated with, or made a pitch or proposal to any current or former JGR sponsor, partner, vendor, or employee regarding sponsorship "for the benefit of Spire." As written, this phrase is susceptible to multiple interpretations and could be read to encompass virtually any sponsorship-related communication Spire has engaged in, regardless of whether it has any nexus to Gabehart or to JGR's claimed confidential information or trade secrets. The Interrogatory further lists over two dozen sponsors, partners, vendors, and employees without any limitation as to whether those entities or individuals have any connection to the claims and defenses at issue in this litigation. Spire will accordingly limit its response to this Interrogatory to communications with Zep and SAIA, which JGR has identified as the sponsors at issue in this litigation. JGR has not identified any other sponsors implicated by Spire's alleged conduct, and JGR has not alleged that it lost a contract with or otherwise lost revenue from ***any*** sponsor, underscoring the disproportionate, unduly burdensome nature of Interrogatory No. 16. Communications with the remaining sponsors and vendors identified in the Interrogatory are irrelevant to the claims and defenses at issue and are not proportional to the needs of the case.

Subject to and notwithstanding the foregoing objections and consistent with Spire's rights under Rule 33(d) of the Federal Rules of Civil Procedure, Spire responds to Interrogatory No. 16 by stating that Spire's response can be derived from the documents and communications Spire has and/or will produce in connection with JGR's Requests for Production 6 and 14. Those documents will contain non-privileged information relating to any outreach, solicitation, proposal, pitch, or communication by Spire to Zep or SAIA concerning sponsorship or potential sponsorship, to the extent such documents exist.

**INTERROGATORY NO. 17**: Identify all competition-related meetings held at Spire since November 6, 2025, and with respect to each such meeting identify (a) the name of the meeting or group attending; (b) the date of such meeting; (c) all persons invited to attend or who received invitations or calendar notices regarding such meeting; (d) all persons who attended such meetings; (e) all agenda items for such meetings; and (f) all documents relating to such meetings, including agendas, minutes, documents reviewed in such meetings, and slide decks used in such meetings.

**SPIRE'S OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 17**: Spire objects to this Interrogatory on the grounds that it is vague, ambiguous, and overbroad. The term "competition-related meeting" is undefined, such that it is unclear whether it encompasses any meeting in which a competitor was mentioned in passing, formal strategic planning sessions, operational meetings that incidentally touch on competitive considerations, or something else entirely. As written, the term could sweep in virtually any internal meeting held at Spire since November 6, 2025, rendering the Interrogatory unworkably broad. Spire further objects to this Interrogatory to the extent it calls for identification of meetings that Gabehart did not attend, including through subparts (a) through (e), which seek the names, dates, invitees, attendees, and agenda items for every such meeting regardless of Gabehart's presence. Meetings at which Gabehart was not present bear no connection to Gabehart or to the claims and defenses at issue in this litigation, and the burden of identifying all such meetings is not proportional to the needs of the case. Spire further objects to subpart (f) as overbroad to the extent it calls for the identification of all documents relating to such meetings, including agendas, minutes, documents reviewed, and slide decks, and to the extent it calls for information outside of Spire's possession, custody, or control. This sweeping document identification request is not proportional to the needs of the case and is more appropriately addressed through JGR's Requests for Production. Accordingly, Spire

will limit its response to this Interrogatory to formal competition meetings and any other meetings in which competition strategy was discussed since Gabehart joined Spire and at which Gabehart was personally present. Spire will further limit its response to subpart (f) to documents within Spire's possession, custody, or control that are responsive to one of JGR's properly formulated Requests for Production.

Subject to and notwithstanding the foregoing objections and consistent with Spire's rights under Rule 33(d) of the Federal Rules of Civil Procedure, Spire responds to Interrogatory No. 17 by stating that Spire's response can be derived from the documents and communications Spire has and/or will produce in connection with JGR's Requests for Production Nos. 8, 9(a), and 9(b). Those documents will contain non-privileged communications directing, inviting, or permitting Gabehart to participate in competition meetings.

Dated: June 29, 2026.

By: *<u>/s/ Joshua D. Davey</u>*

Joshua D. Davey (N.C. Bar No. 35246)
Jason D. Evans (N.C. Bar No. 27808)
Lawrence J. Cameron (N.C. Bar No. 41922)
Troy C. Homesley, III (N.C. Bar No. 62148)
Anais M. Jaccard (N.C. Bar No. 58438)
Benjamin E. Whorf (N.C. Bar No. 64279)
**TROUTMAN PEPPER LOCKE LLP**
301 S. College St., 34th Floor
Charlotte, NC 28202
Telephone: (704) 916-1503
joshua.davey@troutman.com
jason.evans@troutman.com
lawrence.cameron@troutman.com
troy.homesley@troutman.com
anais.jaccard@troutman.com
ben.whorf@troutman.com

John S. "Evan" Gibbs III – Pro Hac Vice
**TROUTMAN PEPPER LOCKE LLP**

Docusign Envelope ID: 2B975EC1-95D4-81B2-8093-B984CB96D3B6

600 Peachtree St, NE #3000
Atlanta, GA 30308
Telephone: (404) 885-3093
evan.gibbs@troutman.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing was served via electronic mail on June 29, 2026, upon the following:

Sarah F. Hutchins (NC Bar No. 38172)
Tory Ian Summey (NC Bar No. 46437)
Keith M. Weddington (NC Bar No. 14352)
Charles G. Middlebrooks (NC Bar No. 55171)
Madelyn R. Candela (NC Bar No. 63827)
PARKER POE ADAMS & BERNSTEIN LLP
Bank of America Tower
620 S. Tryon St., Suite 800
Charlotte, NC 28202
Telephone: (704) 916-1503
sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com

Danielle T. Williams (NC Bar No. 23283)
KING & SPAULDING LLP
300 S. Tryon St., Suite 1700
Charlotte, NC 28202
dwilliams@kslaw.com

Thomas M. Melsheimer – *pro hac vice*
Chad B. Walker – *pro hac vice*
Tracea Rice – *pro hac vice*
Alexandra Moore – *pro hac vice*
KING & SPAULDING LLP
2601 Olive St., Suite 2300
Dallas, TX 75201
tmelsheimer@kslaw.com
cwalker@kslaw.com
trice@kslaw.com
almoore@kslaw.com

*Attorneys for Plaintiff Joe Gibbs Racing, LLC*

Cary B. Davis (NC Bar No. 36172)
Spencer T. Wiles (NC Bar No. 53664)
William M. Miller (NC Bar No. 36946)
Anna Claire Tucker (NC Bar No. 59457)
ROBINSON, BRADSHAW & HINSON, P.A.
600 S. Tryon St., Suite 2300
Charlotte, NC 28202
cdavis@rbh.com
swiles@rbh.com
wmiller@rbh.com
atucker@rbh.com

*Attorneys for Defendant Christopher Gabehart*

*/s/ Joshua D. Davey*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| JOE GIBBS RACING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER GABEHART and SPIRE MOTORSPORTS II, LLC,<br><br>Defendants. | Case No. 3:26-cv-00133-SCR-DCK |

**VERIFICATION**

I, Jeffrey Dickerson, am the co-owner of Spire Motorsports II, LLC. I confirm that I have read the foregoing Defendant Spire Motorsports II, LLC's Responses and Objections to Plaintiff JGR's First Set of Interrogatories. I further state that, based on reasonable inquiry, the foregoing answers are true and correct to the best of my knowledge, information, and belief. I therefore verify, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, that the foregoing is true and correct.

Dated: June 29, 2026

DocuSigned by:
43EF7ADBA8CD469...
Jeffrey Dickerson