**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Case No. 3:26-CV-00133-SCR-DCK**

JOE GIBBS RACING, LLC,

Plaintiff,

v.

CHRISTOPHER GABEHART and SPIRE MOTORSPORTS II, LLC,

Defendants.

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANT CHRISTOPHER GABEHART**

## INTRODUCTION

On November 13, 2025, Defendant Christopher Gabehart ("Gabehart") received a text message from Spire Motorsports II, LLC ("Spire") owner Jeff Dickerson ("Dickerson") offering him a job paying more than [redacted]. Ex. C p. 3 (Spire Offer note). Two days later, Gabehart allegedly "panicked" and intentionally deleted all of his text messages with Dickerson, including the offer itself. Gabehart had good reason to panic: just a week before, on November 7th, he had deceptively stolen JGR's trade secret information, and he knowingly remained bound by restrictive covenants with JGR.

Gabehart's purposeful deletion of these communications warrants the imposition of sanctions, including an adverse inference to restore evidence that Gabehart's deletion deprives JGR of.

## FACTUAL BACKGROUND

### A. Gabehart's Thirteen-Year Tenure and Access to JGR's Trade Secrets

Gabehart joined JGR in 2012 and was promoted to Competition Director in 2024. He had access to JGR's confidential information across all four of its Cup Series teams. Ex. A (Gabehart Dep. 14:10–16:21; 17:17–20).[1] He agrees JGR "entrusted [him] with sensitive information" and that he was obligated to keep "JGR setups secret." *Id.* (Gabehart Dep. 18:15–24; 34:25–35:16). He also knew, from JGR's investigation and litigation against another employee for taking proprietary files, that JGR pursues litigation to protect its trade secrets. *Id.* (Gabehart Dep. 78:9–82:11).

### B. October 2025: Gabehart's Secret Contact with Spire

In early fall 2025, Gabehart maintained contact with Dickerson, including 18 telephone calls from October 7 to November 14, 2025, and a private dinner on October 16, 2025. Ex. A

[1] Gabehart Deposition Excerpts and Related Exhibits are attached as Exhibit A.

(Gabehart Dep. 102:19–25; 112:4–10; 141:18–142:11; and Gabehart Dep. Ex. 1); Doc. No. 45-2 (Dickerson Decl. ¶ 27); Ex. E (J. Dickerson Dep. Ex. 4). Gabehart also repeatedly visited Spire's website domain from his JGR computer throughout October and November 2025, including on race days. Ex. A (Gabehart Dep. 126:4–20; 139:24–140:11). Forensic review of Gabehart's S22 Device revealed a phone note titled "Spire," created October 3, 2025, and another titled "Spire offer," created November 11, 2025—two days *before* Gabehart claims he received an unsolicited employment offer from Spire. *See* Ex. F (C. Walton Decl. Ex. A); Doc. No. 12 (Gabehart Decl. ¶ 19). The recovered "Spire" note contains questions and answers about Spire's alliances, goals, pit crews, and vehicle spend. It even includes future plans that Gabehart describes as "one of my bigger objectives" at Spire. The note thus shows Gabehart was investigating employment with Spire—in violation of his non-compete and contrary to his sworn statements—as early as October 3, 2025 and intended to be involved in Spire's Cup endeavors. *See* Ex. C; *contra* Doc. No. 12 (Gabehart Decl. ¶ 17) ("On November 13, 2025, . . . I received an ***unsolicited*** job offer from Spire Motorsports." (emphasis added)); Ex. A (Gabehart Dep. 124:6–8; 181:15–182:4); Doc. No. 35-12 (C. Walton Second Supp. Decl. ¶ 7 & n.2).

### C. November 6–7, 2025: Gabehart's Meeting with Coach Gibbs and Gabehart's Photographs of JGR's Trade Secrets

On November 6, 2025, Gabehart met with Coach Joe Gibbs to discuss his employment at JGR. Gabehart requested *carte blanche* authority over all racing decisions. Doc. No. 95 (Second Am. Compl. ¶ 57). Coach Gibbs declined, and Gabehart decided to conclude his employment with JGR. *Id.* ¶¶ 58–59. Gabehart and Dickerson had a nearly 20-minute phone call immediately after Gabehart's meeting with Coach Gibbs. Ex. E (J. Dickerson Dep. Ex. 4). The very next morning, Gabehart used his personal cell phone to photograph approximately twenty screens of JGR's trade secrets and confidential competitive information, including compensation, post-race audit, and

bonus data. Ex. A (Gabehart Dep. 162:3–166:15; 194:22–195:18; 208:18–243:22). Asked four times why he photographed rather than emailed or uploaded the material, he refused to answer but conceded that his "JGR email address would be easier for [JGR] to track." *Id.* (Gabehart Dep. 215:12–218:8). JGR learned of the photographs only because Gabehart set certain accounts to sync back to a JGR-linked repository. *Id.* (Gabehart Dep. 218:13–24; 222:22–223:12).[2] On or around November 10, Gabehart also retained employment counsel to negotiate his separation from the JGR agreement containing the restrictive covenants at issue in this litigation. Ex. A (Gabehart Dep. 194:21–195:1).

### D. November 12–15, 2025: The Spire Offer and the Deletion of the Dickerson Text Thread

On November 12, 2025, Gabehart and Dickerson had a 33-minute phone call. Ex. E (Dickerson Dep. Ex. 4). The next day, Gabehart purportedly received an offer to join Spire. Ex. A (Gabehart Dep. 171:8–10; 250:4–12). He and Dickerson spoke for 14 minutes that day and nearly 27 minutes on November 14. Ex. E (Dickerson Dep. Ex. 4). Then on November 15, Gabehart **manually** deleted his "entire [text] conversation" with Dickerson by "some version of swipe right, confirm." Ex. A (Gabehart Dep. 181:2–13). The deletion occurred just five days after Gabehart returned his JGR devices with seemingly no intention of continuing his services for JGR. Asked why he deleted the text thread, he testified: "[T]he truth of the matter is, I was an individual in a high-pressure situation and ***I panicked and I deleted the text***." *Id.* (Gabehart Dep. 184:4–7) (emphasis added). Gabehart claims the Spire offer was "unsolicited" and that he deleted the

[2] Gabehart also never disclosed during the pre-litigation forensic process a Gmail-linked OneDrive account that he created on October 29, 2025. JGR later discovered the existence of Gabehart's OneDrive account , an account he now concedes ***may*** contain JGR confidential information. Ex. A (Gabehart Dep. 148:1–14; 149:13–150:25; 206:24–208:2). In fact, the forensics process has shown this account contains a great deal of JGR's confidential information and trade secrets.

conversation because he was "offended" to receive the offer—one he ultimately accepted—while negotiating his separation from JGR. *Id.* (Gabehart Dep. 181:15–182:4).

This testimony is damaging for Gabehart in two respects. First, the "unsolicited" characterization of the offer is contradicted by the "Spire" and "Spire offer" notes created before the November 13 text offer from Dickerson, as well as his communications with Dickerson before and after the November 15 deletion. Indeed, on November 18 Dickerson and Gabehart text about "rumors" at JGR that Gabehart was joining Spire, which shows he was, at minimum, under suspicion of joining Spire in violation of his JGR non-compete.[3] Ex. D; Ex. A (Gabehart Dep. 181:20–184:7). Second, Gabehart has admitted that he was thinking about his incomplete separation from JGR when he deleted the text messages. *Id.* (Gabehart Dep. 183:7–183:12).

Gabehart also confirmed there was no administrative reason for the deletion and that he deleted nothing else that day, making this a targeted—rather than inadvertent—deletion of relevant evidence. *See* Ex. A (Gabehart Dep. 185:16–18; 188:21–24). Gabehart never considered disclosing the deletion; JGR discovered it only after the Court ordered expedited discovery. Ex. A (Gabehart Dep. 192:19–193:25).[4]

### E. December 15–17, 2025: JGR's Cease-and-Desist Letter and Deletion of the "Spire" Notes

On December 8, 2025, JGR first learned of the sync'd activity on Gabehart's JGR laptop, and after a preliminary investigation, JGR sent a cease and desist and preservation letter ("C&D

[3] For clarity, this message occurred ***after*** Gabehart's November 15 deletion of the Dickerson texts and, therefore, was produced in this litigation.

[4] The initial forensic review of the JGR computer Gabehart used and Gabehart's S22 Device also showed that, on or before November 13, 2025, Gabehart created a folder called "Spire" in a personal Google Drive. Gabehart's February 2026 declaration states the folder was created after the November 13 offer and used solely to evaluate it. Ex. A (Gabehart Dep. 250:4–24); Doc. No. 12 (Gabehart Decl. ¶ 19). However, the "Spire" folder also contained trade secret JGR simulation-setup materials in a subfolder. *See* Ex. A (Gabehart Dep. 262:11–264:6); Doc. No. 35-12 (C. Walton Second Decl. ¶ 19). Not one of these facts came from Gabehart. Each surfaced only because JGR's forensic examiners went looking. Ex. A (Gabehart Dep. 193:19–25; 222:22–223:12; 206:24–208:2; 259:1–9; 260:14–16).

and Preservation Letter" on December 15, 2025. Doc. No. 95 (Second Am. Compl. ¶ 57). The Letter demanded the immediate return and removal of the information Gabehart had taken from JGR and put him on formal notice to preserve evidence relating to his separation from JGR and his interactions with Spire. Ex. A (Gabehart Dep. Ex. 13). Gabehart contends this was the first formal notice that "there was an issue" regarding his departure, which stands in contrast with his November 18 texts with Dickerson that there were "rumors" circulating about him joining Spire and his failure to negotiate a reduction of the 18-month non-compete in his JGR agreement. Ex. A (Gabehart Dep. 191:21–193:17; 335:2–4); Ex. D.[5] The very next day, Gabehart singled out and deleted two phone notes—"Spire" and "Spire offer"—out of years of accumulated notes. Ex. A (Gabehart Dep. 197:9–22; 202:5–11); Ex. F (Walton Decl. Ex. A). Unrelated notes, such as "Papaw Grocery" and "Grandparents Stuff," survived untouched, and Gabehart has identified no other note he has ever deleted from his phone. Ex. A (Gabehart Dep. 199:10–200:5; 204:7–24); Ex. F (Walton Decl. Ex. A). Pressed on the deletions, Gabehart stated that he did not recall them and suggested that the forensic reporting was not an accurate reflection of his mobile device. Ex. A (Gabehart Dep. 197:9–198:19).[6]

### F. Gabehart Deletes Additional Materials During This Litigation

After the parties' agreed January 2026 forensic imaging of the S22 Device, Gabehart deleted at least one other Samsung note titled "Matt." JGR learned only through the Court-ordered March 2026 imaging of Gabehart's accounts and devices that he deleted the note ***after*** the device

[5] Documents produced in discovery establish that Gabehart met with his current counsel, Robinson Bradshaw, on the at least the same day he received JGR's C&D and Preservation Letter. Ex. A (Gabehart Dep. Ex. 13).

[6] JGR reserves all rights to address the deletions of the phone notes including, without limitation, the right to file an appropriate motion in limine precluding Gabehart's self-serving characterizations of their contents, purpose, and meaning. However, JGR does not seek sanctions for the deletion of these notes because it was able to recover these notes, but instead includes them as other instances of spoliation to show the Court that Gabehart's deletion of the Dickerson texts was intentional, targeted spoliation in line with a pattern of broader spoliation.

was returned. The January 2026 extraction report shows the note contained an agenda for a November 20, 2025 meeting between Gabehart and Spire Competition Director Matt McCall. Topics include "[l]ow hanging fruit - Download information," "Car build stuff," and "setup stuff and philosophies." Ex. B. This deletion is especially glaring because he **retained** and admitted to taking much other confidential information from JGR, including technical information about how JGR builds its racecars and the setups for nearly the entire 2025 season.

After the Daytona 500, Gabehart put JGR's trade secrets to use for Spire, operationalizing a post-race audit document he took from JGR and using it to analyze Spire's Cup Series performance. Ex. A (Gabehart Dep. Ex. 28). Gabehart admits he moved this document from his personal computer to his Spire-issued computer but could not explain why it then appeared in that computer's recycle bin. Ex. A (Gabehart Dep. 297:17–298:25). Gabehart did not receive a Spire computer until February 17, 2026, placing the attempted deletion during this litigation. *See* Doc. No. 38 at ¶ 25 (Gabehart Second Decl.).[7]

## ARGUMENT

### I. Gabehart's Misconduct Easily Satisfies the Rule 37(e) Factors.

Rule 37(e) governs ESI "that should have been preserved in the anticipation or conduct of litigation" and is "lost because a party failed to take reasonable steps to preserve it." Fed. R. Civ. P. 37(e). It is the exclusive vehicle for sanctioning the loss of ESI. *NuVasive, Inc. v. Kormanis*, No. 1:18CV282, 2019 WL 1171486, at *3 (M.D.N.C. Mar. 13, 2019) (citation omitted); *Jennings v. Frostburg State Univ.*, 679 F. Supp. 3d 240, 294 (D. Md. 2023). JGR must show (1) that the ESI should have been preserved, (2) that it was lost, (3) that the loss resulted from Gabehart's failure

[7] The forensic revelation of the post-race audit document in the recycle bin also contradicts Gabehart's sworn statement that he "had no JGR materials to bring to or use at Spire when [his] access [to Spire systems] began." *Id.*

to take reasonable steps, and (4) that it cannot be restored or replaced. *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018).

First, the duty to preserve attached by November 7, 2025, at which point Gabehart began negotiating his separation from an agreement containing the restrictive covenants at issue here and had deceptively acquired JGR's confidential information and trade secrets.[8] At the latest, he recognized that duty on November 13, 2025, when he received the Spire offer—which he now says "didn't sit well with [him]." Gabehart Dep. at 182:2. Even taking Gabehart at his word, he deleted the texts because he knew they were wrong in the context of his departure from JGR and was therefore on notice of the litigation risk. Gabehart knew he wrongfully took JGR information for use at Spire, knew JGR had pursued such activity in the past, knew that his discussions with Spire were wrong; but deleted evidence of his communications with the owner of the company anyways. These are not the actions of an employee that expected an amicable separation. *See Nucor Corp. v. Bell*, 251 F.R.D. 191, 195 (D.S.C. 2008), clarified on denial of reconsideration, No. 2:06-CV-02972-DCN, 2008 WL 11464820 (D.S.C. Apr. 24, 2008) (duty attached when materials were destroyed where defendant knew his employer was "litigious" and feared it "would make an issue" of the stolen materials); Ex. A (Gabehart Dep. 78:9–82:11).

Gabehart himself claims the November 15th text deletion was done out of "panic," an explanation that only makes sense if there was something to "panic" about, such as litigation over his JGR non-compete. Either way, the duty to preserve attached before the November 15 deletions.

The second and third elements are also easily satisfied. Gabehart purposefully destroyed the entire Dickerson thread and subsequently at least four phone notes. Ex. A (Gabehart Dep. 181:2–10; 197:9–22; 202:5–11). JGR seeks relief in this motion for the destruction of the

---

[8] It was also around when Gabehart recalls officially retaining employment counsel to negotiate directly with JGR about his separation. Ex. A (Gabehart Dep. 194:21–195:1).

Dickerson text thread. The phone notes, though recovered, are further evidence that his destruction of the Dickerson texts was intentional. This was not a failure to preserve—it was intentional destruction of material evidence, and Gabehart confirmed there was no administrative reason for it. *Id.* (Gabehart Dep. 181:2–14; 188:21–24). He deleted the Dickerson communications after reaching an impasse with JGR and photographing its trade secrets with his phone—the same conduct that, as he knew, had already led JGR to investigate and sue another employee. *Id.* (Gabehart Dep. 78:9–82:11). The S22 Device notes were deleted after Gabehart was (1) on formal and express notice to preserve "all evidence relating to the solicitation, recruitment and potential hiring of you by Spire Motorsports . . . ." and (2) after the parties had begun investigating his disclosed phone and Google account. *Id.* (Gabehart Dep. Ex. 13).

Finally, sanctions are appropriate because the Dickerson text messages that Gabehart destroyed cannot be retrieved from other sources. JGR's forensic examiner imaged Gabehart's devices, extracted every available cloud and carrier backup, and submitted a content request to Verizon. None of those efforts recovered a single deleted Dickerson text message. Ex. F (Walton Decl. ¶¶ 4–8). The examiner attributes that to the manner of deletion: Gabehart deleted the thread locally and in its entirety, so no backup preserved the content. *Id.* at ¶ 4. The carrier does not retain message content and could provide only metadata. *Id.* at ¶ 8. Gabehart cannot supply the missing substance—he claims not to remember the messages or notes, yet asserts that "[t]o the best of [his] recollection," they were irrelevant to this lawsuit. Ex. A (Gabehart Dep. 178:22–180:1)[9] The text thread cannot be collected from Dickerson, who did not preserve the messages either. Ex. F

[9] Given his repeated misrepresentations, withholding of information, and deletion of materials despite being on preservation notice, Gabehart's self-serving descriptions cannot be trusted.

(Walton Decl. ¶ 9).[10] JGR has therefore exhausted the avenues by which the lost ESI could be restored. *Cf. Steves & Sons*, 327 F.R.D. at 108 (denying relief where the movant did little to establish unrecoverability).

## II. Because Gabehart Acted in Bad Faith and with an Intent to Deprive, an Adverse Inference Is Warranted.

An adverse-inference instruction requires a finding that Gabehart "acted with the intent to deprive another party of the information's use in the litigation," Fed. R. Civ. P. 37(e)(2)—a "uniform" standard that rejects a finding based on negligence or gross negligence alone. Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendment; *Doe v. Charlotte-Mecklenburg Bd. of Educ.*, No. 23-1182, 2024 WL 3565522, at *3–4 (4th Cir. July 29, 2024). Movants in this Circuit must satisfy that standard by clear and convincing evidence, *Glob. Hookah Distributors, Inc. v. Avior, Inc.*, No. 3:19-cv-00177-KDB-DCK, 2020 WL 4349841, at *11 (W.D.N.C. July 29, 2020), and routine-practice deletion will not suffice. *Packrite, LLC v. Graphic Packaging Int'l, LLC*, No. 1:17CV1019, 2020 WL 7133806, at *9 (M.D.N.C. Dec. 4, 2020).

The record establishes that Gabehart acted with intent to conceal and deprive JGR of relevant information.

**<u>Selectivity</u>**: Gabehart destroyed one conversation with Spire's owner and no others on November 15, and, of an entire phone's worth of notes, deleted exactly three on December 16 and 17—two titled for the competitor at the center of this case. Ex. A (Gabehart Dep. 185:16–18; 199:10–204:24); Ex. F (Walton Decl. Ex. A). Then, after getting his phone back from the examiner, he deleted another note about his November 20 Spire meeting.

[10] The text thread was also purportedly deleted from Dickerson's phone due to an auto-deletion setting. JGR and Spire have agreed to confirm the auto-deletion setting through a neutral examiner. JGR reserves all rights accordingly, including its right to seek sanctions against Spire as a result of any spoliation of evidence.

**Timing**: Every deletion follows an identifiable litigation-related trigger. The entire Dickerson thread disappeared two days after Spire purportedly conveyed its offer to Gabehart (November 15). The three phone notes—two with Spire included in the name—disappeared the day after JGR's C&D and Preservation Letter (December 16). Ex. A (Gabehart Dep. 181:2–10; 197:9–22; 202:5–11). And he deleted the "Matt" note after the initial forensic process, knowing additional discovery could follow. Finally, he deleted the post-race audit document from his Spire computer after this lawsuit was filed.

**Method**: Gabehart chose methods that leave no record, refusing four times to explain why he photographed rather than emailed JGR's files after conceding that email is easier to trace. Ex. A (Gabehart Dep. 87:17–89:24; 215:12–218:8).

**Shifting explanations**: His testimony that he was "offended" by the "unsolicited" Spire offer, though he called Dickerson right after his November 6 JGR meeting, Ex. A (Gabehart Dep. 170:3–22, 181:20–24); his account of the "Spire" folder's purpose collapsed once his testimony revealed JGR materials in a subfolder, *Id.* (Gabehart Dep. 259:1–9; 260:14–16), Doc. No. 12 (Gabehart Decl. ¶ 19); and his account of why he deleted the Dickerson thread moved from discomfort, to panic, to a refusal to call the act wrong at all. Ex. A (Gabehart Dep. 181:22–185:14).

**Concealment**: Gabehart failed to disclose the deletions or the November 7 photographs until forced, withheld the Gmail-linked OneDrive from the forensic protocol, covertly deleted the "Matt" note and said nothing until it was identified in the May 2026 forensics, failed to disclose the existence of JGR trade secrets within a personal Google Drive folder titled "Spire," and signed a declaration that he now contradicts in several respects. Ex. A (Gabehart Dep. 193:19–25; 222:22–223:12; 206:24–208:2); Doc. No. 12 (Gabehart Decl. ¶ 19)

**Admission**: Gabehart now agrees that JGR's December 15 C&D and Preservation Letter put him on notice that the circumstances of his separation from JGR "might result in a legal dispute"—and he deleted the "Spire" and "Spire offer" notes the next day, despite that notice. Ex. A (Gabehart Dep. 191:21–193:4; 204:7–24).

Gabehart's answer that he "panicked" does not excuse his conduct on November 15, 2025. Ex. A (Gabehart Dep. 184:4–7). It instead highlights the intentionality and selectivity of the deletion. A litigant who deletes a narrow subset of materials out of panic and nothing else does so for a single reason: he does not want those materials read.

Nor can Gabehart retreat to routine practice. *Packrite* requires a standard, uniformly applied policy to escape spoliation sanctions. *See* 2020 WL 7133806, at *9. Gabehart identifies no policy, no setting, and no other deletion in the history of his phone. He has testified that these deletions were neither automated nor routine and that the text deletions involved a manual "swipe right, confirm." Ex. A (Gabehart Dep. 181:11–14). The record thus establishes that Gabehart intentionally destroyed critical evidence after notice of his duty to preserve. Rule 37(e)(2) exists for precisely this record, and nothing short of an adverse-inference instruction restores JGR to the position it would have held had Gabehart preserved what he destroyed.

## III. Relief Requested

JGR requests the Court: (1) find that Gabehart acted with the intent to deprive JGR of the deleted Dickerson text messages in this litigation, by clear and convincing evidence, and hold that JGR is entitled to an adverse-inference instruction—that the jury may infer that the deleted communications contained information damaging to Gabehart, including that his discussions with Dickerson about employment with Spire began before November 13, 2025, that Gabehart actively solicited an employment offer from Spire, and that Gabehart shared and discussed JGR

confidential information and trade secrets with Dickerson—with the precise wording reserved to the Court at trial. *See NuVasive,* 2019 WL 1171486, at *14–15 (recognizing that text-message deletion supported an intent-to-deprive finding under Rule 37(e)(2) and permitting an adverse-inference instruction upon such a finding); *Modern Remodeling, Inc. v. Tripod Holdings, LLC*, No. CCB-19-1397, 2021 WL 3852323, at *15 (D. Md. Aug. 27, 2021) (finding intent to deprive where a departing employee deleted ESI after the duty to preserve arose and ordering an adverse inference); and (2) award JGR its reasonable attorneys' fees and costs incurred in bringing this motion, *S. Ctys. Oil Co.*, 2023 WL 2891378, at *24 (ordering spoliating defendants to pay the movant's fees and costs, plus forensic examination costs); *Pable v. Chicago Transit Auth.*, 145 F.4th 712, 723 (7th Cir. 2025) (awarding fees for the deposition time, discovery motions, subpoena, and Rule 37 briefing the spoliation caused).

## CONCLUSION

Gabehart deleted the very materials that could have shown how the Spire offer came about and the extent of his communications with Spire about JGR's trade secrets. Every deletion follows a significant triggering event. He has disclosed only what the forensic record already exposed and attempted to conceal the rest. Rule 37(e) exists so that a party cannot improve his position by destroying the evidence that would reveal it. JGR respectfully requests that the Court grant this motion and the relief described above.

This the 16th day of September, 2026.

**PARKER POE ADAMS & BERNSTEIN LLP**

/s/ *Sarah F. Hutchins*
Sarah F. Hutchins
N.C. Bar No. 38172
Tory Ian Summey
N.C. Bar No. 46437
Keith M. Weddington
N.C. Bar No. 14352
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Chad F. Lee
N.C. Bar No. 56350
Kevin A. Marshall
N.C. Bar No. 50856
Christopher B. Henry
N.C. Bar No. 55955
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com
chadlee@parkerpoe.com
kevinmarshall@parkerpoe.com
chrishenry@parkerpoe.com

**KING & SPALDING LLC**
Danielle T. Williams
dwilliams@kslaw.com
N.C. Bar No. 23283
300 South Tryon Street, Suite 1700
Charlotte, NC 28202
Thomas M. Melsheimer – *Pro Hac Vice*
tmelsheimer@kslaw.com
Chad B. Walker – *Pro Hac Vice*

cwalker@kslaw.com
Tracea Rice – *Pro Hac Vice*
trice@kslaw.com
Alexandra Moore – *Pro Hac Vice*
almoore@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201

*Attorneys for Joe Gibbs Racing, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this date the foregoing **PLAINTIFF JOE GIBBS RACING, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SANCTIONS AGAINST DEFENDANT GABEHART** was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send notice and serve same upon counsel of record via the Court's electronic case filing system.

This the 16th day of September, 2026.

**PARKER POE ADAMS & BERNSTEIN LLP**

/s/ *Sarah F. Hutchins*
Sarah Hutchins
N.C. Bar No. 38172
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
*Attorney for Joe Gibbs Racing, LLC*