**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| JOE GIBBS RACING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER GABEHART and SPIRE MOTORSPORTS II, LLC,<br><br>Defendants. | Case No. 3:26-cv-00133-SCR-DCK |

DEFENDANT SPIRE MOTORSPORTS II, LLC'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL THE IDENTIFICATION OF TRADE SECRETS AND THE PRODUCTION OF DOCUMENTS AND METADATA

Defendant Spire Motorsports II, LLC ("Spire"), by and through counsel, submits this Reply Brief in Support of its Motion to Compel Plaintiff Joe Gibbs Racing, LLC ("JGR") to Identify Trade Secrets and Produce Requested Documents and Metadata, Dkt. 167.

## INTRODUCTION

JGR's opposition concedes its own discovery failures and misconstrues the relief Spire seeks. Spire is asking for three things: (1) final confirmation of what alleged trade secrets are actually at issue in this case—something Spire has requested for nearly six months; (2) JGR's compliance with the clean room protocol that JGR itself demanded; and (3) in-camera review of four non-attorney communications JGR continues to withhold without sufficient justification.

The parties met and conferred about these issues on September 21, and were able to narrow the scope of the dispute. Accordingly, Spire now memorializes the parties' agreement, requests that this Court enforce JGR's expeditious compliance with that agreement, and addresses the remaining live issues that require Court assistance.

## ARGUMENT

### I. JGR Should Be Ordered to Identify the At-Issue Trade Secrets Underpinning its Claims by October 2

As Spire explained in its opening brief, JGR has failed to sufficiently identify the complete and final universe of alleged trade secrets it claims were misappropriated. Dkt. 168 at 4–5. Spire has repeatedly asked JGR to identify the trade secrets at issue since the very beginning of this case, yet JGR has changed its list of purported trade secrets no fewer than five times. JGR has treated the identification of its trade secrets as a moving target, amending its response to Spire's Interrogatory No. 2 four times during the fact discovery period—most recently on August 18, *well after the vast majority of fact witness depositions were over*. Dkt. 168 at 5. This kind of gamesmanship has cost Spire time and money, and deprived it of the opportunity to conduct complete discovery on these alleged trade secrets. With fact discovery now closed, any further supplementation will certainly prejudice Spire's ability to defend itself. Nevertheless, JGR's opposition brief warns that a *sixth* supplementation is forthcoming, Dkt. 215 at 8 n.4, and JGR represented during the September 21 meet and confer that it would endeavor to serve its sixth supplemental response this week.

Spire is entitled to know the complete and final universe of at-issue trade secrets so that it can prepare its defense, including in preparation for expert discovery, mediation, and summary judgment, without the risk of new alleged trade secrets arising at the eleventh hour. Accordingly, Spire respectfully requests that, if JGR has not yet served its Sixth Supplemental Response to Spire's Interrogatory No. 2 by the October 1, 2026 hearing scheduled on this Motion, the Court order JGR to serve its Sixth Supplemental Response to Spire's Interrogatory No. 2 by no later than Friday, October 2. Spire also respectfully requests that this Court require JGR to certify that such response constitutes a comprehensive and final list not subject to further revision. Spire reserves

the right to move, at the appropriate time, to exclude JGR's reliance on any new allegedly misappropriated trade secrets not properly identified by JGR prior to the close of fact discovery.

## II. JGR Should Be Ordered to Remove Non-Trade Secret Documents from the Clean Room and Supply Missing Metadata by October 2

As Spire explained in its opening brief, JGR's misuse of the clean room has created two, independently problematic issues that require the Court's attention.

i. Non-Trade Secret Documents Should be Produced in a Traditional Format.

First, JGR admits that it has used the clean room as a repository for demonstrably non-trade secret material, Dkt. 215 at 10–11, in violation of the clean room protocol JGR fought for. Indeed, to date, the clean room contains more than 450 JGR-produced documents, despite JGR only listing approximately 170 documents as trade secrets in response to Spire's Interrogatory No. 2. JGR's overuse of the clean room has burdened Spire's review, costing its counsel time and Spire money, and frustrated its ability to efficiently review, organize, and present evidence to Spire's experts and to the Court.

At the September 21 meet and confer, JGR recognized that non-trade secret documents have no place in the clean room, and Spire agreed to provide JGR a list of such non-trade secrets documents that should be immediately removed and reproduced in traditional format. To the extent JGR has not removed and reproduced the documents on Spire's forthcoming list pursuant to this agreement by the time of the October 1, 2026 hearing, Spire respectfully requests an Order compelling JGR to do so by October 2. Spire further requests an order prohibiting JGR from producing other non-trade secrets into the clean room, should JGR produce any more documents in the course of this litigation. This requested relief would in no way "dismantle clean room protection of JGR's trade secret information," as JGR claims, Dkt. 215—it would merely ensure that the clean room operates as JGR originally intended, in a manner that protects JGR's trade

secrets while allowing Spire to meaningfully investigate JGR's claims and review the relevant documents in preparation for its defense.

ii. JGR Should Be Compelled to Produce any Metadata in its Possession

Second, JGR has failed to correct metadata issues that have plagued its clean room productions from the outset. Dkt. 168 at 6. Access to metadata for the files and documents JGR contends are its trade secrets are critical to Spire's defense.

At the September 21 meet and confer, Spire agreed to identify any documents outside of those collected during the course of the First Forensic Review (i.e., documents produced with the Bates Stamp "G") that are missing metadata, and JGR agreed to supply such metadata to the extent it is available. Again, Spire respectfully requests that, if JGR has not supplied the missing metadata for the identified files by the time of the October 1 hearing, the Court compel JGR to do so by October 2.

Separately, and with respect to the metadata for documents collected during the First Forensic Review, JGR claims that while "the metadata was potentially preserved on the forensic images," the "files JGR actually received and produced lost usable metadata in the recovery process itself." Dkt. 215 at 11–12. But JGR fails to explain *why* this is the case—and who is responsible for the loss of "usable metadata." The only conceivable answer is that either JGR—or, more likely, JGR's forensic examiner—did not properly preserve the metadata during JGR's initial forensic investigation of Gabehart's devices. And, of course, "a party may be held responsible for the spoliation of relevant evidence done by its agents," *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 523 (D. Md. 2009), so Spire is entitled to understand the circumstances surrounding this metadata loss or destruction in order to evaluate what remedies may be appropriate. Thus, at present, Spire respectfully requests that this Court order JGR to certify

whether any of the missing metadata is within JGR's possession and, if not, to articulate how such metadata was "lost . . . in the recovery process." *See Nallaptai v. Justh Holdings, LLC*, 2022 WL 1812281 (E.D.N.C. June 2, 2022) (ordering defendants to certify "that they have produced all metadata that exists or is reasonably extractable, and to the extent there is metadata they contend is not reasonably extractable they shall so state.").

## III. JGR's Privilege Log Includes Facially Non-Privileged Communications

As Spire explained in its opening brief, JGR has improperly claimed privilege over five[1] documents, which JGR's August 12, 2026 privilege log shows on its face are communications between *non-attorneys* which JGR has withheld on the basis of attorney client privilege. JGR's privilege log violates Rule 26(b)(5)(A) because it contains only vague, boilerplate descriptions of these documents—characterizing communications between non-attorneys as "message[s] reflecting confidential communication containing legal advice"—without providing factual detail to allow assessment of the privilege claim. Dkt. 168 at 8–9.

JGR initially provided a supplemental privilege log that "identif[ies] the[ ] general subject matter" for the referenced documents. Dkt. 215 at 7; Dkt. 215-2. Following the parties' meet and confer, JGR offered the following explanation for the five documents at issue—none of which is sufficient.

[1] Spire's motion originally challenged JGR's explanation with respect to PRIV-0000383. Upon further review, it appears as though the "UNSPECIFIED_PARTICIPANT" in that communication is Eric Schaffer (an attorney). Accordingly, Spire does not seek in camera review of this document at this time.

> PRIV-0000376 - internal communication reflecting legal advice from outside counsel (T. Summey) regarding unrelated employment law matter.
> PRIV-0000379 - internal communication reflecting legal advice from in-house counsel (E. Schaffer) regarding Gabehart separation
> PRIV-0000383 - privileged communication with in-house counsel (E. Schaffer) regarding Gabehart separation
> PRIV-0000399 - internal communication reflecting legal advice from outside counsel (T. Summey) and in-house counsel (E. Schaffer) regarding Gabehart separation
> PRIV-0000404 - internal communication reflecting legal advice from outside counsel regarding anticipated litigation

*See* Sep. 22, 2026 Email from C. Henry, attached as **Exhibit A**.

While Spire appreciates JGR's efforts to resolve this issue, JGR's supplementation of its privilege log does not moot this dispute, as JGR claims. *See* Dkt. 215 at 2, 7. As an initial matter, Spire never suggested that merely recycling the same language JGR used to describe communications *involving attorneys* (as JGR did in response to Spire's Motion to Compel, Dkt. 215-2), would be sufficient for non-attorney communications. And JGR's further supplementation from September 22 fares no better. At bottom, Rule 26(b)(5)(A) requires a description sufficient to enable Spire to "assess the claim" of privilege. Fed. R. Civ. P. 26(b)(5)(A). To fall within the privilege, communications between non-attorneys "must be for the *primary* purpose of seeking legal advice," or "convey[ing] legal advice to the limited number of people necessary for the company to act on that legal advice." *Mr. Dee's Inc. v. Inmar, Inc.*, 2021 WL 3861839, at *4 (M.D.N.C. Aug. 30, 2021) (citations omitted, emphasis in original); *see also Veolia Water Sols. & Techs. Support v. Siemens Indus., Inc.*, 63 F. Supp. 3d 558, 569 (E.D.N.C. 2014) ("Although the nature of the discussion may implicate legal issues, such discussion by non-attorneys of issues having potential legal implications does not in itself transform the communication to attorney client privileged.").

JGR's updated entries fall short of satisfying that standard. While JGR now describes these documents as communications "reflecting legal advice from" counsel concerning various legal issues, *see* Ex. A, those descriptions are insufficient because they fail to provide the details necessary to assess whether the privilege actually applies. First, the description does not make clear that the communication was "made at the direction of an attorney," *see ePlus Inc. v. Lawson Software, Inc.*, 280 F.R.D. 247, 252–53 (E.D. Va. 2012), or that the primary "purpose of the dissemination from one non-attorney to another was to circulate necessary legal advice." *See Hepburn v. Workplace Benefits, LLC*, 2014 WL 12623294, at *3–5 (E.D.N.C. Apr. 18, 2014) (holding descriptions were insufficient for this reason). Second, neither does the description establish whether these non-attorney communications "reveal[ ]" or "explicitly convey[ ] legal advice," as opposed to merely relating to it. *See Mr. Dee's Inc.*, 2021 WL 3861839, at *6 (ordering in camera inspection for this reason); *United Stationers Supply Co. v. King*, 2013 WL 419346 (E.D.N.C. Feb. 1, 2013) (same). Third, JGR's supplemental descriptions similarly fail to demonstrate that the non-attorney recipients "had the 'need to know' the information communicated." *ePlus Inc.*, 280 F.R.D. at 252–53; *see also Mr. Dee's Inc.*, 2021 WL 3861839, at *6 (ordering in camera inspection where the description did not explain the non-lawyers' "interest in receiving" the allegedly privileged legal advice); *U.S. v. Town of Irmo*, 2020 WL 1025686, at *7 (D.S.C. Mar. 3, 2020) (log must reveal whether the communication was "seeking legal advice or simply discussing [underlying legal issues]"). Given JGR's continued failure to provide adequate justification for its privilege claims over these entries, Spire respectfully requests that the Court conduct an in camera review of PRIV-0000376, -0000379, -0000399, and -0000404.

## CONCLUSION

Spire respectfully requests that the Court grant its Motion to Compel the Identification of Trade Secrets and the Production of Documents and Metadata, as narrowed above.

This the 22nd day of September, 2026.


/s/ Joshua D. Davey
Joshua D. Davey (N.C. Bar No. 35246)
Jason D. Evans (N.C. Bar No. 27808)
Lawrence J. Cameron (N.C. Bar No. 41922)
Troy C. Homesley, III (N.C. Bar No. 62148)
Anais M. Jaccard (N.C. Bar No. 58438)
Ben E. Whorf (N.C. Bar No. 64279)
**TROUTMAN PEPPER LOCKE LLP**
301 S. College St., 34th Floor
Charlotte, NC 28202
Telephone: (704) 916-1503
joshua.davey@troutman.com
Jason.evans@troutman.com
lawrence.cameron@troutman.com
troy.homesley@troutman.com
anais.jaccard@troutman.com
ben.whorf@troutman.com

John S. "Evan" Gibbs III – Pro Hac Vice
**TROUTMAN PEPPER LOCKE LLP**
600 Peachtree St, NE #3000
Atlanta, GA 30308
Telephone: (404) 885-3093
evan.gibbs@troutman.com