**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Case No. 3:26-CV-00133-SCR-DCK**

| | |
|---|---|
| JOE GIBBS RACING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER GABEHART and SPIRE MOTORSPORTS II, LLC,<br><br>Defendants. | **PLAINTIFF JOE GIBBS RACING, LLC'S MOTION FOR LEAVE TO FILE ITS ANSWERS TO DEFENDANTS' COUNTERCLAIMS OUT OF TIME** |

Plaintiff Joe Gibbs Racing, LLC ("JGR"), by and through counsel and pursuant to Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure, respectfully moves the Court for leave to file its Answers to the remaining Counterclaims of Defendants Christopher Gabehart ("Gabehart") and Spire Motorsports II, LLC ("Spire") out of time.[1] JGR's proposed Answers are complete and are submitted herewith as **Exhibit A** (JGR's Answer to Gabehart's Remaining Counterclaims) and **Exhibit B** (JGR's Answer to Spire's Counterclaims), and JGR is prepared to file both immediately upon the Court's leave. In support of this Motion, JGR shows the Court as follows:

## BACKGROUND

1. Spire and Gabehart each filed its Answer and Counterclaims on June 24, 2026. Doc. Nos. 99, 100.

2. On July 15, 2026, Plaintiff filed a Motion to Dismiss the Counterclaims asserted by Spire and Gabehart. Doc. Nos. 111, 115.

[1] Contemporaneously with this Motion and prior to the entry of default, JGR is filing its Answers to Defendants' counterclaims.

3. On August 26, 2026, following a motion hearing, the Court entered a text-only Order granting in part and denying in part JGR's Motion to Dismiss Gabehart's Counterclaims as stated in open court. Text Order entered August 26, 2026 at 12:26 PM. The Court's denial was without prejudice to raising the same or other issues following discovery or at trial. As a result, Gabehart's Fourth Claim for Relief (Computer Fraud and Abuse Act), Fifth Claim for Relief (North Carolina Computer Trespass Act), and Sixth Claim for Relief (North Carolina Unfair and Deceptive Trade Practices Act) are no longer pending, and his First Claim for Relief (Breach of Contract), Second Claim for Relief (North Carolina Wage and Hour Act), and Third Claim for Relief (Declaratory Relief) remain pending.

4. Also on August 26, 2026, the Court entered a text-only Order denying JGR's Motion to Dismiss Spire's Counterclaims. Text Order entered August 26, 2026 at 12:24 PM. Accordingly, each of Spire's Counterclaims remains pending.

5. JGR received the transcript of the Court's ruling on September 3, 2026.

6. Under Rule 12(a)(4)(A) of the Federal Rules of Civil Procedure, because the Court denied JGR's motions (in whole or in part), JGR's responsive pleadings were due within 14 days after notice of the Court's action — that is, on or about September 9, 2026. Fed. R. Civ. P. 12(a)(4)(A).

7. JGR's Answers were not filed by that date. JGR has since completed both Answers, which are attached and ready to be filed. The delay was the result of excusable neglect, namely the press of considerable deadlines associated with the parties' significant efforts to complete discovery by the August 31, 2026 deadline, concurrent briefing of five separate discovery motions and considerable good-faith efforts by all parties to resolve outstanding discovery disputes in

advance of a hearing scheduled for October 1, 2026. The undersigned additionally inadvertently and incorrectly failed to calendar the deadline created by the Court's Text Orders.

8. No party will be prejudiced by the requested extension, the delay is brief and will not affect any scheduling-order deadline or the Court's calendar as discovery has ended in this matter. Additionally, JGR seeks leave promptly and in good faith on the same day that it received notice of the issue.

**GROUNDS FOR RELIEF**

9. Where, as here, the time to act has already expired, the Court may, for good cause, extend the time "on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). A late-filed answer is not among the deadlines Rule 6(b)(2) makes non-extendable, and courts routinely grant leave to file an untimely responsive pleading and deem it filed upon a showing of excusable neglect. *Jones v. Jones*, 206 F. Supp. 3d 1098, 1111 (E.D. Va. 2016).

10. The Fourth Circuit evaluates excusable neglect under the equitable factors set out by the Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, (1) the danger of prejudice to the non-moving party, (2) the length of the delay and its potential impact on the proceedings, (3) the reason for the delay, including whether it was within the movant's reasonable control, and (4) whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 385 (1993). Of these, the reason for the delay is the most important factor. *Symbionics Inc. v. Ortlieb*, 432 F. App'x 216, 219 (4th Cir. 2011) (citing *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir. 1996)). Even where excusable neglect is shown, whether to grant an extension remains committed to the Court's sound discretion. *Thompson*, 76 F.3d at 532 n.2.

11. “The United States Court of Appeals for the Fourth Circuit has ‘repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits.’” *Kasparov, Pte Ltd. v. Zacherl*, No. 5:22-CV-503-D, 2024 WL 3039647, at *1 (E.D.N.C. June 17, 2024) (quoting *Colleton Preparatory Acad., Inc. v. Hoover Universal*, 616 F.3d 413, 417 (4th Cir. 2010)).

12. **No prejudice; minimal delay.** Discovery in this case ended on August 31, 2026, which was before JGR’s deadline to answer Defendants’ counterclaims on September 9, 2026. During the discovery period, the parties completed full discovery of all claims and counterclaims, so Defendants have not suffered prejudice by virtue of being denied the ability to obtain discovery into any of their counterclaims. Additionally, Gabehart and Spire have long been aware of JGR’s factual and legal positions, which are set out at length in JGR’s Second Amended Complaint and its motions to dismiss. *See Turner v. Supreme Ct. of Virginia*, No. 4:18CV123, 2019 WL 13297449, at *4 (E.D. Va. Feb. 20, 2019) (granting leave to file answer where defendant “undeniably revealed an intent to defend against” a claim). Additionally, the delay is brief and has had no meaningful impact on these proceedings. The circumstances giving rise to this Motion resulted from an inadvertent oversight rather than any bad faith or dilatory motive by Plaintiff. Upon discovering the oversight, Plaintiff promptly prepared its Answer and now respectfully seeks leave to file it out of time.

13. **Good faith.** JGR has at all times proceeded in good faith. It has completed its Answers, attaches them to this Motion, and seeks leave to file them at the earliest practicable time. There is no bad faith, gamesmanship, or dilatory motive.

14. **Reason for the delay.** As set forth above, the failure to file the Answers by September 9, 2026 was the product of excusable neglect and not of any disregard for the Court’s

rules or deadlines. Since the Court entered its Text Orders on August 26, 2026, the parties have been engaged in a considerable amount of concurrent briefing regarding various critically important issues in the case, including discovery disputes, alleged violations of the Court's orders, and alleged destruction of evidence. Since August 26, 2026, more than 90 documents have been filed with the Court. Amidst these filings, undersigned counsel inadvertently and incorrectly failed to calendar the deadline created by the Court's Text Orders on August 26, 2026. *See, e.g. Chambers v. Brown*, No. 1:24CV562, 2025 WL 654139, at *3 (M.D.N.C. Feb. 28, 2025) (granting leave to file answer two months after deadline where party incorrectly believed no response was required to summons); *Kasparov*, 2024 WL 3039647, at *1 (granting leave to file late answer where reason for delay was internal docketing error by counsel and the proposed answer "presents defenses that logically follow from the arguments [plaintiff] made in support of its motion to dismiss the counterclaims.").

15. Upon receiving the Applications for Entry of Default filed today (Doc. Nos. 246, 247), undersigned counsel immediately contacted counsel for Gabehart and Spire to request consent to file a Motion for Leave to File Answer Out of Time. Shortly before filing this Motion, undersigned counsel received a response from counsel for Spire and Gabehart who indicated that they would consider the request. Given the importance of avoiding any further delay prior to filing this Motion, JGR responded that it was important to proceed with filing. JGR will immediately amend its filing should Defendants subsequently indicate their consent to this Motion.

16. Prior to receiving Defendants' Applications for Entry of Default, JGR had received no communication from Defendants regarding the status of its Answers. *Kasparov*, 2024 WL 3039647, at *1 (noting that "counsel for [the defendant] could have mitigated any prejudice with a short communication to [the plaintiff's] counsel after the deadline passed.").

## CONCLUSION

WHEREFORE, JGR respectfully requests that the Court:

A. Grant this Motion and extend the time for JGR to file its Answers to the remaining Counterclaims of Gabehart and Spire;

B. Deem JGR's Answers, attached as Exhibit A and Exhibit B, timely filed as of the date they are filed with the Court, or approve the filing nunc pro tunc of the Answers that are being contemporaneously filed herewith;

C. Enter the accompanying proposed Order; and

D. Grant such other and further relief as the Court deems just and proper.

[*SIGNATURE ON FOLLOWING PAGE*]

This the 24th day of September, 2026.

**PARKER POE ADAMS & BERNSTEIN LLP**


/s/ *Tory Ian Summey*
Sarah F. Hutchins
N.C. Bar No. 38172
Tory Ian Summey
N.C. Bar No. 46437
Keith M. Weddington
N.C. Bar No. 14352
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Chad F. Lee
N.C. Bar No. 56350
Kevin A. Marshall
N.C. Bar No. 50856
Christopher B. Henry
N.C. Bar No. 55955
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com
chadlee@parkerpoe.com
kevinmarshall@parkerpoe.com
chrishenry@parkerpoe.com

**KING & SPALDING LLC**
Danielle T. Williams
dwilliams@kslaw.com
N.C. Bar No. 23283
300 South Tryon Street, Suite 1700
Charlotte, NC 28202
Thomas M. Melsheimer – *Pro Hac Vice*
tmelsheimer@kslaw.com
Chad B. Walker – *Pro Hac Vice*
cwalker@kslaw.com
Tracea Rice – *Pro Hac Vice*
trice@kslaw.com
Alexandra Moore – *Pro Hac Vice*

almoore@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201

*Attorneys for Joe Gibbs Racing, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this date the foregoing **PLAINTIFF JOE GIBBS RACING, LLC'S MOTION FOR LEAVE TO FILE ITS ANSWERS TO DEFENDANTS' COUNTERCLAIMS OUT OF TIME** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notice and serve same upon counsel of record via the Court's electronic case filing system.

This the 24th day of September, 2026.

**PARKER POE ADAMS & BERNSTEIN LLP**

/s/ Tory Ian Summey
Tory Ian Summey
N.C. Bar No. 46437
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
torysummey@parkerpoe.com
*Attorney for Joe Gibbs Racing, LLC*

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Case No. 3:26-CV-00133-SCR-DCK**

| | |
|---|---|
| JOE GIBBS RACING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER GABEHART and SPIRE MOTORSPORTS II, LLC,<br><br>Defendants. | **PLAINTIFF JOE GIBBS RACING, LLC'S ANSWER TO DEFENDANT GABEHART'S REMAINING COUNTERCLAIMS** |

Plaintiff Joe Gibbs Racing, LLC ("JGR"), by and through counsel, submits this Answer to the Counterclaims of Defendant Christopher Gabehart ("Gabehart"). By Order entered August 26, 2026, the Court granted in part and denied in part JGR's Motion to Dismiss Gabehart's Counterclaims (ECF No. 115), and Gabehart's Fourth Claim for Relief (Computer Fraud and Abuse Act), Fifth Claim for Relief (North Carolina Computer Trespass Act), and Sixth Claim for Relief (North Carolina Unfair and Deceptive Trade Practices Act) are no longer pending. Accordingly, JGR answers only the remaining Counterclaims: the First Claim for Relief (Breach of Contract), the Second Claim for Relief (North Carolina Wage and Hour Act), and the Third Claim for Relief (Declaratory Relief). JGR responds below to the correspondingly numbered paragraphs of Gabehart's Counterclaim. Except as expressly admitted, JGR denies each and every allegation contained in the Counterclaims, including any allegation contained in a heading, subheading, or unnumbered paragraph, which JGR restates below solely for convenience and denies. JGR reserves the right to amend or supplement this Answer as permitted by the Federal Rules of Civil Procedure and the orders of this Court.

## INTRODUCTION

1. The allegations in Paragraph 1 consist of argument, characterization, and legal conclusions to which no response is required. To the extent a response is required, denied.

2. The allegations in Paragraph 2 consist of argument, characterization, and legal conclusions to which no response is required. To the extent a response is required, denied. JGR specifically denies that Gabehart properly invoked or satisfied the conditions of Section 6 of the Agreement, denies that it unlawfully withheld any compensation, and denies that this action was brought for any improper purpose.

3. The allegations in Paragraph 3 consist of argument and characterization to which no response is required. To the extent a response is required, denied. JGR admits only that a forensic examination of certain devices and accounts occurred pursuant to agreed protocols, and denies Gabehart's characterization of the examination and its results.

4. The allegations in Paragraph 4 consist of argument and characterization to which no response is required. To the extent a response is required, denied.

5. The allegations in Paragraph 5 consist of argument, characterization, and legal conclusions to which no response is required. To the extent a response is required, denied.

6. The allegations in Paragraph 6 consist of argument and characterization to which no response is required. To the extent a response is required, denied.

7. The allegations in Paragraph 7 consist of argument, characterization, and legal conclusions to which no response is required. To the extent a response is required, denied.

## PARTIES, JURISDICTION, AND VENUE

8. Admitted upon information and belief.

9. Admitted.

10. Paragraph 10 states a legal conclusion to which no response is required. To the extent a response is required, JGR admits only that this Court has supplemental jurisdiction over the remaining Counterclaims under 28 U.S.C. § 1367.

11. Paragraph 11 states a legal conclusion to which no response is required. To the extent a response is required, JGR does not contest that venue is proper in this District.

**FACTUAL ALLEGATIONS**

12. Admitted that Gabehart began working for JGR in 2012 and that he served over time as an engineer, crew chief, and Competition Director. Except as expressly admitted, the allegations in Paragraph 12 are denied.

13. Admitted that Gabehart and JGR entered into a written Employment Agreement (the "Agreement") effective December 1, 2024. The Agreement speaks for itself, and JGR denies any characterization inconsistent with its terms.

14. Admitted that Gabehart and JGR entered into a written Employment Agreement (the "Agreement") effective December 1, 2024. The Agreement speaks for itself, and JGR denies any characterization inconsistent with its terms.

15. Admitted that Gabehart and JGR entered into a written Employment Agreement (the "Agreement") effective December 1, 2024. The Agreement speaks for itself, and JGR denies any characterization inconsistent with its terms.

16. Admitted that Gabehart and JGR entered into a written Employment Agreement (the "Agreement") effective December 1, 2024. The Agreement speaks for itself, and JGR denies any characterization inconsistent with its terms.

17. Admitted that Gabehart met with Coach Gibbs on November 6, 2025, that he provided Coach Gibbs with a written document that speaks for itself, and that the next day he sent an email

to Tim Carmichael that speaks for itself. Except as expressly admitted, the allegations in Paragraph 17 are denied.

18. Admitted that Gabehart provided Coach Gibbs with a written document on November 6, 2025 that speaks for itself. Except as expressly admitted, denied.

19. Admitted that Gabehart provided Coach Gibbs with a written document on November 6, 2025 that speaks for itself. Except as expressly admitted, denied.

20. Admitted that Gabehart provided Coach Gibbs with a written document on November 6, 2025 that speaks for itself. Except as expressly admitted, denied.

21. Admitted that Gabehart provided Coach Gibbs with a written document on November 6, 2025 that speaks for itself. Except as expressly admitted, denied.

22. Denied.

23. Admitted that the check and 1099-NEC are written documents that speaks for themselves. Except as expressly admitted, denied.

24. Denied.

25. Admitted that Gabehart met with Coach Gibbs on November 6, 2025, and that the parties agreed to part ways. JGR lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Gabehart's subjective motivations and therefore denies them. Except as expressly admitted, the allegations in Paragraph 25 are denied.

26. Admitted that Gabehart met with Coach Gibbs on November 6, 2025, and that, following that meeting, the parties agreed to part ways. JGR denies that Gabehart validly invoked or satisfied Section 6, and denies the remaining allegations in Paragraph 26.

27. Paragraph 27 purports to characterize a text message, which speaks for itself. JGR denies any characterization inconsistent with the document's terms and denies the remaining

allegations in Paragraph 27.

28. Admitted that, following the parties' agreement to part ways, Gabehart ceased providing services to JGR on or about November 10, 2025, and that JGR did not continue to pay a salary for services that were not performed. JGR denies that any withholding was unlawful or coercive, and denies the remaining allegations in Paragraph 28.

29. Denied.

30. Paragraph 30 purports to characterize text and email communications, which speak for themselves. Admitted that the parties discussed terms of a potential mutual separation. JGR denies that Gabehart validly invoked Section 6, and denies the remaining allegations in Paragraph 30.

31. Admitted that the parties did not execute a separation agreement or mutual release and that Gabehart rejected JGR's proposal. JGR denies that its proposal was unreasonable or made in bad faith, and denies the remaining allegations in Paragraph 31.

32. Paragraph 32 purports to characterize a text message, which speaks for itself. JGR denies any characterization inconsistent with the document's terms, denies that Gabehart validly invoked or satisfied Section 6, and denies the remaining allegations in Paragraph 32.

33. Paragraph 33 purports to characterize a written communication, which speaks for itself. JGR denies any characterization inconsistent with the document's terms and denies the remaining allegations in Paragraph 33.

34. Admitted that JGR retained a private investigator and communicated to Spire that Gabehart was subject to contractual obligations, including restrictive covenants. JGR denies the allegation that "there was no noncompete," and denies the remaining allegations in Paragraph 34.

35. Admitted that Gabehart returned his JGR-issued devices on or about November 10, 2025, that JGR accessed its own devices, and that JGR retained a forensic examiner. Admitted that

Gabehart had synced his personal accounts to his JGR-issued devices and that JGR files were present on those accounts. JGR denies that any access was unauthorized or improper, denies Gabehart's characterizations, and denies the remaining allegations in Paragraph 35.

36. JGR lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning any alerts Gabehart claims to have received and therefore denies them. JGR denies that it engaged in any unauthorized access and denies the remaining allegations in Paragraph 36.

37. Paragraph 37 purports to characterize communications regarding COBRA, which speak for themselves. JGR lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning any denied insurance claims and therefore denies them. JGR denies Gabehart's characterizations and denies the remaining allegations in Paragraph 37.

38. Admitted that JGR did not issue a written notice designating November 10, 2025 as a termination date and that the parties did not execute a separation agreement or mutual release. Except as expressly admitted, the allegations in Paragraph 38, including their implications, are denied.

39. Denied.

40. Admitted that the parties agreed to a forensic examination of certain devices and accounts pursuant to a protocol and that Gabehart paid for that examination. JGR denies Gabehart's characterizations, including that the examination was "invasive" or designed "to prove a negative," and denies the remaining allegations in Paragraph 40.

41. Admitted that the forensic examination was conducted pursuant to a written protocol, that Reliance Forensics, LLC served as the examiner, and that Gabehart paid for part of the examination. The referenced declaration and protocol speak for themselves, and JGR denies any

characterization inconsistent with their terms. Except as expressly admitted, the allegations in Paragraph 41 are denied.

42. Paragraph 42 purports to characterize the forensic protocol, which speaks for itself. JGR denies any characterization inconsistent with its terms.

43. JGR lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Gabehart's subjective good faith and therefore denies them. JGR denies the remaining allegations in Paragraph 43.

44. Admitted that the forensic examination was completed and that JGR files were located on Gabehart's personal accounts and devices and were deleted from the device and account where they were located on or about February 6, 2026. JGR denies Gabehart's characterization that the examination confirmed no wrongdoing or exonerated him, and denies the remaining allegations in Paragraph 44.

45. Denied.

46. Denied.

47. Admitted that JGR paid Gabehart's 2025 season performance bonus in full on January 20, 2026. JGR denies that the bonus was paid late, denies that any earlier payment date was required or has been alleged, and denies the remaining allegations in Paragraph 47.

48. Admitted that Gabehart ceased providing services on or about November 10, 2025 and that JGR did not continue paying a salary thereafter, and admitted that JGR provided a notice of termination for cause dated February 9, 2026. JGR denies that Gabehart was entitled to a salary for any period in which he provided no services, and denies the remaining allegations in Paragraph 48.

49. Denied.

50. Denied.

51. Admitted that Gabehart's counsel sent JGR's counsel a letter which is in writing and speaks for itself. JGR lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Spire's willingness permit a forensic review or enter any type of agreement with JGR. Except as specifically admitted, denied.

52. Admitted that, by letter dated February 9, 2026, JGR notified Gabehart that his employment agreement was terminated for cause. That letter speaks for itself, and JGR denies any characterization inconsistent with its terms. JGR denies the remaining allegations in Paragraph 52.

53. Denied.

54. Denied.

55. Paragraph 55 purports to characterize an internal payroll record, which speaks for itself. JGR denies any characterization inconsistent with the document's terms and denies the remaining allegations in Paragraph 55.

56. Paragraph 56 purports to characterize a public interview, which speaks for itself. JGR denies any characterization inconsistent with the statement and denies the remaining allegations in Paragraph 56.

57. Admitted that Gabehart has obligations arising from his employment, including obligations not to disclose JGR's Confidential Information as defined in the Agreement. JGR denies that Gabehart has honored those obligations, and denies the remaining allegations in Paragraph 57.

58. JGR lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the existence or terms of any agreement between Gabehart and Spire and therefore denies them. Any such document speaks for itself. JGR denies the remaining allegations

in Paragraph 58.

59. Admitted that a court-ordered forensic review of certain devices and accounts has been conducted pursuant to an agreed protocol. The protocol and any search-term lists speak for themselves, and JGR denies any characterization inconsistent with their terms. Except as expressly admitted, the allegations in Paragraph 59 are denied.

60. Denied.

61. Denied.

62. Admitted that a copy of the Agreement was filed in connection with JGR's original Complaint. JGR denies Gabehart's characterizations, and denies the remaining allegations in Paragraph 62, including its legal conclusions.

**FIRST CLAIM FOR RELIEF (Breach of Contract)**

63. JGR incorporates by reference its responses to the preceding paragraphs as if fully set forth herein.

64. Admitted that the Agreement is a valid and enforceable contract supported by adequate consideration. To the extent Paragraph 64 alleges that JGR breached any provision, denied. The Agreement speaks for itself, and JGR denies any characterization inconsistent with its terms.

65. Denied.

66. Denied.

67. Denied. JGR denies that it breached any express term of the Agreement or the implied covenant of good faith and fair dealing, and specifically denies subparts (a), (b), and (c) of Paragraph 67.

68. Denied.

**SECOND CLAIM FOR RELIEF (Violation of the North Carolina Wage and Hour Act)**

69. JGR incorporates by reference its responses to the preceding paragraphs as if fully set forth herein.

70. Admitted that, during the period of Gabehart's employment, Gabehart was an "employee" and JGR was an "employer" within the meaning of N.C. Gen. Stat. § 95-25.2. Except as expressly admitted, the allegations in Paragraph 70 are denied.

71. Denied.

72. Denied.

73. Denied.

74. Denied.

**THIRD CLAIM FOR RELIEF (Declaratory Relief)**

75. JGR incorporates by reference its responses to the preceding paragraphs as if fully set forth herein.

76. Denied.

77. Admitted that JGR terminated Gabehart's employment for cause by notice dated February 9, 2026, and that the Agreement's 18-month noncompetition covenant applies. Except as expressly admitted, the allegations in Paragraph 77 are denied.

78. Denied.

79. Denied.

80. Denied. JGR admits that it contends Gabehart's role as Spire's Chief Motorsports Officer violates the noncompetition covenant, and denies Gabehart's contrary assertion.

81. Admitted that an actual and justiciable controversy exists between the parties concerning the noncompetition covenant. JGR denies Gabehart's characterizations of the merits

of that controversy, including subparts (i) through (iv) of Paragraph 81, and states that the issues raised are duplicative of the claims and defenses already before the Court in JGR's Second Amended Complaint.

82. Paragraph 82 states a legal conclusion to which no response is required. To the extent a response is required, JGR denies that Gabehart is entitled to any declaratory relief and further states that the Third Claim for Relief is duplicative of the issues the Court will necessarily resolve in adjudicating JGR's affirmative claims.

The Fourth Claim for Relief (Computer Fraud and Abuse Act), Fifth Claim for Relief (North Carolina Computer Trespass Act), and Sixth Claim for Relief (North Carolina Unfair and Deceptive Trade Practices Act), set forth in Paragraphs 83 through 103, are no longer pending following the Court's August 26, 2026 Order and require no response. To the extent a response is required, JGR denies the allegations in Paragraphs 83 through 103.

## RESPONSE TO GABEHART'S PRAYER FOR RELIEF

The remaining unnumbered paragraphs of the Counterclaims, including Gabehart's Prayer for Relief and its subparts, set forth the relief Gabehart requests and require no response. To the extent a response is required, JGR denies that Gabehart is entitled to any of the relief requested, or to any relief whatsoever, on his remaining Counterclaims.

## DEFENSES AND AFFIRMATIVE DEFENSES

JGR asserts the following defenses and affirmative defenses without assuming any burden of proof or persuasion that otherwise rests with Gabehart, and reserves the right to amend or supplement these defenses as discovery proceeds. Consistent with the Court's August 26, 2026 Order, which denied JGR's Motion to Dismiss in part without prejudice to raising the same or other issues following discovery or at trial, JGR asserts the following defenses.

**FIRST DEFENSE (Failure to State a Claim)**

Gabehart's remaining Counterclaims fail, in whole or in part, to state a claim upon which relief can be granted.

**SECOND DEFENSE (Compensation Conditioned on Services Performed)**

Gabehart's breach of contract and wage claims fail because the Agreement conditions base salary on the services Gabehart provided to JGR. Gabehart admittedly ceased providing services on or about November 10, 2025, and JGR had no obligation to continue paying a salary for services that were not performed. An employer's obligation to pay salary and service-linked compensation ceases when the employee stops working.

**THIRD DEFENSE (Payment; Compensation Paid in Full)**

Gabehart's claims are barred, in whole or in part, because JGR paid Gabehart all compensation he earned, including his base salary through the date he ceased providing services and his 2025 performance bonus, which JGR paid in full on January 20, 2026.

**FOURTH DEFENSE (Failure to Satisfy Conditions Precedent)**

Gabehart's claims premised on Section 6 of the Agreement — including his claim to a $100,000 payment, a reduced noncompete period, and completion of a "separation process" — are barred because Gabehart did not satisfy the conditions precedent of Section 6.

**FIFTH DEFENSE (No Earned Wages Under the NCWHA)**

Gabehart's North Carolina Wage and Hour Act claim fails because the Act protects only wages earned for labor or services actually performed and does not permit recovery of future, unearned, or contingent contractual amounts. The base salary Gabehart claims after November 10, 2025 was not earned because he performed no services, and the disputed $100,000 Section 6 payment is a contingent contractual benefit — payable only "in exchange for a complete mutual

release" and upon satisfaction of other conditions that were never met — not an earned statutory wage.

**SIXTH DEFENSE (Bonus Paid in Full)**

To the extent Gabehart's wage claim rests on his 2025 performance bonus, it fails because JGR paid that bonus in full on January 20, 2026, and Gabehart has alleged no facts establishing that the bonus was due at any earlier date. The Agreement provides that earned performance bonuses are payable within forty-five (45) days after JGR's receipt of the applicable prize money, and Gabehart has not alleged when JGR received that prize money or that any earlier deadline was missed.

**SEVENTH DEFENSE (Implied Covenant Cannot Override Express Terms)**

Gabehart's claim for breach of the implied covenant of good faith and fair dealing fails because the implied covenant cannot be used to contradict, override, or create obligations beyond the express terms of the Agreement, with which JGR complied.

**EIGHTH DEFENSE (Declaratory Judgment Claim Is Duplicative)**

Gabehart's Third Claim for Relief for declaratory judgment should be dismissed or denied because it is the mirror image of, and wholly duplicative of, the claims and defenses already before the Court in JGR's Second Amended Complaint. The Court's resolution of JGR's affirmative claims will necessarily resolve the applicability, enforceability, and alleged breach of the noncompetition covenant, and the declaratory judgment claim presents no independent controversy warranting separate relief.

**NINTH DEFENSE (Valid and Enforceable Restrictive Covenants; For-Cause Termination)**

JGR terminated Gabehart's employment for cause by notice dated February 9, 2026, thereby triggering the Agreement's 18-month noncompetition covenant, which is valid and

enforceable and reasonably tailored to protect JGR's legitimate business interests. Gabehart is not entitled to a declaration that the covenant is inapplicable, unenforceable, or not violated.

**TENTH DEFENSE (Prior Material Breach; Unclean Hands)**

Gabehart's claims are barred, in whole or in part, by his own prior material breaches of the Agreement, including his misappropriation and retention of JGR's confidential information and trade secrets and his breach of his restrictive covenants, and by the doctrine of unclean hands arising from that same conduct.

**ELEVENTH DEFENSE (Good Faith)**

At all relevant times, JGR acted in good faith, for legitimate business reasons, and in accordance with its rights and obligations under the Agreement and applicable law. JGR did not act willfully or in bad faith, and any statutory liquidated or enhanced damages, including under the North Carolina Wage and Hour Act, are therefore unavailable.

**TWELFTH DEFENSE (No Damages; Failure to Mitigate)**

Gabehart has suffered no cognizable damages. To the extent Gabehart suffered any damages, which JGR denies, he failed to take reasonable steps to mitigate them.

**THIRTEENTH DEFENSE (Setoff and Recoupment)**

Any recovery by Gabehart (which JGR denies is warranted) must be reduced or offset by amounts owed to JGR, including on the claims asserted in JGR's Second Amended Complaint.

**FOURTEENTH DEFENSE (Reservation of Defenses)**

JGR reserves the right to assert additional defenses that discovery or further investigation may reveal.

**PRAYER FOR RELIEF**

WHEREFORE, JGR respectfully requests that the Court:

A. Dismiss Gabehart's remaining Counterclaims in their entirety, with prejudice;

B. Enter judgment in favor of JGR and against Gabehart on each of Gabehart's remaining Counterclaims;

C. Order that Gabehart take nothing by way of his remaining Counterclaims;

D. Award JGR its costs and reasonable attorneys' fees incurred in defending against the Counterclaims, to the extent permitted by law and the Agreement; and

E. Grant JGR such other and further relief as the Court deems just and proper.

**JURY DEMAND**

JGR demands a trial by jury on all issues so triable.

[*SIGNATURE ON FOLLOWING PAGE*]

This the 24th day of September, 2026.

**PARKER POE ADAMS & BERNSTEIN LLP**

/s/ *Tory Ian Summey*
Sarah F. Hutchins
N.C. Bar No. 38172
Tory Ian Summey
N.C. Bar No. 46437
Keith M. Weddington
N.C. Bar No. 14352
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Chad F. Lee
N.C. Bar No. 56350
Kevin A. Marshall
N.C. Bar No. 50856
Christopher B. Henry
N.C. Bar No. 55955
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com
chadlee@parkerpoe.com
kevinmarshall@parkerpoe.com
chrishenry@parkerpoe.com

**KING & SPALDING LLC**

Danielle T. Williams
dwilliams@kslaw.com
N.C. Bar No. 23283
300 South Tryon Street, Suite 1700
Charlotte, NC 28202
Thomas M. Melsheimer – *Pro Hac Vice*
tmelsheimer@kslaw.com
Chad B. Walker – *Pro Hac Vice*
cwalker@kslaw.com
Tracea Rice – *Pro Hac Vice*
trice@kslaw.com
Alexandra Moore – *Pro Hac Vice*

almoore@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201

*Attorneys for Joe Gibbs Racing, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this date the foregoing **PLAINTIFF JOE GIBBS RACING, LLC'S ANSWER TO DEFENDANT GABEHART'S REMAINING COUNTERCLAIMS** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notice and serve same upon counsel of record via the Court's electronic case filing system.

This the 24th day of September, 2026.

**PARKER POE ADAMS & BERNSTEIN LLP**

/s/ *Tory Ian Summey*
Tory Ian Summey
N.C. Bar No. 46437
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
*Attorney for Joe Gibbs Racing, LLC*

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. 3:26-CV-00133-SCR-DCK

| | |
|---|---|
| JOE GIBBS RACING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER GABEHART and SPIRE MOTORSPORTS II, LLC,<br><br>Defendants. | **ANSWER OF PLAINTIFF JOE GIBBS RACING, LLC'S TO DEFENDANT SPIRE'S COUNTERCLAIMS** |

Plaintiff Joe Gibbs Racing, LLC ("JGR") submits this Answer to the Counterclaims of Defendant Spire Motorsports II, LLC ("Spire"). Except as expressly admitted, JGR denies each and every allegation contained in the Counterclaims, including any allegation contained in a heading, subheading, or unnumbered paragraph, which JGR restates below solely for convenience and denies. JGR reserves the right to amend or supplement this Answer as permitted by the Federal Rules of Civil Procedure and the orders of this Court.

**THE PARTIES**

1. Admitted upon information and belief.

2. Admitted.

**JURISDICTION AND VENUE**

3. The allegations in Paragraph 3 state legal conclusions to which no response is required. To the extent a response is required, JGR admits only that this Court has supplemental jurisdiction over Spire's Counterclaims under 28 U.S.C. § 1367 and that venue is proper in this District, and denies the remaining allegations and characterizations contained in Paragraph 3.

4. Paragraph 4 purports to incorporate by reference allegations from JGR's Second

Amended Complaint and states no allegation requiring a response. To the extent a response is required, JGR incorporates its Second Amended Complaint, the contents of which speak for themselves, and denies any allegation or characterization inconsistent therewith.

## FACTUAL ALLEGATIONS

5. Admitted upon information and belief that Spire operates a NASCAR Cup Series team and a NASCAR Craftsman Truck Series team. JGR lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 5 and therefore denies them.

6. Admitted upon information and belief that Spire is owned and controlled by Dickerson and TWG Motorsports, a division of TWG Global Holdings, LLC. JGR lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 6 and therefore denies them.

7. JGR lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 and therefore denies them.

8. Admitted upon information and belief.

9. Admitted upon information and belief that Spire competes in the NASCAR Cup Series as a Chevrolet-aligned organization and that it participates in a technical alliance with Hendrick Motorsports. JGR lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 9 and therefore denies them.

10. JGR lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 and therefore denies them.

11. JGR lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 and therefore denies them.

12. JGR lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 and therefore denies them.

13. Admitted that JGR and Spire are competitors in the NASCAR Cup Series. Except as expressly admitted, the allegations in Paragraph 13 are denied.

14. Denied.

15. Denied.

16. Denied.

17. Denied.

18. JGR lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18, including Dickerson's alleged conclusions, and therefore denies them.

19. JGR lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 and therefore denies them.

20. JGR lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 and therefore denies them.

21. Denied.

22. Admitted that Smith sent Gabehart a copy of Smith's employment agreement with Spire while Gabehart was employed by JGR. Except as expressly admitted, the allegations in Paragraph 22 are denied.

23. Admitted that Smith sent Gabehart a copy of Smith's employment agreement with Spire while Gabehart was employed by JGR. Except as expressly admitted, the allegations in Paragraph 23 are denied.

24. . Admitted that Smith sent Gabehart a copy of Smith's employment agreement with

Spire while Gabehart was employed by JGR. Except as expressly admitted, the allegations in Paragraph 24 are denied.

25. Denied.

26. Admitted that a car chief is generally responsible for preparing a car to meet applicable NASCAR standards and specifications. JGR admits that it was informed Spire contended Smith was subject to a non-compete covenant, which is in writing and speaks for itself. Except as expressly admitted, the allegations in Paragraph 26 are denied.

27. Admitted that Gabehart and Dickerson discussed a potential release of Smith from his contract with Spire. Except as expressly admitted, the allegations in Paragraph 27 are denied.

28. Denied.

29. Admitted that JGR agreed to pay and has offered to pay Spire $100,000 in exchange for its promise to release Smith from his contract with Spire. Except as expressly admitted, the allegations in Paragraph 29 are denied.

30. Admitted that JGR hired Smith and that Smith began working for JGR as car chief of the No. 54 car in or about April 2025. Except as expressly admitted, the allegations in Paragraph 30, including all allegations concerning any "Implied Trade Contract," are denied.

31. Denied.

32. Denied.

33. Admitted that a statement regarding Smith's hiring was made to a news media outlet, the content of which speaks for itself. Except as expressly admitted, the allegations in Paragraph 33 are denied.

34. Admitted that JGR employs Smith. Except as expressly admitted, the allegations in Paragraph 34 are denied.

35. JGR lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35 and therefore denies them.

36. Admitted that Smith serves as a car chief at JGR. Except as expressly admitted, the allegations in Paragraph 36 are denied.

37. JGR lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 37 and therefore denies them.

38. Admitted.

39. Admitted that JGR's No. 54 car saw improved performance after April 2025. Except as expressly admitted, the allegations in Paragraph 34 are denied.

40. Admitted.

41. Denied.

42. Denied that any "Implied Trade Contract" exists. Admitted that JGR did not release Tyler Allen to Spire. JGR lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, including the allegations concerning Dickerson's requests and characterizations, and therefore denies them.

43. Denied that any "Implied Trade Contract" exists. Admitted that JGR did not release Ryan Towles to Spire. JGR lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, including the allegations concerning Dickerson's requests and characterizations, and therefore denies them.

44. Admitted that JGR has not agreed to release any employee to Spire. Except as expressly admitted, the allegations in Paragraph 44 are denied.

45. Admitted that JGR has not paid Spire $100,000, that Spire has not sent an invoice for payment of this amount, and that JGR has offered to pay Spire $100,000 during this litigation.

Except as expressly admitted, the allegations in Paragraph 45 are denied.

46. JGR lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 46 and therefore denies them.

47. JGR lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 47 and therefore denies them.

48. JGR lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 48 and therefore denies them.

49. JGR lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 49 and therefore denies them.

50. JGR lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 50 and therefore denies them.

51. JGR lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 51 and therefore denies them.

52. JGR lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 52 and therefore denies them.

53. JGR lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 53 and therefore denies them.

54. Admitted that Dickerson and Gabehart met for lunch on December 2, 2025 at a restaurant in Mooresville, North Carolina. Except as admitted, JGR lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 54 and therefore denies them.

55. Admitted that a telephone communication occurred between representatives of JGR and Spire on or about December 3, 2025. JGR denies Spire's characterization of that

communication. Except as expressly admitted, the allegations in Paragraph 55 are denied.

56. JGR lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 56 and therefore denies them.

57. JGR lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 57 and therefore denies them.

58. Admitted that JGR commenced this action on February 19, 2026. JGR's complaint speaks for itself, and JGR denies any allegation or characterization inconsistent therewith.

59. Admitted that JGR communicated with Spire on or about February 24, 2026 regarding its intent to amend its complaint to name Spire as a defendant. JGR denies Spire's characterization of that communication. Except as expressly admitted, the allegations in Paragraph 59 are denied.

60. Admitted that JGR amended its complaint on or about February 24, 2026 to name Spire as a defendant. The amended complaint speaks for itself, and JGR denies any allegation or characterization inconsistent therewith.

61. Admitted that Spire has repeatedly claimed that it has not found any evidence that Gabehart transmitted JGR's purported trade secrets or confidential information to other Spire employees. Except as expressly admitted, the allegations in Paragraph 61 are denied.

62. Denied.

63. Admitted upon information and belief that Spire and Gabehart executed a confidentiality agreement on or about February 16, 2026, the terms of which speak for themselves. Except as expressly admitted, the allegations in Paragraph 63 are denied.

64. Denied.

65. Denied.

66. Denied.

## COUNT 1 — Breach of Contract

67. JGR incorporates by reference its responses to the preceding paragraphs as if fully set forth herein.

68. Denied.

69. Denied.

70. Admitted that JGR has not released any employee to Spire and has not paid Spire $100,000. Except as expressly admitted, the allegations in Paragraph 70 are denied.

71. Denied.

72. Denied.

73. Denied.

## COUNT 2 — Breach of Implied Contract

74. JGR incorporates by reference its responses to the preceding paragraphs as if fully set forth herein.

75. Paragraph 75 states that Count 2 is pleaded in the alternative and requires no response. To the extent a response is required, the allegations in Paragraph 75 are denied.

76. Denied.

77. Denied.

78. Denied.

79. Denied.

80. Denied.

81. Denied.

## COUNT 3 — Unjust Enrichment

82. JGR incorporates by reference its responses to the preceding paragraphs as if fully set

forth herein.

83. Paragraph 83 states that Count 3 is pleaded in the alternative and requires no response. To the extent a response is required, the allegations in Paragraph 83 are denied.

84. Denied.

85. Denied.

86. Admitted that JGR hired Smith. JGR denies that Spire conferred any benefit on JGR for which compensation is owed, and denies that JGR has been unjustly enriched. Except as expressly admitted, the allegations in Paragraph 86 are denied.

87. Denied.

88. Denied.

89. Denied.

**RESPONSE TO SPIRE'S PRAYER FOR RELIEF**

The remaining unnumbered paragraphs of the Counterclaims, including Spire's Prayer for Relief and its subparts, set forth the relief Spire requests and require no response. To the extent a response is required, JGR denies that Spire is entitled to any of the relief requested, or to any relief whatsoever, on its Counterclaims.

**DEFENSES AND AFFIRMATIVE DEFENSES**

JGR asserts the following defenses and affirmative defenses without assuming any burden of proof or persuasion that otherwise rests with Spire, and reserves the right to amend or supplement these defenses as discovery proceeds.

**FIRST DEFENSE (Failure to State a Claim)**

Spire's Counterclaims fail, in whole or in part, to state a claim upon which relief can be granted.

**SECOND DEFENSE (No Enforceable Contract — Indefiniteness)**

Spire's breach of contract and breach of implied contract claims fail because no enforceable contract was ever formed. The alleged "Implied Trade Contract" is fatally indefinite and uncertain as to its essential and material terms — including, without limitation, the identity of any employee to be released, the timing and manner of any reciprocal performance, the nature and scope of any consideration, and the conditions of performance — and is therefore void and unenforceable as a matter of law.

**THIRD DEFENSE (No Mutual Assent)**

Spire's contract-based claims fail because the parties never mutually assented to the same terms in the same sense, and there was no meeting of the minds as to the essential terms of any alleged agreement.

**FOURTH DEFENSE (Lack of Consideration)**

Spire's contract-based claims fail, in whole or in part, for want of, or failure of, adequate consideration to support any enforceable agreement.

**FIFTH DEFENSE (Statute of Frauds)**

To the extent any alleged agreement between JGR and Spire falls within the statute of frauds, including N.C. Gen. Stat. § 75-4 or Chapter 22 of the North Carolina General Statutes, it is unenforceable because it is not evidenced by a writing signed by the party to be charged.

**SIXTH DEFENSE (Unjust Enrichment — Adequate Remedy and Governing Contract)**

Spire's unjust enrichment claim fails because Spire has pleaded, and asserts the existence of, an express and/or implied contract governing the same subject matter; where such a contract governs, the law will not imply a quasi-contract. The claim further fails because Spire conferred no measurable, non-gratuitous benefit on JGR that it would be unjust for JGR to retain, and because

Spire has an adequate remedy at law.

**SEVENTH DEFENSE (No Damages; Speculative Damages)**

Spire has suffered no damages caused by any act or omission of JGR, and any damages alleged are speculative, uncertain, and not recoverable.

**EIGHTH DEFENSE (Failure to Mitigate)**

Spire's claims are barred or reduced to the extent Spire failed to take reasonable steps to mitigate its alleged damages.

**NINTH DEFENSE (Setoff and Recoupment)**

Any recovery by Spire (which JGR denies is warranted) must be reduced or offset by amounts owed to JGR, including on the claims asserted in JGR's Second Amended Complaint.

**TENTH DEFENSE (Unclean Hands, Waiver, and Estoppel)**

Spire's claims, particularly to the extent they seek equitable relief, are barred in whole or in part by the doctrines of unclean hands, waiver, and estoppel, including by reason of Spire's own conduct, including without limitation, its misappropriation of JGR's confidential information and trade secrets and contemporaneous unjustifiable interference with JGR's rights under its employment agreement with Gabehart.

**ELEVENTH DEFENSE (Reservation of Defenses)**

JGR reserves the right to assert additional defenses that discovery or further investigation may reveal.

**PRAYER FOR RELIEF**

WHEREFORE, JGR respectfully requests that the Court:

A. Dismiss Spire's Counterclaims in their entirety, with prejudice;

B. Enter judgment in favor of JGR and against Spire on each of Spire's Counterclaims;

C. Order that Spire take nothing by way of its Counterclaims;

D. Award JGR its costs and reasonable attorneys' fees incurred in defending against the Counterclaims, to the extent permitted by law; and

E. Grant JGR such other and further relief as the Court deems just and proper.

**JURY DEMAND**

JGR demands a trial by jury on all issues so triable.

[*SIGNATURE ON FOLLOWING PAGE*]

This the 24th day of September, 2026.

**PARKER POE ADAMS & BERNSTEIN LLP**


/s/ *Tory Ian Summey*
Sarah F. Hutchins
N.C. Bar No. 38172
Tory Ian Summey
N.C. Bar No. 46437
Keith M. Weddington
N.C. Bar No. 14352
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Chad F. Lee
N.C. Bar No. 56350
Kevin A. Marshall
N.C. Bar No. 50856
Christopher B. Henry
N.C. Bar No. 55955
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com
chadlee@parkerpoe.com
kevinmarshall@parkerpoe.com
chrishenry@parkerpoe.com

**KING & SPALDING LLC**
Danielle T. Williams
dwilliams@kslaw.com
N.C. Bar No. 23283
300 South Tryon Street, Suite 1700
Charlotte, NC 28202
Thomas M. Melsheimer – *Pro Hac Vice*
tmelsheimer@kslaw.com
Chad B. Walker – *Pro Hac Vice*
cwalker@kslaw.com
Tracea Rice – *Pro Hac Vice*
trice@kslaw.com
Alexandra Moore – *Pro Hac Vice*

almoore@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201

*Attorneys for Joe Gibbs Racing, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this date the foregoing **ANSWER OF PLAINTIFF JOE GIBBS RACING, LLC'S TO DEFENDANT SPIRE'S COUNTERCLAIMS** was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send notice and serve same upon counsel of record via the Court's electronic case filing system.

This the 24th day of September, 2026.

**PARKER POE ADAMS & BERNSTEIN LLP**

/s/ *Tory Ian Summey*
Tory Ian Summey
N.C. Bar No. 46437
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
torysummey@parkerpoe.com
*Attorney for Joe Gibbs Racing, LLC*