# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

JOE GIBBS RACING, LLC, )
)
)
Plaintiff, )
)
v. ) Case No.
) 3:26-cv-00133-SCR-DCK
CHRISTOPHER GABEHART and SPIRE )
MOTORSPORTS II, LLC, )
)
Defendants. )
______________________________ )

VIDEOTAPED DEPOSITION

OF

RYAN SPARKS

(Taken by Defendants)

Thursday, August 27, 2026

Charlotte, North Carolina

Reported by: Cindy A. Hayden, RMR, CRR

Job No.: 8406719

APPEARANCES:

Representing the Plaintiff:

PARKER POE ADAMS & BERNSTEIN LLP
BY: TORY IAN SUMMEY, ESQUIRE
KEITH M. WEDDINGTON, ESQUIRE
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202
704.372.9000
torysummey@parkerpoe.com
keithweddington@parkerpoe.com

~ And ~

KING & SPALDING
BY: CHAD WALKER, ESQUIRE
2601 Olive Street
Suite 2300
Dallas, TX 75201
214.764.4600
cwalker@kslaw.com

Representing the Defendant Spire Motorsports II, LLC:

TROUTMAN PEPPER LOCKE, LLP
BY: JOSHUA D. DAVEY, ESQUIRE
JENNA M. WHITE, ESQUIRE
301 South College Street
34th Floor
Charlotte, North Carolina 28202
704.916.1503
joshua.davey@troutman.com
jenna.white@troutman.com

(Appearances continued on next page.)

APPEARANCES CONTINUED:

Representing the Defendant Christopher Gabehart:

ROBINSON BRADSHAW & HINSON PA
BY: CARY DAVIS, ESQUIRE
600 South Tryon Street
Suite 2300
Charlotte, North Carolina 28202
704.377.8386
cdavis@rbh.com

Also Present:

Curtis Collins, Videographer
Bill Anthony

On August 27, 2026, commencing at 9:25 a.m., the videotaped deposition of RYAN SPARKS was taken pursuant to notice and pursuant to the Federal Rules of Civil Procedure, on behalf of the Plaintiffs, at Troutman Pepper Locke, LLP, 301 South College Street, 34th Floor, Charlotte, North Carolina 28202.

I N D E X

| | PAGE |
|---|---|
| EXAMINATION BY MR. SUMMEY .................... | 9 |
| EXAMINATION BY MR. DAVEY ..................... | 289 |
| EXAMINATION BY MR. SUMMEY .................... | 301 |

E X H I B I T S

| SPARKS NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| EXHIBIT 1 | Text message chain with Matt McCall and Ryan Sparks, Bates MCCALL_0018-22 | 152 |
| EXHIBIT 2 | Email dated 3/9/26, Subject: SMII Payroll Info, Bates Spire_0000769-770 | 167 |
| EXHIBIT 3 | Spire Motorsports Employment Agreement for Christopher Gabehart, Bates Spire_0001005-017 | 172 |
| EXHIBIT 4 | Email dated 2/16/26, Subject: 26DAY1 Driver Debrief, Bates Spire_0001880 | 179 |
| EXHIBIT 5 | Text messages with Chris Gabehart and Ryan Sparks, Bates SPARKS_0001-11 | 185 |
| EXHIBIT 6 | Email dated 2/22/26, Subject: Atlanta 1 Pre Event, Bates Spire_0000547 | 211 |
| EXHIBIT 7 | Email dated 2/25/26, Subject: COTA Strategy Review, Bates Spire_0000548 | 217 |

| | | |
|---|---|---|
| EXHIBIT 8 | Email dated 2/16/26, Subject: Monday Morning Movement, Bates Spire_0000549 | 219 |
| EXHIBIT 9 | Email dated 2/28/26, Subject: NCS - COTA Post Practice/Q Debrief, Bates Spire_0000702 | 220 |
| EXHIBIT 10 | Email dated 3/1/26, Subject: COTA Pre Event, Bates Spire_0001385 | 224 |
| EXHIBIT 11 | Notes titled Atlanta1 Post-Race, Tuesday, February 17, 2026, Bates Spire_0002052 | 228 |
| EXHIBIT 12 | Notes titled 2/23/2026 Atlanta, Monday, February 23, 2026, Bates Spire_0002051 | 234 |
| EXHIBIT 13 | Notes titled 4/20/2026 Kansas, Monday April 20, 2026, Bates Spire_0001712 | 241 |
| EXHIBIT 14 | Notes titled Dover All-Star Post-Race, Monday, May 18, 2026, Bates Spire_0002053 | 253 |
| EXHIBIT 15 | Spire Motorsports document, Bates Spire_0000867-869 | 260 |

P R O C E E D I N G S

* * *

THE VIDEOGRAPHER: Good morning. We are going on the record at 9:25 a.m. on August 27th, 2026. Please note that the microphones are sensitive and may pick up whispers and private conversations. Please mute your phones at this time. Audio and video recording will continue to take place unless all parties go off the record.

This is Media Unit Number 1 of the video recording deposition of Ryan Sparks, taken by counsel for Plaintiff in the matter of Joe Gibbs Racing, LLC, versus Christopher -- excuse me -- Gabehart and Spire Motorsports II, LLC, filed in the United States District Court, Western District of North Carolina, Charlotte Division.

The location here is 301 South College Street, Suite 3400, Charlotte, North Carolina, 28202. My name is Curtis Collins representing Veritext. I'm the videographer. The court reporter is

Cindy Hayden and -- from Veritext as well. I am not related to any party of this action, nor am I financially interested in the outcome.

If there is any objections to proceeding, please state them at this time of your appearance.

Counsel and all present, including remotely will now state their appearance and affiliation for the record, beginning with the noticing attorney.

MR. SUMMEY: Good morning. This is Tory Summey with the firm Parker Poe appearing on behalf Joe Gibbs Racing, LLC. With me are my two colleagues, Keith Weddington also of Parker Poe and Chad Walker of the firm King & Spalding.

MR. DAVEY: Joshua Davey and Jenna White of Troutman Pepper Locke here for Spire Motorsports and the witness, and we're joined by Bill Anthony of Spire Motorsports.

MR. DAVIS: And Cary Davis of the law firm of Robinson Bradshaw on behalf of Defendant Christopher Gabehart.

THE VIDEOGRAPHER: Will the court reporter please swear in the witness, and then counsel may proceed.

* * *

RYAN SPARKS,

having been first duly sworn, was examined and testified as follows:

* * *

EXAMINATION

BY MR. SUMMEY:

Q. Good morning, Mr. Sparks.
A. Good morning.
Q. My name is Tory Summey. I know we just met each other, but thank you for being here today. We're going to start with some -- some brief ground rules before we get going on this deposition. But so the record is clear, would you please state your full name.
A. Ryan Austin Sparks.
Q. Okay. And what is your current address?
[redacted]
Q. Do you commute from Winston every day?

A. I do.
Q. Okay.
A. Well --
Q. Gotta love you.
A. I stay in hotels some, but --
Q. Okay. There you go.
Have you ever been deposed before?
A. I have not.
Q. And have you ever testified under oath in any -- in any sort of a proceeding?
A. No.
Q. So given that this is your first time, I'll try to go over the rules to make this go as smoothly as possible, so --
A. Sure.
Q. -- just bear with me.
First and foremost, do you understand that you're under oath and required to tell the truth today?
A. I do.
Q. And do you understand that you're required to tell the truth just like you would be in a court of law?
A. Yes.
Q. Is there any reason, medical or

otherwise, that you would be unable to tell the truth today?

A. No.

Q. Another really important rule is that we do a great job of keeping our answers verbal so that the court reporter sitting next to me can take down everything we say.

Can you try your best to keep all of your answers verbal?

A. Sure.

Q. Okay. At times, it's hard to remember, so you might nod your head or say "uh-huh" or "un-hun." I'll try my best to remind you, and I promise I'm not trying to be rude. Does that make sense to you?

A. It does.

Q. Thank you.

At least a few times today I'm going to ask you a bad question. If you don't understand what I've asked you, will you please ask me to rephrase it or just make sure that you understand what I'm asking?

A. I will.

Q. Okay. And if you answer a question, I'm going to assume that you understood it. Is

A. I usually don't talk this much.
MR. DAVEY: Makes you thirsty.
THE WITNESS: Thank you.
All right. Thank you.
BY MR. SUMMEY:
Q. All right. So still focusing on the production meeting, have you ever personally seen Chris Gabehart attend that meeting?
A. At the beginning of the year, I think he was in one or two.
Q. Do you believe it's a maximum of two meetings that he attended?
A. I wouldn't put a number to it. It's a long time ago. I don't recall.
Q. The ones that you remember him being at, was he in person?
A. Yes.
Q. And do you know if he has joined any production meetings virtually?
A. I don't know.
Q. When it's -- when the meeting is being held, is there a television on in the room that would show who's there virtually?
A. Yeah. There's a meeting -- yes. It would show that.

Q. All right. So then are you generally aware of who is attending virtually during those meetings?
A. The only people I know that have attended virtually are the car chiefs, like if they got home after a late night or something, but I don't recall anybody else really calling in. I sit about 30 feet away from the TV, and I don't have good vision, so...
Q. That's fair. The times that you remember Mr. Gabehart being there, did he ever speak?
A. Other than maybe an introduction when he came. That's all I recall.
Q. So -- and I keep saying a little bit too vague. I'm talking about the production meeting, so the one to two times you saw him at the production meeting, the only thing you remember him saying is an introduction; is that correct?
A. Yeah. That and him being on his phone is all I remember.
Q. Okay. What do you mean by "him being on his phone"?
A. Not paying attention.

Q. Were you able to see what he was doing on his phone?
A. Looked like he was scrolling.
Q. Okay. What sort of introduction did he give at production meeting?
A. Like anybody would when they start a job, who they are, pretty much. You know what I mean?
Q. Did he -- did he say anything about his prior experience in NASCAR?
A. No.
Q. Did he say anything about what he was hoping to achieve at Spire?
A. No.
Q. How long do you think he spoke during that introduction?
A. Maybe just a couple minutes that I remember.
Q. All right. So how long does the production meeting typically last?
A. I'd say 20 to 45 minutes.
Q. And what do you do after the production meeting on Monday?
MR. DAVEY: Objection to the form.
THE WITNESS: I think that's when I

[redacted]

HIGHLY CONFIDENTIAL - OCO


[redacted]

[redacted] [redacted]

[redacted]

Q. Where do they keep those notes?

A. In our OneNote document.
Q. And who are those mechanics? What are their names?
A. The lead mechanic, Robbie Fairweather, the car chief. And then Troy Welty.
Q. And do you have access to those notes?
A. I do.
Q. Where are they saved?
A. In the OneNote.
Q. Okay. Has Chris Gabehart ever attended the NASCAR technical inspection for the Number 7 car?
A. He has not.
Q. And have you ever seen Chris Gabehart attend the tech inspection for any other Spire car?
A. I have not seen that.
Q. Okay. We talked a little bit about garage time or garage hours; is that right?
A. That's correct.
Q. What happens during garage hours?
A. Not as much as used to. It's very limited on track and what we're able to do to

[redacted]

Q. Have you ever seen Chris Gabehart attend the pre-race crew chief meeting?

A. I have not.

Q. And have you ever seen him join the pre-race crew chief meeting virtually?

A. I have not.

Q. All right. What happens after the pre-race crew chief meeting?

[redacted]

Q. And have you ever seen Chris Gabehart at your final prep?

A. I have not.

Q. Have you ever seen Chris Gabehart at

a race since he has joined Spire?
A. I have.
Q. Okay. How many races do you think you've seen him at?
A. Less than five. I really don't know.
Q. Where did you see him when he was attending a race?
A. I don't recall.
Q. Did you ever see him in the --
A. Maybe outside the back of the hauler, where we have sponsors and guests huddled up.
Q. So one of the places you remember seeing him was the back of the hauler; is that correct?
A. Yeah.
Q. Is there anyplace else that you remember seeing him?
A. Not that I recall.
Q. Okay. Have you ever seen him on pit road?
A. When he worked for Joe Gibbs Racing, I did.
Q. That's a good -- good answer because

that was the literal answer to my question.
Since he's worked for Spire, have you seen Chris Gabehart on pit road?
A. Maybe after a truck race, potentially? I don't remember.
Q. Okay. And have you ever seen Chris Gabehart in the garage area of a race?
A. Since he worked at Spire?
Q. Since he worked at Spire, correct.
A. Not in the garage that I recall. The 7 team specifically, I don't recall that.
Q. We talked a little bit, very briefly, about maybe doing team dinners.
Has Chris Gabehart ever attended a team event or dinner with -- with your team?
A. I don't think I've ever -- he's ever been part of the 7 team dinner, to my knowledge.
Q. All right. Now tell me about -- well, let me ask this: After your final prep, what do you do on Sunday?
[redacted]

any work since he joined Spire?
A. I haven't.
Q. Okay. Is there anything else that you understand to be a part of Mr. Gabehart's role as chief motorsports officer?
A. No, not really.
Q. Do you believe that Mr. Gabehart has any role with respect to NASCAR Cup Series competition?
A. Can you repeat that for me?
Q. Sorry. Yeah. It's a long question.
Do you believe that Mr. Gabehart currently has any role with respect to NASCAR Cup Series competition?
A. He does not, to my knowledge, no.
Q. Are you aware of who reports to Mr. Gabehart?
A. I'm not.
Q. And are you aware if anybody reports -- excuse me. Are you aware of Mr. -- whether Mr. Gabehart reports to anybody directly?
A. I would assume Jeff Dickerson.
Q. But that's just an assumption; is that right?

A. It's an assumption. I don't know.
Q. Has Mr. Gabehart offered you any type of support since he has joined Spire?
A. No.
Q. Has Mr. Gabehart offered you any advice whatsoever since he joined Spire?
A. He has not.
MR. SUMMEY: We're at a good break point.
MR. DAVEY: Okay.
THE VIDEOGRAPHER: This is the conclusion of Media Number 2. The time on the monitor is 12:02. We are off the record.
* * *
(Whereupon, there was a recess in the proceedings from 12:02 p.m. to 12:55 p.m.)
* * *
THE VIDEOGRAPHER: This is the beginning of Media Unit Number 3. The time on the monitor is 12:55. We are on the record.
BY MR. SUMMEY:
Q. All right. Welcome back, Mr. Sparks. Where we -- I'm going to pick up

where we left off.
Have you ever seen Mr. Gabehart complete work of any kind for Spire?
MR. DAVIS: Object to the form.
MR. DAVEY: Object to the form.
THE WITNESS: Not to my knowledge, no.
BY MR. SUMMEY:
Q. Have you ever seen Mr. Gabehart use a computer since he started at Spire?
A. Not to my recollection, no.
Q. I believe you testified earlier that you have seen him use a phone since he started at Spire; is that correct?
A. I have, yeah.
Q. Okay. And in what circumstances have you seen Mr. Gabehart using a phone since he worked -- started working for Spire?
A. In those meetings I talked about.
Q. Do you recall any other situations where you've seen Mr. Gabehart using a phone since he started working for Spire?
A. Not particularly, no.
Q. Okay. And have you -- since Mr. Gabehart started working for Spire, have you

Q. And are you aware of any specific changes that have been made during the 2026 season?

[redacted]

Q. Have any new ideas or new techniques been implemented in the 2026 season, to your knowledge?

A. I'm not sure.

[redacted]

[redacted]

[redacted]

[redacted]

Q. Is anybody on the Number 7 team

responsible for those same duties?

A. No.

[redacted]

BY MR. SUMMEY:

[redacted]

Q. But I believe your testimony is the two things we talked about here are very obvious recommendations that Mr. Gabehart's making; is that correct?

A. Yes.
MR. DAVEY: Objection to the form.
BY MR. SUMMEY:
Q. You can put that to the side.
MR. DAVEY: Can we take a short break when you get to a good stopping point?
MR. SUMMEY: I've got one more of these. Can we do five more minutes?
MR. DAVEY: Yeah.
MR. SUMMEY: Thank you.
BY MR. SUMMEY:
Q. I'm going to hand you a document being marked as Exhibit 14.
And before you look at that, that group of four folks that you talked about just a minute ago --
A. Yeah.
[redacted]
A. I'm not aware.
Q. Okay. And where are they located in -- in Spire's facilities?

you would have a -- typically would attend a movement meeting and a Number 7 car meeting and competition meeting; is that right?
A. That's right.
Q. Okay. And on Wednesdays, there may be an engineering meeting and another Number 7 team meeting?
A. Correct.
Q. And on Thursdays, you attend simulator sessions?
A. Uh-huh.
Q. And then on Saturdays, there's a meeting between practice and qualifying and then another post-qualifying debrief in the haulers?
A. Correct.
Q. And then on Sundays, there's a pre-race crew chief meeting and post-race driver debrief?
A. Correct.
Q. So if I did my math right, that's -- that's ten meetings in a typical week? Does that sound about right?
A. Sounds about right, yes.
Q. What week are we in the current NASCAR season?

A. We're 28 weeks in.
Q. 28 weeks?
And have you had that same cadence of meetings for all 28 weeks?
A. Yes.
Q. So, roughly, you've had about 280 meetings so far this year?
A. I'd say roughly that amount, yes.
Q. Of those 280 meetings, how many of those has Mr. Gabehart attended?
A. That I can recall, maybe a handful, five or six.
Q. Mr. Sparks, has Mr. Gabehart shared any JGR information with you?
A. He has not.
Q. To your knowledge, has he shared any JGR information with anyone at Spire?
A. To my knowledge, no, he has not.
Q. Has he played any role in the development of Spire's race car setups for the Number 7 car in 2026?
A. I can assure you he has not.
Q. To your knowledge, has he played any role in the development of race car setups for the 71 car or the 77 car in 2026?

A. To my knowledge, no.
Q. Has Mr. Gabehart had any involvement in any car design decisions that Spire has been involved with in 2026, to your knowledge?
A. To my knowledge, no.
Q. Has Mr. Gabehart shared any JGR aerodynamic information with you?
A. He has not.
Q. To your knowledge, has he shared any JGR aerodynamic information with anyone at Spire?
A. To my knowledge, no, he has not.
Q. Has Mr. Gabehart shared any information from JGR relating to underwing design or underwing configuration with you?
A. He has not shared any of that with me.
Q. Has he shared that kind of information with anyone at Spire, to your knowledge?
A. To my knowledge, he has not.
Q. Has he shared any JGR setup documents or car setup information with you?
A. He has not.
Q. To your knowledge, has he shared