# EXHIBIT H

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. 3:26-cv-00133-SCR-DCK

JOE GIBBS RACING, LLC, )
)
Plaintiff, )
)
vs. )
)
CHRISTOPHER GABEHART and )
SPIRE MOTORSPORTS, LLC, )
)
Defendants. )
___________________________________/

* * CONFIDENTIAL * *
ATTORNEYS' EYES ONLY

VIDEOTAPED DEPOSITION OF MATTHEW DANIEL MCCALL
(Taken by Plaintiff)
Charlotte, North Carolina
Tuesday, July 14th, 2026

Certified Stenographic Court Reporter
Amy A. Brauser, RPR, RMR, CRR

APPEARANCES

ON BEHALF OF THE PLAINTIFF JOE GIBBS RACING, LLC:

DANIELLE T. WILLIAMS, Esquire
TRACEA RICE, Esquire (Dallas office)
King & Spalding LLP
300 South Tryon Street, Suite 1700
Charlotte, North Carolina 28202
(704) 503-2642
dwilliams@kslaw.com
trice@kslaw.com

(and)

SARAH F. HUTCHINS, Esquire
Parker Poe Adams & Bernstein LLP
620 South Tyron Street, Suite 800
Charlotte, North Carolina 28202
(704) 335-6639
sarahhutchins@parkerpoe.com

ON BEHALF OF THE DEFENDANT SPIRE MOTORSPORTS, LLC:

LAWRENCE J. CAMERON, Esquire
TROY C. HOMESLEY, Esquire
JOSHUA D. DAVEY, Esquire
Troutman Pepper Locke LLP
301 South College Street, 34th Floor
Charlotte, North Carolina 28202
(704) 998-6509
lawrence.cameron@troutman.com
troy.homesley@troutman.com
joshua.davey@troutman.com

APPEARANCES (CON'T)

ON BEHALF OF THE DEFENDANT CHRISTOPHER GABEHART:

SPENCER T. WILES, Esquire
CARY B. DAVIS, Esquire
Robinson Bradshaw & Hinson, P.A.
600 South Tyron Street, Suite 2300
Charlotte, North Carolina 28202
(704) 377-8374
swiles@rbh.com
cdavis@rbh.com

ALSO PRESENT:

Micah Lorick, Videographer
Eric Schaffer, Joe Gibbs Racing
Bill Anthony, Spire Motorsports

VIDEOTAPED DEPOSITION OF MATTHEW DANIEL MCCALL, a witness called on behalf of Plaintiff, before Amy A. Brauser, Certified Stenographic Court Reporter and Notary Public, in and for the State of North Carolina, at the law offices of Troutman Pepper Locke, LLP, 301 S. College Street, Charlotte, North Carolina, on Tuesday, the 14th day of July, 2026, commencing at 8:38 a.m.

* * * * * * * *

INDEX OF EXAMINATIONS

By Ms. Williams . . . . . . . . . . . . . . . Page 9, 393
By Mr. Cameron . . . . . . . . . . . . . . . . Page 384

INDEX OF EXHIBITS

| NUMBER | DESCRIPTION | MARKED/IDENTIFIED |
| --- | --- | --- |
| Exhibit 1 | Email string, Bates Spire_0000873 | 59 |
| Exhibit 2 | Text message string, Bates MCCALL_0051 | 138 |
| Exhibit 3 | 2026 NASCAR National Series Schedules | 139 |
| Exhibit 4 | Email, Bates Spire_0000797 | 144 |
| Exhibit 5 | Teams meeting invite, Bates Spire_0000551 | 147 |
| Exhibit 6 | Teams meeting invite, Bates Spire_0000803 | 156 |
| Exhibit 7 | Teams meeting invite, Bates Spire_0000773 | 160 |
| Exhibit 8 | Text message string, Bates Spire_0000746 to 748 | 194 |
| Exhibit 9 | Employment Agreement, Bates Spire_0001005 to 017 | 274 |
| Exhibit 10 | Email string, Bates Spire_0000650 to 652 | 304 |
| Exhibit 11 | Lap Time Analysis for COTA and Phoenix, Bates Spire_0001488 | 317 |
| Exhibit 12 | Lap Time Analysis for Las Vegas, Darlington and Martinsville, Bates Spire_0001489 | 318 |

INDEX OF EXHIBITS (con't)


| | | |
|---|---|---|
| Exhibit 13 | Lap Time Analysis for Bristol, Kansas and Texas, Bates Spire_0001490 | 318 |
| Exhibit 14 | Lap Time Analysis for Dover, Charlotte and Nashville, Bates Spire_0001491 | 318 |
| Exhibit 15 | Lap Time Analysis for Michigan, Pocono and Sonoma, Bates Spire_001492 | 318 |
| Exhibit 16 | Teams message string, Bates Spire_0000814 to 815 | 340 |
| Exhibit 17 | Declaration of David Biro | 346 |

P R O C E E D I N G S

THE VIDEOGRAPHER: Good morning. We are going on the record at 8:38 a.m. on July 14th, 2026.

Please note that this deposition is being conducted virtually and in person. Quality of recording depends on the quality of camera, Internet connection of participants. What seems -- what is seen from the witness and heard on screen is what will be recorded. Audio and video recording will continue to take place unless all parties agree to go off the record.

This is Media 1 of the recorded deposition of Matthew McCall in the matter of Joe Gibbs Racing versus Gabehart, Christopher, et al., filed in the United States District Court for the Western District of North Carolina, Charlotte Division, Case Number 3:26-CV-00133-SCR-DCK.

And this -- the location of the deposition is Troutman Pepper Locke LLP, 301 South College Street, Suite 3400, Charlotte, North Carolina 28202.

My name is Micah Lorick representing

Veritext Legal Solutions, and I am the videographer. The court reporter is Amy Brauser from the firm of Veritext Legal Solutions.

I am not authorized to administer an oath. I am not related to any party in this action, nor am I financially interested in the outcome. If there is any objections to proceeding, please state them at the time of your appearance.

Counsel and all present, including remotely, will now state their appearances and affiliations for the record, beginning with the noticing attorney.

MS. WILLIAMS: Danielle Williams with King & Spalding on behalf of the Plaintiff. With me is Tracea Rice with King & Spalding, Sarah Hutchins with Parker Poe, and Eric Schaefer with Joe Gibbs Racing.

MR. CAMERON: Lawrence Cameron with the law firm Troutman Pepper Locke. With me is Troy Homesley and Bill Anthony with Spire Motorsports.

MR. WILES: Spencer Wiles with Robinson Bradshaw on behalf of Mr. Gabehart. Mr. Davis,

Cary Davis, is also with me.
THE VIDEOGRAPHER: Will the court reporter, please, swear in the witness and then counsel may proceed.

MATTHEW DANIEL McCALL,

after having been first duly sworn by the certified stenographer, was examined and testified as follows:

EXAMINATION

BY MS. WILLIAMS:

Q. Good morning. Will you, please, state your full name for the record?
A. Matthew Daniel McCall.
Q. What is your address?
[redacted]
Q. Have you been deposed before?
A. No, ma'am.
Q. This is your first time?
A. Yes, ma'am.
Q. Have you ever testified at trial?
A. No.
Q. We'll just go over some ground rules for today.
It's important that you speak in a spoken voice because, as you see, we've got a court

just -- you literally present it and you walk in. It's that simple.
Q. Okay. But to your recollection, you haven't had to scan in your hard card?
A. No, ma'am.
Q. Does it have a barcode on it?
A. Hell, I don't know. We can look at it if we need to.
Q. Well, let's look at it.
A. Can we show stuff in here?
Q. If you got it, I'd love a little show and tell.
A. Is that stuff we can show in here?
Q. Yes.
A. It is?
Q. May I see your hard card?
A. I'd love to show you. Glad my wife wasn't here for that.
(Witness complies.)
Q. All right. And how often does your hard card get issued?
A. Once a year.
Q. All right. And I'm looking at the back of your hard card and it does have a barcode with a number, that's 91013.

Do you see that?
A. If you say it's on here. Let's see what it says. Eyes are getting so bad.
That's correct, the number.
Q. All right. Do you have to apply for the hard card?
A. Yes, ma'am.
Q. How do you apply for the hard card?
A. Through a NASCAR sheet.
Q. Do you do it yourself?
A. Yes, ma'am.
Q. If you switch teams, do you get a new hard card?
A. Yes, ma'am.
Q. So your hard card is associated with Spire?
A. Yes, ma'am.
Q. Who pays for your hard card?
A. Spire.
Q. Do you know, does Spire pay for everyone's hard card within its organization?
MR. CAMERON: Objection.
THE WITNESS: From my understanding, ma'am, yes. But I -- if someone else can buy them, I'm not sure. I know sponsors and stuff,

I believe they work out deals and they maybe buy their own, but I'm not sure of that.
BY MS. WILLIAMS:
Q. But employees of Spire --
A. I do not know that, ma'am.
Q. -- if they have hard cards, has Spire paid for those?
MR. CAMERON: Objection.
THE WITNESS: I do not know that.
BY MS. WILLIAMS:
Q. Okay. But they paid for yours?
A. They paid for mine.
Q. Do you know if Chris Gabehart has a hard card?
MR. CAMERON: Objection.
THE WITNESS: I'm pretty sure. If he's coming to the track, he would have a hard card.
BY MS. WILLIAMS:
Q. Is he coming to the track with a hard card?
A. I saw him earlier this year.
Q. Okay. When did you see Mr. Gabehart at the track?
A. I don't know what race it would have been. He's been to a couple races. I wasn't

tracking what race he came to, ma'am.
Q. So as you sit here, you don't know what races Mr. Gabehart attended?
A. I do not.
Q. So if we went through the schedule, you would -- if I -- did he go for the Daytona 500?
A. I do not believe he was at Daytona 500.
Q. Where was he?
A. What, ma'am?
MR. CAMERON: Objection.
BY MS. WILLIAMS:
Q. Do you know where he was during the Daytona 500?
A. No, ma'am.
Q. Do you know if he was in the war room?
A. No, ma'am.
Q. All right. And so then Monday, you start the meeting process all over again.
A. Yes, ma'am.
Q. And you do that for 38 weeks?
A. It's about 40, but we'll call it 38.
Q. Thirty-eight races.
A. Yes, ma'am.
Q. Thirty-six points races to -- to exhibitions.

A. Exhibitions, I think what they refer to them as, yes, ma'am.
Q. All right. Now, the -- you don't recall whether Mr. Gabehart was at the Daytona 500 or where he was for the Daytona 500, but did you talk with him about the Daytona 500?
A. Talk with him?
Q. Yeah. Did you talk with Mr. Gabehart about the Daytona 500 at any time?
MR. CAMERON: Objection.
THE WITNESS: Ma'am, there's a possibility. I would not be able to answer that to know if I talked to somebody at Daytona 500.
BY MS. WILLIAMS:
Q. All right. Well, Mr. Gabehart is somebody that you report to now, right?
A. I report to Bill Anthony.
Q. You don't report to Mr. Gabehart?
A. I report to -- Bill Anthony is who I report to.
Q. When did you begin reporting to Bill Anthony?
A. I've always reported to Bill Anthony.
Q. Have you -- have you debriefed with

Mr. Gabehart on any race?
A. Debriefed?
Q. Yes.
A. Can you explain that to me?
Q. Well, so debrief about a race.
A. I mean, we've talked about races.
Q. Okay. What races have you talked about with Mr. Gabehart?
MR. CAMERON: Objection.
THE WITNESS: Ma'am, I'm not -- to remember that is not something that's -- I can't remember that.
BY MS. WILLIAMS:
Q. Do you recall debriefing with him on the Daytona 500?
MR. CAMERON: Objection.
THE WITNESS: I do not.
BY MS. WILLIAMS:
Q. I mean, as you sit here today, you don't have an independent recollection of debriefing with Mr. Gabehart?
MR. CAMERON: Objection, vague.
THE WITNESS: Ma'am, the amount of stuff that I have to process every week, the Daytona 500, I couldn't even tell you where we finished

at the Daytona 500. So no, ma'am, I do not
remember a conversation with Chris Gabehart.
BY MS. WILLIAMS:
Q. You're the director of competition at Spire and you don't know where you finished in the Daytona 500?
A. I do not, ma'am.
Q. Across all three cars?
A. I do not. Because we crashed -- we were both leading -- we had two cars leading and we both crashed. So hard to process every finish of every race.
Q. Okay. Do you have any standing meetings with Mr. Gabehart?
A. No, ma'am.
Q. Have you ever had any standing meetings with Mr. Gabehart?
A. What, ma'am?
Q. Have you ever had any standing meetings with him?
A. No, ma'am.
Q. So during the entire time that he has been employed by Spire, you've not had any regular meetings with him?
A. No, ma'am.

MR. CAMERON: Are you good or do you want to take a break?
THE WITNESS: Whatever you all want to do.
MR. CAMERON: Keep going.
THE WITNESS: Okay.
MS. WILLIAMS: All right. Let's do Exhibit 2.
(Exhibit Number 2 was marked for identification.)
BY MS. WILLIAMS:
Q. Handing you what has been marked as McCall 51.
All right. Do you see that this is a text exchange between you and Mr. Gabehart dated February 16th, 2026.
A. Yes, ma'am.
Q. All right. And was that before or after the Daytona 500?
A. Ma'am, I would have to look and see when the Daytona 500 date was.
Q. Okay. Well, if I -- if I told you that it was February 15th, would that sound right?
A. Ma'am, you have the schedule in front of you?
Q. I do.

Q. Than just having a hard card and being in the vicinity.
A. I don't know how to answer that. Like I guess -- I have a hard card and I walk through. Are you referencing Chris being at the track, that's what you're asking me?
Q. I'm just -- I'm just asking, just generally speaking, it's a different role, right?
A. I don't know what I'm referencing "roles" to right now, ma'am.
Q. Okay.
For the -- for the tech inspection, are there tents involved sometimes?
A. Yes.
Q. And do you go with the car physically into the tent?
A. The only -- if you're talking about the -- a tent supplied from NASCAR, you're asking about?
Q. As part of the technical inspection.
A. So there's a couple of things here. So you may put up your own tent, like if there's weather or if they allow you to push out for a warm-up or something. But there's -- the Hawkeye tent is usually under the garage. It's usually

not -- it's never outside.
Q. Okay.
A. Normally, anybody that goes through that is the car chief and one or two mechanics.
Q. Is that something that you might do?
A. I do not walk through there, no, ma'am.
Q. Okay.
A. Because they don't -- they -- they don't allow that many people to go in the tent, and so, say, even creating a chance they tell you not to do that, I do not walk in there.
Q. Has Mr. Gabehart ever been inside the Hawkeye tent during a technical inspection since he's been employed by Spire Motorsports?
MR. CAMERON: Objection, calls for speculation.
THE WITNESS: Ma'am, not that I'm aware of. I don't -- I do not believe that is -- no, ma'am.
BY MS. WILLIAMS:
Q. And then have you ever seen Mr. Gabehart walk in with one of Spire Motorsports' cars, like you do, for the technical inspection since he's been employed by Spire Motorsports?
A. I do not recall that, ma'am. I do not.

Q. Have you seen Mr. Gabehart interact with any of the NASCAR officials during the technical inspection for any of the Spire Motorsports cars since Mr. Gabehart has been employed by Spire Motorsports?

MR. CAMERON: Objection, vague.

THE WITNESS: Ma'am, I do not. I do not recall any interaction with him with an official.

BY MS. WILLIAMS:

Q. All right. And as you -- as you sit here today, you do not recall seeing Mr. Gabehart walk in with a Spire Motorsport car as part of the official technical inspection for a race?

A. I mean, I don't, ma'am. I mean, that doesn't mean he didn't. I mean, I -- but no, ma'am, I do not recall that being the case.

Q. During your offseason conversations with Mr. Gabehart, did Mr. Gabehart raise any issues with you that you understood to be areas where Spire could improve?

A. Please -- please read it one more time to me.

Q. Sure.

During your offseason conversations

build that relationship. The HMS relationship is a good goal to get in a spot with the pit crews. We're in a weird scenario with them.

But, you know, if you're looking for like a number of wins or something, it's pretty normal. I would say that's -- start of the year, it'd be, you know, couple of wins was the goal and have some cars in The Chase.

Q. All right. And what is the win goal for Spire Motorsports this year for the Cup Series?

A. We were targeting two wins.

Q. And how many cars are you targeting to have in The Chase this year?

A. Obviously, you want them all. Realistically, just based off where we have been in driver lineup, two would be a great goal.

Q. Is -- you say it's a great goal, but is that Spire Motorsports' goal this year?

MR. CAMERON: Objection to answering on behalf of Spire Motorsports.

THE WITNESS: I mean --

BY MS. WILLIAMS:

Q. Let me ask you this: Is that a goal that you have established as director of competition?

A. We have many interactions. We all set our own goals in the offseason. I'm a very goal-driven person. So every person in the organization has their own set of goals. So me personally, that's what I've described for you.

Q. Okay. And so the -- and have you communicated that throughout your competition organization?

A. This would be -- crew chiefs, we would have had this dialogue during the offseason building up.

Q. Okay. You have communicated your goals for the 2026 season to the crew chiefs at Spire Motorsports?

A. Yes, ma'am.

Q. Any other goals other than the ones that you've already identified?

A. I mean, not that I would have communicated any differently, no, ma'am.

Q. As director of competition at Spire Motorsports, where are you -- actually, let me say it this way: As director of competition for Spire Motorsports, is it fair to say that you have responsibility for making decisions related to all competition aspects?

A. On the Cup side, yes, ma'am.
Q. If there are -- okay.
Is there anyone that you have to consult for making decisions related to competition for the Cup side?
A. The crew chiefs. That's how we operate. We operate as -- and Dax. So anything that we are working on, we would all communicate.
Q. You receive input from the crew chiefs as well as Mr. Gerringer when it comes to your decision-making for competition-related decisions for the Cup Series; is that fair?
A. I wouldn't say it's just my decision. We have a great group effort of how we operate.
Q. If there -- but you are the person who is ultimately responsible for the competition-related decisions --
A. Uh-huh.
Q. -- for Spire Motorsports for the Cup Series, correct?
A. That's correct.
Q. For the reporting structure, how would you describe the reporting structure within your organization?
A. You're asking for like the org chart,

BY MS. WILLIAMS:
Q. And if you look on page 4, you can see the signatures there.
A. Okay.
Q. You see Mr. Anthony signed as president of Spire Motorsports, correct?
A. Yes, ma'am.
Q. And then Chris Gabehart signed on his own behalf?
A. Yes, ma'am.
Q. Okay. And so if we look at the first page of -- actually, I'm sorry.
Do you have an Employment Agreement with Spire?
A. Yes, ma'am.
Q. And does it work structurally similar to this one?
A. I would say it's pretty similar. Just vaguely looking, I would say there's -- there's probably things, yeah.
Q. Okay. So do you see in Section 1, its "Position." Do you see that?
A. I do.
Q. All right. And Mr. Gabehart's position is described as: (Reading)

Chief motorsports officer, managing all of Spire's competitive operations in each NASCAR touring series, e.g., NASCAR Cup Series, NASCAR O'Reilly Auto Parts Series, NASCAR Craftsman Truck Series, and the Automobile Racing Club of America and other series in which company engages and participates from time to time.

And then it goes on to list some other series as examples there. And then it picks up: (Reading)

Including through engagement with third-party race teams and vendors.

And gives some examples there.

Do you see that?

A. Yes, ma'am.

Q. All right. Now, what has Mr. Gabehart been doing for managing all of Spires competitive operations for the NASCAR Cup Series?

MR. CAMERON: Objection.

THE WITNESS: Ma'am, so I'm the competition director at Spire Motorsports. I do not know what he has been doing.

BY MS. WILLIAMS:
Q. So if his position description says that he's managing competitive operations in each of the series, which includes the NASCAR Cup Series, you, as director of competition for the Cup Series, does not know what Mr. Gabehart has been doing in that area?
A. That is correct.
Q. No matter how I ask you that question, you're going to tell me you do not know what Mr. Gabehart has been doing for competition related to the Cup Series?
MR. CAMERON: Objection.
THE WITNESS: Ma'am, there's nothing he has been doing for the competition side.
BY MS. WILLIAMS:
Q. All right. And then, I mean, does your contract have a description of your position?
A. I'm pretty sure it does, but I don't know.
Q. In your experience, does Spire generally follow its contracts?
MR. CAMERON: Objection.
THE WITNESS: What do you mean by follow them, ma'am?

BY MS. WILLIAMS:
Q. Abide by.
A. I mean --
MR. CAMERON: Objection.
THE WITNESS: -- from my awareness.
MR. CAMERON: And also just let me -- I know we've noticed or communicated about him speaking on the 30(b)(6), but I just want to clarify, you're only asking him questions in his individual capacity during this deposition?
MS. WILLIAMS: Of course.
MR. CAMERON: I'm just asking a question as a clarification.
MS. WILLIAMS: I mean, these are all in his individual capacity.
MR. CAMERON: I'm just asking, just making clear, just because there's been a few times you've asked him --
MS. WILLIAMS: I mean, he is the director of competition.
MR. CAMERON: No. There's been a few times where you've asked him about whether Spire does this or Spire does that. So I just wanted to clarify that.
MS. WILLIAMS: Well, I mean, he can