# EXHIBIT AA

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. 3:26-cv-00133-SCR-DCK

JOE GIBBS RACING, LLC, )
)
Plaintiff, )
)
vs. )
)
CHRISTOPHER GABEHART and )
SPIRE MOTORSPORTS, LLC, )
)
Defendants. )
__________________________________/

VIDEOTAPED RULE 30(B)(6) DEPOSITION OF SPIRE
MOTORSPORTS, LLC, by JEFFREY DICKERSON
(Taken by Plaintiff)
Charlotte, North Carolina
Wednesday, August 26th, 2026
1:43 p.m.

Certified Stenographic Court Reporter
Karen Kidwell, RMR, RPR, CRR

APPEARANCES

ON BEHALF OF THE PLAINTIFF JOE GIBBS RACING, LLC:

CHAD B. WALKER, ESQUIRE
DAVID TAYLOR HINOJOSA, ESQUIRE
King & Spalding LLP
2601 Olive Street, Suite 2300
Dallas, Texas 75201
(214) 764-4451
cwalker@kslaw.com

ON BEHALF OF THE DEFENDANT CHRISTOPHER GABEHART:

ANNA CLAIRE TUCKER, Esquire
Robinson, Bradshaw & Hinson, P.A.
600 South Tyron Street, Suite 2300
Charlotte, North Carolina 28202
(704) 377-8383
atucker@rbh.com

ON BEHALF OF THE DEFENDANT SPIRE MOTORSPORTS, LLC AND THE WITNESS:

JOSHUA D. DAVEY, Esquire
Troutman Pepper Locke LLP
301 South College Street, 34th Floor
Charlotte, North Carolina 28202
(704) 916-1503
joshua.davey@troutman.com

ALSO PRESENT:

William Anthony, Spire Motorsports
Jenna White, Paralegal, Troutman Pepper
Esmeralda James, Videographer

On August 26, 2026, commencing at 1:43 p.m., the Videotaped Rule 30(b)(6) Deposition of Spire Motorsports, LLC, by JEFFREY DICKERSON was taken pursuant to the Federal Rules of Civil Procedure, on behalf of the Defendants, before Karen Kidwell, Registered Merit Reporter, Certified Realtime Reporter, and Notary Public, in and for the State of North Carolina, at Troutman Pepper Locke LLP, 301 South College Street, Suite 3400, Charlotte, North Carolina, 28202.

* * *

I N D E X

| WITNESS/EXAMINATION | Page |
|---|---|
| JEFFREY DICKERSON | |
| By Mr. Walker | 7 |
| By Mr. Davey | 147 |

E X H I B I T S

| Number | Description | Page |
|---|---|---|
| Exhibit 1 | 11/15/2024 Employment Agreement between Joe Gibbs Racing, LLC and Chris Gabehart, Confidential, Bates JGR_0001857-1862 | 10 |
| Exhibit 2 | Venn Diagram Spire's View of Activities Permitted Under the Restrictive Covenant and hand-drawn diagram on back page | 41 |
| Exhibit 3 | 5/5/2026 E-mail, William Anthony to Spire All, Confidential, Bates Spire_0000757-758 | 67 |
| Exhibit 4 | 4/20/2026 Kansas meeting notes, Confidential - Outside Counsel Only, Bates Spire_0001712 | 71 |
| Exhibit 5 | Chart of quoted testimony, beginning Dickerson (7/29/26) | 79 |

E X H I B I T S (Cont'd)

| Number | Description | Page |
| --- | --- | --- |
| Exhibit 6 | Outside Counsel Only, Produced in Cleanroom, Bates JGR 3435 | ....83 |
| Exhibit 7 | Colored chart, Confidential-Outside Counsel Only, Bates Spire_0000849 | ...................106 |
| Exhibit 8 | Exhibit C, Forensic Review Protocol document | .......130 |

REPORTER'S NOTE: All quotations from exhibits are reflected in the manner in which they were read into the record and do not necessarily indicate an exact quote from the document.

CHARLOTTE, NORTH CAROLINA, WEDNESDAY, AUGUST 26, 2026

P R O C E E D I N G S

\- - -

VIDEOGRAPHER: This is the beginning of Media Number 1 of the deposition of Jeff Dickerson, in the matter of Joe Gibbs Racing, LLC, vs. Gabehart, Christopher, et al.

Today's date is August 26th, 2026. The time is 1:43 p.m.

My name is Esmeralda James; I'm the videographer. The court reporter is Karen Kidwell, and we are here with Veritext.

Will counsel please introduce themselves and who they represent, after which the court reporter will swear in the witness.

MR. WALKER: Chad Walker, King & Spalding, for the plaintiff. With me is Taylor Hinojosa.

MR. DAVEY: Joshua Davey and Jenna White, of Troutman Pepper Locke, here on behalf of Spire Motorsports. We're joined by Bill Anthony, also of Spire Motorsports.

MS. TUCKER: Anna Claire Tucker, with Robinson Bradshaw, here on behalf of Christopher Gabehart.

///

JEFFREY DICKERSON
being first duly sworn, testified as follows:

EXAMINATION

BY MR. WALKER:
Q. Would you please state your full name for the ladies and gentlemen of the jury?
A. Jeffrey Dickerson.
Q. And you are the co-owner of Spire; is that correct?
A. I am.
Q. And you previously gave some deposition testimony in this case in your individual capacity. Is that true?
A. I did.
Q. And you understand that the same ground rules apply in this deposition concerning breaks, and talking over each other, and that kind of thing?
A. I'll do my best. Yeah.
Q. Okay. And today, by contrast, you are testifying on behalf of Spire regarding various topics concerning which you've been designated as the corporate representative. Do you understand that?
A. I do.
Q. And what have you done to prepare for that role, to testify as a corporate representative?

A. I talked to my lawyers for a little bit.
Q. Other than your lawyers, did you talk to anybody else?
A. No.
Q. No Spire employees?
A. Huh-uh.
Q. Did you look any documents?
A. No. I don't -- or maybe just one or two.
Q. Okay. Anything that refreshed your recollection as to any facts, or -- or did you learn new facts from those documents?
A. No, I was just reading my deposition.
Q. Okay. And having read your deposition, is there anything in it that you would like to point out as being different from Spire's corporate position, as compared to what you said in your individual testimony?
A. No.
Q. Are you aware that the scope of Mr. Gabehart's restrictive covenant with JGR was defined by the services he provided to JGR in his last year there? Are you familiar with that?
MR. DAVEY: Objection to the form.
THE WITNESS: I'm familiar that -- you guys wrote like ten pages of what he did. I

don't know whether that was true or not.
BY MR. WALKER:
Q. But just as far as the words in the -- in the restrictive covenant, it talks about the services he provided at JGR; do you recall that?
A. I'm generally aware of what a competition director does.
Q. And I'm not quite asking you about what a competition director does. I'm just asking you if you, as Spire's representative, understand generally that the scope of that restrictive covenant is -- makes reference to the services that he provided at JGR in the last year. Do you recall that at all?
MR. DAVEY: Objection to the form.
THE WITNESS: I'm -- I'm familiar with the judge's ruling.
BY MR. WALKER:
Q. Okay. And I'm not -- I'm not talking about the judge's ruling quite yet; I'm just talking about the restrictive covenant itself, which -- the judge's ruling, to be sure, made reference to the -- the language of the -- of the restrictive covenant. But I'm just trying to make sure that --
A. You mean like confidentiality? I mean what are you -- I mean . . .

executive and I grab the steering wheel and go drive around the racetrack, I'm the driver. Okay?

What I'm saying is that that would never happen. There's not an executive that is calling races. There's not an executive that is making adjustments at the racetrack. There's not an -- there's not an executive that are doing these things that you're talking about.

It's like -- but any -- any executive that has been in competition, including -- owners, like myself, can talk air pressure. That's not a proprietary thing. Okay? That's not something -- an owner can talk about it. It's not just a competition director. It's not just a chief motor sports officer. Everybody can talk about air pressure. That's not violating anything.

Q. Okay. So in your view, Mr. Gabehart could talk about tire pressure all he wants. That's not violating the restrictive covenant?

MR. DAVEY: Objection to the form.

THE WITNESS: He's not talking about it all he wants. Right?

BY MR. WALKER:

Q. But if he did, he could do that -- in Spire's view, he could do that all he wants, and it

wouldn't violate the restrictive covenant?
MR. DAVEY: Objection to the form.
THE WITNESS: He's not violating the restrictive covenants.
MR. WALKER: Objection. Nonresponsive.
BY MR. WALKER:
Q. You're -- you're -- do you understand that you're -- you're not answering my question about Spire's position; you're answering my question about what you believe he's doing?
I'm asking you about your -- Spire's position --
A. Spire's --
Q. If he did --
A. Spire's position is that everybody bench-races. Everybody can talk about air pressure. Anybody can talk about anything they -- anything they want, as long as we are not violating what -- a preliminary injunction ruling. Okay?
And what I've said to you is that we pulled him out of all those things. Anything that touches what's -- what -- any direction you're asking these things, he is not even close to any of them.
Q. So what did you pull him out of after the TRO that he was doing before?

A. Nothing. I pulled him out of going to -- the risk versus reward. I -- I have watched what -- I have watched your -- your tactics. Right? And I've watched how you guys started taking pictures of him going to the racetrack, even though that was -- the judge said he could go to the racetrack, but you guys thought it would be a good idea to take pictures of it. Okay?

So I pulled him out of anything. You know why? So that if I'm sitting in a deposition room and you're asking me questions like this, I can look you in the eye and say, "He's not doing any of that."

And I know he's not doing any of that, because we pulled him out of everything. Right? Not because the judge said it; because we said it. We're the ones that pulled him out of things. We're the ones that say, "You don't go to Cup races." We're the ones that say, "You don't go to these Cup meetings anymore."

He could. Executives go all the time. Bill goes; he's an executive. All right?

What I'm just saying is just like, again, you guys are looking at him like he's this, right? Just because I look at him like he's this, you guys are trying to -- going to try to hang us with it.

Right?

I'm saying I'm not taking that chance. A priority of us at Spire, corporate entity, is that we are winning this case. Right? And I'm not going to be sitting as a corporate representative answering these types of questions, telling you what you think I'm doing, when I can look at you and say, "He's not in any of those meetings."

And that's not how any Cup team is structured. There is no executive that's making adjustments on pit row. There's not any executives that is calling strategy. Right? That's not how race teams operate.

That's why -- it's like you're asking me these things where it's just like -- yeah. You know? You're -- you have these like hypotheticals, and it's like those things don't occur. They just don't occur.

MR. WALKER: I'm going to object as nonresponsive.

BY MR. WALKER:

Q. Have you pulled Mr. Gabehart out of competition meetings?

A. I instructed to have Chris Gabehart taken out of comp meetings, yes.

Q. When did you do that?
A. I don't know. Probably in late May or early June.
Q. Okay. So that was -- that was several months after the temporary restraining order?
A. It was -- it was probably two months.
Q. Okay. Why did you do that -- why did you make that instruction at that point?
A. Because I was tired of you guys splitting hairs on what he was doing because he went to a racetrack.
I mean, we're going to have a collage at our Christmas party of all your pictures of Chris Gabehart sitting in the stands at racetracks. Right? Or looking at the pylon at a racetrack.
And everything -- you guys are trying to make it look like everybody in the whole sport is a comp director, and that's a racetrack, and what's he doing, his job. That's not what he's doing.
So I can. Right? It's my company, right? I can be like -- "Listen, we don't even need to give them any ammunition. We don't need to explain anything. It's a lot easier to go to these things and just say, 'Hey, he's not in them. He's not at these races.'" Right?

Because again, the -- the risk/reward isn't worth it for Spire. Right? Executives in comp meetings, right, we all say things in comp meetings. We had a comp meeting today. I was talking in it. Bill was talking in it. Right?

But it's -- again, I don't need Chris going in these things and pointing out the most obvious things. Right? So if he's in there and he's pointing out the obvious things, then he doesn't need to be in there for that. We know the obvious things.

Q. Is everything --

A. If I want somebody to point out the obvious in comp meetings, I'll send Bill.

Q. Is everything that Mr. Gabehart has shared in a comp meeting, to Spire's knowledge, obvious?

A. Anything that Chris Gabehart has said in these things have been -- has been obvious.

Q. Okay. Do you have any particular examples in mind?

A. You could show me some examples, and I would tell you that they are obvious. Because everything that Chris was doing in there was just like -- we had an executive that did all that. We don't need -- we don't need Chris in there to say the most basic rudimentary things about a race car.

Q. Have you instructed Mr. Gabehart to stop saying obvious things with competition personnel?

A. I don't -- I don't have to. He's not in comp meetings. He's not anywhere near -- he's not -- anything to do with Cup Series. Not -- not one thing.

Q. Spire knows that there -- that Mr. Gabehart has attended some competition meetings since he started working for Spire?

A. I know he's been in some, yes.

Q. Okay. And he has shared some input at some of those meetings, correct?

MR. DAVEY: Objection to the form.

THE WITNESS: I think Chris has said a few things, none of which that I would consider anything more than the most elementary, basic stuff.

BY MR. WALKER:

Q. Okay. But it relates to Cup Series competition issues, correct?

A. If it was a Cup Series comp meeting.

Q. And the words that were coming out of his mouth had something to do with Cup Series competition?

A. It had something to do with the