IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| JOE GIBBS RACING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER GABEHART and SPIRE MOTORSPORTS II, LLC,<br><br>Defendants. | Case No. 3:26-cv-00133-SCR-DCK |

**DEFENDANT SPIRE MOTORSPORTS II, LLC'S MEMORANDUM IN OPPOSITION TO JOE GIBBS RACING, LLC'S MOTION FOR LEAVE TO FILE AN ANSWER OUT OF TIME**

Defendant Spire Motorsports II, LLC ("Spire"), by and through counsel, submits this Opposition to Plaintiff Joe Gibbs Racing, LLC's ("JGR") Motion for Leave to File an Answer Out of Time, Dkt. 250 ("Mot."). JGR filed its complaint against Spire on February 24, 2026, Dkt. 8, amending it on June 10, 2026. Dkt. 95. Spire filed a timely answer with counterclaims on June 24, 2026. Dkt. 99. JGR moved to dismiss the counterclaims, and the Court denied that motion on August 26, 2026. JGR's answer was due on September 9, 2026. Fed. R. Civ. P. 12(a)(4)(A).

JGR blew by its September 9, 2026, deadline to respond to Spire's counterclaims without filing any answer or making any request for an extension of time. Yet, at the same time, JGR was busy flooding the docket with its ***own*** motions in an effort to litigate its ***own*** claims, including motions for a show cause order and a preliminary injunction, representing over ***845*** pages of briefing and exhibits. Dkt. 219, 231. JGR's neglect in filing a timely answer was neither excusable nor a product of circumstances beyond its own control. Rather, JGR's missed deadline was an error of its own making, at a time when Spire has made all its filings on time. Now, only after

Spire applied for the default to which it is entitled, JGR moves the Court for leave to file an untimely answer. That motion should be denied.

## LEGAL STANDARD

JGR has the burden to demonstrate "good cause" for the Court to "extend the time [to file JGR's answer]. . . on motion made after the time has expired if the party failed to act because of ***excusable*** neglect." Fed. R. Civ. P. 6(b)(1)(B) (emphasis added). In determining whether excusable neglect exists, the Court considers four factors: "[1] danger of prejudice to the opposing party, [2] the length of delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Pioneer Investment Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 395 (1993). The reason for the delay is the most important factor. *Symbionics Inc. v. Ortlieb*, 432 F. App'x 216, 219 (4th Cir. 2011) (reversing grant of a leave to file a notice of appeal out of time). "Excusable neglect is not easily demonstrated, nor was it intended to be. Indeed, a district court should find excusable neglect only in the ***extraordinary cases*** where injustice would otherwise result." *Id.* at 220 (emphasis in original) (citation modified) (citations omitted). The movant has the burden of showing that not easily demonstrated standard has been met. *Thompson v. E.I. DuPont de Nemours & Co., Inc.*, 76 F.3d 530, 534 (4th Cir. 1996) (affirming district court's refusal to grant leave for an untimely filing). The decision of whether to grant leave to file is addressed to the discretion of the district court. *Id.* at 218.

## ARGUMENT

JGR's motion fails on all fronts. Taking the most important factor first, JGR has failed to show excusable neglect. That is because "run-of-the-mill inattentiveness by counsel" is not

excusable neglect. *Symbionics*, 432 F. App'x at 220. The other factors also favor denying JGR's motion. The prejudice to Spire, which has consistently complied with all deadlines, is great. The length of delay is material and a product of JGR's own litigation conduct. JGR's answer was filed fifteen days after its deadline, almost a month after the close of discovery. Finally, JGR has exhibited a history of dilatory action which caused its failure to file a timely answer.

## I. The Reason for JGR's Delay is Inexcusable and Favors Denial of Its Motion.

"[T]he third *Pioneer* factor—the untimely party's reason for the delay—is the most important to the excusable neglect inquiry." *Symbionics*, 432 F. App'x at 219. Courts consistently refuse to accept the "run-of-the-mill inattentiveness by counsel" as excusable neglect. *Id*. at 220 (citing *Thompson*, 76 F.3d at 535 (4th Cir. 1996)). It has been the law for over six decades that a client may be held responsible for the omissions of its attorney. *Thompson*, 76 F.3d at 533; *Pioneer*, 507 U.S. at 396-97; *Link v. Wabash R. Co.*, 370 U.S. 626, 633 (1962). In any case, a party "voluntarily chose [its] attorney as [its] representative in the action, and [it] cannot [then] avoid the consequences of the acts or omissions of this freely selected agent." *Pioneer*, 507 U.S. at 397 (citations omitted).

In *Symbionics*, the plaintiff filed a notice of appeal from trial just one day late. 432 F. App'x at 218. Counsel in that case explained that the delay was the result of an internal docketing error. *Id.* Specifically, the attorney failed to realize he was looking at a calendar for the incorrect year when docketing the deadline. *Id.* The court applied the exact same excusable neglect factors from *Pioneer*. *Id.* at 219. In *Symbionics*, our circuit held that the "run-of-the-mill inattentiveness by counsel" was not excusable neglect. *Id.* at 220.

Here, JGR is represented by two large law firms with more than 1,600 attorneys between them, of which 14 have made an appearance in this case. Behind those 14 attorneys are an army

of lawyers working on JGR's behalf. Despite all that, JGR claims that its delay is excusable because of an inadvertent calendaring error and the "press of considerable deadlines. . . ."—deadlines JGR requested. Dkt. 250, at 2, 5. However, JGR, like the parties in *Symbionics*, *Thompson*, *Pioneer*, and *Link*, voluntarily chose its counsel and "cannot [now] avoid the consequences of the acts or omissions of" that counsel. *Pioneer*, 507 U.S. at 397 (citations omitted). The "considerable deadlines" JGR mentions were entered at its request or driven by its own motions practice. And the failure to docket an answer deadline does not amount to excusable neglect, which "is not easily demonstrated. . . ." *Symbionics*, 432 F. App'x at 220; *see also Perez v. El Tequila, LLC*, 847 F.3d 1247, 1253 (10th Cir. 2017) (finding no excusable neglect where counsel failed to docket an answer deadline); *Key*, 626 F. Supp. 2d at 577 (finding no excusable neglect where counsel missed a motion response deadline because he was "extremely busy as of late."). Because JGR has no excusable reason for its delay, leave to file an untimely answer should not be granted.

## II. Spire will be Prejudiced if JGR is Permitted to File a Late Answer.

Should JGR be granted leave to file an untimely answer, Spire will be prejudiced beyond simple delay itself. JGR's 30(b)(6) witness has already admitted liability on Spire's counterclaim:

> Q. So JGR agrees, though, that the deal was Spire would release [Robert "Cheddar Smith] so Cheddar could come to JGR, and JGR would pay Spire $100,000?
>
> A. That's correct. That is the deal Chris Gabehart made with Jeff Dickerson
>
> . . .
>
> Q. Does JGR contest that it owes Spire $100,000 under the agreement we've been discussing?
>
> A. JGR would be happy to pay if we receive an invoice from Spire."

Dkt. 279 at 4.

It is difficult to conceive a greater prejudice than forcing Spire to litigate a claim where there is actually no live dispute. Moreover, JGR—even while ignoring its obligation to timely answer Spire's counterclaims—made time for numerous filings. For each of these filings, Spire has had to review and respond. This in addition to Spire's already existing obligations to litigate its case and meet the deadlines set by the Court's Amended Pre-Trial and Scheduling Order ("Scheduling Order"). Dkt. 205-1; Text-Only Order, Sept. 14, 2026. All of this has cost Spire time and money. Now, should JGR be given leave to file an untimely answer, Spire will be forced to spend ***even more*** time and money litigating counterclaims on which JGR's own corporate witness already admits JGR's liability. Dkt. 279 at 4. Because Spire—who has properly managed its deadlines since this case began—will suffer undue prejudice should JGR be allowed to file an untimely answer, no leave should be granted.

## III. JGR Caused its Delay in Answering and Took No Action until Default had Already Been Requested.

JGR claims that leave should be granted because it acted promptly after learning of its tardiness on the day of Spire's application for default. Dkt. 250 at 4. JGR skirts around the real issue. Fifteen days passed after JGR's deadline before it took any action, and then only in response to Spire's application for default. Shorter delays have been insufficient to save similarly situated litigants. *See, e.g.*, *Symbionics*, 432 F. App's at 218, 220 (reversing district court's grant of leave to file a late notice of appeal when the notice was filed only one day after it was due because of counsel's calendaring error); *Key v. Robertson*, 626 F. Supp. 2d 566, 574 (E.D. Va. 2009) (finding no excusable neglect under Rule 6(b)(1)(B) where a motion response was filed eleven days late).

For those fifteen days, JGR found the time to make six filings, making plenty of time for ***JGR's*** claims against ***Spire***. Not one of those filings was an answer, exhibiting JGR's failure to make time for ***Spire's*** claims against ***JGR***. Worse, springing into action only when forced to do

so, JGR waited to remedy its delay until after Spire had applied for default. This is not a case where a litigant missed a deadline and then voluntarily sought to correct it. Because JGR's delay is self-inflicted and it failed to be proactive, the third factor weighs in favor of denying leave to file an untimely answer.

## IV. JGR has a Long History of Dilatory Action which Caused Its Delay.

JGR claims it has exhibited "no bad faith, gamesmanship, or dilatory motive." Dkt. 250 at 4 ¶ 13. JGR is wrong. There is a long-documented history of JGR's dilatory actions, each of which needlessly increases Spire's costs in defending itself. Beyond JGR's inexcusable oversight in failing to file an answer, JGR has consistently abused the Court's Protective Order to unduly burden Spire's defense.[1] For example, JGR failed to timely serve its expert reports and refused to provide unredacted versions to counsel outside of a frequently inaccessible "clean room." That's another missed deadline, as expert reports were due on September 25, 2026. Dkt. 205-1; Text-Only Order, Sept. 14, 2026. JGR has given the same treatment to interrogatory responses, serving only redacted versions on counsel outside the clean room. This improper usage of the Protective Order does nothing but delay and foist unneeded expense onto Spire.

JGR's delay has even deeper roots in this litigation. JGR waited until July 1, 2026 to make even a subset of its alleged trade secrets available to Spire's counsel for review and, even then, did so in a "clean room" that had not yet been approved by the Court. JGR later removed many of these documents when it was forced to acknowledge, for example, that they were pictures of Gabehart's personal vehicle or non-Cup series racecars with no relevance to this case. JGR then repeatedly delayed and rescheduled depositions of its own witnesses and Spire's witnesses,

[1] JGR's abuse of the Protective Order has been revealed in Spire's motions to compel, Spire's opposition to JGR's motion to supplement the protective order, and during the October 1, 2026, hearing before Judge Keesler. *See* Dkt. 105; Dkt. 168.

insisting on cramming most of those depositions into the last two weeks of an already-compressed discovery period. JGR delayed its Court-authorized forensic examination of Jeff Dickerson's devices for months on end. JGR even delayed its Court-authorized second forensic examination of Gabehart's devices and accounts, despite Spire's insistence that JGR complete the process as quickly as it could. JGR's failure to timely answer Spire's counterclaims is just the cherry on top.

Compounding its dilatory effect, JGR failed to meet the Scheduling Order's discovery deadline, which came and went over a month prior to the date of this opposition. Under the Scheduling Order, fact discovery was to end on August 31, 2026. However, JGR has continued serving supplemental interrogatory responses, the most recent being on September 25, 2026. In that supplemental response, JGR again reserved the right to supplement ***yet again***; over a month after the discovery deadline, Spire ***still*** does not have a final list of the alleged trade secrets. JGR's pattern of untimeliness did not begin with its missed deadline. Had JGR's "error been isolated . . ." things "might be different. . . ." *Perez,* 847 F.3d at 1253. "[B]ut it was not. . . ." *Id.* Because JGR's failure to file a timely answer is just the most recent episode in a long-lasting theater of delay and gamesmanship, the Court should not grant JGR leave to file an untimely answer.

## CONCLUSION

For all these reasons, Spire respectfully requests that the Court deny JGR's motion for leave to file an answer out of time.

This the 8th day of October, 2026.

By: */s/ Joshua D. Davey*
Joshua D. Davey (N.C. Bar No. 35246)
Jason D. Evans (N.C. Bar No. 27808)
Lawrence J. Cameron (N.C. Bar No. 41922)
Troy C. Homesley, III (N.C. Bar No. 62148)
Anais M. Jaccard (N.C. Bar No. 58438)
Ben E. Whorf (N.C. Bar No. 64279)
**TROUTMAN PEPPER LOCKE LLP**

301 S. College St., 34th Floor
Charlotte, NC 28202
Telephone: (704) 916-1503
joshua.davey@troutman.com
lawrence.cameron@troutman.com
troy.homesley@troutman.com
anais.jaccard@troutman.com
ben.whorf@troutman.com

John S. "Evan" Gibbs III – Pro Hac Vice
**TROUTMAN PEPPER LOCKE LLP**
600 Peachtree St, NE #3000
Atlanta, GA 30308
Telephone: (404) 885-3093
evan.gibbs@troutman.com