**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| JOE GIBBS RACING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER GABEHART and SPIRE MOTORSPORTS II, LLC,<br><br>Defendants. | Case No. 3:26-cv-00133-SCR-DCK |

**DEFENDANT SPIRE MOTORSPORTS II, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL INSPECTION OF ALLEGED TRADE SECRETS**

Plaintiff Joe Gibbs Racing, LLC ("JGR") doubles down on discovery gamesmanship that can be perfectly described in just three words. "Hide the ball." Bent on obfuscating the issues in the case it started, JGR now refuses to allow inspection of the very trade secrets it claims Spire misappropriated. JGR has alleged its trade secrets include "proprietary methods and tools" for [redacted], and has claimed ownership over several specific examples of equipment, including a [redacted] Additionally, JGR claims to have "[redacted]" Spire has its own equipment to perform some of these functions—specifically, a fog machine it purchased at Party City and a homemade [redacted]—which Spire developed independently, and which Spire believes bears no resemblance to JGR's equipment. Because a simple inspection of both parties' equipment side-by-side would demonstrate that JGR's misappropriation claims have no merit, JGR refuses to permit inspection of these alleged trade secrets.

Absent an inspection, the results to come are clear. JGR's obstruction will leave Spire's counsel, the Court, and, indeed, a jury in the dark when it comes to JGR's alleged trade secrets, maximizing JGR's opportunity to create confusion, which is its apparent goal. Pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, Defendant Spire Motorsports II, LLC ("Spire"), by and through counsel, moves the Court to compel JGR to allow inspection of its alleged trade secrets.

## BACKGROUND

In the seven months since JGR filed its complaint against Spire,[1] the parties have taken over 25 depositions, served 115 third-party subpoenas (of which 85 were served by JGR), and voluminous written discovery. In that time, JGR sought increasingly invasive discovery from Spire, including requests for 3D body scans of Spire's racecars (which it later dropped) and Spire's racecar setups (production of which will disprove JGR's misappropriation theories). Dkt. 119. Through it all, JGR has consistently failed to provide a complete and final list or description of its alleged trade secrets in response to Spire's interrogatories. As recently as September 25, 2026, JGR was still supplementing its answers to interrogatories seeking identification of its alleged trade secrets and reserving the right to do so again. Ex. A (JGR Fifth Supp. Resp. to Spire's Interrogs., Sept. 25, 2026). After forcing Spire to seek relief from the Court, JGR now must identify its trade secrets by October 16, 2026. Dkt. 286.

Spire, unable to get a straight answer on what exactly some of the alleged trade secrets are, served a request for inspection on August 31, 2026 (soon after the trade secrets Spire seeks to inspect were revealed by JGR). Ex. B (Spire Req. for Inspection, Aug. 31, 2026). Spire seeks to inspect a narrow subset of equipment in JGR's possession that JGR alleges are its trade secrets.

[1] Dkt. 95, First Am. Compl. (Feb. 24, 2026).

Ex. A (JGR Fifth Supp. Resp. to Spire's Interrogs., Sept. 25, 2026) at 26-28 (listing these topics as trade secrets Gabehart allegedly "memorized").[2] The specific equipment at issue includes "proprietary methods and tools" for [redacted], and JGR has claimed ownership over several specific examples of equipment, including a "[redacted] Ex. A (JGR Fifth Supp. Resp. to Spire's Interrogs., Sept. 25, 2026) at 26-27. In JGR's telling, Gabehart "memorized" all of this equipment. As a result, there is not a single document Gabehart allegedly misappropriated reflecting this equipment or the processes that it implements. Moreover, JGR also contends that Spire misappropriated these memorized trade secrets, specifically through a Party City fog machine [redacted] that Spire built in its shop in January 2025.

Although the only evidence is that Spire independently developed its testing equipment without any input from Gabehart, Dkt. 275-11, Spire seeks to physically inspect JGR's equipment so that its experts can compare JGR's equipment to Spire's to further disprove JGR's claims. Despite Spire's obvious need to inspect these "memorized" trade secrets, JGR refused to permit the inspection and served objections on September 25, 2026. Ex. C (JGR Resp. to Spire's Req. for Inspection, Sept. 25, 2026). JGR supplemented its objections on September 28, 2026. Ex. D (JGR Supp. Resp. to Spire's Req. for Inspection, Sept. 28, 2026). Spire conferred with JGR on September 29, 2026, to resolve the disputes. That meeting was to no avail. Spire now seeks an order allowing it and its experts to inspect the trade secrets it is accused of misappropriating.

---

[2] JGR failed to serve unredacted interrogatory responses in a traditional PDF format, so Spire cannot provide JGR's unredacted interrogatory responses to the Court. Only JGR can.

## LEGAL STANDARD

Discovery is a "mechanism for making relevant information available to the litigants." *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 238 (M.D.N.C. 2010) (quoting Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment). "Unless otherwise limited by court order, . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Parties may request permission to enter "onto designated land . . . so that the party may inspect . . . any designated object or operation on it." Fed. R. Civ. P. 34(a)(2). A request for inspection may be made within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). Courts balance the "degree to which a proposed inspection will aid in the search for truth . . . against the burdens and dangers created by the inspection." *Felix v. U.S. Attorney General*, 2019 WL 2480067, at *2 (E.D.N.C. Jun. 11, 2019) (citing *Belcher v. Bassett Furniture Indus., Inc.*, 588 F.2d 904, 908 (4th Cir. 1978)). The burden rests on the opponent to demonstrate that inspection is unnecessary. *Id.* (citations omitted).

"A party seeking discovery may move for an order compelling . . . inspection." Fed. R. Civ. P. 37(a)(3)(B). Such a motion is appropriate where another party "fails to permit inspection . . . as requested under Rule 34." "The party seeking discovery has the burden to establish its relevancy and proportionality, at which point the burden shifts to the party resisting discovery to demonstrate why the discovery should not be permitted." *Cook v. Wake Forest Univ. Baptist Med. Center*, 2021 WL 620707, at *2 (M.D.N.C. Feb. 17, 2021) (granting a motion to compel document production). An order compelling discovery is addressed to the sound discretion of the district court. *Id.* at *3 (collecting cases).

<u>**ARGUMENT**</u>

The Court should compel JGR's compliance with Spire's requested inspection. The burden to JGR—minimal at best—is far outweighed by the need of Spire and its experts to understand the nature of the alleged trade secrets at issue in this case. Further, any potential burden is mitigated by the extant Protective Order. Spire's requests are timely, comply with the Court's Scheduling Order, and are within the scope of the Federal Rules of Civil Procedure. Spire's requests are reasonable, necessary, and proportionate. JGR's dilatory actions, on the other hand, are without substantial justification. Spire's motion should be granted and its reasonable attorneys' fees and costs should be taxed against JGR.

**I. The Burden of the Inspections on JGR is Far Outweighed by the Need to Understand the Alleged Trade Secrets.**

JGR's attempts to obstruct reasonable inspection of its equipment and processes ignores a crucial fact: JGR is the one who made its equipment and processes an issue in the first place. That justifies Spire's requests to inspect a narrow set of putative trade secrets JGR alleges to have been "memorized" and misappropriated. *Barden*, 2022 WL 4134727, at *2 (granting a motion to compel inspection where the plaintiffs had "placed their respective properties at issue . . . .").

Spire has requested inspection of certain equipment in JGR's possession that JGR claims it uses to optimize its vehicles. Ex. B (Spire's Req. for Inspection, Aug. 31, 2026). Specifically, Spire seeks to inspect the equipment JGR claims it uses for its [redacted] and [redacted], along with its [redacted]. This is the ***same*** equipment ***JGR itself*** alleges constitutes part of its trade secrets. Ex. A (JGR Fifth Supp. Resp. to Spire's Interrogs., Sept. 25, 2026) at 26-28 (listing this equipment and related processes as trade secrets Gabehart

allegedly "memorized").[3] Spire will prove that to the extent Spire has any equipment that performs similar functions, it was independently developed without any reliance on JGR information. The inspections Spire requests will greatly "aid in the search for truth," and are necessary for Spire, the Court, and a jury to understand the nature of the alleged trade secrets. *Belcher*, 588 F.2d at 908.

Indeed, it is hard to imagine how Spire can defend itself without inspection of JGR's physical trade secrets and related equipment, which JGR has not produced in this litigation or made available to Spire. JGR has deemed itself the rightful owner of readily available, widely known processes and equipment, including equipment used for [redacted] testing. Ex. E (Expert Report of P. Leahy) at 4-5. In order for Spire and its experts to evaluate what precisely that equipment is, what it looks like, how it is used, and whether it is any different from Spire's equipment or the equipment available on the free market, Spire is entitled to inspect it. Thus, simply to litigate the foundational claim that Spire is using equipment and processes similar to those used by JGR, Spire must inspect the equipment used by JGR. JGR cannot put its equipment at issue in the litigation and then prohibit Spire from seeing it.

Conversely, any potential burden of the inspections on JGR has already been mitigated. Both parties and their counsel are already bound by the Court's protective order. Dkt. 124. Similarly, experts for both sides have signed acknowledgements of the Protective Order. The Protective Order includes numerous designations for sensitive information, including those restricting access to Outside Counsel Only. JGR is well aware of the Protective Order and how to use it, as evidenced by its abuse of both the designations and the Court-ordered clean room.[4] Those

---

[3] Again, Spire cannot provide unredacted copies of JGR's interrogatory responses to the Court because JGR has—to this day—refused to properly serve unredacted copies of its interrogatory responses on Spire outside the clean room. *Supra*, n.2.

[4] JGR's abuse of the Protective Order is the subject of both Spire's pending motion to compel and Spire's opposition to JGR's motion to supplement the protective order. *See* Dkt. 168

same designations mitigate any risk to JGR from a site inspection and any resulting pictures or videos, which could be limited in the same fashion as any production to date in this case. To the extent JGR is correct that the Protective Order itself does not address attendance or observation at an inspection,[5] such matters could nonetheless be resolved by good faith discussions about logistics. But JGR was unwilling to entertain those discussions. Because Spire's need for inspection far outweighs any burden to JGR, and because any such burden is mitigated by the Protective Order, JGR cannot demonstrate that an inspection is unneeded. *Felix*, 2019 WL 2480067, at *2. The Court should enter an order compelling JGR to permit the site inspection.

## II. JGR's Contention that Its Trade Secrets are not Subject to Inspection is Incorrect

JGR has, at a snail's pace, alleged far-reaching, shifting, and often vague trade secrets in this litigation. At the same time, JGR seeks to hide the best evidence of those trade secrets—a direct review and inspection of them by Spire's counsel and experts. JGR claims that its trade secrets are by nature not subject to inspection. *See, e.g.*, Ex. C (JGR Resp. to Spire's Req. for Inspection, Sept. 25, 2026), No. 1 ([redacted]). JGR is incorrect.

*First*, Spire's request on its face seeks to review *equipment* JGR has or developed to implement their trade secrets. *See, e.g.*, Ex. B (Spire's Req. for Inspection, Aug. 31, 2026), No. 1 ([redacted]). A request for entry onto property is proper to inspect "any designated object . . . on it." Fed. R. Civ. P. 34(a)(2). JGR's attempts to

---

(Spire's Brief ISO its Motion to Compel the Identification of Trade Secrets and Production of Documents and Metadata); Dkt. 105 (Spire's Opp. To JGR's Mot. To Supplement the Protective Order).

[5] Ex. C (JGR Resp. to Spire's Req. for Inspection, Sept. 25, 2026) ¶ 4.

misconstrue Spire's requests do nothing to change the scope of what Spire seeks to inspect, which is undoubtedly within the Federal Rules of Civil Procedure.

*Second*, JGR contends that its methods and [redacted] are not inspectable. JGR seems to take the position that unless you can pick something up and carry it around you cannot inspect it under Rule 34. In JGR's world, the Rules hamstring a defendant accused of misappropriating a process that makes up a trade secret, preventing them from entering a plaintiff's property to see the actual process in motion.

But that's wrong. Entry on land is proper to inspect "any designated object or ***operation*** on it." Fed. R. Civ. P. 34(a)(2) (emphasis added). Indeed, "Rule 34 permits the observation of machinery, work practices, or manufacturing operations on a party's premises." *Scruggs v. Int'l Paper Co.*, 278 F.R.D. 698, 700 (S.D. Ga. 2012). In the patent context, Rule 34(a)(2) has been used for 60 years to allow defendants to observe a patented process in action when accused of infringement. *See Minnesota Mining & Mfg. Co., Inc. v. Nippon Carbide Industries Co., Inc.*, 171 F.R.D. 246, 248 (D. Minn. 1997); *Nat'l Dairy Products Corp. v. L. D. Schreiber & Co., Inc.*, 61 F.R.D. 581, 582 (E.D. Wis. 1973); *Dow Chemical Co. v. Monsanto Co.*, 256 F. Supp. 315, 317–18 (S.D. Ohio 1966) (holding that when the infringement is of a patented process, "no means of determining the methods… other than a visual inspection suggests itself.").

*Third*, in any event, JGR does in fact claim that its "equipment" is a trade secret. For example, JGR claims that its [redacted] includes "trade secret and proprietary methods ***and tools***," that it uses "[redacted]," that it uses a [redacted] Ex. A (JGR Fifth Supp. Resp. to Spire's Interrogs., Sept. 25, 2026) at 26-27. JGR even claims that it [redacted]

[redacted] *Id.* at 26-27. All of this can be observed, photographed, videotaped, and analyzed by Spire's experts. And Spire and its experts ***must*** do so to meaningfully analyze whether this equipment is a trade secret at all, how it compares to Spire's equipment (if at all), and how it compares to what is available to anyone with internet access.

Ultimately, to the extent Spire's requests seek to examine JGR's methods and [redacted] that is a request to examine the process JGR claims to comprise its trade secret. Because JGR has made those processes an issue in this case and the Rules permit inspection of operations, the Court should enter an order compelling JGR to permit Spire's requested inspection.

## III. Spire's Request for Inspection was Timely.

The Court's Pre-Trial Order and Case Management Plan ("Scheduling Order") provides that fact discovery was to complete on August 31, 2026. Dkt. 117. However, the parties are permitted to seek discovery responses after that deadline upon a showing of "good cause." Dkt. 117 ("Discovery requests that seek responses . . . after the discovery completion deadline are not enforceable except by order of the Court for good cause shown."). Here, JGR's conduct has provided ample good cause for which the Court should require inspection after the discovery deadline.

JGR claims that Spire's request is untimely, all while ignoring the fact that JGR is the reason for any delay. JGR revealed the "memorized" trade secrets targeted by Spire's inspection request ***for the first time*** on August 18, 2026. Dkt. 170-15. Spire timely served its inspection request on August 31, 2026. Ex. B (Spire's Req. for Inspection, Aug. 31, 2026). And even though discovery ended on August 31, 2026, JGR continues serving supplemental interrogatory responses purporting to identify even more alleged trade secrets, in direct contravention of the very order JGR cites to avoid allowing Spire to inspect those trade secrets. Ex. A (JGR Fifth Supp. Resp. to

Spire's Interrogs., Sept. 25, 2026), No. 2. Because JGR itself has delayed Spire's ability to seek necessary discovery of the alleged trade secrets, the Court should compel the requested inspections.

## IV. Spire's Requests do not Exceed the Maximum Allowed by the Court's Pretrial Order.

JGR claims Spire's request for inspection exceed the Court's limitations on discovery. JGR's tortured interpretation of the Court's Scheduling Order crumbles under scrutiny. The Scheduling Order allows "no more than 30 requests for production of documents, including subparts." Dkt. 117. JGR advances two arguments for how Spire's requests for inspection violate this limitation. Both fail.

*First*, JGR argues that Spire had already used up its maximum allotment on previous requests for production. Ex. D (JGR Supp. Resp. to Spire's Req. for Inspection, Sept. 28, 2026). Not so. While JGR claims that the Scheduling Order limits [redacted] as a [redacted] that is not true. Ex. D (JGR Supp. Resp. to Spire's Req. for Inspection, Sept. 28, 2026) ¶ 14(b)-(c). Rather, the Scheduling Order explicitly limits "requests ***for production of documents***" to no more than 30. Dkt. 117 (emphasis added). On its face, the plain text of the Scheduling Order applies to a request for ***documents*** to be ***produced***. Requests for document production are made under Fed. R. Civ. P. 34(a)(1)(a). Conversely, Spire has requested to enter JGR's facilities to ***inspect equipment***. That request is made under Fed. R. Civ. P. 34(a)(2), a different subpart than that for document productions. Because Spire's request seeks neither a "production" nor "documents," the plain language of the Scheduling Order does not place a maximum limit on it.

*Second*, JGR argues [redacted] Ex. D (JGR Supp. Resp. to Spire's Req. for Inspection, Sept. 28,

2026) ¶ 14(c). Remarkably, JGR makes this argument even though [redacted]. Ex. B (Spire's Req. for Inspection, Aug. 31, 2026). Instead, JGR seeks to interpret each item in a comma-list as a "subpart." According to JGR, a request for inspection of equipment used for a certain purpose followed by an "including but not limited to" list of examples is not a single request. Rather, each explicitly illustrative example is a "subpart" counting against the party's maximum allotment under the Scheduling Order. That novel approach goes against analogous law. *See, e.g., Reserve at Winchester I, LLC v. R 150 SPE, LLC*, 2022 WL 4594026, at *10 (W.D. Va. Sept. 29, 2022) (applying the rule that a subpart does not count against interrogatory limits when it is "logically or factually subsumed within and necessarily related to the primary question."). Indeed, under JGR's approach, its own requests for production would well exceed the maximum limit. Dkt. 119-4 (JGR's First Req. for Prod. May 12, 2026) (containing more than 60 requests under JGR's view).[6]

## V. Because JGR's Obstruction is Without Substantial Justification, Spire is Entitled to its Reasonable Fees and Costs.

Spire met and conferred with JGR's counsel on September 29, 2026. After attempting to obtain discovery from JGR in good faith, Spire has been unable to resolve the discovery disputes without seeking the Court's intervention. JGR's refusal to respond is without substantial justification, as shown by its over 4-month campaign to avoid identifying its alleged trade secrets.[7] Thus, Spire is entitled to its reasonable attorneys' fees and costs incurred in seeking this discovery

---

[6] Even if JGR were correct that Spire has exceeded its allotment for requests—which it is not—the Court should nonetheless permit the inspection for good cause shown. JGR's delay in identifying the trade secrets at issue in this case has prejudiced Spire's ability to conduct discovery. The disclosure of "memorized" trade secrets late-in-the-game warrants, and indeed necessitates, the inspections requested.

[7] Spire first served interrogatories seeking identification of alleged trade secrets on July 7, 2026. Ex. F (Spire's Interrogs., May 11, 2026), No. 2.

from JGR. *See* Fed. R. Civ. P. 37(a)(5)(A); *see also Loney v. Datamax Corp.*, 2015 WL 1000776, at *2 (E.D.N.C. Mar. 5, 2015) (finding defendant entitled to attorney's fees and expenses stemming from defendant's motion to compel discovery); *Hodges v. First Am. Bank and Trust, Co.*, 2012 WL 1077789, at *1 (W.D.N.C. Mar. 30, 2012) (awarding attorney's fees and expenses when Plaintiffs did "not provide the Court with any reasons why they failed to comply with their discovery obligation or why this Court should not award Defendant its reasonable expenses.").

**CONCLUSION**

For all these reasons, Spire respectfully requests that the Court grant its motion, compel JGR to allow the requested inspections, and award Spire its reasonable fees and costs incurred.

This the 8th day of October, 2026.


By: *<u>/s/ Joshua D. Davey</u>*
Joshua D. Davey (N.C. Bar No. 35246)
Jason D. Evans (N.C. Bar No. 27808)
Lawrence J. Cameron (N.C. Bar No. 41922)
Troy C. Homesley, III (N.C. Bar No. 62148)
Anais M. Jaccard (N.C. Bar No. 58438)
Ben E. Whorf (N.C. Bar No. 64279)
**TROUTMAN PEPPER LOCKE LLP**
301 S. College St., 34th Floor
Charlotte, NC 28202
Telephone: (704) 916-1503
joshua.davey@troutman.com
lawrence.cameron@troutman.com
troy.homesley@troutman.com
anais.jaccard@troutman.com
ben.whorf@troutman.com

John S. "Evan" Gibbs III – Pro Hac Vice
**TROUTMAN PEPPER LOCKE LLP**
600 Peachtree St, NE #3000
Atlanta, GA 30308
Telephone: (404) 885-3093
evan.gibbs@troutman.com