IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. 3:26-CV-00133-SCR-DCK

| | |
|---|---|
| **JOE GIBBS RACING, LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CHRISTOPHER GABEHART and SPIRE MOTORSPORTS II, LLC,**<br><br>**Defendants.** | **DEFENDANT CHRISTOPHER GABEHART'S BRIEF IN OPPOSITION TO PLAINTIFF JOE GIBBS RACING, LLC'S MOTION FOR SANCTIONS** |

Defendant Christopher Gabehart ("Mr. Gabehart"), by and through undersigned counsel, respectfully submits this Brief in Opposition to Plaintiff Joe Gibbs Racing, LLC's ("JGR") Motion for Sanctions Against Defendant Gabehart (the "Motion"), ECF 224, and states as follows:

## INTRODUCTION

JGR asks the Court to instruct a jury to presume the existence of evidence that JGR, after months of expedited discovery and exhaustive forensic imaging, has never found. The Motion rests on a single act: On November 15, 2025, Mr. Gabehart deleted a seven-message text thread with Spire Motorsports II, LLC ("Spire") owner Jeffrey Dickerson, the earliest of which concerned the employee-trade understanding Mr. Gabehart had negotiated with Spire on JGR's behalf, and the last of which conveyed Spire's offer of future employment. Mr. Gabehart does not hide what he did or why: Uneasy about receiving that offer while still negotiating an amicable exit from JGR, he "panicked" and deleted the thread.

That candor defeats the Motion. Rule 37(e) reaches only information a party was obligated to preserve in anticipation of litigation. On November 15, no one anticipated litigation: The parties

were negotiating an amicable separation, Mr. Gabehart had not yet commented on JGR's proposal, and days later JGR's own in-house counsel described JGR as "accepting his request." No demand, preservation notice, or threat of suit arrived until JGR's December 15 cease-and-desist letter—a month after the deletion. JGR's reliance on conduct *after* November 15 only confirms the point.

The Motion's real purpose is transparent. Having found no evidence that Mr. Gabehart shared JGR proprietary information with Spire—and facing sworn testimony from both Mr. Gabehart and Mr. Dickerson that none was shared—JGR asks the Court to tell the jury to assume such evidence existed, and existed only in seven deleted texts. That is not a remedy for lost evidence; it is a substitute for evidence JGR never had. JGR remains free to cross-examine Mr. Gabehart about the deletion at trial; it is not entitled to have the Court do its persuading for it.

The Court should deny the Motion: JGR cannot show a duty to preserve, an intent to deprive, or prejudice. And at a minimum, it would be premature for the Court to frame any adverse inference now, when JGR itself reserves the "precise wording" of its requested instruction "to the Court at trial."

## LEGAL STANDARD

Federal Rule of Civil Procedure 37(e) controls the duty to preserve electronically stored information ("ESI"). To show sanctionable spoliation of evidence, JGR must prove that: (1) some ESI was actually lost; (2) Mr. Gabehart had a duty to preserve the ESI at the time it was lost; (3) the loss was due to Mr. Gabehart's failure to take reasonable steps to preserve the ESI; and (4) the ESI cannot be restored or replaced through additional discovery. *Glob. Hookah Distributors, Inc. v. Avior, Inc.*, No. 3:19-CV-00177, 2020 WL 4349841, at *11 (W.D.N.C. July 29, 2020). If JGR proves these threshold elements—which it cannot—it then must prove that Mr. Gabehart "acted with the intent to deprive [JGR] of the information's use in litigation" before it is entitled to the

extreme sanction of an adverse inference. Fed. R. Civ. P. 37(e)(2); *see Wall v. Rasnick*, 42 F.4th 214, 222-23 (4th Cir. 2022).

JGR bears the burden of proving these elements by "clear and convincing evidence." *Mack v. Food Lion, LLC*, No. 5:23-CV-327, 2024 WL 4023782, at *3 (E.D.N.C. Aug. 29, 2024) (collecting cases).

## ARGUMENT

Because JGR cannot prove by clear and convincing evidence that Mr. Gabehart had a duty to preserve the texts when he deleted them, the Court need not reach the remaining Rule 37(e) elements. Absent a duty, there was nothing he was obligated to take "reasonable steps" to preserve, and the Motion fails at the outset. Nor can JGR show intent to deprive or prejudice to warrant sanctions.

### I. MR. GABEHART HAD NO DUTY TO PRESERVE TEXT MESSAGES BEFORE LITIGATION WAS REASONABLY ANTICIPATED.

"Generally, it is the filing of a lawsuit that triggers the duty to preserve evidence." *Glob. Hookah Distributors*, 2020 WL 4349841, at *12 (quoting *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013)). The duty to preserve may arise earlier only if the "party reasonably should know that the evidence may be relevant to anticipated litigation." *Id.* (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001)). When litigation is reasonably foreseeable is an objective standard that considers whether a reasonable party in similar circumstances would have foreseen litigation. *Webb v. Daymark Recovery Servs., Inc.*, No. 1:21-CV-424, 2022 WL 17832160, at *3 (M.D.N.C. July 26, 2022), *report and recommendation adopted,* No. 1:21-CV-424, 2022 WL 19001534 (M.D.N.C. Oct. 31, 2022).

While courts examine the circumstances in each case, "the duty seems to begin somewhere between knowledge of the dispute and direct, specific threats of litigation." *Bhattacharya v.*

*Murray*, No. 3:19-cv-00054, 2022 WL 1510550, at *4 (W.D. Va. May 12, 2022). Courts in the Fourth Circuit have found that "a demand letter, a request for evidence preservation, a threat of litigation, or a decision to pursue a claim will all trigger the duty to preserve evidence." *Id.* A "generalized concern about possible litigation is not sufficient to trigger" the duty to preserve. *Webb*, 2022 WL 17832160, at *3.

Mr. Gabehart's duty to preserve ESI did not arise until JGR's counsel sent him a cease and desist and preservation letter on December 15, 2025—a month after he deleted the text messages at issue. ECF 226-2 at 116-20. That letter was the first indication Mr. Gabehart had that JGR might take legal action against him. ECF 226-2 at 53-55 (Gabehart Dep. 191:21-192:2, 192:16-193:4).

JGR nonetheless argues that the duty arose on November 7, 2025, when separation negotiations began, or "at the latest" November 13, when Mr. Gabehart received Spire's offer. ECF 226 at 8. But on neither date had any triggering event occurred: The parties were negotiating an amicable separation, no one had accused anyone of wrongdoing, and no preservation demand or threat of litigation had been made.

As courts have found, when an employee departing on *amicable* terms is still negotiating a separation agreement, by no objective measure is litigation "reasonably anticipated." *See, e.g.*, *Puebla Palomo v. DeMaio*, No. 515-CV-1536, 2019 WL 1323927, at *3-4 (N.D.N.Y. Mar. 25, 2019) ("Defendants' request that Plaintiff sign an employment separation agreement does not amount to contemplated or threatened litigation which would trigger Plaintiff's duty to preserve the subject audio files."); *Little v. JB Pritzker for Governor*, No. 18-C-6954, 2020 WL 13189999, at *3 (N.D. Ill. Mar. 26, 2020) (same).

Such was the case in November 2025. On November 6, 2025, Mr. Gabehart met with Coach Gibbs, and the two agreed to begin working toward a separation agreement. ECF 12 ¶¶ 7-11. The

next morning, Mr. Gabehart sent JGR's Chief Financial Officer, Tim Carmichael, a written memorandum titled "End of Year Job Resolution." ECF 18 at 5-9; Ex. A, Gabehart Dep. 208:18-25. On November 10, Mr. Carmichael proposed separation terms that included a $100,000 buyout, no noncompete, continued COBRA coverage, mutual non-disparagement, and a mutual release. ECF 12-2 at 2-3. Mr. Gabehart replied that he would need to think about the proposal.

On November 15, five days after Mr. Carmichael's proposal, Mr. Gabehart deleted his text conversation with Mr. Dickerson. ECF 226-2 at 47 (Gabehart Dep. 181:2–19). Mr. Gabehart admits that he "panicked" when he deleted this thread. That panic resulted from his unease about receiving an offer from Spire while he was negotiating his separation from JGR. ECF 226-2 at 48-50 (Gabehart Dep. 182:3-184:24). But at that time, Mr. Gabehart reasonably believed that JGR would honor section 6 of his Employment Agreement, which included a mutual release and a reduced, one-week noncompete provision. ECF 12 ¶¶ 11-12; Gabehart Dep. 167:1-168:3.[1]

Far from reaching an "impasse" in separation discussions suggesting litigation was imminent, *see* ECF 226 at 9, the parties continued to negotiate terms for an amicable separation. Mr. Gabehart did not even send his first round of comments on the separation agreement until November 18, 2025. *See* ECF 275-16 at 3. And JGR's own internal communications belie any suggestion of an impasse or anticipated litigation. On November 19, JGR's in-house counsel wrote that Mr. Gabehart "has asked to be released from his contract that carried an 18-month non-

1 JGR suggests that Mr. Gabehart's retention of "employment counsel" by November 10, 2025 shows he anticipated litigation. ECF 226 at 4, 8 n.8. It does not. Mr. Gabehart's agent, Mark Carmony, engaged a contract lawyer to help negotiate the mutual separation agreement contemplated by Section 6 of his Employment Agreement-not to prepare for litigation. ECF 226-2 at 56-57 (Gabehart Dep. 194:21-195:18) (retained Mr. Carmony "to help me work through the mutual separation agreement . . . [p]ursuant to 6.2"). Engaging counsel to finalize an amicable separation is the opposite of anticipating a lawsuit.

compete" and that JGR was "accepting his request (in addition to $100k on top of that)." Ex. B, JGR_0000187. Thus, even JGR's own counsel did not foresee litigation at this time.

JGR's own corporate representative confirms that the negotiations remained live well after November 15—and explains why they ultimately stalled. As of December 3, 2025, JGR still "intend[ed] to complete its separation agreement with Mr. Gabehart." Ex. C, Alpern 30(b)(6) Dep. 360:6-9. But the agreement JGR proposed went beyond what Section 6 of the Employment Agreement provided. Section 6 entitled Mr. Gabehart to leave with a one-week non-compete, a $100,000 buyout, and a mutual release; it did not require him to sign a separation agreement at all. *Id.* at 295:22-296:6, 305:9-19 ("Separation agreement, no."). JGR nonetheless conditioned its waiver on "a non-solicitation clause, which I believe was going to be two years, among some other terms." Ex. D, Alpern Dep. 318:16-319:3. That was not contemplated in his Employment Agreement. Mr. Gabehart "pushed back on the separation agreement specifically with regards to the nonsolicitation clause." Alpern 30(b)(6) Dep. 339:8-10. An ordinary disagreement over terms JGR was never entitled to demand is the stuff of negotiation, not a harbinger of litigation.

While Mr. Gabehart's extended negotiations with JGR reflect a dispute that ultimately led to this litigation, this record does not demonstrate that litigation was reasonably foreseeable on November 15, 2025. *See Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 510 (D. Md. 2009) (rejecting argument that duty to preserve arose upon occurrence of actions giving "rise to the dispute that underlies this litigation" when the record showed that the parties "negotiated for quite some time before litigation became reasonably foreseeable").

JGR relies on a single case to support its argument that these events should have put Mr. Gabehart on notice of litigation. ECF 226 at 8. But that case is inapposite. In *Nucor Corporation v. Bell*, the court found that a former employee had a duty to preserve evidence when, among other

things, he (1) intentionally destroyed evidence of misappropriation months after quitting; (2) had told others at the time of the destruction that he feared the plaintiff might sue him; and (3) *admitted* that he destroyed the evidence "because he anticipated litigation." 251 F.R.D. 191, 195 (D.S.C. 2008), *clarified on denial of reconsideration,* No. 2:06-CV-02972, 2008 WL 11464820 (D.S.C. Apr. 24, 2008). The salient facts undergirding the spoliation finding in *Nucor* are not present here.

Lacking any such facts, JGR pivots to unrelated conduct—much of it long after November 15. None of it shows that litigation was foreseeable when the texts were deleted.

First, JGR points to Mr. Gabehart's act of photographing his JGR computer on November 7 to show that he must have anticipated litigation then. Mr. Gabehart has admitted that he took those photographs and that he should not have. Gabehart Dep. 190:1-12. But conduct, even if it is later held to be wrongful, does not trigger the duty to preserve; only reasonably foreseeable litigation does. *See Webb*, 2022 WL 17832160, at *3 (duty was not triggered when party deleted over 100,000 emails even when there was a "generalized concern about possible litigation" at the time). The Court should reject JGR's effort to conflate the merits of its claims with a duty to preserve evidence.

Second, JGR highlights Mr. Gabehart's fall 2025 calls and dinner with Mr. Dickerson, labeling them "secret contact with Spire," and argues that Mr. Gabehart "knew that his discussions with Spire were wrong" because he "knowingly remained bound by restrictive covenants with JGR." ECF 226 at 2-3, 8. But talking with a longtime industry contact—much less receiving an unsolicited offer—is not *competition*, and it breaches no covenant not to compete. Mr. Gabehart had not joined Spire or performed any work for it; he would not do so until February 2026. Nothing about those conversations signaled a lawsuit. Taken to its logical end, JGR's position is that Mr.

Gabehart should have foreseen a lawsuit from any contact with a potential future employer—a proposition no reasonable person would accept.

Moreover, Mr. Gabehart and Mr. Dickerson had a legitimate business reason to be in contact that fall. Earlier in 2025, Mr. Gabehart had negotiated, on JGR's behalf, an employee-trade understanding with Spire to bring Spire's Robert "Cheddar" Smith to JGR, and the two were still discussing JGR's end of that trade. ECF 226-2 at 26 (Gabehart Dep. 102:5-12); Gabehart Dep. 129:5-14, 322:11-15; ECF 45-2 ¶ 27. Mr. Dickerson set up their October dinner "through a text message where [he] was inquiring about the trade," and Mr. Gabehart testified that the texts from that period "would have been about the trade understanding and setting up the dinner." Gabehart Dep. 113:8-10, 175:4-7.

JGR's reliance on Mr. Gabehart's November 18 texts with Mr. Dickerson does not change the analysis. *See* ECF 226 at 5-6. When Mr. Dickerson asked whether Mr. Gabehart had "heard anything on settlement talks," and Mr. Gabehart replied "Lawsuit? No," the two were discussing the 23XI Racing and Front Row Motorsports antitrust litigation against NASCAR—the lawsuit then captivating the entire sport—not any dispute between Mr. Gabehart and JGR. ECF 226-5 at 2. Nothing in the exchange references JGR, Mr. Gabehart's separation, or any threatened claim. And a passing "rumor at JGR" that Mr. Gabehart might join Spire, *id.*, is not a demand letter, a preservation request, or a threat of suit. In any event, these texts post-date the deletion and cannot show what Mr. Gabehart anticipated on November 15.

Third, JGR focuses on Mr. Gabehart's conduct after receiving the December 15 cease-and-desist letter. But what he knew or did ***after*** November 15 cannot show what he reasonably anticipated ***on*** November 15. As the Advisory Committee cautions, it "is important not to be

blinded . . . by hindsight arising from familiarity with an action as it is actually filed." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

Because no duty to preserve ESI had been triggered on November 15, 2025, JGR's Motion should be denied. *E.g.*, *Matthews v. Herc Rentals Inc.*, No. 7:21-CV-89, 2023 WL 8190155, at *3 (E.D.N.C. Nov. 27, 2023) (no spoliation where deletion occurred prior to triggering of preservation duty).

## II. JGR CANNOT SHOW AN INTENT TO DEPRIVE OR PREJUDICE.

Even if a duty had arisen, JGR must prove by clear and convincing evidence that Mr. Gabehart deleted the texts "with the intent to deprive another party of the information's *use in litigation*." Fed. R. Civ. P. 37(e)(2) (emphasis added). "The intent standard is both stringent and specific: the intent contemplated by Rule 37 is not merely the intent to perform an act that destroys ESI but rather the intent to actually deprive another party of evidence." *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 66 (S.D.N.Y. 2020). As a result, "[c]ourts should exercise caution" when considering whether to impose an adverse inference sanction. Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

Mr. Gabehart admits that he intentionally deleted the texts. ECF 226-2 at 47 (Gabehart Dep. 181:2-19). But because he did not anticipate litigation at that time, he could not have deleted them to deprive JGR of evidence *in litigation*. *See Webb*, 2022 WL 17832160, at *3. Absent a duty to preserve, people are free to manage their texts and files as they see fit. *Matthews*, 2023 WL 8190155, at *3.

JGR's reliance on *NuVasive, Inc. v. Kormanis* does it no good. ECF 226 at 13 (citing No. 1:18CV282, 2019 WL 1171486, at *14-15 (M.D.N.C. Mar. 13, 2019)). There, the defendant's shifting and inconsistent explanations for how messages were lost could support, "but d[id] not mandate," a finding that he deleted them intentionally and lied about it. *Id.* at *15. Here, Mr.

Gabehart has never denied the deletion, and his explanation has been consistent: He was uncomfortable receiving Spire's offer while negotiating his separation, and he "panicked."

JGR's remaining intent arguments fare no better. JGR insists that "panic" "only makes sense if there was something to 'panic' about, such as litigation." ECF 226 at 8. But the record supplies the actual reason: The discomfort of receiving a competitor's offer while negotiating an exit from a thirteen-year employer. And JGR's claimed "pattern" of selectivity and timing rests almost entirely on events after December 15, when the preservation letter arrived. ECF 226 at 10-12. Conduct after notice of a duty says nothing about intent a month before any duty existed. JGR cannot bootstrap later events into proof of what Mr. Gabehart intended on November 15.

Nor do JGR's requested inferences—that Mr. Gabehart solicited Spire's offer and shared JGR trade secrets with Mr. Dickerson—have any basis in the record. ECF 226 at 12-13. To the contrary, both Mr. Gabehart and Mr. Dickerson have stated that no JGR confidential information was shared, Mr. Dickerson testified that Spire neither wants nor needs it, and Mr. Gabehart and Spire signed an NDA prohibiting its disclosure or use. Gabehart Dep. 325:5-7, 330:8-331:20; Ex. E, Dickerson Dep. 175:21-24.

The forensic record confirms it. Mr. Gabehart's forensic expert, Kenneth Marchese, analyzed the complete Verizon logs for Mr. Gabehart's account—which record the parties, timestamps, and message type for every call and text from at least April 2025 through March 2026—and filtered them for communications with Mr. Dickerson. Ex. F, Marchese Report, at 13-14. Because Android devices on Verizon's network send any image or file attachment by MMS rather than SMS, the logs show whether any file was ever transmitted. *Id.* The logs "conclusively establish that Mr. Gabehart did not transmit any files or attachments to Mr. Dickerson"; there are "zero MMS messages" from Mr. Gabehart's account to Mr. Dickerson's number during the

relevant period. *Id.* at 14. Nor could a JGR document have been passed by a share link in a text, because no JGR materials are shared externally from Mr. Gabehart's cloud accounts. *Id.* at 14-15. In short, the very texts JGR asks the jury to imagine as conduits for its trade secrets could not have carried a single JGR file.

JGR need not know the exact content of the lost messages, but it must "establish a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the lost material would have produced evidence favorable to his cause." *Finch v. BASF Catalysts LLC*, No. 1:16-CV-1077, 2018 WL 2770140, at *5 (M.D.N.C. June 8, 2018). Where the only concrete evidence—the carrier's own records—affirmatively refutes JGR's theory, speculation cannot meet that burden, much less by clear and convincing evidence.

Moreover, as JGR acknowledges, the "Spire" and "Spire Offer" notes recovered from Mr. Gabehart's phone contain the information in the Spire offer that Mr. Gabehart received in November. *See* ECF 226 at 5. JGR thus has the substance of that offer notwithstanding the deleted text messages, which undercuts any claim that JGR has been deprived of that information.[2] And whatever gap remains, JGR can explore through cross-examination of Mr. Gabehart at trial, a remedy that cures any prejudice without an instruction.

## III. AT A MINIMUM, IT WOULD BE PREMATURE FOR THE COURT TO FRAME ANY ADVERSE INFERENCE NOW.

Even if the Court were inclined to entertain JGR's theory, it should not attempt to frame an adverse inference on the current record. JGR seeks not a discovery remedy but a jury instruction, while reserving "the precise wording . . . to the Court at trial." ECF 226 at 12-13. Rule 37(e)(2)'s

2 That JGR has the information from the deleted texts through Mr. Gabehart's notes supplies another ground to deny the M*otion*. *See Matthews*, 2023 WL 8190155, at *3 (noting that sanctions are not appropriate when movant failed to demonstrate that lost information could not be replaced through other so*urces*); *Finch*, 2018 WL 2770140, at *6 (same).

intent finding and the Advisory Committee's directive that "[t]he remedy should fit the wrong" require the full evidentiary picture—including whether the substance of the lost texts has been replaced through other discovery. Fed. R. Civ. P. 37(e) & advisory committee's note to 2015 amendment. Courts therefore regularly decline to fashion adverse inferences until the record is complete. *See, e.g., Gov't Emps. Health Ass'n v. Actelion Pharms. Ltd.*, 343 F.R.D. 474, 487 (D. Md. 2023); *Kettler Int'l, Inc. v. Starbucks Corp.*, 81 F. Supp. 3d 495, 502 (E.D. Va. 2015).

JGR concedes the record is incomplete and reserves the right to seek sanctions against Spire, ECF 226 at 10 n.10, or "an appropriate motion in limine" following further forensic investigation and discovery, *id.* at 6 n.6. The Court cannot fairly determine what, if anything, a jury should infer about the deleted thread while discovery into that same thread remains ongoing.

Deferral costs JGR nothing. The instruction JGR seeks could not be given until trial in any event, so waiting until then forfeits no remedy. Nor is any instruction needed: JGR remains free to cross-examine Mr. Gabehart at trial about the deletion and his reasons for it, and the jury can weigh that testimony without being told to presume what the texts contained. By contrast, prematurely branding Mr. Gabehart a spoliator would color every remaining proceeding in this case. If the Court does not deny the Motion outright, it should deny it without prejudice to a motion in limine on a complete record.

## CONCLUSION

JGR should not be permitted to substitute inferences from texts deleted before any litigation was anticipated for evidence it has never found. JGR may test Mr. Gabehart's account through cross-examination at trial, and nothing more is needed. The Court should deny the Motion or, alternatively, deny it without prejudice to a motion in limine on a complete record.

This the 14th day of October, 2026.

By: _*/s/ Cary B. Davis*_

Cary B. Davis
N.C. Bar No. 36172
cdavis@rbh.com
Spencer T. Wiles
N.C. Bar No. 53664
swiles@rbh.com
William M. Miller
N.C. Bar No. 36946
wmiller@rbh.com
Anna Claire Tucker
N.C. Bar No. 59457
atucker@rbh.com

ROBINSON, BRADSHAW & HINSON, P.A.
600 S. Tryon Street, Suite 2300
Charlotte, North Carolina 28202
(704) 377-2536

*Attorneys for Defendant Christopher Gabehart*

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below, the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: October 14, 2026

*/s/ Cary B. Davis*
Cary B. Davis