**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | |
|---|---|
| JOE GIBBS RACING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER GABEHART and SPIRE MOTORSPORTS II, LLC,<br><br>Defendants. | Case No. 3:26-cv-00133-SCR-DCK |

**DEFENDANT SPIRE MOTORSPORTS II, LLC'S MEMORANDUM IN OPPOSITION TO JOE GIBBS RACING, LLC'S MOTION FOR SANCTIONS**

Plaintiff Joe Gibbs Racing, LLC ("JGR") is asking this Court to resolve the merits of its trade secrets claims against Defendant Spire Motorsports II, LLC ("Spire") because Defendant Christopher Gabehart ("Gabehart")—***not Spire***—deleted a handful of text messages in late 2025, months before Spire could have reasonably anticipated litigation. Dkt. 224, the "Motion." Specifically, JGR asks the Court to instruct the jury it may infer that Gabehart shared and discussed JGR trade secrets with Spire's CEO, Jeff Dickerson ("Dickerson"), based on Gabehart's deletion of a handful of text messages that were sent ***months before*** his employment with Spire, between October 1, 2025, and November 15, 2025. Dkt. 226, at 11-12. JGR omits that the handful of messages between Gabehart and Dickerson exchanged did not contain any multimedia files of any kind, meaning Gabehart could not have shared any trade secret documents with Dickerson. This was confirmed by Gabehart's wireless carrier: the messages contained no files, images, or videos. JGR nevertheless seeks a broad, adverse inference instruction that Gabehart shared JGR trade secrets with Spire, via its co-owner, in these messages. And JGR omits that there is no other evidence that deleted texts contained or referenced any JGR trade secrets.

Should the Court grant JGR's motion and provide JGR with its requested relief, it would not only effectively resolve the merits of JGR's breach of contract and misappropriation of trade secrets claims as to Gabehart but also its misappropriation of trade secrets claim as to Spire—even though there is ***no*** evidence of any JGR document being disseminated at Spire prior to Gabehart's employment with Spire, which did not begin until ***months*** after the text message exchanges at issue in the Motion. The Court should not allow JGR's bid to prevail on its trade secrets claims via jury instructions that spill over into liability against Spire based on Gabehart's pre-employment conduct. Such a result would counter the purpose of Rule 37(e), which is to sanction ***the party*** that destroys evidence—not also an innocent co-defendant that did not spoliate evidence. The Court should deny the Motion, or, alternatively, tailor any sanctions it may grant against Gabehart in a manner that would avoid prejudice to Spire.

## BACKGROUND

On November 15, 2025, Gabehart deleted a text message thread between himself and Jeff Dickerson, the CEO of Spire, covering a handful of texts exchanged between October 1, 2025, and November 15, 2025. Dkt. 226, at 3. At the time of Gabehart's deletion, no complaint had been filed, no intent to sue had been communicated by JGR to Gabehart—and certainly not to Dickerson or Spire. The deleted message thread at issue contained a handful of messages. In the text messages, Gabehart and Dickerson scheduled an upcoming meeting and discussed other irrelevant, personal matters. Dkt. 223-1 (Gabehart Dep. 178:4-179:24). The messages contained ***only text—no message was a multimedia message that could contain files, photos, or videos***. Ex. A (Exp. Rep. of K. Marchese) at 12-13.

Dickerson also does not have these messages, because, long before this dispute arose, he had enabled a 30-day auto-retention feature on his phone because of the volume of text messages

he receives. Ex. B (Dickerson Dep. 124:10-16). JGR has not accused Dickerson of any wrongdoing in the deletion of the messages. As soon as Dickerson anticipated litigation in February 2026—the day after Spire engaged counsel—he disabled the auto-retention feature. Dkt. 68-2, at 6-7. JGR moves for broad-sweeping sanctions against Gabehart because of Gabehart's deletion—sanctions which threaten to prejudice Spire's ability to defend itself when Spire has not spoliated any evidence whatsoever.

## LEGAL STANDARD

Sanctions for spoliation are appropriate "***only*** upon finding that the party acted with the intent to deprive another party of the information's use." Fed. R. Civ. P. 37(e)(2) (emphasis added). Even then, sanctions are discretionary, and the Court "may" or may not elect to grant them. *Id.* On a Rule 37(e) motion for spoliation sanctions, the movant bears the burden of demonstrating the appropriateness of an adverse inference by clear and convincing evidence. *Pratt v. Robbins*, 2024 WL 234730, at *2 (W.D.N.C. Jan. 22, 2024) (refusing to grant an adverse inference). The Rules allow sanctions ***only against the party that spoliated***. *Id.* at *2 (noting that sanctions should be designed to deter parties from spoliating and to "place the risk of an erroneous judgment on ***the party who wrongfully created the risk.***"); *see also* Fed. R. Civ. P. 37(e) (authorizing sanctions against "the party" that spoliated); *Burris v. Gulf Underwriters Ins. Co.*, 787 F.3d 875, 880 (8th Cir. 2015) (noting that it is improper to impose a sanction on a party that did not spoliate evidence). As such, when adverse inferences are granted in cases with multiple defendants, courts tailor the inference to avoid impermissible spillover effects for co-defendants that did not spoliate evidence. *See, e.g., Estate of Hill v. NaphCare, Inc.*, 2022 WL 1464830, at *15 (E.D. Wa. May 9, 2022) ("The question is whether an adverse jury instruction is sufficient to

remedy the prejudice to Plaintiffs ***without penalizing the non-spoliating defendants***." (emphasis added)).

## <u>ARGUMENT</u>

### I. JGR Requests No Spoliation Sanctions Directly Against Spire.

JGR has not accused Spire of spoliating any evidence because Spire has not. Accordingly, JGR's Motion is made only against Gabehart. Mot. at 1. Rule 37(e) authorizes sanctions ***only*** against "the party" that spoliated the evidence. Fed. R. Civ. P. 37(e). Accordingly, courts routinely impose sanctions only against parties who actually caused the loss of evidence. *See also Burris*, 787 F.3d at 880 (8th Cir. 2015) ("[I]t defies the purpose of the sanction to impose it on a party that played no part in the alleged spoliation of evidence."); *RG Abrams Ins. v. Law Offices of C.R. Abrams*, 342 F.R.D. 461, 490 (C.D. Cal. 2022) ("The undersigned agrees with Defendants that it cannot impose any sanction—let alone the harsh terminating, issue, or evidentiary sanctions requested here—against a defendant that has not violated a court order or spoliated evidence."). Indeed, anything else would run counter to the purpose of spoliation sanctions, which are "prophylactic, punitive, and remedial" in nature. *Pratt,* 2024 WL 234730, at *2 (citations omitted) Because JGR has not, and cannot, credibly accuse Spire of spoliating any evidence, no spoliation sanctions are warranted as to Spire.

### II. JGR's Requested Inference Would Severely Prejudice Spire, a Non-Spoliating Party.

JGR requests, among other things, that the Court instruct the jury it may infer that Gabehart shared trade secrets with Spire. Dkt. 226 at 11-12 (requesting a permissive inference that "Gabehart shared and discussed JGR confidential information and trade secrets with Dickerson"). Setting aside whether spoliation sanctions against Gabehart are appropriate under these facts, JGR's requested sanction would have the jury to simply infer—without any evidence—that Spire

acquired an unspecified subset of JGR's alleged trade secrets. But there is ***no evidence*** to support such an inference, and, even if there were, such an inference is improper particularly ***as to Spire***, which JGR has not so much as accused of spoliation.

Indeed, sanctions for spoliation are only proper against the spoliating party. Fed. R. Civ. P 37(e) (authorizing sanctions only against "the party" that spoliates). Even when adverse inferences are appropriate against a spoliating party, courts take care to avoid prejudicial spillover effects on any non-spoliating parties. *See, e.g.*, *Coan v. Dunne*, 602 B.R. 429, 442 (D. Conn. B.R. 2019) (denying a request for an adverse inference against a spoliating party where it would effectively direct judgment in favor of plaintiff against non-spoliating co-defendants).

For instance, in *Coan*, the defendant had closed four different email accounts in the year after suit being filed against him for fraud. *Id.* at 433. Subsequently, after the defendant failed to produce the emails in those accounts during litigation, the bankruptcy trustee moved for spoliation sanctions. *Id.* at 437. The trustee sought an adverse inference that the defendant had concealed certain property from creditors. *Id.* at 440. Despite the defendant's conduct, the court outright refused to grant an adverse inference, noting that the inference sought would effectively grant a directed judgment on the issue not only against the spoliating defendant but also against non-spoliating co-defendants. *Id.* at 442. In doing so, the Court found that such an adverse inference would be improper because it "would exact a crushing penalty on the co-defendants . . . for discovery misconduct that has not been attributed to any of the co-defendants." *Id.*

Similarly, here, JGR's requested relief would not only punish but would also prejudice Spire's ability to defend itself against its trade secret claims which are hotly contested and may present factual questions for the jury's resolution. Indeed, JGR asks this Court to instruct the jury that they may simply assume as fact that Gabehart shared trade secrets with Spire, *see* Dkt. 226 at

11-12, even though there is no such evidence in the voluminous forensic discovery that has been conducted across Gabehart's phones, computers, electronic accounts. Such a sanction is improper under Rule 37. Just like the inference sought in *Coan*, the inference sought by JGR would effectively grant a directed judgment against not only Gabehart, but also as to Spire. Worse, Spire would suffer that prejudice in a case where the parties have engaged in exhaustive discovery, such that any loss due to alleged spoliation is far outweighed by the evidence that has been produced. *See, e.g., Steve & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 110 (E.D. Va. 2018) (finding no prejudice to the plaintiff in a trade secret case where "most or all communications" had been given in discovery). On that basis alone, the Motion should be denied.

Putting aside that Spire cannot be punished for alleged spoliation it had nothing to do with, JGR's Motion should also be denied because the adverse inference sought is not properly tailored to the narrow scope of alleged spoliation at issue. Fed. R. Civ. P. 37(e) (requiring that an adverse inference apply only to "the information" that was lost); *see also Pratt*, 2024 WL 234730, at *2 ("A district court has broad discretion to choose the appropriate sanction for a party's spoliation, but should use that discretion to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine.") (citations omitted). JGR alleges the deletion of a handful of SMS text messages between October 1, 2025, and November 15, 2025. *Supra*, Background. The text messages from Gabehart to Dickerson were just that—***text*** messages. Ex. A (Exp. Rep. of K. Marchese) at 12-13. For this reason, they could not have contained JGR's alleged "trade secrets."

It is apparent that JGR is seeking to impose by jury instruction what it cannot prove with evidence—as Spire did not receive or misappropriate JGR's alleged trade secrets in these deleted messages. Because the prejudice such a sanction would pose to Spire, an innocent co-Defendant, is so great, the Court should deny the Motion.

## III. The Prejudice to Spire Cannot be Remedied by a Limiting Instruction.

In the face of the obvious undue prejudice its requested relief poses to Spire, JGR may argue that the Court could cure such prejudice with a limiting instruction under Fed. R. Evid. 105. Such an argument lacks merit. JGR's requested adverse inference would fundamentally prejudice Spire in a manner that no limiting instruction could remedy.

For example, even if jurors are instructed by the Court that the broad inference JGR seeks applies only to Gabehart and not Spire, it will do nothing to cure the prejudice to Spire given that the trade secret claims against each Defendant are currently set to be tried in a single proceeding. *See, e.g.*, *Estate of Hill v. NaphCare, Inc.*, 2022 WL 1464830, at *16 (E.D. Wa. May 9, 2022) ("[I]t is unreasonable to expect that jurors can comply with instructions that create such an analytical conundrum."). In fact, courts have acknowledged the potential insufficiency of limiting instructions when adverse inferences are granted in cases involving multiple defendants. *See, e.g.*, *Zhi Chen v. District of Columbia*, 839 F. Supp. 2d 7, 16 (D.D.C. 2011) ("A limiting instruction may or may not be sufficient to prevent the other defendants from being prejudiced by the adverse inference instruction . . . ."). Adverse inferences have been denied where limiting instructions are insufficient to prevent prejudice to an innocent co-party.[1] *Estate of Hill*, 2022 WL 1464830, at *16 (refusing to grant an adverse inference where a limiting instruction would be insufficient to prevent prejudice to the non-spoliating co-party.").

In *Estate of Hill*, a pre-trial detainee died while in the custody of a county jail. *Id.* at *2-3. The death occurred after allegedly insufficient care by a nurse who was helping to treat inmates at

[1] Illustrating the extreme prejudice that an instruction of the kind JGR seeks can cause to non-spoliating co-parties, the court in *Zhi Chen* held that the prejudice to a non-spoliating co-defendant may only be cured by severing the trial and forcing the plaintiff to pursue each defendant separately. 839 F. Supp. 2d at 16. Spire reserves the right to seek such relief here.

the jail. *Id.* Subsequently, the estate brought suit against the jail, the nurse, and the nursing company. *Id.* at *3. The plaintiff moved for spoliation sanctions based on 6 hours and 45 minutes of surveillance video that had not been preserved on the jail's systems. *Id*. at *5. The court noted that any adverse inference against the county would equate to an adverse inference against the nurse as well. *Id.* at *16. Subsequently, the court declined to grant the adverse inference, noting that permitting the jury to assume facts that could establish the nurse's negligence without applying those facts to the nurse would create an unreasonable "analytical conundrum." *Id.*

As is the case here, where JGR is seeking an adverse inference that could establish an element of its trade secret claim against Spire by permitting the jury to assume that JGR's trade secrets were shared with Spire through its CEO. A limiting instruction would do nothing but present the same kind of analytical conundrum present in *Estate of Hill*. The jury would be permitted to assume a fact that establishes an element of JGR's claim against Spire but would be instructed not to apply that fact to Spire. The broad adverse inference JGR seeks cannot be cured by a limiting instruction; thus, a limiting instruction is not a viable alternative here.

## IV. Any Relief Provided to JGR Due to Spoliation by Gabehart Should be Narrowly Tailored to Avoid Prejudice to Spire.

To the extent any sanction is ordered, the sanction should be narrowly tailored to avoid undue prejudice to Spire. In similar circumstances, courts have given adverse inference instructions that simply permit the jury to infer that the spoliating evidence would have been unfavorable to the ***spoliating*** party. *See, e.g., Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155 (4th Cir. 1995) (affirming an instruction permitting the jury to infer that destroyed evidence "would have been unfavorable to the [spoliating party's] theory in the case."); *Nucor*, 251 F.R.D. 191, 204 (D.S.C. 2008) (granting a generic inference that the evidence "would have been unfavorable to [the spoliating parties]."); *Zhi Chen v. District of Columbia*, 839 F. Supp. 2d 7,

16 (D.D.C. 2011) (granting a generic inference that a piece of evidence "would have been unfavorable to the defendant[,]" with no other inference about what the evidence actually contained). Indeed, these holdings are consistent with the plain language of Rule 37, which provides that the court, only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation, may instruct the jury that ***it may or must presume the information was unfavorable to the party***." Fed. R. Civ. P. 37(e)(2)(B) (emphasis added). Notably, JGR itself recognizes that there are other inferences that would remedy Gabehart's spoliation without summarily revoking Spire's ability to defend itself. Dkt. 226 at 11-12 (suggesting inference that Gabehart approached Spire, which JGR claims contradicts Gabehart's deposition testimony).

## V. JGR's Request is Premature and the Court Should Reserve Ruling.

Trial is still more than three months away. The parties have still yet to brief summary judgment motions or *Daubert* issues. Yet, JGR urges the Court to grant spoliation sanctions on a record that has not fully developed. Without a complete record on which to decide what adverse inference—if any at all—is warranted, the Court should refuse to decide the issue until additional facts have developed. *See, e.g., Kettler Intern., Inc. v. Starbucks Corp.*, 81 F. Supp. 3d 495, 502 ("At this time, the Court finds that it does not have enough information before it to determine the appropriate sanction."). JGR provides no reason for urgency in ruling on the adverse inference it seeks. Indeed, that is because there is none. Any adverse inference will not be used until trial. The parties at that time will have the opportunity to discuss jury instructions with the Court, only then with the benefit of a more complete record. Because that record is still actively developing, the Court should decline to rule on any adverse inference instructions until trial, at which time the Court will have sufficient information to do so.

## CONCLUSION

For all these reasons, Spire respectfully requests that the Court deny JGR's motion for sanctions, or, alternatively, narrowly tailor any adverse inference in a manner that is not prejudicial to Spire.

This 14th day of October 2026.


By: */s/ Joshua D. Davey*
Joshua D. Davey (N.C. Bar No. 35246)
Jason D. Evans (N.C. Bar No. 27808)
Lawrence J. Cameron (N.C. Bar No. 41922)
Troy C. Homesley, III (N.C. Bar No. 62148)
Anais M. Jaccard (N.C. Bar No. 58438)
Ben E. Whorf (N.C. Bar No. 64279)
**TROUTMAN PEPPER LOCKE LLP**
301 S. College St., 34th Floor
Charlotte, NC 28202
Telephone: (704) 916-1503
joshua.davey@troutman.com
lawrence.cameron@troutman.com
troy.homesley@troutman.com
anais.jaccard@troutman.com
ben.whorf@troutman.com

John S. "Evan" Gibbs III – Pro Hac Vice
**TROUTMAN PEPPER LOCKE LLP**
600 Peachtree St, NE #3000
Atlanta, GA 30308
Telephone: (404) 885-3093
evan.gibbs@troutman.com