**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Case No. 3:26-CV-00133-SCR-DCK**

JOE GIBBS RACING, LLC,

Plaintiff,

v.

CHRISTOPHER GABEHART and SPIRE MOTORSPORTS II, LLC,

Defendants.

**PLAINTIFF JOE GIBBS RACING, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE ITS ANSWERS TO DEFENDANTS' COUNTERCLAIMS OUT OF TIME**

Plaintiff Joe Gibbs Racing, LLC ("JGR"), by and through counsel and pursuant to Rule 6(b)(1)(B) and Local Civil Rule 7.1(e), respectfully submits this Reply in Support of its Motion for Leave to File its Answers to Defendants' Counterclaims Out of Time [Doc. No. 250] and in response to the oppositions (the "Oppositions") filed by Defendant Christopher Gabehart ("Gabehart") [Doc. No. 289] and Defendant Spire Motorsports II, LLC ("Spire") [Doc. No. 290] (collectively, "Defendants").

## INTRODUCTION

The Oppositions confirm why leave should be granted. Neither Gabehart nor Spire disputes that a single, inadvertent calendaring oversight caused JGR to miss the September 9, 2026 deadline to answer their counterclaims, that JGR filed its completed Answers the same day Defendants sought default and before any default was entered, or that the fifteen-day delay disturbed no deadline and disrupted no proceeding. Ex. A, T. Summey Decl. ¶¶ 4, 13. On this record, three of the four factors under *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993), are effectively undisputed, and the Fourth Circuit's "strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits" controls. *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010).

Unable to contest the governing factors, each Defendant resorts to a different theory. Gabehart rests his Opposition on a single false premise—that JGR intentionally chose not to answer the counterclaims while prioritizing "discretionary" motions practice. Doc. No. 289 at 6. There is no evidence of that, and it defies common sense: a litigant gains nothing by withholding an answer and risks only default. Spire, for its part, largely sidesteps the *Pioneer* factors. It argues instead that its counterclaim is so strong that having to litigate it is itself "prejudice," and it recasts

ordinary, contested discovery disputes as a "theater of delay and gamesmanship." Doc. No. 290 at 7. Neither theory withstands scrutiny.

The Summey Declaration establishes that the missed deadline resulted from counsel's calendaring oversight—not a strategic decision—for which counsel accepts responsibility. **Ex. A**, T. Summey Decl. ¶ 4. It further shows that both Defendants' counsel remained silent about the Answers—while personally meeting and conferring with undersigned counsel on other matters—until the day they sought default. *Id.* ¶¶ 6–8, 11. That silence undercuts any claim of prejudice and any effort to portray a promptly corrected oversight as gamesmanship. Had either Defendant simply asked about the status of the Answers, JGR would have remedied the oversight without the motion practice that followed. *Id.* ¶ 12. The Court should grant JGR leave to file both Answers out of time.

## ARGUMENT

### I. The Excusable-Neglect Standard Permits Relief, and Both Defendants Misstate Its Rigor.[1]

Defendants describe an exacting standard that does not exist. Gabehart frames the inquiry as though JGR must show "extraordinary" circumstances or a "dramatic ambiguity" before neglect may be excused. Doc. No. 289 at 3–4. Spire asserts that "the failure to docket an answer deadline does not amount to excusable neglect." Doc. No. 290 at 4. Neither is the law. Rule 6(b)'s "excusable neglect" standard "is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer*, 507 U.S. at 392

[1] Should the Court deny JGR's Motion and enter default, JGR intends to immediately file a Motion to Set Aside Default. The standard for a motion to set aside default is the more liberal "good cause" standard under which "a district court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." *Colleton*, 616 F.3d at 417 (quoting *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204–05 (4th Cir. 2006)).

(citation omitted). Congress, the Court explained, "plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness." *Id.* at 388. The determination "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," including prejudice, the length and impact of the delay, the reason for the delay, and good faith. *Id.* at 395.

The reason for the delay is the most important factor. *Symbionics Inc. v. Ortlieb*, 432 F. App'x 216, 219 (4th Cir. 2011) (per curiam). But because the inquiry is equitable, "even if a party does not show an acceptable reason for missing a deadline, a court may find excusable neglect when the record lacks 'any evidence of prejudice to [the opposing party] or to judicial administration in th[e] case, or any indication at all of bad faith.'" *Chambers v. Brown*, No. 1:24CV562, 2025 WL 654139, at *5 (M.D.N.C. Feb. 28, 2025) (quoting *Pioneer*, 507 U.S. at 398).

Applying that standard, courts in this Circuit routinely accept late answers—including answers to counterclaims—where counsel's calendaring or docketing oversight caused the delay. *See, e.g.*, *Kasparov, Pte Ltd. v. Zacherl*, No. 5:22-CV-503-D, 2024 WL 3039647, at *1–2 (E.D.N.C. June 17, 2024) (denying entry of default on a counterclaim and granting leave to answer where the missed deadline resulted from "an internal process failure" at counsel's firm); *Chambers*, 2025 WL 654139, at *3–5 (granting Rule 6(b)(1)(B) leave to file answer two months late absent "evidence of prejudice" or "bad faith"); *Peche v. Keller*, No. 1:11CV362, 2012 WL 2128095, at *5–8 (M.D.N.C. June 12, 2012) (granting leave to answer where motion for leave was filed 35 days after the deadline, notwithstanding "a close question" as to the reason for delay); *Alvarez-Soto v. B. Frank Joy, LLC*, 258 F. Supp. 3d 615, 622 (D. Md. 2017) (finding excusable neglect where late filing resulted from a "calendaring error"); *see also In re Am. Nurses Ass'n*, 643 F. App'x 310, 313 (4th Cir. 2016) (per curiam) (affirming Rule 6(b)(1)(B) extension where filing

was up to 100 days late due in part to "confusion regarding when [the] motion was due"). The same result is warranted here.

Additionally, Defendants entirely ignore a critical part of the *Pioneer* standard: namely, that a court "should find excusable neglect ***only in the extraordinary cases where injustice would otherwise result.***" *Thompson*, 76 F.3d at 534 (emphasis added) (internal quotation marks and citation omitted). This is just such a case. Should default be entered, Defendants will argue that success on their "counterclaims" establishes an automatic and unavoidable defense to JGR's affirmative claims. Indeed, Gabehart's remaining counterclaims are largely a repackaging of his defenses to JGR's claims, including an entirely duplicative claim for declaratory judgment asking for his non-competition agreement to be declared invalid. Doc. No. 100 at 45–46. Defendants have long known that JGR vigorously disputes their defenses to its claims. Allowing Defendants to utilize a default to claim victory on JGR's affirmative claims would result in grave prejudice to JGR.

## II. The Reason for the Delay Was an Inadvertent Calendaring Oversight, Not a "Strategic Choice."

The calendaring oversight here is exactly the kind of inadvertent mistake *Pioneer* recognizes courts may excuse. Because the Court ruled on JGR's motions to dismiss by text-only order rather than by a separate written order, JGR's counsel did not submit the ruling for calendaring, and the resulting Rule 12(a)(4)(A) deadline never entered the firm's docketing system. Ex. A, T. Summey Decl. ¶¶ 3–4. That is not the bare "concession of palpable oversight" the Fourth Circuit has said generally falls short of excusable neglect. *Thompson*, 76 F.3d at 534 (internal quotation marks omitted). The Summey Declaration identifies the specific process failure that caused the missed deadline—a deadline triggered by an unusual docket entry that was never

routed for calendaring—and the attorney responsible for it. Ex. A, T. Summey Decl. ¶¶ 2, 4. JGR cured the oversight the same day it came to light. *Id.* ¶¶ 4, 12.

Defendants' attempts to recast that oversight fail. Spire suggests that the size of JGR's legal team changes the analysis, Doc. No. 290 at 3–4, but the excusable-neglect inquiry turns on *why* the deadline was missed, not on how many lawyers have appeared. Both Defendants point to the "considerable" briefing and deadlines during this period as though JGR's workload were the excuse. Doc. No. 289 at 2–3, 6; Doc. No. 290 at 4. JGR offers no such excuse. The volume of activity during this period—the close of fact discovery on August 31, more than ninety documents filed on this docket, and preparation for the October 1 hearing—explains the circumstances in which a single oversight occurred. Ex. A, T. Summey Decl. ¶ 5. It is context, not the reason.

Gabehart alone presses the theory that JGR deliberately "direct[ed] [its] resources elsewhere" instead of answering. Doc. No. 289 at 6. But he offers no support for it, and it collapses on its own logic. The six filings he catalogs show a party vigorously prosecuting its claims and protecting its most sensitive trade secrets—not one that had decided to abandon its defense of his counterclaims. Doc. No. 289 at 2. JGR had every incentive to answer: its positions on the issues raised by the counterclaims had already been briefed at length in its motions for a temporary restraining order, for a preliminary injunction, and to dismiss, and leaving the counterclaims unanswered could only expose JGR to the very default Gabehart now seeks. A party pursuing a strategy of non-response does not file a completed answer the same day the omission comes to light. Ex. A, T. Summey Decl. ¶ 12. The decisions declining to excuse docketing oversights turn on counsel's *awareness* of a problem coupled with a strategic choice to ignore it—not on inadvertence. *See Fernandes v. Craine*, 538 F. App'x 274, 276–77 (4th Cir. 2013) (per curiam) (vacating denial of Rule 6(b)(1)(B) relief where nothing in the record suggested counsel made a

"strategic choice" to remain "willfully blind" to the docket) (citation omitted). JGR's inadvertent, promptly cured oversight falls on the excusable side of that line. Ex. A, T. Summey Decl. ¶¶ 4, 13.

### III. Defendants' Efforts to Distinguish JGR's Authorities Fail.

Gabehart's efforts to distinguish JGR's cases prove JGR's point. *Kasparov* supports relief: as here, the plaintiff failed to answer a surviving counterclaim after the court partially denied its motion to dismiss, yet the court denied default and granted leave because the omission was "inadvertent," counsel "quickly moved to reconcile the mistake," and the counterclaimant was "not prejudiced." *Kasparov*, 2024 WL 3039647, at *1. The case for relief is even stronger here, because—unlike the *Kasparov* plaintiff, who had "some history of dilatory action"—Gabehart identifies no history of dilatory conduct by JGR, pointing only to JGR's active prosecution of its own claims. *Id. Chambers* likewise supports relief: it presumed good faith because there was "no evidence that the delay in filing was to gain a tactical advantage," and Gabehart identifies none. *Chambers*, 2025 WL 654139, at *5 (internal quotation marks and citation omitted). And far from supporting Gabehart's position, *Turner* favors granting relief here: the court granted leave ***even though*** the movant "fail[ed] to present a reason for the omission," because the defendant had "undeniably revealed an intent to defend." *Turner v. Supreme Ct. of Va.*, No. 4:18CV123, 2019 WL 13297449, at *4 (E.D. Va. Feb. 20, 2019). Here, JGR both explained its delay and has repeatedly defended against Gabehart's counterclaims and his nearly identical defenses throughout this case.

Defendants' reliance on the outcome in *Symbionics* is likewise misplaced. Doc. No. 289 at 4; Doc. No. 290 at 3–5. JGR's motion relies on *Symbionics* for the governing standard, Doc. No. 250 ¶ 10, but the facts in *Symbionics* are far removed from this case. *Symbionics* involved the failure to timely file a notice of appeal after entry of judgment following a bench trial. *Symbionics*,

432 F. App'x at 218. Reopening a matter fully adjudicated at trial bears no resemblance to filing an answer to counterclaims in a case that is being actively litigated and set for trial in February 2027.

**IV. Neither Defendant Can Show Cognizable Prejudice.**

"[D]elay in and of itself does not constitute prejudice to the opposing party." *Colleton*, 616 F.3d at 418. The prejudice that matters is impairment of the opposing party's ability to litigate—for example, a "missing witness . . . whose testimony was made unavailable by the delay" or "records made unavailable by the delay." *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 952–53 (4th Cir. 1987). Neither Defendant identifies anything of the kind. Fact discovery closed on August 31, 2026—before JGR's Answer was even due on September 9—so a timely Answer would itself have followed the close of discovery. Doc. No. 250 ¶ 12; Doc. No. 290 at 3, 7. The fifteen-day delay deprived neither Defendant of a single deposition, document request, interrogatory, or other discovery opportunity, and neither sought to extend the fact-discovery deadline.

The record also forecloses any prejudice because both Defendants stayed silent regarding the deadline. After the deadline passed, undersigned counsel met and conferred with both Defendants' counsel—including at an in-person meeting at Parker Poe's Charlotte office—yet neither mentioned the Answers, asserted prejudice, or signaled an intent to seek default. Ex. A, T. Summey Decl. ¶¶ 6–8, 11. Most surprising, on September 22, 2026, undersigned counsel spoke by telephone with Cary B. Davis, counsel for Gabehart, to discuss JGR's pending Motion to Compel against Gabehart. *Id.* ¶ 8. During that call, Mr. Davis stressed the importance of counsel meeting and conferring about issues in the case, and he stated his belief that JGR had not adequately conferred with him before filing its Motion to Compel. *Id.* Undersigned counsel told Mr. Davis that he understood his position and that he was attempting to find areas of compromise. *Id.* Those efforts were ultimately successful: Gabehart agreed to supplement certain discovery, and

JGR did not proceed on its Motion to Compel against Gabehart. *Id.* During that same September 22, 2026 call, Mr. Davis did not confer about the application for entry of default that he would file just two days later, did not ask about the status of JGR's Answer to Gabehart's counterclaims, and did not claim that Gabehart was suffering any prejudice as a result of the delayed Answer. *Id.* ¶ 9. That omission was very surprising to undersigned counsel. *Id.* ¶ 10. If Gabehart's counsel had inquired about the status of JGR's Answer, undersigned counsel would have promptly remedied the issue without the need for Gabehart to file a motion with the Court. *Id.* ¶ 12.

As the *Kasparov* court observed, opposing counsel "could have mitigated any prejudice with a short communication to [the movant's] counsel after the deadline passed." *Kasparov,* 2024 WL 3039647, at *1 (citing N.C. State Bar Ethics Op. RPC 212 (1995)); *see also Mystic Retreat Med Spa & Weight Loss Ctr. v. Ascentium Cap. LLC*, No. 1:21-cv-00515, 2021 WL 4993088, at *4 n.2 (M.D.N.C. Oct. 27, 2021) ("[P]rofessional courtesy might suggest that a telephone call, rather than a default motion, would have been the preferred course here.").

Indeed, Gabehart does not even attempt to claim prejudice, because there was none. His real aim is to leverage a default on his counterclaims into the argument that he is automatically victorious on JGR's affirmative claims. Gabehart's remaining counterclaims are largely a repackaging of his defenses to JGR's claims, including an entirely duplicative declaratory-judgment claim seeking to have his non-competition agreement declared invalid. Doc. No. 100 at 45–46. Allowing him to use a default to declare himself the victor on claims JGR vigorously contests would work exactly the kind of "injustice" that marks the "extraordinary cases" in which relief is warranted. *Thompson*, 76 F.3d at 534.

Spire's theory—that the alleged strength of its counterclaim is itself prejudice—is one the Fourth Circuit has squarely rejected: "no cognizable prejudice inheres in requiring a plaintiff to

prove a defendant's liability, a burden every plaintiff assumes in every civil action filed in every federal court." *Colleton*, 616 F.3d at 419. Losing the chance at "a quick victory" is not prejudice either. *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988).

Spire's premise is also wrong on its own terms. It contends that JGR's 30(b)(6) witness "admitted liability" by agreeing that JGR would pay Spire $100,000 to release Robert Smith, Doc. No. 290 at 4–5, but that is not the claim Spire pleaded or what a default would establish: Spire alleged an agreement under which, in exchange for releasing Smith, JGR would, within a reasonable time, either release a JGR employee selected by Spire or pay Spire $100,000. Doc. No. 99 at 50. Whether Spire can prove that pleaded claim is a merits question, not a basis to deny leave. That Spire cites deposition testimony about its counterclaim only underscores that it has lost no ability to litigate it.

Finally, Spire complains that it had to review and respond to JGR's other filings. Doc. No. 290 at 5. But that is not cognizable prejudice, because Spire would have incurred those costs regardless of when JGR answered. *See United States v. Stover*, No. 3:20-cv-00579-RJC-DCK, 2021 WL 3745034, at *2 (W.D.N.C. Aug. 24, 2021) (expending "resources in drafting a single motion and opposition" does not "rise to the level of prejudic[e]").

## V. The Fifteen-Day Delay Was Brief, and JGR Cured It Immediately.

JGR filed its Answers fifteen days after the deadline. The delay disturbed no deadline in the Court's scheduling order, required no change to the Court's calendar, and did not otherwise disrupt the progress of the case. Courts routinely find delays of this length—and much longer—to be minimal. *See McKesson Med.-Surgical, Inc. v. Flower Orthopedics Corp.*, No. 3:17cv631, 2018 WL 944375, at *8 (E.D. Va. Feb. 16, 2018) (27 days); *Terry*, 2017 WL 4236923, at *4 (seven

days); *Peche*, 2012 WL 2128095, at *6 (35 days); *In re Am. Nurses Ass'n*, 643 F. App'x at 313 (up to 100 days).

Spire faults JGR for acting only after it applied for default. Doc. No. 290 at 5–6. But the relevant inquiry is whether the movant acted promptly once the omission was discovered, and JGR could not have acted faster. On September 24, 2026—the same day Defendants applied for default—JGR filed its completed Answers, filed its Motion, and sought Defendants' consent, all before any default was entered. Ex. A, T. Summey Decl. ¶¶ 13–14. Courts have granted relief on materially weaker records. *See Kasparov*, 2024 WL 3039647, at *1 (motion for leave filed three days after default motion).

**VI. JGR Acted in Good Faith, and Spire's Discovery Grievances Are Irrelevant.**

The good-faith factor is "rarely material" because "the absence of good faith is seldom at issue," *Symbionics*, 432 F. App'x at 219, and it is not genuinely at issue here. Neither Defendant identifies any strategic advantage JGR obtained by failing to answer, because there was none—the oversight exposed JGR only to the risk of default. As soon as JGR discovered the oversight, it filed its completed Answers the same day, apologized to opposing counsel, and asked whether Defendants would consent to a motion for leave; both said they would consider the request but never responded before filing their Oppositions. Ex. A, T. Summey Decl. ¶¶ 13–15. Gabehart's contrary suggestion rests entirely on the fact that JGR continued to litigate its own claims during a period when it did not know the deadline had passed. That is not evidence of bad faith.

Spire's accusation of bad faith rests on collateral discovery grievances that are both irrelevant and meritless. The good-faith inquiry asks whether the movant acted in good faith with respect to the missed deadline, *Chambers*, 2025 WL 654139, at *5, and Spire's disputes are unrelated to the missed answer deadline. They are also wrong.

Spire first claims JGR "failed to timely serve its expert reports," Doc. No. 290 at 6, but JGR served its reports before Spire served its own: JGR served redacted reports by email at 11:35 p.m. on the September 25 deadline, having already produced unredacted versions to the Court-approved clean room, while Spire did not serve its reports until approximately 11:57 p.m. **Ex. B**, C. Lee Decl. ¶¶ 3–9. Spire's remaining complaints—about the July 1 trade-secret production, use of the Court-approved clean room, rescheduled depositions, and the timing of forensic examinations—identify no missed deadline and are unsupported by any evidence. Doc. No. 290 at 6–7. And Spire's objection that JGR served supplemental interrogatory responses after August 31 ignores that JGR did so in direct response to Spire's own repeated demands—and its Motion to Compel—that JGR further supplement its identification of trade secrets. Doc. No. 290 at 7; Doc. No. 168 at 5; Doc. No. 215 at 9.

Spire's reliance on *Perez* only highlights the weakness of its position. Unlike the repeated neglect by counsel in *Perez*, the record here reflects a single missed pleading deadline that JGR promptly corrected. Indeed, the *Perez* court noted that "[h]ad counsel's error been isolated, our decision might be different, but it was not." *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1253 (10th Cir. 2017) (citations omitted).

**CONCLUSION**

For these reasons, and those stated in its Motion, JGR respectfully requests that the Court grant JGR leave to file its Answers to Gabehart's and Spire's Counterclaims out of time and deem each Answer filed on September 24, 2026, timely.

Respectfully submitted this the 15th day of October, 2026.

**PARKER POE ADAMS & BERNSTEIN LLP**

/s/ *Tory Ian Summey*
Tory Ian Summey
N.C. Bar No. 46437
Sarah F. Hutchins
N.C. Bar No. 38172
Keith M. Weddington
N.C. Bar No. 14352
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Chad F. Lee
N.C. Bar No. 56350
Kevin A. Marshall
N.C. Bar No. 50856
Christopher B. Henry
N.C. Bar No. 55955
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com
chadlee@parkerpoe.com
kevinmarshall@parkerpoe.com
chrishenry@parkerpoe.com

**KING & SPALDING LLC**
Danielle T. Williams
dwilliams@kslaw.com
N.C. Bar No. 23283
300 South Tryon Street, Suite 1700
Charlotte, NC 28202
Thomas M. Melsheimer – *Pro Hac Vice*
tmelsheimer@kslaw.com
Chad B. Walker – *Pro Hac Vice*
cwalker@kslaw.com
Tracea Rice – *Pro Hac Vice*
trice@kslaw.com

Alexandra Moore – *Pro Hac Vice*
almoore@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201

*Attorneys for Joe Gibbs Racing, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this date the foregoing **PLAINTIFF JOE GIBBS RACING, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE ITS ANSWERS TO DEFENDANTS' COUNTERCLAIMS OUT OF TIME** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notice and serve same upon counsel of record via the Court's electronic case filing system.

This the 15th day of October, 2026.

**PARKER POE ADAMS & BERNSTEIN LLP**

/s/ Tory Ian Summey
Tory Ian Summey
N.C. Bar No. 46437
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
torysummey@parkerpoe.com
*Attorney for Joe Gibbs Racing, LLC*