# Show Cause Presentation

# Joe Gibbs Racing, LLC v. Christopher Gabehart and Spire Motorsports, LLC

Joe Gibbs Racing, LLC's Show Cause Motion

# Roadmap

1. Elements of Contempt
2. Gabehart violated the Orders by providing Cup Series competition services to Spire
3. Spire aided and abetted Gabehart's violation.
4. Defendants violated the Orders by retaining JGR confidential information and trade secrets
5. JGR has been harmed
6. Defendants have not taken all reasonable steps to comply
7. Remedies available to the Court

# Elements of Contempt

"(1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's favor; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that the movant suffered harm as a result."

*dmarcian, Inc. v. dmarcian Europe BV*, 60 F.4th 119, 145 (4th Cir. 2023)

"Once the movant establishes these elements, the burden shifts to the defendant to show good faith [in making] all reasonable efforts to comply with the enforcement order."

*CFPB v. Klop*, 957 F.3d 454, 461–62 (4th Cir. 2020).

"[A] single violation of an order is sufficient to support a finding of contempt."

*Klop*, 957 F.3d at 459 (cleaned up).

# Gabehart Violated the Orders by Providing Cup Series Competition Services to Spire

# Gabehart Violated the Orders

1. Scope of Orders and Gabehart's knowledge
2. Gabehart provided Cup Series competition services to JGR
3. Gabehart provided Cup Series competition services to Spire

# Gabehart Has Been Enjoined Since March 2, 2026

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:26-CV-00133-SCR-DCK

JOE GIBBS RACING, LLC, | TEMPORARY RESTRAINING ORDER

**IT IS THEREFORE ORDERED** that:

(i) Defendant Gabehart shall immediately cease and desist from retaining, transferring, using or copying any of JGR's Confidential Information and Trade Secrets;

(iv) Defendant Gabehart shall be restrained from violating Section 6 of his Employment Agreement, which prohibits providing services of the general type of services that Defendant Gabehart provided to JGR in the year prior to his termination. For the sake of clarity, the Court is not requiring Gabehart to resign from his position at Spire or prohibiting him from working for Spire. Other services not performed at JGR in the year prior to his termination are permissible.

Case 3:26-cv-00133-SCR-DCK Document 26 Filed 03/05/26 Page 1 of 12

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:26-CV-00133-SCR-DCK

JOE GIBBS RACING, LLC,
Plaintiff,
v.

**IT IS THEREFORE ORDERED** that during the pendency of this action:

(i) Defendant Gabehart shall immediately cease and desist from retaining, transferring, using or copying any of JGR's Confidential Information and trade secrets;

(iv) Defendant Gabehart shall be restrained from violating Section 6 of his Employment Agreement, which prohibits providing services of the general type of services that Defendant Gabehart provided to JGR in the year prior to his termination. For the sake of clarity, the Court is not requiring Gabehart to resign from his position at Spire or prohibiting him from working for Spire. Other services not performed at JGR in the year prior to his termination are permissible. This Order does not prohibit Gabehart from attending the NASCAR Cup Series and the NASCAR O'Reilly Auto Parts Series or prevent him from performing other services at those races not implicated by Section 6 of his Employment Agreement.

Dkt. 26 (TRO) at 11, 12; Dkt. 78 (PI) at 34-35

6

# Spire's Reading of the Order and the Noncompete Is Wrong

Defendant Gabehart shall be restrained from violating Section 6 of his Employment Agreement, which prohibits **providing services of the general type of services** that Defendant Gabehart provided to JGR in the year prior to his termination. For the sake of clarity, the Court is **not requiring Gabehart to resign from his position** at Spire or prohibiting him from working for Spire. Other **services** not performed at JGR in the year prior to his termination are **permissible**. . . .

- The Orders prohibit **services** not the holding of a position.

Dkt. 26 (TRO) at 11, 12; Dkt. 78 (PI) at 34-35

# The Court Has Already Recognized that *RCR v. McCall* Is Distinguishable

- *RCR Enters., LLC v. McCall*, 2014 WL 7591977, at *4 (N.C. Super. Dec. 19, 2014) actually refutes Spire's reading of the Orders.
  - Contract prohibited employment in "any **capacity** identical or similar to which he was employed by [Plaintiff.]"
- The Court recognized that the logic of *RCR v. McCall* does not apply here during the preliminary injunction hearing.

> "**I do think we have a little bit of a different factual scenario**. . . . **A race engineer to a crew chief didn't violate his noncompete. That's what that case said.** And so those are two different things. . . . [B]oth of you-all sort of acknowledged in so many words that . . . . some of the duties overlapped. . . . **[T]hat's why I did the TRO because it's already in the contract. Like we can't perform the same services** if that is enforceable."
>
> **Dkt. 66 (PI Hr'g Tr.) at 92:6–17**

# Gabehart Understood the Scope of the Noncompete Before TRO



**"As of last week, I became employed by Spire Motorsports as Chief Motorsports Officer. In this role, I do not provide services of the general type of services that I provided to JGR during the 2025 season."**

Dkt. 12 (Gabehart Decl. (Feb. 25, 2026)) ¶ 46

**Chris Gabehart**

# Gabehart Provided Cup Series Competition Services to JGR

# Gabehart Provided Cup Series Competition Services to JGR

3. As the Competition Director, Gabehart's responsibilities included preparation and execution of JGR's car and race strategies, and overseeing development and improvement of analytics, processes, and procedures to improve race performance in the NASCAR Cup Series and the NASCAR O'Reilly Auto Parties Series. (Doc. No. 9-2 ¶¶ 4 & 6; Doc. No. 35-3 ¶¶ 2, 4–68).

4. In addition to his role as Competition Director, Gabehart also served as crew chief for the No. 54 car for a portion of the 2025 racing season. (Doc. No. 12 ¶ 9).

87. JGR also has made a clear showing that the covenant not to compete is reasonable as to its terms, time, and territory. Gabehart held a high-level position at JGR and worked there since 2012. Given the length of his career and the position he held, he had deep knowledge of JGR's business operations and confidential information. Further, the scope of the covenant does not completely bar an employee from working in the industry. Rather, it restricts the employee from performing services provided to the employer in the year prior to such termination.

Dkt. 78 (PI)

## Gabehart Provided Cup Series Competition Services to JGR

JGR
JOE GIBBS RACING



- Provided input on car setups and aerodynamics to crew chiefs.
- Participated in competition and production meetings focused on the "logistics of car assembly."
- Participated in post-practice, qualifying, and race debriefs and analyzed performance.

Dkt. 218-10 (Gabehart Dep. Tr.) at 43:4-19; 50:13-51:21; 56:18-56:122 68:6-13

**Chris Gabehart**

12

# Evidence of Contemptuous Conduct

***Feb. 27-Mar. 1, 2026***
Gabehart provides input on setups for COTA race

***Mar. 2, 2026***
Court grants TRO

***Mar. 5, 2026***
Gabehart uses CG Master to analyze Cup Series performance; Court issues written TRO

***Apr. 20, 2026***
Gabehart provides input on logistics of car assembly and quality control at **Kansas meeting**

***Apr. 26, 2026***
Court issues preliminary injunction

***May 18, 2026***
Gabehart participates in post-**Dover** debrief with drivers and provides competition services

***Late May–Early June, 2026***
Spire finally prohibits Gabehart from attending Cup Series meetings

***Sep. 23, 2026***
Spire places Gabehart on administrative leave

| January | February | March | April | May | June | July | August | September | October |
|---|---|---|---|---|---|---|---|---|---|

2026

# Evidence of Breach of Noncompete Prior to the Court's Orders

# Gabehart: Nothing Has Changed Since I Started at Spire



**Q: And you understand that your noncompete is about Cup Series, don't you?**
**A: Yes.**
**Q: So what I'm saying is, have you changed your role in competition over time at Spire with respect to what you do with respect to competition? Have you scaled it back?**

**. . .**

**A: No.**
**Q: So there was never any directive from anybody at Spire that you needed to change what you're doing at [with respect to] competition in any way?**
**A: There has been no change in my job. There has been caution so we're not purported to be breaking any kind of noncompete, because we're not.**

Dkt. 218-10 (Gabehart Dep. Tr.) at 280:14-281:6

**Chris Gabehart**

15

# Gabehart Disclosed JGR's Approach to Tire Pressure Setup



**I asked Gabehart one time about qualifying pressures and asked him the direction, if they were higher or lower than where we were.**

. . .

**And comparing Spire's air pressures to Joe Gibbs Racing's air pressures?**

**The way I framed it was, hey, we were wondering if we need to be higher or lower in qualifying, and I asked telling him what our pressures were.**

**Which race was this?**

**Probably COTA. It was a road course early on.**

**And how did he respond?**

[redacted]

Dkt. 218-20 (Peterson Dep. Tr.) at 166:3-20

**Travis Peterson**

16

# Gabehart Disclosed JGR's Spring Settings




**And what discussions did you all have about springs that Spire was using versus what JGR had used?**

**Pretty much the same concept: Hey, we are here, we wondered if we need to [redacted]**

**We being JGR, we [redacted]?**

**Yes.**

**Did he give you any indication as to [redacted]?**

**He may have given me a range. I just remember it being softer.**

**And when you say "a range". what do you mean?**

**. . . I think I would have probably been like, hey, we run around [redacted]; were you guys [redacted] and I think he said [redacted] range or something like that.**

Dkt. 218-20 (Peterson Dep. Tr.) at 165:25–166:21; 167:3–168:25

**Travis Peterson**

# Evidence of Violation of the Orders

# Gabehart Used the ‘CG Master’ Document to Analyze Spire Cup Series Performance

**February:** Gabehart used the CG Master, and the JGR trade secrets contained therein, on his Spire laptop to analyze Spire’s performance at the Daytona 500.


7

2025

2026

2026 Proj.

Goals

[redacted]

| Race # | Race location | Track type | |
|---|---|---|---|
| 1 | Daytona | Super Speedway | |
| 2 | Atlanta | Super Speedway | |
| 3 | COTA | Road Course | |
| 4 | Phoenix | Short Track | |
| 5 | Las Vegas | Intermediate | |
| 6 | Darlington | Mid Track | |
| 7 | Martinsville | Short Track | |
| 8 | Bristol | Short Track | |
| 9 | Kansas | Intermediate | |
| 10 | Talladega | Super Speedway | |
| 11 | Texas | Intermediate | |
| 12 | Watkins Glen | Road Course | |
| 13 | Charlotte | Intermediate | |
| 14 | Nashville | Mid Track | |
| 15 | Michigan | Intermediate | |
| 16 | Pocono | Intermediate | |
| 17 | San Diego | Road Course | |
| 18 | Sonoma | Road Course | |
| 19 | Chicagoland | Intermediate | |
| 20 | Atlanta | Super Speedway | |
| 21 | North Wilkesboro | Short Track | |
| 22 | Indianapolis | Intermediate | |
| 23 | Iowa | Short Track | |
| 24 | Richmond | Short Track | |
| 25 | Loudon | Short Track | |
| 26 | Daytona | Super Speedway | |
| 27 | Darlington | Mid Track | |
| 28 | Gateway | Mid Track | |
| 29 | Bristol | Short Track | |
| 30 | Kansas | Intermediate | |
| 31 | Las Vegas | Intermediate | |
| 32 | Charlotte | Intermediate | |
| 33 | Phoenix | Short Track | 0.0 |
| 34 | Talladega | Super Speedway | 0.0 |
| 35 | Martinsville | Short Track | 0.0 |
| 36 | Homestead | Intermediate | 0.0 |

Related Dates

Last Modified 2/15/2026 8:49 PM

Created

Last Printed

Related People

Author Add an author

Last Modified By CG Chris Gabehart

Dkt. 218-16, Mot. Ex. M (Spire_0000849)

# Gabehart Used the 'CG Master' Document to Analyze Cup Series Performance After the Court Granted the TRO

**March 5:** Gabehart used the CG Master document on his personal computer, after deleting it from his Spire laptop, to analyze Spire's performance at the second and third races of the year

| 7 | [redacted] |
|---|---|
| 2025 | |
| 2026 | |
| 2026 Proj. | |
| Goals | |

| Race # | Race location | Track type | [redacted] |
|---|---|---|---|
| 1 | Daytona | Super Speedway | |
| 2 | Atlanta | Super Speedway | |
| 3 | COTA | Road Course | |
| 4 | Phoenix | Short Track | |
| 5 | Las Vegas | Intermediate | |
| 6 | Darlington | Mid Track | |
| 7 | Martinsville | Short Track | |
| 8 | Bristol | Short Track | |
| 9 | Kansas | Intermediate | |
| 10 | Talladega | Super Speedway | |
| 11 | Texas | Intermediate | |
| 12 | Watkins Glen | Road Course | |
| 13 | Charlotte | Intermediate | |
| 14 | Nashville | Mid Track | |
| 15 | Michigan | Intermediate | |
| 16 | Pocono | Intermediate | |
| 17 | San Diego | Road Course | |
| 18 | Sonoma | Road Course | |
| 19 | Chicagoland | Intermediate | |
| 20 | Atlanta | Super Speedway | |
| 21 | North Wilkesboro | Short Track | |
| 22 | Indianapolis | Intermediate | |
| 23 | Iowa | Short Track | |
| 24 | Richmond | Short Track | |
| 25 | Loudon | Short Track | |
| 26 | Daytona | Super Speedway | |
| 27 | Darlington | Mid Track | |
| 28 | Gateway | Mid Track | |
| 29 | Bristol | Short Track | |
| 30 | Kansas | Intermediate | |
| 31 | Las Vegas | Intermediate | |
| 32 | Charlotte | Intermediate | |
| 33 | Phoenix | Short Track | |
| 34 | Talladega | Super Speedway | |
| 35 | Martinsville | Short Track | |
| 36 | Homestead | Intermediate | |

**Related Dates**

| | |
|---|---|
| Last Modified | 3/5/2026 7:50 AM |
| Created | |
| Last Printed | |

**Related People**

| | |
|---|---|
| Manager | Specify the manager |
| Author | Add an author |
| Last Modified By | CG Chris Gabehart |

Dkt. 218-19, Mot. Ex. P (GABEHART01500).

# Gabehart Attended Numerous Cup Series Competition Meetings



Crew Chief Luke Lambert testified that, as of August 27, **Gabehart had attended as many as twelve Cup Series Competition meetings.**

**Dkt. 218-17, Mot. Ex. X (Lambert Dep. Tr.), at 252:16–253:4.**

**Luke Lambert**
Spire Crew Chief

Dickerson, testifying as Spire's corporate representative, confirmed that **Gabehart was permitted to attend these meetings until "late May or early June,"** months after the Orders were issued

**Dkt. 218-11, Mot. Ex. H (Spire 30(b)(6) Dep. (Dickerson) Tr.), at 56:22–57:11.**

**Jeff Dickerson**



21

# Gabehart Provided Input on the Logistics of Car Assembly and Quality Control in April 2026


[redacted]

Gabehart

- [redacted]

Q. Well, it's about the assembly process for Cup Series cars; correct?

A. It is.



**Dax Gerringer**
Technical Director

Dkt. 218-17, Mot. Ex. N (Gerringer Dep. Ex. 4)at Spire_0001712; (Dkt.218-18 at 155:12-14)

# These Comments Map Directly Onto the Focus Plan



JGR's corporate representative testified that the Focus Plan is essentially a road map to succeeding as a race team.

**Dkt. 236-6 (JGR 30(b)(6) Dep. Tr.), at 121:22–155:14.**

**David Alpern**
President of Joe Gibbs Racing

## Post-Kansas Meeting Notes




## Spire Focus Plan




Dkt. 218-8, Mot. Ex. E (Spire_0000851)

# Spire Admits It Implemented These Procedures After Meeting




- Did not [redacted] until "midsummer" 2026
- Did not [redacted] until late May 2026.

**Dkt. 218-26, Mot. Ex. W (Powers Dep. Tr.), at 178:6–16; 159:2–161:22.**

**Doug Powers**
Spire Shop Foreman

# After Dover Race Gabehart Debriefs with Drivers and Makes Competition-Related Suggestions After Being Enjoined



5/18/26
Dover Meeting

## Post-Race Meeting

- Carson
- Michael
- Daniel

Chris

- Very interested in your ride quality comments - that's very foreign to me with this car
- Is there a common bucket we could put in backup car

1. A month later, after the PI was entered, Gabehart attended and actively participated in a competition meeting with Spire's Cup Series drivers.
2. Spire Crew Chief Ryan Sparks confirmed that (1) Gabehart's "ride quality" comments were likely directed ***at the drivers***, and (2) Gabehart's "bucket seat" comments was a suggestion to "streamline" Spire's backup-car process. Dkt. 218-24, Mot. Ex. U (Sparks Dep. Tr.), at 255:20–256:24; 257:3–20.
3. Both relate directly to Cup Series Competition.

Dkt. 218-17, Mot. Ex. N (Gerringer Dep. Ex. 4)at Spire_0001712

# Gabehart Was Aware of What the Orders Prohibited



**Carson Hocevar**

**"We're a struggle. Although got a good Q lap"**

**"In our meeting right now, let me call you after"**



**Chris Gabehart**





**Carson Hocevar**

**"Load transfer is my issue. Struggling to get initial brake. So I feel like I can't use enough brake. Messing up my loading. Feel like it loads too far on LF on break and transfers too much when I get off brake and roll it to RR and then I don't have any rear grip at 1/3 mark of corner and then just stays RR on exit."**



**Chris Gabehart**

**"Stop"**

Dkt. 218-22, Mot. Ex. S (HOCEVAR_0051)

# Gabehart Provided Cup Series Competition Services to JGR

JGR
JOE GIBBS RACING



- Provided input on car setups and aerodynamics to crew chiefs.
- Participated in competition and production meetings focused on the "logistics of car assembly."
- Participated in post-practice, qualifying, and race debriefs and analyzed performance.

COTA Setup input

Kansas meeting comments

Use of CG Master

Dover Debrief

Dkt. 218-10 (Gabehart Dep. Tr.) at 43:4-19; 50:13-51:21; 56:18-56:122 68:6-13

**Chris Gabehart**

27

## Defendants' Counterarguments Do Not Excuse Violation of Court Orders

- Defendants do not dispute Gabehart attended the April 20 and May 18 meetings or made the comments attributed to him in the notes.
- Generalized testimony from Spire witnesses about Gabehart changes nothing.
- It does not matter whether Gabehart's input was "obvious." It matters whether it was the input of a general type that he provided to JGR.

# Spire Aided and Abetted Gabehart's Violation

29

# Spire Can Be Held in Civil Contempt If It Aided and Abetted Gabehart's Violation

A non-enjoined party with notice of an injunction may be held in contempt for violating it if the nonparty "acted in active concern or participation" with the enjoined party.

**FED. R. CIV. P. 65(d)(2)(C)**

"Active concert or participation" is established when the non-enjoined party "aided and abetted that defendant in the enjoined conduct."

***Nat'l League of Junior Cotillions, Inc. v. Porter,* No. 3:06-CV-508-RJC, 2008 WL 11516421 at *4 (W.D.N.C. May 28, 2008) *(citing Microsystems Software, Inc. v. Scandinavia Online AB,* 226 F.3d 35, 43 (1st Cir. 2000)).**

# Spire Invited Gabehart to Attend Cup Series Competition Meetings



Crew Chief Luke Lambert testified that, as of August 27, **Gabehart had attended as many as twelve Cup Series Competition meetings.**

**Dkt. 218-17, Mot. Ex. X (Lambert Dep. Tr.), at 252:16–253:4.**

**Luke Lambert**
Spire Crew Chief

Dickerson, testifying as Spire's corporate representative, confirmed that **Gabehart was permitted to attend these meetings until "late May or early June,"** months after the Orders were issued

**Dkt. 218-11, Mot. Ex. H (Spire 30(b)(6) Dep. (Dickerson) Tr.), at 56:22–57:11.**

**Jeff Dickerson**



# Spire Did Not Investigate The Scope of the Non-Compete



Jeff Dickerson
Spire CEO

Q: Did you ask to see his noncompete in December?

A: Never. I never saw his contract until it was filed as part of this lawsuit.

Q: You didn't ask to see it either?

A: I did not ask to see it.

. . .

Q: And I'm just asking if you did anything else to ask him about what he did, either as competition director or as crew chief, during that past year before hiring him.

A: It didn't -- the only times that we were trying to figure out like the general types of services is after the PI ruling.

July 29, 2026 Deposition Testimony 21:16-21; Dkt. 218-11, Mot. Ex. H (Spire 30(b)(6) Dep. (Dickerson) Tr.), at 20:9-15

# Spire Did Not Restrict Employees' Interactions with Gabehart



**Dax Gerringer**
Technical Director

Q: But you do know that when he's coming to the Cup Series meeting and making comments about specific aspects of the racecar, no one in there is saying, Stop, Chris, you can't say that. Right?

A: Yeah. No one's stopping him from speaking

Q: He's able to freely contribute in those meetings?

A: Yeah, I suppose so.

. . .

Q: If someone said, Christopher Gabehart has never provided any input at these competition meetings, that would be a false statement; correct?

A: He has made comments in these meetings, obviously, because I took notes on it

Q: If someone were to say, "Mr. Gabehart is not in any Cup-related meetings, absolutely," would that be a false statement?

A: I guess so because he has been in a few of the meetings.

Dkt. 218-18 (Gerringer Dep.) at 157:4-10; 171:1-15

# Spire Did Not Restrict Employees' Interactions with Gabehart



Doug Powers
Shop Foreman

Q: There are no consequences for speaking with Mr. Gabehart about Cup Series competition?

A: Not -- not to my knowledge, no.

Dkt. 218-26 (Powers Dep.) at 222:12-14

# Spire Did Not Restrict Employees' Interactions with Gabehart



**Ryan Sparks**
Crew Chief

Q: At any point have you been instructed not to communicate with Chris Gabehart about competition -- competition-related issues?
A: I don't think so.
Q: Is there anything preventing you from communicating with Chris Gabehart about competition-related issues?
A: No.



**Travis Peterson**
Crew Chief

Q: At any time since Mr. Gabehart became employed by Spire, were you advised to be sure that Mr. Gabehart does not have any input into competitive calls concerning Spire's Cup Series racing?
A: No, I don't believe so.

Dkt. 218-24 (Sparks Dep.) at 210:4-12; Dkt. 218-20 (Peterson Dep.) at 227:21-228:2

# Spire Contradictory Statements




Dickerson's testimony that Gabehart is "not in any Cup-related meetings."

Dkt. 218-13, Mot. Ex. J, Dickerson Dep. Tr., at 196:15–18

"I know he's been in some, yes."

- Dkt. 218-11, Mot. Ex. H (Spire 30(b)(6) Dep. (Dickerson) Tr.), at 59:7–10







Gabehart's only "meaningful statement" at any Cup Series competition meeting was to introduce himself after Atlanta.

-Dkt. 134-1 (McCall Decl.) ¶ 8

Gabehart's input on pit-stop analysis at the same meeting.

- Dkt. 218-33, Mot Ex. AD (Spire_001487), at 20:17-22:00

Post race notes reflecting substantive statements in meetings

- Dkt. 218-17, Mot. Ex. N (Gerringer Dep. Ex. 4)



# The Evidence Is Clear and Convincing that Spire Aided and Abetted Gabehart's Violation

- Spire invited Gabehart to Cup Series competition meetings for months after the TRO was entered.

- Spire made no effort to determine the scope of permitted services until after the PI was entered.

- Spire crew chiefs testified they were never instructed to refrain from discussing Cup Series competition matters with Gabehart.

# Defendants Violated the TRO and PI by Retaining JGR Confidential Information

# Forensics

**1** **THE TIMELINE**
What happened, and when JGR learned of it

**2** **WHAT THEY SAID**
The assurances Gabehart and Spire gave the Court about JGR's information

**3** **WHAT THE RECORD SHOWS**
Their assurances were false, and the record proves it

# Gabehart's Personal OneDrive Account

**Gabehart maintained a personal OneDrive that was not disclosed prior to the litigation. The OneDrive contains:**

## OneNotes (Gabehart's notes about JGR and Attachments)

### Competition Meetings

Gabehart's running notes from JGR competition meetings, including strategies for future events and track-specific test plans. Also notes from crew chief, simulation and production meetings.

### Setups

Setup comparisons, including 2024 Martinsville, which the Court has already categorized as trade secrets. Found on "Scratch Pad.one" and disclosed following the forensic protocol, but that is not a pass on concealing it and not alerting JGR to it previously.

### Post-Race Analyses

Gabehart's detailed analysis of the performance and strategy for the JGR No. 11 Car after every race.

### Personnel Notes

Gabehart's analysis of the No. 11 team's personnel, including hours worked and compensation.

## CG Master

Gabehart spreadsheet the Court said appears "very similar" to JGR's race analytics spreadsheet. Race-by-race data (average start, stage finish, points, fastest laps) built on JGR's proprietary diagnostic categories and metrics, then plugged into Spire's cars.

# OCT. TO NOV. 2025: SCREEN PHOTOS, THEN A SPIRE OFFER

**Gabehart and counsel**

**Oct. 29, 2025**
First recorded use of Gabehart's personal OneDrive (tied to Gabehart's Gmail), seen in the JGR laptop's browser history.

Gabehart never disclosed it before suit
*Walton Rep. ¶ 26 & nn.15–16*

**Nov. 7, 2025**
Gabehart takes information and photographs the JGR-issued laptop's screen at least 20 times
*Am. Compl. ¶¶ 91–94, ECF No. 8, at 18–19; Pl.'s Mem. 10, ECF No. 10*

**Nov. 10, 2025**
Returns the JGR-issued laptop
*Walton Rep. ¶ 15*

**Nov. 13, 2025**
Gabehart's personal laptop in use
*Forensic Analysis Protocol § 2(b)(i), ECF No. 116-1, at 2*

**Spire**

**Nov. 13, 2025**
Spire makes Gabehart an offer
*Gabehart Decl. ¶ 17, ECF No. 12*

JGR / protocol | Court | Gabehart | Spire | ★ First record date JGR learned of it

# DEC. TO FEB. 2026: GABEHART CHOOSES WHAT GETS REVIEWED




42


FEB. 2026: CG MASTER LANDS, ONEDRIVE SYNC'D, JGR SUES
Forensics: Prelitigation & Court Ordered
★ Feb. 2026
JGR's expert flags an "unknown" OneDrive tied to Gabehart's Gmail
Walton Decl. ¶ 17, ECF No. 9-4
Feb. 19, 2026
Complaint filed
ECF No. 1
Feb. 24, 2026
Amended Complaint filed
ECF No. 8
Gabehart and counsel
Feb. 18, 2026
A download of Gabehart's Google Drive lands CG Master, JGR's trade secret file, on the Spire-issued laptop
Clarke Rep. ¶¶ 4(e), 25, ECF No. 266-2, at 4–6
Feb. 23, 2026
Gabehart's personal OneDrive syncs to the Spire-issued laptop, the day before JGR's expert flags it
Clarke Rep. ¶ 25, ECF No. 266-2, at 6; Walton Reply Decl. ¶ 14, ECF No. 284-4, at 7–8
Spire
Feb. 16, 2026
Gabehart signs Spire's confidentiality agreement
Gabehart Dep. 330:4–24 & Ex. 36 (July 21, 2026); ECF No. 12-9, at 2
Feb. 17, 2026
Spire issues Gabehart a laptop and system access
Bridges Decl. ¶ 4, ECF No. 19
JGR / protocol
Court
Gabehart
Spire
First record date JGR learned of it
43

# FEB. TO MAR. 2026: THE TRO ISSUES, THEN CG MASTER IS FOUND



# MAR. TO APR. 2026: THE COURT ORDERS A FORENSIC REVIEW

**Forensics: Prelitigation & Court Ordered**

**Mar. 18, 2026**
Court orders forensic review of devices and accounts used for JGR materials
*Order ¶ 7, ECF No. 48, at 4*

**Mar. 26, 2026**
PI hearing
*Hr'g Tr. (Mar. 26, 2026)*

**Apr. 22, 2026**
Second forensic protocol signed by the parties. File lists soon followed.
*Forensic Analysis Protocol, ECF No. 116-1; Countercl. ¶¶ 59, 85, ECF No. 100*

**Gabehart and counsel**

**Mar. 14 to Mar. 25, 2026**
In March 2026, Gabehart images all devices, personal laptop included
*Hr'g Tr. 41:5–13 (Mar. 16, 2026); ECF No. 52, at 13; Hr'g Tr. 25:1–6 (May 5, 2026)*

**Spire**

**Mar. 18, 2026**
Spire revokes Gabehart's system access
*Spire Resp. to Interrog. No. 9(a)*

**Mar. 26, 2026**
"We don't have JGR information"
*Hr'g Tr. 65:12 (Mar. 26, 2026)*

JGR / protocol | Court | Gabehart | Spire | ★ First record date JGR learned of it

# JUNE TO JULY 2026: ONE DRIVE DISCOVERIES

**Forensics: Prelitigation & Court Ordered**

**★ July 2 to Aug. 14, 2026**
Gabehart produces contents of identified forensic materials from his Gmail, OneDrive, Google Drive, personal laptop, and Google Photos.
*ECF No. 261-18, at 2–3; ECF No. 261-19, at 16*

**Gabehart and counsel**

**June 2026**
Gabehart's counsel finds JGR files on Gabehart's OneDrive and locks the account, without telling JGR
*Gabehart Show Cause Opp'n, ECF No. 259, at 22, 24*

**July 21, 2026**
Gabehart testifies he moved files he thought might be relevant to his work computer
*Gabehart Dep. 297:17–19 (July 21, 2026)*

**Spire**

**★ June 29, 2026**
Spire discloses its 3/13 find of CG Master, JGR's trade secret file
*Spire Resp. to Interrog. No. 13*

JGR / protocol | Court | Gabehart | Spire | ★ First record date JGR learned of it


AUG. TO SEPT. 2026: ONE DRIVE DISCOVERIES CONTINUE
Forensics: Prelitigation & Court Ordered
Sept. 3, 2026
Gabehart provides a chart of each of the forensic file locations
Sept. 8, 2026 Email, ECF No. 261-19, at 13
Sept. 8, 2026
JGR lists 68 more files on assets Gabehart never presented (46 OneDrive, 9 laptop, 13 S25): setups, car specs, race philosophies, evaluation formulas
Walton Rep. ¶ 53 & n.49
Gabehart and counsel
★ Sept. 4, 2026
Gabehart's counsel tells JGR for the first time that Gabehart's OneDrive access was revoked
Sept. 4, 2026 Email, ECF No. 261-19, at 15–16
★ Sept. 7, 2026
Gabehart's counsel tells JGR Gabehart's Google access is restricted.
Walton Rep. ¶ 57(c)
Spire
Aug. 31, 2026
Spire answers that Spire_0000849, the 2026 CG Master, is a user file on Gabehart's laptop that was never disseminated within Spire. It is preloaded with JGR formulas and laid out with Spire car numbers.
Spire Resp. to 2d Req. for Admis. Nos. 22, 25 (Aug. 31, 2026)
Sept. 25, 2026
Spire's own expert: CG Master, JGR's trade secret file, landed on the Spire-issued laptop 2/18
Clarke Rep. ¶ 4(e), ECF No. 266-2, at 4
By Sept. 29, 2026
Spire puts Gabehart on "administrative leave"
ECF No. 264, at 19
JGR / protocol
Court
Gabehart
Spire
First record date JGR learned of it
47

## 1 WHERE IS JGR'S INFO? ACCORDING TO GABEHART, ONLY ON GABEHART'S PHONE AND GOOGLE DRIVE

**THE PROBLEM: Gabehart concealed three devices or accounts that held JGR files.**

| WHAT DEFENDANTS SAID | WHAT THE RECORD SHOWS |
|---|---|
| **GABEHART \| 1/8/26 Gabehart, sworn declaration** **1A**<br>**"the only confidential information I have in my possession or control relating to Joe Gibbs Racing, LLC ('JGR') is either on my personal cell phone or in my personal Google Drive account."**<br>*Gabehart Protocol Decl. ¶ 3 (Jan. 8, 2026), ECF No. 12-4, at 5* | Personal OneDrive, personal laptop and S25 phone all held JGR files. None was ever disclosed.<br>*Walton Rep. ¶¶ 11, 55 & n.49; Forensic Analysis Protocol § 2(b)(i), (vii), ECF No. 116-1, at 2–3* |
| **GABEHART \| 3/16/26 Counsel for Gabehart, hearing** **1B**<br>**"[H]e made a representation and said here's where it was -- here's where JGR stuff will be located. . . . Here are the places where JGR information is. He gave those devices."**<br>*Hr'g Tr. 47:18–25 (Mar. 16, 2026)* | Reliance took Gabehart's word. It never saw Gabehart's OneDrive, personal laptop or S25.<br>*Walton Rep. ¶ 50* |
| **GABEHART \| 3/26/26 Counsel for Gabehart, PI hearing** **1C**<br>**"the minute he got a letter he voluntarily submitted to a forensic review his phone, passwords to his Google drive and said, have at it."**<br>*Hr'g Tr. 79:13–15 (Mar. 26, 2026)* | The minute Gabehart got the letter, he deleted the notes on his phone.<br>JGR's 9/8/26 list of JGR files found: 46 on the OneDrive, 9 on the personal laptop, 13 on the S25 phone.<br>*Walton Rep. ¶¶ 53, 56, 74 & n.49* |

# 2 Gabehart Claims He Only Has Personal Records

**THE PROBLEM: The "personal" Spire folder held JGR information Gabehart admits keeping.**

| WHAT DEFENDANTS SAID | WHAT THE RECORD SHOWS |
| --- | --- |
| **GABEHART \| 12/17/25 Counsel for Gabehart, letter** **2A**<br><br>**"Mr. Gabehart's understanding is that any personal folder label was used to store his own notes and personal records."**<br><br>*Letter from Gabehart's Counsel to JGR's Counsel (Dec. 17, 2025), ECF No. 35-12, at 18–19* | Walton: dozens of JGR files in the Spire folder show last access after Gabehart's last day at JGR.<br><br>*Walton Rep. ¶¶ 35–36* |
| **GABEHART \| 2/25/26 Gabehart, declaration** **2B**<br><br>**"I created a folder in my Google Drive named 'Spire' that I used as my personal working space to evaluate the job offer and consider my options"**<br><br>*Gabehart Decl. ¶ 19, ECF No. 12, at 6* | Gabehart testified he did not use the JGR simulation setup compare to evaluate the Spire offer. He called a subfolder of the Spire folder "a place to put things relevant to anything Cup-related."<br><br>*Gabehart Dep. 259:10–15, 260:14–16 (July 21, 2026)* |
| **GABEHART \| 3/26/26 Counsel for Gabehart, PI hearing** **2C**<br><br>**"as part of the off-boarding, all of the confidential information, the crown jewels . . . all of those were given back. He doesn't have those anymore"**<br><br>*Hr'g Tr. 79:19–22 (Mar. 26, 2026)* | Gabehart admits to having "placed, stored, or retained documents that contained certain JGR information" in the Spire folder.<br><br>9/17/26: Gabehart's counsel agrees A&M must re-image Gabehart's OneDrive, Drive, S25 and laptop and lock Gabehart out of them.<br><br>*Gabehart Resp. to Req. for Admis. Nos. 3–4; Email from Gabehart's Counsel to JGR's Counsel (Sept. 17, 2026), ECF No. 261-19, at 6–7* |

# 3 "Everything that was identified is now gone"

**THE PROBLEM: Gabehart: Only flagged phone and Google Drive files were deleted; OneDrive kept JGR files.**

| WHAT DEFENDANTS SAID | WHAT THE RECORD SHOWS |
|---|---|
| **GABEHART \| 3/11/26 Gabehart, second declaration — 3A**<br>**"I did not receive access to Spire IT systems or a Spire-issued laptop until February 17, 2026, after the forensic deletions were completed. I therefore had no JGR materials to bring to or use at Spire when my access began."**<br>*Gabehart 2d Decl. ¶ 25, ECF No. 37* | The day after Gabehart got the Spire-issued laptop, a download of Gabehart's Google Drive puts CG Master on it.<br><br>2/23/26: Gabehart's OneDrive syncs to the Spire laptop. Spire's examiner also reports CG Focus Plan.pptx, Focus Plan.pdf and 2026 CG Master.xlsx.<br>*Clarke Rep. ¶ 25, ECF No. 266-2, at 5–6; Walton Reply Decl. ¶ 14, ECF No. 284-4, at 7–8; Spire Resp. to Interrog. No. 9(a), at 20 (June 29, 2026)* |
| **GABEHART \| 3/11/26 Gabehart PI opposition — 3B**<br>**"Mr. Gabehart no longer possesses JGR's Confidential Information, and using his generally acquired knowledge and skillset within his work at Spire does not constitute misappropriation of JGR's trade secrets."**<br>*Gabehart PI Opp'n 21, ECF No. 42* | A CG Master version was last modified by Gabehart 3/5, after the 3/2 TRO ruling.<br>*Pl.'s Show Cause Mem. 8, ECF No. 219-1* |
| **GABEHART \| 7/10/26 Gabehart brief — 3C**<br>**"JGR recovered its alleged trade secrets before filing this lawsuit; the forensic review ensured that any files Mr. Gabehart possessed were identified and deleted."**<br>*Gabehart Opp'n 12, ECF No. 102* | Pre-suit, only 20 photos and 235 phone and Drive files were deleted. At least 46 OneDrive, 9 laptop and 13 S25 files stayed.<br><br>9/17/26: A&M is re-imaging Gabehart's OneDrive, Drive, S25 and laptop because they went back to Gabehart after the March images.<br>*Walton Rep. ¶¶ 48, 53, 54, 56 & n.49; Email from Gabehart's Counsel to JGR's Counsel (Sept. 17, 2026), ECF No. 261-19, at 6–7; Forensic Analysis Protocol § 5(i), ECF No. 116-1, at 12* |

# 4 Spire Repeatedly Claims "We don't have JGR information"

**THE PROBLEM: Spire found CG Master 13 days before denying it; Gabehart's OneDrive was syncing there.**

| WHAT DEFENDANTS SAID | WHAT THE RECORD SHOWS |
|---|---|
| **SPIRE \| 2/27/26 Counsel for Spire, TRO hearing — 4A**<br>**"there is no risk of this competitive information that the plaintiff is talking about being used by Spire to gain some kind of unfair advantage -- because we don't have it and we don't want it"**<br>*Hr'g Tr. 54:6–10 (Feb. 27, 2026)* | 2/18/26, nine days before this statement: a download of Gabehart's Google Drive puts "2026 CG Master" on the Spire-issued laptop.<br>*Clarke Rep. ¶¶ 4(e), 25, ECF No. 266-2, at 4–6*<br>2/23/26, five days later: Gabehart's personal OneDrive syncs to the Spire-issued laptop.<br>*Clarke Rep. ¶ 25, ECF No. 266-2, at 6; Walton Reply Decl. ¶ 14, ECF No. 284-4, at 7–8* |
| **SPIRE \| 3/26/26 Counsel for Spire, PI hearing — 4B**<br>**"what I can represent to the Court is we have not seen any JGR information in terms of the information that they identified through their original forensic protocol."**<br>*Hr'g Tr. 55:12–17 (Mar. 26, 2026)* | Spire's own answer: its examiner found CG Master.xlsx, JGR's alleged trade secret, on the Spire-issued laptop 3/13/26, and lists Gabehart_00222 among the versions.<br>*Spire Resp. to Interrog. No. 13, at 28 (June 29, 2026)* |

## There were no consequences for Gabehart

## 5 "Cut off" and "locked out"

**THE PROBLEM: Gabehart's OneDrive stayed open until June; Google access was restricted about Sept. 7.**

| WHAT DEFENDANTS SAID | WHAT THE RECORD SHOWS |
|---|---|
| **SPIRE \| 3/26/26 Counsel for Spire, PI hearing — 5A**<br>**"Mr. Gabehart doesn't have any access to any Spire systems. He doesn't have a computer from us. There's no way that he could use that information to benefit Spire."**<br>*Hr'g Tr. 71:13–16 (Mar. 26, 2026)* | Spire's expert: CG Master downloaded to the Spire laptop 2/18/26 while Gabehart had access. Spire revoked access 3/18.<br>Gabehart was also using a personal Gmail account for Spire work. Forensics received Friday 10/9 show persistent OneDrive use throughout the litigation.<br>*Clarke Rep. ¶ 4(e), ECF No. 266-2, at 4; Spire Resp. to Interrog. No. 9(a), at 20 (June 29, 2026)* |
| **GABEHART \| 4/20/26 Gabehart brief — 5B**<br>**"JGR's forensic examiner deleted the information at issue from Mr. Gabehart's devices after confirming there was no evidence of dissemination"**<br>*Gabehart Opp'n Expedited Trial 4, ECF No. 77* | Reliance deleted 235 files and 20 photos, only from the phone and Drive Gabehart presented. It "could not determine" dissemination and did not have access to Gabehart's OneDrive, laptop or S25 under the January protocol.<br>*Walton Rep. ¶¶ 48, 50, 52, 54* |
| **GABEHART \| 9/29/26 Gabehart brief — 5C**<br>**"when Mr. Gabehart's counsel observed dated OneNote files from his time as crew chief of the 11 Car on a personal OneDrive account, counsel made sure Mr. Gabehart was immediately locked out of the account"**<br>*Gabehart Show Cause Opp'n, ECF No. 259, at 22* | Gabehart's counsel cut off access to the OneDrive (imaged in March) only in June. JGR was told 9/4/26. Google access was not cut off until September.<br>9/17/26: A&M re-imaging OneDrive, Drive, S25, laptop (returned to Gabehart after March images) and restricting access.<br>*Email from Gabehart's Counsel to JGR's Counsel (Sept. 4, 2026), ECF No. 261-19, at 16; Email from Gabehart's Counsel to JGR's Counsel (Sept. 17, 2026), ECF No. 261-19, at 6–7; Walton Rep. ¶ 57(c)* |

# JGR Has Been Harmed

# The Violations Have Resulted in the Harm the Orders Were Designed to Prevent

Courts find harm justifying contempt orders when the violation produces the type of harm the order was designed to prevent.

***See Nat'l League of Junior Cotillions, Inc. v. Porter,* No. 3:06-CV-508-RJC, 2008 WL 11516421 at *4 (W.D.N.C. May 28, 2008)**

# The Violations Have Resulted in the Harm the Orders Were Designed to Prevent.

30. Plaintiff has further established irreparable harm in the absence of preliminary relief as to Defendant Gabehart. In a competitive racing industry, loss of trade secrets leads to the immediate and irreparable harm to JGR's ability to compete. Merck & Co. Inc. v. Lyon, 941 F. Supp. 1443, 1455 (M.D.N.C. 1996) ("The very nature of a trade secret mandates that misappropriation will have significant and continuous long-term effects. The party wronged may forever lose its competitive business advantage or, at the least, a significant portion of its market share.") (quoting Barr-Mullin, Inc. v. Browning, 108 N.C. App. 590, 597, 424 S.E. 2d 226, 230 (1993)).

110. JGR has made a clear showing that it has suffered and will continue to suffer irreparable harm without an injunction to prevent further misappropriation by Defendant Gabehart of JGR's Confidential Information and trade secrets, and to enforce Gabehart's contractual obligations. See Northrop, at *8 (analyzing irreparable harm and noting the necessity of injunctive relief was heightened where there were multiple breaches of an employment agreement and secret misappropriation of the employer's proprietary files). The fact that the Confidential Information has been forensically removed from his personal devices, while indicative of his willingness to comply with the legal process at this juncture, does not moot or negate the need for injunctive relief under these facts. See id.

Dkt. 26 (TRO) ¶ 30; Dkt. 78 (PI) ¶ 110

## JGR Has Been Harmed

- Lost the benefit of its bargain
- Lost trade secrets
  - Use of post-race analysis documents
  - Disclosure of setup parameters and philosophies
  - Production and quality control processes

# Defendants Have Not Made All Reasonable Efforts to Comply

# JGR Has Established All Elements of Contempt

- Valid decree – uncontested
- In movant’s favor – uncontested
- Knowing Violation(s)
- Harm to movant

# Defendants Cannot Avoid Contempt Because They Did Not Take All Reasonable Efforts to Comply

All reasonable efforts includes "investigating likely sources of noncompliance, using available means to cure deficiencies, monitoring continued compliance, responding promptly when deficiencies are identified, and producing competent evidence documenting those efforts."

*Gutierrez Aroca, et al. v. Mason, et al.*, No 2:26-cv-00057, 2026 WL 2322952 (S.D.W.Va. Aug. 11, 2026).

- Gabehart was aware of the services that Orders prohibited but performed them any way.
- Gabehart knew that he was prohibited from retaining JGR confidential information and trade secrets but continued to have access for months after the TRO.
- Spire made **no** effort to investigate the scope of services prohibited until after the PI, meaning it made no effort to comply with the TRO.
- Spire placed Gabehart on administrative leave only after the Show Cause was filed

## Requested Relief

- Attorneys' fees in connection with the motion to show cause

- Requirement that the administrative leave continue through the end of case