**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Case No. 3:26-CV-00133-SCR-DCK**

| | |
|---|---|
| JOE GIBBS RACING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER GABEHART and SPIRE MOTORSPORTS II, LLC,<br><br>Defendants. | **PLAINTIFF JOE GIBBS RACING, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS DEFENDANT SPIRE'S COUNTERCLAIMS AS MOOT OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT** |

Plaintiff Joe Gibbs Racing, LLC ("JGR"), by and through counsel, submits this Memorandum of Law in support of its Motion to Dismiss the Counterclaims of Defendant Spire Motorsports II, LLC ("Spire") for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure and, in the alternative, for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure.

## INTRODUCTION

Spire asserts three counterclaims against JGR, all built on a single alleged bargain: that in exchange for Spire's release of Robert Smith, JGR was obligated, by the end of the 2025 season, to either release a JGR employee of Spire's choosing or pay Spire $100,000. Spire pleads this theory three ways—as breach of an "Implied Trade Contract" (Count 1), as breach of an implied-in-fact contract (Count 2, in the alternative), and as unjust enrichment (Count 3, in the alternative). JGR denies that any "Implied Trade Contract" was ever formed and denies any "trade understanding." But the Court need not resolve that dispute to dispose of Spire's counterclaims, because every one of them now fails for the same reason: there is nothing left to recover.

On November 6, 2026, JGR paid Spire $100,000 plus legal interest accrued from the end of the 2025 season—the full measure of the only obligation Spire's own pleading describes, and more. By Spire's account, JGR held the express option to satisfy the alleged agreement with a $100,000 payment. JGR has now made that payment, with interest. Even though JGR disputes that the parties ever formed a trade agreement for the release of a JGR employee or payment to Spire of $100,000, JGR issues that payment to avoid any further dispute over the issue. Because JGR has provided Spire the complete relief its counterclaims seek, there is no longer a live case or controversy, and the counterclaims should be dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1).

In the alternative, and for the same reasons, JGR is entitled to summary judgment under Rule 56—both because Spire can prove no recoverable damages and because JGR's payment satisfies the alleged obligation as a matter of law. Regardless of whether the alleged agreement was ever formed (JGR contends that there was no agreement), Spire cannot prove that it has been damaged. Payment of the full amount claimed extinguishes the claim and in all events leaves the counterclaimant with no recoverable damages. Because no genuine dispute of material fact remains, JGR is entitled to judgment as a matter of law. The Court should dismiss Spire's counterclaims, or in the alternative grant summary judgment, and dismiss them with prejudice.

## STATEMENT OF FACTS

Spire's counterclaims rest on an alleged agreement under which Spire released its employee Robert Smith to JGR, and JGR in exchange would allegedly, within a reasonable time, either (a) release a JGR employee of Spire's choosing or (b) pay Spire $100,000. Doc. No. 99 at ¶ 76. By Spire's own allegations, JGR "insisted that JGR retain the option to satisfy the Implied Trade Contract with a $100,000 payment instead of releasing a future employee," and Spire

"understood JGR would perform by the end of the 2025 season." *Id.* at ¶¶ 29–30. The gravamen of Spire's breach allegation is that JGR "failed to pay Spire the $100,000 alternative performance contemplated by the Implied Trade Contract," and did not release any JGR employee. *Id.* at ¶¶ 70–71.

On November 5, 2026, while still disputing the existence of any trade understanding, JGR issued payment to Spire in the amount of $108,087.67, consisting of $100,000 plus interest of $8,087.67 at North Carolina's legal rate of 8% simple interest from November 2, 2025, the end of the 2025 season, through November 6, 2026. *See* N.C. Gen. Stat. §§ 24-1, 24-5(a). Declaration of Eric Schaffer ("Schaffer Decl."), attached as Exhibit B, ¶ 2. The same day, JGR's counsel notified all counsel of record that JGR had issued payment to Spire. Ex. A (Nov. 5, 2026 email from T. Summey to counsel of record). JGR sent the payment by FedEx delivery, addressed to Spire's counsel of record at Troutman Pepper Locke LLP in Charlotte, and FedEx reports that the package was delivered on November 6, 2026, at 9:39 a.m. Ex. B, Schaffer Decl. ¶¶ 3–4 & Ex. 1. As of the date of this Motion, Spire has not objected to the payment or attempted to return it. Schaffer Decl. ¶ 5.

## LEGAL STANDARD

### A. *Rule 12(b)(1)—Dismissal for Lack of Subject-Matter Jurisdiction.*

Mootness is a question of subject-matter jurisdiction, because it "constitutes a part of the constitutional limits of federal court jurisdiction." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," and "one such circumstance mooting a claim arises when the claimant receives the relief he or she sought to obtain through the claim." *Id.* A claim is therefore moot once "the Court can no longer grant any effective relief as to that claim." *Filyaw v. Protective Life Ins. Co.*, No. 4:25-CV-13374-JD, 2026 WL 1678894, at *4

(D.S.C. June 10, 2026).

An objection to subject-matter jurisdiction is never waived or forfeited: "Lack of subject matter jurisdiction may be raised at any time by the parties or the court," *New Horizon of N.Y. LLC v. Jacobs*, 231 F.3d 143, 147 (4th Cir. 2000), and the court "must dismiss the action" whenever it determines that it lacks subject-matter jurisdiction, Fed. R. Civ. P. 12(h)(3).

Where, as here, the motion presents a factual challenge to the existence of jurisdiction—contending "that the jurisdictional allegations of the complaint [are] not true"—"[a] trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *accord Kerns v. United States*, 585 F.3d 187, 192–93 (4th Cir. 2009). On such a challenge, "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment," and should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (quoting *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). The burden of establishing subject-matter jurisdiction rests on the party asserting it—here, Spire. *Adams*, 697 F.2d at 1219; *Evans*, 166 F.3d at 647.

**B. *Rule 56—Summary Judgment.***

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant's burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). Where, as here, the nonmovant will bear the burden of proof at trial, Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case." *Id.* at 322–23. In that situation "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

A dispute is "material" only if it "might affect the outcome of the suit under the governing law"; "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248–52. The nonmovant "must present affirmative evidence" and "may not rest upon mere allegation or denials." *Id.* at 256–57. It "must do more than simply show that there is some metaphysical doubt as to the material facts," and "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

## ARGUMENT

Spire's counterclaims share a single fatal defect: even though JGR disputes that there was every any trade agreement, JGR has paid Spire the full amount the alleged agreement contemplated, plus interest. That payment leaves no live controversy and no genuine issue for trial. The argument proceeds in four parts. First, the counterclaims should be dismissed under Rule 12(b)(1) as moot, because JGR has provided Spire the complete relief it seeks. Second, if the Court reaches the merits, JGR is entitled to summary judgment on the two contract counts because Spire cannot prove damages and because JGR, by Spire's own pleading, held and has exercised the option to perform by paying $100,000. Third, JGR is independently entitled to summary judgment because its payment satisfied the alleged obligation as a matter of law. Fourth, the payment defeats

Spire's unjust-enrichment count because Spire has now been compensated for the very benefit it alleges it conferred.

## I. The Court Should Dismiss Spire's Counterclaims as Moot for Lack of Subject-Matter Jurisdiction.

Mootness is a threshold, jurisdictional question that the Court must resolve before reaching the merits. A case becomes moot, and must be dismissed under Rule 12(b)(1), "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Simmons*, 634 F.3d at 763. One paradigmatic circumstance mooting a claim "arises when the claimant receives the relief he or she sought to obtain through the claim." *Id.* Spire's counterclaims seek, at most, the $100,000 that JGR allegedly agreed to pay by the end of the 2025 season. JGR has now paid Spire that entire sum plus legal interest. Ex. B, Schaffer Decl. ¶¶ 2–4 & Ex. 1; Ex. A. There is no further relief the Court could award Spire on these counterclaims, and the controversy over them is therefore moot. District courts in this Circuit have held that a defendant's actual payment of complete relief moots the claim. *See Kuntze v. Josh Enters., Inc.*, 365 F. Supp. 3d 630, 641–42 (E.D. Va. 2019); *Price v. Berman's Auto., Inc.*, No. CIV. JKB-14-763, 2016 WL 1089417, at *2 (D. Md. Mar. 21, 2016). Most directly on point, a court recently dismissed a breach-of-contract claim as moot where, as here, the defendant "paid that benefit with interest." *Filyaw*, 2026 WL 1678894, at *7.

JGR's payment delivers exactly the "complete relief" that moots a claim: the full principal plus interest, tendered unconditionally by FedEx delivery. Ex. B, Schaffer Decl. ¶¶ 2–4 & Ex. 1; Ex. A. A judgment would afford Spire nothing more, because JGR has already paid the money Spire seeks. The dispute over the $100,000 is over.

## II. JGR Is Entitled to Summary Judgment on the Counts 1 and 2.

The alleged agreement did not require JGR to release an employee. Instead, Spire pleads

that the obligation was disjunctive—JGR would "either (a) release a JGR employee selected by Spire . . . or (b) pay Spire $100,000"—and that JGR "retain[ed] the option to satisfy the Implied Trade Contract with a $100,000 payment instead of releasing a future employee." Doc. No. 99 at ¶¶ 29, 76.

North Carolina law gives the obligor the right to elect among alternative means of performance. "If a party under a contract has a choice thereunder of alternative obligations and elects one, his subsequent obligation remains under that alternative." *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 324, 411 S.E.2d 133, 139 (1991). The consequence for Spire's damages case is dispositive: where the obligor may discharge its duty by paying a fixed sum, the promisee's remedy is the money, not coerced performance of the other alternative. North Carolina courts treat a demand for the monetary alternative as "a request for damages, not specific performance," and decline to compel the non-monetary alternative. *Williams v. Habul*, 219 N.C. App. 281, 290–91, 724 S.E.2d 104, 110–11 (2012). Spire therefore never had a right to force JGR to surrender an employee under the alleged agreement; the most it could ever recover was $100,000. JGR has now paid that sum, with interest. Nothing remains to be adjudicated on Counts 1 and 2.

## III. JGR Is Independently Entitled to Summary Judgment Because Its Payment Satisfied Any Obligation to Spire.

The same payment independently discharges any obligation Spire alleges, and does so as a matter of law. Under North Carolina law, "[i]f the accord is fully performed, the performance satisfies the original claim, and bars a subsequent action to enforce it." *Dobias v. White*, 239 N.C. 409, 413, 80 S.E.2d 23, 27 (1954). Although the existence of an accord and satisfaction is ordinarily a jury question, "if the only reasonable inference is its existence or non-existence, accord and satisfaction is a question of law and may be adjudicated by summary judgment when the essential facts are made clear of record." *Sharpe v. Nationwide Mut. Fire Ins. Co.*, 62 N.C. App.

564, 565, 302 S.E.2d 893, 894 (1983). This is such a case: the dispositive facts—the amount in dispute and JGR's payment of it in full—are undisputed and established by JGR's records. *See* Ex. B, Schaffer Decl. ¶¶ 2–4 & Ex. 1; Ex. A.

North Carolina courts routinely enter summary judgment for a defendant that has paid a disputed claim in full. Payment of "the full amount in dispute" establishes an accord and satisfaction "as a matter of law" and "extinguishe[s]" the claim "regardless of any disclaimers which may be communicated by the payee." *Sharpe*, 62 N.C. App. at 566, 302 S.E.2d at 894. Our courts have applied that rule to affirm summary judgment for the paying party across contexts—on an open account, *Sanyo Elec., Inc. v. Albright Distrib. Co.*, 76 N.C. App. 115, 118–19, 331 S.E.2d 738, 740 (1985); on a construction contract, *J.F. Wilkerson Contracting Co. v. Sellers Mfg. Co.*, 73 N.C. App. 620, 623–24, 327 S.E.2d 34, 36 (1985); and on a claim resolved by payment of "the purchase price plus interest," even where the claimant struck the settlement language, *Canady v. Mann*, 107 N.C. App. 252, 258, 419 S.E.2d 597, 601 (1992). An accord and satisfaction "bars any claims based on the underlying contract." *Zanone v. RJR Nabisco, Inc.*, 120 N.C. App. 768, 775, 463 S.E.2d 584, 589 (1995).

JGR tendered the entire $100,000 the alleged agreement contemplated, plus legal interest, and did so expressly "to avoid further dispute over this issue"—language that, like the cover letter in *Zanone*, makes plain the payment was offered in full and final satisfaction of the disputed claim. Ex. A; *see Zanone*, 120 N.C. App. at 774–75, 463 S.E.2d at 588–89 (accord may be shown by "the facts and circumstances surrounding the receipt of the check"). Spire, for its part, has not objected to the payment or attempted to return it. Schaffer Decl. ¶ 5. Having received full satisfaction of the only pecuniary obligation it alleges, Spire cannot maintain an action to enforce that obligation a second time, and JGR is entitled to judgment as a matter of law.

## IV. JGR's Payment Defeats Spire's Unjust-Enrichment Count.

Spire's third counterclaim, pleaded in the alternative, fails for parallel reasons. Under North Carolina law, the "measure of damages for unjust enrichment is the reasonable value of the goods and services to the defendant," and recovery runs only to the value of the benefit "for which the plaintiff has not been paid." *Booe v. Shadrick*, 322 N.C. 567, 570–71, 369 S.E.2d 554, 555–56 (1988). A party that has been compensated for the benefit it conferred has no unjust-enrichment recovery.

Spire alleges that it conferred a benefit on JGR by releasing Smith and waiving his non-compete, and that "JGR has failed to provide Spire with any compensation or consideration" for that benefit. Doc. No. 99 at ¶¶ 85, 88. That premise is no longer true. JGR has paid Spire $100,000 plus interest—the very figure the parties, on Spire's account, used to value the reciprocal consideration for Smith's release. Schaffer Decl. ¶ 2; Doc. No. 99 at ¶ 29. Because Spire has now been paid, it cannot show that JGR has been "unjustly enriched at the expense of another" or that it retained a benefit "for which the plaintiff has not been paid." *Booe*, 322 N.C. at 570–71, 369 S.E.2d at 555–56.

Spire's unjust-enrichment count independently fails for a second reason it cannot escape. A claim in quasi-contract lies only in the absence of a governing agreement: "If there is a contract between the parties the contract governs the claim and the law will not imply a contract." *Id.* at 570, 369 S.E.2d at 555–56. Spire itself alleges an agreement—the "Implied Trade Contract"—covering the identical subject matter. Spire cannot both assert that an agreement fixed JGR's obligation at $100,000 and recover in unjust enrichment for the same benefit. Either way, JGR's payment leaves Spire with nothing to recover.

## CONCLUSION

For the foregoing reasons, JGR respectfully requests that the Court dismiss Counts 1, 2, and 3 of Spire's counterclaims as moot for lack of subject-matter jurisdiction under Rule 12(b)(1); in the alternative, grant summary judgment and enter judgment in JGR's favor on Counts 1, 2, and 3; dismiss those counterclaims with prejudice; and award such other and further relief as the Court deems just and proper.

This the 9th day of November, 2026.


**PARKER POE ADAMS & BERNSTEIN LLP**

/s/ Tory Ian Summey
Sarah F. Hutchins
N.C. Bar No. 38172
Tory Ian Summey
N.C. BRear No. 46437
Keith M. Weddington
N.C. Bar No. 14352
Charles G. Middlebrooks
N.C. Bar No. 55171
Madelyn R. Candela
N.C. Bar No. 63827
Chad F. Lee
N.C. Bar No. 56350
Kevin A. Marshall
N.C. Bar No. 50856
Christopher B. Henry
N.C. Bar No. 55955
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
sarahhutchins@parkerpoe.com
torysummey@parkerpoe.com
keithweddington@parkerpoe.com
charliemiddlebrooks@parkerpoe.com
madelyncandela@parkerpoe.com
chadlee@parkerpoe.com
kevinmarshall@parkerpoe.com
chrishenry@parkerpoe.com

**KING & SPALDING LLP**

Danielle T. Williams
dwilliams@kslaw.com
N.C. Bar No. 23283
300 South Tryon Street, Suite 1700
Charlotte, NC 28202

Thomas M. Melsheimer – *Pro Hac Vice*
tmelsheimer@kslaw.com
Chad B. Walker – *Pro Hac Vice*
cwalker@kslaw.com
Tracea Rice – *Pro Hac Vice*
trice@kslaw.com
Alexandra Moore – *Pro Hac Vice*
almoore@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201

*Attorneys for Joe Gibbs Racing, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this date the foregoing **PLAINTIFF JOE GIBBS RACING, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS DEFENDANT SPIRE'S COUNTERCLAIMS AS MOOT OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notice and serve same upon counsel of record via the Court's electronic case filing system.

This the 9th day of November, 2026.

**PARKER POE ADAMS & BERNSTEIN LLP**

/s/ Tory Ian Summey
Tory Ian Summey
N.C. Bar No. 46437
Bank of America Tower
620 South Tryon St., Suite 800
Charlotte, North Carolina 28202
torysummey@parkerpoe.com

*Attorney for Joe Gibbs Racing, LLC*